Ruben D. Escalante (Cal. Bar No. 244596)
Robert A. Escalante (Cal. Bar No. 270629)
ACLIENT PC
440 N Barranca Ave PMB 9496
Covina, California 91723
Telephone: (310) 431-9687
Email: ruben@aclientpc.com

Attorneys for Plaintiff
ASHLEY FRAGALE

[ADDITIONAL COUNSEL LISTED ON FOLLOWING PAGE]

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| ASHLEY FRAGALE,<br><br>                    Plaintiffs,<br><br>     vs.<br><br>RISC POINT ADVISORY GROUP LLC; RISC POINT ASSURANCE, LTD; RISC POINT HOLDINGS, INC.; JACOB NIX; and DOES 1 through 10, inclusive,<br><br>                    Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Case No.: 8:25-cv-00994 JWH (ADSx)<br><br>**[DISCOVERY DOCUMENT: REFERRED TO MAGISTRATE JUDGE AUTUMN D. SPAETH]**<br><br>**JOINT STIPULATION REGARDING PLAINTIFF'S MOTION TO COMPEL DISCOVERY**<br><br>Date: Wednesday, October 15, 2025<br>Time:          10:00am<br>Location:     Courtroom 6B<br><br><br>Discovery Cut-off Date: December 5, 2025<br>PreTrial Conference Date: March 27, 2026<br><br>Trial Date: April 13, 2026 |

**JOINT STIPULATION RE PLAINTIFF'S MOTION TO COMPEL DISCOVERY:**

**RULE 37-2.1**

Jeff T. Olsen (Cal. Bar No. 283249)
OLSEN WORKPLACE SOLUTIONS PC
18012 Cowan, Ste 200
Irvine, California 92614
Telephone: (949) 232-0455
Email: jeff@olsenws.com

Attorneys for Plaintiff
ASHLEY FRAGALE

L. GEOFFREY LEE (SBN:234024)
glee@grsm.com
ANAFRANCESCA Y. COMUNALE (SBN: 323257)
acomunale@grsm.com
GORDON REES SCULLY MANSUKHANI, LLP
101 West Broadway, Suite 2000
San Diego, CA 92101
Telephone: (619) 230-7418
Facsimile: (619) 696-7124

Attorneys for Defendants
RISC POINT ADVISORY GROUP LLC;
RISC POINT ASSURANCE, LTD;
RISC POINT HOLDINGS, INC.;
JACOB NIX

-1-

**JOINT STIPULATION RE PLAINTIFF'S MOTION TO COMPEL DISCOVERY:**

**RULE 37-2.1**

# <u>Table of Contents</u>

**I.    Introduction**                                                                                    3

   A.    Plaintiff's Introduction                                                          3

   B.    Defendants' Introduction                                                          5

**II.    Verbatim Statement of Each Interrogatory or Request at Issue, and Corresponding Objection at Issue**                                             7

   A.    Plaintiff's Interrogatories to Defendant RISC POINT ADVISORY GROUP, LLC, Interrogatory No. 1                                             7

   B.    Defendant RISC POINT's Objections/Response to Interrogatory No. 1        7

   C.    Plaintiff's Request for Production of Documents to Defendant RISC POINT ADVISORY GROUP, LLC, Request 13 / Defendant NIX, Request 10       8

   D.    Defendants' Objections/Response to Defendant RISC POINT Request 13 / Defendant NIX, Request 10                                              8

**III.    Each Party's Contentions with Respect to Each Issue in Dispute**          9

   A.    Plaintiff's Contentions/Memorandum of Points and Authorities            9

      *i.    Courts in the Central District of California Routinely Permit Discovery of "Me Too" Evidence*                                           9

      *ii.    Defendant's Proportionality and Privacy Objections Lack Merit*      12

   B.    Defendants' Contentions/Memorandum of Points and Authorities          13

**IV.    Each Party's Statement of How It Proposed to Resolve Each Issue in Dispute At the "Meet and Confer" With Opposing Counsel**                   22

   A.    Plaintiff's Statement                                                          22

   B.    Defendants' Statement                                                          24

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**JOINT STIPULATION RE PLAINTIFF'S MOTION TO COMPEL DISCOVERY:**

**RULE 37-2.1**

TO THE HONORABLE COURT, ALL PARTIES, AND THEIR ATTORNEYS OF RECORD:

Counsel for Plaintiff Ashley Fragale ("Plaintiff") and Defendants RISC POINT ADVISORY GROUP LLC, and JACOB NIX, ("Defendants") have met and conferred regarding unresolved written discovery matters, pursuant to the Joint Scheduling Report as ordered by the Court.

Following multiple conferences between counsel, counsel for Plaintiff and Defendant jointly provide the following response, including attaching as **Exhibit A**, a copy of the Scheduling Order, as required by CD CA Rule 37-2.1.

## I.    <u>Introduction</u>

A. <u>Plaintiff's Introduction</u>

1.    Plaintiff Ashley Fragale ("Plaintiff") respectfully moves this Court to compel Defendants to produce limited discovery concerning complaints of sex/gender discrimination (e.g. harassment) and retaliation by other employees of Defendants.  This "me too" evidence is not only directly relevant to Plaintiff's claims, but Courts in the Central District of California have consistently recognized its discoverability in employment discrimination and retaliation actions.  Such evidence bears directly on Defendants' motives, intent, knowledge, the existence of a discriminatory and retaliatory culture within the workplace, and to punitive damages.

2.    By brief background, Defendant RISC Point Advisory Group LLP ("RISC Point") and the other related entity defendants hired Plaintiff to work for them as a Human Resources Generalist – making her the only Human Resources employee at Defendants the time.   Plaintiff worked remotely from California, but reported to the Chief Operating Officer, located at Defendants' headquarters in Ohio. During her employment, Plaintiff was subjected to sexual harassment by and from

**JOINT STIPULATION RE PLAINTIFF'S MOTION TO COMPEL DISCOVERY:**

**RULE 37-2.1**

Defendant Jacob Nix ("Nix"), the Founder and Chief Executive Officer of Defendant RISC Point, both in-person during live work trips, and online through video and electronic messaging. After Plaintiff complained, she was retaliated against by Defendants.

3.    Plaintiff's civil Complaint alleges the following causes of action: (1) Quid Pro Quo Harassment in Violation of FEHA – Gender/Sex (Gov. Code § 12940 et seq.); (2) Hostile Environment Harassment in Violation of FEHA-Gender/Sex (Gov. Code § 12940 et seq.); (3) Retaliation in Violation of FEHA (Gov. Code § 12940 et seq.); (4) Failure to Prevent in Violation of FEHA (Gov. Code § 12940 et seq.); and (5) Whistleblower Retaliation Violation of Labor Code § 1102.5.

4.    Following failed meet and confer efforts (as further described below), RISC Point has refused to identify other complaints of sex/gender discrimination, harassment, and retaliation, and have refused to produce related documentation to these similar "me too" cases. RISC Point also refused to attend an Informal Discovery Conference. Plaintiff must now seek this Court's intervention to compel the discovery of "me too" evidence. This limited "me too" evidence is the only subject of this Motion to Compel.

5.    In conclusion, Plaintiff is entitled to the "me too" evidence she seeks, namely the discovery of "me too" complaints of sex/gender discrimination, which includes harassment, or retaliation against Nix or Defendants for the period of five (5) years back from the date of filing of the civil complaint in this action.[1]

---

[1]    The scope that Plaintiff compels is more limited than the initial request, which reflects Plaintiff's attempt to limit the request in good faith.

**JOINT STIPULATION RE PLAINTIFF'S MOTION TO COMPEL DISCOVERY:**

**RULE 37-2.1**

B. <u>Defendants' Introduction</u>

1.      Plaintiff's discovery requests, as written, broadly intrude into every type of complaint of race discrimination, religious discrimination, disability discrimination, et cetera without limitation.  Defendants' objections as to overbreadth were proper.

2.      Plaintiff's request for other employee gender discrimination complaints is not "me too" evidence because she does not allege discrimination. Plaintiff only alleges sexual harassment, which is fundamentally different from discrimination.  *Roby v. McKesson Corp.,* 47 Cal. 4th 686, 706 (2009); *Janken v. GM Hughes Electronics*, 46 Cal. App. 4th 55, 63 (1996).

3.      The bottom line is: there simply is no "me too" evidence in the form of complaints as there were no internal complaints or any complaint similar to Plaintiff's.  "Me too" evidence is extremely limited to similarly situated employees.  "Employees are similarly situated if they are similar 'in all material respects….'" *Howard v. Raytheon Co.*, 2011 WL 13177257 at *3 (C.D. Cal. Mar. 2011) (denying discovery of purported "me too" evidence). [2]  Plaintiff has provided no evidence to suggest material similarities between her claims and that of any other employee, and there ultimately are none.

