Ruben D. Escalante (Cal. Bar No. 244596)
Robert A. Escalante (Cal. Bar No. 270629)
ACLIENT PC
440 N Barranca Ave PMB 9496
Covina, California 91723
Telephone: (310) 431-9687
Email: ruben@aclientpc.com

Attorneys for Plaintiff
ASHLEY FRAGALE

[ADDITIONAL COUNSEL LISTED ON FOLLOWING PAGE]

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ASHLEY FRAGALE, <br><br> Plaintiffs, <br><br> vs. <br><br> RISC POINT ADVISORY GROUP LLC; RISC POINT ASSURANCE, LTD; RISC POINT HOLDINGS, INC.; JACOB NIX; and DOES 1 through 10, inclusive, <br><br> Defendants. | Case No.: 8:25-cv-00994 JWH (ADSx) <br><br> **[DISCOVERY DOCUMENT: REFERRED TO MAGISTRATE JUDGE AUTUMN D. SPAETH]** <br><br> **JOINT STIPULATION REGARDING PLAINTIFF'S MOTION TO COMPEL COMPLIANCE AND PRODUCTION OF DOCUMENTS** <br><br> Date:    Wednesday, October 22, 2025 <br> Time:       10:00am <br> Location:    6B <br><br> Discovery Cut-off Date: December 5, 2025 <br> PreTrial Conference Date: March 27, 2026 <br><br> Trial Date: April 13, 2026 |

1  Jeff T. Olsen (Cal. Bar No. 283249)
2  OLSEN WORKPLACE SOLUTIONS PC
   18012 Cowan, Ste 200
3  Irvine, California 92614
   Telephone: (949) 232-0455
4  Email: jeff@olsenws.com

5
   Attorneys for Plaintiff
6  ASHLEY FRAGALE

7
   L. GEOFFREY LEE (SBN: 234024)
8  glee@grsm.com
9  ANAFRANCESCA COMUNALE (SBN: 323257)
   acomunale@grsm.com
10 GORDON REES SCULLY MANSUKHANI, LLP
11 101 West Broadway, Suite 2000
   San Diego, CA 92101
12 Telephone: (619) 230-7418
13 Facsimile: (619) 696-7124

14 Attorneys for Defendants
15 RISC POINT ADVISORY GROUP LLC;
   RISC POINT ASSURANCE, LTD;
16 RISC POINT HOLDINGS, INC.;
17 JACOB NIX

18

19

20

21

22

23

24

25

26

27

28

**JOINT STIPULATION RE PLAINTIFF'S MOTION TO COMPEL COMPLIANCE AND PRODUCTION OF DOCUMENTS RULE 37-2.1**

# **Table of Contents**

I.   **Introduction**                                                                                      4

   A.   Plaintiff's Introduction                                                                           4

   B.   Defendants' Introduction                                                                           6

II.   **Verbatim Statement of Each Interrogatory or Request at Issue, and Corresponding Objection at Issue**                                                                                      10

   A.   Plaintiff's Request for Production of Documents to Defendant RISC POINT ADVISORY GROUP, LLC, Request 1 / Defendant NIX, Request 1; And Defendants' Corresponding Responses                                                                                     10

   B.   Plaintiff's Request for Production of Documents to Defendant RISC POINT ADVISORY GROUP, LLC, Request 2 / Defendant NIX, Request 2;  And Defendants' Corresponding Responses                                                                                     10

   C.   Plaintiff's Request for Production of Documents to Defendant RISC POINT ADVISORY GROUP, LLC, Request 11; And Defendant's Corresponding Response                                 11

   D.   Plaintiff's Request for Production of Documents to Defendant RISC POINT ADVISORY GROUP, LLC, Request 12                                                                          11

   E.   Plaintiff's Request for Production of Documents to Defendant NIX, Request 12         12

   F.   Plaintiff's Request for Production of Documents to Defendant RISC POINT ADVISORY GROUP, LLC, Request 14 / Defendant NIX, Request 11;  And Defendants' Corresponding Responses                                                                                     12

   G.   Plaintiff's Request for Production of Documents to Defendant RISC POINT ADVISORY GROUP, LLC, Request 15 / Defendant NIX, Request 13; And Defendants' Corresponding Responses                                                                                     13

   H.   Plaintiff's Request for Production of Documents to Defendant RISC POINT ADVISORY GROUP, LLC, Request 17 / Defendant NIX, Request 14;  And Defendants' Corresponding Responses                                                                                     13

   I.   Plaintiff's Request for Production of Documents to Defendant RISC POINT ADVISORY GROUP, LLC, Request 19 / Defendant NIX, Request 16;  And Defendants' Corresponding Responses                                                                                     14

   J.   Plaintiff's Request for Production of Documents to Defendant RISC POINT ADVISORY GROUP, LLC, Request 20 / Defendant NIX, Request 17;  And Defendants' Corresponding Responses                                                                                     14

   K.   Plaintiff's Request for Production of Documents to Defendant RISC POINT ADVISORY GROUP, LLC, Request 21 / Defendant NIX, Request 18;  And Defendants' Corresponding Responses                                                                                     15

   L.   Plaintiff's Request for Production of Documents to Defendant RISC POINT ADVISORY GROUP, LLC, Request 22 / Defendant NIX, Request 19;  And Defendants' Corresponding Responses                                                                                     15

**JOINT STIPULATION RE PLAINTIFF'S MOTION TO COMPEL COMPLIANCE AND PRODUCTION OF DOCUMENTS RULE 37-2.1**

M.    Plaintiff's Request for Production of Documents to Defendant RISC POINT ADVISORY GROUP, LLC, Request 23 / Defendant NIX, Request 20;  And Defendants' Corresponding Responses                                                                                16

N.    Plaintiff's Request for Production of Documents to Defendant RISC POINT ADVISORY GROUP, LLC, Request 29 / Defendant NIX, Request 21;  And Defendants' Corresponding Responses                                                                                16

O.    Plaintiff's Request for Production of Documents to Defendant RISC POINT ADVISORY GROUP, LLC, Request 30 / Defendant NIX, Request 22;  And Defendants' Corresponding Responses                                                                                17

P.    Plaintiff's Request for Production of Documents to Defendant RISC POINT ADVISORY GROUP, LLC, Request 31; And Defendant's Corresponding Response                        17

Q.    Plaintiff's Request for Production of Documents to Defendant RISC POINT ADVISORY GROUP, LLC, Request 32 / Defendant NIX, Request 24;  And Defendants' Corresponding Responses                                                                                18

R.    Plaintiff's Request for Production of Documents to Defendant RISC POINT ADVISORY GROUP, LLC, Request 33; And Defendant's Corresponding Response                        18

S.    Plaintiff's Request for Production of Documents to Defendant RISC POINT ADVISORY GROUP, LLC, Request 36; And Defendant's Corresponding Response                        19

T.    Plaintiff's Request for Production of Documents to Defendant RISC POINT ADVISORY GROUP, LLC, Request 37 / Defendant NIX, Request 26;  And Defendants' Corresponding Responses                                                                                19

III.    **Each Party's Contentions with Respect to Each Issue in Dispute**                        20

A.    Plaintiff's Contentions/Memorandum of Points and Authorities                        20

B.    Defendants' Contentions/Memorandum of Points and Authorities                        21

IV.    **Each Party's Statement of How It Proposed to Resolve Each Issue in Dispute At the "Meet and Confer" With Opposing Counsel**                        29

A.    Plaintiff's Statement                        29

B.    Defendants' Statement                        31

V.    **Requests for Sanctions**                        32

A.    Plaintiff's Position                        32

B.    Defendants' Position                        33

**JOINT STIPULATION RE PLAINTIFF'S MOTION TO COMPEL COMPLIANCE AND PRODUCTION OF DOCUMENTS RULE 37-2.1**

TO THE HONORABLE COURT, ALL PARTIES, AND THEIR ATTORNEYS OF RECORD:

Counsel for Plaintiff Ashley Fragale ("Plaintiff") and Defendants RISC POINT ADVISORY GROUP LLC, and JACOB NIX, ("Defendants") have met and conferred regarding Plaintiff's position that Defendants have failed to produce their complete document production, including their ESI document production in a timely manner, and should be compelled to produce documents by a date certain, pursuant to the Joint Scheduling Report as ordered by the Court.

Following multiple conferences between counsel, counsel for Plaintiff and Defendant jointly provide the following response, including attaching as **Exhibit A**, a copy of the Scheduling Order, as required by CD CA Rule 37-2.1.

## I.  <u>Introduction</u>

 A. <u>Plaintiff's Introduction</u>

1.    Plaintiff Ashley Fragale ("Plaintiff") respectfully moves this Court for an order compelling Defendants to comply with its discovery obligations and produce its complete document production, including ESI documents, within fourteen (14) calendar days of the Court's order.

2.    By brief background, Defendant RISC Point Advisory Group LLP ("RISC Point") and the other related entity defendants hired Plaintiff to work for them as a Human Resources Generalist – making her the only Human Resources employee at Defendants the time.   Plaintiff worked remotely from California, but reported to the Chief Operating Officer, located at Defendants' headquarters in Ohio.  During her employment, Plaintiff was subjected to sexual harassment by and from Defendant Jacob Nix ("Nix"), the Founder and Chief Executive Officer of Defendant RISC Point, both in-person during live work trips, and online through

-4-

video and electronic messaging.   After Plaintiff complained, she was retaliated against by Defendants.

3.      Plaintiff's civil Complaint alleges the following causes of action:  (1) Quid Pro Quo Harassment in Violation of FEHA – Gender/Sex (Gov. Code § 12940 et seq.); (2) Hostile Environment Harassment in Violation of FEHA- Gender/Sex (Gov. Code § 12940 et seq.); (3) Retaliation in Violation of FEHA (Gov. Code § 12940 et seq.); (4) Failure to Prevent in Violation of FEHA (Gov. Code § 12940 et seq.); and (5) Whistleblower Retaliation Violation of Labor Code § 1102.5.

4.      Plaintiff propounded written discovery to Defendants.   Defendants' initial deadline for production of documents for Plaintiff's propounded Requests for Production ("RFP") was May 29, 2025.

5.      Following failed meet and confer efforts (as further described below), Plaintiff met and conferred with Defendants for months regarding the topic of their ESI production (among other topics), and set multiple reasonable deadlines for Defendants' production, which Defendants have either failed to acknowledge, or purposefully let lapse.   Defendants have produced discovery responses promising production of the ESI documents on 20 different discovery requests at issue here (for each RISC POINT and NIX), as listed below, but production has not been completed to date.

6.      Pursuant to L.R. 37-2.1., as of the date Plaintiff provided its portion of its joint stipulation re motion to compel to Defendants (i.e., September 22, 2025), Defendants' <u>have not provided any ESI discovery</u> (e.g. no emails, no text messages, no attachments, etc.) or completed their document production

7.      In fact, on September 22, 2025, after meeting and conferring for months, Plaintiff's called counsel for Defendants one last time to see if any stipulation could be reached to avoid the current motion.  <u>Not only did Defendants'</u>

-5-

**JOINT STIPULATION RE PLAINTIFF'S MOTION TO COMPEL COMPLIANCE AND PRODUCTION OF DOCUMENTS RULE 37-2.1**

counsel refuse to stipulate to any future date certain for Defendants' production of
ESI documents, he also confirmed that no initial "hit report" has even been run on
agreed-upon custodian ESI sources, and he could not guarantee that any ESI
production by Defendants would occur before the discovery cut-off date in this
case.

8.    Plaintiff has been severely prejudiced by Defendants' undue delay.

9.    In conclusion, Defendants failed to reasonably comply with their
discovery obligations to produce all documents, including ESI discovery, by a
reasonable date.  It is regrettable that the Court must now get involved to set a date
certain for Defendants to produce their documents, but without such help by the
Court, Plaintiff would not timely obtain the discovery to which she is entitled by
the FRCP and Local Rules.

10.    Plaintiff requests that the Court order Defendants to produce all
documents pursuant to its discovery responses within fourteen (14) days of the
Court's decision.

B. Defendants' Introduction

11.    Plaintiff issued immensely broad Requests for Documents.  For one
example, Plaintiff's Request for Production to Risc Point Advisory Group LLC
("Risc Point") No. 11 seeks: "Any and all documents that relate to any
communications that you have had with Plaintiff."  That request on its face sought
every email and instant message ever exchanged with the Plaintiff.  Worse,
Plaintiff then insisted on a voluminous E-discovery production being completed in
*less than (4) weeks* after counsel reached an agreement on the ESI search
parameters.  Five weeks after the agreement on ESI search parameters, the volume
of documents was verified to be in the millions of pages.  Yet Plaintiff would still
not withdraw this hasty motion.  Simply put, Plaintiff's rush is unreasonable.

**JOINT STIPULATION RE PLAINTIFF'S MOTION TO COMPEL COMPLIANCE AND
PRODUCTION OF DOCUMENTS RULE 37-2.1**

Defendants have acted reasonably and with reasonable speed under the circumstances.

12.     This motion should be summarily denied.  Plaintiff has not provided any legal authority in support of her hasty demand for ESI production completion, and, as such, she has failed to meet her burden of proof on this motion.  Plaintiff has not provided any analysis of the particular Requests for Documents she lists as being in dispute. Because Plaintiff ultimately has not provided any authority suggesting that all the millions of emails she seeks could have been produced by now, the motion should be denied, and cross-sanctions should be imposed.

13.     More specifically, Plaintiff served Requests for Documents on May 29, 2025.  Defendants served objections and responses on July 9, 2025.  On July 15, 2025, Defendants made a second production of documents following their initial disclosures.

14.     All counsel met and conferred on the overbroad requests for e-mails, which eventually resulted in Plaintiff's counsel first initiating an ESI production plan on August 6, 2025.  Counsel's August 6 letter for the first time proposed a list of custodians, search terms, and time periods.  On August 12, Defendants' counsel responded with a letter agreeing to most of the proposed terms, except a few.

15.     On **August 19, 2025**, counsel held a teleconference to discuss the lingering disputes over the ESI plan.  The agreed-upon search terms of the ESI plan were memorialized in an email that day.  *See* **Exhibit C** (Declaration of Geoffrey Lee ("Lee Decl.") at ¶11, **Exhibit F**).[1]

16.     The E-Discovery Protective Order was finalized and submitted to the Court on August 21, 2025.

---

[1] The parties still disagreed that the search terms "pay*"and "paid" were too generic.  The parties still disagreed that the terms "high" and "drug" were irrelevant and would likely result in privacy violations.  Exh. C, Lee Decl. ¶9, Exh. E.

**JOINT STIPULATION RE PLAINTIFF'S MOTION TO COMPEL COMPLIANCE AND
PRODUCTION OF DOCUMENTS RULE 37-2.1**

17.     On August 25, 2025, Defendants served Second Supplemental Responses to Requests for Documents with confirmation under oath that there was, at last, a concluded (partial) agreement on the ESI plan, which was referred to as the "ESI Agreement."

18.     Around the same time, Defendants vetted three potential ESI vendors to perform the collection and search processes: (1) Consilio, (2) Lighthouse, and (2) KL Discovery.  Because Defendants' business involves the handling of sensitive federal agency documents, it was important that the chosen ESI vendor have certain security clearances.  *See* **Exhibit B** (Declaration of Matthew Drewyor filed concurrently herewith at ¶¶5-6).

19.     KL Discovery's ("KLD") service agreement was drawn up on September 2, 2025.  Exh. C, Lee Decl. ¶13, **Exhibit G**.  Risc Point declined to sign because it had met its insurance deductible and believed that the cost should be incurred by its insurance carrier.  This occurred roughly one week after the parties reached their ESI agreement.

20.     The very next day, on September 3, 2025, Defendants' insurance carrier was asked to sign the KLD agreement.  Defendants' counsel followed up with the insurance carrier again on September 4.  On September 5, the insurance carrier adjuster declined to sign the KLD agreement and requested a conference call to discuss the reasons.  This was roughly two weeks from the parties' ESI agreement.

21.     On September 10, 2025, Defendants' insurance carrier explained the requested terms and parameters of the contract.

22.     Also on September 10, 2025, Defendants' counsel explained to Plaintiff's counsel the status of the KLD contract.  Plaintiff's attorney Ruben Escalante was understanding but asserted his expectation that production be completed sometime "in September." Exh. C., Lee Decl. ¶16, **Exhibit I**.

-8-

23.     KLD then materially redrafted the service agreement.  On September 18, 2025, Defendants' counsel sought the carrier's approval of the new contract. The next day, a Friday, the carrier approved it.

24.     The following Monday, September 22, 2025, Risc Point signed the redrafted service agreement and authorized KLD to begin work immediately.  That same day, Plaintiff's counsel served on Defendants this instant Motion to Compel.

25.     On September 26, 2025, KLD reported that there were over 130 Gigabytes of electronic communications estimated to be between a half-million to 5 million pages.  Plaintiff still refused to revise the ESI production plan despite this overly burdensome volume.  This refusal to cooperate was highly improper. "[T]he purpose of the amended Federal Rules is to require parties, not courts, to make the tough choices that fit the particular discovery needs of a case." *Aguilar v. Immigration and Customs Enforcement Div. of U.S. Dept. of Homeland Sec*., 255 F.R.D. 350, 359 (S.D.N.Y. 2008).  Accordingly, Plaintiff's motion should be denied, and the parties should be ordered to meet and confer on revising the ESI production plan in light of the disproportionate and unreasonable volume of electronic records.

///

///

**JOINT STIPULATION RE PLAINTIFF'S MOTION TO COMPEL COMPLIANCE AND PRODUCTION OF DOCUMENTS RULE 37-2.1**

## II.  Verbatim Statement of Each Interrogatory or Request at Issue, and Corresponding Objection at Issue

A. Plaintiff's Request for Production of Documents to Defendant RISC POINT ADVISORY GROUP, LLC, Request 1 / Defendant NIX, Request 1; And Defendants' Corresponding Responses

**REQUEST FOR PRODUCTION TO RISC POINT NO. 1/ TO NIX NO. 1:**
"Any and all DOCUMENTS which RELATE TO conversations, communications with, or statements by YOU or received by YOU, RELATING TO any and all matters encompassed by the COMPLAINT.[2]

**RISC POINT's SUPPLEMENTAL RESPONSE TO REQUEST NO. 1, and NIX No. 1:**
"Subject to and incorporating all prior objections and responses, Responding Party will comply to the extent responsive records are found as a result of the ESI Agreement between counsel."

B. Plaintiff's Request for Production of Documents to Defendant RISC POINT ADVISORY GROUP, LLC, Request 2 / Defendant NIX, Request 2; And Defendants' Corresponding Responses

**REQUEST FOR PRODUCTION TO RISC POINT NO. 2/ TO NIX NO. 2:**
**"Any and all DOCUMENTS which RELATE TO conversations, communications with, or statements by YOU or received by YOU, RELATING TO PLAINTIFF.**

---

[2] Plaintiff served onto Defendant Nix corresponding Requests for Production of Documents with the same request language, as provided. As relevant, NIX responded with identical objections as Defendant RISC POINT, as provided. Thus, Plaintiff seeks to compel compliance from Defendants RISC POINT and NIX on the Request for Production of Documents.

**JOINT STIPULATION RE PLAINTIFF'S MOTION TO COMPEL COMPLIANCE AND PRODUCTION OF DOCUMENTS RULE 37-2.1**

1

2    **RISC POINT's SUPPLEMENTAL RESPONSE TO REQUEST NO.**

3    **2, and NIX No. 2:**

4    "Subject to and incorporating all prior objections and responses,

5    Responding Party will comply to the extent responsive records are found as a result of the ESI Agreement between counsel."

6

7    C.   Plaintiff's Request for Production of Documents to Defendant RISC POINT ADVISORY GROUP, LLC, Request 11; And Defendant's Corresponding

8        Response

9

10   **REQUEST FOR PRODUCTION TO RISC POINT NO. 11:**
     **"Any and all DOCUMENTS RELATED TO or that**

11   **support YOUR affirmative defenses.**

12

13   **RISC POINT's SUPPLEMENTAL RESPONSE TO REQUEST NO.**

14       **11:**

15   "Subject to and incorporating all prior objections and responses, Responding Party will comply."[3]

16

17   D.   Plaintiff's Request for Production of Documents to Defendant RISC POINT ADVISORY GROUP, LLC, Request 12

18

19   **REQUEST FOR PRODUCTION TO RISC POINT NO. 12:**
     **"Any and all DOCUMENTS that constitute or reflect any**

20   **file YOU maintain regarding PLAINTIFF."**

21

22

23

24   [3] Defendant NIX did not provide a response to NIX No. 8, only objections.  During

25   multiple meet and confer conferences, Counsel for the Parties agreed that all duplicative requests would be answered similarly.  To the extent Defendant NIX

26   takes a position that Request No. 8 to NIX was not meant to be verified under oath with the same response as Defendant RISC POINT, Defendants move to compel

27   NIX's response and compliance to NIX No. 8.

28                                          -11-

**RISC POINT's SUPPLEMENTAL RESPONSE TO REQUEST NO. 12:**
"Subject to and incorporating all prior objections and responses, Responding Party will comply."[4]

E. Plaintiff's Request for Production of Documents to Defendant NIX, Request 12

**REQUEST FOR PRODUCTION TO NIX NO. 12:**
**"Any and all DOCUMENTS or COMMUNICATIONS that reflect your use of the following words with any employee, owner, director, officer, agent, or managing agent of any defendant in this action: cunt and/or cunty."**

**NIX's SUPPLEMENTAL RESPONSE TO REQUEST NO. 12:**
"Subject to and incorporating all prior objections and responses, Responding Party will comply."

