1  Ruben D. Escalante (Cal. Bar No. 244596)
2  Robert A. Escalante (Cal. Bar No. 270629)
   ACLIENT PC
3  440 N Barranca Ave PMB 9496
   Covina, California 91723
4  Telephone: (310) 431-9687
5  Email: ruben@aclientpc.com

6
   Jeff T. Olsen (Cal. Bar No. 283249)
7  OLSEN WORKPLACE SOLUTIONS PC
   18012 Cowan, Ste 200
8  Irvine, California 92614
   Telephone: (949) 232-0455
9  Email: jeff@olsenws.com
10
11 Attorneys for Plaintiff
   ASHLEY FRAGALE
12

13              **UNITED STATES DISTRICT COURT**

14              **CENTRAL DISTRICT OF CALIFORNIA**

15 | ASHLEY FRAGALE, | ) | Case No.: 8:25-cv-00994 JWH (ADSx) |

16 |  | ) |  |
   |           Plaintiffs, | ) | **[DISCOVERY DOCUMENT:** |
17 |  | ) | **REFERRED TO MAGISTRATE** |
   |      vs. | ) | **JUDGE AUTUMN D. SPAETH]** |
18 |  | ) |  |
19 | RISC POINT ADVISORY GROUP | ) | **DECLARATION OF JEFF OLSEN IN** |
   | LLC; RISC POINT ASSURANCE, | ) | **SUPPORT OF PLAINTIFF'S** |
20 | LTD; RISC POINT HOLDINGS, INC.; | ) | **SUPPLEMENTAL MEMORANDUM IN** |
   | JACOB NIX; and DOES 1 through 10, | ) | **SUPPORT PLAINTIFF'S MOTION TO** |
21 | inclusive, | ) | **COMPEL DISCOVERY** |
22 |  | ) |  |
23 |           Defendants. | ) | Date:  Wednesday, October 15, 2025 |
   |  | ) | Time:       10:00am |
24 |  | ) | Location:     Courtroom 6B |
25 |  | ) |  |
   |  | ) | Discovery Cut-off Date: December 5, |
26 |  | ) | 2025 |
   |  | ) | PreTrial Conference Date: March 27, |
27 |  | ) | 2026 |
   |  | ) | Trial Date: April 13, 2026 |
28

---

                    **DECLARATION OF JEFF OLSEN**

<u>DECLARATION OF JEFF OLSEN</u>

I, Jeff Olsen, do declare as follows:

1.      I am an attorney licensed to practice in the United States District Court, Central District of California, where this action is pending.  Along with co-counsel at ACLIENT P.C., I am counsel of record for Plaintiff.  I have personal knowledge of the facts below.

2.      On August 6, 2025, I telephonically met and conferred with Attorney Geoffrey Lee, counsel for Defendants.  By that time, my co-counsel Attorney Ruben Escalante already sent Defendants a written meet and confer letter, dated August 6, 2025, which contained – as relevant here - Plaintiff's positions regarding "me too" discoverability.

3.      On the August 6, 2025, teleconference with Attorney Lee, we discussed Defendant's initial responses to multiple discovery topics.  In particular, I referenced that Plaintiff expected discovery of relevant "me too" witnesses, including based on similar "internal" complaints, and set forth Plaintiff's position as to why those would be relevant.  It was not Plaintiff's position to exclude discovery of "internal" or "external" complaints.  I requested he follow up in writing as to Defendants' positions.

4.      On August 12, 2025, Attorney Lee emailed Plaintiff's counsel a letter which memorialized our August 6, 2025 phone call from his perspective, and "set[] forth [Defendants'] major positions on the pending discovery."  A true and correct copy of Mr. Lee's August 12, 2025, letter is attached hereto as "**Exhibit A**," which is also highlighted in relevant part for the Court's convenience.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Executed this 1st day of October 2025, in Irvine, CA.

Jeff Olsen

Jeff Olsen

-1-

**DECLARATION OF JEFF OLSEN**

Exhibit A



**GEOFFREY LEE**
glee@grsm.com
Direct (619) 230-7418

101 W. Broadway, Suite 2000
San Diego, CA 92101
www.grsm.com

August 12, 2025

<u>**VIA EMAIL**</u>

Ruben Escalante, Esq.
ACLIENT PC
440 N Barranca Ave PMB 9496
Covina, California 91723
ruben@aclientpc.com

   Re: <u>Ashley Fragale v. RiscPoint Advisory Group LLC, *et al*.</u>

Dear Ruben:

  At the request of your co-counsel Jeff Olsen, we are providing you a letter setting forth our major positions on the pending discovery.

