Ruben D. Escalante (Cal. Bar No. 244596)
Robert A. Escalante (Cal. Bar No. 270629)
ACLIENT PC
440 N Barranca Ave PMB 9496
Covina, California 91723
Telephone: (310) 431-9687
Email: ruben@aclientpc.com

Attorneys for Plaintiff
ASHLEY FRAGALE

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ASHLEY FRAGALE,<br><br>                        Plaintiffs,<br><br>    vs.<br><br>RISC POINT ADVISORY GROUP LLC; RISC POINT ASSURANCE, LTD; RISC POINT HOLDINGS, INC.; JACOB NIX; and DOES 1 through 10, inclusive,<br><br>                        Defendants. | Case No.: 8:25-cv-00994 JWH (ADSx)<br><br>**DECLARATION OF RUBEN ESCALANTE IN SUPPORT OF MOTION FOR LEAVE TO FILE FIRST AMENDED COMPLAINT**<br><br>Date:  December 5, 2025<br>Time: 9:00 a.m.<br>Place: Courtroom 9D<br><br>Complaint filed:    April 14, 2025<br>Date of Removal:  May 7, 2025 |

**DECLARATION OF RUBEN ESCALANTE**

## DECLARATION OF RUBEN ESCALANTE

I, Ruben Escalante, do declare as follows:

I am a partner in the law firm ACLIENT PC, attorneys of record for Plaintiff. I have personal knowledge of the facts herein, unless otherwise stated, and if called as a witness to testify thereto under oath, I could competently do so.

1.     A copy of Plaintiff's proposed First Amended Complaint is attached hereto as Exhibit A.

2.     A copy of a "redlined" version of the proposed First Amended Complaint is attached hereto as Exhibit B.

3.     On October 17, 2025, I held a telephonic meet and confer with counsel for Defendants, Geoff Lee, regarding Plaintiff's proposed amended complaint. We were not able to resolve our dispute. Based on our discussion, I believe Defendants' position is that the new cause of action is futile/a sham because Plaintiff cannot establish the "interstate commerce" element, in addition to use of a company phone, and that there is not a standalone cause of action for constructive termination. Plaintiff's position is that the use of a cell phone and its applications can satisfy the "interstate commerce" element, there is a good-faith basis for alleging use of a company phone, and constructive termination can be alleged as an adverse employment action.

4.     I am informed and belief that Plaintiff resigned on or about June 27, 2025.

5.     On or about September 26, 2025, I submitted Plaintiff's amended administrative complaint with the California Civil Rights Department, and sent an email to Defendants' counsel asking him if Defendants would stipulate to amending the civil Complaint. The parties held a telephone meet and confer on or about October 1, 2025.

6.     On October 3, 2025, while I was waiting for the meet and confer waiting period to expire, my co-counsel, Jeff Olsen, took the deposition of Ryan McCartney, who I am informed and believe is a former executive of and current owner of at least one of Defendant Employers. I was present remotely for a significant portion of the deposition. Among other things, McCartney unexpectedly testified Nix threatened McCartney and his

**DECLARATION OF RUBEN ESCALANTE**

spouse in connection with his deposition testimony and that Nix obtained and disclosed an intimate photograph of Plaintiff to McCartney. A true and correct copy of highlighted portions of his deposition transcript is attached hereto as Exhibit C. This was the first time I learned of these facts, and I am informed and believe it was the first time my co-counsel and my client learned of these facts. That same day, I informed Defendants' counsel in writing that "in light of today's testimony, we are exploring adding additional claims and parties." I am informed and believe the photograph was originally taken, shared with Nix, and disclosed all without Plaintiff's knowledge or consent.

7.      I expedited receipt of McCartney's deposition transcript and received it on or about October 8, 2025. After reviewing the transcript, on or about October 9, 2025, I sent Defendants' counsel a new proposed amended complaint, and requested an immediate meet and confer; I subsequently sent another version that proposed adding a party on October 13, 2025. Defendants' counsel did not meet and confer with me until October 17, 2025. During the meet and confer we discussed our respective positions, but were not able to resolve our dispute.

8.      Leading up to the meet and confer expiration date (i.e., October 24, 2025), I repeatedly followed up with Defendants' counsel in writing; Defendants did not stipulate.

9.      Plaintiff has noticed the continued deposition of McCartney for November 4, 2025, and the deposition of the third party who I am informed and believe, without Plaintiff's knowledge or consent, took the intimate photograph of Plaintiff and sent it to Nix for November 14, 2025. Defendants also could have affirmatively noticed their depositions to conduct any cross-examination during the discovery phase.

10.     I provided Defendants' counsel with a copy of a proposed amended complaint before the deadline to propound written discovery and before Defendants took the deposition of Plaintiff. Defendants took Plaintiff's deposition on October 15, 2025. The version of the proposed amended complaint I provided to Defendants' counsel on October 9 is substantially similar to the proposed amended complaint submitted here. Based on my review, the only material difference between the version submitted here and the proposed

**DECLARATION OF RUBEN ESCALANTE**

version I sent on October 9 is that the submitted version here added back the jury demand and eliminated the DOE defendants from the Sixth Cause of Action. I also sent counsel another version on October 13. Based on my review, unlike that version, the submitted version here adds back the jury demand and does not seek to add a new party.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Executed this 29th day of October 2025, in Fairfield, CA.

_____

Ruben Escalante

**DECLARATION OF RUBEN ESCALANTE**

Exhibit A

Ruben D. Escalante (Cal. Bar No. 244596)
Robert A. Escalante (Cal. Bar No. 270629)
ACLIENT PC
440 N Barranca Ave PMB 9496
Covina, California 91723
Telephone: (310) 431-9687
Email: ruben@aclientpc.com

Attorneys for Plaintiff
ASHLEY FRAGALE

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ASHLEY FRAGALE,<br><br>                   Plaintiffs,<br><br>        vs.<br><br>RISC POINT ADVISORY GROUP LLC; RISC POINT ASSURANCE, LTD; RISC POINT HOLDINGS, INC.; JACOB NIX; and DOES 1 through 10, inclusive,<br><br>                   Defendants. | Case No.: 8:25-cv-00994 JWH (ADSx)<br><br>**FIRST AMENDED COMPLAINT FOR DAMAGES**<br><br>1. Quid Pro Quo Harassment in Violation of FEHA-Gender/Sex (Gov. Code § 12940 *et seq.*);<br>2. Hostile Environment Harassment in Violation of FEHA-Gender/Sex (Gov. Code § 12940 *et seq.*);<br>3. Retaliation in Violation of FEHA (Gov. Code § 12940 *et seq.*);<br>4. Failure to Prevent in Violation of FEHA (Gov. Code § 12940 *et seq.*);<br>5. Whistleblower Retaliation Violation of Labor Code § 1102.5; and<br>6. Unlawful Disclosure of an Intimate Image in Violation of the Violence Against Women Act Reauthorization (15 U.S.C. § 6851(b)(1)(A))<br><br>**DEMAND FOR JURY TRIAL** |

---

**FIRST AMENDED COMPLAINT**

Plaintiff Ashley Fragale ("Plaintiff"), demanding a jury trial, brings this action against Defendants RISC Point Advisory Group LLC, RISC Point Assurance, LTD, RISC Point Holdings, Inc., Jacob Nix, and DOES 1 through 10, for the damages alleged herein and as grounds therefore alleges as follows:

## GENERAL ALLEGATIONS

1.      Plaintiff was at all relevant times in this matter an adult female working in Orange County, California, on information and belief, for RISC Point Advisory Group LLC, RISC Point Assurance, LTD, and/or RISC Point Holdings, Inc. (collectively "Defendant Employers"). Plaintiff is a citizen of California, and lives and works in California.

2.      Upon information and belief, RISC Point Advisory Group LLC is, and at all times herein mentioned was, a limited liability company incorporated in the state of Delaware, and is not a citizen of California.

3.      Upon information and belief, RISC Point Assurance, LTD is, and at all times herein mentioned was, a limited liability company incorporated in the state of Ohio, and is not a citizen of California.

4.      Upon information and belief, RISC Point Holdings, Inc. is, and at all times herein mentioned was, a corporation incorporated in the state of Ohio, and is not a citizen of California.

5.      Upon information and belief, Jacob Nix ("NIX"), is an individual and, upon information and belief, a citizen of the state of Ohio, and is an owner, officer, director, managing agent, agent, and/or employee of Defendant Employers.

6.      Plaintiff is informed and believes and, based thereon alleges, that Defendant Employers acted as "joint employers" and/or as part of an "integrated enterprise" with respect to Plaintiff's employment. During the relevant time period, Defendant Employers engaged, suffered, and/or permitted Plaintiff to work for Defendant Employers.  Defendant Employers each exercised control over Plaintiff's working conditions, work performed, wages, and other terms and conditions of her employment. Plaintiff performed work for

**FIRST AMENDED COMPLAINT**

Defendant Employers. Defendant Employers knew or should have known of the illegal conduct alleged herein and failed to take those corrective measures within their control. Defendant Employers operated an integrated enterprise with interrelation of operations, centralized control of labor relations, common management, and/or common ownership or financial control.

7.     Plaintiff is ignorant of the true names and capacities of Defendants sued as DOES 1 through 10, inclusive, and therefore sues these Defendants by such fictitious names. Plaintiff will amend this Complaint to allege their true names and capacities when ascertained. Plaintiff is informed and believes and based thereon alleges that each of these fictitiously named Defendants is responsible in some manner for the occurrences herein alleged, and that Plaintiff's injuries as herein alleged were proximately caused by these Defendants.

8.     Plaintiff is informed and believes and based thereon alleges that, at all relevant times, each of the Defendants, whether named or fictitious, was the agent, employee or alter ego of each of the other Defendants, and in doing the things alleged to have been done in the Complaint, acted within the scope of such agency or employment, or ratified the acts of the other.

9.     Whenever and wherever reference is made in this Complaint to any act or failure to act by a defendant or co-defendant, such allegations and references shall also be deemed to mean the acts and/or failures to act by each defendant acting individually, jointly and severally.

10.     On information and belief, Defendant Employers employ at least five (5) employees and are therefore subject to the California Fair Employment and Housing Act, California Government Code section 12900, *et seq.* (hereafter "FEHA").

11.     Plaintiff is informed and believes and based thereon alleges that, at all times material herein, Defendant Employers and/or their respective agents, employees or supervisors, authorized, condoned and/or ratified the unlawful conduct of each other.

12.     In addition, Defendant Employers compelled, coerced, aided, and abetted the

**FIRST AMENDED COMPLAINT**

discrimination, which is prohibited under California Government Code section 12940(i).

13.    Plaintiff is informed and believes and based thereon alleges that, at all times material herein, Defendant Employers, and/or their respective agents, employees, or supervisors knew or reasonably should have known that unless they intervened to protect Plaintiff, and to adequately supervise, prohibit, control, regulate, discipline, and/or otherwise penalize the conduct of the employees of Defendant Employers, the remaining defendants and employees perceived the conduct and omissions as being ratified and condoned.

## JURISDICTION AND VENUE

14.    The Court has jurisdiction over Defendants, because upon information and belief, Defendants have sufficient minimum contacts in California or otherwise intentionally avail themselves of the California market so as to render the exercise of jurisdiction over them by this Court consistent with traditional notions of fair play and substantial justice.

15.    This Court has original jurisdiction based on the existence of diversity of citizenship between the parties pursuant to 28 U.S.C. § 1332, Defendants having previously removed this matter to this Court.

16.    Venue is proper in this judicial district pursuant to California Government Code section 12965 and 28 U.S.C. section 1441. *See Polizzi v. Cowles Magazines, Inc.*, 345 U.S. 663, 665 (1953); *Malloy v. Superior Court*, 83 Cal. App. 4th 543, 552 (2022).

## FACTUAL ALLEGATIONS

17.    On information and belief, Defendant Employers provide security and compliance services to companies, including but not limited to California companies and other companies nationwide regarding compliance with, among other laws and regulations, the California Consumer Privacy Act (CCPA) and California Privacy Rights Act (CPRA). Defendant Employers even devote an entire page of their website to their CCPA and CPRA services.

