Ruben D. Escalante (Cal. Bar No. 244596)
ACLIENT PC
440 N Barranca Ave PMB 9496
Covina, California 91723
Telephone: (310) 431-9687
Email: ruben@aclientpc.com

Jeff T. Olsen (Cal. Bar No. 283249)
OLSEN WORKPLACE SOLUTIONS PC
18012 Cowan, Ste 200
Irvine, California 92614
Telephone: (949) 232-0455
Email: jeff@olsenws.com

Attorneys for Plaintiff
ASHLEY FRAGALE

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ASHLEY FRAGALE,<br><br>               Plaintiffs,<br><br>   vs.<br><br>RISC POINT ADVISORY GROUP LLC; RISC POINT ASSURANCE, LTD; RISC POINT HOLDINGS, INC.; JACOB NIX; and DOES 1 through 10, inclusive,<br><br>               Defendants. | Case No.: 8:25-cv-00994 JWH (ADSx)<br><br>**DECLARATION OF RUBEN ESCALANTE IN SUPPORT OF PLAINTIFF'S OPPOSITION TO *EX PARTE* APPLICATION FOR LEAVE TO WITHDRAW AS COUNSEL OF RECORD FOR DEFENDANT RISC POINT ADVISORY GROUP LLC AND TO CONTINUE ALL RELATED DISCOVERY AND TRIAL DATES**<br><br>Complaint Filed: April 14, 2025<br>Removal Filed: May 7, 2025<br>Trial Date: April 13, 2026 |

DECLARATION OF RUBEN ESCALANTE

## DECLARATION OF RUBEN ESCALANTE

I, Ruben Escalante, do declare as follows:

1.      I am a partner in the law firm ACLIENT PC, attorneys of record for Plaintiff. I have personal knowledge of the facts herein, unless otherwise stated, and if called as a witness to testify thereto under oath, I could competently do so.

2.      After receiving Jackson Lewis' application and Jacob Nix's opposition, Plaintiff offered a written compromise. As of signing this declaration, Defendants did not agree. A true and correct copy of supporting correspondence is attached hereto as Exhibit 1.

3.      Gordon Rees disclosed that Jackson Lewis would be taking over as counsel on October 24, 2025. Thereafter, I asked for new counsel to reach out to me. I sent an outline of major discovery issues the same day Jackson Lewis substituted into the case on October 29, 2025. I made it clear to Jackson Lewis on November 3, 2025, that Plaintiff would not agree to move the discovery deadlines or trial. A true and correct copy of supporting correspondence is attached hereto as Exhibit 2. Since that time, my co-counsel and I have put significant time into trying to complete Plaintiff's discovery, including designating Plaintiff's experts.

4.      A true and correct copy of the highlighted deposition testimony of Ryan McCartney is attached hereto as Exhibit 3.

5.      Plaintiff brought a motion to compel Defendants to complete their document production, which was denied for procedural reasons; Plaintiff has since initiated the Joint Stipulation process on a renewed motion. This is the subject of a pending ex parte application. Plaintiff submitted an ex parte motion to compel Defendants to confirm dates

///

///

///

-1-

**DECLARATION OF RUBEN ESCALANTE**

for key deponents, which is pending. Defendants served objections only to discovery regarding Defendants' financial condition and agency issues. Defendants RISC Point and Nix propounded discovery on October 28, 2025.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Executed this 11th day of November 2025, in Fairfield, CA.

_____
Ruben Escalante

**DECLARATION OF RUBEN ESCALANTE**

Exhibit 1

**ruben@aclientpc.com**

| | |
|---|---|
| **From:** | Dal Cielo, Neda N. (Silicon Valley) <Neda.DalCielo@jacksonlewis.com> |
| **Sent:** | Tuesday, November 11, 2025 5:00 PM |
| **To:** | ruben@aclientpc.com; Patterson, Maria (Silicon Valley); 'Robert Escalante'; richard.marca@varnerbrandt.com; 'Jeff Olsen'; 'Geoff Lee'; 'Anafrancesca Comunale'; 'Sasha Sudan'; Maretz, Peter (San Diego) |
| **Cc:** | Antuna, Andres (Silicon Valley); Cvietkovich, Leticia (Silicon Valley) |
| **Subject:** | RE: Fragale v. Risc Point et al -- Ex Parte Notice |

Hi Ruben,

Thank you for sending this proposed stipulation. Unfortunately, we are not in a position to be able to agree to this in such a short timeline. I am scheduled to speak with my client tomorrow afternoon and will discuss this with them at that time.

Going forward, can you please make sure that @Maretz, Peter (San Diego) is also cc'd on all communications regarding this matter please?

Thank you,



**Neda N. Dal Cielo**
Attorney at Law

**Jackson Lewis P.C.**
160 W Santa Clara St.
Suite 400
San Jose, CA 95113
Direct: (408) 513-2251 | Main: (408) 579-0404
Neda.DalCielo@jacksonlewis.com | www.jacksonlewis.com

---

**From:** ruben@aclientpc.com <ruben@aclientpc.com>
**Sent:** Tuesday, November 11, 2025 1:57 PM
**To:** Patterson, Maria (Silicon Valley) <Maria.Patterson@jacksonlewis.com>; 'Robert Escalante' <robert@aclientpc.com>; richard.marca@varnerbrandt.com; 'Jeff Olsen' <jeff@olsenws.com>; 'Geoff Lee' <glee@grsm.com>; 'Anafrancesca Comunale' <acomunale@grsm.com>; 'Sasha Sudan' <asudan@grsm.com>
**Cc:** Dal Cielo, Neda N. (Silicon Valley) <Neda.DalCielo@jacksonlewis.com>; Antuna, Andres (Silicon Valley) <Andres.Antuna@jacksonlewis.com>; Cvietkovich, Leticia (Silicon Valley) <Leticia.Cvietkovich@jacksonlewis.com>
**Subject:** RE: Fragale v. Risc Point et al -- Ex Parte Notice

All Counsel,

In reading Jackson Lewis' application and now Gordon Rees' oppositions, it appears that there may be room for a compromise here, but only if we act quickly. Keep in mind, this is a compromise. We will still need to submit our opposition, but if we can get a stipulation on file tomorrow morning, then we may be able to save the Court (the District Judge and Magistrate Judge) the time of analyzing and ultimately ruling on the pending applications. Here are the proposed terms:

1. The parties stipulate to a limited/qualified 30-day continuance of the discovery cutoff, but only as to discovery the parties timely initiated. That is, only the following would be included in this continuance: written discovery served on or before October 17, 2025, depositions noticed to commence prior to December 5, 2025, and motion practice associated with such discovery. The following would be excluded: the written discovery served by Defendants after October 17, 2025 because it violated the terms of the Scheduling Order and affirmative (as opposed to rebuttal) expert designations. We will not agree to a general continuance of the trial date or discovery deadlines.