4.      Plaintiff was hired by Defendant Risc Point Advisory Group LLC in July 2024. Plaintiff was a below average Human Resources Generalist who violated employee confidences and openly joked about her dating life and sex. Plaintiff sent then-CEO Jacob Nix pictures of half-naked men and insinuated that he liked the pictures, teasing that he was gay.

5.      Plaintiff received criticism over her job performance.  Then and only then Plaintiff made an internal complaint of perceived sexual harassment. The

---

[2] Although Plaintiff's claims are based on California state law, "[b]ecause state and federal employment discrimination laws are similar, California courts look to federal precedent when interpreting FEHA." *Earl v. Nielsen Media Research, Inc.*, 658 F.3d 1108, 1112 (9th Cir. 2011).

**JOINT STIPULATION RE PLAINTIFF'S MOTION TO COMPEL DISCOVERY:**

**RULE 37-2.1**

company then hired a neutral professional outside investigator who interviewed witnesses. The investigator found that Plaintiff "was an active participant in workplace conversations of a personal nature, including those of a sexual or dating related tone." The investigator found that Plaintiff's complaint was uncorroborated. The matter was closed. Plaintiff continued to work for the company for at least six more weeks until she voluntarily resigned. Plaintiff does not allege wrongful termination or constructive termination.

-6-

**JOINT STIPULATION RE PLAINTIFF'S MOTION TO COMPEL DISCOVERY:**

**RULE 37-2.1**

## II.    Verbatim Statement of Each Interrogatory or Request at Issue, and Corresponding Objection at Issue

A. Plaintiff's Interrogatories to Defendant RISC POINT ADVISORY GROUP, LLC, Interrogatory No. 1

Plaintiff's Interrogatory No. 1:

> *"IDENTIFY all of YOUR current and former employees who have complained about harassment, retaliation, or discrimination.*
> *[For the purpose of these Special Interrogatories, the term IDENTIFY as used in reference to PERSONS shall mean and refer to the name, address, telephone number, electronic mail address, or description with sufficient particularly to allow the Propounding Party to understand whom or what Responding Party is referring to.]*
> *[For the purpose of these Special Interrogatories, the terms "YOU" or "YOUR" shall mean and refer to Defendant RISC POINT ADVISORY GROUP LLC and any individual or entity acting on its behalf or pursuant to its direction or request.]"*

B. Defendant RISC POINT's Objections/Response to Interrogatory No. 1

**RESPONSE TO INTERROGATORY NO. 1**

> *"Responding Party objects that the interrogatory is compound. Responding Party objects that the interrogatory is overbroad in terms of time, location, type, the accusers, and the accused. Responding Party objects that the inquiry into "discrimination" is irrelevant and harassing as discrimination is not alleged in this case. Given the overbreadth of the interrogatory, Responding Party objects that the interrogatory invades third party rights of privacy. 2*

**JOINT STIPULATION RE PLAINTIFF'S MOTION TO COMPEL DISCOVERY:**

**RULE 37-2.1**

*Cal. Code Regs. § 11023(b)("complaint process to ensure that complaints receive... [a]n employer's designation of confidentiality, to the extent possible."). Subject to the foregoing objections, Responding Party states: Plaintiff Ashley Fragale complained of perceived sexual harassment against Jake Nix."*

C. <u>Plaintiff's Request for Production of Documents to Defendant RISC POINT ADVISORY GROUP, LLC, Request 13 / Defendant NIX, Request 10</u>

**REQUEST FOR PRODUCTION TO RISC POINT NO. 13/ TO NIX NO. 10:**
"Any and all DOCUMENTS that reflect any complaint by any employee of YOU regarding harassment, discrimination, or retaliation."

D. <u>Defendants' Objections/Response to Defendant RISC POINT Request 13 / Defendant NIX, Request 10</u>

**RISC POINT's RESPONSE TO REQUEST NO. 13, and NIX No. 10:**

*"Responding Party objects that the request is compound. Responding Party objects that the request is overbroad in terms of time, location, type, the accusers, and the accused. Responding Party objects that the inquiry into "discrimination" is irrelevant and harassing as discrimination is not alleged in this case. Given the overbreadth of the request, Responding Party objects that the request invades third party rights of privacy. 2 Cal. Code Regs. § 11023(b)("complaint process to ensure that complaints receive... [a]n employer's designation of confidentiality, to the extent possible."). Subject to*

**JOINT STIPULATION RE PLAINTIFF'S MOTION TO COMPEL DISCOVERY:**

**RULE 37-2.1**

*the foregoing objections, Responding Party will comply as to the complaint by Plaintiff Ashley Fragale."[3]*

## III.    Each Party's Contentions with Respect to Each Issue in Dispute

A. Plaintiff's Contentions/Memorandum of Points and Authorities

Generally, Federal Rule of Civil Procedure 26(b)(1) provides for discovery of "…any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable."

Evidence of sex/gender discrimination or retaliation directed toward other employees—even if they are not parties to the action—falls squarely within this broad scope, particularly where, as here, motive and intent are central issues.

i.    *Courts in the Central District of California Routinely Permit Discovery of "Me Too" Evidence*

Courts within the Central District of California, as well as other CA District Courts and the Ninth Circuit have held that "me too" evidence may be relevant to proving discriminatory intent, and permit discovery of such evidence because it can

---

[3] Plaintiff served onto Defendant Nix a corresponding Request for Production of Documents with the same request language, i.e. NIX Request No. 10.  As relevant, NIX responded with identical objections as Defendant RISC POINT No. 13.  Thus, Plaintiff seeks to compel compliance from Defendants RISC POINT and NIX on the Request for Production of Documents.

**JOINT STIPULATION RE PLAINTIFF'S MOTION TO COMPEL DISCOVERY:**

**RULE 37-2.1**

demonstrate a pattern or practice of discrimination, establish pretext, rebut employer defenses, as well as be relevant to punitive damages.

The Central District and Ninth Circuit have emphasized that "an employer's conduct tending to demonstrate hostility towards a certain group is both relevant and admissible where the employer's general hostility towards that group is the true reason behind firing an employee who is a member of that group." See Zucchella v. Olympusat, Inc., No. CV197335DSFPLAX, 2023 WL 2633947, at *18 (C.D. Cal. Jan. 10, 2023) citing Heyne v. Caruso, 69 F.3d 1475, 1479 (9th Cir. 1995).

"'[M]e too' evidence of discrimination is routinely considered in FEHA discrimination actions," such as this case. See Chambers v. Hanson Aggregates, LLC, No. CV 15-04444-AB (MRWx), 2016 WL 11760726, at *10 (C.D. Cal. Sept. 6, 2016); see also Mailhoit v. Home Depot U.S.A., Inc., No. CV 11-03892-AHM (SSx), 2012 WL 12884048, at *4 (C.D. Cal. May 4, 2012) (finding "me-too" discovery into "discrimination complaints raised against specific individuals who [p]laintiff alleges wrongfully failed to promote her or were involved in" a pretextual investigation was relevant).

When a party is seeking "me too" evidence, courts consider a discovery "request's geographical and temporal scope and whether the requests are limited to particular complainants or decisionmakers." See Henriquez v. Cemex, Inc., No. CV 22-01645-JGB (SPx), 2023 WL 11053247, at *3 (C.D. Cal. Dec. 21, 2023). A court may order discovery of related "me-too" evidence that goes "beyond a plaintiff's work location and supervisor if the plaintiff can show a link between the discrimination/harassment alleged in the complaint and other locations, complainants[,] or decision makers." Constance Hanson-Poulsen v. Dep't of Def. of the USA, No. CV 16-05786-DMG (AFMx), 2020 WL 2043999 at *4, (C.D. Cal. Mar. 3, 2020).

**JOINT STIPULATION RE PLAINTIFF'S MOTION TO COMPEL DISCOVERY:**

**RULE 37-2.1**

California District Courts have also held that discovery of "me too" evidence is relevant to the punitive damages analysis.  *See* Tijerina v. Alaska Airlines, Inc., No. 22-CV-00203-JLS-BGS, 2022 WL 16824509, at *4 (S.D. Cal. Nov. 7, 2022) (stating, "…[w]hile punitive damages cannot be used to punish a defendant for harming parties not before the court, evidence of a defendant's harm to others can be offered to show reprehensibility, which is a relevant factor in the punitive damages equation…" and "…[o]btaining me-too complaints and investigative records regarding sexual harassment similar to that experienced by Plaintiff could support her claim for punitive damages.")