F. Plaintiff's Request for Production of Documents to Defendant RISC POINT ADVISORY GROUP, LLC, Request 14 / Defendant NIX, Request 11;  And Defendants' Corresponding Responses

**REQUEST FOR PRODUCTION TO RISC POINT NO. 14/ TO NIX NO. 11:**
**"Any and all DOCUMENTS that RELATE TO any COMMUNICATIONS that YOU have had with PLAINTIFF."**

---

[4] Defendant NIX did not provide a complete response to RFP to NIX 9 either. Same as the footnote above:  During multiple meet and confer conferences, Counsel for the Parties agreed that all duplicative requests would be answered similarly.  To the extent Defendant NIX takes a position that Request No. 9 to NIX was not meant to be verified under oath with the same response as Defendant RISC POINT, Defendants move to compel NIX's response and compliance to No. 9.

**JOINT STIPULATION RE PLAINTIFF'S MOTION TO COMPEL COMPLIANCE AND PRODUCTION OF DOCUMENTS RULE 37-2.1**

**RISC POINT's SUPPLEMENTAL RESPONSE TO REQUEST NO.**

**14 and NIX No. 11:**

"Subject to and incorporating all prior objections and responses, Responding Party will comply to the extent responsive records are found as a result of the ESI Agreement between counsel."

G. Plaintiff's Request for Production of Documents to Defendant RISC POINT ADVISORY GROUP, LLC, Request 15 / Defendant NIX, Request 13; And Defendants' Corresponding Responses

**REQUEST FOR PRODUCTION TO RISC POINT NO. 15/**
**TO NIX NO. 13:**
**"Any and all DOCUMENTS which refer, RELATE, or in any way pertain to PLAINTIFF. This request includes any DOCUMENTS created by, sent by or received by any of YOUR employees and/or agents wherein PLAINTIFF is discussed or mentioned."**

**RISC POINT's SUPPLEMENTAL RESPONSE TO REQUEST NO.**

**15 and NIX No. 13:**

"Subject to and incorporating all prior objections and responses, Responding Party will comply to the extent responsive records are found as a result of the ESI Agreement between counsel."

H. Plaintiff's Request for Production of Documents to Defendant RISC POINT ADVISORY GROUP, LLC, Request 17 / Defendant NIX, Request 14;  And Defendants' Corresponding Responses

**REQUEST FOR PRODUCTION TO RISC POINT NO. 17/**
**TO NIX NO. 14:**
**"Any and all DOCUMENTS that RELATE TO a statement taken by any party and/or witness who would support YOUR denial of any allegation of PLAINTIFF's COMPLAINT or defense thereto."**

-13-

**RISC POINT's SUPPLEMENTAL RESPONSE TO REQUEST NO.**

      **17 and NIX No. 14:**

"Subject to and incorporating all prior objections and responses, Responding Party states that no "witness statements" are in its possession, custody, or control but that it will comply to the extent responsive records are found as a result of the ESI Agreement between counsel."

I. Plaintiff's Request for Production of Documents to Defendant RISC POINT ADVISORY GROUP, LLC, Request 19 / Defendant NIX, Request 16;  And Defendants' Corresponding Responses

**REQUEST FOR PRODUCTION TO RISC POINT NO. 19/ TO NIX NO. 16:**
**"Any and all DOCUMENTS RELATED TO any investigation conducted in response to any complaint made by PLAINTIFF, including but not limited to any investigation initiated, conducted, or contemplated using John Hawkins and/or Aisha Adams."**

**RISC POINT's FURTHER SUPPLEMENTAL RESPONSE TO**

      **REQUEST NO. 19, and NIX No. 16:**

"Subject to and incorporating all prior objections and responses, Responding Party will comply."

J. Plaintiff's Request for Production of Documents to Defendant RISC POINT ADVISORY GROUP, LLC, Request 20 / Defendant NIX, Request 17;  And Defendants' Corresponding Responses

**REQUEST FOR PRODUCTION TO RISC POINT NO. 20/ TO NIX NO. 17:**
**"Any and all DOCUMENTS reflecting COMMUNICATIONS, including but not limited to any agreement, between YOU and John Hawkins."**

-14-

**RISC POINT's SUPPLEMENTAL RESPONSE TO REQUEST NO.**

**20 and NIX No. 17:**

"Responding Party objects to the extent the request assumes that Jake Nix personally hired John Hawkins. Subject to the foregoing objections, Responding Party will produce all communications to and from John Hawkins."

K. Plaintiff's Request for Production of Documents to Defendant RISC POINT ADVISORY GROUP, LLC, Request 21 / Defendant NIX, Request 18; And Defendants' Corresponding Responses

**REQUEST FOR PRODUCTION TO RISC POINT NO. 21/
TO NIX NO. 18:**
**"Any and all DOCUMENTS reflecting COMMUNICATIONS, including but not limited to any agreement, between YOU and Aisha."**

**RISC POINT's SUPPLEMENTAL RESPONSE TO REQUEST NO.**

**21 and NIX No. 18:**

"Responding Party objects to the extent the request assumes that Jake Nix personally hired Aisha Adams or that RiscPoint hired Aisha Adams. Subject to the foregoing objections, Responding Party will comply."

L. Plaintiff's Request for Production of Documents to Defendant RISC POINT ADVISORY GROUP, LLC, Request 22 / Defendant NIX, Request 19; And Defendants' Corresponding Responses

**REQUEST FOR PRODUCTION TO RISC POINT NO. 22/
TO NIX NO. 19:**
**"Please produce any and all DOCUMENTS which refer, RELATE, or in any way pertain to PLAINTIFF's complaints to YOU."**

**RISC POINT's SUPPLEMENTAL RESPONSE TO REQUEST NO.**

    **22 and NIX No. 19:**

"Subject to and incorporating all prior objections and responses, Responding Party will comply to the extent responsive records are found as a result of the ESI Agreement between counsel."

M. <u>Plaintiff's Request for Production of Documents to Defendant RISC POINT ADVISORY GROUP, LLC, Request 23 / Defendant NIX, Request 20;  And Defendants' Corresponding Responses</u>

**REQUEST FOR PRODUCTION TO RISC POINT NO. 23/**
**TO NIX NO. 20:**

**"Please produce any and all DOCUMENTS RELATED TO, referred to in, that support, or were used to prepare YOUR initial disclosures."**

**RISC POINT's FURTHER SUPPLEMENTAL RESPONSE TO**

    **REQUEST NO. 23 and NIX No. 20:**

"Subject to and incorporating all prior objections and responses, Responding Party will comply."

N. <u>Plaintiff's Request for Production of Documents to Defendant RISC POINT ADVISORY GROUP, LLC, Request 29 / Defendant NIX, Request 21;  And Defendants' Corresponding Responses</u>

**REQUEST FOR PRODUCTION TO RISC POINT NO. 29/**
**TO NIX NO. 21:**

**"Any and all reviews, performance appraisals, memos, studies or other similar DOCUMENTS relevant to promotions, bonuses, awards, pay rate decisions, pay increases, raises, demotions, disciplinary actions, or the rate of PLAINTIFF's compensation while PLAINTIFF was employed with YOU."**

**RISC POINT's SUPPLEMENTAL RESPONSE TO REQUEST NO.**

    **29 and NIX No. 21:**

"Subject to and incorporating all prior objections and responses, Responding Party will produce payroll and personnel files of Plaintiff and comply to the extent responsive records are found as a result of the ESI Agreement between counsel."

O. <u>Plaintiff's Request for Production of Documents to Defendant RISC POINT ADVISORY GROUP, LLC, Request 30 / Defendant NIX, Request 22;  And Defendants' Corresponding Responses</u>

**REQUEST FOR PRODUCTION TO RISC POINT NO. 30/
TO NIX NO. 22:**

**"Any and all DOCUMENTS, including internal memoranda, which evidence, refer to, or RELATE TO [sic] quality of PLAINTIFF s job performance."**

**RISC POINT's SUPPLEMENTAL RESPONSE TO REQUEST NO.**

    **30 and NIX No. 22:**

"Subject to and incorporating all prior objections and responses, Responding Party will produce personnel files and any documents reflecting discipline, reprimand, or warning and comply to the extent responsive records are found as a result of the ESI Agreement between counsel."

P. <u>Plaintiff's Request for Production of Documents to Defendant RISC POINT ADVISORY GROUP, LLC, Request 31; And Defendant's Corresponding Response</u>

**REQUEST FOR PRODUCTION TO RISC POINT NO. 31**

**"Any and all DOCUMENTS, including internal memoranda, which evidence, refer to, or RELATE TO discussions pertaining**

-17-

to terminating or separating PLAINTIFF's employment, including but not limited to any discussions pertaining to potentially offering PLAINTIFF severance."

**RISC POINT's RESPONSE TO REQUEST NO. 31:**
"Responding Party objects that the request is vague and overbroad. Given the overbreadth, Responding Party objects to the extent it invades the attorney-client privilege. Subject to the foregoing objections, Responding Party will comply."

Q. Plaintiff's Request for Production of Documents to Defendant RISC POINT ADVISORY GROUP, LLC, Request 32 / Defendant NIX, Request 24;  And Defendants' Corresponding Responses

**REQUEST FOR PRODUCTION TO RISC POINT NO. 32/ TO NIX NO. 24:**

**"Any and all DOCUMENTS, including internal memoranda, which evidence, refer to, or RELATE TO discussions pertaining to engaging or hiring Allison Laurence Bailey."**

**RISC POINT's SUPPLEMENTAL RESPONSE TO REQUEST NO. 32 and NIX No. 24:**
"Subject to and incorporating all prior objections and responses, and as best Responding Party can understand his request, Responding Party states that it will comply."

R. Plaintiff's Request for Production of Documents to Defendant RISC POINT ADVISORY GROUP, LLC, Request 33; And Defendant's Corresponding Response

**REQUEST FOR PRODUCTION TO RISC POINT NO. 33:**

**"Any and all DOCUMENTS, brochures, pamphlets, codes of conduct, instructions, training information and materials,**

-18-

**training, policies or procedures that YOU distributed to YOUR employees, officers, directors, agents, servants, representatives, persons, or entities which sets forth YOUR policy regarding reporting occurrences of discrimination, harassment, and/or retaliation."**

**RISC POINT's SUPPLEMENTAL RESPONSE TO REQUEST NO. 33:**

"Subject to and incorporating all prior objections and responses, and as best Responding Party can understand his request, Responding Party states that it will comply."

S.  Plaintiff's Request for Production of Documents to Defendant RISC POINT ADVISORY GROUP, LLC, Request 36; And Defendant's Corresponding Response

**REQUEST FOR PRODUCTION TO RISC POINT NO. 36:**

**"Any and all DOCUMENTS related in any way to any discussion to discipline, suspend, put on probation, or terminate PLAINTIFF. This demand includes a request for any DOCUMENTS memorializing or concerning any and all meetings where any such decisions were discussed or considered."**

**RISC POINT's RESPONSE TO REQUEST NO. 36:**

"Responding Party objects that the request is vague and overbroad. Given the overbreadth, Responding Party objects to the extent it invades the attorney-client privilege. Subject to the foregoing objections, Responding Party will comply."

T.  Plaintiff's Request for Production of Documents to Defendant RISC POINT ADVISORY GROUP, LLC, Request 37 / Defendant NIX, Request 26;  And Defendants' Corresponding Responses

-19-

**REQUEST FOR PRODUCTION TO RISC POINT NO. 37/
TO NIX NO. 26:**

**"Please produce any and all DOCUMENTS that describe, refer to, or evidence any statement YOU have made about PLAINTIFF violating your policies."**

**RISC POINT's SUPPLEMENTAL RESPONSE TO REQUEST NO.
37 and NIX No. 26:**

"Subject to and incorporating all prior objections and responses, Responding Party will produce documents evidencing Plaintiff's poor job performance and comply to the extent responsive records are found as a result of the ESI Agreement between counsel."

## III.   Each Party's Contentions with Respect to Each Issue in Dispute

A. Plaintiff's Contentions/Memorandum of Points and Authorities

Generally, Federal Rule of Civil Procedure 37(b)(1) provides that "…a party may move for an order compelling disclosure or discovery."  In particular, Rule 37(a)(3)(B)(iv) states "A party seeking discovery may move for an order compelling an answer, designation, production or inspection.  This motion may be made if:  […] (iv) a party fails to produce documents or fails to respond that inspection will be permitted – or fails to permit inspection – as requested under Rule 34."

Here, Defendants' discovery responses were originally due May 29, 2025. Although Defendants have since provided responses and entered into ESI Stipulations, as of the date this Joint Stipulation was provided by Plaintiff to Defendants (i.e. September 22, 2025), Defendants have not provided any ESI discovery (e.g. no emails, no text messages, no attachments, etc.) or completed their document production

**JOINT STIPULATION RE PLAINTIFF'S MOTION TO COMPEL COMPLIANCE AND
PRODUCTION OF DOCUMENTS RULE 37-2.1**

Moreover, on another meet and confer call on September 22, 2025, <u>not only did Defendants' counsel refuse to stipulate to any future date certain for Defendants' production of ESI documents, he also confirmed that no initial "hit report" has even been run on agreed-upon custodian ESI sources, and he could not guarantee that any ESI production by Defendants would occur before the discovery cut-off date in this case.</u>  He also could not explain why Defendants have not completed their production of their non-ESI document production.

B.  <u>Defendants' Contentions/Memorandum of Points and Authorities</u>

Plaintiff issued overly broad Requests for Documents and has insisted impatiently on a massive E-discovery production just four (4) weeks after counsel reached an agreement on the parameters of an ESI production plan.  The ESI plan did not exist in May 2025 as Plaintiff implies.  The parties did not spend "months" formulating the ESI plan as Plaintiff claims.  The ESI plan was first proposed on August 6, 2025.  Exh. C, Lee Decl. ¶6, Exh. D.  The ESI plan was born two months after Plaintiff served the initial Requests for Documents.  "***Early*** identification of disputes over the forms of production may help avoid the expense and delay of searches or productions…."  Fed. R. Civ. P. 25(f), Committee Note of 2006 (emphasis added).  Yet Plaintiff did not propose an ESI search plan "early."  It was only relatively recently.  The ESI plan was finally confirmed on August 19, 2025.

As explained below, Plaintiff's rush to receive potentially millions of emails is unreasonable.  Defendants have acted with reasonable speed under the circumstances.  Defendants have also produced hard copy documents where they were able.  This motion should be summarily denied.

**JOINT STIPULATION RE PLAINTIFF'S MOTION TO COMPEL COMPLIANCE AND PRODUCTION OF DOCUMENTS RULE 37-2.1**

### (i)    Plaintiff's Motion is Deficient on its Face

Other than the ESI that is currently being processed by KL Discovery, Plaintiff provides no other evidence or examples of what documents have been provided to date and what specifically exists but remains unproduced.  Plaintiff provides no explanation of what evidence indicates there is more documentary evidence not produced.  Plaintiff further fails to explain any resulting prejudice other than the desire for documents itself.

Plaintiff has a burden to produce facts in support of her motion.  Wagstaffe & Tashima, *Prac. Guide Fed. Civ. Pro. Before Trial* § 11:2361 (The Rutter Group 2025) (one of the "three basic elements of a motion to compel discovery "is "supporting facts or evidence on which the motion is based.").  Plaintiff also has the burden "to demonstrate actual and substantial prejudice from the denial of discovery." *Id.* 11:2379.1.  Plaintiff has done none of these things.

"If the requesting party contends that the responding party did not produce copies of requested documents…, the requesting party must demonstrate that the requested documents exist and are being withheld."  *Alexander v. FBI*, 194 F.R.D. 305, 311 (D.D.C. 2000); *Hubbard v. Potter*, 247 F.R.D. 27, 29 (D.D.C. 2008) (if requesting party contends that producing party is withholding additional discovery, already-produced discovery must suggest that there is additional discovery to produce).  The moving party must "identify specific information" showing that the production is incomplete. *Ayala v. Tapia*, 1991 WL 241873, at *2 (D.D.C. 1991).  "Though an affidavit in support of a Rule 34 motion is not indispensable, it is generally agreed that the better practice is to provide one, this seems especially true in light of the facts of this case." *Stamatakos v. Hunter Shipping Co.*, 49 F.R.D. 23, 25 (E.D. Pa. 1969).  Yet here, there is no attorney declaration explaining what documents have been produced to date, what else likely exists, and what prejudice would result.

As to the ESI, Plaintiff has not provided any legal authority in support of her hasty demands for millions of emails, and, as such, she has failed to meet her burden of proof on

**JOINT STIPULATION RE PLAINTIFF'S MOTION TO COMPEL COMPLIANCE AND PRODUCTION OF DOCUMENTS RULE 37-2.1**

this motion.  Because Plaintiff has not provided any authority suggesting that the millions
of records she seeks could have been produced by now, the motion should be denied.

### (ii)    The Timing of Production Depends on the Volume of ESI

Plaintiff's motion assumes without any authority or analysis that the entire ESI
production here could have been completed in one month.  In truth, the timing depends on
the complexity and volume of the ESI.

Plaintiff issued extremely overbroad Requests for Documents on May 29, 2025.
Plaintiff requested that "responses" be served within 30 days.  Plaintiff did not, however,
specify any requested deadline for documents to be produced.  Defendants' responses
stated, among other things, that it objected to producing all documents immediately and
explained "[t]o the extent Responding Party agrees to comply with a request, the inspection
and/or production will occur at a mutually convenient and practicable time."

Indeed, a responding party is expected to produce responsive documents within a
"reasonable time."  FRCP 34(b)(2)(B).  Reasonableness would certainly depend on the
volume of the documents, the accessibility of the documents, and the length or complexity
of the documents.  Estimating a production schedule assumes that the parties or counsel
fully known the volume of documents and how easily accessible they are.  "Expert
assistance is often required to retrieve email from a computer's hard disc or backup files."
Wagstaffe & Tashima, *Fed. Civ. Proc. Before Trial* § 11:1849.1 (The Rutter Group 2025).
Indeed, an expert vendor KLD was required to assist with the collection here, creating
some inevitable delays, but reasonable delays.

Plaintiff here requested emails from eleven (11) custodians.  The Northern District
of California, by comparison, considers five (5) custodians the default limit on custodians.
(N.D. Cal. Patent Model Order ¶10).[5]

Plaintiff also requested sixty (60) search terms.  By comparison, five (5) search
terms is presumed to be sufficient in patent cases.  *Id*. (¶11).

---

[5] Available at https://cand.uscourts.gov/forms/e-discovery-esi-guidelines

**JOINT STIPULATION RE PLAINTIFF'S MOTION TO COMPEL COMPLIANCE AND
PRODUCTION OF DOCUMENTS RULE 37-2.1**

"[A]ll keyword searches are not created equal." *Victor Stanley, Inc. v. Creative Pipeline, Inc.*, 250 F.R.D. 251, 256-257 (D. Ma. 2008). Overly broad search terms can result in over four (4) months of time to review the captured ESI. *See, e.g., Shaw Group Inc. v. Zurich Am. Ins. Co*., 2014 WL 4373210, at *5 (M.D. La. 2014) (M.D. La. 2014) (rejecting plaintiff's proposed search terms that would have "generated 103,202 e-mails and an estimated 20,000 attachments, which would take 10-12 weeks to review, [and] an additional 2 weeks to perform redaction…."). In *Victor Stanley*, the production of ESI took from May to September, *i.e.* **5 months**, apparently based on the court's ordered deadline. *Victor Stanley*, *supra*, 250 F.R.D. at 254-255. Even those five months were considered by the reviewing attorney to be rushed under a "compressed schedule and time constraints" such that it led to inadvertent production of privileged documents. *Id*. at 256. At least one court has found that 100 days is a reasonable completion time. *See, e.g., John B. v. Goetz,* 879 F. Supp. 2d 787, 857 (M.D. Tenn. 2010) ("the Court finds the 100 days limitation is a reasonable deadline for the Defendants to produce their ESI.").

"The Court will not compel defendants to produce any document simply because it contains a search term whether or not it is responsive to the discovery request…." *Palmer v. Cognizant Tech. Sols. Corp.*, 2021 WL 3145982, at *9 (C.D. Cal. 2021). "[A] party's agreement to run search terms does not waive its right to review the resulting documents for relevance so long as the review can be done in a reasonably timely manner." *O'Donnell/Salvatori Inc. v. Microsoft Corporation*, 339 F.R.D. 275, 277 (W.D. Wash. 2021). Human eyes and human brains must still undertake the tedious email-by-email determination of relevance. ESI productions may often need to be "phased" into several rounds of production given this need for substantial human review time.