<u>Protective Order</u>

The draft general Stipulated Protective Orders looks fine. The draft E-Discovery Protective Order also looks fine except for two items. First, we need an end date instead of a search period that is "on-going." Second, we need the Exhibit A attachment for experts or other authorized third parties who will be bound by the protective order.

<u>Privilege Log</u>

I appreciate your email clarifying the matter of using privilege logs. I agree that Plaintiff should not need to create a privilege log for discussions she had with her counsel. In my mind, such communications are per se not relevant discovery by definition.

<u>ESI Plan</u>

Your August 6 letter asserts some "area of contention" as to custodians and search terms. I do not believe that any dispute has yet arisen in this regard. Your proposed custodian and search terms appear generally acceptable. I just have the following comments and questions:

- Plaintiff began working at RiscPoint in July 2024. As such, it would appear that your referenced beginning date of 1/1/2024 was apparently mistaken. We suggest using 7/1/24.

Ruben Escalante
August 12, 2025
Page 2

- The proposed end date is "to date." We obviously need some actual date rather than a moving target. I propose June 30, 2025, as the end date.
- The search terms pay* and paid* seems too generic and likely to result in too many hits. ""Without an appropriately developed search protocol, far too little or far too much information will be gleaned from the vast ocean of data involved in a given case." Battaglia, J., *Discovery & Disclosures Under the Federal Rules of Civil Procedure*, p.32 (2010); *United States v. University of Nebraska at Kearney*, 2014 U.S. Dist. LEXIS 118073 (D. Neb. 2014) (denying motion to compel due to search terms being too generic; *Shaw Group Inc. v. Zurich Am. Ins. Co*., 2014 U.S. Dist. LEXIS 122516 at *16 (M.D. La. 2014) (rejecting plaintiff's proposed search terms that would have "generated 103,202 e-mails and an estimated 20,000 attachments, which would take 10-12 weeks to review, [and] an additional 2 weeks to perform redaction…."); *Terracon Consultants, Inc. v. Drash*, 2013 U.S. Dist. LEXIS 53800 at *12 (D. Kan. 2013) (denying plaintiff's requested search terms because those terms would "cause an overly broad identification of documents."); *Connecticut General Life Insurance Company v. Earl Scheib, Inc*., 2013 U.S. Dist. LEXIS 16234 at *8-10. (S.D. Cal. 2013) (sustaining the defendant's objections to multiple requests for production of ESI as being overly broad for the amount in controversy). Vendors get "paid." Employees "get paid." Expenses are the subject of prompt "pay." Why is this term even relevant? Can we narrow it somehow?
- The search terms high* and drug* seem out of place and invading privacy. Why are these relevant?
- The search term pic* also seems to generic and likely to result in many irrelevant hits. To avoid capturing works like "pick," can we agree to picture* instead?

<u>ESI Sources</u>

Your letter also mentioned something about a program called "Signal." My understanding is that "Signal" is a software used to delete ESI. RiscPoint does not use it. RiscPoint and Jake Nix do not use SnapChat either.

We previously discussed "Slack" messages. My client confirms that there is an "XML" archive of Slack messages. However, my client does not have the ability to conduct automated word searches. The only automated search that can be done is by date. Any other searches would have to be done by the human eye. While the company that sells Slack does offer an upgraded license to search messages automatically, I am informed that the cost of the upgraded license is approximately $200,000 and will only search terms from the date of the upgrade but not retroactively. Depending on what parameters your office suggests for a manual search, if any, we reserve the right to object that the XML archive is not reasonably accessible.

My client confirms that there are no known voicemails, videos, or other "likeness" of Plaintiff's voice or face.

Ruben Escalante
August 12, 2025
Page 3

Because my client is a small company, it will be requesting that the insurance carrier approve the hiring of an outside ESI vendor such as Consilio.

<u>"Me Too" Evidence</u>

I appreciate your analysis of the "me too" doctrine as it applies in federal courts. I agree that such a doctrine is recognized in our court, but, as I surmised, the doctrine is applied very narrowly and ultimately should not apply here.

Discovery, including discovery of me-too complaints, cannot go beyond the bounds of relevancy and must be proportionate to the needs of the case. *Sanchez v. Master Prot., LP*, No. CV 20-08472-VAP-RAO, 2021 WL 4125856, at *3 (C.D. Cal. Aug. 2021); *Constance Hanson-Poulson v. Dep't of Def.*, 2020 WL 2043999, at *3 (C.D. Cal. Mar. 2020) (holding a request for production of Me Too complaints without limit to particular complainants, decision makers or geographic location was outside of the scope of relevancy). Plaintiffs requesting me-too evidence would need to show that the other individuals also claiming discrimination were similarly situated to Plaintiff. *Howard v. Raytheon Co.*, No. CV 09-5742 ABC (EX), 2011 WL 13177257, at *3 (C.D. Cal. Mar. 2011). "Employees are similarly situated if they are similar '**in all material respects**,' that is, 'when they have **similar jobs** and **display similar conduct**.' " *Id.* (bold added).