18.    In or about July 2024, Defendant Employers hired Plaintiff to work for

**FIRST AMENDED COMPLAINT**

them remotely, from Orange County, California, as a Human Resources Generalist. This would include Plaintiff's common and regular interactions with Defendant Employers and their principals, agents, employees, and attorneys, from Plaintiff's remote workstation in Orange County, California.

19.    Within the first few months, Plaintiff was subjected to sexual harassment from and by NIX, the Founder and then Chief Executive Officer of Defendant Employers, who, during his time with Defendant Employers, had organized an executive team comprised entirely of men.

20.    For example, in or about December 2024, during a work trip to Las Vegas, Nevada, NIX asked to peruse and comment on Plaintiff's dating profile during a lunch conversation. Plaintiff complied with his request. After NIX inspected the profile, he told Plaintiff that she looked like Plaintiff had low self-worth, insinuating that she was promiscuous. The directive from Defendant Employers' highest-ranking employee to inspect her profile and commenting on it left Plaintiff shook, uncomfortable, and concerned about NIX's future behavior. During the same trip, NIX also made multiple comments to Plaintiff that were inappropriate and sexual in nature, including multiple comments that were made in front of other executives of Defendant Employers. At one point in the trip, NIX made a comment to Plaintiff in front of another executive that referenced NIX paying Plaintiff if she took off her clothes and exposed her breasts for the money. NIX's conduct, and ratification by other executives at the company, left Plaintiff shook, uncomfortable, and concerned about NIX's future behavior. At all relevant times, NIX knew Plaintiff traveled to Las Vegas, Nevada, from her home and remote workstation in Orange County, California, and knew she would return following the work trip.

21.    Since then, NIX continued to constantly bring up Plaintiff's personal romantic life to her and work colleagues, and NIX directed his actions to Plaintiff while she had been working remotely for Defendant Employers from her home and

**FIRST AMENDED COMPLAINT**

remote workstation in Orange County, California. In another example, on or about March 11, 2025, NIX called Plaintiff on Slack to discuss personnel issues relating to a new hire. After the updates, NIX inquired about a household project and a planter Plaintiff was building in her backyard. Plaintiff sent a picture of the project to NIX, to which NIX responded that he thought he was going to see "nudes." Plaintiff, again, felt shook, uncomfortable, and concerned about NIX's future behavior. Plaintiff responded that no naked pictures of herself would be sent, but rather, only pictures of the house project or dogs. NIX replied that he preferred pictures of "tits." NIX knew that Plaintiff was working remotely from Orange County, California, at the time. During that same call, NIX told Plaintiff that another executive at the company thought Plaintiff and NIX were going to hook up until they came back from lunch that day and said the vibe changed. NIX went on to say that he was not saying that they would have hooked up because he cared about his company, but it was tempting. Again, the comment left Plaintiff entirely shook, uncomfortable, and concerned about NIX's future behavior.

22.     On or about the next day, NIX and Plaintiff discussed a sensitive employee issue. In response to Plaintiff giving her professional opinion, NIX accused her of not "protecting the company" and sent a threatening email suggesting Plaintiff could be terminated. Again, NIX knew that Plaintiff was working remotely from Orange County, California, at the time.

23.     The unreasonable threat of termination in response to a professional opinion had no legitimate purpose. On information and belief, the threat was tied to Plaintiff's continued protests to, opposition to sexually harassing conduct of, and rebuff of NIX, including most recently in the denial of sending nude pictures of herself at NIX's request.

24.     On or about March 21, 2025, Plaintiff formally complained to Defendant Employers regarding NIX's illegal conduct and pleading for help. On information and belief, in response to Plaintiff's complaints, substantially motivated by

**FIRST AMENDED COMPLAINT**

Plaintiff's activity, including but not limited to refusing to succumb and take part in NIX's sexual harassment and complaints about the same, and within a matter of days, Defendant Employers and NIX determined and executed a plan that they would find a way terminate Plaintiff's employment, either by constructive termination, including but not limited to by restricting opportunities for advancement, limiting work opportunities, taking away job security, terminating another California employee who assisted Plaintiff in doing her work, failing to take immediate and appropriate corrective action, sharing at least one intimate photograph of her to others (including coworkers and knowing that Plaintiff was a California resident), taking steps to make her ineffective in her job, and/or otherwise intentionally creating an intolerable working environment such that any reasonable employee would resign and force Plaintiff to resign, and if those efforts did not work by direct termination. This conduct was directed at Plaintiff who was still working remotely for Defendant employers from Orange County, California. Ultimately, Defendant Employers constructively terminated Plaintiff's employment.

25. NIX has engaged in other behavior reflecting NIX's sexist, misogynistic, and sexually harassing behavior and Defendant Employers' failure to take immediate and appropriate corrective action to control him. For example, on or about February 5, 2025, NIX referred to another female employee of Defendant Employers as follows "Did she sound [c-word]y about it[.] Because it was [c-word]y," in a written communication to Plaintiff and another executive of Defendant Employers. Upon information and belief, although another executive of Defendant Employers was witness to NIX's language and behavior, Defendant Employers did not investigate the incident nor take prompt remedial action to ensure NIX's behavior would be stopped. NIX's conduct left Plaintiff shook, uncomfortable, and concerned about NIX's future behavior. Upon information and belief, NIX has referred to women as the "[c-word]" multiple times with coworkers. Upon information and belief, NIX wrongfully obtained through use of his cellular phone

**FIRST AMENDED COMPLAINT**

and its applications at least one intimate photograph of Plaintiff from a third-party co-worker of Plaintiff, which was taken by the third party and shared by that third party with NIX without her knowledge or consent, and NIX shared it with others (including coworkers and knowing Plaintiff was a California resident) by using his company cellular phone and its applications. Upon information and belief, NIX has intimate photographs of other women who he has shared with third parties without the knowledge or consent of those women. Upon information and belief, NIX pressured an employee to make Plaintiff appear promiscuous during the Defendant Employers' investigation of Plaintiff's complaint, and to fabricate testimony during his deposition in this matter. Upon information and belief, NIX threatened this employee in connection with his deposition testimony, stating to the employee words to the effect of "not to [f-word] this up like you did the internal investigation or I will kill your spouse and then kill you."

26.    On or about April 13, 2025, Plaintiff exhausted her administrative remedies by timely filing a complaint with the California Civil Rights Department regarding the claims alleged herein. Per Plaintiff's request, an immediate right-to-sue letter was issued on April 13, 2025. Plaintiff, thereafter, filed an amended complaint with the California Civil Rights Department on or about September 26, 2025.

### FIRST CAUSE OF ACTION

**Quid Pro Quo Harassment**

**in Violation of FEHA-Gender/Sex (Gov. Code § 12940 et seq.)**

**Plaintiff Against Defendant Employers, NIX, and Does 1 through 10**

27.    Plaintiff re-alleges and incorporates all previous and subsequent paragraphs of this Complaint, as though fully set forth herein.

28.    Defendant Employers are subject to suit for harassment claims under the FEHA, in that it regularly employs one (1) or more persons or that it regularly receives the services of one or more persons providing services pursuant to a

-7-

**FIRST AMENDED COMPLAINT**

contract.

29.     NIX is subject to suit under the FEHA in that he is personally liable for any prohibited harassment that he personally perpetrated.

30.     Under Government Code section 12940(j), it is unlawful for an employer or individual to harass an employee based on, among other things, the employee's gender/sex. The FEHA's prohibition of unlawful harassment includes quid pro quo harassment.

31.     Plaintiff alleges that Defendants are liable for harassment she suffered on a quid pro quo basis because her terms of employment, job benefits, or favorable working conditions were made contingent, by words or conduct, on Plaintiff's acceptance of NIX's sexual advances and/or conduct.

32.     The conduct was carried out, authorized, and/or ratified by Defendant Employers' managers and other officers, directors and/or managing agents; therefore, Defendants are strictly liable for the conduct. Alternatively, the actions were known by Defendant Employers' officers, directors and/or managing agents yet no appropriate corrective action was taken. In either event, Defendant Employers are liable for the conduct because the harassers were managers and/or because Defendant Employers knew or should have known of the conduct and failed to prevent it and/or ratified and/or condoned it.

33.     Plaintiff believes that her sex/gender and/or prior protected complaints were the cause of the unwanted harassing conduct described above.

34.     As a direct, foreseeable, and proximate result of Defendants' actions, Plaintiff has suffered and continues to suffer humiliation, embarrassment, mental and emotional distress, and discomfort, and if she is terminated lost wages and benefits, all to Plaintiff's damages in an amount over the minimum jurisdiction of this Court, the precise amount of which will be proven at trial.

35.     As a further proximate result of Defendants' conduct described herein, Plaintiff has incurred and will continue to incur medical expenses in an amount

-8-

**FIRST AMENDED COMPLAINT**

according to proof at the time of trial.

36.     As a result of the aforesaid acts of Defendant Employers, Plaintiff claims general damages for mental and emotional distress and aggravation in an amount to be proven at the time of trial.

37.     In doing the acts herein alleged, Defendant Employers, through their officers, directors, and/or managing agents, and NIX acted with oppression, fraud, malice, and in the conscious disregard of the rights of Plaintiff, authorized such conduct, and knew of such conduct and adopted or approved of it after it occurred; therefore, Plaintiff is also entitled to punitive damages in an amount according to proof at the time of trial.

38.     Plaintiff, who has incurred and continues to incur attorneys' fees and legal expenses, is also entitled to recover said costs and fees in an amount according to proof at the time of trial, pursuant to Government Code section 12965(b).

## SECOND CAUSE OF ACTION

### Hostile Environment Harassment

### in Violation of FEHA Gender/Sex (Gov. Code § 12940 *et seq.*)

### Plaintiff Against Defendant Employers, NIX, and Does 1 through 10

39.     Plaintiff re-alleges and incorporates all previous and subsequent paragraphs of this Complaint, as though fully set forth herein.

40.     Defendant Employers are subject to suit for harassment claims under the FEHA, in that it regularly employs one (1) or more persons or that it regularly receives the services of one or more persons providing services pursuant to a contract.

41.     NIX is subject to suit under the FEHA in that he is personally liable for any prohibited harassment that he personally perpetrated.

42.     Under Government Code section 12940(j), it is unlawful for an employer or individual to harass an employee based on, among other things, the employee's gender/sex.

**FIRST AMENDED COMPLAINT**

43.    Defendant Employers and NIX engaged in actions to harass because of and based on her gender/sex, including but not limited to in the form of sexual harassment and retaliation.

44.    Defendants violated Government Code section 12940(j) by creating a hostile work environment and by failing to prevent said acts from occurring.

45.    The conduct was carried out, authorized, and/or ratified by Defendant Employers' managers and other officers, directors and/or managing agents; therefore, Defendants are strictly liable for the conduct. Alternatively, the actions were known by Defendant Employers' officers, directors and/or managing agents yet no appropriate corrective action was taken. In either event, Defendant Employers are liable for the conduct because the harassers were managers and/or because Defendant Employers knew or should have known of the conduct and failed to prevent it and/or ratified and/or condoned it.

46.    Plaintiff believes that her sex/gender and/or prior protected complaints were the cause of the unwanted harassing conduct described above. The actions were sufficiently severe or pervasive to alter the conditions of employment and thereby constituted a hostile work environment in violation of FEHA.

47.    As a direct, foreseeable, and proximate result of Defendants' actions, Plaintiff has suffered and continues to suffer humiliation, embarrassment, mental and emotional distress, and discomfort, and if she is terminated lost wages and benefits, all to Plaintiff's damages in an amount over the $35,000 minimum jurisdiction of this Court, the precise amount of which will be proven at trial.

48.    As a further proximate result of Defendants' conduct described herein, Plaintiff has incurred and will continue to incur medical expenses in an amount according to proof at the time of trial.

49.    As a result of the aforesaid acts of Defendant Employers, Plaintiff claims general damages for mental and emotional distress and aggravation in an amount to be proven at the time of trial.

**FIRST AMENDED COMPLAINT**

50.     In doing the acts herein alleged, Defendant Employers, through their officers, directors, and/or managing agents, and NIX acted with oppression, fraud, malice, and in the conscious disregard of the rights of Plaintiff, authorized such conduct, and knew of such conduct and adopted or approved of it after it occurred; therefore, Plaintiff is also entitled to punitive damages in an amount according to proof at the time of trial.