2. Defendant Jacob Nix will agree to be deposed in person on or before December 19th, and will propose three alternative dates by November 18.

3. Defendant RISC Point will agree to produce Chad Gross, Allison Bailey, Tony Bai, and its PMK to be deposed remotely on or before December 19, and will propose three alternative dates by November 18. Although we believe that in person depositions are warranted and that would be our preference, we are willing to do them remotely as a compromise.

4. Defendant RISC Point will produce Matt Drewyor to be deposed in person on or before December 19th, and will propose three alternative dates by November 18.

5. The stipulation will be without prejudice to any party seeking further relief form the Court.

6. The stipulation will expressly bind the parties and future counsel. Thus, it would be incumbent on Defendants informing new counsel of these deadlines and stipulations.

Please let me know if this is acceptable or if you have any counter proposals, and I can put a stipulation together. I would ask that each firm respond separately.

Respectfully,

**Ruben Escalante**
Partner

**ACLIENT PC**
440 N Barranca Ave PMB 9496
Covina, California 91723
(310) 431-9687

---

**From:** Patterson, Maria (Silicon Valley) <Maria.Patterson@jacksonlewis.com>
**Sent:** Monday, November 10, 2025 8:19 PM
**To:** ruben@aclientpc.com; 'Robert Escalante' <robert@aclientpc.com>; richard.marca@varnerbrandt.com; 'Jeff Olsen' <jeff@olsenws.com>; 'Geoff Lee' <glee@grsm.com>; 'Anafrancesca Comunale' <acomunale@grsm.com>; 'Sasha Sudan' <asudan@grsm.com>
**Cc:** Dal Cielo, Neda N. (Silicon Valley) <Neda.DalCielo@jacksonlewis.com>; Antuna, Andres (Silicon Valley) <Andres.Antuna@jacksonlewis.com>; Cvietkovich, Leticia (Silicon Valley) <Leticia.Cvietkovich@jacksonlewis.com>
**Subject:** RE: Fragale v. Risc Point et al -- Ex Parte Notice

Counsel,

Attached please find Defendant RISC Point Advisory Group LLC's *Ex Parte* papers filed with the Court today.

Very truly yours,



**Maria Patterson**
Legal Secretary

**Jackson Lewis P.C.**
160 W Santa Clara St.
Suite 400
San Jose, CA 95113
Direct: (408) 513-2255 | Main: (408) 579-0404
Maria.Patterson@jacksonlewis.com | www.jacksonlewis.com

---

**From:** Dal Cielo, Neda N. (Silicon Valley) <Neda.DalCielo@jacksonlewis.com>
**Sent:** Monday, November 10, 2025 1:21 PM
**To:** ruben@aclientpc.com; 'Geoff Lee' <glee@grsm.com>; 'Jeff Olsen' <jeff@olsenws.com>; 'Robert Escalante' <robert@aclientpc.com>; 'Anafrancesca Comunale' <acomunale@grsm.com>
**Cc:** 'Sasha Sudan' <asudan@grsm.com>; Patterson, Maria (Silicon Valley) <Maria.Patterson@jacksonlewis.com>; Antuna, Andres (Silicon Valley) <Andres.Antuna@jacksonlewis.com>
**Subject:** Fragale v. Risc Point et al -- Ex Parte Notice

Good afternoon Counsel,

As a follow up to our call on Friday, please be advised that we will be seeking *ex parte* relief from the Court as follows:

(a) Withdrawing as Counsel of Record for Defendant Risc Point Advisory Group LLC;
(b) Continuing the current April 13, 2026 and all related pre-trial and discovery and motion deadlines, including all depositions to allow Defendant Risc Point Advisory Group LLC time to arrange for new counsel of record.

We will be filing this request today; please let us know if you intend to oppose.

Respectfully,



**Neda N. Dal Cielo**
Attorney at Law

**Jackson Lewis P.C.**
160 W Santa Clara St.
Suite 400
San Jose, CA 95113
Direct: (408) 513-2251 | Main: (408) 579-0404
Neda.DalCielo@jacksonlewis.com | www.jacksonlewis.com

Exhibit 2

**ruben@aclientpc.com**

| | |
|---|---|
| **From:** | ruben@aclientpc.com |
| **Sent:** | Monday, November 3, 2025 3:16 PM |
| **To:** | 'Dal Cielo, Neda N. (Silicon Valley)' |
| **Cc:** | 'Jeff Olsen'; 'Robert Escalante'; 'Antuna, Andres (Silicon Valley)'; 'Patterson, Maria (Silicon Valley)'; ruben@aclientpc.com |
| **Subject:** | RE: Fragale |

Ms. Dal Cielo,

Good afternoon. Thank you for taking the time to talk today. To recap some of the topics discussed.

1. Motion to Compel Compliance. This was one of the items deferred per the below. We touched on it briefly, and were not able to resolve this issue. I explained we needed to move forward given the discovery deadline.
2. IME. We discussed this issue, and a potential way forward. I'll respond under separate cover.
3. Depositions. We reiterated our request for alternative dates within the discovery cutoff. This also is something we need to move forward on.
4. Defendants' Objections Served on October 27. This was one of the items deferred per the below. We touched on it briefly. Although I thought we might able to come to terms re the RFAs, given the current deadlines and the fact that Jackson Lewis doesn't represent all the parties, we need to move forward.
5. Me Too Responses. We both acknowledged the current deadline.
6. Motion to Amend. We did not substantively discuss this issue. We let you know that Plaintiff is not willing to stipulate to extend discovery deadlines or continue the trial.
7. Insurance information. We briefly touched on this. Jackson Lewis could not confirm that there was not a new policy.

I know this is just a high level confirmation, but if my summary is off on anything, please let me know.

Respectfully,

**Ruben Escalante**
Partner

**ACLIENT PC**
440 N Barranca Ave PMB 9496
Covina, California 91723
(310) 431-9687

---

**From:** Dal Cielo, Neda N. (Silicon Valley) <Neda.DalCielo@jacksonlewis.com>
**Sent:** Friday, October 31, 2025 4:16 PM
**To:** ruben@aclientpc.com
**Cc:** 'Jeff Olsen' <jeff@olsenws.com>; 'Robert Escalante' <robert@aclientpc.com>; Antuna, Andres (Silicon Valley) <Andres.Antuna@jacksonlewis.com>; Patterson, Maria (Silicon Valley) <Maria.Patterson@jacksonlewis.com>; Ruben Escalante <Ruben.Escalante@varnerbrandt.com>
**Subject:** RE: Fragale

Hi Ruben,

My apologies but it looks like I already have another meeting scheduled at 2:00 pm on Monday. Can we connect at 1:00 pm instead?