Here, Plaintiff was the only Human Resources employee, who at the time reported directly to the C-Suite and worked *directly with* Nix, the CEO of Defendants.  As CEO, Nix had the power to control nearly all decisions relating to Plaintiff's employment.  Although Plaintiff worked remotely, she experienced gender discrimination by Nix across multiple locations and mediums, i.e., electronically and virtually, but also in person, during a work trip to Las Vegas, NV. Once Plaintiff complained, she was immediately retaliated against by Defendants, and they requested she leave the company.  When Plaintiff did not immediately resign, Defendants further retaliated against her by performing a sham investigation into her complaint, and then hiring a Human Resources consultant above Plaintiff, flagrantly limiting her career growth at Defendants. In proffer of further evidence of a pattern of discriminatory behavior of Defendants Nix and RISC POINT, Plaintiff will testify that Nix personally told Plaintiff in 2024 or 2025 that another woman had recently sued RISC POINT.  Accordingly, Plaintiff reasonably seeks comparator "me too" discovery as to the existence of any sex/gender discrimination or retaliation complaint relating to Defendants' C-suite executives who worked out of the company's headquarters in Ohio.

**JOINT STIPULATION RE PLAINTIFF'S MOTION TO COMPEL DISCOVERY:**

**RULE 37-2.1**

### ii.    Defendant's Proportionality and Privacy Objections Lack Merit

Defendants are likely to argue that discovery into other employees' complaints is overly burdensome and impacts privacy rights. But Courts in the Central District have rejected such arguments where the discovery is narrowly tailored to sex discrimination and retaliation complaints within a reasonable timeframe. See Block v. Quest Diagnostics, Inc., No. 2:24-CV-00059-MRA-MAR, 2024 WL 5411306, at *6 (C.D. Cal. Nov. 13, 2024) relying on Williams v. U.S. Env't Servs., LLC, No. CV 15-168-RLB, 2016 WL 617447, at *7–*8 (M.D. La. Feb. 16, 2016) (the court allowed plaintiff to discover potential "me-too" evidence of sex-based discrimination from the past five years allegedly perpetrated by the supervisor that fired plaintiff, also importantly noting that "discovery should include those 'individuals alleged to have discriminated against plaintiff,' regardless of geographic location").

With regard to privacy concerns, "courts in the Ninth Circuit frequently compel the personnel files of employees in employment discrimination suits, despite privacy concerns, when such is warranted." Block v. Quest Diagnostics, Inc., *supra* 2024 WL 5411306, at *9 (C.D. Cal. Nov. 13, 2024) *citing* Lauer v. Longevity Medical Clinic PLLC, No. C13-0860-JCC, 2014 WL 5471983, at *6 (W.D. Wash. Oct. 29, 2014)

Here, with a protective order already in place, privacy issues have been adequately addressed. Potential "me too" and comparator evidence of other employees that alleged sex/gender-discrimination or retaliation overseen by Nix is highly relevant to Plaintiff's claims that she was harassed by Nix, and retaliated by Defendants after she complained about Nix, i.e., similarly discriminatory and retaliatory claims.

Also here, Plaintiff only seeks discovery of complaints of sex/gender-discrimination, which includes harassment, or retaliation against Nix or Defendants'

**JOINT STIPULATION RE PLAINTIFF'S MOTION TO COMPEL DISCOVERY:**

**RULE 37-2.1**

executives within a reasonable, fixed five (5) year time frame dating back to the filing of the civil Complaint. "While temporal limitations are one factor to consider when determining whether such interrogatories are relevant and proportional, the case law does not suggest that discovery of "me too" evidence must always be precisely limited to a plaintiff's period of employment. See Henriquez v. Cemex, Inc., *supra*, 2023 WL 11053247, at *4 (C.D. Cal. Dec. 21, 2023) (allowing discovery of "me too" evidence from three years prior to workplace incident); see also Sanchez v. Master Production, LP, 2021 WL 4125856, at *3 (C.D. Cal. Aug. 5, 2021) (allowing discovery of "me too" evidence from three years prior to the start of plaintiff's employment); see also Andrews v. Pride Indus., 2016 WL 1394261, at *3 (E.D. Cal. Apr. 8, 2016) (allowing production of "me too" complaints from five years prior to the start of plaintiff's employment).

In conclusion, the Court should grant Plaintiff's motion to compel the "me too" discovery requests, which are tailored and limited in time and scope. The dearth of relevant case law demonstrates that Plaintiff is entitled to the "me too" evidence requested, as such discovery is proportional and directly tied to the core issues of the case.

B.    Defendants' Contentions/Memorandum of Points and Authorities

Because Plaintiff's discovery requests are overbroad and Plaintiff has failed to make a showing of relevance, Plaintiff's motion should be denied.

**(i)    The Term "Complaint" Apparently Means "Internal Complaint"**

As a preliminary matter, the term "complaint" as used in the discovery requests should be addressed. The term "complaint" presumably means an internal complaint requesting that management take corrective action so that the employee can go one working without bother. This interpretation results because the discovery requests use the term "employee" and do not include former

-13-

**JOINT STIPULATION RE PLAINTIFF'S MOTION TO COMPEL DISCOVERY:**

**RULE 37-2.1**

employees.  *Cf. Andrews v. Pride Industrie*s, 2016 WL 1394261 (E.D. Cal. 2016) ("complaints" defined expressly to include those made both "internally and externally.").  In the meet-and-confer discussions, Plaintiff's counsel also indicated interest in only internal complaints and seeing management's or Human Resource's protocol response to employee complaints and protocol investigations.

Here, there was no other employee besides Plaintiff who personally made an internal complaint about harassment, discrimination, or retaliation.  So the answers to Special Interrogatory No. 1 and Request for Production No. 13 are complete and accurate as provided based on how the discovery requests were written.  An internal complaint only occurred with respect to Plaintiff Ashley Fragale.  Defendants can provide, if need be, a supplemental response confirming that no other internal complaints exist.

Assuming the word "complaint" in the discovery requests includes external accusations (*Cf. Razo v. Timec Co., Inc*., 2016 WL 1623938 (N.D. Cal. 2016),[4] there were two employees who through legal counsel or through the legal system later made claims about their past employment.  Assuming Plaintiff seeks disclosure of those two cases, those two cases do not constitute "me too" evidence because they involved facts and circumstances that were completely different from Plaintiff's circumstances and thus are not discoverable.

**(ii)     The Discovery Is Overbroad On its Face**

It was clearly improper for Plaintiff to ask originally for information on every employee complaint over race, religion, disability, sexual orientation, et cetera against every employee in every geographical location.  *See, e.g., Mailhoit v. Home Depot U.S.A., Inc.*, 2012 WL 12884048 at *4 (C.D. Cal. 2012) ("The Court also concludes that RFP Nos. 51-52, which seek similar complaints of

---

[4] The employee "limited the type of complaints to those filed in state and federal court, and with the Department of Fair Employment and Housing and the Equal Employment Opportunity Commission." *Id*. at *

**JOINT STIPULATION RE PLAINTIFF'S MOTION TO COMPEL DISCOVERY:**

**RULE 37-2.1**

gender and disability discrimination made by <u>any</u> employee against <u>any</u> other employee in the Company and in the Pacific Central District, respectively, are impermissibly overbroad.") (underline in original).  Here, Plaintiff's original request for race discrimination complaints, religious discrimination complaints, disability discrimination complaints, et cetera was clearly overbroad.

### (iii)    Claims of A Dissimilar Nature are Not Discoverable

The party seeking to compel discovery has the burden of establishing that its request satisfies the relevancy requirements of Rule 26(b)(1).  Courts do not normally permit discovery about complaints from employees not in the same protected class as the plaintiff, as such complaints would be irrelevant.  *See, e.g.,* *Guthrey v. California Dept. of Corrections and Rehabilitation*, 2012 WL 2499938, at *15 (E.D. Cal. 2012) (allowing discovery of religious discrimination complaints but not race discrimination complaints).

In one California case, the judgment was actually reversed on this very point. In *Pinter-Brown v. Regents of Univ. of California*, 48 Cal. App. 5th 55 (2020), the plaintiff sued for sex discrimination against her employer UCLA. Throughout trial, the court allowed the plaintiff to present the jury unrelated claims of discrimination at UCLA. The court even admitted into evidence a list of all employment complaints against the entire University of California system for five years.  The Court of Appeal found that this overbroad evidence was not admissible as "me too" evidence because it was not about plaintiff's "own protected class" and was different from plaintiff's own theory. *Id*. at 96.

In this motion, Plaintiff for the first time offers to limit her discovery requests to "me too" evidence of scenarios "similar" to her own.  She now concedes that a proper request would need to be "narrowly tailored." As best Defendants can synthesize her now-narrowed request, her narrowed request appears to seek complaints about sex/gender discrimination, harassment, and

**JOINT STIPULATION RE PLAINTIFF'S MOTION TO COMPEL DISCOVERY:**

**RULE 37-2.1**

retaliation by employees "overseen by Nix" raised five years prior to the filing of this lawsuit. As explained below, discrimination complaints are not "me too" evidence because Plaintiff does not allege discrimination. Furthermore, there are no complaints that would constitute "me too" evidence anyway.