The most time-consuming process is the time for legal counsel to review and redact the ESI. *See, e.g., Shaw Group*, *supra*, 2014 WL 4373210, at *5 (10-12 weeks to review, [and] an additional 2 weeks to perform redaction…."). The average rate of document review "can vary considerably based on the complexity of the documents and the

-24-

**JOINT STIPULATION RE PLAINTIFF'S MOTION TO COMPEL COMPLIANCE AND PRODUCTION OF DOCUMENTS RULE 37-2.1**

experience of the reviewers." *Brown v. Barnes & Noble, Inc.*, 2019 WL 7168146, at *3 (S.D.N.Y. 2019). A common range is 30 to 100 documents per hour. *Id.* (noting an average rate of review is about 40-60 documents per hour); Ralph C. Losey, *Predictive Coding and the Proportionality Doctrine: A Marriage Made in Big Data*, 26 REGENT U. L. REV. 7, 63 (2014) (stating that a "first-pass relevancy review typically goes at a rate of 50 to 100 files per hour"); Peter J. Corcoran, III, *Strategies to Save Resources and Reduce E-Discovery Costs in Patent Litigation*, 21 TEX. INTELL. PROP. L.J. 103, 108 (2013) (discussing estimated document review rates of 40-50 documents per hour). Thus, estimating the review time requires a close analysis of the number of documents and their typical length. That information was simply not known as of September 22, 2025. No "hit report" existed as of September 22, 2025. As such, Defendants' counsel was in no position provide a production completion deadline. The only deadline that would apply by default was the Discovery Cut Off.

Accordingly, it was extremely difficult to provide a fixed completion "deadline" before September 22 when the search terms were broad and the collection process had just started. Since September 22, the parties now know that the 135 Gigabytes of ESI cannot possibly be produced before the Discovery Cut Off.

### (iii)    The ESI Production Process is a Fluid Process

An ESI production requires cooperation between counsel and flexibility. The original ESI plan may need to be amended several times depending on the volume and quality of emails that result from searches. For example, Magistrate Spaeth's Model Stipulated Order states: "the parties shall add or remove custodians as reasonably necessary." (Magistrate Spaeth Stip. Order ¶IV(B)). Custodians would be removed only *after* the initial collection and volume analysis. Parties should have "quality control methods" to evaluate whether production "contains substantial amounts of irrelevant ESI." (Magistrate Spaeth ESI Checklist p.2). The ESI search parameters may have to be changed to eliminate the overabundance of irrelevant ESI. Given the likelihood of

**JOINT STIPULATION RE PLAINTIFF'S MOTION TO COMPEL COMPLIANCE AND PRODUCTION OF DOCUMENTS RULE 37-2.1**

changing custodians and search terms, the anticipated deadline for completion of production would change accordingly.

Another quality control method is "sampling" of the search terms "to see if the search results are reliable." *Victor Stanley*, *supra*, 250 F.R.D. at 257. "Common sense suggests that even a properly designed and executed keyword search may prove to be over-inclusive or under-inclusive…." *Id.* "[T]he proposed methodology must be quality control tested to assure accuracy in retrieval and elimination of 'false positives.'" *William A. Gross Constr. Assocs. v. Am. Mfrs. Mut. Ins. Co.*, 256 F.R.D. 134, 136 (S.D.N.Y. 2009). The initial ESI search plan may likely change according to those sampled results.[6]

Given this need for flexibility with ESI plan as the parties move forward, coupled with the parties not knowing the volume of data at issue (before this motion was served), it was extremely difficult to provide a fixed "deadline" that Plaintiff demanded. Indeed, Plaintiff does not explain how or why she chose to request that the Court order compliance within "14 days." Courts usually give at least 20 days following an order to produce ESI. *See, e.g., Delquin Plastics USA, Inc. v. Larach*, 2017 WL 11629917, at *4 (C.D. Cal. 2017) (ordering ESI produced in 35 days); *Romero v. Allstate Ins. Co.*, 271 F.R.D. 96, 111 (E.D. Pa. 2010) (20 days to comply); *Trek, Inc. v. ITR America, LLC*, 2017 WL 11533311, at *17 (E.D. Mich. 2017) (21 days to comply). Some courts have permitted several months. *See, e.g., John B. v. Goetz* , 879 F. Supp. 2d 787, 857 (M.D. Tenn. 2010) (100 days to comply). Accordingly, that Plaintiff has had to wait a month for an ESI production since first formulating the search parameters cannot be said to be *per se* unreasonable.

---

[6] Indeed, if the volume appeared to be too voluminous, Defendants would have asked that Plaintiff share in the cost of the ESI harvesting, hosting, and review. Technically, the ESI Agreement is not absolutely finalized until there is an agreement on bearing costs. Defendants reserve their rights to have an order shifting costs to Plaintiff. *FDIC v. Brudnicki*, 291 F.R.D. 669, 675–76 (N.D. Fla. 2013); *Gabriel Technologies Corporation v. Qualcomm Inc.*, 2013 WL 410103 (S.D. Cal. Feb. 1, 2013).

**JOINT STIPULATION RE PLAINTIFF'S MOTION TO COMPEL COMPLIANCE AND PRODUCTION OF DOCUMENTS RULE 37-2.1**

### (iv)   The September 26 "Hit Report" Shows that Complete Production Cannot Possibly Be Completed by the Discovery Cut Off

KLD completed its harvest and word searching on September 26, 2025.  The parties then reviewed KLD "hit report" showing over 108 Gigabytes of emails constituting approximately 507,425 documents.   Exh. C, Lee Decl. ¶35, **Exhibit L**. There were also over 27 Gigabytes of Slack instant messages constituting approximately 246,961 documents.  *Id.*  Thus, even if the ESI collection process had gone faster, and even if Defendants had a "hit report" to share earlier, there would still be no ability to review and produce this volume of data before the Discovery Cut Off.

100 Gigabytes is a massive volume, especially for a single-plaintiff employment case.  To put those Gigabytes in perspective, this amounts to nearly 2,000 traditional banker's boxes and 5 million pages of paper documents, as exemplified in this chart:

| Data | Boxes | Pages |
|------|-------|-------|
| 50 Megabytes | 1 | 2,500[7] |
| 500 Megabytes | 10 | 25,000 |
| 5 Gigabytes (GB) | 100 | 250,000 |
| 50 GB | 1,000 | 2,500,000 |
| 500 GB | 10,000 | 25,000,000 |
| 1 Terabyte | 20,000 | 50,000,000 |

Exh. C, Lee Decl. ¶36. "For processing roughly 2.5 million pages of documents, [vendor] processing fees of approximately $110,000 may be expected." Kelleher *et al*, Matthew Bender(R) *Practice Guide: Cal. E-Discovery and Evidence* § 4.17 (Mathew Bender 2014). "A reasonable estimate for a review of approximately 2.5

---

[7] The Court is requested to take judicial notice that 50 Megabytes results approximately in 2,500 pages.  The other figures that follow are simply multipliers of that same approximation.

**JOINT STIPULATION RE PLAINTIFF'S MOTION TO COMPEL COMPLIANCE AND PRODUCTION OF DOCUMENTS RULE 37-2.1**

million pages based upon an average rate of $225 per hour for paralegal and attorney review, and $375 per hour for senior attorney review, is approximately $1,100,000." *Id*. As such, here the cost would be about double, to wit, $2 million.

Given KL Discovery's volume estimates and the per-hour review estimates under *Brown*, *supra*, the estimated production time currently is 754,386 documents (507,425 + 246,961) times the rate of 1 hour/65 [8] documents, totaling 11,605.93 hours. Assuming from the chart above 5 million pages reviewed at 10 seconds per page, the time estimate is 13,888 hours. Thus, even if the ESI collection process had gone faster, and even if Defendants had a "hit report" to share earlier, there would still be no ability to promise this volume of data before the Discovery Cut Off. Moreover, this is a per se disproportionate amount of ESI. *Compare United States v. University of Nebraska at Kearney*, 2014 WL 4215381 (D. Neb. 2014) (rejecting search terms that resulted in 51,131 responsive documents and would have required the university to expend $155,574 to retrieve, review, and produce the responsive ESI).

### (v)    Half of the Requests for Documents Listed Are Moot

Based on the meet-and-confer process, Defendants were led to believe that the only dispute is the timing of producing "records [that] are found as a result of the ESI Agreement between counsel." Yet Plaintiff now includes ten (10) other Requests for Documents in this motion where there is no dispute. Simply put, those documents have already been produced or cannot be produced. Exh. C, Lee Decl. ¶¶22-29. Some were produced long before this motion was filed. *Id*. ¶¶23, 24, 29. Because Plaintiff provides no analysis of those ten other Requests for Documents or the status of producing responsive documents, Plaintiff's motion concerning RPD Nos. 11, 12, 18-20, 23, 31-33, and 36 to Risc Point should be summarily denied. [9]

---

[8] Assuming an average of 30 to 100 documents per hour under *Brown*.
[9] Defendants agree that substantially similar Requests for Documents were issued to Defendant Jake Nix, and, as such, the same underlying facts, arguments, and rulings should apply to them.

**JOINT STIPULATION RE PLAINTIFF'S MOTION TO COMPEL COMPLIANCE AND PRODUCTION OF DOCUMENTS RULE 37-2.1**

## IV.  **Each Party's Statement of How It Proposed to Resolve Each Issue in Dispute At the "Meet and Confer" With Opposing Counsel**

A. <u>Plaintiff's Statement</u>

As noted above, Plaintiff wrote Defendants multiple meet and confer letters, citing applicable and relevant law, and participated in multiple telephonic meet and confer efforts to discuss Defendants' production (among other issues).

As relevant, Plaintiff's counsel met and conferred with Defendants' counsel on the following dates, with the outcomes of each, ultimately leading to this Motion to Compel:

- On August 6, 2025, counsel for Plaintiff telephonically met and conferred with Defendants about the status of their ESI production.  By the time of the call, Plaintiff already sent a list of its position for search terms to counsel for Defendants.  Defendants suggested the list was generally reasonable.  Defendants would not commit to production by a date certain.

- On August 19 2025, counsel for Plaintiff telephonically met and conferred with Defendants about their ESI production.  A list of search terms was already sent to counsel for Defendants.  No "hit report" was produced by Defendants, as agreed upon that Defendants would do.  Defendants would not commit to production by a date certain.  Counsel for Defendants promised "weekly updates" of the status of ESI collection and production (but none was provided until September 22, 2025 on a phone call between counsel).

- On August 21, 2025, counsel for Plaintiff wrote to counsel for Defendant, "*Thank you for the update.  When do you reasonably estimate we will receive the ESI Hit Report from our agreed upon ESI locations/custodians/search terms?*"  No response from Defendants was provided.

**JOINT STIPULATION RE PLAINTIFF'S MOTION TO COMPEL COMPLIANCE AND PRODUCTION OF DOCUMENTS RULE 37-2.1**

- On August 27, 2025, counsel for Plaintiff wrote Defendants about the ESI production. No "hit report" was produced by Defendants, as agreed upon. Defendants did not commit to production by a date certain.

- On September 4, 2025, counsel for Plaintiff again wrote to Defendants about the status of Defendants' ESI searches and production. No "hit report" was produced by Defendants, as agreed upon. Defendants did not commit to production by a date certain. On September 5, 2025, counsel for Defendants' responded (in relevant part): "*I therefore did not say we would be providing a "hit report soon." I would not make such assurances given that the speed by which other people move is largely beyond my control. [...] My client interviewed a handful of ESI vendors. It was important that the ESI vendor have certain security clearances because my client handles sensitive federal government documents. After vetting several ESI vendors, my client chose to work with KLD Discovery Services. The KLD service contract was drawn up on September 2. It was originally set for signing by RiscPoint but there was a disagreement about whether the cost falls within or outside the deductible. We finally determined that it was an insurance company expense. I am awaiting the insurance carrier representative to sign the service agreement. My hope is that the initial collection will begin next week.*" In summation, Defendants admitted their ESI collection had not actually even started.

- On September 11, 2025, counsel for Plaintiff telephonically met and conferred with Defendants regarding Defendants' ESI efforts. Again, Defendants were not able to give a date certain for production. In light of the amount of time that already passed whereby Plaintiff would have expected ESI production to have occurred, Plaintiff told Defendants it expected production to take place by the end of September 2025.

**JOINT STIPULATION RE PLAINTIFF'S MOTION TO COMPEL COMPLIANCE AND PRODUCTION OF DOCUMENTS RULE 37-2.1**

- On September 15, 2025, having received no update from Defendants counsel, counsel for Plaintiff called Defendants counsel. Defendants' counsel did not answer. Plaintiff's counsel left a voicemail and emailed Defendants' counsel a follow-up message about an ESI update. To move the process along, Plaintiff's counsel requested via email that Defendants produce the Hit Report on agreed-upon search terms by September 18, 2025. Defendants' counsel did not respond.

- On September 18, 2025, Plaintiff's counsel called Defendants' counsel again to inquire about the status of ESI production. Again, Defendants' counsel did not answer and Plaintiff's counsel left a voicemail. Defendants' counsel replied via email acknowledging receipt of the calls, voicemails and email, stating he was out of town. Defendants' counsel did not provide the Hit Report by September 18, 2025.

- On September 22, 2025, counsel for Plaintiff telephonically met and conferred with Defendants' counsel. Defendants' counsel explained that there were issues relating to Defendants' insurance company, Defendants, and the ESI Vendor chosen to participate in the searches and productions. Plaintiff's counsel again asked for a date certain for the "hit report" and for Defendants' document production. In response, <u>Defendants' counsel stated that due to the timing and process of ESI collection and searching, he could not even guarantee that Defendants could complete its production, including producing their ESI production, by the discovery cut-off date in this case (i.e. December 6, 2025).</u>

B. <u>Defendants' Statement</u>

From Defendants' point of view, the only "issue" in dispute is the timing of the ESI production. To expedite the production of emails, Defendants' counsel

-31-

suggested three partial solutions.  First, to resolve the dispute between the insured clients and the insurance carrier, Defendants' counsel suggested that counsel might sign the KL Discovery service agreement and simply bill the carrier to pay KL Discovery when paid by the carrier.  Exh. C, Lee Decl. ¶16.  This proposal became moot once Risc Point overcame its initial objection to signing the KL Discovery agreement.

Second, Defendants' counsel offered to have Defendants conduct a manual search of emails exchanged with investigators John Hawkins and Aisha Adam. Indeed, those emails were printed and produced promptly after the last meet-and-confer conference on September 22, 2025.  Exh. C, Lee Decl. ¶25. Defendants' counsel expedited this portion of the production even though communications with "Hawkins" and "Adam" were intended to be captured through KLD harvesting process along with the other thousands of emails.  Exh. C, Lee Decl. ¶6, Exh. D.

Third, Defendants' counsel offered to extend the discovery cut off or stipulate to continue trial if Plaintiff insisted on voluminous ESI without further narrowing.

## V. <u>Requests for Sanctions</u>

### A. <u>Plaintiff's Position</u>

Rule 37(a)(5) provides that the prevailing party on a discovery motion is entitled to an award of its reasonable expenses incurred in bringing or opposing the motion, including attorney's fees.

Plaintiff made repeated efforts and accommodations for Defendants to informally produce documents in a timely manner that Defendants otherwise agreed to provide. In other words, should Plaintiff prevail, Plaintiff requests sanctions in this manner and believes them justified because Plaintiff was forced to

**JOINT STIPULATION RE PLAINTIFF'S MOTION TO COMPEL COMPLIANCE AND PRODUCTION OF DOCUMENTS RULE 37-2.1**

file the instant Motion to obtain Defendants' production, including ESI discovery, in a timely manner and by a date certain.

For limited purposes of this Motion to Compel only, Plaintiff seeks sanctions not to exceed $5,000 against Defendants. Plaintiff's counsel has reasonably spent in excess of 10 hours related to this Motion, including but not limited to multiple attempts to meet and confer with opposing counsel, the drafting of this Joint Stipulation requirement, and anticipatory preparation for and attendance at the hearing set in this matter. Plaintiff's counsel primarily responsible for this motion has approximately 13-years employment law experience, and his hourly rates reasonably exceed $500/hour. As necessary, Plaintiff will file a supplemental declaration regarding details regarding the time spent for purposes of sanction calculation. But, Plaintiff is willing to cap the sanction requests at $5,000, in an effort to move this case along and focus on getting Plaintiff the documents to which she is entitled.

As a professional courtesy to counsel, Plaintiff seeks sanctions only against Defendants RISC POINT and NIX, jointly and severally, and should Defendants' substantially produce all documents, including their ESI, within fourteen (14) days of the date this Joint Stipulation was provided to Defendants' counsel (i.e. by October 6, 2025), Plaintiff is willing to withdraw its requests for sanctions.

B. Defendants' Position

**i. There is No Basis for Monetary Sanctions against Defendants**

There is no basis for Plaintiff to request monetary sanctions.

Legally, monetary sanctions are not available under FRCP 37(d) for failing to produce documents. Sanctions under FRCP 37(d)(1)(A)(ii) only apply to the "response" to a Request for Documents but not a failure to permit inspection. "[FRCP 37(d)] applies if the party requested to permit inspection fails to serve a

**JOINT STIPULATION RE PLAINTIFF'S MOTION TO COMPEL COMPLIANCE AND PRODUCTION OF DOCUMENTS RULE 37-2.1**

written *response* to the request."  Miller, Wright & Kane, *Fed. Prac. & Proc. Civ.* § 2291 (3d. ed. 2025) (emphasis added). "If it serves a response, but fails to say that inspection will be permitted as requested *or fails to permit the inspection itself*, a motion under Rule 37(a) to compel inspection is available, but Rule 37(d) is inapplicable." *Id*. (emphasis added).  Rule 37(d) does not authorize an award of sanctions unless there is a total failure to respond to the discovery requests. *Fjelstad v. American Honda Motor Co.*, 762 F.2d 1334, 1339–40 (9th Cir.1985). Rule 37 sanctions apply to the quality of response or if the responding party falsely claims no documents exist; it does not apply to withholding documents. *Badalamenti v. Dunham's, Inc.*, 896 F.2d 1359, 1363-1364 (Fed. Cir. 1990); *see also Petroleum Ins. Agency, Inc. v. Hartford Acc. and Indem. Co.,* 106 F.R.D. 59, 67 (D. Mass. 1985) ("I disagree that 'dilatory and partial compliance' after a response has been filed permits the imposition of sanctions pursuant to Rule 37(d), F.R.Civ.P. if all documents are not produced or if the response is found to have been untrue. Rule 37(d), F.R.Civ.P., is applicable only when there has been a 'complete failure to comply with discovery'").

As such, sanctions are only available under Rule 37(a) to the extent that Plaintiff was justified in bringing this motion. Sanctions may be partial under Rule 37(a)(5) based on the degree of success on this motion.  *Morgan Hill Concerned Parents Ass'n v. California Dep't of Educ.*, 258 F. Supp. 3d 1114, 1134 (E.D. Cal. 2017); *Peyton v. Kibler*, 2022 WL 1693632, at *18 (E.D. Cal. 2022). Furthermore, time incurred in the meet-and-confer process is not recoverable. *Sandoval v. Yeter,* 2019 WL 7905731, at *4 (C.D. Cal. 2019); *Berryhill v. Johnson*, 2012 WL 13020328, at *2 (C.D. Cal. 2012).

Factually, Plaintiff has not established any misconduct or discovery abuse. Plaintiff's only arguable prejudice is the loss of time, and that loss of time was substantially due to the acts of third parties such as KLD and the insurance carrier.

**JOINT STIPULATION RE PLAINTIFF'S MOTION TO COMPEL COMPLIANCE AND PRODUCTION OF DOCUMENTS RULE 37-2.1**

Here, it would be unjust to impose sanctions on Defendants or their counsel. Defendants have explained the reasonable delay between August 25 and September 22 and shown that Defendants took active steps in that time frame to move the ESI production forward. Lee Decl. ¶¶7-21. Defendants have also shown that they are taking all reasonable steps to expedite the ESI production.

### ii. Plaintiff Has Not Provided Sufficient Evidence on Fees that Defendants Have an Opportunity to Rebut

A request for monetary sanctions must be accompanied by concrete evidence and allow the opposing party to respond to that evidence. An "award of attorney's fees may be based on the affidavits of counsel, so long as they are 'sufficiently detailed to enable the court to consider all the factors necessary in setting the fees.'" *Henry v. Gill Industries, Inc.*, 983 F.2d 943, 946 (9th Cir. 1993). Here, Plaintiff provides no affidavit of counsel, no invoices, and an insufficient explanation for what work was done or how many hours each task took. Plaintiff states that she plans to submit a "supplemental declaration" in the future (presumably in so far as the Local Rules allow a supplemental brief to be filed fourteen days before the hearing. L.R. 37-2.3.)[10] Yet that same fourteen-day deadline would also apply to Defendants, and they would therefore have no opportunity to submit a brief in response to Plaintiff's final paper. FRCP 37(c)(1); *Cf. Paladin Associates, Inc. v. Montana Power Co.*, 328 F.3d 1145, 1165 (9th Cir. 2003) (due process met by allowing opposing party an opportunity to submit a brief on the request for sanctions). The Court should therefore not consider any future declaration concerning attorney's fees.