Here, there was no other employee besides Plaintiff who personally made an internal complaint about harassment, discrimination, or retaliation. So the answers to SROG No. 1 are RFP No. 13 as we read them are: there are none. To be candid, there were two employees who through legal counsel or through the legal system later made "claims" about their past employment that were investigated by outside counsel. But we do not interpret your discovery requests as written to include such legal claims. Those two cases also involved facts and circumstances that were completely different from Plaintiff's circumstances. In our meet-and-confer discussions you indicated interest in seeing management's or Human Resource's protocol response to employee complaints and protocol investigations. Again, that only happened with respect to Plaintiff Ashley Fragale.

Because the so-called me too evidence must be so similar to the plaintiff's theory, jumping across to other protected classes is not permissible. Courts appear to be unanimous in sex discrimination cases in not permitting discovery of other complaints such as for race discrimination. In one California case, the judgment was actually reversed on this very point. In *Pinter-Brown v. Regents of Univ. of California,* 48 Cal. App. 5th 55 (2020), the plaintiff sued for sex discrimination against her employer UCLA. Throughout trial, the court allowed the plaintiff to present the jury unrelated claims of discrimination at UCLA. The court even admitted into evidence a list of all employment complaints against the entire University of California system for five years. The Court of Appeal found that this overbroad evidence

Ruben Escalante
August 12, 2025
Page 4

was not admissible as "me too" evidence because it was not about plaintiff's "own protected class" and was different from plaintiff's own theory. *Id*. at 96.

Finally, I respectfully disagree with your position as to relevancy to punitive damages. First, the *Tijerina* case you cited speaks to evidence of actual "harm" to other employees. Proof of "harm" is not established by a mere complaint or even a claim, especially if it was not similar to the Plaintiff's. Second, again, the *Tijerina* case speaks to proof of circumstances "similar to" the plaintiff. Third, and finally, evidence going to punitive damages (such as net worth of the defendant) is typically withheld until the second phase of trial if there is one.

<u>Miscellaneous</u>

During my call with Mr. Olsen, he asked if there were any other insurance policies other than the Philadelphia policy we disclosed. (RFP No. 18). My clients confirm there is not.

Technically, we did not yet discuss the Requests for Documents issued to Jake Nix. But I will compare your list more closely and let you know if there is any material discrepancy between the requests to RiscPoint and Nix.

My office is in the process of finalizing Supplemental Responses to certain Requests for Documents as we discussed.

<u>Conclusion</u>

Please let me know if you would like to discuss these matters further. We will keep you apprised of the progress with the ESI vendor.

Best regards,

GORDON REES SCULLY MANSUKHANI, LLP

L. Geoffrey Lee

LGL:ss


cc:    Jeff Olsen, Esq. (jeff@olsenws.com)

**PROOF OF SERVICE**

I am an active member of the State Bar of California.  I am not a party to the within action.  My business address is 440 N. Barranca Ave. PMB 9496, Covina, CA 91723.  On October 1, 2025, I served copies of the within documents described as:

**[DISCOVERY DOCUMENT: REFERRED TO MAGISTRATE JUDGE AUTUMN D. SPAETH]**

**DECLARATION OF JEFF OLSEN IN SUPPORT OF PLAINTIFF'S SUPPLEMENTAL MEMORANDUM IN SUPPORT PLAINTIFF'S MOTION TO COMPEL DISCOVERY**

on the interested parties in this action as follows:

**See attached Service List**

[x]    BY ELECTRONIC/EMAIL - I caused the above document to be delivered to the office of the addressee via electronic e-mail. Said document was transmitted to the email address of that office which is listed on the Service List. I did not receive, within a reasonable after the transmission, any indication that the transmission was not successful.

I certify the foregoing is true and correct.  Executed on October 1, 2025.


_____

Ruben Escalante

**PROOF OF SERVICE**

1

**SERVICE LIST**

2

3  GEOFFREY LEE (SBN:234024)
   glee@grsm.com

4  ANAFRANCESCA COMUNALE (SBN: 323257)
   acomunale@grsm.com

5  GORDON REES SCULLY MANSUKHANI, LLP

6  101 West Broadway, Suite 2000

7  San Diego, CA 92101
   Telephone: (619) 230-7418

8  Facsimile: (619) 696-7124

9
   Attorneys for Defendants
10 RISC POINT ADVISORY GROUP LLC; RISC POINT ASSURANCE, LTD;
   RISC POINT HOLDINGS, INC.; JACOB NIX
11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**PROOF OF SERVICE**