51.     Plaintiff, who has incurred and continues to incur attorneys' fees and legal expenses, is also entitled to recover said costs and fees in an amount according to proof at the time of trial, pursuant to Government Code section 12965(b).

## THIRD CAUSE OF ACTION

### Retaliation

### in Violation of FEHA (Gov. Code § 12940 et seq.

### Plaintiff Against Defendant Employers and Does 1 through 10

52.     Plaintiff re-alleges and incorporates all previous and subsequent paragraphs of this Complaint, as though fully set forth herein.

53.     Government Code section 12940(h) provides that it is unlawful for an employer to discriminate against any person because the person has engaged in protected activities under FEHA.

54.     Plaintiff engaged protected activity under the FEHA during her employment with Defendant Employers. Defendant Employers retaliated against Plaintiff for engaging in such protected activity by taking adverse actions against and harassing her. Such conduct was a violation of the FEHA.

55.     As a proximate result of Defendant Employers' actions, Plaintiff has suffered and continues to suffer humiliation, embarrassment, mental and emotional distress, and discomfort, and lost wages and benefits, all to Plaintiff's damage in an amount over the minimum jurisdiction of this Court by at least three times, the precise amount of which will be proven at trial. Plaintiff claims such amount as damages together with pre-judgment interest pursuant to Civil Code section 3287

-11-

**FIRST AMENDED COMPLAINT**

and/or any other provision of law providing for pre-judgment interest.

56.    As a further proximate result of Defendant Employers' conduct described in this Complaint, Plaintiff has incurred and will continue to incur medical expenses in an amount according to proof at the time of trial.

57.    As a result of the aforesaid acts of Defendant Employers, Plaintiff claims general damages for mental and emotional distress and aggravation in an amount to be proven at the time of trial.

58.    In doing the acts herein alleged, Defendant Employers through their officers, directors, and/or managing agents, acted with oppression, fraud, malice, and in the conscious disregard of the rights of Plaintiff, authorized such conduct, and knew of such conduct and adopted or approved of it after it occurred; therefore, Plaintiff is also entitled to punitive damages in an amount according to proof at the time of trial.

59.    Plaintiff, who has incurred and continues to incur attorneys' fees and legal expenses, is also entitled to recover said costs and fees in an amount according to proof at the time of trial, pursuant to Government Code section 12965(b)

## FOURTH CAUSE OF ACTION

### Failure to Prevent

### in Violation of FEHA (Gov. Code § 12940 et seq.)

### Plaintiff Against Defendant Employers and Does 1 through 10

60.    Plaintiff re-alleges and incorporates all previous and subsequent paragraphs of this Complaint, as though fully set forth herein.

61.    During Plaintiff's employment, Defendant Employers failed to prevent the above-referenced acts of harassment and retaliation toward Plaintiff, in violation of Government Code section 12940(k). Defendant Employers' failure to undertake prompt and adequate investigations and their complete failure to prevent the above-alleged acts of harassment and retaliation constitutes an unlawful employment practice. Such conduct is in violation of FEHA and has resulted in damage and

**FIRST AMENDED COMPLAINT**

injury to Plaintiff as alleged herein.

62.     As a proximate result of Defendant Employers' violation of Government Code section 12940(k), Plaintiff has suffered and continues to humiliation, embarrassment, mental and emotional distress, and discomfort, and lost wages and benefits, all to Plaintiff's damage in an amount over the minimum jurisdiction of this Court, the precise amount of which will be proven at trial. Plaintiff claims such amount as damages together with prejudgment interest pursuant to Civil Code section 3287 and/or any other provision of law providing for pre-judgment interest.

63.     As a further proximate result of Defendant Employers' conduct described in this Complaint, Plaintiff has incurred and will continue to incur medical expenses in an amount according to proof at the time of trial.

64.     As a result of the aforesaid acts of Defendant Employers, Plaintiff claims general damages for mental and emotional distress and aggravation in an amount to be proven at the time of trial.

65.     In doing the acts herein alleged, Defendant Employers, through their officers, directors, and/or managing agents, acted with oppression, fraud, malice, and in the conscious disregard of the rights of Plaintiff, authorized such conduct, and knew of such conduct and adopted or approved of it after it occurred; therefore, Plaintiff is also entitled to punitive damages in an amount according to proof at the time of trial.

66.     Plaintiff, who has incurred and continues to incur attorneys' fees and legal expenses, is entitled to recover said costs and fees in an amount according to proof at the time of trial, pursuant to Government Code section 12965(b).

## FIFTH CAUSE OF ACTION

### Whistleblower Retaliation

### in Violation of Labor Code § 1102.5

### Plaintiff Against Defendant Employers and Does 1 through 10

67.     Plaintiff re-alleges and incorporates all previous and subsequent

**FIRST AMENDED COMPLAINT**

paragraphs of this Complaint, as though fully set forth herein.

68.    Pursuant to Labor Code § 1102.5(b), "[a]n employer, or any person acting on behalf of the employer, shall not retaliate against an employee for disclosing information, or because the employer believes that the employee disclosed or may disclose information, to a government or law enforcement agency, to a person with authority over the employee or another employee who has the authority to investigate, discover, or correct the violation or noncompliance, or for providing information to, or testifying before, any public body conducting an investigation, hearing, or inquiry, if the employee has reasonable cause to believe that the information discloses a violation of state or federal statute, or a violation of or noncompliance with a local, state, or federal rule or regulation, regardless of whether disclosing the information is part of the employee's job duties."

69.    As set forth above, Plaintiff engaged in protected activity under Labor Code section 1102.5. Defendant Employers retaliated against Plaintiff for engaging in such protected activity by taking adverse actions against and harassing her. Such conduct was a violation of Labor Code section 1102.5(b).

70.    As a proximate result of Defendant Employers' violation of Labor Code § 1102.5, Plaintiff has suffered and continues to suffer humiliation, embarrassment, mental and emotional distress, and discomfort, and lost wages and benefits, all to Plaintiff's damage in an amount over the minimum jurisdiction of this Court, the precise amount of which will be proven at trial.  Plaintiff claims such amount as damages together with prejudgment interest pursuant to Civil Code section 3287 and/or any other provision of law providing for pre-judgment interest.

71.    As a further proximate result of Defendant Employers' conduct described in this Complaint, Plaintiff has incurred and will continue to incur medical expenses in an amount according to proof at the time of trial.

72.    As a result of the aforesaid acts of Defendant Employers, Plaintiff claims general damages for mental and emotional distress and aggravation in an amount to

**FIRST AMENDED COMPLAINT**

be proven at the time of trial.

73.    In doing the acts herein alleged, Defendant Employers, through their officers, directors, and/or managing agents, acted with oppression, fraud, malice, and in the conscious disregard of the rights of Plaintiff, authorized such conduct, and knew of such conduct and adopted or approved of it after it occurred; therefore, Plaintiff is also entitled to punitive damages in an amount according to proof at the time of trial.

74.    Plaintiff, who has incurred and continues to incur attorneys' fees, is entitled to recover said fees in an amount according to proof at the time of trial, pursuant to Labor Code section 1102.5(j).

**SIXTH CAUSE OF ACTION**

**Unlawful Disclosure of an Intimate Image**

**In Violation of the Violence Against Women Act Reauthorization**

**(15 U.S.C. § 6851(b)(1)(A))**

**Plaintiff Against Defendant Employers and NIX**

75.    Plaintiff re-alleges and incorporates all previous and subsequent paragraphs of this Complaint, as though fully set forth herein.

76.    15 U.S.C. § 6851(b)(1)(A) provides: "an individual whose intimate visual depiction is disclosed, in or affecting interstate or foreign commerce or using any means or facility of interstate or foreign commerce, without the consent of the individual, where such disclosure was made by a person who knows that, or recklessly disregards whether, the individual has not consented to such disclosure, may bring a civil action against that person in an appropriate district court of the United States for relief . . ."

77.    15 U.S.C. § 6851(a)(5) defines "intimate visual depiction" as "a visual depiction, as that term is defined in section 2256(5) of Title 18, that depicts – (i) the uncovered genitals, pubic area, anus, or post-pubescent female nipple of an identifiable individual; or (ii) the display or transfer of bodily sexual fluids – (I) on

to any part of the body of an identifiable individual; (II) from the body of an identifiable individual; (III) an identifiable individual engaging in sexually explicit conduct . . .”

78.    Defendant Employers, through their director, officer, managing agent, agent, owner, and/or employee NIX who, acting in such capacity, used a company cellular phone and its application to obtain and disclose at least one intimate visual depiction of Plaintiff without her consent, giving rise to a claim under 15 U.S.C. § 6851.

79.    On information and belief, using a company cellular phone and its applications, Defendant Employers, through NIX, disclosed at least one intimate photograph of Plaintiff by sending them to himself, storing them on his cellular phone and applications, and sharing them with third parties.

80.    On information and belief, at least one such photograph included identifiable depictions of at least Plaintiff's bare breasts.

81.    These disclosures occurred without Plaintiff's consent.

82.    Defendant Employers, through NIX, knew or recklessly disregarded that Plaintiff had not consented to disseminating, distributing, and displaying of her intimate images.

83.    As a direct, foreseeable, and proximate result of Defendants' actions, Plaintiff has suffered and continues to suffer humiliation, embarrassment, mental and emotional distress, and discomfort, all to Plaintiff's damages in an amount over the minimum jurisdiction of this Court, the precise amount of which will be proven at trial.

84.    Plaintiff has been damaged by Defendants' conduct and is entitled to actual damages in an amount to be proven at trial, or liquidated damages in the amount of $150,000, whichever is more.

85.    In doing the acts herein alleged, Defendant Employers, through their officers, directors, and/or managing agents, and NIX acted with oppression, fraud,

**FIRST AMENDED COMPLAINT**

malice, and in the conscious disregard of the rights of Plaintiff, authorized such conduct, and knew of such conduct and adopted or approved of it after it occurred; therefore, Plaintiff is also entitled to punitive damages in an amount according to proof at the time of trial.

86.    Plaintiff is also entitled to all other relief available at law and equity, including but not limited to a preliminary injunction and a permanent injunction, ordering all Defendants to delete any and all intimate photographs of Plaintiff and cease all display, distribution, and disclosure of the photographs.

87.    Plaintiff, who has incurred and continues to incur attorneys' fees and legal expenses, is also entitled to recover said costs and fees in an amount according to proof at the time of trial, pursuant to 15 U.S.C. § 6851.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff Ashley Fragale prays for judgment against Defendants RISC Point Advisory Group LLC, RISC Point Assurance, LTD, RISC Point Holdings, Inc., Jacob Nix, and DOES 1 through 10, as follows:

1.    For past and future compensatory damages, according to proof;

2.    For pre and post-judgment interest at the legal rate;

3.    For exemplary and punitive damages according to proof;

4.    Preliminary injunctive relief;

5.    Pursuant to 15 U.S.C. § 6851, awarding Plaintiff monetary damages in the amount of $150,000;

///

///

///

**FIRST AMENDED COMPLAINT**

6.    Injunctive, equitable and declaratory relief;

7.    Attorneys' fees and costs of suit; and

8.    For such other and further relief as the Court deems proper.

Date: October 29, 2025                    Respectfully submitted,

                                          ACLIENT PC


                                          By:_____
                                              RUBEN D. ESCALANTE
                                              Attorney for Plaintiff
                                              ASHLEY FRAGALE

**FIRST AMENDED COMPLAINT**

1

## __DEMAND FOR JURY TRIAL__

2    Plaintiff Ashley Fragale hereby demands a trial by jury as provided by Rule

3 38(a) of the Federal Rules of Civil Procedure.