Best,



**Neda N. Dal Cielo**
Attorney at Law

**Jackson Lewis P.C.**
160 W Santa Clara St.
Suite 400
San Jose, CA 95113
Direct: (408) 513-2251 | Main: (408) 579-0404
Neda.DalCielo@jacksonlewis.com | www.jacksonlewis.com

---

**From:** Dal Cielo, Neda N. (Silicon Valley) <Neda.DalCielo@jacksonlewis.com>
**Sent:** Friday, October 31, 2025 4:14 PM
**To:** ruben@aclientpc.com
**Cc:** 'Jeff Olsen' <jeff@olsenws.com>; 'Robert Escalante' <robert@aclientpc.com>; Antuna, Andres (Silicon Valley) <Andres.Antuna@jacksonlewis.com>; Patterson, Maria (Silicon Valley) <Maria.Patterson@jacksonlewis.com>; Ruben Escalante <Ruben.Escalante@varnerbrandt.com>
**Subject:** RE: Fragale

Hi Ruben,

2:00 pm works for a call on Monday. I will circulate a Teams Invite for us.

Have a good weekend,



**Neda N. Dal Cielo**
Attorney at Law

**Jackson Lewis P.C.**
160 W Santa Clara St.
Suite 400
San Jose, CA 95113
Direct: (408) 513-2251 | Main: (408) 579-0404
Neda.DalCielo@jacksonlewis.com | www.jacksonlewis.com

---

**From:** ruben@aclientpc.com <ruben@aclientpc.com>
**Sent:** Friday, October 31, 2025 2:55 PM
**To:** Dal Cielo, Neda N. (Silicon Valley) <Neda.DalCielo@jacksonlewis.com>
**Cc:** 'Jeff Olsen' <jeff@olsenws.com>; 'Robert Escalante' <robert@aclientpc.com>; Antuna, Andres (Silicon Valley) <Andres.Antuna@jacksonlewis.com>; Patterson, Maria (Silicon Valley) <Maria.Patterson@jacksonlewis.com>; Ruben

Escalante <Ruben.Escalante@varnerbrandt.com>
**Subject:** RE: Fragale

Ms. Dal Cielo,

Good afternoon. Mr. Olsen and I are generally available to discuss these matters on Monday. Does 2 p.m. work for you? If not, please suggest another time.

Also, can you please clarify, which firm or firms have the authority to enter into agreements and stipulations (i.e., the ability to meet and confer in good faith) and on behalf of which entities? Right now, the docket shows you are only counsel of record for one entity/party (but not the others); we request you confirm whether that was intentional or if it was a clerical error that will be resolved prior to our discussion.

Finally, based your email below, our discussion on Monday will not cover items 1 and 4 and this confirms our understanding that you will not meet and confer with us on those issues this week or next week. Based on Goron Rees' stated reasons for objecting to our recent discovery referenced in item 4 (i.e., that Jackson Lewis was not prepared to adopt Gordon Rees' draft substantive responses and that Jackson Lewis would like to draft their own), this confirms our understanding that Gordon Reese is also not going to meet and confer with on those issues and are deferring to your firm. If I am misunderstanding, we respectfully request you let us know right way.

Respectfully,

**Ruben Escalante**
Partner

**ACLIENT PC**
440 N Barranca Ave PMB 9496
Covina, California 91723
(310) 431-9687

---

**From:** Dal Cielo, Neda N. (Silicon Valley) <Neda.DalCielo@jacksonlewis.com>
**Sent:** Friday, October 31, 2025 1:34 PM
**To:** ruben@aclientpc.com
**Cc:** 'Jeff Olsen' <jeff@olsenws.com>; 'Robert Escalante' <robert@aclientpc.com>; 'Richard D. Marca' <Richard.Marca@varnerbrandt.com>; 'Madison R. Montgomery' <Madison.Montgomery@varnerbrandt.com>; Antuna, Andres (Silicon Valley) <Andres.Antuna@jacksonlewis.com>; Patterson, Maria (Silicon Valley) <Maria.Patterson@jacksonlewis.com>
**Subject:** RE: Fragale

Good afternoon Ruben,

Nice to meet you via email. I am in receipt of your email that you sent Wednesday night. This matter is still in the process of being transitioned to my firm. It is our understanding that Gordon Reese will be producing documents and supplemental discovery responses relating to item no. 5. We're happy to discuss the joint stipulation on item number 2 and are willing to discuss any updated insurance information from item number 7 ( although I don't believe there is one) and mutually agreeable deposition dates regarding item number 3. Please note that we are not available to attend the November depositions previously unilaterally scheduled by Plaintiff before we entered this case and will need to discuss rescheduling them. We are not currently willing to stipulate to your amended

complaint as suggested in item number 6, but if you are willing to stipulate to continue the currently scheduled trial date and/or discovery deadlines, we are happy to discuss a realistic set of deadlines to minimize any further delay.

The rest of your requests are not possible for us to address this week or the next; we are only just entering this case. The files have not been transferred to my office, and I have not had the opportunity to review them yet. We are in the process of getting the files transferred from the client and from Gordon Reese and despite moving as fast as possible, I'm sure you can understand that we are not currently in a position to be able to verify what has been produced in items 1 or immediately supplement the earlier responses to the discovery requests in item 4.

I am available for a call on Monday if you would like to discuss any of the above.

Best,



**Neda N. Dal Cielo**
Attorney at Law

**Jackson Lewis P.C.**
160 W Santa Clara St.
Suite 400
San Jose, CA 95113
Direct: (408) 513-2251 | Main: (408) 579-0404
Neda.DalCielo@jacksonlewis.com | www.jacksonlewis.com

---

**From:** ruben@aclientpc.com <ruben@aclientpc.com>
**Sent:** Wednesday, October 29, 2025 9:32 PM
**To:** Dal Cielo, Neda N. (Silicon Valley) <Neda.DalCielo@jacksonlewis.com>
**Cc:** 'Jeff Olsen' <jeff@olsenws.com>; ruben@aclientpc.com; 'Robert Escalante' <robert@aclientpc.com>; 'Richard D. Marca' <Richard.Marca@varnerbrandt.com>; 'Madison R. Montgomery' <Madison.Montgomery@varnerbrandt.com>
**Subject:** Fragale

Ms. Dal Cielo,

Good evening. I apologize for the late email. As his former firm, Mr. Olsen speaks highly of the attorneys at Jackson Lewis, with the same respect I speak of my former colleagues. Accordingly, as a courtesy, I wanted to send you an email regarding some of the issues Gordon Reese left open. Given the impending deadlines and our plan to keep the trial date, we need to continue moving forward with seeking Court intervention if we cannot promptly resolve these issues. Please let me know if we can jump on a call tomorrow morning to see if we can resolve some or all of these issues.