Plaintiff alleged causes of action for sexual harassment and retaliation. She did not allege any cause of action for gender discrimination. Yet Plaintiff assumes in this motion that sexual harassment and gender discrimination are the same thing. They are not. In contrast with discrimination, which concerns unequal terms and conditions of employment, "harassment focuses on situations in which the social environment of the workplace becomes intolerable because the harassment (whether verbal, physical, or visual) communicates an offensive message to the harassed employee. *Roby v. McKesson Corp.*, 47 Cal. 4th 686, 706 (2009). There is a "fundamental distinction between harassment as a type of conduct not necessary to a supervisor's job performance, and business or personnel management decisions—which might later be considered discriminatory—as inherently necessary to performance of a supervisor's job." *Janken v. GM Hughes Electronics* 46 Cal. App. 4th 55, 63 (1996). For firings, suspensions, demotions and other work-based injuries "based on improper motives, ... the remedies provided by the FEHA are those for discrimination, not harassment." *Id*. at 65. As such, even Plaintiff's request for complaints of gender harassment do not mirror her causes of action. Accordingly, a gender *discrimination* complaint is not "me too" evidence to begin with.

### (iv)    Plaintiff Fails to Make A Foundational Showing

"Plaintiffs requesting me-too evidence would ***need to show*** that the other individuals also claiming discrimination were similarly situated to Plaintiff, which would make that evidence probative of Plaintiff's own claim of discrimination." *Howard v. Raytheon Co.*, 2011 WL 13177257 at *3 (C.D. Cal. 2011) (emphasis

**JOINT STIPULATION RE PLAINTIFF'S MOTION TO COMPEL DISCOVERY:**

**RULE 37-2.1**

added).  Plaintiff makes no such showing here.  Plaintiff's motion should be denied on that basis alone.

Here, Plaintiff's counsel asserts that Plaintiff "will" testify that she heard that a female employee in 2024-2025 sued RiscPoint.  There is no actual evidence or a declaration from Plaintiff on this foundational assumption, which sounds in hearsay.  Plaintiff does not even assert what type of suit it was, be it overtime wages owed, disability discrimination, or something else.  Plaintiff merely assumes it involved sexual harassment merely because the complainant happened to be female.

Furthermore, the assumption is completely false.  There was and is no other lawsuit by another female.  Candidly, there is instead a pending EEOC administrative action for race discrimination. It is pending in Illinois, not Ohio as Plaintiff believes.  The accusation is not against a manager working in the headquarters, in Ohio, or Illinois.  The accused manager is not "C-level" either. *See* **Exhibit B** attached hereto, Declaration of Matt Drewyor ¶¶4-5.

Plaintiff goes too far, again, in requesting "all documents" that that merely "reflect" a complaint.  As the Illinois EEOC proceeding is likely to head to civil litigation, it would be unduly burdensome to produce every pleading, every motion, and every bit of discovery generated in that case.  It would be especially burdensome if RiscPoint were required to supplement that production on an on-going basis for the life of that case.

### (v)    "Me Too" Evidence Must Be Extremely Similar to be Relevant

"Relevant discovery means it must relate to the legal elements of the parties' 'claims or defenses,' and even then, relevant information may be produced only if it is proportional to the needs of the case considering the proportionality factors." Magistrate Spaeth Standing Order at 2:17–19.  Fishing expeditions are

**JOINT STIPULATION RE PLAINTIFF'S MOTION TO COMPEL DISCOVERY:**

**RULE 37-2.1**

discouraged.  Yet Plaintiff fails to make a showing that any other sexual harassment complaint is in any way similar to her own.

Discovery of me-too complaints requires that the allegations be very similar. *Sanchez v. Master Prot., LP*, 2021 WL 4125856 at *3 (C.D. Cal. 2021); *Constance Hanson-Poulson v. Dep't of Def.*, 2020 WL 2043999 at *3 (C.D. Cal. Mar. 2020) (holding a request for production of me-too complaints without limit to particular complainants, decision makers or geographic location was outside of the scope of relevancy).  Plaintiffs requesting me-too evidence would need to show that the other individuals also claiming discrimination were similarly situated to the plaintiff.  *Howard*, *supra*, 2011 WL 13177257 at *3. "Employees are similarly situated if they are similar '***in all material respects***,' that is, 'when they have ***similar jobs*** and display ***similar conduct***.'" *Id*. (bold added); *see also Wheat v. Wal-Mart Associates, Inc.*, 2024 WL 9455955 at *1 (E.D. Cal. 2024) (denying discovery of purported "me too" evidence because of lack of similarity).

Here, Plaintiff has no evidence of similar circumstances.  She has simply not met her burden of proof.  She has not established how the other "female" is a "comparator."  She has not established any "link" between her claim and the other.

In full candor, there was a sexual harassment claim that preceded Plaintiff's employment by two (2) years.  But that employee did not work in human resources like Plaintiff.  That employee did not work in California like Plaintiff.  That employee was not "overseen by Jake Nix."  That situation involved what can be fairly described as a soured relationship.  The employee initially asked Jacob Nix to act like her boyfriend ostensibly to keep other men at a bar from flirting with her.  They then had consensual physical relations.  The two dallied with the idea of possibly having a consensual romantic relationship.  The employee went on medical leave and then stopped working in December 2022.  Her legal counsel was then the first to make a claim for sexual harassment.  Outside defense counsel

**JOINT STIPULATION RE PLAINTIFF'S MOTION TO COMPEL DISCOVERY:**

**RULE 37-2.1**

investigated the matter under privilege and quickly settled the claim because it was
an inconclusive he-said she-said dispute in a soured relationship case complicated
by acts of consensual touching.  Exh. B, Drewyor Decl. ¶¶6-7.

By contrast, Plaintiff does not allege any sexual touching.  The other
employee worked a different job in a different place and with a different supervisor
than Plaintiff.  Because the two matters are not similar in all material respects
(*Howard, supra,* 2011 WL 13177257 at *3), the employee's name, the attorney
position letters, and the settlement agreement with that other employee should not
be disclosed.

Plaintiff argues that "me too" evidence in this case may establish a "pattern
or practice" or "pretext."  Plaintiff's Complaint would have to allege as a
foundation for the discovery "concrete" allegations of a "pattern or practice."
*Wheat*, *supra*, 2024 WL 9455955 at *2.  No such allegations exist in the Complaint
here.  Besides, given the dissimilarities of the two incidents, there is no pattern.
Two incidents hardly make a pattern or practice anyway.  Moreover, as Plaintiff
does not allege wrongful termination, there is no "pretext" aspect to the claims or
defenses either.

### (vi) Punitive Damages Are A Red Herring

Plaintiff's final argument – proof for punitive damages -- is premature.
First, the *Tijerina* case that Plaintiff cites speaks to evidence of actual "harm" to
other employees.  *Tijerina v. Alaska Airlines, Inc.*, 2022 WL 16824509 at *4 (S.D.
Cal. 2022).  Proof of "harm" is not established by a mere complaint or even a
claim, especially if it was not similar to the Plaintiff's.  Second, the *Tijerina* case
speaks, again, to proof of circumstances "similar to" the plaintiff. *Id*. at *4. Again,
there are no material similarities.

Third, as a practical matter, evidence going to punitive damages (such as
net worth of the defendant) is typically withheld until the second phase of trial (if

**JOINT STIPULATION RE PLAINTIFF'S MOTION TO COMPEL DISCOVERY:**

**RULE 37-2.1**

there is one).  If the information is not discoverable for purposes of liability, then it should not be discoverable for the express purpose of punishing the defendant well before liability is established.  Defendants are willing to provide the disclosures if and when there is a trial Phase 2.

### (vii)    There Is No Evidence of Similar Retaliation Complaints Either

Plaintiff's original discovery requests were overbroad and vague as to what kind of retaliation complaint was sought, be it general whistleblowing retaliation for any complaint of perceived unlawfulness or specific to retaliatory acts following a complaint of discrimination or harassment.  Even while trying to narrow her request now, Plaintiff is still a bit unclear.  She appears to be narrowing her request to similar "me too" complaints of retaliation.  She recasts her request for evidence of "retaliation [by those] overseen by Nix" that are "relevant to Plaintiff's claims that she was harassed by Nix, and retaliated by Defendants after she complained about Nix, i.e., similarly discriminatory and retaliatory claims."  Here, however, there is no other complaint, internal or external, of retaliation following a complaint of harassment.

### (viii)   The Existence of a Protective Order Does Not Render Everything Discoverable

The employee privacy rights at issue here are much greater than mere "personnel file" rights, as Plaintiff argues.  EEO-based complaints are typically stored in files separate and apart from the personnel file because of this higher degree of privacy.  Perez, P., *Advising California Employers and Employees* §16A.14, p.1710 (CEB 2025) ("The documentation should be kept separate from any employee's personnel file.").