---

[10] That Plaintiff served this motion without an accompanying attorney declaration again indicates an unreasonable rush to the courthouse. L.R. 37-2.2 also clearly requires the "declarations and exhibits to be offered in support of the moving party's position" to have been served at the outset.

**JOINT STIPULATION RE PLAINTIFF'S MOTION TO COMPEL COMPLIANCE AND PRODUCTION OF DOCUMENTS RULE 37-2.1**

### iii.  Defendants Are Entitled to Prevailing Party Attorney's Fees

The party who prevails on a motion to compel is its expenses, including reasonable attorney fees, unless the losing party was substantially justified in making or opposing the motion (or other circumstances make such an award unjust). FRCP 37(a)(5); *H. K. Porter Co., Inc. v. Goodyear Tire & Rubber Co.*, 536 F.2d 1115, 1124-1125 (6th Cir. 1976); *Kannaday v. Ball,* 292 F.R.D. 640, 651 (D. KS 2013) (substantially justified objection was sufficient to avoid imposition of fees).  The apparent motive for this motion was simply *to accelerate* the production of ESI that was already underway.  The apparent motive for this motion was simply impatience.  Indeed, this very motion was served on September 22 by Attorney Jeff Olsen when his co-counsel Attorney Ruben Escalante was reportedly willing to wait until September 30.  Exh. C, Lee Decl. ¶16, Exhibit I.  This motion was premature even by Plaintiff's initial timetable.

Defendant Risc Point therefore request an award of $5,180 as a prevailing party on this motion.  Exh. C, Lee Decl. ¶¶30-34.

### iv. Plaintiff's Counsel should be Sanctioned for a Bad Faith Motion

Defendants also request cross-sanctions against Plaintiff's counsel due to the bad faith nature of this motion under Local Rule 11-9.  As noted above, ten (10) Requests for Documents -- half listed in this motion -- were never at issue in the meet-and-confer process.  L.R. 37-1 (party "must identify *each* issue and/or discovery request in dispute") (emphasis added). Documents responsive to them were already produced months ago.  Exh. C, Lee Decl. ¶¶22-29.  Sanctions are available independently for adding surprise issues into this motion without having met and conferred in a meaningful way.  L.R. 37-4.

Plaintiff also fails to provide any legal authority or analysis for her primary argument that Defendants were required to produce the ESI in thirty days.  "Whatever his motivation, [counsel's] arguments for the order, simply taken at

**JOINT STIPULATION RE PLAINTIFF'S MOTION TO COMPEL COMPLIANCE AND PRODUCTION OF DOCUMENTS RULE 37-2.1**

face value, were so unjustified that he must personally bear the costs…." *Sheppard v. River Valley Fitness One, L.P.,* 428 F.3d 1, 11 (1st Cir. 2005) (affirming award of $6,538 in fees against the moving party who filed a motion for protective order without justification).

Plaintiff's counsel Jeff Olsen remained obstinate even in scheduling the very hearing on this motion. Counsel intentionally scheduled this motion hearing to coincide with the date and time of the Court-Ordered mediation. (Dkt. #7). That Court-Ordered mediation should take priority over a discovery hearing. Local Rule 16-15 confirms the Court's strong policy in favor of mediations that "favors any reasonable means to accomplish this goal." Attendance at mediation is also required by the "attorney expected to try the case." (Dkt. 7 – Notice of Mediator); *see also* L.R. 16-15.5(c). Defendants' lead trial counsel Geoffrey Lee requested that this motion hearing be postponed by a *mere seven days* because he cannot be in two places at once. But Attorney Olsen refused to reschedule the hearing. Lee Decl. ¶37.

Plaintiff all but admits that there is no genuine legal dispute needing judicial resolution. Defendants are not actively resisting discovery. There is no legal objection on which the parties have requested a ruling. Rather, Plaintiff practically admits that this motion was solely intended to prod Defendants into producing ESI faster. "FRCP 37(a)(5) is really aimed at…preventing waste of judicial time when there is no genuine dispute." Wagstaffe & Tashima, *Rutter Group Prac. Guide Fed. Civ. Pro. Before Trial* § 11:2386 (The Rutter Group 2025).

Mere impatience is not a proper reason to file a motion to compel discovery, especially when timing could have been addressed at a simple Informal Discovery Conference.

**JOINT STIPULATION RE PLAINTIFF'S MOTION TO COMPEL COMPLIANCE AND PRODUCTION OF DOCUMENTS RULE 37-2.1**

Date: September 30, 2025                    Respectfully submitted,


By:  /s/ Jeff Olsen (via email authorization)
        RUBEN D. ESCALANTE
        JEFF T. OLSEN
        Attorney for Plaintiff
        ASHLEY FRAGALE

Date: September 29, 2025                    Respectfully submitted,

GORDON REES SCULLY
MANSUKHANI, LLP

By:  /s/ L. Geoffrey Lee (via email authorization)


L. GEOFFREY LEE
ANAFRANCESCA COMUNALE
Attorney for Defendants
RISC POINT ADVISORY GROUP
LLC; RISC POINT ASSURANCE,
LTD; RISC POINT HOLDINGS, INC.;
JACOB NIX

-38-

**JOINT STIPULATION RE PLAINTIFF'S MOTION TO COMPEL COMPLIANCE AND PRODUCTION OF DOCUMENTS RULE 37-2.1**

# EXHIBIT A

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—
GENERAL

| Case No. | 8:25-cv-00994-JWH-ADSx | Date | July 14, 2025 |
|---|---|---|---|

| Title | *Ashley Fragale v. RISC Point Advisory Group LLC, et al.* |
|---|---|

| Present: The Honorable | JOHN W. HOLCOMB, UNITED STATES DISTRICT JUDGE |
|---|---|

| Priscilla Deason | Not Reported |
|---|---|
| Deputy Clerk | Court Reporter |

| Attorney(s) Present for Plaintiff(s): | Attorney(s) Present for Defendant(s): |
|---|---|
| None Present | None Present |

**Proceedings:  SCHEDULING ORDER**

This case is set for trial before the Honorable John W. Holcomb in Courtroom 9D, Ronald Reagan Federal Building and U.S. Courthouse, 411 W. 4th Street, Santa Ana, California.

## I.  PRE-TRIAL AND TRIAL DEADLINES

| EVENT | DATE/DEADLINE |
|---|---|
| **Jury Trial** (Monday at 9:00 a.m.) | Monday, April 13, 2026<br><br>5 days |
| **Final Pretrial Conference** [L.R. 16] (Friday at 1:00 p.m.) | Friday, March 27, 2026 |
| **Hearing on Motions *In Limine*** (Friday at 9:00 a.m.) | Friday, March 20, 2026 |

**CIVIL MINUTES—
GENERAL**    Initials of Deputy Clerk pd

| EVENT | DATE/DEADLINE |
|---|---|
| **Last Date to Hear Dispositive Motions** (Friday at 9:00 a.m.) | Friday, February 13, 2026 |
| **Last Date to Conduct Settlement Conference** | Friday, January 2, 2026 |
| **All Discovery Cut-Off** (including hearing all discovery motions) | Friday, December 5, 2025 |
| **Expert Disclosure** (Rebuttal) | Friday, November 21, 2025 |
| **Expert Disclosure** (Initial) | Friday, November 7, 2025 |

## II.  AMENDING PLEADINGS AND ADDING PARTIES

There is no separate deadline for the parties to amend their pleadings or to add parties.  Parties who wish to amend pleadings or to add parties shall comply with Rule 15(a)(1) or (2) and, if applicable, Rule 16(b)(4) of the Federal Rules of Civil Procedure, as well as L.R. 15-1 through L.R. 15-3 and L.R. 16-14.

## III.  MOTIONS

### A.    Schedule and Procedures

Judge Holcomb hears motions in civil cases, through in-person appearances, on Fridays at 9:00 a.m.  The cut-off date for hearing motions is the last day on which motions will be heard; *i.e.*, the motion must be filed at least 28 days before the deadline in accordance with the requirements of L.R. 6-1.  *A copy of every motion-related document filed (including documents pertaining to claim construction hearings in patent cases) must be delivered to the chambers drop box outside Courtroom 9D or transmitted to chambers via FedEx, UPS, or other overnight delivery service (the "Mandatory Chambers Copy").*  The cut-off date applies to all non-discovery motions except motions directly related to the conduct of trial (*e.g.*, motions *in limine* and motions to sever parties or to bifurcate issues for trial).

**CIVIL MINUTES— GENERAL**                Initials of Deputy Clerk pd

The parties are also reminded about their obligation to comply with L.R. 7-3, which requires a Conference of Counsel at least seven days before a party files most types of motions.  The Court may deny a motion *sua sponte* if the moving party fails to comply strictly with L.R. 7-3.

## B.    Motions for Summary Judgment

The Court employs special procedures for summary judgment motions, including the parties' preparation of a mandatory ***Joint Exhibit*** and ***Joint Statement of Undisputed Facts and Genuine Disputes***.  The parties and their counsel are directed to the Standing Order for a full explanation.

The Court reminds the parties that the cut-off date for hearing dispositive motions (*i.e.*, summary judgment motions) is the last day on which motions will be ***heard***, not ***filed***.  The Court encourages parties to confer early and often regarding anticipated summary judgment motions and, when appropriate, to file a stipulation and proposed order to set a briefing schedule that provides the parties with more time between filing and opposition, and between opposition and reply, than the one week that is provided under L.R. 6-1, 7-9, and 7-10.

## C.    Motions *in Limine*

All motions *in limine* (including *Daubert* motions) and other trial-related motions must be filed at least 28 days before the Final Pretrial Conference and properly noticed for hearing ***one week before the date of the Final Pretrial Conference***.  Oppositions to motions *in limine* are due 21 days before the Final Pretrial Conference (*i.e.*, 14 days before the hearing on motions *in limine*).  Replies will not be accepted.

Counsel shall meet and confer thoroughly, in accordance with L.R. 7-3, in an effort to limit or eliminate the need for such trial-related motions.  Memoranda of Points and Authorities in support of or in opposition to motions *in limine* shall not exceed 10 pages.  Motions shall not be compound; *i.e.*, each motion shall address only one item of evidence or witness.  If common grounds for exclusion or admission apply to multiple items of evidence or witnesses, each motion shall address only one category of evidence or witnesses.  Motions *in limine* should not be disguised motions for summary judgment or summary adjudication.

---

**CIVIL MINUTES—GENERAL**    Initials of Deputy Clerk pd

### D.    Withdrawal and Non-Opposition of Motions

All parties and counsel must comply with L.R. 7-16, which provides as follows:

> Any moving party who intends to withdraw the motion before the hearing date shall file and serve a withdrawal of the motion, not later than seven (7) days preceding the hearing.  Any opposing party who no longer intends to oppose the motion, shall file and serve a withdrawal of the opposition, not later than seven (7) days preceding the hearing.

Failure to comply with this notification requirement may result in the imposition of sanctions on the offending counsel or party.

If a defendant files a motion to dismiss a complaint and the plaintiff subsequently amends that complaint, then the defendant shall file a Notice of Withdrawal of its motion to dismiss in accordance with L.R. 7-16, without waiting for the plaintiff or the Court to take action on the motion.

## IV.  DISCOVERY

Counsel shall initiate all discovery other than depositions at least *45 days* before the cut-off date.  The Court will not approve stipulations between counsel that permit responses to be served after the cut-off date except in unusual circumstances and for good cause shown.

All depositions must be completed by the discovery cut-off deadline. Counsel shall lodge all original depositions that will be used in trial with the Courtroom Deputy Clerk on the first day of trial.

Counsel are expected to resolve discovery problems without the assistance of the Court.  Discovery disputes have been referred to the Magistrate Judge assigned to this case.  The discovery cut-off is the last date to *complete* discovery, including expert discovery.  It is also the last day for hearing any discovery motion.

If not separately set forth above, the required expert disclosures shall be made *70 days* before the discovery cut-off date.

## V. SETTLEMENT PROCEDURES

Counsel must complete a settlement conference under the Court-Directed ADR Program (L.R. 16-15.4) no later than the date set by the Court above.  If the parties desire to participate in an ADR procedure other than that elected in the Rule 26(f) Scheduling Report and Order, they shall file a stipulation with the Court.  This request will not necessarily be granted.

Counsel shall include in the proposed Pretrial Conference Order a status report detailing what procedure has been followed and the status of settlement efforts.  The case may not proceed to trial unless all parties, including the principals of all corporate parties, have appeared personally at a settlement conference and have complied with L.R. 16-15.5.

If a settlement is reached, it shall be reported immediately to this Court as required by L.R. 16-15.7.  ***In all cases set for jury trial, the parties must notify the Court, no later than the Wednesday preceding the Monday trial date, of any settlement, so that the necessary arrangements can be made to bring in a different case for trial or to notify the members of the public who would otherwise be reporting for jury duty that their services are not needed that date.  Failure to comply with this notification requirement may result in the imposition of sanctions on counsel for one or more parties, or their clients, or both.***

## VI. FINAL PRETRIAL CONFERENCE

The Court will conduct a Final Pretrial Conference pursuant to Rule 16 of the Federal Rules of Civil Procedure and L.R. 16-1 on the date and time listed above.  Each party appearing in this action shall be represented at the Final Pretrial Conference and at all pretrial meetings by its lead trial counsel.  Counsel should be prepared to discuss streamlining the trial, including the presentation of testimony by deposition excerpts, time limits, stipulations regarding undisputed facts, and the qualification of experts by admitted resumes.  In rare cases where the Pretrial Conference is waived by the Court, counsel must follow L.R. 16-11.  This Court does not exempt *pro per* parties from the requirements of L.R. 16.

**CIVIL MINUTES—GENERAL**

Initials of Deputy Clerk pd

# VII. MATTERS TO BE DISCUSSED AT THE FINAL PRETRIAL CONFERENCE

Counsel shall be prepared to discuss the following matters with the Court at the Pretrial Conference:

- the witnesses all parties intend to call during their respective cases, and the amount of time necessary for direct and cross examination of each witness;

- any anticipated problems in scheduling witnesses;

- any evidentiary issues, including anticipated objections under Rule 403 of the Federal Rules of Evidence, and objections to exhibits;

- jury selection procedures;

- all pretrial motions, including motions *in limine* and motions to bifurcate and to sever (which, as noted above, must be set for hearing at least one week before the Pretrial Conference);

- any disputed jury instructions, and the form of the instructions that will be given to the jury at the outset of the case, i.e., before opening statements and presentation of evidence;

- whether any counsel intends to use any evidence or demonstrative aid in opening statement; and

- motions to exclude witnesses from the courtroom during trial testimony.

If counsel for any party needs to arrange for the installation of their own equipment, such as video monitors, notebooks, or projection equipment, counsel shall notify the Courtroom Deputy Clerk no later than 4:00 p.m. on the Wednesday before trial so that the necessary arrangements can be made.

# VIII. PRETRIAL FILINGS

Counsel shall submit carefully prepared Memoranda of Contentions of Fact and Law (which may also serve as the trial briefs) and proposed Pretrial Conference Orders in accordance with the provisions of L.R. 16-4 through 16-7. The form of

CIVIL MINUTES—GENERAL

the proposed Pretrial Conference Order shall be in conformity with the form set forth in Appendix A to the Local Rules.

The filing schedule for pretrial documents is as follows:

**A.    At Least 28 Days before Final Pretrial Conference**

- Motions *in limine* (which, as noted above, must be set for hearing at least one week before the Pretrial Conference)[1]

**B.    At Least 21 Days before Final Pretrial Conference**

- Memorandum of contentions of fact and law

- Witness lists

- Joint exhibit list

- Oppositions to motions *in limine* (which, as noted above, must be set for hearing at least one week before the Pretrial Conference)

**C.    At Least 14 Days before Final Pretrial Conference**

- Proposed Final Pretrial Conference Order

- Proposed jury instructions and any objections thereto

- Proposed verdict forms

- Statement of the case

- Proposed *voir dire* questions, if desired

**D.    At Least 7 Days before Trial:**

- Trial briefs, if desired.

---

[1]    In rare instances, the Court will set the deadline for hearing motions *in limine* for a date other than one week before the Final Pretrial Conference.  In those instances, motions *in limine* are due no later than 21 days before the hearing, and oppositions are due no later than 14 days before the hearing.

**CIVIL MINUTES—GENERAL**                Initials of Deputy Clerk pd

In drafting the Proposed Final Pretrial Conference Order, counsel shall make a good faith effort to agree on, and to set forth, as many uncontested facts as possible. The Court may read the uncontested facts to the jury at the start of the trial.

In drafting the factual issues in dispute for the Proposed Final Pretrial Conference Order, the issues of fact should track the elements of a claim or defense upon which the jury would be required to make findings. Counsel should attempt to state issues in ultimate fact form, not in the form of evidentiary fact issues (*i.e.*, "was the defendant negligent?"; "was such negligence the proximate cause of injury to the plaintiff?"; "was the plaintiff negligent?"; ***not***, "was the plaintiff standing on the corner of 5th Street and Spring Avenue at 10:00 a.m. on May 3?"). Counsel may list sub-issues under the headings of ultimate fact issues, but shall not use this as a device to list disputes over evidentiary matters.

Issues of law should state legal issues upon which the Court will be required to rule after the Pretrial Conference, including during the trial, and should not list ultimate fact issues to be submitted to the trier of fact.

Each party shall list and identify its respective expert witnesses, if any. Failure of a party to list and identify an expert witness in the Proposed Final Pretrial Conference Order shall preclude a party from calling that expert witness at trial.

## E.    Exhibit and Witness Lists

Counsel are directed to prepare their exhibits by placing them in three-ring binders that are tabbed down the right side with exhibit numbers. The spine portion of the binder shall indicate the volume number and shall contain an index of each exhibit included in the volume. The binders are to be prepared with an original for the Courtroom Deputy Clerk, which shall be tagged with the appropriate exhibit tags in the upper right-hand corner of the first page of each exhibit, and two copies for the Court (the "Judge's binders"). Each binder shall contain an index of the included exhibits. The exhibits are to be numbered in accordance with L.R. 26-3.

The Court requires the following to be submitted to the Courtroom Deputy Clerk on the first day of trial:

CIVIL MINUTES—
GENERAL

- The original exhibits with the Court's exhibit tags.  The parties shall use yellow tags for Plaintiff and blue tags for Defendant, which shall be stapled to the front of the exhibit on the upper right corner with the case number, case name, and exhibit number placed on each tag.  Counsel can obtain exhibit tags at the Clerk's Office.  Exhibit Tags (Plaintiff & Defendant, form G-014) are also available on the Court's  website, under "Court Procedures," "Forms."

- Two Judge's binders with a copy of each exhibit for use by the Court, tabbed with numbers as described above.  (Court's exhibit tags not necessary.)

- Four copies of the exhibit index.

    The exhibit index shall be in the following form:

| Case No.    Case Name: | | | |
|---|---|---|---|
| Exhibit No. | Description | Date Identified | Date Admitted |
| 3 | 1/30/2005 Letter from Doe to Roe | | |

- Four copies of witness lists in the order in which the witnesses may be called to testify.

    The witness lists shall be in the following form:

| Case No.    Case Name: | |
|---|---|
| Witness Name | Date Called to Testify |
| 1.  John Doe | |
| 2.  Jane Roe | |

   All counsel shall meet no later than **10 calendar days** before trial and shall stipulate to the extent possible regarding foundation, waiver of the best evidence

CIVIL MINUTES—
GENERAL

rule, and admission into evidence of exhibits at the start of trial.  The exhibits to be received will be noted on the extra copies of the exhibit lists.

## IX.  COURT REPORTER

At least seven days before the commencement of trial, counsel for the parties shall provide the court reporter with a list of unusual words, phrases, and spellings that may come up during trial.  This information should be emailed to Court Reporter Services at ReportersCACD@cacd.uscourts.gov.

## X.  JURY INSTRUCTIONS

*Fourteen calendar days* prior to the L.R. 16-2 Meeting of Counsel, counsel shall exchange proposed jury instructions and special verdict forms (if applicable). *Seven calendar days* prior to the L.R. 16-2 meeting, counsel shall exchange any objections to the instructions and special verdict forms.  Prior to or at the time of the L.R. 16-2 meeting, counsel shall meet and confer with the goal of reaching agreement regarding one set of joint, undisputed jury instructions and one special verdict form.

The parties shall file proposed jury instructions *fourteen calendar days* before the Final Pretrial Conference.  As always, the parties must submit Mandatory Chambers Copies to the Court.  In addition, the parties must submit electronic versions (in Word format) to the Court at the following e-mail address: JWH_Chambers@cacd.uscourts.gov.