4    Date: October 29, 2025                    Respectfully submitted,

5

6                                             ACLIENT PC

7

8    By:_____

9       RUBEN D. ESCALANTE

10      Attorney for Plaintiff

     ASHLEY FRAGALE

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**FIRST AMENDED COMPLAINT**

Exhibit B

Ruben D. Escalante (Cal. Bar No. 244596)
Robert A. Escalante (Cal. Bar No. 270629)
ACLIENT PC
440 N Barranca Ave PMB 9496
Covina, California 91723
Telephone: (310) 431-9687
Email: ruben@aclientpc.com

Attorneys for Plaintiff
ASHLEY FRAGALE

Formatted: Font: 14 pt

SUPERIOR COURT OF CALIFORNIAUNITED STATES DISTRICT COURT

COUNTY OF ORANGECENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ASHLEY FRAGALE, | Case No.: 8:25-cv-00994 JWH (ADSx) |
| Plaintiffs, | **FIRST AMENDED COMPLAINT FOR DAMAGES** |
| vs. | 1. Quid Pro Quo Harassment in Violation of FEHA-Gender/Sex (Gov. Code § 12940 *et seq.*); |
| RISC POINT ADVISORY GROUP LLC; RISC POINT ASSURANCE, LTD; RISC POINT HOLDINGS, INC.; JACOB NIX; and DOES 1 through 10, inclusive, | 2. Hostile Environment Harassment in Violation of FEHA-Gender/Sex (Gov. Code § 12940 *et seq.*); |
| | 3. Retaliation in Violation of FEHA (Gov. Code § 12940 *et seq.*); |
| Defendants. | 4. Failure to Prevent in Violation of FEHA (Gov. Code § 12940 *et seq.*); and |
| | 5. Whistleblower Retaliation Violation of Labor Code § 1102.5; and |
| | 6. Unlawful Disclosure of an Intimate Image in Violation of the Violence Against Women Act Reauthorization (15 U.S.C. § 6851(b)(1)(A)) |
| | **DEMAND FOR JURY TRIAL** |

Formatted: Font: 14 pt

Formatted: Font: 14 pt

Formatted: Font: 14 pt

**FIRST AMENDED COMPLAINT**

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

Formatted: Font: 14 pt

-1-

**FIRST AMENDED COMPLAINT**

Plaintiff Ashley Fragale ("Plaintiff"), demanding a jury trial, brings this action against Defendants RISC Point Advisory Group LLC, RISC Point Assurance, LTD, RISC Point Holdings, Inc., Jacob Nix, and DOES 1 through 10, for the damages alleged herein and as grounds therefore alleges as follows:

<u>**GENERAL ALLEGATIONS**</u>

1.      Plaintiff was at all relevant times in this matter an adult female working in Orange County, California, on information and belief, for RISC Point Advisory Group LLC, RISC Point Assurance, LTD, and/or RISC Point Holdings, Inc. (collectively "Defendant Employers"). Plaintiff is a citizen of California, and lives and works in California.

2.      Upon information and belief, RISC Point Advisory Group LLC is, and at all times herein mentioned was, a limited liability company incorporated in the state of Delaware, and is not a citizen of California.

3.      Upon information and belief, RISC Point Assurance, LTD is, and at all times herein mentioned was, a limited liability company incorporated in the state of Ohio, and is not a citizen of California.

4.      Upon information and belief, RISC Point Holdings, Inc. is, and at all times herein mentioned was, a corporation incorporated in the state of Ohio, and is not a citizen of California.

5.      Upon information and belief, Jacob Nix ("NIX"), is an individual and, upon information and belief, a citizen of the state of Ohio, and is an owner, officer, director, managing agent, agent, and/or employee of Defendant Employers.

6.      Plaintiff is informed and believes and, based thereon alleges, that Defendant Employers acted as "joint employers" and/or as part of an "integrated enterprise" with respect to Plaintiff's employment. During the relevant time period, Defendant Employers engaged, suffered, and/or permitted Plaintiff to work for Defendant Employers.  Defendant Employers each exercised control over Plaintiff's working conditions, work performed, wages, and other terms and conditions of her employment. Plaintiff performed work for

-2-

<u>FIRST AMENDED</u> COMPLAINT

Defendant Employers. Defendant Employers knew or should have known of the illegal conduct alleged herein and failed to take those corrective measures within their control. Defendant Employers operated an integrated enterprise with interrelation of operations, centralized control of labor relations, common management, and/or common ownership or financial control.

7.      Plaintiff is ignorant of the true names and capacities of Defendants sued as DOES 1 through 10, inclusive, and therefore sues these Defendants by such fictitious names. Plaintiff will amend this Complaint to allege their true names and capacities when ascertained. Plaintiff is informed and believes and based thereon alleges that each of these fictitiously named Defendants is responsible in some manner for the occurrences herein alleged, and that Plaintiff's injuries as herein alleged were proximately caused by these Defendants.

8.      Plaintiff is informed and believes and based thereon alleges that, at all relevant times, each of the Defendants, whether named or fictitious, was the agent, employee or alter ego of each of the other Defendants, and in doing the things alleged to have been done in the Complaint, acted within the scope of such agency or employment, or ratified the acts of the other.

9.      Whenever and wherever reference is made in this Complaint to any act or failure to act by a defendant or co-defendant, such allegations and references shall also be deemed to mean the acts and/or failures to act by each defendant acting individually, jointly and severally.

10.      On information and belief, Defendant Employers employ at least five (5) employees and are therefore subject to the California Fair Employment and Housing Act, California Government Code section 12900, *et seq.* (hereafter "FEHA").

11.      Plaintiff is informed and believes and based thereon alleges that, at all times material herein, Defendant Employers and/or their respective agents, employees or supervisors, authorized, condoned and/or ratified the unlawful conduct of each other.

12.      In addition, Defendant Employers compelled, coerced, aided, and abetted the

**FIRST AMENDED COMPLAINT**

discrimination, which is prohibited under California Government Code section 12940(i).

13.    Plaintiff is informed and believes and based thereon alleges that, at all times material herein, Defendant Employers, and/or their respective agents, employees, or supervisors knew or reasonably should have known that unless they intervened to protect Plaintiff, and to adequately supervise, prohibit, control, regulate, discipline, and/or otherwise penalize the conduct of the employees of Defendant Employers, the remaining defendants and employees perceived the conduct and omissions as being ratified and condoned.

## JURISDICTION AND VENUE

13.

14.    The Court has jurisdiction over Defendants, because upon information and belief, Defendants have sufficient minimum contacts in California or otherwise intentionally avail themselves of the California market so as to render the exercise of jurisdiction over them by this Court consistent with traditional notions of fair play and substantial justice.

15.   This Court has original jurisdiction based on the existence of diversity of citizenship between the parties pursuant to 28 U.S.C. § 1332, Defendants having previously removed this matter to this Court.

16.   Venue is proper in this judicial district pursuant to California Government Code section 12965 and 28 U.S.C. section 1441. *See Polizzi v. Cowles Magazines, Inc.*, 345 U.S. 663, 665 (1953); *Malloy v. Superior Court*, 83 Cal. App. 4th 543, 552 (2022).

## FACTUAL ALLEGATIONS

17.   On information and belief, Defendant Employers provide security and compliance services to companies, including but not limited to California companies and other companies nationwide regarding compliance with, among other laws and regulations, the California Consumer Privacy Act (CCPA) and California Privacy Rights Act (CPRA). Defendant Employers even devote an entire page of their website to their CCPA and CPRA services.

-4-

FIRST AMENDED COMPLAINT

4.18.   In or about July 2024, Defendant Employers hired Plaintiff to work for them remotely, from Orange County, California, as a Human Resources Generalist. This would include Plaintiff's common and regular interactions with Defendant Employers and their principals, agents, employees, and attorneys, from Plaintiff's remote workstation in Orange County, California.

5.19.   Within the first few months, Plaintiff was subjected to sexual harassment from and by NIX, the Founder and then Chief Executive Officer of Defendant Employers, who, during his time with Defendant Employers, hads organized an executive team comprised entirely of men.

Formatted: Font: 14 pt

6.20.   For example, in or about December 2024, during a work trip to Las Vegas, Nevada, NIX asked to peruse and comment on Plaintiff's dating profile during a lunch conversation. Plaintiff complied with his request. After NIX inspected the profile, he told Plaintiff that she looked like Plaintiff had low self-worth, insinuating that she was promiscuous. The directive from Defendant Employers' highest-ranking employee to inspect her profile and commenting on it left Plaintiff shook, uncomfortable, and concerned about NIX's future behavior. During the same trip, NIX also made multiple comments to Plaintiff that were inappropriate and sexual in nature, including multiple comments that were made in front of other executives of Defendant Employers. At one point in the trip, NIX made a comment to Plaintiff in front of another executive that referenced NIX paying Plaintiff if she took off her clothes and exposed her breasts for the money. NIX's conduct, and ratification by other executives at the company, left Plaintiff shook, uncomfortable, and concerned about NIX's future behavior. At all relevant times, NIX knew Plaintiff traveled to Las Vegas, Nevada, from her home and remote workstation in Orange County, California, and knew she would return following the work trip.

7.21.   Since then, NIX continued to constantly bring up Plaintiff's personal romantic life to her and work colleagues, and NIX directed his actions to Plaintiff

-5-

**FIRST AMENDED COMPLAINT**

while she ha~~ds~~ been working remotely for Defendant Employers from her home and remote workstation in Orange County, California. In another example, on or about March 11, 2025, NIX called Plaintiff on Slack to discuss personnel issues relating to a new hire. After the updates, NIX inquired about a household project and a planter Plaintiff was building in her backyard. Plaintiff sent a picture of the project to NIX, to which NIX responded that he thought he was going to see "nudes." Plaintiff, again, felt shook, uncomfortable, and concerned about NIX's future behavior. Plaintiff responded that no naked pictures of herself would be sent, but rather, only pictures of the house project or dogs. NIX replied that he preferred pictures of "tits." NIX knew that Plaintiff was working remotely from Orange County, California, at the time. During that same call, NIX told Plaintiff that another executive at the company thought Plaintiff and NIX were going to hook up until they came back from lunch that day and said the vibe changed. NIX went on to say that he was not saying that they would have hooked up because he cared about his company, but it was tempting. Again, the comment left Plaintiff entirely shook, uncomfortable, and concerned about NIX's future behavior.

8.22.   On or about the next day, NIX and Plaintiff discussed a sensitive employee issue. In response to Plaintiff giving her professional opinion, NIX accused her of not "protecting the company" and sent a threatening email suggesting Plaintiff could be terminated. Again, NIX knew that Plaintiff was working remotely from Orange County, California, at the time.

9.23.   The unreasonable threat of termination in response to a professional opinion had no legitimate purpose. On information and belief, the threat was tied to Plaintiff's continued protests to, opposition to sexually harassing conduct of, and rebuff of NIX, including most recently in the denial of sending nude pictures of herself at NIX's request.

~~10.~~24. On or about March 21, 2025, Plaintiff formally complained to Defendant Employers regarding NIX's illegal conduct and pleading for help. On information

-6-

**FIRST AMENDED COMPLAINT**

and belief, in response to Plaintiff's complaints, substantially motivated by Plaintiff's activity, including but not limited to refusing to succumb and take part in NIX's sexual harassment and complaints about the same, and within a matter of days, Defendant Employers and NIX determined and executed a plan that they would find a way terminate Plaintiff's employment, either by constructive termination, including but not limited to by restricting opportunities for advancement, limiting work opportunities, taking away job security, terminating another California employee who assisted Plaintiff in doing her work, failing to take immediate and appropriate corrective action, sharing at least one intimate photograph of her to others (including coworkers and knowing that Plaintiff was a California resident), taking steps to make her ineffective in her job, and/or otherwise intentionally creating an intolerable working environment such that any reasonable employee would resign and force Plaintiff to resign, and if those efforts did not work by direct termination. This conduct was directed at Plaintiff who was and is still working remotely for Defendant employers from Orange County, California. Ultimately, Defendant Employers constructively terminated Plaintiff's employment.

41.25.  Further NIX has engaged in other behavior reflecting NIX's sexist, misogynistic, and sexually harassing behavior and Defendant Employers' failure to take immediate and appropriate corrective action to control him.it, For example, on or about February 5, 2025, NIX referred to another female employee of Defendant Employers as follows "Did she sound [c-word]y about it[.] Because it was [c-word]y," in a written communication to Plaintiff and another executive of Defendant Employers.  Upon information and belief, although another executive of Defendant Employers was witness to NIX's language and behavior, Defendant Employers did not investigate the incident nor take prompt remedial action to ensure NIX's behavior would be stopped. NIX's conduct left Plaintiff shook, uncomfortable, and concerned about NIX's future behavior. Upon information and belief, NIX has referred to women as the "[c-word]" multiple times with coworkers. Upon

Formatted: Font: 14 pt

-7-

**FIRST AMENDED COMPLAINT**

information and belief, NIX wrongfully obtained through use of his cellular phone and its applications at least one intimate photograph of Plaintiff from a third-party co-worker of Plaintiff, which was taken by the third party and shared by that third party with NIX without her knowledge or consent, and NIX shared it with others (including coworkers and knowing Plaintiff was a California resident) by using his company cellular phone and its applications. Upon information and belief, NIX has intimate photographs of other women who he has shared with third parties without the knowledge or consent of those women. Upon information and belief, NIX pressured an employee to make Plaintiff appear promiscuous during the Defendant Employers' investigation of Plaintiff's complaint, and to fabricate testimony during his deposition in this matter. Upon information and belief, NIX threatened this employee in connection with his deposition testimony, stating to the employee words to the effect of "not to [f-word] this up like you did the internal investigation or I will kill your spouse and then kill you."