1. Motion to Compel Compliance. See the attached email. We are planning to send you the Joint Stipulation re Motion to Compel based on previous meet and confers with opposing counsel in very short order. In short, we need verification under penalty of perjury that all non-ESI documents have been produced and the ESI production (pursuant to the Parties' agreement, and not the restrictive view Gordon Reese took). Notably, Gordon Reese's restrictive interpretation of the Agreement would not capture key documents we know exist. This will include such things as Slack messages, Signal messages, and Text messages between key players. There are a lot of layers here, including issues re potential spoliation that I would be happy to discuss with you tomorrow morning. At this point, we

need to move forward unless full and complete compliance occurs this week. I've attached a courtesy copy of an IDC transcript regarding a related issue, where the Court indicated that a full production with a "claw back" mechanism could be explored. We previously moved to compel, but the Court denied it due to formatting; thus, we will refile it with the Court's preferred formatting and updated information.

2. IME. Gordon Reese sent us a Joint Stipulation which contained information covered by the Stipulated Protective Order, including Plaintiff's diagnosis, medication, and name of treating physician. It also contains improper matter, such as settlement discussions. We need confirmation that if Defendants proceed to filing this document that it will be done according to the Stipulated Protective Order so we can ask the Court to keep it under seal; if the terms of the Stipulated Protective Order are not followed, we will act swiftly to protect our client's interests. There are also technical and procedural issues with the Joint Stipulation, which I would be happy to discuss (e.g., it appears to be on our caption page).

3. Depositions. See attached. We noticed the depositions of Defendant RISC Point and Defendants' Affiliated Employees. We noticed the depositions of individuals to take place all in one week in Ohio. We are open to meeting and conferring about mutually agreeable dates, but this needs to happen quickly because travel arrangements need to be made and they need to be taken before the discovery cutoff. We are also open to meeting and conferring about the location, if the witnesses wanted to come to California (e.g., your office in Northern California); however, at this time, we are planning to take these depositions in person.

4. Defendants' Objections Served on October 27. See attached meet and confer letter. We need responsive documents and responses right away, or we need to act quickly to compel given the cutoff.

5. Me Too Responses. On October 22, 2025, the Court ordered RISC Point to provide certain responsive documents and information by a date certain. I invite you to review the Court's comments to ensure Defendants understand and comply with the scope and timing of the order.

6. Motion to Amend. If Defendants want to stipulate to the proposed amendment to avoid further law and motion on this issue, please let me know.

7. Insurance information. See attached.


There may be other issues not reflected or fully set out above, but I wanted to at least get these to you. I look forward to your response.


Respectfully,


**Ruben Escalante**
Partner

ACLIENT PC
440 N Barranca Ave PMB 9496
Covina, California 91723
(310) 431-9687

Exhibit 3

<span style="color:red">CERTIFIED COPY</span>



VIDEOTAPED DEPOSITION OF
**RYAN MCCARTNEY**

Taken on October 3, 2025

ASHLEY FRAGALE vs. RISC POINT ADVISORY GROUP, LLC

**Global Access Litigation Services**
**(949) 220-0449**
**production@galscr.com**
**www.galscr.com**

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

---oOo---


ASHLEY FRAGALE,                    ) CIVIL ACTION
                                   )NO.:8:25-cv-00994 JWH (ADSx)
              Plaintiff,           )
                                   )
vs.                                )
                                   )
RISC POINT ADVISORY GROUP, LLC;    )
RISC POINT ASSURANCE, LTD;,        )
RISC POINT HOLDINGS, INC.;         )
JACOB NIX; and DOES 1 through      )
10, inclusive,                     )
              Defendants.          )
_____    )



     THE VIDEOTAPED DEPOSITION OF RYAN MCCARTNEY,

located in Thousand Oaks, California, commencing at 10:02

a.m. PST on Friday, October 3, 2025, before VIRGINIA PEREZ,

Certified Shorthand Reporter 11433, in and for the State of

California.




GLOBAL ACCESS LITIGATION SERVICES
(949) 220-0449

RYAN MCCARTNEY                        10/3/2025

```
 1    REMOTE APPEARANCES:
 2    FOR THE PLAINTIFF:
 3    OLSEN WORKPLACE SOLUTIONS, PC
      BY:  JEFF OLSEN, ESQ., AWI-CH
 4    18012 Cowan Avenue, Suite 200
      Irvine, California 92614
 5    Telephone:  (949) 232-0455
      Email: jeff@olsenws.com
 6
      ACLIENT, PC
 7    BY:  RUBEN D. ESCALANTE, ESQ.
      440 North Barranca Avenue
 8    PMB 9496
      Covina, California 91723
 9    Telephone: (310) 431-9687
      Email: ruben@aclientpc.com
10
      FOR THE DEFENDANTS:
11
      MCDONALD HOPKINS
12    BY:  KARINA R. CONLEY, ESQ.
           JULIE TOTH, ESQ.
13    600 Superior Avenue, Suite 2100
      Cleveland, Ohio 44114
14    Telephone: (216) 348-5408
      Email: mcdonaldhopkins.com
15
      GORDON REES SCULLY MANSUKHANI
16    BY:  GEOFFREY LEE, ESQ.
           MADISON PANGBURN, ESQ.
17    633 West Fifth Street, 52nd Floor
      Los Angeles, California 90071
18    Telephone: (213) 270-7861
      Email: glee@grsm.com
19         mpangburn@grsm.com
20    Also present:
      Deborah Alvino, Certified Legal Video Specialist
21    Sweeta Dadras, Judge
      Matt Drewyor, CEO of RISC Point
22    Jacob Nix, Chief Growth Officer
      Gabriella Datchler, legal clerk
23
24
25
```

RYAN MCCARTNEY                          10/3/2025

```
 1                        I N D E X

 2   EXAMINATION                                    PAGE

 3

 4       BY MR. OLSEN                                  6

 5

 6

 7                      ---oOo---

 8                    E X H I B I T S
                                                   PAGE
 9   Exhibit 1   Subpoena to Testify at a Deposition
                 in a Civil Action                    6
10   Exhibit 2   RISC Point Org Chart-Detailed       19
     Exhibit 3   MPI Consulting Confidential
11               Investigation Report               114

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

RYAN MCCARTNEY                                    10/3/2025

```
 1        REMOTELY REPORTED FROM VENTURA COUNTY, CALIFORNIA

 2                        OCTOBER 3, 2025

 3                         10:07 A.M.