A complaint about disability discrimination or sexual orientation discrimination, for example, can be highly embarrassing for the employee who by the nature of the complaint must reveal their medical ailment or their being

-20-

**JOINT STIPULATION RE PLAINTIFF'S MOTION TO COMPEL DISCOVERY:**

**RULE 37-2.1**

gay/lesbian.  The Court may issue an order to protect a party or person from

embarrassment by (1) prohibiting disclosure or discovery; (2) conditioning

disclosure or discovery on specified terms; (3) preventing inquiry into certain

matters; or (4) limiting the scope of disclosure or discovery to certain matters. Fed.

R. Civ. P. 26(c)(1).  Employee privacy rights yield to a protective order when the

relevancy outweighs the invasion of privacy. *Soto v. City of Concord*, 162 F.R.D.

603, 616 (N.D. Cal. 1995).  But the protective order itself does not render

information discoverable.

Should the evidence be deemed relevant under Rule 26, the Court should

order the information disclosed using generic terms like "Employee 1" in lieu of

actual employee names.  *Guthrey v. California Dept. of Corrections and

Rehabilitation*, 2012 WL 2499938 at *15 (E.D. Cal. 2012) (ordering disclosure of

race complaints with employee names redacted).

**JOINT STIPULATION RE PLAINTIFF'S MOTION TO COMPEL DISCOVERY:**

**RULE 37-2.1**

**IV.     Each Party's Statement of How It Proposed to Resolve Each Issue in Dispute At the "Meet and Confer" With Opposing Counsel**

A. Plaintiff's Statement

As noted above, Plaintiff wrote Defendants multiple meet and confer letters, citing applicable and relevant law, and participated in multiple telephonic meet and confer efforts to discuss Defendants' deficient responses and documentation. Ultimately, counsel for Defendants acknowledged that Defendants would not provide amended responses or documents to the "me too" evidence requested.

Specifically, on May 29, 2025, Plaintiff served on Defendants the following: (1) Interrogatories, Set One; and (2) Requests for Production of Documents, Set One. On July 9, 2025, counsel for Plaintiff received Defendants' partial responses to the said discovery requests.

On July 17, 2025, counsel for Plaintiff wrote a meet and confer letter to Defendants' counsel regarding deficient responses. On August 4 and 6, 2025, being in different counties, counsel for all parties engaged in a telephonic meet and confer call and discussed the deficient responses, including the relevant "me too" issues. Plaintiff attempted in good faith to resolve the disputes identified in the exhibits and conferred on the subject of the objections. As resolution, Plaintiff's counsel provided Defendants' additional time to provide supplemental responses.

Thereafter, counsel for Defendants served some "Supplemental" responses, but did not supplement the "me too" requests at issue. Again, counsel for Plaintiff wrote a meet and confer letter to Defendants' counsel regarding deficient responses, including the "me too" issues.

On August 19, 2025, being in different counties, counsel for all parties engaged in a telephonic meet and confer call and discussed the supplemental responses. Counsel for Plaintiff attempted in good faith to resolve the disputes identified in the exhibits and conferred on the subject of the objections. In efforts to

-22-

**JOINT STIPULATION RE PLAINTIFF'S MOTION TO COMPEL DISCOVERY:**

**RULE 37-2.1**

1  support informal resolution, Plaintiff's counsel provided Defendants' additional

2  time to provide supplemental responses.

3      On  August 21, 2025,  counsel for Defendants served partial "Supplemental"

4  responses to the Interrogatories at issue.   But again, Defendants did not supplement

5  the "me too" interrogatory at issue.

6      On August 25, 2025, counsel for Defendants served partial "Supplemental"

7  responses to the Requests for Production of Documents.  But again, Defendants did

8  not supplement the "me too" requests at issue.

9      Ultimately, as part of further email meet and confer attempts, it was agreed

10  upon by counsel for Defendants that the Parties were unable to resolve such "me

11  too" disputes informally, and <u>Defendants would not be providing any supplemental</u>

12  <u>"me too" response to the Interrogatory or Request for Production of Documents at</u>

13  <u>issue</u>.

14      Counsel for Plaintiff advised Defendants' counsel that Plaintiff would be

15  required to make a motion to compel, if Defendants were not interested in attending

16  an Informal Discovery Conference (IDC).  Counsel for Defendants indicated he was

17  not interested in attending an IDC for these "me too" issues, and agreed that Plaintiff

18  could move forward with a Motion to Compel.

19      <u>At specific issue are Defendants' failures to provide full and substantive</u>

20  <u>responses to: (1) Defendant RISC Point Interrogatory No. 1; and (2) Defendant RISC</u>

21  <u>POINT Request for Production No. 13/ Defendant NIX No. 10.</u>  Defendants' failure

22  to properly respond is improper for reasons set forth above.

23      Given the privacy issues regarding any complaints, Plaintiff does not request

24  sanctions under FRCP 37(A), as a professional courtesy.

25

26

27

28

-23-

**JOINT STIPULATION RE PLAINTIFF'S MOTION TO COMPEL DISCOVERY:**

**RULE 37-2.1**

B. <u>Defendants' Statement</u>

Defendants provided the above case authority – namely *Constance* and *Howard* -- for their positions.  Plaintiff did not limit the scope of the discovery requests in any way as she offers now.

Defendants allowed Plaintiff an opportunity to articulate how Plaintiff's claims were similar to any other employee claims so that disclosure could be fairly assessed.  Plaintiff did not share any foundational information.  In fact, Defendants' counsel pressed to see if Plaintiff or her counsel was aware of any other employee particular lawsuit, legal proceeding, claim or settlement.  Plaintiff's counsel indicated they were not aware of any.  Plaintiff did not even share the suspected 2024-2025 suit she now describes. This allegation is being raised for the first time.

Defendants in good faith voluntarily disclosed the fact that there were the two external accusations (not internal complaints) in the context of threatened litigation.  Defendants described those matters generally to assuage Plaintiff that the matters were not similar to Plaintiff's case.  Still, Plaintiff did not draw any links to the two other matters.

Defendants also suggested to have evidence disclosed for purposes of punitive damages after the liability phase of trial if there was a Phase 2 of trial, making an analogy to how financial records showing net worth are often provided after the liability phase of trial.

Incidentally, it is not accurate for Plaintiff to argue that Defendants "refused to attend an Informal Discovery Conference."  Defendants' position was that the particular issues presented by this motion required legal briefing and declarations.  Defendants were willing to attend an IDC, however, on simpler disputes not needing as much case law analysis and foundational evidence.

-24-

**JOINT STIPULATION RE PLAINTIFF'S MOTION TO COMPEL DISCOVERY:**

**RULE 37-2.1**

1  Date: September 16, 2025          Respectfully submitted,

2

3                                    By: __/s/ Jeff T. Olsen (via email

4                                    authorization)_____

5                                        RUBEN D. ESCALANTE
                                         JEFF T. OLSEN
6                                        Attorney for Plaintiff
                                         ASHLEY FRAGALE
7

8  Date: September 16, 2025          Respectfully submitted,

9                                    GORDON REES SCULLY
                                     MANSUKHANI, LLP
10

11

12                                   By: __/s/ L. Geoffrey Lee (via email
                                     authorization)
13
                                         L. GEOFFREY LEE
14                                       Attorney for Defendants
                                         RISC POINT ADVISORY GROUP
15                                       LLC; RISC POINT ASSURANCE,
                                         LTD; RISC POINT HOLDINGS, INC.;
16                                       JACOB NIX

17

18

19

20

21

22

23

24

25

26

27

28
                                   -25-

**JOINT STIPULATION RE PLAINTIFF'S MOTION TO COMPEL DISCOVERY:**

**RULE 37-2.1**

# EXHIBIT A

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—
GENERAL

| Case No. | 8:25-cv-00994-JWH-ADSx | Date | July 14, 2025 |
|---|---|---|---|
| Title | *Ashley Fragale v. RISC Point Advisory Group LLC, et al.* | | |

| Present: The Honorable | JOHN W. HOLCOMB, UNITED STATES DISTRICT JUDGE |
|---|---|

| Priscilla Deason | Not Reported |
|---|---|
| Deputy Clerk | Court Reporter |

| Attorney(s) Present for Plaintiff(s): | Attorney(s) Present for Defendant(s): |
|---|---|
| None Present | None Present |

**Proceedings:  SCHEDULING ORDER**

This case is set for trial before the Honorable John W. Holcomb in
Courtroom 9D, Ronald Reagan Federal Building and U.S. Courthouse, 411 W. 4th
Street, Santa Ana, California.