As noted above, the parties must act jointly to submit proposed jury instructions.  The parties must submit one set of agreed upon jury instructions.  At the same time, the parties must submit another set of jury instructions containing the instructions upon which the parties disagree and the objections to those instructions.  Where the parties disagree on an instruction, the party opposing the instruction must attach a short (*i.e.*, one to two paragraphs) statement supporting the objection and the party submitting the instruction must attach a short statement supporting the instruction.  Each statement should be on a separate page and should follow directly after the disputed instruction.

Accordingly, the parties ultimately will submit one document or, if the parties disagree over any proposed jury instructions, two documents. If the parties submit two documents, those documents should consist of: (1) a set of agreed upon jury instructions; and (2) a set of disputed jury instructions along with reasons supporting and opposing each disputed instruction.

Where the ***Manual of Model Civil Jury Instructions for the Ninth Circuit*** provides a version of a requested instruction, the parties should submit the Model instruction. Where California law applies, the Court prefers counsel to use JUDICIAL COUNCIL OF CALIFORNIA, CIVIL INSTRUCTIONS—("CACI"). If neither of the above sources has an instruction on the subject, counsel are directed to consult the current edition of O'Malley, et al., FEDERAL JURY PRACTICE AND INSTRUCTIONS. Each requested instruction (a) shall cite the authority or source of the instruction; (b) shall be set forth in full; (c) shall be on a separate page; (d) shall be numbered; (e) shall cover only one subject or principle of law; and (f) shall not repeat principles of law contained in any other requested instruction.

The Court will send a copy of the jury instructions into the jury room for use by the jury during deliberations. Accordingly, in addition to the file copies described above, the parties shall file with the Courtroom Deputy Clerk and shall email to chambers on the first day of the trial a "clean set" of joint and/or proposed jury instructions that contain only the text of each instruction set forth in full on each page, with the caption "Court's Instruction Number __" (eliminating titles, supporting authority, indication of party proposing, etc.). This version will be referred to as the "Jury Copy" of the jury instructions.

An index page shall accompany all jury instructions submitted. The index page shall indicate the following:

- The number of the instruction;

- A brief title of the instruction;

- The source of the instruction and any relevant case citations; and

**CIVIL MINUTES— GENERAL**

- The page number of the instruction.

    EXAMPLE:

| Number | Title | Source | Page |
|--------|-------|--------|------|
| 1 | Burden of Proof | 9th Cir. 12.02 | 7 |

## XI.  JOINT STATEMENT OF THE CASE

Counsel shall prepare a joint statement of the case which will be read by the Court to the prospective panel of jurors prior to the commencement of *voir dire*. The statement should not be longer than three paragraphs.  The statement shall be filed with the Court fourteen calendar days before the Final Pretrial Conference.

## XII.  TRIAL

The Court sets firm trial dates.  Counsel shall arrive at the Courtroom ***not later than 8:30 a.m.*** each day of trial.  The Court reserves the time from ***8:30 to 9:00 a.m.*** to handle legal and administrative matters outside the presence of the jury.  The trial will commence promptly at 9:00 a.m.  Counsel shall anticipate matters that may need discussion or hearing outside the presence of the jury and to raise them during this period.

The Court is in session with the jury on ***Mondays through Thursdays, 9:00 a.m. to 5:00 p.m., with a morning and an afternoon break and a lunch recess from approximately 12:00 noon to 1:00 p.m.***  In most instances, jury selection is completed on the first morning of trial, and counsel should be prepared to give opening statements and to begin their presentation of evidence immediately thereafter.

All counsel shall observe the following practices during trial:

- All counsel and parties shall rise when the jury enters and leaves the courtroom.

- Counsel shall stand when addressing the Court, including when objecting to opposing counsel's questions.

**CIVIL MINUTES— GENERAL**

Initials of Deputy Clerk pd

- When objecting, counsel shall state only "objection" and the legal ground for the objection (*e.g.*, hearsay, irrelevant, etc.).  Counsel shall refrain from arguing the legal basis for the objection unless and until permission is granted to do so.  Counsel shall instruct their witnesses to refrain from answering a question while an objection is pending.

- Counsel must seek leave to approach the Courtroom Deputy Clerk or the witness and shall question witnesses while standing at the lectern.

- Counsel shall not address or refer to witnesses or parties by first names alone, with the exception of witnesses under 14 years old.

- Counsel shall not discuss the law or argue the case in opening statements.

- Counsel shall address all remarks to the Court and shall not directly address the Courtroom Deputy Clerk, the Court Reporter, opposing counsel, or the jury (except in opening statement and closing argument and during *voir dire*).  Counsel must ask the Court for permission to talk off the record in order to speak with opposing counsel.

- Counsel shall not make an offer of stipulation unless he or she has conferred with opposing counsel and believes that the stipulation will be accepted.

- While Court is in session, counsel may not leave the counsel table to confer with witnesses, colleagues, or assistants elsewhere in the courtroom unless the Court grants permission to do so in advance.

- Where a party has more than one lawyer, only one may conduct the direct or cross-examination of a particular witness or make objections with respect to that witness.

- If a witness was on the stand before a recess or adjournment, counsel shall have the witness back on the stand and ready to proceed when Court resumes.

- If there is more than a brief delay between witnesses, the Court may deem that the party has rested.

- The Court attempts to cooperate with witnesses and will, except in extraordinary circumstances, accommodate them by permitting them to be

**CIVIL MINUTES—GENERAL**

Initials of Deputy Clerk pd

examined out of sequence.  Counsel should discuss any scheduling issues with opposing counsel.  If there is an objection, counsel shall confer with the Court in advance.

## XIII.  BENCH TRIALS

*Twenty-one calendar days* before the trial date, each party shall prepare and serve on opposing counsel copies of the proposed Findings of Fact and Conclusions of Law.  Each party shall review the other party's proposed Findings and Conclusions and make such changes in the party's own proposed Findings and Conclusions as necessary following such review.  *Fourteen calendar days* before the trial date, each party shall lodge two copies of its proposed Findings of Fact and Conclusions of Law with the Court, also serving other parties if changes have been made.  The parties shall be prepared to submit to the Court, and to exchange among themselves, supplemental Findings of Fact and Conclusions of Law during the course of the trial.

## XIV.  WEBSITE

Counsel are encouraged to review the Central District's website for additional information:  www.cacd.uscourts.gov.

The Courtroom Deputy Clerk is **DIRECTED** to serve a copy of this Order personally, electronically, or by mail on counsel for all parties to this action.

**IT IS SO ORDERED.**

**CIVIL MINUTES— GENERAL**

Initials of Deputy Clerk pd

# EXHIBIT B

L. GEOFFREY LEE (SBN: 234024)
glee@grsm.com
ANAFRANCESCA COMUNALE (SBN: 323257)
acomunale@grsm.com
GORDON REES SCULLY MANSUKHANI, LLP
101 West Broadway, Suite 2000
San Diego, CA  92101
Telephone: (619) 230-7418
Facsimile: (619) 696-7124

Attorneys for Defendants

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

## SOUTHERN DIVISION

| | |
|---|---|
| ASHLEY FRAGALE, an individual, | CASE NO. 8:25-cv-00994 JWH (ADSx) |
| Plaintiff, | |
| vs. | **DECLARATION OF MATT DREWYOR IN OPPOSITION TO MOTION TO COMPEL PRODUCTION OF DOCUMENTS** |
| RISC POINT ADVISORY GROUP LLC; RISC POINT ASSURANCE, LTD; RISC POINT HOLDINGS, INC.; JACOB NIX, and DOES 1 through 10, inclusive, | **[DISCOVERY DOCUMENT: REFERRED TO MAGISTRATE JUDGE AUTUMN D. SPAETH]** |
| Defendants. | Date:  Wednesday, October __, 2025<br>Time:        10:00am<br>Location:     Courtroom 9D |

Gordon Rees Scully Mansukhani, LLP
633 West Fifth Street, 52nd Floor
Los Angeles, CA 90071

-1-

Gordon Rees Scully Mansukhani, LLP
633 West Fifth Street, 52nd Floor
Los Angeles, CA 90071

## DECLARATION OF MATT DREWYOR

I, Matt Drewyor, do declare as follows:

1. I am over 18 years of age. I have personal knowledge of the facts below. I do not intend to waive the attorney-client privilege by any statement made herein.

2. I am the Chief Executive Officer of Defendant RISC Point Advisory Group, LLC. I was previously the Chief Operating Officer since July 2022 and was a Vice President since October 2021.

3. In connection with my regular duties as Chief Operating Officer of RISC Point Advisory Group, LLC, I was involved in major Human Resources tasks such as hiring, firing, and employee investigations. Between 2022 and 2024, our Human Resources Manager function was fulfilled by Ms. Allison Bailey. In 2024, Ms. Bailey went out on maternity leave but was expected to return.

4. Plaintiff Ashley Fragale was hired as a Human Resources Generalist around July 2024. Because of Plaintiff's poor performance, we requested that Ms. Bailey return to RISCPoint as the Human Resources Manager earlier than originally anticipated. Ms. Bailey returned to work on May 7, 2025. Our communications with Ms. Bailey about her return occurred via phone calls. I have searched emails and have found no emails concerning her pregnancy leave or her return. There are only a few emails showing her first day back at work, which have been produced in discovery.

5. Our company provides cybersecurity and privacy compliance services. Some of our clients store, process, or transmit data this is considered federal data, controlled unclassified information, security data, or metadata. As such, we are required to meet rigorous security and privacy standards such as ISO 17020, status as an A2LA Accredited FedRAMP Third Party Assessment Organization, and specific contractual requirements around protecting the

Gordon Rees Scully Mansukhani, LLP
633 West Fifth Street, 52nd Floor
Los Angeles, CA 90071

confidentiality of work product and communications with clients, including the due diligence process where data hosting and access are incorporated into the services.

6.    On August 14, 2025, I was presented with a recommendation to hire one of three e-discovery vendors: Consilio, Lighthouse, or KL Discovery.  Over the next few days, it was requested that each of the three vendors provide artifacts associated with our standard vendor due diligence process, especially their cybersecurity and compliance assessment results and terms of service to meet requirements of our status as an A2LA FedRAMP Third Party Assessment Organization, and contractual commitments with our customers.  After reviewing extensive papers from KL Discovery on its cybersecurity and compliance, we decided to hire KL Discovery on or about August 26, 2025.

7.    On September 2, 2025, we were asked to sign KL Discovery's service agreement.  We were reluctant to do so because RISCPoint had satisfied its insurance deductible and therefore believed the payment liability should be borne by our insurance company.  I understand that the insurance adjuster had some objections and concerns with signing the KL Discovery contract as well.  This led to a new KL Discovery contract being prepared with more specific cost estimates.

8.    On September 22, 2025, I reluctantly signed the revised KL Discovery agreement.  On September 24, 2025, we held a meeting with KL Discovery to plan their download of data.  I understand that KL Discovery plans to complete its download on or about September 26, 2025.

9.    Plaintiff resigned her employment effective June 28, 2025.  Prior to that, in March 2025, she indicated to me an interest in resigning and said words to the effect of "this is not the right fit." I have searched emails and have found no emails concerning her suggested resignation or our offer of resignation with severance that followed her suggestion.  I have searched emails and have found no emails concerning her termination.  I am unable to conduct a word search of Slack

instant messages as the Slack instant messages are archived and our office does not have the software to conduct word searches.  I understand that KL Discovery, however, does have the capability of running word searches of Slack and is presently doing so.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Executed this 26th day of September 2025, in Dundee, Michigan.

*Matthew A. Drewyor*
_____
Matt Drewyor

DECLARATION OF MATT DREWYOR
Case No. 8:25-cv-00994 JWH (ADSx)

Gordon Rees Scully Mansukhani, LLP
633 West Fifth Street, 52nd Floor
Los Angeles, CA 90071

# EXHIBIT C

1    L. GEOFFREY LEE (SBN: 234024)
     glee@grsm.com
2    ANAFRANCESCA COMUNALE (SBN: 323257)
     acomunale@grsm.com
3    GORDON REES SCULLY MANSUKHANI, LLP
     101 West Broadway, Suite 2000
4    San Diego, CA  92101
     Telephone: (619) 230-7418
5    Facsimile: (619) 696-7124

6    Attorneys for Defendants

7

8              UNITED STATES DISTRICT COURT

9              CENTRAL DISTRICT OF CALIFORNIA

10                  SOUTHERN DIVISION

11   ASHLEY FRAGALE, an individual,       )  CASE NO. 8:25-cv-00994 JWH
                                          )  (ADSx)
12                        Plaintiff,      )
                                          )  **DECLARATION OF GEOFFREY**
13          vs.                           )  **LEE IN OPPOSITION TO**
                                          )  **MOTION TO COMPEL**
14   RISC POINT ADVISORY GROUP            )  **PRODUCTION OF DOCUMENTS**
     LLC; RISC POINT ASSURANCE,           )  **AND IN REQUEST FOR**
15   LTD; RISC POINT HOLDINGS,            )  **MONETARY SANCTIONS**
     INC.; JACOB NIX, and DOES 1          )  **AGAINST PLAINTIFF'S**
16   through 10, inclusive,               )  **COUNSEL**
                                          )
17                        Defendants.     )   **[DISCOVERY DOCUMENT: REFERRED**
                                          )  **TO MAGISTRATE JUDGE AUTUMN D.**
18                                        )  **SPAETH]**
                                          )
19                                        )  Date:      October __, 2025
                                          )  Time:      10:00 a.m.
20                                        )  Location:  Courtroom 9D
                                          )
21   _____ )

22

23

24

25

26

27

28

Gordon Rees Scully Mansukhani, LLP
633 West Fifth Street, 52nd Floor
Los Angeles, CA 90071

Gordon Rees Scully Mansukhani, LLP
633 West Fifth Street, 52nd Floor
Los Angeles, CA 90071

## DECLARATION OF GEOFFREY LEE

I, Geoffrey Lee, do declare as follows:

1. I am an attorney licensed to practice in all the courts of California. I am a partner in the law firm Gordon Rees Scully Mansukhani LLP, which is counsel of record for Defendants. I have personal knowledge of the facts below. I do not intend to waive the attorney-client privilege by any statement made herein.

2. Plaintiff served the subject Requests for Documents on May 29, 2025. Defendants served their responses on July 9, 2025. On July 15, 2025, my office produced our second batch of responsive documents.

**History of the ESI Plan**

3. On July 17, 2025, Plaintiff's counsel wrote a meet-and-confer letter acknowledging the production of documents but accusing my side of having "cherry-picked" documents helpful to its defense. The letter further contemplated that my clients would personally search for all responsive documents in saying: "Defendants are fully capable of searching the universe of documents in their possession, custody, and control, including any ESI." Plaintiff's counsel did not, however, at this time suggest any parameters of an ESI search plan.

4. I was out on vacation the last two weeks of July 2025.

5. On July 29, 2025, my office sent a response letter requesting a teleconference and noting, among other things, that with respect to Requests for Documents, Plaintiff had "not offered any narrowing compromise" concerning overbroad requests for documents.

6. On August 6, 2025, I had a teleconference with Plaintiff's counsel Ruben Escalante. For the first time, we began to discuss the beginnings of an ESI plan. Mr. Escalante then sent me a letter outlining the proposed custodians and search terms. A true and correct copy of that letter is attached hereto as **Exhibit D**.

7.      I then reviewed Plaintiff's proposed ESI plan with my clients, who are located in Ohio.  Given that there were sixty (60) search terms and eleven (11) custodians, my clients advised that conducting the searches "in house" would be too disruptive to their business.  Because Plaintiff's counsel had also accused our side of having "cherry-picked" emails, it seemed prudent to hire a neutral E-discovery vendor to conduct the harvesting and searching of ESI.

8.      In the next few days, Plaintiff's counsel and I co-drafted the E-Discovery Protective Order for submission to the Court.  I also had a brief phone call with Plaintiff's counsel Jeff Olsen, who requested a formal letter on the status of discovery.

9.      On August 12, 2025, I sent the requested letter confirming that we had agreed on about 90% of Plaintiff's proposed ESI search plan.  A true and correct copy of my letter is attached hereto as **Exhibit E**.  I also noted in closing that I had recently received permission by my client's insurance carrier to hire an E-discovery vendor.

10.      Meanwhile, I proposed three E-discovery vendors to my clients.  I was informed that they were interviewing these vendors over the next week.

11.      On August 19, 2025, I had a teleconference with Plaintiff's counsel Jeff Olsen.  I asked Mr. Olsen if he would reconsider the search terms to which I objected such as pay* (with the asterisk indicating a wildcard connector), paid, high, drug, and pic*.  We could not agree on most of these search terms, but I did concede as to the term pic*.  I then sent an email confirming our verbal agreement between counsel.  A true and correct copy of that email is attached hereto as **Exhibit F**.

12.      I made my clients aware of the ESI plan.  Reference to the ESI plan was expressly made in my client's Supplemental Responses to Requests for

-3-

DECLARATION OF GEOFFREY LEE

Case No. 8:25-cv-00994 JWH (ADSx)

Gordon Rees Scully Mansukhani, LLP
633 West Fifth Street, 52nd Floor
Los Angeles, CA 90071

1    Documents dated August 25, 2025.  This was the first time that my clients

2    acknowledged the ESI plan under oath.

3         13.    By August 26, 2025, my clients had decided to hire E-discovery

4    vendor KL Discovery.  After Labor Day, on September 2, 2025, I received the first

5    iteration of the KL Discovery service agreement.  Attached hereto as **Exhibit G** is

6    a true and correct copy of that initial proposed contract.  My office asked Risc

7    Point to sign the agreement, but they declined as they had already met their

8    insurance deductible.  *See* Declaration of Matt Drewyor at ¶¶5-7.

9         14.    The very next day, on September 3, 2025, I requested that

10   Philadelphia Insurance sign the contract.  I received no response on September 4.  I

11   then followed up again on September 5.  The insurance adjuster, who is located in

12   New York, declined to sign the contract and requested a teleconference to discuss

13   it.  This was a significant pause in our progress because the Philadelphia Insurance

14   published billing guidelines expressly state: "Prior written approval must be

15   obtained from Philadelphia for any expense over $750.  This includes approval for

16   jury consultants, courtroom technology, surveillance, etc."  I was aware that, in

17   past situations, where an attorney failed to obtain insurance carrier approval of a

18   vendor expense, my law firm ended up having to absorb the cost without

19   reimbursement from the carrier or the insured client.  (This led to my firm

20   developing its own policy against incurring such third-party costs, described

21   below).  The next available time for me to discuss the matter with the insurance

22   adjuster was on September 10, which we did. My office provided feedback and

23   further instructions to KL Discovery on how to revise the service agreement.

24        15.    On September 4, 2025, Plaintiff's counsel Jeff Olsen emailed me

25   accusing me of "not living up to promises."  He claimed among other things that I

26   promised to provide an ESI search term "hit report soon."  I had done no such

27   thing.  A true and correct copy of our email exchange is attached hereto as **Exhibit**

28

-4-

DECLARATION OF GEOFFREY LEE

Case No. 8:25-cv-00994 JWH (ADSx)

**H**.  (Sadly, even in the Motion to Compel, Plaintiff's counsel claims that there was some "agreement" to provide a hit report by early September, which there clearly was not and could not since KL Discovery had not even begun work yet).

16.     On the morning of September 11, 2025, I had a brief telephone conversation with Plaintiff's counsel Ruben Escalante.  I explained to him the troubles I was having with getting the KL Discovery agreement signed.  I made passing mention that if the carrier and client continued to disagree, I might just sign the service agreement on behalf of my law firm and then have KL Discovery agree to be paid when my law firm was paid for each KL Discovery invoice passed through.  Notably, this idea ran against my own firm's expense policy, however.  My firm has a "Client Cost Advancing" policy that it publishes to all employees almost monthly.  The written policy expressly mandates that any third-party cost over $500 must be contracted with and billed directly to the client so that the firm does not incur the cost.).  Mr. Escalante said he was sympathetic to my quandary but that he would plan to file a Motion to Compel if all the ESI was not produced by the end of September.   His expectation that ESI would be produced by the end of September was echoed in a follow-up email Mr. Escalante sent me on the evening of September 11, 2025, a true and correct copy of which is attached hereto as **Exhibit I**.

17.     On September 15, 2025, Plaintiff's counsel Jeff Olsen emailed me about numerous discovery disputes and noted in closing that he expected search term reports in just three (3) days: to wit, September 18.  I was out of town that day and had to catch up with missed work the next few days.   On September 18, 2025, I emailed Mr. Olsen apologizing for my delayed response but requested a teleconference.

-5-

DECLARATION OF GEOFFREY LEE

Case No. 8:25-cv-00994 JWH (ADSx)

Gordon Rees Scully Mansukhani, LLP
633 West Fifth Street, 52nd Floor
Los Angeles, CA 90071

18.    On Monday, September 18, 2025, KL Discovery provided a second draft service agreement.  I immediately forwarded it the insurance carrier for approval.  The insurance adjuster approved it on Friday, September 19.