42.26. On or about April 13, 2025, Plaintiff exhausted her administrative remedies by timely filing a complaint with the California Civil Rights Department regarding the claims alleged herein. Per Plaintiff's request, an immediate right-to-sue letter was issued on April 13, 2025. Plaintiff, thereafter, filed an amended complaint with the California Civil Rights Department on or about September 26, 2025.

## FIRST CAUSE OF ACTION

### Quid Pro Quo Harassment

### in Violation of FEHA-Gender/Sex (Gov. Code § 12940 et seq.)

### Plaintiff Against Defendant Employers, NIX, and Does 1 through 10

43.27. Plaintiff re-alleges and incorporates all previous and subsequent paragraphs of this Complaint, as though fully set forth herein.

44.28. Defendant Employers are subject to suit for harassment claims under the

-8-

FEHA, in that it regularly employs one (1) or more persons or that it regularly receives the services of one or more persons providing services pursuant to a contract.

29. NIX is subject to suit under the FEHA in that he is personally liable for any prohibited harassment that he personally perpetrated.

30. Under Government Code section 12940(j), it is unlawful for an employer or individual to harass an employee based on, among other things, the employee's gender/sex. The FEHA's prohibition of unlawful harassment includes quid pro quo harassment.

31. Plaintiff alleges that Defendants are liable for harassment she suffered on a quid pro quo basis because her terms of employment, job benefits, or favorable working conditions were made contingent, by words or conduct, on Plaintiff's acceptance of NIX's sexual advances and/or conduct.

32. The conduct was carried out, authorized, and/or ratified by Defendant Employers' managers and other officers, directors and/or managing agents; therefore, Defendants are strictly liable for the conduct. Alternatively, the actions were known by Defendant Employers' officers, directors and/or managing agents yet no appropriate corrective action was taken. In either event, Defendant Employers are liable for the conduct because the harassers were managers and/or because Defendant Employers knew or should have known of the conduct and failed to prevent it and/or ratified and/or condoned it.

33. Plaintiff believes that her sex/gender and/or prior protected complaints were the cause of the unwanted harassing conduct described above.

34. As a direct, foreseeable, and proximate result of Defendants' actions, Plaintiff has suffered and continues to suffer humiliation, embarrassment, mental and emotional distress, and discomfort, and if she is terminated lost wages and benefits, all to Plaintiff's damages in an amount over the minimum jurisdiction of this Court, the precise amount of which will be proven at trial.

-9-

**FIRST AMENDED COMPLAINT**

24.35. As a further proximate result of Defendants' conduct described herein, Plaintiff has incurred and will continue to incur medical expenses in an amount according to proof at the time of trial.

22.36. As a result of the aforesaid acts of Defendant Employers, Plaintiff claims general damages for mental and emotional distress and aggravation in an amount to be proven at the time of trial.

23.37. In doing the acts herein alleged, Defendant Employers, through their officers, directors, and/or managing agents, and NIX acted with oppression, fraud, malice, and in the conscious disregard of the rights of Plaintiff, authorized such conduct, and knew of such conduct and adopted or approved of it after it occurred; therefore, Plaintiff is also entitled to punitive damages in an amount according to proof at the time of trial.

38.     Plaintiff, who has incurred and continues to incur attorneys' fees and legal expenses, is also entitled to recover said costs and fees in an amount according to proof at the time of trial, pursuant to Government Code section 12965(b).

### SECOND CAUSE OF ACTION

**Hostile Environment Harassment**

**in Violation of FEHA Gender/Sex (Gov. Code § 12940 *et seq.*)**

**Plaintiff Against Defendant Employers, NIX, and Does 1 through 10**

24.39. Plaintiff re-alleges and incorporates all previous and subsequent paragraphs of this Complaint, as though fully set forth herein.

25.40. Defendant Employers are subject to suit for harassment claims under the FEHA, in that it regularly employs one (1) or more persons or that it regularly receives the services of one or more persons providing services pursuant to a contract.

26.41. NIX is subject to suit under the FEHA in that he is personally liable for any prohibited harassment that he personally perpetrated.

-10-

**FIRST AMENDED COMPLAINT**

27.42. Under Government Code section 12940(j), it is unlawful for an employer or individual to harass an employee based on, among other things, the employee's gender/sex.

28.43. Defendant Employers and NIX engaged in actions to harass because of and based on her gender/sex, including but not limited to in the form of sexual harassment and retaliation.

29.44. Defendants violated Government Code section 12940(j) by creating a hostile work environment and by failing to prevent said acts from occurring.

30.45. The conduct was carried out, authorized, and/or ratified by Defendant Employers' managers and other officers, directors and/or managing agents; therefore, Defendants are strictly liable for the conduct. Alternatively, the actions were known by Defendant Employers' officers, directors and/or managing agents yet no appropriate corrective action was taken. In either event, Defendant Employers are liable for the conduct because the harassers were managers and/or because Defendant Employers knew or should have known of the conduct and failed to prevent it and/or ratified and/or condoned it.

31.46. Plaintiff believes that her sex/gender and/or prior protected complaints were the cause of the unwanted harassing conduct described above. The actions were sufficiently severe or pervasive to alter the conditions of employment and thereby constituted a hostile work environment in violation of FEHA.

32.47. As a direct, foreseeable, and proximate result of Defendants' actions, Plaintiff has suffered and continues to suffer humiliation, embarrassment, mental and emotional distress, and discomfort, and if she is terminated lost wages and benefits, all to Plaintiff's damages in an amount over the $35,000 minimum jurisdiction of this Court, the precise amount of which will be proven at trial.

33.48. As a further proximate result of Defendants' conduct described herein, Plaintiff has incurred and will continue to incur medical expenses in an amount according to proof at the time of trial.

-11-

**FIRST AMENDED COMPLAINT**

34.49. As a result of the aforesaid acts of Defendant Employers, Plaintiff claims general damages for mental and emotional distress and aggravation in an amount to be proven at the time of trial.

35.50. In doing the acts herein alleged, Defendant Employers, through their officers, directors, and/or managing agents, and NIX acted with oppression, fraud, malice, and in the conscious disregard of the rights of Plaintiff, authorized such conduct, and knew of such conduct and adopted or approved of it after it occurred; therefore, Plaintiff is also entitled to punitive damages in an amount according to proof at the time of trial.

36.51. Plaintiff, who has incurred and continues to incur attorneys' fees and legal expenses, is also entitled to recover said costs and fees in an amount according to proof at the time of trial, pursuant to Government Code section 12965(b).

### THIRD CAUSE OF ACTION

**Retaliation**

**in Violation of FEHA (Gov. Code § 12940 et seq.**

**Plaintiff Against Defendant Employers and Does 1 through 10**

37.52. Plaintiff re-alleges and incorporates all previous and subsequent paragraphs of this Complaint, as though fully set forth herein.

38.53. Government Code section 12940(h) provides that it is unlawful for an employer to discriminate against any person because the person has engaged in protected activities under FEHA.

39.54. Plaintiff engaged protected activity under the FEHA during her employment with Defendant Employers. Defendant Employers retaliated against Plaintiff for engaging in such protected activity by taking adverse actions against and harassing her. Such conduct was a violation of the FEHA.

40.55. As a proximate result of Defendant Employers' actions, Plaintiff has suffered and continues to suffer humiliation, embarrassment, mental and emotional distress, and discomfort, and if she is terminated lost wages and benefits, all to

-12-

**FIRST AMENDED COMPLAINT**

Formatted: Line spacing: Exactly 24 pt

Formatted: Indent: Left: 0.13", First line: 0.38", Line spacing: Exactly 24 pt, Outline numbered + Level: 1 + Numbering Style: 1, 2, 3, … + Start at: 1 + Alignment: Left + Aligned at: 0.25" + Indent at: 0.5"

Plaintiff's damage in an amount over the minimum jurisdiction of this Court by at least three times, the precise amount of which will be proven at trial. Plaintiff claims such amount as damages together with pre-judgment interest pursuant to Civil Code section 3287 and/or any other provision of law providing for pre-judgment interest.

41. 56. As a further proximate result of Defendant Employers' conduct described in this Complaint, Plaintiff has incurred and will continue to incur medical expenses in an amount according to proof at the time of trial.

42. 57. As a result of the aforesaid acts of Defendant Employers, Plaintiff claims general damages for mental and emotional distress and aggravation in an amount to be proven at the time of trial.

45. In doing the acts herein alleged, Defendant Employers through their officers, directors, and/or managing agents, acted with oppression, fraud, malice, and in the conscious disregard of the rights of Plaintiff, authorized such conduct, and knew of such conduct and adopted or approved of it after it occurred; therefore, Plaintiff is also entitled to punitive damages in an amount according to proof at the time of trial.

58.

59. Plaintiff, who has incurred and continues to incur attorneys' fees and legal expenses, is also entitled to recover said costs and fees in an amount according to proof at the time of trial, pursuant to Government Code section 12965(b)

**FOURTH CAUSE OF ACTION**

**Failure to Prevent**

**in Violation of FEHA (Gov. Code § 12940 et seq.)**

**Plaintiff Against Defendant Employers and Does 1 through 10**

43. 60. Plaintiff re-alleges and incorporates all previous and subsequent paragraphs of this Complaint, as though fully set forth herein.

44. 61. During Plaintiff's employment, Defendant Employers failed to prevent the above-referenced acts of harassment and retaliation toward Plaintiff, in violation

-13-

**FIRST AMENDED COMPLAINT**

of Government Code section 12940(k). Defendant Employers' failure to undertake prompt and adequate investigations and their complete failure to prevent the above-alleged acts of harassment and retaliation constitutes an unlawful employment practice. Such conduct is in violation of FEHA and has resulted in damage and injury to Plaintiff as alleged herein.

45.62. As a proximate result of Defendant Employers' violation of Government Code section 12940(k), Plaintiff has suffered and continues to humiliation, embarrassment, mental and emotional distress, and discomfort, and if she is terminated lost wages and benefits, all to Plaintiff's damage in an amount over the minimum jurisdiction of this Court, the precise amount of which will be proven at trial. Plaintiff claims such amount as damages together with prejudgment interest pursuant to Civil Code section 3287 and/or any other provision of law providing for prejudgment interest.

46.63. As a further proximate result of Defendant Employers' conduct described in this Complaint, Plaintiff has incurred and will continue to incur medical expenses in an amount according to proof at the time of trial.

47.64. As a result of the aforesaid acts of Defendant Employers, Plaintiff claims general damages for mental and emotional distress and aggravation in an amount to be proven at the time of trial.

48.65. In doing the acts herein alleged, Defendant Employers, through their officers, directors, and/or managing agents, acted with oppression, fraud, malice, and in the conscious disregard of the rights of Plaintiff, authorized such conduct, and knew of such conduct and adopted or approved of it after it occurred; therefore, Plaintiff is also entitled to punitive damages in an amount according to proof at the time of trial.

49.66. Plaintiff, who has incurred and continues to incur attorneys' fees and legal expenses, is entitled to recover said costs and fees in an amount according to proof at the time of trial, pursuant to Government Code section 12965(b).

-14-

**FIRST AMENDED COMPLAINT**

## FIFTH CAUSE OF ACTION

**Whistleblower Retaliation**

**in Violation of Labor Code § 1102.5**

**Plaintiff Against Defendant Employers and Does 1 through 10**

~~59.~~67. Plaintiff re-alleges and incorporates all previous and subsequent paragraphs of this Complaint, as though fully set forth herein.