 4

 5        THE VIDEOGRAPHER:  Good morning.  We are going on

 6   the record at 10:07 a.m.  My name is Deborah Alvino

 7   Certified Legal Video Specialist and Notary.  And our court

 8   reporter today is Virginia Perez.  We both represent Global

 9   Access Litigation Services of San Clemente, California.

10   This marks the beginning of Media Number 1 in the Remote

11   video deposition of Ryan McCartney taken October 3rd, 2025

12   in the matter of Ashley Fragale, plaintiff versus RISC Point

13   Advisory Group, LLC, et al. Defendants filed in the United

14   States District Court for the Central District of California

15   Civil Action Number 8:25-cv-00994 JWH (ADSx).  This

16   deposition is being taken on behalf of plaintiff and it is

17   being held video Zoom conference.

18        Would counsel and all present please introduce

19   yourselves for the record beginning on the witness.

20        THE WITNESS:  That's me.  I'm Ryan McCartney.

21        MS. COMLEY:  Hi, I'm an attorney for Ryan

22   McCartney, Karina Conley.  And I have a law clerk with me,

23   Gabriella Datchler.

24        MS. PANGBURN:  Hi.  I am attorney Madison Pangburn

25   for RISC Point Assurance Limited.
```

Page 4

RYAN MCCARTNEY                           10/3/2025

```
 1            MR. OLSEN:  Anyone else in the room?

 2            MR. DREWYOR:  My name is Matt Drewyor.  I'm the CEO

 3   of RISC Point Advisory Group, LLC.

 4            MR. NIX:  I'm Jacob Nix.  I'm the Chief Growth

 5   Officer of RISC Point.

 6            MR. OLSEN:  Mr. Lee?

 7            MS. TOTH: I'm Julie Toth attorney for Ryan

 8   McCartney.

 9            MR. LEE:  This is Geoffrey Lee appearing remotely

10   on behalf of Defendants, RISC Point Advisory Group, RISC

11   Point Holdings and Jake Nix.

12            MR. OLSEN:  And I am Jeff Olsen on behalf of

13   Plaintiff, Ashley Fragale.  Here with me telephonically is

14   co-counsel Ruben Escalante and Ashley Fragale.

15            THE VIDEOGRAPHER:  Would the court reporter please

16   introduce herself and then administer the oath.

17            THE REPORTER:  My name is Virginia Perez.  My

18   Certification Number is 11433.  I'm here on behalf of Global

19   McCartney.

20                      RYAN MCCARTNEY,
                  a witness called on behalf of the Plaintiff herein,
21                after having been first duly and regularly sworn,
                  testifies as hereinafter follows:
22

23            THE REPORTER:  You're muted.

24            THE WITNESS:  I do.

25            THE REPORTER:  Thank you.
```

RYAN MCCARTNEY                                    10/3/2025

```
 1                      EXAMINATION

 2   BY MR. OLSEN:

 3       Q.   Good morning, Mr. McCartney can you hear me okay?

 4       A.   Yes, sir.

 5       Q.   First things first is that very first question the

 6   court reporter asked you.  There maybe technical

 7   difficulties in the moment.  For whatever reason you cannot

 8   hear me, please ask me to rephrase my question.  And I will

 9   do the same, if I can't hear you, okay?

10       A.   Okay.

11       Q.   As an administrative initial matters, you heard me

12   introduce myself.  My name is Jeff Olsen.  I'm an attorney

13   for Ashley Fragale.  And I have subpoenaed you here today.

14            (Plaintiff's Exhibit 1 was marked for

15             identification.)

16   BY MR. OLSEN:

17       Q.   And if you look in the Chat, I will have marked as

18   Exhibit 1 and I'm using it as an initial test case to make

19   sure everyone can see it and download it.  And, especially,

20   you,      Mr. McCartney.  Do you mind seeing if you can go

21   into the Chat and opening the attachment that's marked as

22   Exhibit 1?

23       A.   Yes.  All right.  It is open.

24       Q.   Do you mind spelling your full name for the record?

25       A.   Sure.  My legal name is -- it was recently changed.
```

Global Access Litigation Services
(949) 220-0449

RYAN MCCARTNEY                                    10/3/2025

```
 1        A.    Correct.

 2        Q.    And what is his title?

 3        A.    I don't recall.

 4        Q.    Is he an executive of the company?

 5        A.    He is not.

 6        Q.    Before -- when did you start working there?

 7        A.    I started in early September.  I don't recall the

 8   specific date.

 9        Q.    Before your current job at you Phoenix Team, where

10   did you work?

11        A.    RISC Point.

12        Q.    Okay.  So as you heard me say earlier, currently

13   there are multiple RISC Point or entities that are named as

14   defendants.  Currently RISC Point Advisory Group, LLC, RISC

15   Point Assurance, Ltd. and RISC Point Holdings, Inc.  Are you

16   aware of each of those entities?

17        A.    I'm aware of them.  I'm not sure the specifics of

18   each one.  Yeah.

19        Q.    Could you tell me which one of those entities you

20   believe that you were an employee of?