## I.  PRE-TRIAL AND TRIAL DEADLINES

| EVENT | DATE/DEADLINE |
|---|---|
| **Jury Trial** (Monday at 9:00 a.m.) | Monday, April 13, 2026<br><br>5 days |
| **Final Pretrial Conference** [L.R. 16] (Friday at 1:00 p.m.) | Friday, March 27, 2026 |
| **Hearing on Motions *In Limine*** (Friday at 9:00 a.m.) | Friday, March 20, 2026 |

| EVENT | DATE/DEADLINE |
|---|---|
| **Last Date to Hear Dispositive Motions** (Friday at 9:00 a.m.) | Friday, February 13, 2026 |
| **Last Date to Conduct Settlement Conference** | Friday, January 2, 2026 |
| **All Discovery Cut-Off** (including hearing all discovery motions) | Friday, December 5, 2025 |
| **Expert Disclosure** (Rebuttal) | Friday, November 21, 2025 |
| **Expert Disclosure** (Initial) | Friday, November 7, 2025 |

## II. AMENDING PLEADINGS AND ADDING PARTIES

There is no separate deadline for the parties to amend their pleadings or to add parties. Parties who wish to amend pleadings or to add parties shall comply with Rule 15(a)(1) or (2) and, if applicable, Rule 16(b)(4) of the Federal Rules of Civil Procedure, as well as L.R. 15-1 through L.R. 15-3 and L.R. 16-14.

## III. MOTIONS

### A.    Schedule and Procedures

Judge Holcomb hears motions in civil cases, through in-person appearances, on Fridays at 9:00 a.m. The cut-off date for hearing motions is the last day on which motions will be heard; *i.e.*, the motion must be filed at least 28 days before the deadline in accordance with the requirements of L.R. 6-1. ***A copy of every motion-related document filed (including documents pertaining to claim construction hearings in patent cases) must be delivered to the chambers drop box outside Courtroom 9D or transmitted to chambers via FedEx, UPS, or other overnight delivery service (the "Mandatory Chambers Copy").*** The cut-off date applies to all non-discovery motions except motions directly related to the conduct of trial (*e.g.*, motions *in limine* and motions to sever parties or to bifurcate issues for trial).

The parties are also reminded about their obligation to comply with L.R. 7-3, which requires a Conference of Counsel at least seven days before a party files most types of motions. The Court may deny a motion *sua sponte* if the moving party fails to comply strictly with L.R. 7-3.

## B.    Motions for Summary Judgment

The Court employs special procedures for summary judgment motions, including the parties' preparation of a mandatory ***Joint Exhibit*** and ***Joint Statement of Undisputed Facts and Genuine Disputes***. The parties and their counsel are directed to the Standing Order for a full explanation.

The Court reminds the parties that the cut-off date for hearing dispositive motions (*i.e.*, summary judgment motions) is the last day on which motions will be ***heard***, not ***filed***. The Court encourages parties to confer early and often regarding anticipated summary judgment motions and, when appropriate, to file a stipulation and proposed order to set a briefing schedule that provides the parties with more time between filing and opposition, and between opposition and reply, than the one week that is provided under L.R. 6-1, 7-9, and 7-10.

## C.    Motions *in Limine*

All motions *in limine* (including *Daubert* motions) and other trial-related motions must be filed at least 28 days before the Final Pretrial Conference and properly noticed for hearing ***one week before the date of the Final Pretrial Conference***. Oppositions to motions *in limine* are due 21 days before the Final Pretrial Conference (*i.e.*, 14 days before the hearing on motions *in limine*). Replies will not be accepted.

Counsel shall meet and confer thoroughly, in accordance with L.R. 7-3, in an effort to limit or eliminate the need for such trial-related motions. Memoranda of Points and Authorities in support of or in opposition to motions *in limine* shall not exceed 10 pages. Motions shall not be compound; *i.e.*, each motion shall address only one item of evidence or witness. If common grounds for exclusion or admission apply to multiple items of evidence or witnesses, each motion shall address only one category of evidence or witnesses. Motions *in limine* should not be disguised motions for summary judgment or summary adjudication.

## D.    Withdrawal and Non-Opposition of Motions

All parties and counsel must comply with L.R. 7-16, which provides as follows:

> Any moving party who intends to withdraw the motion before the hearing date shall file and serve a withdrawal of the motion, not later than seven (7) days preceding the hearing.  Any opposing party who no longer intends to oppose the motion, shall file and serve a withdrawal of the opposition, not later than seven (7) days preceding the hearing.

Failure to comply with this notification requirement may result in the imposition of sanctions on the offending counsel or party.

If a defendant files a motion to dismiss a complaint and the plaintiff subsequently amends that complaint, then the defendant shall file a Notice of Withdrawal of its motion to dismiss in accordance with L.R. 7-16, without waiting for the plaintiff or the Court to take action on the motion.

## IV.  DISCOVERY

Counsel shall initiate all discovery other than depositions at least *45 days* before the cut-off date.  The Court will not approve stipulations between counsel that permit responses to be served after the cut-off date except in unusual circumstances and for good cause shown.

All depositions must be completed by the discovery cut-off deadline. Counsel shall lodge all original depositions that will be used in trial with the Courtroom Deputy Clerk on the first day of trial.

Counsel are expected to resolve discovery problems without the assistance of the Court.  Discovery disputes have been referred to the Magistrate Judge assigned to this case.  The discovery cut-off is the last date to *complete* discovery, including expert discovery.  It is also the last day for hearing any discovery motion.

If not separately set forth above, the required expert disclosures shall be made *70 days* before the discovery cut-off date.

**CIVIL MINUTES—
GENERAL**                    Initials of Deputy Clerk pd

## V. SETTLEMENT PROCEDURES

Counsel must complete a settlement conference under the Court-Directed ADR Program (L.R. 16-15.4) no later than the date set by the Court above. If the parties desire to participate in an ADR procedure other than that elected in the Rule 26(f) Scheduling Report and Order, they shall file a stipulation with the Court. This request will not necessarily be granted.

Counsel shall include in the proposed Pretrial Conference Order a status report detailing what procedure has been followed and the status of settlement efforts. The case may not proceed to trial unless all parties, including the principals of all corporate parties, have appeared personally at a settlement conference and have complied with L.R. 16-15.5.

If a settlement is reached, it shall be reported immediately to this Court as required by L.R. 16-15.7. ***In all cases set for jury trial, the parties must notify the Court, no later than the Wednesday preceding the Monday trial date, of any settlement, so that the necessary arrangements can be made to bring in a different case for trial or to notify the members of the public who would otherwise be reporting for jury duty that their services are not needed that date. Failure to comply with this notification requirement may result in the imposition of sanctions on counsel for one or more parties, or their clients, or both.***

## VI. FINAL PRETRIAL CONFERENCE

The Court will conduct a Final Pretrial Conference pursuant to Rule 16 of the Federal Rules of Civil Procedure and L.R. 16-1 on the date and time listed above. Each party appearing in this action shall be represented at the Final Pretrial Conference and at all pretrial meetings by its lead trial counsel. Counsel should be prepared to discuss streamlining the trial, including the presentation of testimony by deposition excerpts, time limits, stipulations regarding undisputed facts, and the qualification of experts by admitted resumes. In rare cases where the Pretrial Conference is waived by the Court, counsel must follow L.R. 16-11. This Court does not exempt *pro per* parties from the requirements of L.R. 16.

**CIVIL MINUTES— GENERAL**

Initials of Deputy Clerk pd

## VII. MATTERS TO BE DISCUSSED AT THE FINAL PRETRIAL CONFERENCE

Counsel shall be prepared to discuss the following matters with the Court at the Pretrial Conference:

- the witnesses all parties intend to call during their respective cases, and the amount of time necessary for direct and cross examination of each witness;

- any anticipated problems in scheduling witnesses;

- any evidentiary issues, including anticipated objections under Rule 403 of the Federal Rules of Evidence, and objections to exhibits;

- jury selection procedures;

- all pretrial motions, including motions *in limine* and motions to bifurcate and to sever (which, as noted above, must be set for hearing at least one week before the Pretrial Conference);

- any disputed jury instructions, and the form of the instructions that will be given to the jury at the outset of the case, i.e., before opening statements and presentation of evidence;

- whether any counsel intends to use any evidence or demonstrative aid in opening statement; and

- motions to exclude witnesses from the courtroom during trial testimony.

If counsel for any party needs to arrange for the installation of their own equipment, such as video monitors, notebooks, or projection equipment, counsel shall notify the Courtroom Deputy Clerk no later than 4:00 p.m. on the Wednesday before trial so that the necessary arrangements can be made.

## VIII. PRETRIAL FILINGS

Counsel shall submit carefully prepared Memoranda of Contentions of Fact and Law (which may also serve as the trial briefs) and proposed Pretrial Conference Orders in accordance with the provisions of L.R. 16-4 through 16-7. The form of

**CIVIL MINUTES— GENERAL**

Initials of Deputy Clerk pd

the proposed Pretrial Conference Order shall be in conformity with the form set forth in Appendix A to the Local Rules.