19.    On September 22, 2025, Plaintiff's counsel Jeff Olsen called me and demanded to know when the ESI production would be complete.  I told him that I did not yet know the volume of the data so I could not estimate how long it would take.  (I did not "refuse" to provide a deadline).  I explained that if the volume of data was massive, we would either need to revise the ESI plan to lessen the number of emails, or, if Plaintiff insisted on all the emails that we should consider extending the discovery cut off date.  I also advised counsel that KL Discovery would begin the harvesting process soon and that I would let him know the completion deadline estimate as soon as I was able.  Mr. Olsen told me he was going to file the Motion to Compel forthwith.  I told him that such a motion was premature.

20.    My clients then signed the KL Discovery agreement on September 22, 2025.  A true and correct copy of the signed service agreement is attached hereto as **Exhibit K**.

21.    On September 23, 2025, my paralegal assisting with the KL Discovery project advised that KL Discovery projected completing the harvest of emails by September 26, 2025.  That collected data would then be used to estimate a completion date and be hosted in Relativity for my staff to review manually for relevance and confidentiality.

**Moot Requests for Documents**

22.    Plaintiff's counsel at no time discussed filing a Motion to Compel the production of documents other than those Defendants agreed to produce by stating they will "comply to the extent responsive records are found *as a result of the ESI*

DECLARATION OF GEOFFREY LEE
Case No. 8:25-cv-00994 JWH (ADSx)

*Agreement between counsel*."  Yet Plaintiff now for the first time argues about ten (10) Requests for Documents ("RPD") that are not in dispute.

23.    RPD No. 11 to Risc Point seeks all documents supporting its affirmative defenses.  Plaintiff's counsel did not meet and confer over documents produced in response to this RPD.  My office produced substantial documents in response to this request.  For example, Defendants' Fourth Affirmative Defense is the *Faragher/Ellerth* defense of promptly reporting sexual harassment, which Plaintiff did not.  My office produced a copy of the Employee Handbook outlining the reporting process as well as the belated complaint that Plaintiff made three months after the alleged harassment that purportedly took place in Las Vegas.

24.    RPD No. 12 to Risc Point seeks the production of every "file" holding documents relating to Plaintiff.  Plaintiff's counsel did not meet and confer over documents produced in response to this RPD.  My office produced substantial documents in response to this request.  For example, my office produced her personnel file and the file on the harassment complaint and investigation into her complaint.

25.    RPD Nos. 18, 19 and 20 to Risc Point seek communications with investigators John Hawkins and Aisha Adam.  These emails were to be captured by the ESI harvest as their very names were search terms.  (*See* Exhibit B).  In any event, on September 22, 2025, I offered Plaintiff's counsel to have Defendants personally conduct a manual search for these emails and print them promptly as an accommodation to Plaintiff's counsel even though they would be part of the ESI production eventually.  These "hard copy" emails were produced on September 25.  (Furthermore, there is no agreement between Defendants and Aisha Adam as her contract was with John Hawkins).

26.    RPD No. 23 seeks documents referenced in Defendants' Rule 26 Initial Disclosures.  Plaintiff's counsel did not meet and confer over documents

Gordon Rees Scully Mansukhani, LLP
633 West Fifth Street, 52nd Floor
Los Angeles, CA 90071

-7-

DECLARATION OF GEOFFREY LEE

Case No. 8:25-cv-00994 JWH (ADSx)

Gordon Rees Scully Mansukhani, LLP
633 West Fifth Street, 52nd Floor
Los Angeles, CA 90071

1  produced in response to this RPD.  Nevertheless, my office had already produced

2  them.  My office produced the exact 75 pages referenced in the Initial Disclosures

3  on June 2, 2025.  The only outstanding document was the Philadelphia Insurance

4  policy, which was produced on August 26, 2025.

5      27.    RPD Nos. 31 and 36 seek documents reflecting any discussion about

6  terminating or offering severance to Plaintiff. Plaintiff's counsel did not meet and

7  confer over documents produced in response to this RPD.  Responsive documents

8  would presumably be captured in the ESI plan because of the search terms

9  terminat*, fire*, and sever*.  (*See* Exhibit B).  In any event, I am informed that no

10  e-mails concerning resignation (other than Plaintiff's own June 2025 resignation

11  email) or termination exist.  *See* Declaration of Matthew Drewyor at ¶9.  Slack

12  messages concerning those topics cannot be word searched by Risc Point but are

13  being searched by KLD.  *Id*.

14     28.    RPD No. 32 seeks documents reflecting the hiring of Allison Bailey

15  (in 2025). Plaintiff's counsel did not meet and confer over documents produced

16  early as an accommodation in response to this RPD.  These documents presumably

17  would have been captured in the ESI Plan.  Moreover, the only known documents

18  were produced on September 25, 2025.  *See also* Declaration of Matthew Drewyor

19  at ¶¶3-4.

20     29.    RPD No. 33 seeks documents reflecting anti-sexual harassment

21  training employees received. Plaintiff's counsel did not meet-and-confer over

22  documents produced in response to this RPD.   Certificates of completing such

23  training were already produced on August 26, 2025.

24  **Defendants' Attorney's Fees on this Motion**

25     30.    I have been practicing in civil litigation for twenty-one years.  I

26  graduated from the University of California, Davis, School of Law in November

27  2004.  My hourly rate and the rate that Defendants have been charged in this

28

-8-

DECLARATION OF GEOFFREY LEE

Case No. 8:25-cv-00994 JWH (ADSx)

matter is $320 per hour.  My colleague Anafrancesca Comunale has been practicing law since 2018, and her billing rate in this matter is $270 per hour.  I believe thee hourly rates are reasonable and comparable to the rates similar attorneys charge in this locale.

31.    As a result of Plaintiff's counsel's premature and bad faith motion, my client has incurred substantial expenses. I have spent no less than 5.5 hours analyzing Plaintiff's moving arguments, and drafting, editing, and revising the Opposition portions to this motion.  I have spent no less than 1.5 hours drafting, editing, and revising the supporting Declarations, and compiling exhibits.  I am informed that Ms. Comunale has spent approximately 2.0 hours researching law, revising and cite checking our opposition sections.

32.    I expect to spend no less than 3 hours analyzing Plaintiff's foreshadowed "supplemental brief" in support of this motion and providing a supplemental update on the ESI production to the Court fourteen days before the hearing.

33.    I expect to spend no less than 4.5 hours preparing for, traveling to, and attending the hearing on this motion.

34.    Accordingly, my client will incur no less than $5,180 in attorney's fees to have this motion heard and decided.

**Status of ESI Harvesting**

35.     On September 26, 2026, KL Discovery reported completing the ingestion of emails and Slack instant messaging from Risc Point.  After filtering using the agreed-upon search words, there were 108 Gigabytes of emails with an estimated 507,000 documents.  There were 27 Gigabytes of Slack messages with an estimated 246,000 documents.  A true and correct copy of the face pages of the two hit reports is attached hereto as **Exhibit L**.

-9-

DECLARATION OF GEOFFREY LEE

Case No. 8:25-cv-00994 JWH (ADSx)

36.    I shared this information with Plaintiff's counsel.  I am familiar with approximate conversion rates based on the core estimation that 50 Megabytes of e-mails typically results in about 2,500 pages.  This estimate and the chart used in the brief is primarily based on a 2013 study published by the University of California.  I calculated and provided an estimate to Plaintiff's counsel that it would take approximately 5,000 hours for a human review of the records.  I specifically suggested that we consider combining search words, eliminating less material search words, or eliminating less important custodians.  I also suggested a rolling production and prioritizing production of those emails with certain key words sounding in sexual banter (as this is an alleged sexual harassment case).  I asked that this motion be withdrawn so that we could meet and confer.  Attorney Jeff Olsen rejected my suggestions and stated that "[t]he Court will sort out" what to do.

37.    On September 29, 2025, Attorney Olsen advised that he would be setting hearing on this matter at the exact same date and time as our Court-ordered mediation.  I requested given this time conflict and counsel being unable to be in two places at once that this motion hearing be scheduled to the following week October 29.  Attorney Olsen again refused.


I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.


Executed this 29th day of September 2025, in San Diego, California.


*L. Geoffrey Lee*
L. Geoffrey Lee

Gordon Rees Scully Mansukhani, LLP
633 West Fifth Street, 52nd Floor
Los Angeles, CA 90071

-10-

DECLARATION OF GEOFFREY LEE

Case No. 8:25-cv-00994 JWH (ADSx)

# EXHIBIT D

# ACLIENT PC

440 N Barranca Ave PMB 9496
Covina, California 91723

**Ruben Escalante**
Partner
(310) 431-9687

## VIA ELECTRONIC MAIL

August 6, 2025

L. Geoffrey Lee, Esq.
Anafrancesa Comunale, Esq.
GORDON REES SCULLY MANSUKHANI, LLP
101 West Broadway, Suite 2000
San Diego, CA 92101

Re:    Meet and Confer re Defendants' Deficient Discovery
       Fragale v. RISC Point, et al

Counsel,

The purpose of this letter is to meet and confer regarding Defendant Jacob Nix's ("Mr. Nix") and Defendant Risc Point Advisory Group LLC's ("Defendant") (collectively, "Defendants") deficient responses to Plaintiff's first set of written discovery.

Privilege/Objection Log

In our previous correspondence we requested a privilege/objection log. Defendants have not committed to producing one. If Defendants do not provide the privilege/objection log, Plaintiff will have no choice but to bring a motion to compel.

Document Requests

- This will confirm that we went through Judge Spaeth's Chambers ESI Conference Checklist, and were in general agreement about most items. The primary area of contention will be potential custodians and search terms; the duty of Defendants and their agents to preserve all potentially relevant communications, including those that are sent via a messaging service that can set to erase the message automatically after being sent (e.g., Snapchat, Slack, Signal, etc.); and potential burden of an ESI search.

- Consistent with our discussion, I sent over a draft stipulated e-discovery order.

- Consistent with our discussion, I sent over a draft stipulated protective order.

- **To NIX/RISC POINT Request No. 1**; **NIX/RISC POINT Request No. 2; NIX/RISC POINT Request No. 5; NIX/RISC POINT Request No. 6**; **NIX Request No. 7  and 8; RISC POINT Request Nos. 7, 8, 9, 10 11; NIX Request No. 13 / RISC POINT No. 15; NIX Request No. 14 / RISC POINT No. 17; NIX Request No. 19 / RISC POINT No. 22; NIX Request No. 21 / RISC POINT No. 29; NIX Request No. 22 / RISC POINT No. 30; NIX Request No. 26 / RISC POINT No. 37** – These requests seek various documents on various topics. Based on our meet and confer, my understanding is we agreed that such requests could be addressed by an agreed upon ESI protocol. Accordingly, we propose the following:

  - <u>Plaintiff Ashley Fragale</u>:
  - Ashley Fragale
    - Entire work email mailbox to/from/cc/bcc of Plaintiff's work email from 1/1/2024 to 6/30/2025)
    - Any and all "Slack" or other electronic work messaging application with any terms from Column B

  - <u>Other Custodians</u>:
  - Jacob Nix
  - Matthew Drewyor
  - Ryan McCartney
  - Chad Gross
  - John Hibbeler
  - Mike Cowdrey
  - Matt Wiese
  - Tony Bai
  - Allison Laurence Bailey
  - Disha Shah

  - <u>Initial Search Terms For Those on 'Other Custodians' List</u>:
(a) Any email from anyone on the 'Other Custodian' list, either to/from/cc, that contains any of the following term(s) in Column A and any term(s) in Column B from 1/1/2024 - to date
(b) Any "Slack" or "Signal" other electronic message from anyone on the "Other Custodian" list, whether to or from, that contains any of the following term(s) in Column B 1/1/2024 - to date

<u>Column A</u>
  - ashley OR ashely OR ash OR fragale OR frag OR fragle OR af

<u>Column B</u> (– * = designates all variations of said term with that foundation)
  - complain*
  - harass*
  - retaliat*

2

- terminat*
- fire*
- kill*
- suspend*
- settle*
- sever*
- pay*
- paid
- illegal*
- lawsuit
- suit
- claim*
- sex*
- bitch*
- cunt*
- puss*
- fuck*
- tit*
- boob*
- breast*
- dating
- date
- dick*
- douche*
- drunk
- drank
- high*
- drug*
- date
- dating
- love*
- roman*
- vibe
- hooked
- showing
- onlyfans
- OF
- profile*
- crazy
- vegas
- lol
- intern
- HR risk
- unwant*
- inappropriat*
- pic*

- o photo*
- o nude*
- o naked
- o MPI
- o Hawkins
- o Aisha
- o Adam*
- o investigat*
- o sensitiv*
- o Jake
- o Nix

- **To NIX/RISC POINT Request No. 3 and 4** – These Requests asked for all documents from Defendants that contain the voice, image, or likeness of Plaintiff. Based on our meet and confer, Defendants contend these too are broad and impose an undue burden, citing they would capture voicemails our client left. Although we believe we are entitled to even voicemail messages our client left, as a compromise we will exclude voicemails our client left from this request. Accordingly, Defendants must supplement this now.

- **To NIX Request No. 9 / RISC POINT No. 12** – These Requests asked that Defendants produce any files that Defendants have about Plaintiff. During our meet and confer you took the position that this was vague, overbroad, and burdensome because the word "file" could mean every individual email, which would constitute a separate "file." To be clear, these requests see "files" as that term is normally used—that is, "a collection of papers or publications usually arranged or classified" and "a collection of related data records (as for a computer)" in either physical or paper format. This would include such things as a personnel file, investigative file, manager file, or simply a physical or electronic file maintained by Mr. Nix regarding Plaintiff.

- **To NIX Request No. 10 / RISC POINT No. 13** – These Requests asked that Defendants produce any documents of any harassment, discrimination or retaliation complaints against Defendants, including by other employees. Based on our meet and confer, Defendants contend such requests fall outside the scope of discovery, including for purposes of seeking "me too" evidence. During our meet and confer you expressed doubt that the Central District permitted "me too" evidence; I told you I would find you a Central District case that addressed this issue. *Zucchella v. Olympusat, Inc.*, 2023 WL 2633947 (C.D. Cal. January 10, 2023), *15-17, reflects that "me too" evidence is admitted in appropriate circumstances, just like in state court. I also mentioned that "me too" evidence would be relevant to punitive damages, including in federal court. *Tijerina v. Alaska Airlines, Inc.,* No. 22-CV-00203-JLS-BGS, 2022 WL 16824509, at *4 (S.D. Cal. Nov. 7, 2022) (stating, "[w]hile punitive damages cannot be used to punish a defendant for harming parties not before the court, evidence of a defendant's harm to others can be offered to show reprehensibility, which is a relevant factor in the punitive

4

damages equation."). Based on our meet and confer, Defendants are standing firm on their objections here. However, if they are willing to provide any responsive information, please let me know now.

- **To NIX Request No. 11 / RISC POINT No. 14**– These Requests asked that Defendants produce any documents they have regarding communications with Plaintiff. This would include all emails and messages via any platform (e.g., Messenger, text message, Instagram, Slack, Signal, etc.), which all should have been preserved. Presumably Defendants have already done a thorough search of the same; Plaintiff is entitled to that same search. We do not need to accept Defendants' cherry picked documents in this regard. If Defendants have specific information justifying why this should not be produced, including actual details regarding the burden, please provide them now.

- **To NIX Request No. 12** – This Request asked that Mr. Nix produce any documents he had regarding his use of the word "cunt" or "cunty" with any employee, owner, director, officer, agents, or management agent of Defendant. Mr. Nix's response that he "will produce a narrower set of e-mails" is not appropriate at this stage. We do not need to accept his cherry picked documents in this regard. If he has specific information justifying why this should not be produced, including actual details regarding the burden, please provide them now.

- **To NIX Request No. 15 / RISC POINT No. 18** – These Requests asked to include all insurance policies, including all pages, including declarations pages that may be applicable in this matter. Defendants identify one policy. Defendants must confirm this is the only responsive policy.

- **To NIX Request No. 16 / RISC POINT No. 19** – These Requests asked for all documents *related to* any investigation in response to Plaintiff's complaint of sexual harassment, including but not limited to documents related to John Hawkins or Aisha Adams. I explained during our meet and confer that Defendants must produce documents related to any investigation or contemplated investigation related to Plaintiff; at a minimum this would include the attempted Ms. Adams investigation. However, this could also include any investigation conducted by Mr. Nix. Accordingly, Defendants must supplement their responses to indicate they will produce all responsive records.

- **To NIX Request No. 20 / RISC POINT No. 23** – These Requests asked for all documents that were used to support or prepare Defendants' initial disclosures. Based on our meet and confer, I explained we are simply seeking non-privileged documents referred to in the initial disclosures or used to prepare the initial disclosures. We are not

seeking privileged documents Defendants may have used to prepare them. Accordingly, Defendants must supplement their responses.

- **To NIX Request No. 24 / RISC POINT No. 32** – These Requests asked for all documents relating to engaging or hiring Allison Laurence Bailey. Based on our meet and confer, the protective order should address any concern here and Defendants will supplement their responses to produce any responsive documents.

- **To RISC POINT No. 26** – This Request asked for the job description of Plaintiff during her employment at Defendant. Based on our meet and confer, my understanding is Defendant will supplement this response to produce any responsive documents.

- **To RISC POINT No. 27** – This Request asked for job descriptions of relevant witnesses at Defendant. Based on our meet and confer, my understanding is that Defendant will supplement this response to produce any responsive documents.

- **To RISC POINT No. 33** – This Request asked for documents relating to training and other related polices for officers and employees regarding reporting occurrences of discrimination. Based on our meet and confer, my understanding is that Defendant will supplement this response to produce responsive documents.

Special Interrogatories

- **To NIX Interrogatory 5 / RISC POINT No. 12 –** This interrogatory asked for the identity of all individuals that Defendants (and their agents and attorneys) interviewed concerning Plaintiff's claims against Defendants. Based on your meet and confer letter, you claim Interrogatory No. 5 asked about witnesses supporting a denial of liability: it does not; it specifically asks for individuals Nix interviewed. If the only people Nix interviewed were those interviewed by Mr. Hawkins on his behalf, then he can easily supplement this response to indicate that no additional witnesses were interviewed by him or anyone else on his behalf. Similarly, regarding Interrogatory No. 12, Defendant can easily supplement this response to clarify that no other individual other than Mr. Hawkins conducted any interviews. In the absence of such clarification, the responses are evasive.

- **To RISC POINT Interrogatory 1 –** This interrogatory asked for the identity of all individuals that have complained about harassment, retaliation or discrimination while employed at Defendant. During our meet and confer you expressed doubt that the Central District permitted "me too" evidence; I told you I would find you a Central District case that addressed this issue. *Zucchella v. Olympusat, Inc.*, 2023 WL 2633947 (C.D. Cal.

January 10, 2023), *15-17, reflects that "me too" evidence is admitted in appropriate circumstances, just like in state court. I also mentioned that "me too" evidence would be relevant to punitive damages, including in federal court. *Tijerina v. Alaska Airlines, Inc.*, No. 22-CV-00203-JLS-BGS, 2022 WL 16824509, at *4 (S.D. Cal. Nov. 7, 2022) (stating, "[w]hile punitive damages cannot be used to punish a defendant for harming parties not before the court, evidence of a defendant's harm to others can be offered to show reprehensibility, which is a relevant factor in the punitive damages equation."). Based on our meet and confer, Defendant is standing firm on its objections here. However, if it is willing to provide any responsive information, please let me know now.

Conclusion

We are scheduled for our second meet and confer today. Unfortunately, I got called into a hearing that will conflict with our 11 a.m. call. I will email you to confer on a time for later in the afternoon.

Sincerely,

Ruben Escalante

# EXHIBIT E



**GEOFFREY LEE**
glee@grsm.com
Direct (619) 230-7418

101 W. Broadway, Suite 2000
San Diego, CA 92101
www.grsm.com

August 12, 2025

<span style="text-decoration: underline">**VIA EMAIL**</span>

Ruben Escalante, Esq.
ACLIENT PC
440 N Barranca Ave PMB 9496
Covina, California 91723
ruben@aclientpc.com

   Re: <span style="text-decoration: underline">Ashley Fragale v. RiscPoint Advisory Group LLC, *et al*.</span>

Dear Ruben:

   At the request of your co-counsel Jeff Olsen, we are providing you a letter setting forth our major positions on the pending discovery.

<span style="text-decoration: underline">Protective Order</span>

The draft general Stipulated Protective Orders looks fine. The draft E-Discovery Protective Order also looks fine except for two items. First, we need an end date instead of a search period that is "on-going." Second, we need the Exhibit A attachment for experts or other authorized third parties who will be bound by the protective order.

<span style="text-decoration: underline">Privilege Log</span>

I appreciate your email clarifying the matter of using privilege logs. I agree that Plaintiff should not need to create a privilege log for discussions she had with her counsel. In my mind, such communications are per se not relevant discovery by definition.