~~51.~~68. Pursuant to Labor Code § 1102.5(b), "[a]n employer, or any person acting on behalf of the employer, shall not retaliate against an employee for disclosing information, or because the employer believes that the employee disclosed or may disclose information, to a government or law enforcement agency, to a person with authority over the employee or another employee who has the authority to investigate, discover, or correct the violation or noncompliance, or for providing information to, or testifying before, any public body conducting an investigation, hearing, or inquiry, if the employee has reasonable cause to believe that the information discloses a violation of state or federal statute, or a violation of or noncompliance with a local, state, or federal rule or regulation, regardless of whether disclosing the information is part of the employee's job duties."

~~52.~~69. As set forth above, Plaintiff engaged in protected activity under Labor Code section 1102.5. Defendant Employers retaliated against Plaintiff for engaging in such protected activity by taking adverse actions against and harassing her. Such conduct was a violation of Labor Code section 1102.5(b).

~~53.~~70. As a proximate result of Defendant Employers' violation of Labor Code § 1102.5, Plaintiff has suffered and continues to suffer humiliation, embarrassment, mental and emotional distress, and discomfort, and lost wages and benefits, all to Plaintiff's damage in an amount over the minimum jurisdiction of this Court, the

-15-

**FIRST AMENDED COMPLAINT**

precise amount of which will be proven at trial.  Plaintiff claims such amount as damages together with prejudgment interest pursuant to Civil Code section 3287 and/or any other provision of law providing for pre-judgment interest.

54.71. As a further proximate result of Defendant Employers' conduct described in this Complaint, Plaintiff has incurred and will continue to incur medical expenses in an amount according to proof at the time of trial.

55.72. As a result of the aforesaid acts of Defendant Employers, Plaintiff claims general damages for mental and emotional distress and aggravation in an amount to be proven at the time of trial.

56.73. In doing the acts herein alleged, Defendant Employers, through their officers, directors, and/or managing agents, acted with oppression, fraud, malice, and in the conscious disregard of the rights of Plaintiff, authorized such conduct, and knew of such conduct and adopted or approved of it after it occurred; therefore, Plaintiff is also entitled to punitive damages in an amount according to proof at the time of trial.

74.    Plaintiff, who has incurred and continues to incur attorneys' fees, is entitled to recover said fees in an amount according to proof at the time of trial, pursuant to Labor Code section 1102.5(j).

### SIXTH CAUSE OF ACTION
### Unlawful Disclosure of an Intimate Image
### In Violation of the Violence Against Women Act Reauthorization
### (15 U.S.C. § 6851(b)(1)(A))
### Plaintiff Against Defendant Employers and NIX

75.    Plaintiff re-alleges and incorporates all previous and subsequent paragraphs of this Complaint, as though fully set forth herein.

76.    15 U.S.C. § 6851(b)(1)(A) provides: "an individual whose intimate visual depiction is disclosed, in or affecting interstate or foreign commerce or using any means or facility of interstate or foreign commerce, without the consent of the

-16-

### FIRST AMENDED COMPLAINT

individual, where such disclosure was made by a person who knows that, or recklessly disregards whether, the individual has not consented to such disclosure, may bring a civil action against that person in an appropriate district court of the United States for relief . . ."

77.    15 U.S.C. § 6851(a)(5) defines "intimate visual depiction" as "a visual depiction, as that term is defined in section 2256(5) of Title 18, that depicts – (i) the uncovered genitals, pubic area, anus, or post-pubescent female nipple of an identifiable individual; or (ii) the display or transfer of bodily sexual fluids – (I) on to any part of the body of an identifiable individual; (II) from the body of an identifiable individual; (III) an identifiable individual engaging in sexually explicit conduct . . ."

78.    Defendant Employers, through their director, officer, managing agent, agent, owner, and/or employee NIX who, acting in such capacity, used a company cellular phone and its application to obtain and disclose at least one intimate visual depiction of Plaintiff without her consent, giving rise to a claim under 15 U.S.C. § 6851.

79.    On information and belief, using a company cellular phone and its applications, Defendant Employers, through NIX, disclosed at least one intimate photograph of Plaintiff by sending them to himself, storing them on his cellular phone and applications, and sharing them with third parties.

80.    On information and belief, at least one such photograph included identifiable depictions of at least Plaintiff's bare breasts.

81.    These disclosures occurred without Plaintiff's consent.

82.    Defendant Employers, through NIX, knew or recklessly disregarded that Plaintiff had not consented to disseminating, distributing, and displaying of her intimate images.

83.    As a direct, foreseeable, and proximate result of Defendants' actions, Plaintiff has suffered and continues to suffer humiliation, embarrassment, mental

-17-

**FIRST AMENDED COMPLAINT**

and emotional distress, and discomfort, all to Plaintiff's damages in an amount over the minimum jurisdiction of this Court, the precise amount of which will be proven at trial.

84. Plaintiff has been damaged by Defendants' conduct and is entitled to actual damages in an amount to be proven at trial, or liquidated damages in the amount of $150,000, whichever is more.

85. In doing the acts herein alleged, Defendant Employers, through their officers, directors, and/or managing agents, and NIX acted with oppression, fraud, malice, and in the conscious disregard of the rights of Plaintiff, authorized such conduct, and knew of such conduct and adopted or approved of it after it occurred; therefore, Plaintiff is also entitled to punitive damages in an amount according to proof at the time of trial.

86. Plaintiff is also entitled to all other relief available at law and equity, including but not limited to a preliminary injunction and a permanent injunction, ordering all Defendants to delete any and all intimate photographs of Plaintiff and cease all display, distribution, and disclosure of the photographs.

87. Plaintiff, who has incurred and continues to incur attorneys' fees and legal expenses, is also entitled to recover said costs and fees in an amount according to proof at the time of trial, pursuant to 15 U.S.C. § 6851.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Ashley Fragale prays for judgment against Defendants RISC Point Advisory Group LLC, RISC Point Assurance, LTD, RISC Point Holdings, Inc., Jacob Nix, and DOES 1 through 10, as follows:

1. For past and future compensatory damages, according to proof;
2. For pre and post-judgment interest at the legal rate;
3. For exemplary and punitive damages according to proof;
   ///
   ///

-18-

**FIRST AMENDED COMPLAINT**

> **Formatted:** List Paragraph, Indent: Left: 0.2", First line: 0.5", Numbered + Level: 1 + Numbering Style: 1, 2, 3, … + Start at: 1 + Alignment: Left + Aligned at: 0.25" + Indent at: 0.5"

3.

4.   Preliminary injunctive relief;

5.   Pursuant to 15 U.S.C. § 6851, awarding Plaintiff monetary damages in the amount of $150,000;

///

///

///

4.6. Injunctive, equitable and declaratory relief;

5.7. Attorneys' fees and costs of suit; and

8.   For such other and further relief as the Court deems proper.

6.

Date: April 13October 29, 2025          Respectfully submitted,

                                         ACLIENT PC

                                         By:_____
                                             RUBEN D. ESCALANTE
                                             Attorney for Plaintiff
                                             ASHLEY FRAGALE

-19-

**FIRST AMENDED COMPLAINT**

Formatted: Font: 14 pt

Formatted: Normal, Indent: Left: 0.2", No bullets or numbering

Formatted: Font: 14 pt

Formatted: Indent: Left: 0.7", No bullets or numbering

Formatted: Font: 14 pt

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19

FIRST AMENDED COMPLAINT

**DEMAND FOR JURY TRIAL**

Formatted: Font: 14 pt

Plaintiff Ashley Fragale hereby demands a trial by jury as provided by Rule 38(a) of the Federal Rules of Civil Procedure.

Formatted: Justified, Line spacing: Exactly 24 pt, No widow/orphan control, Don't adjust space between Latin and Asian text, Don't adjust space between Asian text and numbers, Tab stops: 0.63", Left + Not at 0.13"

Date: April 13October 29, 2025          Respectfully submitted,

Formatted: Font: 14 pt

ACLIENT PC


By:_____
    RUBEN D. ESCALANTE
    Attorney for Plaintiff
    ASHLEY FRAGALE

Formatted: Font: 14 pt

-21-

**FIRST AMENDED COMPLAINT**

Exhibit C

<span style="color:red">CERTIFIED COPY</span>



VIDEOTAPED DEPOSITION OF
**RYAN MCCARTNEY**

Taken on October 3, 2025

ASHLEY FRAGALE vs. RISC POINT ADVISORY GROUP, LLC

**Global Access Litigation Services**
**(949) 220-0449**
**production@galscr.com**
**www.galscr.com**

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

---oOo---


ASHLEY FRAGALE,                ) CIVIL ACTION
                               )NO.:8:25-cv-00994 JWH (ADSx)
          Plaintiff,           )
                               )
vs.                            )
                               )
RISC POINT ADVISORY GROUP, LLC;)
RISC POINT ASSURANCE, LTD;,    )
RISC POINT HOLDINGS, INC.;     )
JACOB NIX; and DOES 1 through  )
10, inclusive,                 )
          Defendants.          )
_____)



    THE VIDEOTAPED DEPOSITION OF RYAN MCCARTNEY,

located in Thousand Oaks, California, commencing at 10:02

a.m. PST on Friday, October 3, 2025, before VIRGINIA PEREZ,

Certified Shorthand Reporter 11433, in and for the State of

California.




GLOBAL ACCESS LITIGATION SERVICES
(949) 220-0449

RYAN MCCARTNEY                          10/3/2025

```
 1    REMOTE APPEARANCES:
 2    FOR THE PLAINTIFF:
 3    OLSEN WORKPLACE SOLUTIONS, PC
      BY:  JEFF OLSEN, ESQ., AWI-CH
 4    18012 Cowan Avenue, Suite 200
      Irvine, California 92614
 5    Telephone:  (949) 232-0455
      Email: jeff@olsenws.com
 6
      ACLIENT, PC
 7    BY:  RUBEN D. ESCALANTE, ESQ.
      440 North Barranca Avenue
 8    PMB 9496
      Covina, California 91723
 9    Telephone: (310) 431-9687
      Email: ruben@aclientpc.com
10
      FOR THE DEFENDANTS:
11
      MCDONALD HOPKINS
12    BY:  KARINA R. CONLEY, ESQ.
           JULIE TOTH, ESQ.
13    600 Superior Avenue, Suite 2100
      Cleveland, Ohio 44114
14    Telephone: (216) 348-5408
      Email: mcdonaldhopkins.com
15
      GORDON REES SCULLY MANSUKHANI
16    BY:  GEOFFREY LEE, ESQ.
           MADISON PANGBURN, ESQ.
17    633 West Fifth Street, 52nd Floor
      Los Angeles, California 90071
18    Telephone: (213) 270-7861
      Email: glee@grsm.com
19         mpangburn@grsm.com
20    Also present:
      Deborah Alvino, Certified Legal Video Specialist
21    Sweeta Dadras, Judge
      Matt Drewyor, CEO of RISC Point
22    Jacob Nix, Chief Growth Officer
      Gabriella Datchler, legal clerk
23
24
25
```

Page 2

```
 1                      I N D E X

 2    EXAMINATION                                          PAGE

 3

 4        BY MR. OLSEN                                        6

 5

 6

 7                     ---oOo---

 8                    E X H I B I T S
                                                          PAGE
 9    Exhibit 1   Subpoena to Testify at a Deposition
                  in a Civil Action                          6
10    Exhibit 2   RISC Point Org Chart-Detailed             19
      Exhibit 3   MPI Consulting Confidential
11                Investigation Report                     114

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

Global Access Litigation Services
(949) 220-0449

RYAN MCCARTNEY                    10/3/2025

```
 1        REMOTELY REPORTED FROM VENTURA COUNTY, CALIFORNIA

 2                        OCTOBER 3, 2025

 3                         10:07 A.M.

 4

 5        THE VIDEOGRAPHER:  Good morning.  We are going on

 6   the record at 10:07 a.m.  My name is Deborah Alvino

 7   Certified Legal Video Specialist and Notary.  And our court

 8   reporter today is Virginia Perez.  We both represent Global

 9   Access Litigation Services of San Clemente, California.

10   This marks the beginning of Media Number 1 in the Remote

11   video deposition of Ryan McCartney taken October 3rd, 2025

12   in the matter of Ashley Fragale, plaintiff versus RISC Point

13   Advisory Group, LLC, et al. Defendants filed in the United

14   States District Court for the Central District of California

15   Civil Action Number 8:25-cv-00994 JWH (ADSx).  This

16   deposition is being taken on behalf of plaintiff and it is

17   being held video Zoom conference.