21        A.    Can you read them back again?

22        Q.    RISC Point Advisory Group, LLC, RISC Point

23   Assurance, Ltd., RISC Point Holdings, Inc.

24        A.    It would be the first one.

25        Q.    RISC Point Advisory Group, LLC?
```

RYAN MCCARTNEY                                10/3/2025

```
 1      A.   Yes.
 2      Q.   And you're saying that you were an employee there?
 3      A.   I was.  And I also currently hold equity there as
 4 well.  But in a private holding company.
 5           (Plaintiff's Exhibit 2 was marked for
 6           identification.)
 7 BY MR. OLSEN:
 8      Q.   Let me upload Exhibit 2.  Apologies for the slight
 9 delay.  Let me do that.  Do you see Exhibit 2 in the Chat,
10 Mr. McCartney?
11      A.   Yes.  I got 2.
12      Q.   Okay.  Would you just take a minute to look at that
13 the pages attached.
14      A.   Yes.
15      Q.   Let me know when it's done.
16      A.   Done.
17      Q.   Okay.  On the first page is an org chart; do you
18 see that?
19      A.   Yes.
20      Q.   Does this org chart accurately represent your
21 understanding of your ownership interests in one of the RISC
22 Point entities?
23      A.   Yes?
24      Q.   Does this org chart represent your understanding of
25 I believe all these entities interplay with each other?
```

RYAN MCCARTNEY                                        10/3/2025

1        A.    I do not.

2        Q.    Do you have any understanding about company emails

3   at RISC Point, how they are stored?

4        A.    I believe they would be stored in Microsoft online.

5        Q.    In terms of Slack messages, you had a Slack

6   account; is that right?

7        A.    Correct.

8        Q.    Do you have the ability to delete or modify

9   messages in Slack?

10            MR. LEE:  Objection.  Vague.  Ambiguous.

11            THE WITNESS:  Yes.

12   BY MR. OLSEN:

13       Q.    Did you ever have the -- or have you ever in the

14   past edited, modified or deleted any messages on Slack?

15            MR. LEE:  Objection.  Ambiguous.  Vague.  Compound.

16            THE WITNESS:  Yes.

17   BY MR. OLSEN:

18       Q.    Mr. McCartney, do you have any misunderstanding

19   about my question, at all?

20       A.    No.

21       Q.    Thank you.  So at RISC Point what was your job

22   title?

23       A.    I was the Executive Vice President of Public Sector

24   Operations.

25       Q.    Could you say that one more time for me.

RYAN MCCARTNEY                                    10/3/2025

```
 1      A.   Sure.   The Executive Vice President of Public
 2 Sector Operations.
 3      Q.   Quickly going back to Slack.  If I was to ask you
 4 to find all messages and emails in your emails in Slack that
 5 were related to Ashley, how long do you think that would
 6 take you?
 7           MR. LEE:  Objection.  Vague as to time.  Incomplete
 8 hypothetical.
 9           THE WITNESS:  Just run a query and see how many
10 messages there are?
11 BY MR. OLSEN:
12      Q.   Yeah.
13      A.   A minute maybe.
14      Q.   And that would, you would be able to determine how
15 many messages that were between you and Ashley on your
16 emails?
17      A.   Correct.
18      Q.   And in that minute you would be able to determine
19 the number of messages between you and Ashley on Slack?
20           MR. LEE:  Objection.  It's leading and misstates
21 prior testimony.
22           THE WITNESS:  I think, yeah.  I don't know.
23 What -- I don't think I understand the question.
24 BY MR. OLSEN:
25      Q.   Sure.  I had asked you -- let's just focus on
```

RYAN MCCARTNEY                              10/3/2025

```
 1    generally?

 2        A.   Yeah.   Mr. Nix, Mr. Drewyor and Mr. Bai and Bennett

 3    Warner.

 4        Q.   Anybody else?

 5        A.   No.

 6        Q.   Ms. Fragale?

 7        A.   No.

 8        Q.   Not invited?

 9        A.   Not invited.

10        Q.   And just to be clear other than Bennett, the names

11    of the individuals you just listed were invited but all

12    uninvited (sic)?

13        A.   Correct.

14        Q.   And how did you know these people that were

15    uninvited (sic)?

16        A.   Sent a message, text message as to Mr. Nix.

17        Q.   You said he stopped working at this point in August

18    as well?

19        A.   That's correct.

20        Q.   And what was the reason you stopped working there?

21        A.   I had some ethical concerns.

22        Q.   Would you mind describing those ethical concerns

23    for me?

24        A.   I found out that I was going to be deposed.   And I

25    was pressured to not be honest with my deposition.
```

Page 53

RYAN MCCARTNEY                              10/3/2025

1       Q.   Who pressured you not to be honest with my

2  deposition?

3       A.   Mr. Nix.

4       Q.   And just to be clear we're talking about this

5  deposition that we're today?

6       A.   Correct.

7       Q.   Mr. Nix is in the same room with you right now,

8  right?

9       A.   Correct.

10      Q.   Do you feel pressured in any way by Mr. Nix's

11  presence in the room?

12      A.   It's not the most comfortable.  But I believe I can

13  still share honest testimony.

14      Q.   Would you prefer to take the deposition in another

15  room?  That is the glory of remote depositions.  And I

16  imagine the office that you're in has multiple offices.

17  Would it make you more comfortable?

18      A.   I'm okay with proceeding.

19      Q.   So going back you had a conversation with Mr. Nix

20  about today's deposition?

21      A.   Yes.

22      Q.   And you had concerns that he was pressuring you not

23  to be honest?

24      A.   Yes.

25      Q.   What did he tell you?

RYAN MCCARTNEY                              10/3/2025

1      A.   He told me not to fuck this up like I did the

2   internal investigation or he would kill Will and then kill

3   me.

4      Q.   Okay.  Who's Will?

5      A.   Will is my husband.

6      Q.   Was it your understanding that if you "fuck" this

7   deposition up, he was threatening your life and the life of

8   your husband?

9      A.   I didn't know exactly what was being threatened.  I

10  didn't know -- I didn't believe there was an attempt to

11  follow through with that.  But there was an uneasy feeling

12  about me remaining employed.

13     Q.   Okay.  Well, he used the words "I will kill you and

14  your husband," he said that?

15     A.   Yes.

16     Q.   And what did you interpret that to mean?

17     A.   I interpreted that to mean I better, you know, say

18  the right things, not say anything negative during the

19  deposition.

20     Q.   Or what would happen?

21     A.   Or there would be some significant negative

22  consequences.

23     Q.   Has Mr. Nix ever threatened you before?

24     A.   Yes.

25     Q.   How many times has Mr. Nix threatened you?

RYAN MCCARTNEY                           10/3/2025

```
 1      A.   I would say a handful of times.

 2      Q.   Just to define a handful more or less than 10?

 3      A.   Less than, I would say, like seven to ten.

 4      Q.   And this being one of the ten?

 5      A.   Yeah.

 6      Q.   Let me ask my question different way.  The

 7   conversation that you had with Mr. Nix where he pressured

 8   you and told you, "you better not fuck this up or I'm going

 9   to kill you and Will," did you consider that to be a threat?

10      A.   Yes.

11      Q.   Why?

12      A.   I -- my understanding is that there could be a lot

13   riding on my deposition and that a negative outcome of the

14   deposition could be hurtful.

15      Q.   And why would he have -- given what your

16   explanation was, why it would it be important for him to

17   speak about today's deposition?

18           MR. LEE:   Objection.   Calls for speculation.

19   BY MR. OLSEN:

20      Q.   What was -- let me see if I can rephrase that

21   question -- what was your understanding as to why Mr. Nix

22   was talking to you and threatening you?