The filing schedule for pretrial documents is as follows:

**A.    At Least 28 Days before Final Pretrial Conference**

- Motions *in limine* (which, as noted above, must be set for hearing at least one week before the Pretrial Conference)[1]

**B.    At Least 21 Days before Final Pretrial Conference**

- Memorandum of contentions of fact and law

- Witness lists

- Joint exhibit list

- Oppositions to motions *in limine* (which, as noted above, must be set for hearing at least one week before the Pretrial Conference)

**C.    At Least 14 Days before Final Pretrial Conference**

- Proposed Final Pretrial Conference Order

- Proposed jury instructions and any objections thereto

- Proposed verdict forms

- Statement of the case

- Proposed *voir dire* questions, if desired

**D.    At Least 7 Days before Trial:**

- Trial briefs, if desired.

---

[1]    In rare instances, the Court will set the deadline for hearing motions *in limine* for a date other than one week before the Final Pretrial Conference.  In those instances, motions *in limine* are due no later than 21 days before the hearing, and oppositions are due no later than 14 days before the hearing.

**CIVIL MINUTES— GENERAL**                Initials of Deputy Clerk pd

In drafting the Proposed Final Pretrial Conference Order, counsel shall make a good faith effort to agree on, and to set forth, as many uncontested facts as possible. The Court may read the uncontested facts to the jury at the start of the trial.

In drafting the factual issues in dispute for the Proposed Final Pretrial Conference Order, the issues of fact should track the elements of a claim or defense upon which the jury would be required to make findings. Counsel should attempt to state issues in ultimate fact form, not in the form of evidentiary fact issues (*i.e.*, "was the defendant negligent?"; "was such negligence the proximate cause of injury to the plaintiff?"; "was the plaintiff negligent?"; ***not***, "was the plaintiff standing on the corner of 5th Street and Spring Avenue at 10:00 a.m. on May 3?"). Counsel may list sub-issues under the headings of ultimate fact issues, but shall not use this as a device to list disputes over evidentiary matters.

Issues of law should state legal issues upon which the Court will be required to rule after the Pretrial Conference, including during the trial, and should not list ultimate fact issues to be submitted to the trier of fact.

Each party shall list and identify its respective expert witnesses, if any. Failure of a party to list and identify an expert witness in the Proposed Final Pretrial Conference Order shall preclude a party from calling that expert witness at trial.

## E.  Exhibit and Witness Lists

Counsel are directed to prepare their exhibits by placing them in three-ring binders that are tabbed down the right side with exhibit numbers. The spine portion of the binder shall indicate the volume number and shall contain an index of each exhibit included in the volume. The binders are to be prepared with an original for the Courtroom Deputy Clerk, which shall be tagged with the appropriate exhibit tags in the upper right-hand corner of the first page of each exhibit, and two copies for the Court (the "Judge's binders"). Each binder shall contain an index of the included exhibits. The exhibits are to be numbered in accordance with L.R. 26-3.

The Court requires the following to be submitted to the Courtroom Deputy Clerk on the first day of trial:

CIVIL MINUTES—
GENERAL

Initials of Deputy Clerk pd

- The original exhibits with the Court's exhibit tags. The parties shall use yellow tags for Plaintiff and blue tags for Defendant, which shall be stapled to the front of the exhibit on the upper right corner with the case number, case name, and exhibit number placed on each tag. Counsel can obtain exhibit tags at the Clerk's Office. Exhibit Tags (Plaintiff & Defendant, form G-014) are also available on the Court's website, under "Court Procedures," "Forms."

- Two Judge's binders with a copy of each exhibit for use by the Court, tabbed with numbers as described above. (Court's exhibit tags not necessary.)

- Four copies of the exhibit index.

   The exhibit index shall be in the following form:

| Case No. | Case Name: | | |
|---|---|---|---|
| Exhibit No. | Description | Date Identified | Date Admitted |
| 3 | 1/30/2005 Letter from Doe to Roe | | |

- Four copies of witness lists in the order in which the witnesses may be called to testify.

   The witness lists shall be in the following form:

| Case No. | Case Name: |
|---|---|
| Witness Name | Date Called to Testify |
| 1. John Doe | |
| 2. Jane Roe | |

   All counsel shall meet no later than ***10 calendar days*** before trial and shall stipulate to the extent possible regarding foundation, waiver of the best evidence

rule, and admission into evidence of exhibits at the start of trial.  The exhibits to be received will be noted on the extra copies of the exhibit lists.

## IX.  COURT REPORTER

At least seven days before the commencement of trial, counsel for the parties shall provide the court reporter with a list of unusual words, phrases, and spellings that may come up during trial.  This information should be emailed to Court Reporter Services at ReportersCACD@cacd.uscourts.gov.

## X.  JURY INSTRUCTIONS

*Fourteen calendar days* prior to the L.R. 16-2 Meeting of Counsel, counsel shall exchange proposed jury instructions and special verdict forms (if applicable). *Seven calendar days* prior to the L.R. 16-2 meeting, counsel shall exchange any objections to the instructions and special verdict forms.  Prior to or at the time of the L.R. 16-2 meeting, counsel shall meet and confer with the goal of reaching agreement regarding one set of joint, undisputed jury instructions and one special verdict form.

The parties shall file proposed jury instructions *fourteen calendar days* before the Final Pretrial Conference.  As always, the parties must submit Mandatory Chambers Copies to the Court.  In addition, the parties must submit electronic versions (in Word format) to the Court at the following e-mail address: JWH_Chambers@cacd.uscourts.gov.

As noted above, the parties must act jointly to submit proposed jury instructions.  The parties must submit one set of agreed upon jury instructions.  At the same time, the parties must submit another set of jury instructions containing the instructions upon which the parties disagree and the objections to those instructions.  Where the parties disagree on an instruction, the party opposing the instruction must attach a short (*i.e.*, one to two paragraphs) statement supporting the objection and the party submitting the instruction must attach a short statement supporting the instruction.  Each statement should be on a separate page and should follow directly after the disputed instruction.

**CIVIL MINUTES— GENERAL**    Initials of Deputy Clerk pd

Accordingly, the parties ultimately will submit one document or, if the parties disagree over any proposed jury instructions, two documents. If the parties submit two documents, those documents should consist of: (1) a set of agreed upon jury instructions; and (2) a set of disputed jury instructions along with reasons supporting and opposing each disputed instruction.

Where the ***Manual of Model Civil Jury Instructions for the Ninth Circuit*** provides a version of a requested instruction, the parties should submit the Model instruction. Where California law applies, the Court prefers counsel to use JUDICIAL COUNCIL OF CALIFORNIA, CIVIL INSTRUCTIONS—("CACI"). If neither of the above sources has an instruction on the subject, counsel are directed to consult the current edition of O'Malley, et al., FEDERAL JURY PRACTICE AND INSTRUCTIONS. Each requested instruction (a) shall cite the authority or source of the instruction; (b) shall be set forth in full; (c) shall be on a separate page; (d) shall be numbered; (e) shall cover only one subject or principle of law; and (f) shall not repeat principles of law contained in any other requested instruction.

The Court will send a copy of the jury instructions into the jury room for use by the jury during deliberations. Accordingly, in addition to the file copies described above, the parties shall file with the Courtroom Deputy Clerk and shall email to chambers on the first day of the trial a "clean set" of joint and/or proposed jury instructions that contain only the text of each instruction set forth in full on each page, with the caption "Court's Instruction Number __" (eliminating titles, supporting authority, indication of party proposing, etc.). This version will be referred to as the "Jury Copy" of the jury instructions.

An index page shall accompany all jury instructions submitted. The index page shall indicate the following:

- The number of the instruction;

- A brief title of the instruction;

- The source of the instruction and any relevant case citations; and

- The page number of the instruction.

  EXAMPLE:

| Number | Title | Source | Page |
|--------|-------|--------|------|
| 1 | Burden of Proof | 9th Cir. 12.02 | 7 |

## XI.  JOINT STATEMENT OF THE CASE

Counsel shall prepare a joint statement of the case which will be read by the Court to the prospective panel of jurors prior to the commencement of *voir dire*. The statement should not be longer than three paragraphs.  The statement shall be filed with the Court fourteen calendar days before the Final Pretrial Conference.

## XII.  TRIAL

The Court sets firm trial dates.  Counsel shall arrive at the Courtroom ***not later than 8:30 a.m.*** each day of trial.  The Court reserves the time from ***8:30 to 9:00 a.m.*** to handle legal and administrative matters outside the presence of the jury.  The trial will commence promptly at 9:00 a.m.  Counsel shall anticipate matters that may need discussion or hearing outside the presence of the jury and to raise them during this period.

The Court is in session with the jury on ***Mondays through Thursdays, 9:00 a.m. to 5:00 p.m., with a morning and an afternoon break and a lunch recess from approximately 12:00 noon to 1:00 p.m.***  In most instances, jury selection is completed on the first morning of trial, and counsel should be prepared to give opening statements and to begin their presentation of evidence immediately thereafter.

All counsel shall observe the following practices during trial:

- All counsel and parties shall rise when the jury enters and leaves the courtroom.

- Counsel shall stand when addressing the Court, including when objecting to opposing counsel's questions.