<span style="text-decoration: underline">ESI Plan</span>

Your August 6 letter asserts some "area of contention" as to custodians and search terms. I do not believe that any dispute has yet arisen in this regard. Your proposed custodian and search terms appear generally acceptable. I just have the following comments and questions:

- Plaintiff began working at RiscPoint in July 2024. As such, it would appear that your referenced beginning date of 1/1/2024 was apparently mistaken. We suggest using 7/1/24.

Ruben Escalante
August 12, 2025
Page 2

- The proposed end date is "to date."  We obviously need some actual date rather than a moving target.  I propose June 30, 2025, as the end date.
- The search terms pay* and paid* seems too generic and likely to result in too many hits.  ""Without an appropriately developed search protocol, far too little or far too much information will be gleaned from the vast ocean of data involved in a given case."  Battaglia, J., *Discovery & Disclosures Under the Federal Rules of Civil Procedure*, p.32 (2010); *United States v. University of Nebraska at Kearney*, 2014 U.S. Dist. LEXIS 118073 (D. Neb. 2014) (denying motion to compel due to search terms being too generic); *Shaw Group Inc. v. Zurich Am. Ins. Co*., 2014 U.S. Dist. LEXIS 122516 at *16 (M.D. La. 2014) (rejecting plaintiff's proposed search terms that would have "generated 103,202 e-mails and an estimated 20,000 attachments, which would take 10-12 weeks to review, [and] an additional 2 weeks to perform redaction…."); *Terracon Consultants, Inc. v. Drash*, 2013 U.S. Dist. LEXIS 53800 at *12 (D. Kan. 2013) (denying plaintiff's requested search terms because those terms would "cause an overly broad identification of documents."); *Connecticut General Life Insurance Company v. Earl Scheib, Inc*., 2013 U.S. Dist. LEXIS 16234 at *8-10. (S.D. Cal. 2013) (sustaining the defendant's objections to multiple requests for production of ESI as being overly broad for the amount in controversy).  Vendors get "paid."  Employees "get paid."  Expenses are the subject of prompt "pay."  Why is this term even relevant?  Can we narrow it somehow?
- The search terms high* and drug* seem out of place and invading privacy.  Why are these relevant?
- The search term pic* also seems to generic and likely to result in many irrelevant hits.  To avoid capturing works like "pick," can we agree to picture* instead?

ESI Sources

Your letter also mentioned something about a program called "Signal."  My understanding is that "Signal" is a software used to delete ESI.  RiscPoint does not use it.  RiscPoint and Jake Nix do not use SnapChat either.

We previously discussed "Slack" messages.  My client confirms that there is an "XML" archive of Slack messages.  However, my client does not have the ability to conduct automated word searches.  The only automated search that can be done is by date.  Any other searches would have to be done by the human eye.  While the company that sells Slack does offer an upgraded license to search messages automatically, I am informed that the cost of the upgraded license is approximately $200,000 and will only search terms from the date of the upgrade but not retroactively.  Depending on what parameters your office suggests for a manual search, if any, we reserve the right to object that the XML archive is not reasonably accessible.

My client confirms that there are no known voicemails, videos, or other "likeness" of Plaintiff's voice or face.

Ruben Escalante
August 12, 2025
Page 3

Because my client is a small company, it will be requesting that the insurance carrier approve the hiring of an outside ESI vendor such as Consilio.

"Me Too" Evidence

I appreciate your analysis of the "me too" doctrine as it applies in federal courts. I agree that such a doctrine is recognized in our court, but, as I surmised, the doctrine is applied very narrowly and ultimately should not apply here.

Discovery, including discovery of me-too complaints, cannot go beyond the bounds of relevancy and must be proportionate to the needs of the case. *Sanchez v. Master Prot., LP*, No. CV 20-08472-VAP-RAO, 2021 WL 4125856, at *3 (C.D. Cal. Aug. 2021); *Constance Hanson-Poulson v. Dep't of Def*., 2020 WL 2043999, at *3 (C.D. Cal. Mar. 2020) (holding a request for production of Me Too complaints without limit to particular complainants, decision makers or geographic location was outside of the scope of relevancy). Plaintiffs requesting me-too evidence would need to show that the other individuals also claiming discrimination were similarly situated to Plaintiff. *Howard v. Raytheon Co*., No. CV 09-5742 ABC (EX), 2011 WL 13177257, at *3 (C.D. Cal. Mar. 2011). "Employees are similarly situated if they are similar '**in all material respects**,' that is, 'when they have **similar jobs** and **display similar conduct**.' " *Id*. (bold added).

Here, there was no other employee besides Plaintiff who personally made an internal complaint about harassment, discrimination, or retaliation. So the answers to SROG No. 1 are RFP No. 13 as we read them are: there are none. To be candid, there were two employees who through legal counsel or through the legal system later made "claims" about their past employment that were investigated by outside counsel. But we do not interpret your discovery requests as written to include such legal claims. Those two cases also involved facts and circumstances that were completely different from Plaintiff's circumstances. In our meet-and-confer discussions you indicated interest in seeing management's or Human Resource's protocol response to employee complaints and protocol investigations. Again, that only happened with respect to Plaintiff Ashley Fragale.

Because the so-called me too evidence must be so similar to the plaintiff's theory, jumping across to other protected classes is not permissible. Courts appear to be unanimous in sex discrimination cases in not permitting discovery of other complaints such as for race discrimination. In one California case, the judgment was actually reversed on this very point. In *Pinter-Brown v. Regents of Univ. of California,* 48 Cal. App. 5th 55 (2020), the plaintiff sued for sex discrimination against her employer UCLA. Throughout trial, the court allowed the plaintiff to present the jury unrelated claims of discrimination at UCLA. The court even admitted into evidence a list of all employment complaints against the entire University of California system for five years. The Court of Appeal found that this overbroad evidence

Ruben Escalante
August 12, 2025
Page 4

was not admissible as "me too" evidence because it was not about plaintiff's "own protected class" and was different from plaintiff's own theory. *Id*. at 96.

Finally, I respectfully disagree with your position as to relevancy to punitive damages. First, the *Tijerina* case you cited speaks to evidence of actual "harm" to other employees. Proof of "harm" is not established by a mere complaint or even a claim, especially if it was not similar to the Plaintiff's. Second, again, the *Tijerina* case speaks to proof of circumstances "similar to" the plaintiff. Third, and finally, evidence going to punitive damages (such as net worth of the defendant) is typically withheld until the second phase of trial if there is one.

<u>Miscellaneous</u>

During my call with Mr. Olsen, he asked if there were any other insurance policies other than the Philadelphia policy we disclosed. (RFP No. 18). My clients confirm there is not.

Technically, we did not yet discuss the Requests for Documents issued to Jake Nix. But I will compare your list more closely and let you know if there is any material discrepancy between the requests to RiscPoint and Nix.

My office is in the process of finalizing Supplemental Responses to certain Requests for Documents as we discussed.

<u>Conclusion</u>

Please let me know if you would like to discuss these matters further. We will keep you apprised of the progress with the ESI vendor.

Best regards,

GORDON REES SCULLY MANSUKHANI, LLP

L. Geoffrey Lee

LGL:ss


cc:    Jeff Olsen, Esq. (jeff@olsenws.com)

# EXHIBIT F

**Geoff Lee**

---

| | |
|---|---|
| **From:** | Geoff Lee |
| **Sent:** | Tuesday, August 19, 2025 4:34 PM |
| **To:** | 'Jeff Olsen'; 'ruben@aclientpc.com' |
| **Cc:** | Anafrancesca Comunale |
| **Subject:** | Fragale v. RiscPoint -- ESI |

Dear Counsel

This confirms that the Protective Orders should be finalized and submitted to the judge soon.  We agreed to input the discovery cut off date as the end date called for in the Protective Order preservation section.

We have agreed on the search terms and custodians except as to: (a) pay* and paid; and (b) high* and drug*, which dispute will have to be resolved by the court.  As we agree to more than 90% of the other parameters, I will refer to that majority portion as the "ESI Agreement" in the supplemental discovery responses.

I still have an outstanding question on the start date as January 1 or July 1 (when plaintiff began working).  We also acknowledged that the end date "to date" would be the date that the search term is run to the extent that is possible.

If I have inadvertently misstated where things stand, please promptly advise me.

# EXHIBIT G

**KLDiscovery**

Discovery Services ● US ● SA ● Statement of Work / Work Order

## Description

| | |
|---|---|
| **Document** | Statement of Work (SOW) / Work Order No. # 29 |
| **SO Date** | August 29, 2025 |
| **SO #** | 7592142 |
| **Scope** | eDiscovery & Document Review Services |
| **References** | Services Agreement dated March 03, 2023 (SO #7546898) |

## Summary Information

| | |
|---|---|
| **Account Name:** | Tokio Marine HCC - Philadelphia Insurance Companies |
| **Matter Name:** | FRAGALE v. RISC POINT Matter No. 1390331 |
| **Matter Launch Date:** | August 28, 2025 |
| **Responsible Professional at Tokio Marine HCC:** | **Name**: Michael Adler<br>**Title**: Senior Claims Specialist<br>**Address**: 58 South Service Road, Melville, NY 11747<br>**Email**: Michael.Adler@phly.com<br>**Tel**: 516.493.4607 |
| **Tokio Marine Claim #:** | 1706458 |
| **Outside Counsel Contact:** | **Law Firm**: Gordon Rees Scully Mansukhani, LLP<br>**Name**: L. Geoffrey Lee<br>**Title**: Partner<br>**Address**: 5 Park Plaza, Suite 1100<br>Irvine, CA 92614<br>**Email**: glee@grsm.com<br>**Tel**: 213.270.7861 |
| **Billing Instructions:** | Invoices should be sent to Tokio Marine HCC |
| **Note any special billing or pricing for this SOW:** | Tokio Marine MSA rates apply |
| **Conflict Check Information:** | Conflict check was run on August 28, 2025 |
| **Services:** | Forensic Analysis ☐<br>Data Restoration ☐<br>Erasure Verification ☐<br>Forensic Collections ☒<br>Data Processing ☒<br>Data Hosting ☒<br>Production Services ☒<br>Managed Review Services (English) ☐<br>Managed Review Services (Foreign) ☐<br>　　　　Language(s):<br>OTHER ☐ *(specify below)* As specified by Tokio Marine HCC's team. |

| **Region for Data Processing & Hosting:** | US ☒ | TORONTO ☐ | UK ☐ |
|---|---|---|---|
| | GERMANY ☐ | PARIS ☐ | IRELAND ☐ |
| | APAC ☐ | OTHER ☐ | TBD ☐ |
| **Review Platform:** | Relativity ☐ | Nebula ☒ | EDR ☐ |

KLDiscovery Restricted. This document is proprietary and confidential. It may not be distributed to any other person without prior written consent of KLDiscovery.

1 / 2

**KLDiscovery**

Discovery Services ● US ● SA ● Statement of Work / Work Order

|  | TBD ☐ |
|---|---|
| **Deadlines & Data Processing Specifications:** | At the direction of counsel. |

## Pricing Standard Services

KLDiscovery's fees under this SOW will be based on the Pricing Tables provided in the SA.

## Acceptance and Authorization

By signing below as an authorized representative, you authorize KLDiscovery to immediately proceed with the engagement as defined under this SOW. This SOW is expressly subject to the Terms and Conditions of the Service Agreement referenced on Page 1 which you have read and understand.

**Client**          Tokio Marine HCC
_____

Contact Name    _____    Title    _____

Signature    _____    Date    _____

**KLDiscovery Ontrack, LLC**
_____

Contact Name    _____    Title    _____

Signature    _____    Date    _____

KLDiscovery Restricted. This document is proprietary and confidential. It may not be distributed to any other person without prior written consent of KLDiscovery.

2 / 2

# EXHIBIT H

## Geoff Lee

| | |
|---|---|
| **From:** | Geoff Lee |
| **Sent:** | Friday, September 5, 2025 2:21 PM |
| **To:** | Jeff Olsen |
| **Cc:** | ruben@aclientpc.com; Anafrancesca Comunale |
| **Subject:** | RE: Fragale v. RiscPoint; Meet and Confer Letter Regarding Discovery |

Hi Jeff,

Happy Friday.

To correct some statements made below: (a) I said that the insurance carrier approved use of an ESI vendor (not that it approved the specific vendor to be used); and (b) I therefore did not say we would be providing a "hit report soon." I would not make such assurances given that the speed by which other people move is largely beyond my control.

My client interviewed a handful of ESI vendors.  It was important that the ESI vendor have certain security clearances because my client handles sensitive federal government documents.  After vetting several ESI vendors, my client chose to work with KLD Discovery Services.  The KLD service contract was drawn up on September 2.  It was originally set for signing by RiscPoint but there was a disagreement about whether the cost falls within or outside the deductible.  We finally determined that it was an insurance company expense.  I am awaiting the insurance carrier representative to sign the service agreement.  My hope is that the initial collection will begin next week.

Have a nice weekend.

--Geoff

---

**From:** Jeff Olsen <jeff@olsenws.com>
**Sent:** Thursday, September 4, 2025 2:48 PM
**To:** Geoff Lee <glee@grsm.com>
**Cc:** ruben@aclientpc.com; Sasha Sudan <asudan@grsm.com>; Anafrancesca Comunale <acomunale@grsm.com>
**Subject:** RE: Fragale v. RiscPoint; Meet and Confer Letter Regarding Discovery

Hi Geoff,

We write to follow up on the status of Defendants' ESI Search and Production – which has still not been produced by Defendants.  Again, these documents relate to document requests that were served on Defendants on *May 29, 2025 (*correcting date in email below:  it was May 29, 2025, not June 29, 2025).  Needless to say, a significant amount of time has passed without sufficient ESI progress by Defendants.

On our meet and confer call on Tuesday August 19, 2025, you indicated that the ESI vendor was already approved by Defendants' insurance carrier and that we would get our Hit Report soon.  I expressed concern regarding the delay and insufficient production.  You represented you would provide us weekly updates to ensure we were still on track and moving forward in a diligent manner.  But, you did not provide an update the first week.  You did not provide an update in the second week.  To date, you have not provided any update.  We are concerned that you are not living up to the promises you made, and we will be unable to obtain the lawful discovery production to which we are entitled without help from the Court.

Please provide us with the Hit Report on the agreed upon terms and any ESI documents ready for production by close of business on Friday 9/5.   Otherwise, we will be forced to motion to compel production in a timely manner to move this case along towards trial.

Thank you,

Jeff

**Jeff T. Olsen**
Olsen Workplace Solutions, P.C.
18012 Cowan, Ste. 200
Irvine, CA 92614
Tel: (949) 232-0455
jeff@olsenws.com | olsenws.com

CONFIDENTIAL: This e-mail message is for the sole use of the intended recipient(s). The information contained in this message may be privileged, confidential, contain work product, and/or be protected from disclosure. If the reader of this message is not the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited. If you have received this communication in error, please notify us immediately by replying to the message, deleting it from your computer and destroying all copies of the original message. Thank you. Olsen Workplace Solutions, P.C.

**From:** Geoff Lee <glee@grsm.com>
**Sent:** Thursday, August 28, 2025 1:46 PM
**To:** Jeff Olsen <jeff@olsenws.com>
**Cc:** ruben@aclientpc.com; Sasha Sudan <asudan@grsm.com>; Anafrancesca Comunale <acomunale@grsm.com>
**Subject:** RE: Fragale v. RiscPoint; Meet and Confer Letter Regarding Discovery

Hi Jeff

Agree to disagree.  Thanks.

**From:** Jeff Olsen <jeff@olsenws.com>
**Sent:** Wednesday, August 27, 2025 5:07 PM
**To:** Geoff Lee <glee@grsm.com>
**Cc:** ruben@aclientpc.com; Sasha Sudan <asudan@grsm.com>; Anafrancesca Comunale <acomunale@grsm.com>
**Subject:** RE: Fragale v. RiscPoint; Meet and Confer Letter Regarding Discovery

Hello Mr. Lee,

I am in receipt of your correspondence, dated August 26, 2025.

Unfortunately, your letter appears performative and in attempt to create a record of something that does not exist.  Lead counsel, Mr. Escalante, and I have always been on the same page about the fact that we merely expect compliance from Defendants under the FRCP – that's all.  The record shows our multiple, good-faith attempts to meet and confer, including substantive correspondence which clearly outlined our positions and law, which we believe speaks for itself.

As far as Defendants' responses and partial document production, and as you confirmed on our last call, it appears that there are some remaining requests and interrogatories that Defendants have actively and strategically chosen not to supplement after our meet and confer attempts.  We also note a practice

2

by Defendants to piece-meal only partial document production. This violates the FRCP. These Request for Documents were served on June 29, 2025. We do not believe Defendants have produced all documents that they should have by now.

By one example (among others), even though Defendants agreed to produce them, Defendants have not produced all correspondence between Defendants and their agents, and investigators John Hawkins and Aisha Adams, even though we believe they are readily and discretely identifiable, and some of those documents may be within the custody and control of your law office itself, Gordon Rees, due to Gordon Rees' pre-litigation involvement in this case and interaction with the investigators. Defendants must timely comply with their respective requirements under the FRCP to produce documents. They are well past due and we expect them produced. In a separate example, we have yet to receive an update regarding your clients' ESI efforts. On our call, you promised weekly updates but have not done so.

With regard to the insufficient responses and failed document production, and in accordance with your positions in the letter, we will move forward with our motions to compel.

Thank you,

Jeff


**Jeff T. Olsen**
Olsen Workplace Solutions, P.C.
18012 Cowan, Ste. 200
Irvine, CA 92614
Tel: (949) 232-0455
jeff@olsenws.com | olsenws.com

CONFIDENTIAL: This e-mail message is for the sole use of the intended recipient(s). The information contained in this message may be privileged, confidential, contain work product, and/or be protected from disclosure. If the reader of this message is not the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited. If you have received this communication in error, please notify us immediately by replying to the message, deleting it from your computer and destroying all copies of the original message. Thank you. Olsen Workplace Solutions, P.C.

**From:** Sasha Sudan <asudan@grsm.com>
**Sent:** Tuesday, August 26, 2025 9:19 AM
**To:** Jeff Olsen <jeff@olsenws.com>
**Cc:** ruben@aclientpc.com; Geoff Lee <glee@grsm.com>; Anafrancesca Comunale <acomunale@grsm.com>
**Subject:** Fragale v. RiscPoint; Meet and Confer Letter Regarding Discovery

Good morning,

Please see the attached regarding the above referenced matter.

Best regards,

**ALEXANDRA (SASHA) SUDAN**
Legal Secretary

**GORDON REES SCULLY MANSUKHANI | GRSM50**
**YOUR 50 STATE LAW FIRM™**

101 W. Broadway, Suite 2000, San Diego, CA 92101

asudan@grsm.com
Direct: (619) 230 – 7448
Ext: 7448

---

This email communication may contain CONFIDENTIAL INFORMATION WHICH ALSO MAY BE LEGALLY PRIVILEGED and is intended only for the use of the intended recipients identified above. If you are not the intended recipient of this communication, you are hereby notified that any unauthorized review, use, dissemination, distribution, downloading, or copying of this communication is strictly prohibited. If you are not the intended recipient and have received this communication in error, please immediately notify us by reply email, delete the communication and destroy all copies.

**GORDON REES SCULLY MANSUKHANI, LLP**
**YOUR 50 STATE LAW FIRM™**
www.grsm.com

---

This email communication may contain CONFIDENTIAL INFORMATION WHICH ALSO MAY BE LEGALLY PRIVILEGED and is intended only for the use of the intended recipients identified above. If you are not the intended recipient of this communication, you are hereby notified that any unauthorized review, use, dissemination, distribution, downloading, or copying of this communication is strictly prohibited. If you are not the intended recipient and have received this communication in error, please immediately notify us by reply email, delete the communication and destroy all copies.

**GORDON REES SCULLY MANSUKHANI, LLP**
**YOUR 50 STATE LAW FIRM™**
www.grsm.com

# EXHIBIT I

**Geoff Lee**

| | |
|---|---|
| **From:** | ruben@aclientpc.com |
| **Sent:** | Thursday, September 11, 2025 8:46 PM |
| **To:** | Geoff Lee; 'Jeff Olsen' |
| **Cc:** | Anafrancesca Comunale; ruben@aclientpc.com |
| **Subject:** | RE: Fragale v. RiscPoint; Meet and Confer Letter Regarding Discovery |

Mr. Lee,

I just wanted to memorialize our discussion today. You weren't able to give a date certain for the production; however, you made representations about Defendants' good faith efforts to make progress in getting this done. I explained that we will need to get a date certain at some point for the production to take place ==in September,== otherwise we will need to get the court involved to act diligently. I invited you to provide regular update about the progress, which again will help demonstrate good faith.