18        Would counsel and all present please introduce

19   yourselves for the record beginning on the witness.

20        THE WITNESS:  That's me.  I'm Ryan McCartney.

21        MS. COMLEY:  Hi, I'm an attorney for Ryan

22   McCartney, Karina Conley.  And I have a law clerk with me,

23   Gabriella Datchler.

24        MS. PANGBURN:  Hi.  I am attorney Madison Pangburn

25   for RISC Point Assurance Limited.
```

Page 4

RYAN MCCARTNEY                                10/3/2025

```
 1            MR. OLSEN:  Anyone else in the room?

 2            MR. DREWYOR:  My name is Matt Drewyor.  I'm the CEO

 3   of RISC Point Advisory Group, LLC.

 4            MR. NIX:  I'm Jacob Nix.  I'm the Chief Growth

 5   Officer of RISC Point.

 6            MR. OLSEN:  Mr. Lee?

 7            MS. TOTH: I'm Julie Toth attorney for Ryan

 8   McCartney.

 9            MR. LEE:  This is Geoffrey Lee appearing remotely

10   on behalf of Defendants, RISC Point Advisory Group, RISC

11   Point Holdings and Jake Nix.

12            MR. OLSEN:  And I am Jeff Olsen on behalf of

13   Plaintiff, Ashley Fragale.  Here with me telephonically is

14   co-counsel Ruben Escalante and Ashley Fragale.

15            THE VIDEOGRAPHER:  Would the court reporter please

16   introduce herself and then administer the oath.

17            THE REPORTER:  My name is Virginia Perez.  My

18   Certification Number is 11433.  I'm here on behalf of Global

19   McCartney.

20                      RYAN MCCARTNEY,
                 a witness called on behalf of the Plaintiff herein,
21               after having been first duly and regularly sworn,
                 testifies as hereinafter follows:
22

23            THE REPORTER:  You're muted.

24            THE WITNESS:  I do.

25            THE REPORTER:  Thank you.
```

```
 1                      EXAMINATION

 2   BY MR. OLSEN:

 3       Q.   Good morning, Mr. McCartney can you hear me okay?

 4       A.   Yes, sir.

 5       Q.   First things first is that very first question the

 6   court reporter asked you.  There maybe technical

 7   difficulties in the moment.  For whatever reason you cannot

 8   hear me, please ask me to rephrase my question.  And I will

 9   do the same, if I can't hear you, okay?

10       A.   Okay.

11       Q.   As an administrative initial matters, you heard me

12   introduce myself.  My name is Jeff Olsen.  I'm an attorney

13   for Ashley Fragale.  And I have subpoenaed you here today.

14            (Plaintiff's Exhibit 1 was marked for

15            identification.)

16   BY MR. OLSEN:

17       Q.   And if you look in the Chat, I will have marked as

18   Exhibit 1 and I'm using it as an initial test case to make

19   sure everyone can see it and download it.  And, especially,

20   you,        Mr. McCartney.  Do you mind seeing if you can go

21   into the Chat and opening the attachment that's marked as

22   Exhibit 1?

23       A.   Yes.  All right.  It is open.

24       Q.   Do you mind spelling your full name for the record?

25       A.   Sure.  My legal name is -- it was recently changed.
```

RYAN MCCARTNEY                              10/3/2025

```
 1      A.   Correct.

 2      Q.   And what is his title?

 3      A.   I don't recall.

 4      Q.   Is he an executive of the company?

 5      A.   He is not.

 6      Q.   Before -- when did you start working there?

 7      A.   I started in early September.  I don't recall the

 8 specific date.

 9      Q.   Before your current job at you Phoenix Team, where

10 did you work?

11      A.   RISC Point.

12      Q.   Okay.  So as you heard me say earlier, currently

13 there are multiple RISC Point or entities that are named as

14 defendants.  Currently RISC Point Advisory Group, LLC, RISC

15 Point Assurance, Ltd. and RISC Point Holdings, Inc.  Are you

16 aware of each of those entities?

17      A.   I'm aware of them.  I'm not sure the specifics of

18 each one.  Yeah.

19      Q.   Could you tell me which one of those entities you

20 believe that you were an employee of?

21      A.   Can you read them back again?

22      Q.   RISC Point Advisory Group, LLC, RISC Point

23 Assurance, Ltd., RISC Point Holdings, Inc.

24      A.   It would be the first one.

25      Q.   RISC Point Advisory Group, LLC?
```

Page 18

RYAN MCCARTNEY                           10/3/2025

1       A.    Yes.

2       Q.    And you're saying that you were an employee there?

3       A.    I was.   And I also currently hold equity there as

4    well.   But in a private holding company.

5             (Plaintiff's Exhibit 2 was marked for

6             identification.)

7    BY MR. OLSEN:

8       Q.    Let me upload Exhibit 2.  Apologies for the slight

9    delay.  Let me do that.  Do you see Exhibit 2 in the Chat,

10   Mr. McCartney?

11      A.    Yes.  I got 2.

12      Q.    Okay.  Would you just take a minute to look at that

13   the pages attached.

14      A.    Yes.

15      Q.    Let me know when it's done.

16      A.    Done.

17      Q.    Okay.  On the first page is an org chart; do you

18   see that?

19      A.    Yes.

20      Q.    Does this org chart accurately represent your

21   understanding of your ownership interests in one of the RISC

22   Point entities?

23      A.    Yes?

24      Q.    Does this org chart represent your understanding of

25   I believe all these entities interplay with each other?

RYAN MCCARTNEY                              10/3/2025

```
1         A.   I do not.

2         Q.   Do you have any understanding about company emails

3    at RISC Point, how they are stored?

4         A.   I believe they would be stored in Microsoft online.

5         Q.   In terms of Slack messages, you had a Slack

6    account; is that right?

7         A.   Correct.

8         Q.   Do you have the ability to delete or modify

9    messages in Slack?

10             MR. LEE:  Objection.  Vague.  Ambiguous.

11             THE WITNESS:  Yes.

12   BY MR. OLSEN:

13        Q.   Did you ever have the -- or have you ever in the

14   past edited, modified or deleted any messages on Slack?

15             MR. LEE:  Objection.  Ambiguous.  Vague.  Compound.

16             THE WITNESS:  Yes.

17   BY MR. OLSEN:

18        Q.   Mr. McCartney, do you have any misunderstanding

19   about my question, at all?

20        A.   No.

21        Q.   Thank you.  So at RISC Point what was your job

22   title?

23        A.   I was the Executive Vice President of Public Sector

24   Operations.

25        Q.   Could you say that one more time for me.
```

RYAN MCCARTNEY                          10/3/2025

1        A.    Sure.    The Executive Vice President of Public

2   Sector Operations.

3        Q.    Quickly going back to Slack.  If I was to ask you

4   to find all messages and emails in your emails in Slack that

5   were related to Ashley, how long do you think that would

6   take you?

7              MR. LEE:  Objection.  Vague as to time.  Incomplete

8   hypothetical.

9              THE WITNESS:  Just run a query and see how many

10  messages there are?

11  BY MR. OLSEN:

12       Q.    Yeah.

13       A.    A minute maybe.

14       Q.    And that would, you would be able to determine how

15  many messages that were between you and Ashley on your

16  emails?

17       A.    Correct.

18       Q.    And in that minute you would be able to determine

19  the number of messages between you and Ashley on Slack?

20             MR. LEE:  Objection.  It's leading and misstates

21  prior testimony.

22             THE WITNESS:  I think, yeah.  I don't know.

23  What -- I don't think I understand the question.

24  BY MR. OLSEN:

25       Q.    Sure.  I had asked you -- let's just focus on

RYAN MCCARTNEY                          10/3/2025

```
 1   generally?

 2        A.   Yeah.  Mr. Nix, Mr. Drewyor and Mr. Bai and Bennett

 3   Warner.

 4        Q.   Anybody else?

 5        A.   No.

 6        Q.   Ms. Fragale?

 7        A.   No.

 8        Q.   Not invited?

 9        A.   Not invited.

10        Q.   And just to be clear other than Bennett, the names

11   of the individuals you just listed were invited but all

12   uninvited (sic)?

13        A.   Correct.

14        Q.   And how did you know these people that were

15   uninvited (sic)?

16        A.   Sent a message, text message as to Mr. Nix.

17        Q.   You said he stopped working at this point in August

18   as well?

19        A.   That's correct.

20        Q.   And what was the reason you stopped working there?

21        A.   I had some ethical concerns.

22        Q.   Would you mind describing those ethical concerns

23   for me?

24        A.   I found out that I was going to be deposed.  And I

25   was pressured to not be honest with my deposition.
```

RYAN MCCARTNEY                          10/3/2025

1      Q.   Who pressured you not to be honest with my

2   deposition?

3      A.   Mr. Nix.

4      Q.   And just to be clear we're talking about this

5   deposition that we're today?

6      A.   Correct.

7      Q.   Mr. Nix is in the same room with you right now,

8   right?

9      A.   Correct.

10      Q.   Do you feel pressured in any way by Mr. Nix's

11   presence in the room?

12      A.   It's not the most comfortable.  But I believe I can

13   still share honest testimony.

14      Q.   Would you prefer to take the deposition in another

15   room?  That is the glory of remote depositions.  And I

16   imagine the office that you're in has multiple offices.

17   Would it make you more comfortable?

18      A.   I'm okay with proceeding.

19      Q.   So going back you had a conversation with Mr. Nix

20   about today's deposition?

21      A.   Yes.

22      Q.   And you had concerns that he was pressuring you not

23   to be honest?

24      A.   Yes.

25      Q.   What did he tell you?

Global Access Litigation Services
(949) 220-0449

RYAN MCCARTNEY                          10/3/2025

1      A.    He told me not to fuck this up like I did the

2    internal investigation or he would kill Will and then kill

3    me.

4      Q.    Okay.  Who's Will?

5      A.    Will is my husband.

6      Q.    Was it your understanding that if you "fuck" this

7    deposition up, he was threatening your life and the life of

8    your husband?

9      A.    I didn't know exactly what was being threatened.  I

10   didn't know -- I didn't believe there was an attempt to

11   follow through with that.  But there was an uneasy feeling

12   about me remaining employed.

13     Q.    Okay.  Well, he used the words "I will kill you and

14   your husband," he said that?

15     A.    Yes.

16     Q.    And what did you interpret that to mean?

17     A.    I interpreted that to mean I better, you know, say

18   the right things, not say anything negative during the

19   deposition.

20     Q.    Or what would happen?

21     A.    Or there would be some significant negative

22   consequences.

23     Q.    Has Mr. Nix ever threatened you before?

24     A.    Yes.

25     Q.    How many times has Mr. Nix threatened you?

RYAN MCCARTNEY                          10/3/2025

```
 1      A.   I would say a handful of times.

 2      Q.   Just to define a handful more or less than 10?

 3      A.   Less than, I would say, like seven to ten.

 4      Q.   And this being one of the ten?

 5      A.   Yeah.

 6      Q.   Let me ask my question different way.  The

 7  conversation that you had with Mr. Nix where he pressured

 8  you and told you, "you better not fuck this up or I'm going

 9  to kill you and Will," did you consider that to be a threat?

10      A.   Yes.

11      Q.   Why?

12      A.   I -- my understanding is that there could be a lot

13  riding on my deposition and that a negative outcome of the

14  deposition could be hurtful.

15      Q.   And why would he have -- given what your

16  explanation was, why it would it be important for him to

17  speak about today's deposition?

18           MR. LEE:   Objection.   Calls for speculation.

19  BY MR. OLSEN:

20      Q.   What was -- let me see if I can rephrase that

21  question -- what was your understanding as to why Mr. Nix

22  was talking to you and threatening you?

23      A.   Mr. Nix was not happy with the way I answered

24  questions in an internal investigation that was conducted.

25      Q.   We will get to that.  Is that investigation with
```

Page 56

RYAN MCCARTNEY                                    10/3/2025

```
 1    somebody called John Hawkins?