23      A.    Mr. Nix was not happy with the way I answered

24   questions in an internal investigation that was conducted.

25      Q.   We will get to that.  Is that investigation with
```

RYAN MCCARTNEY                                    10/3/2025

```
 1    somebody called John Hawkins?

 2        A.   Yes.

 3             MR. OLSEN:  I'm looking down at the time I made a

 4    promise to you earlier that we were going to stop.  Let's

 5    take a quick break get a glass of water, stretch your legs.

 6    Five minutes or so, come back; is that okay with everybody?

 7             MS. CONLEY:  Works for me.

 8             THE WITNESS:  Yeah.

 9             MR. LEE:  That's fine.

10             MR. OLSEN:  Okay.  Let's go off the record.

11             THE VIDEOGRAPHER:  We are going off the record at

12    11:20 a.m.

13             (Recess taken.)

14             (Back on the record.)

15             THE VIDEOGRAPHER:  We are going back on the record

16    at 11:31 a.m.

17    BY MR. OLSEN:

18        Q.   Mr. McCartney, we are back on the record.  Is there

19    any reason you can't continue to give me truthful testimony

20    today?

21        A.   No.

22        Q.   Before we went on our break, we were speaking about

23    a conversation between you and Mr. Nix in which Mr. Nix

24    threatened to kill you and your husband if you "effed up

25    this deposition;" do you remember that?
```

RYAN MCCARTNEY                                    10/3/2025

```
 1        A.    Yes.
 2        Q.    Is that an accurate description of what you
 3   testified to?
 4        A.    Yes.
 5        Q.    When did this conversation occur?
 6        A.    It happened earlier this summer around when I found
 7   out that I was being deposed.
 8        Q.    Did this happen in person or over the phone?
 9        A.    In person.
10        Q.    Where did this the conversation occur?
11        A.    Mitchell's Ice Cream in downtown Cleveland.
12        Q.    And what was the reason you were at Mitchell's Ice
13   Cream in downtown Cleveland with Mr. Nix?
14        A.    I don't recall the specific reason for the
15   gathering but Mr. Drewyor was also in town and was there as
16   well.
17        Q.    Who was at the ice cream shop from RISC Point?
18        A.    Mr. Nix and Mr. Drewyor.
19        Q.    So the conversation that you were describing --
20   well, conversation -- what Mr. Nix said to you, are you
21   saying that Mr. Drewyor was there as well?
22        A.    Yes.
23        Q.    What time of day was it?
24        A.    It was evening.  After dinner.
25        Q.    It was dark out?
```

Global Access Litigation Services
(949) 220-0449

RYAN MCCARTNEY                              10/3/2025

```
 1      A.   No.

 2      Q.   What was he wearing, Mr. Nix?

 3      A.   I don't recall.

 4      Q.   Do you remember what you were wearing?

 5      A.   I don't recall, no.

 6      Q.   Do you remember what you ordered?

 7      A.   Yes.

 8      Q.   What did you order?

 9      A.   Peanut butter fudge sundae.

10      Q.   Do you remember what any of the other orders were?

11      A.   I believe Mr. Nix got a peanut butter fudge sundae

12 as well.  I don't recall what Mr. Drewyor's ordered.

13      Q.   At the time that Mr. Nix made the comments to you,

14 were you eating ice cream by then?

15      A.   Yes.

16      Q.   Can you tell me everything that you can remember

17 about the conversation leading up to the comment that you

18 described?

19      A.   We were sitting outside on a like a picnic table.

20 We had recently walked out with the ice cream.  There was

21 discussion about how, you know, the Ashley situation was

22 progressing.  And there was discussion about how I was going

23 to be one of the folks that was going to be deposed.  And

24 that's when the comment was made.

25      Q.   Did you, did you say anything during this
```

RYAN MCCARTNEY                          10/3/2025

```
 1        A.    Yes.

 2        Q.    Did he move to a related RISC Point entity?

 3        A.    Not to my knowledge.

 4        Q.    Did he move -- did he work for RISC Point in a

 5   contractor role?

 6        A.    Not to my knowledge.

 7        Q.    What was the hesitation in referring to John

 8   Fiedler as a RISC Point employee?

 9        A.    I think -- he is an employee or was an employee.

10        Q.    So it is accurate to say that Jake Nix showed you

11   naked pictures of Michelle Bazzy and John Fiedler?

12        A.    No.  I misspoke.

13        Q.    Okay.

14        A.    To answer your previous question that prompted

15   that.

16        Q.    Yeah, please.  Please give me your explanation.

17        A.    Mr. Fiedler was in a photo that was shown where

18   there was also a naked photo of Ashley.

19        Q.    Let me make sure I understand what you just said.

20   Mr. Fiedler was in a photo and contained in that photo was a

21   naked picture of Ashley?

22        A.    What I observed was what appeared to be a

23   screenshot of a Facetime call between Mr. Fiedler and

24   Ms. Fragale where she was undressed.

25        Q.    I see.  Are you saying that John Fiedler shared
```

Page 85

RYAN MCCARTNEY                                    10/3/2025

1    that picture with the executive team?

2        A.    I don't know how it was shared.

3        Q.    I understand now.  You're saying Jake Nix showed

4    you this picture that is your understanding that he obtained

5    from John Fiedler?

6        A.    That's correct.

7        Q.    And when was this?

8        A.    This was earlier this year I would say March, April

9    time frame.

10       Q.    Twenty twenty-five?

11       A.    Twenty twenty-five.

12       Q.    At this point you had met Ashley Fragale, right?

13       A.    Correct.

14       Q.    And would you consider her friends with you?

15       A.    Yeah.  Friendly.

16       Q.    Was it your understanding that Ms. Fragale gave

17   permission to share that picture with anybody else?

18            MR. LEE:  Objection.  Calls for speculation.

19            THE WITNESS:  I don't know.

20   BY MR. OLSEN:

21       Q.    Based on what you know about Ashley and what you

22   discussed with Ashley, does that refresh your recollection

23   about anything?

24            MR. LEE:  Objection.  Vague.

25            THE WITNESS:  Can you ask that a different way?

Global Access Litigation Services
(949) 220-0449

RYAN MCCARTNEY                    10/3/2025

```
 1        A.    Correct.

 2        Q.    Slightly different question related to it.  How

 3   much time do you think it would take you to find messages

 4   your email account or Ashley's email account on the Cloud?

 5             MR. LEE:  Objection.  Vague.  Calls for

 6   speculation.

 7             THE WITNESS:  If I was logged into my RISC Point

 8   email which I assume has since been deactivated, it would

 9   take less than a minute to put Ashley's name in the search

10   bar and pull up the emails.