**CIVIL MINUTES— GENERAL**     Initials of Deputy Clerk pd

- When objecting, counsel shall state only "objection" and the legal ground for the objection (*e.g.*, hearsay, irrelevant, etc.). Counsel shall refrain from arguing the legal basis for the objection unless and until permission is granted to do so. Counsel shall instruct their witnesses to refrain from answering a question while an objection is pending.

- Counsel must seek leave to approach the Courtroom Deputy Clerk or the witness and shall question witnesses while standing at the lectern.

- Counsel shall not address or refer to witnesses or parties by first names alone, with the exception of witnesses under 14 years old.

- Counsel shall not discuss the law or argue the case in opening statements.

- Counsel shall address all remarks to the Court and shall not directly address the Courtroom Deputy Clerk, the Court Reporter, opposing counsel, or the jury (except in opening statement and closing argument and during *voir dire*). Counsel must ask the Court for permission to talk off the record in order to speak with opposing counsel.

- Counsel shall not make an offer of stipulation unless he or she has conferred with opposing counsel and believes that the stipulation will be accepted.

- While Court is in session, counsel may not leave the counsel table to confer with witnesses, colleagues, or assistants elsewhere in the courtroom unless the Court grants permission to do so in advance.

- Where a party has more than one lawyer, only one may conduct the direct or cross-examination of a particular witness or make objections with respect to that witness.

- If a witness was on the stand before a recess or adjournment, counsel shall have the witness back on the stand and ready to proceed when Court resumes.

- If there is more than a brief delay between witnesses, the Court may deem that the party has rested.

- The Court attempts to cooperate with witnesses and will, except in extraordinary circumstances, accommodate them by permitting them to be

**CIVIL MINUTES—
GENERAL**          Initials of Deputy Clerk pd

examined out of sequence.  Counsel should discuss any scheduling issues with opposing counsel.  If there is an objection, counsel shall confer with the Court in advance.

## XIII.  BENCH TRIALS

*Twenty-one calendar days* before the trial date, each party shall prepare and serve on opposing counsel copies of the proposed Findings of Fact and Conclusions of Law.  Each party shall review the other party's proposed Findings and Conclusions and make such changes in the party's own proposed Findings and Conclusions as necessary following such review.  *Fourteen calendar days* before the trial date, each party shall lodge two copies of its proposed Findings of Fact and Conclusions of Law with the Court, also serving other parties if changes have been made.  The parties shall be prepared to submit to the Court, and to exchange among themselves, supplemental Findings of Fact and Conclusions of Law during the course of the trial.

## XIV.  WEBSITE

Counsel are encouraged to review the Central District's website for additional information:  www.cacd.uscourts.gov.

The Courtroom Deputy Clerk is **DIRECTED** to serve a copy of this Order personally, electronically, or by mail on counsel for all parties to this action.

**IT IS SO ORDERED.**

CIVIL MINUTES— GENERAL

Initials of Deputy Clerk pd

# EXHIBIT B

1  L. GEOFFREY LEE (SBN: 234024)
   glee@grsm.com
2  GORDON REES SCULLY MANSUKHANI, LLP
   101 West Broadway, Suite 2000
3  San Diego, CA 92101
   Telephone: (619) 230-7418
4  Facsimile: (619) 696-7124

5  Attorneys for Defendants

6

7

8              UNITED STATES DISTRICT COURT

9              CENTRAL DISTRICT OF CALIFORNIA

10                  SOUTHERN DIVISION

11  ASHLEY FRAGALE, an individual,        )  CASE NO. 8:25-cv-00994 JWH
                                          )  (ADSx)
12                        Plaintiff,      )
                                          )  **DECLARATION OF MATT**
13         vs.                            )  **DREWYOR IN OPPOSITION TO**
                                          )  **MOTION TO COMPEL**
14  RISC POINT ADVISORY GROUP             )  **DISCOVERY**
    LLC; RISC POINT ASSURANCE,            )
15  LTD; RISC POINT HOLDINGS,             )  **[DISCOVERY DOCUMENT: REFERRED**
    INC.; JACOB NIX, and DOES 1           )  **TO MAGISTRATE JUDGE AUTUMN D.**
16  through 10, inclusive,                )  **SPAETH]**
                                          )
17                        Defendants.     )  Date: Wednesday, October 15, 2025
                                          )  Time:        10:00am
18                                        )  Location:    Courtroom 9D
                                          )
19 ─────────────────────────────────────── )

20

21

22

23

24

25

26

27

28

Gordon Rees Scully Mansukhani, LLP
633 West Fifth Street, 52nd Floor
Los Angeles, CA 90071

-1-
DECLARATION OF MATT DREWYOR
Case No. 8:25-cv-00994 JWH (ADSx)

Gordon Rees Scully Mansukhani, LLP
633 West Fifth Street, 52nd Floor
Los Angeles, CA 90071

## **DECLARATION OF MATT DREWYOR**

I, Matt Drewyor, do declare as follows:

1.    I am over 18 years of age.  I have personal knowledge of the facts below.  I do not intend to waive the attorney-client privilege by any statement made herein.

2.    I am the Chief Executive Officer of Defendant RISC Point Advisory Group, LLC. I was previously the Chief Operation Officer since July 2022 and was a Vice President since October 2021.   RISC Point Advisory Group, LLC employed Plaintiff Ashley Fragale beginning July 22, 2024.

3.    In connection with my regular duties as Chief Operating Officer of RISC Point Advisory Group, LLC, I was involved in major Human Resources tasks such as hiring, firing, and employee investigations.  I was also involved in pending or threatened litigation.

4.    I am informed that Plaintiff recently advised the Court that former CEO Jacob Nix "personally told Plaintiff in 2024 or 2025 that another woman had recently sued RISC POINT" and that she seeks complaints against "C-suite executives who worked out of the company's headquarters in Ohio."  I believe Plaintiff is mistaken.  There is no other employee lawsuit pending except the present one brought by Plaintiff Ashely Fragale.

5.    In late 2024, an employee filed an administrative charge with the Illinois EEOC agency accusing a white manager of discrimination based on her "race" and being "dark complexioned."  That employee did not work in human resources.  That employee did not work in California.  The accused manager is not "C" level.  The accused manager does not work or reside in Ohio either.  There is nothing in the charge asserting sexual harassment.  There is no mention of Jake Nix.  Furthermore, no internal complaint was made by this employee before she filed her legal action.

6.    There was an external complaint made by New York legal counsel in December 2022.  This claim involved an employee who did not work in human resources and was not a California employee.  This employee reported to a female manager and myself: she was not overseen by Jake Nix.  I participated in the investigation of the claim along with Risc Point's outside legal counsel.  From that process, I was debriefed and am informed that the employee initially asked Jacob Nix to act like her boyfriend ostensibly to keep other men at a bar from flirting with her.  They had consensual physical relations.  The two dallied with the idea of possibly having a consensual romantic relationship.  The employee then went on medical leave and then stopped working in December 2022.  Her legal counsel was the first to make a claim for sexual harassment.  Outside defense counsel investigated the matter under privilege and quickly settled the matter without litigation.

7.    Again, there was no internal complaint from the above-described employee either.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Executed this 15th day of September 2025, in Dundee, Michigan.



Matt Drewyor

DECLARATION OF MATT DREWYOR

Case No. 8:25-cv-00994 JWH (ADSx)

## PROOF OF SERVICE

I am an active member of the State Bar of California. I am not a party to the within action. My business address is 440 N. Barranca Ave. PMB 9496, Covina, CA 91723. On September 16, 2025, I served copies of the within documents described as:

**[DISCOVERY DOCUMENT: REFERRED TO MAGISTRATE JUDGE AUTUMN D. SPAETH]**

**JOINT STIPULATION REGARDING PLAINTIFF'S MOTION TO COMPEL DISCOVERY**

on the interested parties in this action as follows:

### See attached Service List

☒ BY ELECTRONIC/EMAIL - I caused the above document to be delivered to the office of the addressee via electronic e-mail. Said document was transmitted to the email address of that office which is listed on the Service List. I did not receive, within a reasonable after the transmission, any indication that the transmission was not successful.

I certify the foregoing is true and correct. Executed on September 16, 2025.

Ruben Escalante

1

**SERVICE LIST**

2

3  GEOFFREY LEE (SBN:234024)
   glee@grsm.com

4  ANAFRANCESCA COMUNALE (SBN: 323257)
   acomunale@grsm.com

5  GORDON REES SCULLY MANSUKHANI, LLP

6  101 West Broadway, Suite 2000

7  San Diego, CA 92101
   Telephone: (619) 230-7418

8  Facsimile: (619) 696-7124

9
   Attorneys for Defendants

10 RISC POINT ADVISORY GROUP LLC; RISC POINT ASSURANCE, LTD;
   RISC POINT HOLDINGS, INC.; JACOB NIX

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28