V/r,

**Ruben Escalante**
Partner

ACLIENT PC
440 N Barranca Ave PMB 9496
Covina, California 91723
(310) 431-9687

---

**From:** ruben@aclientpc.com <ruben@aclientpc.com>
**Sent:** Wednesday, September 10, 2025 5:56 PM
**To:** 'Geoff Lee' <glee@grsm.com>; 'Jeff Olsen' <jeff@olsenws.com>
**Cc:** 'Anafrancesca Comunale' <acomunale@grsm.com>
**Subject:** RE: Fragale v. RiscPoint; Meet and Confer Letter Regarding Discovery

Mr. Lee,

Mr. Olsen is not available at that time. I am available. I'll call you then.

V/r,

**Ruben Escalante**
Partner

ACLIENT PC
440 N Barranca Ave PMB 9496
Covina, California 91723
(310) 431-9687

**From:** Geoff Lee <glee@grsm.com>
**Sent:** Wednesday, September 10, 2025 10:27 AM
**To:** Jeff Olsen <jeff@olsenws.com>
**Cc:** ruben@aclientpc.com; Anafrancesca Comunale <acomunale@grsm.com>
**Subject:** Re: Fragale v. RiscPoint; Meet and Confer Letter Regarding Discovery

Hi Jeff

How about 1:30 Thursday?

---

**From:** Jeff Olsen <jeff@olsenws.com>
**Sent:** Monday, September 8, 2025 6:42:37 PM
**To:** Geoff Lee <glee@grsm.com>
**Cc:** ruben@aclientpc.com <ruben@aclientpc.com>; Anafrancesca Comunale <acomunale@grsm.com>
**Subject:** RE: Fragale v. RiscPoint; Meet and Confer Letter Regarding Discovery

Hello Geoff,

I am in receipt of your email below re your clients' ESI.  With the discovery cut-off in this case quickly approaching on December 5, 2025, Plaintiff is concerned about Defendants' lack of timely production (i.e. limited and piecemeal) and ESI production (i.e. none).

Please provide times this week to meet and confer on a telephone call, with the purpose to discuss and agree to a timeline and date by which Defendants will conclude their production, including ESI.  Currently, and per your email below, Defendants have not committed to any sort of fixed date for production, and you even admit ESI collection *had not even started*.   To the extent that Defendants' reasonable completion date is not provided and agreed upon, Plaintiff will move to compel production Defendants' compliance by a fixed-date-certain set by the Court.

Please provide a few dates and times for a call this week that best work for you.

Thank you for your kind attention to this matter,

**Jeff T. Olsen**
Olsen Workplace Solutions, P.C.
18012 Cowan, Ste. 200
Irvine, CA 92614
Tel: (949) 232-0455
jeff@olsenws.com | olsenws.com

CONFIDENTIAL: This e-mail message is for the sole use of the intended recipient(s). The information contained in this message may be privileged, confidential, contain work product, and/or be protected from disclosure. If the reader of this message is not the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited. If you have received this communication in error, please notify us immediately by replying to the message, deleting it from your computer and destroying all copies of the original message. Thank you. Olsen Workplace Solutions, P.C.

---

**From:** Geoff Lee <glee@grsm.com>
**Sent:** Friday, September 5, 2025 2:21 PM
**To:** Jeff Olsen <jeff@olsenws.com>
**Cc:** ruben@aclientpc.com; Anafrancesca Comunale <acomunale@grsm.com>
**Subject:** RE: Fragale v. RiscPoint; Meet and Confer Letter Regarding Discovery

Hi Jeff,

Happy Friday.

To correct some statements made below: (a) I said that the insurance carrier approved use of an ESI vendor (not that it approved the specific vendor to be used); and (b) I therefore did not say we would be providing a "hit report soon." I would not make such assurances given that the speed by which other people move is largely beyond my control.

My client interviewed a handful of ESI vendors. It was important that the ESI vendor have certain security clearances because my client handles sensitive federal government documents. After vetting several ESI vendors, my client chose to work with KLD Discovery Services. The KLD service contract was drawn up on September 2. It was originally set for signing by RiscPoint but there was a disagreement about whether the cost falls within or outside the deductible. We finally determined that it was an insurance company expense. I am awaiting the insurance carrier representative to sign the service agreement. My hope is that the initial collection will begin next week.

Have a nice weekend.

--Geoff

---

**From:** Jeff Olsen <jeff@olsenws.com>
**Sent:** Thursday, September 4, 2025 2:48 PM
**To:** Geoff Lee <glee@grsm.com>
**Cc:** ruben@aclientpc.com; Sasha Sudan <asudan@grsm.com>; Anafrancesca Comunale <acomunale@grsm.com>
**Subject:** RE: Fragale v. RiscPoint; Meet and Confer Letter Regarding Discovery

Hi Geoff,

We write to follow up on the status of Defendants' ESI Search and Production – which has still not been produced by Defendants. Again, these documents relate to document requests that were served on Defendants on *May 29, 2025 (*correcting date in email below: it was May 29, 2025, not June 29, 2025). Needless to say, a significant amount of time has passed without sufficient ESI progress by Defendants.

On our meet and confer call on Tuesday August 19, 2025, you indicated that the ESI vendor was already approved by Defendants' insurance carrier and that we would get our Hit Report soon. I expressed concern regarding the delay and insufficient production. You represented you would provide us weekly updates to ensure we were still on track and moving forward in a diligent manner. But, you did <u>not</u> provide an update the first week. You did <u>not</u> provide an update in the second week. To date, you have <u>not</u> provided any update. We are concerned that you are not living up to the promises you made, and we will be unable to obtain the lawful discovery production to which we are entitled without help from the Court.

Please provide us with the Hit Report on the agreed upon terms and any ESI documents ready for production by close of business on Friday 9/5. Otherwise, we will be forced to motion to compel production in a timely manner to move this case along towards trial.

Thank you,

Jeff

**Jeff T. Olsen**

3

Olsen Workplace Solutions, P.C.
18012 Cowan, Ste. 200
Irvine, CA 92614
Tel: (949) 232-0455
[jeff@olsenws.com](mailto:jeff@olsenws.com) | [olsenws.com](http://olsenws.com)

CONFIDENTIAL: This e-mail message is for the sole use of the intended recipient(s). The information contained in this message may be privileged, confidential, contain work product, and/or be protected from disclosure. If the reader of this message is not the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited. If you have received this communication in error, please notify us immediately by replying to the message, deleting it from your computer and destroying all copies of the original message. Thank you. Olsen Workplace Solutions, P.C.

**From:** Geoff Lee <[glee@grsm.com](mailto:glee@grsm.com)>
**Sent:** Thursday, August 28, 2025 1:46 PM
**To:** Jeff Olsen <[jeff@olsenws.com](mailto:jeff@olsenws.com)>
**Cc:** [ruben@aclientpc.com](mailto:ruben@aclientpc.com); Sasha Sudan <[asudan@grsm.com](mailto:asudan@grsm.com)>; Anafrancesca Comunale <[acomunale@grsm.com](mailto:acomunale@grsm.com)>
**Subject:** RE: Fragale v. RiscPoint; Meet and Confer Letter Regarding Discovery

Hi Jeff

Agree to disagree.  Thanks.

**From:** Jeff Olsen <[jeff@olsenws.com](mailto:jeff@olsenws.com)>
**Sent:** Wednesday, August 27, 2025 5:07 PM
**To:** Geoff Lee <[glee@grsm.com](mailto:glee@grsm.com)>
**Cc:** [ruben@aclientpc.com](mailto:ruben@aclientpc.com); Sasha Sudan <[asudan@grsm.com](mailto:asudan@grsm.com)>; Anafrancesca Comunale <[acomunale@grsm.com](mailto:acomunale@grsm.com)>
**Subject:** RE: Fragale v. RiscPoint; Meet and Confer Letter Regarding Discovery

Hello Mr. Lee,

I am in receipt of your correspondence, dated August 26, 2025.

Unfortunately, your letter appears performative and in attempt to create a record of something that does not exist.  Lead counsel, Mr. Escalante, and I have always been on the same page about the fact that we merely expect compliance from Defendants under the FRCP – that's all.  The record shows our multiple, good-faith attempts to meet and confer, including substantive correspondence which clearly outlined our positions and law, which we believe speaks for itself.

As far as Defendants' responses and partial document production, and as you confirmed on our last call, it appears that there are some remaining requests and interrogatories that Defendants have actively and strategically chosen not to supplement after our meet and confer attempts.  We also note a practice by Defendants to piece-meal only partial document production.  This violates the FRCP.  These Request for Documents were served on June 29, 2025.  We do not believe Defendants have produced all documents that they should have by now.

By one example (among others), even though Defendants agreed to produce them, Defendants have not produced all correspondence between Defendants and their agents, and investigators John Hawkins and Aisha Adams, even though we believe they are readily and discretely identifiable, and some of those documents may be within the custody and control of your law office itself, Gordon Rees, due to Gordon Rees' pre-litigation involvement in this case and interaction with the investigators.  Defendants must timely comply with their respective requirements under the FRCP to produce documents.  They are well

past due and we expect them produced.  In a separate example, we have yet to receive an update regarding your clients' ESI efforts.  On our call, you promised weekly updates but have not done so.

With regard to the insufficient responses and failed document production, and in accordance with your positions in the letter, we will move forward with our motions to compel.

Thank you,

Jeff

**Jeff T. Olsen**
Olsen Workplace Solutions, P.C.
18012 Cowan, Ste. 200
Irvine, CA 92614
Tel: (949) 232-0455
jeff@olsenws.com | olsenws.com

CONFIDENTIAL: This e-mail message is for the sole use of the intended recipient(s). The information contained in this message may be privileged, confidential, contain work product, and/or be protected from disclosure. If the reader of this message is not the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited. If you have received this communication in error, please notify us immediately by replying to the message, deleting it from your computer and destroying all copies of the original message. Thank you. Olsen Workplace Solutions, P.C.

---

**From:** Sasha Sudan <asudan@grsm.com>
**Sent:** Tuesday, August 26, 2025 9:19 AM
**To:** Jeff Olsen <jeff@olsenws.com>
**Cc:** ruben@aclientpc.com; Geoff Lee <glee@grsm.com>; Anafrancesca Comunale <acomunale@grsm.com>
**Subject:** Fragale v. RiscPoint; Meet and Confer Letter Regarding Discovery

Good morning,

Please see the attached regarding the above referenced matter.

Best regards,

**ALEXANDRA (SASHA) SUDAN**
Legal Secretary

**GORDON REES SCULLY MANSUKHANI | GRSM50**
**YOUR 50 STATE LAW FIRM™**

101 W. Broadway, Suite 2000, San Diego, CA 92101

asudan@grsm.com
Direct: (619) 230 – 7448
Ext: 7448

This email communication may contain CONFIDENTIAL INFORMATION WHICH ALSO MAY BE LEGALLY PRIVILEGED and is intended only for the use of the intended recipients identified above. If you are not the intended recipient of this communication, you are hereby notified that any unauthorized review, use, dissemination, distribution, downloading, or copying of this communication is strictly prohibited. If you are not the intended recipient and have received this communication in error, please immediately notify us by reply email, delete the communication and destroy all copies.

**GORDON REES SCULLY MANSUKHANI, LLP**
**YOUR 50 STATE LAW FIRM™**
www.grsm.com

---

This email communication may contain CONFIDENTIAL INFORMATION WHICH ALSO MAY BE LEGALLY PRIVILEGED and is intended only for the use of the intended recipients identified above. If you are not the intended recipient of this communication, you are hereby notified that any unauthorized review, use, dissemination, distribution, downloading, or copying of this communication is strictly prohibited. If you are not the intended recipient and have received this communication in error, please immediately notify us by reply email, delete the communication and destroy all copies.

**GORDON REES SCULLY MANSUKHANI, LLP**
**YOUR 50 STATE LAW FIRM™**
www.grsm.com

---

This email communication may contain CONFIDENTIAL INFORMATION WHICH ALSO MAY BE LEGALLY PRIVILEGED and is intended only for the use of the intended recipients identified above. If you are not the intended recipient of this communication, you are hereby notified that any unauthorized review, use, dissemination, distribution, downloading, or copying of this communication is strictly prohibited. If you are not the intended recipient and have received this communication in error, please immediately notify us by reply email, delete the communication and destroy all copies.

**GORDON REES SCULLY MANSUKHANI, LLP**
**YOUR 50 STATE LAW FIRM™**
www.grsm.com

---

This email communication may contain CONFIDENTIAL INFORMATION WHICH ALSO MAY BE LEGALLY PRIVILEGED and is intended only for the use of the intended recipients identified above. If you are not the intended recipient of this communication, you are hereby notified that any unauthorized review, use, dissemination, distribution, downloading, or copying of this communication is strictly prohibited. If you are not the intended recipient and have received this communication in error, please immediately notify us by reply email, delete the communication and destroy all copies.

**GORDON REES SCULLY MANSUKHANI, LLP**
**YOUR 50 STATE LAW FIRM™**
www.grsm.com

# EXHIBIT J

INTENTIONALLY OMITTED

# EXHIBIT K

**KLDiscovery**    Discovery Services ● US ● SA ● Statement of Work / Work Order

## Description

| | |
|---|---|
| **Document** | Statement of Work (SOW) / Work Order No. # 29 |
| **SO Date** | September 17, 2025 |
| **SO #** | 7592142 |
| **Scope** | eDiscovery & Document Review Services |
| **References** | Services Agreement dated March 03, 2023 (SO #7546898) |

## Summary Information

| Account Name: | Tokio Marine HCC - Philadelphia Insurance Companies |
|---|---|
| **Matter Name:** | FRAGALE v. RISC POINT Matter No. 1390331 |
| **Matter Launch Date:** | September 17, 2025 |
| **Responsible Professional at Tokio Marine HCC:** | **Name**: Michael Adler<br>**Title**: Senior Claims Specialist<br>**Address**: 58 South Service Road, Melville, NY 11747<br>**Email**: Michael.Adler@phly.com<br>**Tel**: 516.493.4607 |
| **Tokio Marine Claim #:** | 1706458 |
| **Outside Counsel Contact:** | **Law Firm**: Gordon Rees Scully Mansukhani, LLP<br>**Name**: L. Geoffrey Lee<br>**Title**: Partner<br>**Address**: 5 Park Plaza, Suite 1100<br>Irvine, CA 92614<br>**Email**: glee@grsm.com<br>**Tel**: 213.270.7861 |
| **Billing Instructions:** | Invoices should be sent to the Insured for payment<br>RISC POINT ADVISORY GROUP LLC<br>Attn: Matt Drewyor<br>Chief Executive Officer<br>2814 Detroit Avenue<br>Cleveland, Ohio 44113<br>Telephone:<br>Email: matt.drewyor@riscpoint.com<br>CC: Adrienna van Diermen, avandiermen@grsm.com |
| **Note any special billing or pricing for this SOW:** | Tokio Marine MSA rates apply |
| **Conflict Check Information:** | Conflict check was run on August 28, 2025 |
| **Services:** | Forensic Analysis ☐<br>Data Restoration ☐<br>Erasure Verification ☐<br>Forensic Collections ☒<br>Data Processing ☒<br>Data Hosting ☒<br>Production Services ☒ |

KLDiscovery Restricted. This document is proprietary and confidential. It may not be distributed to any other person without prior written consent of KLDiscovery.

**KLDiscovery**

Discovery Services ● US ● SA ● Statement of Work / Work Order

| | Managed Review Services (English) ☐ |
|---|---|
| | Managed Review Services (Foreign) ☐ |
| | Language(s): |
| | OTHER ☐ *(specify below)* As specified by Tokio Marine HCC's team. |
| **Region for Data Processing & Hosting:** | US ☒    TORONTO ☐    UK ☐ <br> GERMANY ☐    PARIS ☐    IRELAND ☐ <br> APAC ☐    OTHER ☐    TBD ☐ |
| **Review Platform:** | Relativity ☐    Nebula ☒    EDR ☐ <br> TBD ☐ |
| **Deadlines & Data Processing Specifications:** | At the direction of counsel. |

## Pricing Standard Services

KLDiscovery's fees under this SOW will be based on the Pricing Tables provided in the SA.

## Acceptance and Authorization

By signing below as an authorized representative, you authorize KLDiscovery to immediately proceed with the engagement as defined under this SOW. This SOW is expressly subject to the Terms and Conditions of the Service Agreement referenced on Page 1 which you have read and understand.

### Client        RISC POINT ADVISORY GROUP LLC

Contact Name    Matt Drewyor                          Title    Chief Executive Officer

Signature    *Matt Drewyor*                           Date    9/22/2025

### KLDiscovery Ontrack, LLC

Contact Name    Gideon Kaplan                          Title    Counsel

Signature    *Gideon Kaplan*                           Date    9/22/2025

KLDiscovery Restricted.  This document is proprietary and confidential.  It may not be distributed to any other person without prior written consent of KLDiscovery.

2 / 2

# EXHIBIT L



**Nebula Cull Extended Search Report**

Executed at:9/26/2025 7:32:55 PM

| Target Matter: | None |
|---|---|
| Deduplication: | Global |
| | |

| Promotion Queued (Totals): | |
|---|---|
| **Documents** | **Native Size (GB)** |
| 507,425 | 108.0742 |

| Custodian | Search Population (pre-dedupe) | Document Hits (pre-dedupe) | Document Hits with Family (pre-dedupe) |
|---|---|---|---|
| Bai, Tony | 51,464 | 44,630 | 44,918 |
| Cowdrey, Mike | 12,675 | 11,947 | 11,970 |
| Drewyor, Matthew | 108,128 | 98,020 | 99,992 |
| Fragale, Ashley | 112,096 | 112,096 | 112,096 |
| Gross, Chad | 40,411 | 37,593 | 37,653 |
| Hibbeler, John | 8,045 | 7,338 | 7,354 |
| Laurence, Allison | 4,060 | 3,982 | 3,982 |
| McCartney, Ryan | 75,181 | 67,941 | 68,089 |
| Nix, Jacob | 241,323 | 241,323 | 241,323 |
| Shah, Disha | 3,488 | 2,896 | 2,903 |
| Wiese, Matt | 5,733 | 1,258 | 1,499 |
| **Total Documents** | **662,604** | **629,024** | **631,779** |



**Nebula Cull Extended Search Report**

Executed at:9/26/2025 6:32:25 PM

| Target Matter: | None |
|---|---|
| Deduplication: | Global |

| Promotion Queued (Totals): | |
|---|---|
| **Documents** | **Native Size (GB)** |
| 246,961 | 27.2699 |

| Custodian | Search Population (pre-dedupe) | Document Hits (pre-dedupe) | Document Hits with Family (pre-dedupe) |
|---|---|---|---|
| Bai, Tony | 78,216 | 16,657 | 18,563 |
| Cowdrey, Mike | 11,706 | 1,678 | 1,765 |
| Drewyor, Matthew | 224,037 | 168,559 | 172,370 |
| Fragale, Ashley | 15,459 | 2,735 | 3,031 |
| Gross, Chad | 252,794 | 173,389 | 180,436 |
| Hibbeler, John | 9,930 | 1,112 | 1,708 |
| Laurence, Allison | 10,449 | 2,219 | 3,854 |
| McCartney, Ryan | 147,529 | 17,243 | 25,172 |
| Nix, Jacob | 99,606 | 29,904 | 31,148 |
| Private | 25,614 | 5,311 | 6,041 |
| Public | 7,646 | 3,033 | 3,454 |
| Shah, Disha | 1,424 | 208 | 225 |
| Wiese, Matt | 30,641 | 5,345 | 6,091 |
| **Total Documents** | **915,051** | **427,393** | **453,858** |

**PROOF OF SERVICE**

I am an active member of the State Bar of California.  I am not a party to the within action.  My business address is 440 N. Barranca Ave. PMB 9496, Covina, CA 91723.  On September 30, 2025, I served copies of the within documents described as:

**[DISCOVERY DOCUMENT: REFERRED TO MAGISTRATE JUDGE AUTUMN D. SPAETH]**

**JOINT STIPULATION REGARDING PLAINTIFF'S MOTION TO COMPEL COMPLIANCE AND PRODUCTION OF DOCUMENTS**

on the interested parties in this action as follows:

**See attached Service List**

[x]      BY ELECTRONIC/EMAIL - I caused the above document to be delivered to the office of the addressee via electronic e-mail. Said document was transmitted to the email address of that office which is listed on the Service List. I did not receive, within a reasonable after the transmission, any indication that the transmission was not successful.

I certify the foregoing is true and correct.  Executed on September 30, 2025.

_____

Ruben Escalante

**PROOF OF SERVICE**

1

**SERVICE LIST**

2

3  GEOFFREY LEE (SBN:234024)
   glee@grsm.com
4  ANAFRANCESCA COMUNALE (SBN: 323257)
5  acomunale@grsm.com
   GORDON REES SCULLY MANSUKHANI, LLP
6  101 West Broadway, Suite 2000
7  San Diego, CA 92101
   Telephone: (619) 230-7418
8  Facsimile: (619) 696-7124

9
   Attorneys for Defendants
10 RISC POINT ADVISORY GROUP LLC; RISC POINT ASSURANCE, LTD;
   RISC POINT HOLDINGS, INC.; JACOB NIX
11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**PROOF OF SERVICE**