 2        A.   Yes.

 3             MR. OLSEN:  I'm looking down at the time I made a

 4    promise to you earlier that we were going to stop.  Let's

 5    take a quick break get a glass of water, stretch your legs.

 6    Five minutes or so, come back; is that okay with everybody?

 7             MS. CONLEY:  Works for me.

 8             THE WITNESS:  Yeah.

 9             MR. LEE:  That's fine.

10             MR. OLSEN:  Okay.  Let's go off the record.

11             THE VIDEOGRAPHER:  We are going off the record at

12    11:20 a.m.

13             (Recess taken.)

14             (Back on the record.)

15             THE VIDEOGRAPHER:  We are going back on the record

16    at 11:31 a.m.

17    BY MR. OLSEN:

18        Q.   Mr. McCartney, we are back on the record.  Is there

19    any reason you can't continue to give me truthful testimony

20    today?

21        A.   No.

22        Q.   Before we went on our break, we were speaking about

23    a conversation between you and Mr. Nix in which Mr. Nix

24    threatened to kill you and your husband if you "effed up

25    this deposition;" do you remember that?
```

Page 57

RYAN MCCARTNEY                                    10/3/2025

1      A.   Yes.

2      Q.   Is that an accurate description of what you

3   testified to?

4      A.   Yes.

5      Q.   When did this conversation occur?

6      A.   It happened earlier this summer around when I found

7   out that I was being deposed.

8      Q.   Did this happen in person or over the phone?

9      A.   In person.

10     Q.   Where did this the conversation occur?

11     A.   Mitchell's Ice Cream in downtown Cleveland.

12     Q.   And what was the reason you were at Mitchell's Ice

13   Cream in downtown Cleveland with Mr. Nix?

14     A.   I don't recall the specific reason for the

15   gathering but Mr. Drewyor was also in town and was there as

16   well.

17     Q.   Who was at the ice cream shop from RISC Point?

18     A.   Mr. Nix and Mr. Drewyor.

19     Q.   So the conversation that you were describing --

20   well, conversation -- what Mr. Nix said to you, are you

21   saying that Mr. Drewyor was there as well?

22     A.   Yes.

23     Q.   What time of day was it?

24     A.   It was evening.  After dinner.

25     Q.   It was dark out?

RYAN MCCARTNEY                          10/3/2025

```
 1      A.   No.

 2      Q.   What was he wearing, Mr. Nix?

 3      A.   I don't recall.

 4      Q.   Do you remember what you were wearing?

 5      A.   I don't recall, no.

 6      Q.   Do you remember what you ordered?

 7      A.   Yes.

 8      Q.   What did you order?

 9      A.   Peanut butter fudge sundae.

10      Q.   Do you remember what any of the other orders were?

11      A.   I believe Mr. Nix got a peanut butter fudge sundae

12 as well.  I don't recall what Mr. Drewyor's ordered.

13      Q.   At the time that Mr. Nix made the comments to you,

14 were you eating ice cream by then?

15      A.   Yes.

16      Q.   Can you tell me everything that you can remember

17 about the conversation leading up to the comment that you

18 described?

19      A.   We were sitting outside on a like a picnic table.

20 We had recently walked out with the ice cream.  There was

21 discussion about how, you know, the Ashley situation was

22 progressing.  And there was discussion about how I was going

23 to be one of the folks that was going to be deposed.  And

24 that's when the comment was made.

25      Q.   Did you, did you say anything during this
```

Global Access Litigation Services
(949) 220-0449

RYAN MCCARTNEY                              10/3/2025

1      A.   Yes.

2      Q.   Did he move to a related RISC Point entity?

3      A.   Not to my knowledge.

4      Q.   Did he move -- did he work for RISC Point in a

5  contractor role?

6      A.   Not to my knowledge.

7      Q.   What was the hesitation in referring to John

8  Fiedler as a RISC Point employee?

9      A.   I think -- he is an employee or was an employee.

10     Q.   So it is accurate to say that Jake Nix showed you

11  naked pictures of Michelle Bazzy and John Fiedler?

12     A.   No.  I misspoke.

13     Q.   Okay.

14     A.   To answer your previous question that prompted

15  that.

16     Q.   Yeah, please.  Please give me your explanation.

17     A.   Mr. Fiedler was in a photo that was shown where

18  there was also a naked photo of Ashley.

19     Q.   Let me make sure I understand what you just said.

20  Mr. Fiedler was in a photo and contained in that photo was a

21  naked picture of Ashley?

22     A.   What I observed was what appeared to be a

23  screenshot of a Facetime call between Mr. Fiedler and

24  Ms. Fragale where she was undressed.

25     Q.   I see.  Are you saying that John Fiedler shared

RYAN MCCARTNEY                    10/3/2025

1    that picture with the executive team?

2        A.    I don't know how it was shared.

3        Q.    I understand now.  You're saying Jake Nix showed

4    you this picture that is your understanding that he obtained

5    from John Fiedler?

6        A.    That's correct.

7        Q.    And when was this?

8        A.    This was earlier this year I would say March, April

9    time frame.

10       Q.    Twenty twenty-five?

11       A.    Twenty twenty-five.

12       Q.    At this point you had met Ashley Fragale, right?

13       A.    Correct.

14       Q.    And would you consider her friends with you?

15       A.    Yeah.  Friendly.

16       Q.    Was it your understanding that Ms. Fragale gave

17   permission to share that picture with anybody else?

18            MR. LEE:  Objection.  Calls for speculation.

19            THE WITNESS:  I don't know.

20   BY MR. OLSEN:

21       Q.    Based on what you know about Ashley and what you

22   discussed with Ashley, does that refresh your recollection

23   about anything?

24            MR. LEE:  Objection.  Vague.

25            THE WITNESS:  Can you ask that a different way?

RYAN MCCARTNEY                                    10/3/2025

1        A.    Correct.

2        Q.    Slightly different question related to it.    How

3    much time do you think it would take you to find messages

4    your email account or Ashley's email account on the Cloud?

5              MR. LEE:    Objection.    Vague.    Calls for

6    speculation.

7              THE WITNESS:    If I was logged into my RISC Point

8    email which I assume has since been deactivated, it would

9    take less than a minute to put Ashley's name in the search

10   bar and pull up the emails.

11             MR. OLSEN:    Okay.    Let me go off the record real

12   quick.    Look at my notes and then we'll come on back to the

13   record to determine how we're going to move forward.

14             THE VIDEOGRAPHER:    We are going off the record at

15   1:55 p.m.

16             (Recess taken.)

17             THE VIDEOGRAPHER:    We are going back on the record.

18   at 1:59 p.m.

19             MR. OLSEN:    We're back on the record.    It is 1:59

20   p.m. on the West Coast.    The deponent and multiple people,

21   representatives, in the room with the deponent are in

22   Cleveland on the Eastern time zone, if I'm correct.    And we

23   made an agreement to stop at 5 o'clock Easter time.    And so,

24   for that reason, we're going to adjourn this deposition and

25   we reschedule with the remaining time that we have left for

Global Access Litigation Services
(949) 220-0449

RYAN MCCARTNEY                                10/3/2025

 1  another day.  And we'll work with the witness's counsel to

 2  find that date.

 3            Anything else, Mr. Lee?

 4            MR. LEE:  Not to split hairs.  But I think the word

 5  is "suspend" not adjourn.  This will be continued.

 6  Obviously, I've got my questions.  We will ask to continue

 7  the deposition another day after all counsel confer on the

 8  on a date.

 9            MR. OLSEN:  Wonderful.  It is so suspended.

10            We can go off the record.

11            THE VIDEOGRAPHER:  Okay.  And, Mr. Olsen, do you

12  want the video synchronized with the reporter's transcript

13  or do you want to wait until the second volume?

14            MR. OLSEN:  Yeah.  If I can reserve my right to

15  wait, it might be easier to do it all at once.  If you have

16  to make a decision right now.

17            THE VIDEOGRAPHER:  You can reserve that right after

18  the second.  We'll follow-up after the second volume.

19            MR. OLSEN:  Okay.

20            THE VIDEOGRAPHER:  All right.  And any counsel

21  would like to order video or wait until after the second

22  volume?

23            MR. LEE:  Not at this time.  Thank you.

24            THE VIDEOGRAPHER:  Okay.  Virginia, do you want

25  transcript orders on the record?

Global Access Litigation Services
(949) 220-0449

RYAN MCCARTNEY                                    10/3/2025

```
1              THE REPORTER:  Yes, please.  Anybody want a
2    transcript?
3              MR. OLSEN:  Other than me, I presume?
4              THE REPORTER:  Correct.
5              MR. LEE:  Okay.  Yeah, if Mr. Olsen is, then I
6    guess I will, too.  This is Jeff Lee at Gordon Rees.
7              THE VIDEOGRAPHER:  This suspends the remote video
8    deposition of Ryan McCartney.  The time is 2:02 p.m.  We are
9    now off the record.
10
11      (The proceedings were concluded at 2:02 p.m. Pacific.)
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```

Global Access Litigation Services
(949) 220-0449

RYAN MCCARTNEY                           10/3/2025

1

2

3

4

5          I have read the foregoing deposition transcript and

6    by signing hereafter, subject to any changes I have made,

7    approve same.

8

9    Dated_____.

10

11

12                          _____

13                                  RYAN MCCARTNEY

14

15

16

17

18

19

20

21

22

23

24

25

Global Access Litigation Services
(949) 220-0449

RYAN MCCARTNEY                          10/3/2025

```
 1                 CERTIFICATE OF REPORTER

 2            I, the undersigned, a Certified Shorthand Reporter,

 3    licensed by the State of California, being empowered to

 4    administer oaths and affirmations remotely pursuant to

 5    Section 2093(b) of the Code of Civil Procedure, do hereby

 6    certify:

 7            That the foregoing proceedings were taken remotely

 8    before me at the time and place herein set forth; that any

 9    witness in the foregoing proceedings, prior to testifying,

10    were placed under oath; that a verbatim record of the

11    proceedings was made by me using machine shorthand which was

12    thereafter transcribed under my direction; further, that the

13    foregoing is an accurate transcription thereof.

14            I further certify that I am neither financially

15    interested in the action nor a relative or employee of any

16    attorney or any of the parties.

17            Further, that if the foregoing pertains to the

18    original transcript of the deposition in the case, before

19    completion of the proceedings, review of the transcript [ X ]

20    was [  ] was not requested.

21            IN WITNESS WHEREOF, I have this date subscribed my

22    name.

23    Dated: October 8th, 2025

24            _____Virginia Perez_____

25                  VIRGINIA PEREZ, CSR 11433
```

Page 142

**PROOF OF SERVICE**

I am an active member of the State Bar of California. I am not a party to the within action. My business address is 440 N. Barranca Ave. PMB 9496, Covina, CA 91723. On October 29, 2025, I served copies of the within documents described as:

**DECLARATION OF RUBEN ESCALANTE IN SUPPORT OF MOTION FOR LEAVE TO FILE FIRST AMENDED COMPLAINT**

on the interested parties in this action as follows:

**See attached Service List**

[x]    BY ELECTRONIC/EMAIL - I caused the above document to be delivered to the office of the addressee via electronic e-mail. Said document was transmitted to the email address of that office which is listed on the Service List. I did not receive, within a reasonable after the transmission, any indication that the transmission was not successful.

I certify the foregoing is true and correct. Executed on October 29, 2025.

_____
Ruben Escalante

-4-

**DECLARATION OF RUBEN ESCALANTE**

SERVICE LIST

GEOFFREY LEE (SBN:234024)
glee@grsm.com
ANAFRANCESCA COMUNALE (SBN: 323257)
acomunale@grsm.com
GORDON REES SCULLY MANSUKHANI, LLP
101 West Broadway, Suite 2000
San Diego, CA 92101
Telephone: (619) 230-7418
Facsimile: (619) 696-7124

Attorneys for Defendants
RISC POINT ADVISORY GROUP LLC; RISC POINT ASSURANCE, LTD;
RISC POINT HOLDINGS, INC.; JACOB NIX

NEDA DAL CIELO
Neda.DalCielo@jacksonlewis.com
JACKSON LEWIS P.C.
160 W Santa Clara St., Suite 400
San Jose, CA 95113
Telephone: (408) 579-0404

Attorneys for Defendants
(Request for Approval of Substitution Pending)

DECLARATION OF RUBEN ESCALANTE