11             MR. OLSEN:  Okay.  Let me go off the record real

12   quick.  Look at my notes and then we'll come on back to the

13   record to determine how we're going to move forward.

14             THE VIDEOGRAPHER:  We are going off the record at

15   1:55 p.m.

16             (Recess taken.)

17             THE VIDEOGRAPHER:  We are going back on the record.

18   at 1:59 p.m.

19             MR. OLSEN:  We're back on the record.  It is 1:59

20   p.m. on the West Coast.  The deponent and multiple people,

21   representatives, in the room with the deponent are in

22   Cleveland on the Eastern time zone, if I'm correct.  And we

23   made an agreement to stop at 5 o'clock Easter time.  And so,

24   for that reason, we're going to adjourn this deposition and

25   we reschedule with the remaining time that we have left for
```

Global Access Litigation Services
(949) 220-0449

1    another day.  And we'll work with the witness's counsel to

2    find that date.

3              Anything else, Mr. Lee?

4              MR. LEE:  Not to split hairs.  But I think the word

5    is "suspend" not adjourn.  This will be continued.

6    Obviously, I've got my questions.  We will ask to continue

7    the deposition another day after all counsel confer on the

8    on a date.

9              MR. OLSEN:  Wonderful.  It is so suspended.

10             We can go off the record.

11             THE VIDEOGRAPHER:  Okay.  And, Mr. Olsen, do you

12   want the video synchronized with the reporter's transcript

13   or do you want to wait until the second volume?

14             MR. OLSEN:  Yeah.  If I can reserve my right to

15   wait, it might be easier to do it all at once.  If you have

16   to make a decision right now.

17             THE VIDEOGRAPHER:  You can reserve that right after

18   the second.  We'll follow-up after the second volume.

19             MR. OLSEN:  Okay.

20             THE VIDEOGRAPHER:  All right.  And any counsel

21   would like to order video or wait until after the second

22   volume?

23             MR. LEE:  Not at this time.  Thank you.

24             THE VIDEOGRAPHER:  Okay.  Virginia, do you want

25   transcript orders on the record?

RYAN MCCARTNEY                          10/3/2025

```
1              THE REPORTER:  Yes, please.  Anybody want a
2    transcript?
3              MR. OLSEN:  Other than me, I presume?
4              THE REPORTER:  Correct.
5              MR. LEE:  Okay.  Yeah, if Mr. Olsen is, then I
6    guess I will, too.  This is Jeff Lee at Gordon Rees.
7              THE VIDEOGRAPHER:  This suspends the remote video
8    deposition of Ryan McCartney.  The time is 2:02 p.m.  We are
9    now off the record.
10
11      (The proceedings were concluded at 2:02 p.m. Pacific.)
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```

Global Access Litigation Services
(949) 220-0449

RYAN MCCARTNEY                    10/3/2025

1

2

3

4

5          I have read the foregoing deposition transcript and

6     by signing hereafter, subject to any changes I have made,

7     approve same.

8

9     Dated_____.

10

11

12                         _____

13                              RYAN MCCARTNEY

14

15

16

17

18

19

20

21

22

23

24

25

Global Access Litigation Services
(949) 220-0449

RYAN MCCARTNEY                    10/3/2025

```
 1                  CERTIFICATE OF REPORTER

 2          I, the undersigned, a Certified Shorthand Reporter,

 3   licensed by the State of California, being empowered to

 4   administer oaths and affirmations remotely pursuant to

 5   Section 2093(b) of the Code of Civil Procedure, do hereby

 6   certify:

 7          That the foregoing proceedings were taken remotely

 8   before me at the time and place herein set forth; that any

 9   witness in the foregoing proceedings, prior to testifying,

10   were placed under oath; that a verbatim record of the

11   proceedings was made by me using machine shorthand which was

12   thereafter transcribed under my direction; further, that the

13   foregoing is an accurate transcription thereof.

14          I further certify that I am neither financially

15   interested in the action nor a relative or employee of any

16   attorney or any of the parties.

17          Further, that if the foregoing pertains to the

18   original transcript of the deposition in the case, before

19   completion of the proceedings, review of the transcript [ X ]

20   was [  ] was not requested.

21          IN WITNESS WHEREOF, I have this date subscribed my

22   name.

23   Dated: October 8th, 2025

24          _____Virginia Perez_____

25                  VIRGINIA PEREZ, CSR 11433
```

Page 142

## PROOF OF SERVICE

I am an active member of the State Bar of California.  I am not a party to the within action.  My business address is 440 N. Barranca Ave. PMB 9496, Covina, CA 91723.  On November 11, 2025, I served copies of the within documents described as:

**DECLARATION OF RUBEN ESCALANTE IN SUPPORT OF PLAINTIFF'S OPPOSITION TO *EX PARTE* APPLICATION FOR LEAVE TO WITHDRAW AS COUNSEL OF RECORD FOR DEFENDANT RISC POINT ADVISORY GROUP LLC AND TO CONTINUE ALL RELATED DISCOVERY AND TRIAL DATES**

on the interested parties in this action as follows:

### See attached Service List

[x]      BY ELECTRONIC/EMAIL - I caused the above document to be delivered to the office of the addressee via electronic e-mail. Said document was transmitted to the email address of that office which is listed on the Service List. I did not receive, within a reasonable after the transmission, any indication that the transmission was not successful.

I certify the foregoing is true and correct.  Executed on November 11, 2025.

_____
Ruben Escalante

-3-

**DECLARATION OF RUBEN ESCALANTE**

1  GEOFFREY LEE (SBN:234024)
2  glee@grsm.com
   ANAFRANCESCA COMUNALE (SBN: 323257)
3  acomunale@grsm.com
   GORDON REES SCULLY MANSUKHANI, LLP
4  101 West Broadway, Suite 2000
5  San Diego, CA 92101
   Telephone: (619) 230-7418
6  Facsimile: (619) 696-7124
7
   Attorneys for Defendants
8  RISC POINT ASSURANCE, LTD; RISC POINT HOLDINGS, INC.; JACOB
9  NIX
10
   Neda N Dal Cielo
11 Jackson Lewis P.C.
12 160 West Santa Clara Street Suite 400
   San Jose, CA 95113
13 408-579-0404
14 Fax: 408-454-0290
   Email: neda.dalcielo@jacksonlewis.com
15
16 Attorneys for Defendant
   RISC POINT ADVISORY GROUP LLC
17
18
19
20
21
22
23
24
25
26
27
28

**DECLARATION OF RUBEN ESCALANTE**