1  Ruben D. Escalante (Cal. Bar No. 244596)
2  Robert A. Escalante (Cal. Bar No. 270629)
   ACLIENT PC
3  440 N Barranca Ave PMB 9496
   Covina, California 91723
4  Telephone: (310) 431-9687
5  Email: ruben@aclientpc.com

6  Attorneys for Plaintiff
7  ASHLEY FRAGALE

8  [ADDITIONAL COUNSEL LISTED ON
9  FOLLOWING PAGE]

10              **UNITED STATES DISTRICT COURT**

11             **CENTRAL DISTRICT OF CALIFORNIA**

12

13

14  ASHLEY FRAGALE,                    )   Case No.: 8:25-cv-00994 JWH (ADSx)
                                       )
15                    Plaintiffs,      )   **[DISCOVERY DOCUMENT:**
                                       )   **REFERRED TO MAGISTRATE**
16        vs.                          )   **JUDGE AUTUMN D. SPAETH]**
                                       )
17  RISC POINT ADVISORY GROUP          )   **JOINT STIPULATION REGARDING**
18  LLC; RISC POINT ASSURANCE,         )   **PLAINTIFF'S MOTION TO COMPEL**
    LTD; RISC POINT HOLDINGS, INC.;    )   **COMPLIANCE AND PRODUCTION**
19  JACOB NIX; and DOES 1 through 10,  )   **OF DOCUMENTS**
20  inclusive,                         )
                                       )   Date:       December 3, 2025
21                    Defendants.      )   Time:       10:00 a.m.
                                       )   Location:   Courtroom 6B
22                                     )
                                       )   Discovery Cut-off Date: December 5,
23                                     )   2025
                                       )   PreTrial Conference Date: March 27,
24                                     )   2026
                                       )
25                                     )
                                       )   Trial Date: April 13, 2026
26  _____      )

27

28

     **JOINT STIPULATION RE PLAINTIFF'S MOTION TO COMPEL COMPLIANCE AND**

     **PRODUCTION OF DOCUMENTS RULE 37-2.1**

Jeff T. Olsen (Cal. Bar No. 283249)
OLSEN WORKPLACE SOLUTIONS PC
18012 Cowan, Ste 200
Irvine, California 92614
Telephone: (949) 232-0455
Email: jeff@olsenws.com

Attorneys for Plaintiff
ASHLEY FRAGALE

Neda Dal Cielo
Neda.DalCielo@jacksonlewis.com
Jackson Lewis P.C.
160 W Santa Clara St., Suite 400
San Jose, CA 95113
(408) 579 0404
Attorneys for Defendant
RISC POINT ADVISORY GROUP LLC


L. GEOFFREY LEE (SBN:234024)
glee@grsm.com
ANAFRANCESCA COMUNALE (SBN: 323257)
acomunale@grsm.com
GORDON REES SCULLY MANSUKHANI, LLP
101 West Broadway, Suite 2000
San Diego, CA 92101
Telephone: (619) 230-7418
Facsimile: (619) 696-7124

Attorneys for Defendants
RISC POINT ASSURANCE, LTD;
RISC POINT HOLDINGS, INC.;
JACOB NIX

-1-

**JOINT STIPULATION RE PLAINTIFF'S MOTION TO COMPEL COMPLIANCE AND PRODUCTION OF DOCUMENTS RULE 37-2.1**

# **Table of Contents**

I.    Introduction                                                                                   3

   A.    Plaintiff's Introduction                                                              3

   B.    Defendants' Introduction                                                           6

II.   Issues in Dispute                                                                          7

   A.    Nix's Responses to Request for Production                               7

   B.    Defendants' Non-ESI Production                                            10

      1.    Plaintiff's Contentions                                                 10

   C.    Defendants' ESI Discovery                                                  24

      1.    Plaintiff's Contentions                                                 24

   D.    Defendant Risc Point Advisory Group LLC's Contentions/Memorandum of Points and
Authorities                                                                                         87

   E.    Defendant Nix's Contentions/Memorandum of Points and Authorities        89

**JOINT STIPULATION RE PLAINTIFF'S MOTION TO COMPEL COMPLIANCE AND
PRODUCTION OF DOCUMENTS RULE 37-2.1**

TO THE HONORABLE COURT, ALL PARTIES, AND THEIR ATTORNEYS OF RECORD:

Counsel for Plaintiff Ashley Fragale ("Plaintiff") and Defendants RISC POINT ADVISORY GROUP LLC and JACOB NIX ("Defendants") have met and conferred regarding Plaintiff's position that Defendants have failed to produce their complete document production, including their non-ESI and ESI document production, in a timely manner. Plaintiff seeks an order (1) compelling Defendants to complete their production within one (1) day of the Court's order or, alternatively, within such time as the Court deems appropriate, consistent with the Court's Scheduling Order; (2) compelling Defendants to declare under penalty of perjury that they have completed their production and setting forth the steps they took to complete the same; and (3) compelling Defendants to authenticate their production.

Counsel for Plaintiff and Defendant jointly provide the following Joint Stipulation, including attaching as **Exhibit A**, a copy of the Scheduling Order, as required by CD CA Rule 37-2.1, **Exhibit B**, Plaintiff's supporting evidence, and **Exhibit C**, Defendants' supporting evidence, if any.

I.    **Introduction**

   A.    **Plaintiff's Introduction**

Plaintiff respectfully moves this Court for an order compelling Defendants to produce their complete document production immediately, including their non-ESI and ESI document production.[1] It is possible for Defendants to comply with such an order, given all non-ESI documents are readily available and in their possession, custody, and control, and the ESI documents are already compiled and can be immediately

---

[1]    Plaintiff previously brought a motion to compel regarding Defendants' production, which was summarily denied on October 22, 2025, due to formatting that was not in compliance with Local Rule 37. This Motion corrects the formatting, consistent with the Court's comments at the hearing.

**JOINT STIPULATION RE PLAINTIFF'S MOTION TO COMPEL COMPLIANCE AND PRODUCTION OF DOCUMENTS RULE 37-2.1**

produced pursuant to a "claw back" procedure. This short time period is due to the discovery cutoff and necessitated by Defendants' dilatory conduct. This also justifies the need for an order compelling Defendants to declare their compliance efforts and authenticating their production; otherwise, Plaintiff has no opportunity to conduct follow up discovery to obtain such information on its own.

The heart of this Motion is Plaintiff's right to obtain basic discovery of documents that support her claims against Defendants. Plaintiff's claims are straight forward: During her employment with Defendant RISC Point Advisory Group LLP ("RISC Point") and other related entities, Plaintiff was subjected to sexual harassment by Defendant Jacob Nix ("Nix"), the Founder and then Chief Executive Officer of RISC Point; and after Plaintiff formally complained, she was retaliated against by Defendants and ultimately forced to resign. (Dkt. 1-1 ¶¶ 18-23.)

Based on these allegations Plaintiff's Complaint alleges causes of action for sexual harassment, retaliation, and failure to prevent the same in violation of the Fair Employment and Housing Act, and whistleblower retaliation in violation the Labor Code. (Dkt. 1-1, p. 2.) Plaintiff recently filed a Motion for Leave to Amend to add facts supporting her constructive termination allegations, including clarifying that she has now been constructively terminated; bolstering her harassment claim; setting forth allegations of witness tampering; and a new claim for Unlawful Disclosure of an Intimate Image in Violation of the Violence Against Women Act Reauthorization (15 U.S.C. § 6851(b)(1)(A)). (Dkt. 49-2, pp. 10-13.) This new claim is based on allegations that, without her knowledge or consent, a third party took an intimate photograph of Plaintiff and Nix wrongfully obtained and disclosed that photograph to other employees. (Dkt. 49-2, pp. 21-23.)

Plaintiff has diligently prosecuted her lawsuit: Plaintiff filed her lawsuit in April 2025, and Defendants removed it to federal court in May 2025. (Dkt. 1, 1-1.) Plaintiff immediately conducted the early meeting of counsel and propounded

**JOINT STIPULATION RE PLAINTIFF'S MOTION TO COMPEL COMPLIANCE AND PRODUCTION OF DOCUMENTS RULE 37-2.1**

written discovery on May 29, 2025, including the Requests for Production ("RFP") at issue in this Motion. Although Defendants have had over five months to comply with their discovery obligations and complete their production, they have failed to do so. Thus, given the impending discovery cutoff, Plaintiff had no choice but to bring this Motion.

Unfortunately, that is not the end of Defendants' failure to comply with their discovery obligations: For example, Plaintiff recently discovered Defendants have not properly preserved their Signal messages regarding Plaintiff after misrepresenting to Plaintiff that they did not use Signal; Nix threatened to kill a witness in connection with that witness' deposition; Defendants represented to the Court that they produced everything they had regarding their investigator's file but they had key, unproduced documents in their possession the entire time; and Defendants continue to fail to verify that they have completed their non-ESI production, failed to complete their ESI production, and are trying to take a narrow interpretation of the agreed upon ESI protocol.

Defendants' conduct here requires answers to ensure Defendants are complying with their discovery obligations and protect the rule of law. Accordingly, Plaintiff respectfully requests the Court demand those answers from Defendants and their counsel and require immediate compliance and production.

The reality is that Defendants have demonstrated they will not timely comply with their discovery obligations unless the Court compels them to do so. Notably, even where the Court has compelled Defendants to produce discovery, Defendants have pushed the limits of compliance. For example, at an Informal Discovery Conference ("IDC"), the Court ordered Defendants to produce Plaintiff's entire email account, ask their investigator for his file, and produce whatever their investigator provides. Although Defendants produced what appears to be many of Plaintiff's emails, they did so in form of tens-of-thousands of separate PDF files that contained individual pages with incomplete data (instead of Plaintiff's .pst file or in native form, by families, and with all appropriate fields of information). Similarly, although Defendants apparently reached out to their investigator

and produced less than 100 pages of documents and five video files that he provided, subsequently, in advance of his subpoenaed deposition, their investigator provided access to Plaintiff to the same video files and produced over 500 pages of documents (which included unproduced emails between Defendants, their investigator, and their *counsel*).

Plaintiff has already been prejudiced by Defendants' dilatory conduct, including the inability to take depositions of key executives without those documents. Accordingly, based on the foregoing, and to avoid further gamesmanship and enforce her right to discovery, Plaintiff respectfully requests the Court order compelling Defendants to complete their document production immediately, to explain their efforts to comply, and to authenticate their production.

Although sanctions are more than justified here, as a professional courtesy, Plaintiff does not seek sanctions at this time.

**B.  Defendants' Introduction**

Plaintiff's motion was previously denied for failure to comply with Local Rule 37.  The Magistrate Judge remarked at the October 22, 2025 hearing that Plaintiff scattered the issues in an incomprehensible fashion, not allowing for an orderly ruling.  Plaintiff's renewed motion is even more incomprehensible and disorderly.  It should therefore be denied again for the same reason.

Compounding the chaos that Plaintiff presents, Plaintiff has now added ***new*** issues and resurrected previously resolved ones, leading to the motion overall being three (3) times longer than the original motion.  Worse yet, Plaintiff's counsel did not even meet and confer on many of the newly added issues.  The Court denied Plaintiff's prior motion without prejudice, allowing Plaintiff to re-file the same motion with proper formatting and clarity.  Plaintiff has squandered that second chance by presenting the instant jumbled tome.

Plaintiff provides no authority for her supposition that a responding party is required to verify under oath that it has thoroughly and completely produced every

-6-

**JOINT STIPULATION RE PLAINTIFF'S MOTION TO COMPEL COMPLIANCE AND PRODUCTION OF DOCUMENTS RULE 37-2.1**

document.  Because Plaintiff's arguments to the Court are unsupported and verging on the impossible – such as producing 100,000 documents in one day – Plaintiff's motion should be summarily denied again.

## II.    Issues in Dispute

### A.    Nix's Responses to Request for Production

Generally, Federal Rule of Civil Procedure 37(b)(1) provides that "…a party may move for an order compelling disclosure or discovery."  In particular, Rule 37(a)(3)(B)(iv) states "A party seeking discovery may move for an order compelling an answer, designation, production or inspection.  This motion may be made if:  […] (iv) a party fails to produce documents or fails to respond that inspection will be permitted – or fails to permit inspection – as requested under Rule 34."

Defendants have had since May 2025 to comply with their discovery obligations, which is when Plaintiff first served the subject requests. If Defendants anticipated any obstacles to full, complete, and timely compliance, they should have immediately met and conferred and should not have waited until the deadline to respond, made boilerplate objections, and forced Plaintiff to engage in a protracted meet and confer.

Regarding their Non-ESI production, Defendants have taken the position that the ESI protocol controls the scope of some of their non-ESI production and Plaintiff did not meet and confer regarding their non-ESI production. This contention lacks merit. First, Plaintiff made it clear in her August 6, 2025, letter that only certain requests would be subject to the ESI protocol. (Dkt. No. 33, pp. 71-78.) Second, Defendants' responses equally make clear that only certain requests would be subject to the ESI protocol by making that distinction in their responses. Third, the nature of the non-ESI requests are such that Defendants could easily comply with them by producing readily available documents without the

**JOINT STIPULATION RE PLAINTIFF'S MOTION TO COMPEL COMPLIANCE AND PRODUCTION OF DOCUMENTS RULE 37-2.1**

need for an ESI protocol (e.g., investigator files and communications with investigators). Finally, Plaintiff did meet and confer regarding Defendants' non-ESI production. (Escalante Decl. ¶ 2, Exh. A.)

For some unexplained reason, even though Plaintiff met and conferred regarding NIX's responses, Plaintiff called out that NIX failed to supplement them in her prior motion to compel, and RISC Point supplemented its response to the identical requests, NIX has failed to supplement his responses, forcing Plaintiff to compel a response and production:

- **REQUEST FOR PRODUCTION TO NIX NO. 8:** Any and all DOCUMENTS RELATED TO or that support YOUR[2] affirmative defenses. **RESPONSE TO REQUEST NO. 8:** Responding Party objects that the request is not complete in and of itself without reference to another document. Responding Party objects that the request calls for a legal conclusion. Responding Party objects that the request appears to be an improper "contention type" request for documents. FRCP 33(a)(2); *Lucero v. Valdez*, 240 F.R.D. 591, 594 (D.N.M. 2007). As such, Responding Party objects that the request is not reasonably particularized in that it describes documents in relation to allegations made in the underlying complaint in this action, which is not how Responding Party maintains documents in the usual course of business.

---

[2]    As defined in the requests, as it relates to NIX, "The terms 'YOU' or 'YOUR' shall mean and refer to JACOB NIX and any individual or entity acting on its behalf or pursuant to its direction or request." "The terms 'DOCUMENT(S)' and/or 'DOCUMENTATION' shall have the broadest possible meaning and encompass, without limitation, any tangible item discoverable under Federal Rule of Civil Procedure, Rule 34, all writings, drawings, graphs, charts, photographs, recordings, and other data compilations from which information can be obtained, translated, if necessary, by you through detection devices into reasonably usable form." "The terms 'RELATE TO' 'RELATED TO' or 'RELATING TO' shall mean referring to, reflecting, stating, describing, recording, contradicting, embodying, memorializing, mentioning, studying, analyzing, discussing, commenting on, specifying, listing, summarizing, reviewing or identifying."

**JOINT STIPULATION RE PLAINTIFF'S MOTION TO COMPEL COMPLIANCE AND PRODUCTION OF DOCUMENTS RULE 37-2.1**

NIX's objections lack merit. The fact that the request refers to affirmative defenses made by NIX does not excuse providing a response; NIX is independently aware of his defenses and, thus, knows the documents he contends support them. The fact that they request is a "contention type" request does not justify NIX's failure to respond, particularly because such requests are fully contemplated by the Rules. *See Superior Communications v. Earhugger, Inc.*, 257 F.R.D. 215, 219 (C.D. Cal. 2009) (stating, "[a]s an initial matter, none of defendant's objections to category (1) document requests (Request nos. 1–6, 11–15 and 38–39) are well-taken since these requests seek only documents supporting defendant's answer and affirmative defenses, and such document requests complement Rule 33(a)(2), which allows a party to propound contention interrogatories."). It is similarly no excuse that NIX does not maintain his documents in a particular fashion, given this request simply asks NIX to produce documents that *support his defenses*; he knows which documents support his defenses, and must produce them. Accordingly, the Court should require NIX to provide a supplemental response, and produce responsive documents.

- **REQUEST FOR PRODUCTION TO RISC POINT NO. 9:** Any and all DOCUMENTS that constitute or reflect any file YOU maintain regarding PLAINTIFF. **RESPONSE TO REQUEST NO. 9:** Responding Party objects that the request is vague and overbroad. The overbreadth invades the attorney-work product and attorney-client privileges. Subject to the foregoing objections, Responding Party will produce the personnel and John Hawkins complaint investigation file on Plaintiff.

NIX's objections lack merit and limited agreement to comply lacks merit. There is nothing vague or overbroad about this request; simply, if NIX maintains a file regarding Plaintiff in hard copy or electronic form, then Plaintiff seeks its production. If any responsive file contains privileged or work product documents, then NIX certainly could have provided a privilege log or justified the privilege; however, NIX has failed to do so. There is also no justification for limiting the response to simply Plaintiff's personnel file or

**JOINT STIPULATION RE PLAINTIFF'S MOTION TO COMPEL COMPLIANCE AND PRODUCTION OF DOCUMENTS RULE 37-2.1**

the investigator's file; indeed, this request would seek a performance file, a manager's file, NIX's or the company's own internal investigation file, a file containing naked photographs of Plaintiff, a file containing evidence compiled against Plaintiff, and any other file NIX maintains. He knows which files exist. Accordingly, the Court should require NIX to provide a supplemental response, and produce responsive documents.

**B.      Defendants' Non-ESI Production**

**1.      Plaintiff's Contentions**

Generally, Federal Rule of Civil Procedure 37(b)(1) provides that "…a party may move for an order compelling disclosure or discovery." In particular, Rule 37(a)(3)(B)(iv) states "A party seeking discovery may move for an order compelling an answer, designation, production or inspection. This motion may be made if: […] (iv) a party fails to produce documents or fails to respond that inspection will be permitted – or fails to permit inspection – as requested under Rule 34."

Defendants have had since May 2025 to comply with their discovery obligations, which is when Plaintiff first served the subject requests. If Defendants anticipated any obstacles to full, complete, and timely compliance, they should have immediately met and conferred and should not have waited until the deadline to respond, made boilerplate objections, and forced Plaintiff to engage in a protracted meet and confer.

Regarding their Non-ESI production, Defendants have taken the position that the ESI protocol controls the scope of some of their non-ESI production and Plaintiff did not meet and confer regarding their non-ESI production. This contention lacks merit. First, Plaintiff made it clear in her August 6, 2025, letter that only certain requests would be subject to the ESI protocol. (Dkt. No. 33, pp. 71-78.) Second, Defendants' responses equally make clear that only certain requests would be subject to the ESI protocol by making that distinction in their

**JOINT STIPULATION RE PLAINTIFF'S MOTION TO COMPEL COMPLIANCE AND PRODUCTION OF DOCUMENTS RULE 37-2.1**

responses. Third, the nature of the non-ESI requests are such that Defendants could easily comply with them by producing readily available documents without the need for an ESI protocol (e.g., investigator files and communications with investigators). Finally, Plaintiff did meet and confer regarding Defendants' non-ESI production. (Escalante Decl. ¶ 2, Exh. A.)

As far as the production itself, Defendants have failed to adequately verify they have completed it, consistent with their agreements to comply. Defendants have thoroughly met and conferred to try to obtain adequate assurances and verification that Defendants have completed their production, but to no avail. Plaintiff has previously offered to resolve this dispute by simply accepting representations that the production has been completed. Most recently, Plaintiff has offered to resolve this dispute by accepting a declaration from Defendants setting forth the efforts made to comply and that their production is complete. However, based on the fact that Defendants have withheld readily available documents in their possession, custody, and control, Plaintiff submits a Court order is necessary to ensure Defendants comply with their discovery obligations.

Indeed, at an IDC, Plaintiff's counsel requested that Defense counsel make "clear representations" about agency and the ability to ask for records from an investigator. In response, Defense counsel stated, ". . . I'm not in a position to make any representation on the record. This isn't my deposition." Given recent evidence obtained that reflects additional documents have not been produced or properly preserved, to the extent Defendants take the position that they have completed their non-ESI production, Plaintiff requests the Court require Defendants or their counsel to verify this representation and the steps taken to preserve and produce responsive documents. (Escalante Decl. ¶ 3, Exh. F.) Also, given the impending discovery cutoff and Plaintiff's inability to conduct any follow up discovery (e.g., authenticating the production and ensuring

**JOINT STIPULATION RE PLAINTIFF'S MOTION TO COMPEL COMPLIANCE AND PRODUCTION OF DOCUMENTS RULE 37-2.1**

completeness), Plaintiff requests the Court compel Defendants to submit a declaration setting forth their efforts to comply and authenticating their production.

The sufficiency of the responses to the discovery at issue is not in dispute; only Defendants' failure to comply is in dispute. Accordingly, the foregoing arguments are generally applicable to all of the below responses. Consistent with the Court's comments at the hearing, Plaintiff breaks up her specific contentions by discovery request:

- **REQUEST FOR PRODUCTION TO RISC POINT NO. 11:** Any and all DOCUMENTS RELATED TO or that support YOUR affirmative defenses.[3] **RESPONSE TO REQUEST:** Responding Party objects that the request is not complete in and of itself without reference to another document. Responding Party objects that the request calls for a legal conclusion. Responding Party objects that the request appears to be an improper "contention type" request for documents. FRCP 33(a)(2); *Lucero v. Valdez*, 240 F.R.D. 591, 594 (D.N.M. 2007). As such, Responding Party objects that the request is not reasonably particularized in that it describes documents in relation to allegations made in the underlying complaint in this action, which is not how Responding Party maintains documents in the usual course of business. **SUPPLEMENTAL RESPONSE TO REQUEST:** Subject to and incorporating all prior objections and responses, Responding Party will comply.

RISC Point has agreed to comply with this request and, thus, must do so. To date, RISC Point has not verified that it has completed its production regarding these documents.

RISC Point asserts as an affirmative defense that it had procedures in place to promptly correct alleged incidence of harassment and retaliation, and that Defendants exercised "reasonable care" to promptly correct any such conduct. (Dkt. 13-4.) One of the ways it contends it met this standard is through the workplace investigation conducted by John Hawkins. Although in its previous opposition it made *undeclared* representations to

---

[3]   As defined in the requests, as to RISC Point, "The terms 'YOU' or 'YOUR' shall mean and refer to RISC POINT ADVISORY GROUP LLC and any individual or entity acting on its behalf or pursuant to its direction or request."

**JOINT STIPULATION RE PLAINTIFF'S MOTION TO COMPEL COMPLIANCE AND PRODUCTION OF DOCUMENTS RULE 37-2.1**

the Court that it completed its production (i.e., the documents "have already been produced or cannot be produced") (Dkt. 22, p. 29, lns. 19-20), the supporting declaration does not support this (i.e., it merely states that Defendants produced "substantial documents," not that they completed their production) (Dkt. 33, p. 67 ¶ 23).

Moreover, based on subsequently obtained documents from third parties (including Defendants' own investigator), this representation was not accurate. For example, Defendants' investigator produced documents reflecting correspondence between him, Defendants, and *their counsel*, regarding the investigation into Plaintiff's complaint. Such documents were necessarily in the possession, custody, and control of Defendants *and were readily available to be produced by Defendants' counsel*; they were *not* produced, notwithstanding the written and verbal representations to the Court that all such documents had been produced.

The reason for withholding these documents was clear. For example, among the documents withheld was an email that reflected Defendants' counsel (from the same firm that later become counsel of record) "retained" the investigator to conduct an investigation into Plaintiff's complaint and essentially directed the investigator to contact Plaintiff, without informing the investigator Plaintiff was represented by counsel already and even though Defendants' counsel knew she was represented. The investigator subsequently reached out to Plaintiff directly to conduct an investigation without coordination with or even notifying counsel; because Defendants' counsel knew that Plaintiff was represented and used its agent to contact Plaintiff, this is a violation of California Rule of Professional Conduct, Rule 4.2 and comment [3], Communication with a Represented Person (stating, "[t]he prohibition against communicating "indirectly" with a person* represented by counsel in paragraph (a) is intended to address situations where a lawyer seeks to communicate with a represented person* through an intermediary such as an agent, investigator or the lawyer's client."). Notably, to date, RISC Point still has not verified it

**JOINT STIPULATION RE PLAINTIFF'S MOTION TO COMPEL COMPLIANCE AND PRODUCTION OF DOCUMENTS RULE 37-2.1**

has completed its production. Accordingly, Plaintiff requests a Court order compelling compliance.

- **REQUEST FOR PRODUCTION TO RISC POINT NO. 12:** Any and all DOCUMENTS that constitute or reflect any file YOU maintain regarding PLAINTIFF. **RESPONSE TO REQUEST:** Responding Party objects that the request is vague and overbroad. The overbreadth invades the attorney-work product and attorney-client privileges. Subject to the foregoing objections, Responding Party will produce the personnel and John Hawkins complaint investigation file on Plaintiff. **SUPPLEMENTAL RESPONSE TO REQUEST:** Subject to and incorporating all prior objections and responses, Responding Party will comply.

Although RISC Point initially tried to limit its response, following a meet and confer RISC Point agreed to comply with this request and, thus, must do so. To date, RISC Point has not verified that it has completed its production regarding these documents.

Although in its previous opposition it made *undeclared* representations to the Court that it completed its production (i.e., the documents "have already been produced or cannot be produced") (Dkt. 22, p. 29, lns. 19-20), the supporting declaration does not support this (i.e., it merely states that Defendants produced "substantial documents," not that they completed their production) (Dkt. 33, p. 67 ¶ 24); moreover, based on subsequently obtained documents from third parties, this representation was not accurate. For example, based on testimony provided by Ryan McCartney, a former executive and current owner of RISC Point, it appears Defendants maintained a file regarding its own investigation (apart from any file maintained by its investigator). Defendants' investigator also produced documents reflecting correspondence between him, Defendants, and *their counsel*, regarding the investigation into Plaintiff's complaint. Such documents were necessarily in the possession, custody, and control of Defendants *and were readily available to be produced by Defendants' counsel*; they were *not* produced.

-14-

The reason for withholding these documents was clear. For example, among the documents withheld was an email that reflected Defendants' counsel (from the same firm that later become counsel of record) "retained" the investigator to conduct an investigation into Plaintiff's complaint and essentially directed the investigator to contact Plaintiff, without informing the investigator Plaintiff was represented by counsel already and even though Defendants' counsel knew she was represented. The investigator subsequently reached out to Plaintiff directly to conduct an investigation without coordination with or even notifying counsel; because Defendants' counsel knew that Plaintiff was represented and used its agent to contact Plaintiff, this is a violation of California Rule of Professional Conduct, Rule 4.2 and comment [3], Communication with a Represented Person (stating, "[t]he prohibition against communicating "indirectly" with a person* represented by counsel in paragraph (a) is intended to address situations where a lawyer seeks to communicate with a represented person* through an intermediary such as an agent, investigator or the lawyer's client.") Notably, to date, Defendants still have not verified they have completed their production. Accordingly, Plaintiff requests a Court order compelling compliance.

- **REQUEST FOR PRODUCTION TO NIX NO. 12:** Any and all DOCUMENTS or COMMUNICATIONS that reflect your use of the following words with any employee, owner, director, officer, agent, or managing agent of any defendant in this action: cunt and/or cunty.[4]

---

[4]  As defined in the request for production: "'COMMUNICATION(S)' shall include any and all inquiries, discussions, conferences, conversations, negotiations, agreements, meetings, interviews, telephone conversations, notices, letters, correspondence, notes, telegrams, facsimiles, electronic mail (e.g. *emails*) (including deleted electronic mail), slack messages (including deleted Slack messages and group Slack messages), iMessages (including deleted iMessages and group iMessages), text messages (including deleted text messages and group text messages), messages on any social media platform (including, without limitation, Facebook, Snapchat, and Instagram), screenshots of iMessages, text messages, and/or social media messages, memoranda, or other forms of communications, including but not limited to both oral and written communications."

**JOINT STIPULATION RE PLAINTIFF'S MOTION TO COMPEL COMPLIANCE AND PRODUCTION OF DOCUMENTS RULE 37-2.1**

**RESPONSE TO REQUEST:** Responding Party objects that the term "agent" is vague and thus overbroad. Responding Party objects that the word "your" in all lower-case letters is ambiguous when compared to the word "YOUR" in all capital letters used throughout. Responding Party objects that search of such ESI would be unduly burdensome and prohibitively costly. Responding Party objects to the extent the request invades rights of privacy and privilege. Subject to the foregoing General Objections and specific objections, and without waiving them, and as best Responding Party can understand this request, Responding Party states that it will produce a narrower set of e-mails following efforts to meet and confer and collaborate on specific search criteria. **SUPPLEMENTAL RESPONSE TO REQUEST:** Subject to and incorporating all prior objections and responses, Responding Party will comply.

NIX agreed to comply with this request and, thus, must do so. To date, NIX has not verified that it has completed its production regarding these documents.

Defendants have produced messages that reflect Nix's use of the "c-word" multiple times in Slack messages; however, the "hit report" of Nix's emails reflect two "hits" of this word and its variants. Thus, responsive documents are both readily identifiable and available for production. However, to date, NIX has not verified he completed his production. Accordingly, Plaintiff requests a Court order compelling compliance.

- **REQUEST FOR PRODUCTION TO RISC POINT NO. 19 / TO NIX NO. 16:** Any and all DOCUMENTS RELATED TO any investigation conducted in response to any complaint made by PLAINTIFF, including but not limited to any investigation initiated, conducted, or contemplated using John Hawkins and/or Aisha Adams. **RESPONSE TO REQUEST:** Responding Party objects that the request as phrased is overbroad and thus may invade the attorney-work product and attorney-client privileges. Responding Party objects that the term "contemplated" is vague and calls for speculation. Responding Party objects to the extent the request assumes that Aisha Adams performance any work on the

-16-

investigation. Subject to the foregoing objections, Responding Party will produce all communications to and from John Hawkins. **SUPPLEMENTAL RESPONSE TO REQUEST:** Subject to and incorporating all prior objections and responses, Responding Party will produce all communications regarding the contemplated use of Aisha Adams. **FURTHER SUPPLEMENTAL RESPONSE TO REQUEST:** Subject to and incorporating all prior objections and responses, Responding Party will comply.

Although Defendants initially tried to limit their responses, following a meet and confer they agreed to comply with this request and, thus, must do so. To date, Defendants have not verified that they have completed their production regarding these documents.

Although in their previous opposition they made representations to the Court that they completed their production (i.e., the documents "have already been produced or cannot be produced") (Dkt. 22, p. 29, lns. 19-20, p. 67 ¶ 25), based on subsequently obtained documents from third parties (including Defendants' own investigator), this representation was not accurate. For example, Defendants' investigator produced numerous documents reflecting correspondence between him, Defendants, and *their counsel*, regarding the investigation into Plaintiff's complaint. Such documents were necessarily in the possession, custody, and control of Defendants *and were readily available to be produced by Defendants' counsel*; they were *not* produced.

The reason for withholding these documents was clear. For example, among the documents withheld was an email that reflected Defendants' counsel (from the same firm that later become counsel of record) "retained" the investigator to conduct an investigation into Plaintiff's complaint and essentially directed the investigator to contact Plaintiff, without informing the investigator Plaintiff was represented by counsel already and even though Defendants' counsel knew she was represented. The investigator subsequently reached out to Plaintiff directly to conduct an investigation without coordination with or even notifying counsel; because Defendants' counsel knew that Plaintiff was represented

**JOINT STIPULATION RE PLAINTIFF'S MOTION TO COMPEL COMPLIANCE AND PRODUCTION OF DOCUMENTS RULE 37-2.1**

and used its agent to contact Plaintiff, this is a violation of California Rule of Professional

Conduct, Rule 4.2 and comment [3], Communication with a Represented Person (stating,

"[t]he prohibition against communicating "indirectly" with a person* represented by

counsel in paragraph (a) is intended to address situations where a lawyer seeks to

communicate with a represented person* through an intermediary such as an agent,

investigator or the lawyer's client.") Notably, to date, Defendants still have not verified

they have completed their production. Accordingly, Plaintiff requests a Court order

compelling compliance.

- **REQUEST FOR PRODUCTION TO RISC POINT NO. 20:** Any and all DOCUMENTS reflecting COMMUNICATIONS, including but not limited to any agreement, between YOU and John Hawkins. **RESPONSE TO REQUEST:** Responding Party objects to the extent the request assumes that Jake Nix personally hired John Hawkins. Subject to the foregoing objections, Responding Party will produce all communications to and from John Hawkins.

Defendants agreed to comply with this request and, thus, must do so. To date, Defendants have not verified that they have completed their production regarding these documents.

Although in its previous opposition it made representations to the Court that it completed its production (i.e., the documents "have already been produced or cannot be produced") (Dkt. 22, p. 29, lns. 19-20, p. 67 ¶ 25), based on subsequently obtained documents from third parties (including Defendants' own investigator), this representation was not accurate. For example, Defendants' investigator (John Hawkins) produced numerous documents reflecting correspondence between him, Defendants, and *their counsel*, regarding the investigation into Plaintiff's complaint. Such documents were necessarily in the possession, custody, and control of Defendants *and were readily available to be produced by Defendants' counsel*; they were *not* produced.

**JOINT STIPULATION RE PLAINTIFF'S MOTION TO COMPEL COMPLIANCE AND PRODUCTION OF DOCUMENTS RULE 37-2.1**

1    The reason for withholding these documents was clear. For example, among the

2    documents withheld was an email that reflected Defendants' counsel (from the same firm

3    that later become counsel of record) "retained" the investigator to conduct an investigation

4    into Plaintiff's complaint and essentially directed the investigator to contact Plaintiff,

5    without informing the investigator Plaintiff was represented by counsel already and even

6    though Defendants' counsel knew she was represented. The investigator subsequently

7    reached out to Plaintiff directly to conduct an investigation without coordination with or

8    even notifying counsel; because Defendants' counsel knew that Plaintiff was represented

9    and used its agent to contact Plaintiff, this is a violation of California Rule of Professional

10   Conduct, Rule 4.2 and comment [3], Communication with a Represented Person (stating,

11   "[t]he prohibition against communicating "indirectly" with a person* represented by

12   counsel in paragraph (a) is intended to address situations where a lawyer seeks to

13   communicate with a represented person* through an intermediary such as an agent,

14   investigator or the lawyer's client.") Notably, to date, RISC Point still has not verified it has

15   completed their production. Accordingly, Plaintiff requests a Court order compelling

16   compliance.

17          • **REQUEST FOR PRODUCTION TO RISC POINT NO. 21 / TO NIX NO. 18:** Any and all DOCUMENTS

18          reflecting COMMUNICATIONS, including but not

19          limited to any agreement, between YOU and Aisha.

20          **RESPONSE TO REQUEST:** Responding Party objects to

21          the extent the request assumes that Jake Nix personally

          hired Aisha Adams or that RiscPoint hired Aisha Adams.

22          Subject to the foregoing objections, Responding Party will

          comply.

23          Defendants agreed to comply with this request and, thus, must do so. To date,

24   Defendants have not verified that they have completed their production regarding these

25   documents. Based on Plaintiff's investigation, Adam adamantly tried to correct the

26   deficient investigation that John Hawkins and Defendants were conducting, but

27   Defendants ultimately terminated her from assisting and conducting the investigation.

28

-19-

**JOINT STIPULATION RE PLAINTIFF'S MOTION TO COMPEL COMPLIANCE AND PRODUCTION OF DOCUMENTS RULE 37-2.1**

Given Defendants withheld documents with the other investigator, John Hawkins, Plaintiff requests a Court order compelling compliance to ensure Defendants produce all documents.

- **REQUEST FOR PRODUCTION TO RISC POINT NO. 23 / TO NIX NO. 20:** Please produce any and all DOCUMENTS RELATED TO, referred to in, that support, or were used to prepare YOUR initial disclosures. **RESPONSE TO REQUEST:** Responding Party objects that the request is compound and vague. Responding Party objects that the request calls for attorney-work product. **SUPPLEMENTAL RESPONSE:** Subject to and incorporating all prior objections and responses, Responding Party will comply as to documents "referred to in" the initial disclosures. **FURTHER SUPPLEMENTAL RESPONSE:** Subject to and incorporating all prior objections and responses, Responding Party will comply.

Defendants agreed to comply with this request and, thus, must do so. To date, Defendants have not verified they have completed their production regarding these documents. Here, Defendants' initial disclosures state they "will make available for copying the applicable declaration of insurance information for the insurance agreement under which Rule 26(a)(1)(A)(iv) refers." Defendants initially provided an insurance policy, with an end date of June 6, 2025; however, Plaintiff's employment ended after this date, Plaintiff discovered the basis for her new cause of action and asserted a new claim for wrongful disclosure of intimate images outside of the policy period, and Plaintiff asked for clarification whether a new policy has been implicated. Plaintiff has not received a straight answer. Accordingly, the Court should compel a straight answer the production of any applicable policy.

- **REQUEST FOR PRODUCTION TO RISC POINT NO. 31:** Any and all DOCUMENTS, including internal

-20-

**JOINT STIPULATION RE PLAINTIFF'S MOTION TO COMPEL COMPLIANCE AND PRODUCTION OF DOCUMENTS RULE 37-2.1**

memoranda, which evidence, refer to, or RELATE TO discussions pertaining to terminating or separating PLAINTIFF's employment, including but not limited to any discussions pertaining to potentially offering PLAINTIFF severance. **RESPONSE TO REQUEST NO. 31:** Responding Party objects that the request is vague and overbroad. Given the overbreadth, Responding Party objects to the extent it invades the attorney-client privilege. Subject to the foregoing objections, Responding Party will comply.

RISC Point has agreed to comply with this request and, thus, must do so. To date, RISC Point has not verified that it has completed its production regarding these documents.

Although in its previous opposition it made *undeclared* representations to the Court that it completed its production (i.e., the documents "have already been produced or cannot be produced") (Dkt. 22, p. 29, lns. 19-20), the supporting declarations do not support this (Dkt. 33, pp. 58-59 ¶ 9, 68 ¶ 27). If anything, it reflects that responsive documents actually exist. For example, counsel for Defendants concedes the "hit report" reflect terms that could include responsive documents; Drewyor's declaration reflects no steps have actually been taken to search text messages, Signal messages, or Slack messages outside of the ESI agreement to comply with this request, and his declaration provides no clarity as to whose emails he actually searched.

Notably, to date, RISC Point still has not verified they have completed their production. Accordingly, Plaintiff requests a Court order compelling compliance.

- **REQUEST FOR PRODUCTION TO RISC POINT NO. 32 / TO NIX NO. 24:** Any and all DOCUMENTS, including internal memoranda, which evidence, refer to, or RELATE TO discussions pertaining to engaging or hiring Allison Laurence Bailey. **RESPONSE TO REQUEST:** Responding Party objects that the request is vague and overbroad. Responding Party objects that the request is overbroad as Ms. Bailey was first hired before Plaintiff's hire. Responding Party further objects that the request invades Ms. Bailey's right of privacy.

**JOINT STIPULATION RE PLAINTIFF'S MOTION TO COMPEL COMPLIANCE AND PRODUCTION OF DOCUMENTS RULE 37-2.1**

**SUPPLEMENTAL RESPONSE TO REQUEST:**
Subject to and incorporating all prior objections and responses, and as best Responding Party can understand his request, Responding Party states that it will comply.

Defendants agreed to comply with this request and, thus, must do so. To date, they have not verified they completed their production regarding these documents.

Although in their previous opposition they made *undeclared* representations to the Court that they completed their production (i.e., the documents "have already been produced or cannot be produced") (Dkt. 22, p. 29, lns. 19-20), the supporting declarations do not support this (Dkt. 33, p. 57 ¶ 4, p. 68 ¶ 28). For example, counsel for Defendants' declaration concedes that the documents "presumably would have been captured in the ESI Plan"; and Drewyor's declaration reflect no steps have actually been taken to search text messages, Signal messages, or Slack messages outside of the ESI agreement to comply with this request, and his declaration provides no clarity as to whose emails he actually searched or the extent of such search. Notably, to date, Defendants still have not verified they have completed their production. Accordingly, Plaintiff requests a Court order compelling compliance.

- **REQUEST FOR PRODUCTION TO RISC POINT NO. 33:** Any and all DOCUMENTS, brochures, pamphlets, codes of conduct, instructions, training information and materials, training, policies or procedures that YOU distributed to YOUR employees, officers, directors, agents, servants, representatives, persons, or entities which sets forth YOUR policy regarding reporting occurrences of discrimination, harassment, and/or retaliation. **RESPONSE TO REQUEST:** Responding Party objects that the request is vague and overbroad. Responding Party objects that the request is overbroad as Ms. Bailey was first hired before Plaintiff's hire. Responding Party further objects that the request invades Ms. Bailey's right of privacy. **SUPPLEMENTAL RESPONSE TO REQUEST:** Subject to and incorporating all prior objections and responses, and as best Responding

**JOINT STIPULATION RE PLAINTIFF'S MOTION TO COMPEL COMPLIANCE AND PRODUCTION OF DOCUMENTS RULE 37-2.1**

Party can understand his request, Responding Party states that it will comply.

RISC Point has agreed to comply with this request and, thus, must do so. To date, RISC Point has not verified that it has completed its production regarding these documents.

Although in its previous opposition it made *undeclared* representations to the Court that it completed its production (i.e., the documents "have already been produced or cannot be produced") (Dkt. 22, p. 29, lns. 19-20), the supporting declaration does not support this (Dkt. 33, p. 68 ¶ 33). For example, counsel for RISC Point's declaration simply states that certificates for training have been produced; not that all responsive documents have been produced, including the underlying training itself.

Notably, to date, RISC Point still has not verified it has completed their production. Accordingly, Plaintiff requests a Court order compelling compliance.

- **REQUEST FOR PRODUCTION TO RISC POINT NO. 36:** Any and all DOCUMENTS related in any way to any discussion to discipline, suspend, put on probation, or terminate PLAINTIFF. This demand includes a request for any DOCUMENTS memorializing or concerning any and all meetings where any such decisions were discussed or considered. **RESPONSE TO REQUEST:** Responding Party objects that the request is vague and overbroad. Given the overbreadth, Responding Party objects to the extent it invades the attorney-client privilege. Subject to the foregoing objections, Responding Party will comply.

RISC Point has agreed to comply with this request and, thus, must do so. To date, RISC Point has not verified that it has completed its production regarding these documents.

Although in its previous opposition it made *undeclared* representations to the Court that it completed its production (i.e., the documents "have already been produced or cannot be produced") (Dkt. 22, p. 29, lns. 19-20), the supporting declarations do not support this (Dkt. 33, pp. 58-59 ¶ 9, 68 ¶ 27). If anything, it reflects that responsive documents actually exist. For example, counsel for Defendants concedes the "hit report" reflect terms that

-23-

**JOINT STIPULATION RE PLAINTIFF'S MOTION TO COMPEL COMPLIANCE AND PRODUCTION OF DOCUMENTS RULE 37-2.1**

1    could include responsive documents; Drewyor's declaration reflect no steps have actually

2    been taken to search text messages, Signal messages, or Slack messages outside of the ESI

3    agreement to comply with this request, and his declaration provides no clarity as to whose

4    emails he actually searched.

5        Notably, to date, RISC Point still has not verified they have completed their

6    production. Accordingly, Plaintiff requests a Court order compelling compliance.

7    **C.**    **Defendants' ESI Discovery**

8        **1.**    **Plaintiff's Contentions**

9        Generally, Federal Rule of Civil Procedure 37(b)(1) provides that "…a party

10   may move for an order compelling disclosure or discovery."  In particular, Rule

11   37(a)(3)(B)(iv) states "A party seeking discovery may move for an order

12   compelling an answer, designation, production or inspection.  This motion may be

13   made if:  […] (iv) a party fails to produce documents or fails to respond that

14   inspection will be permitted – or fails to permit inspection – as requested under

15   Rule 34."

16       Plaintiff seeks the Court's assistance to require Defendants to immediately complete

17   their ESI production. There are four issues regarding the ESI production: (1) whether a

18   Court order is necessary to compel compliance; (2) the scope of the Parties' agreement; (3)

19   the timing and burden of the production as impacted by the specific "hit terms"; and (4)

20   whether the "hit reports" capture all electronic messages (e.g., text messages and Signal),

21   including potential spoliation. These arguments are generally applicable to all of the

22   requests subject to the Parties' ESI agreement because only Defendants' failure to comply

23   is in dispute, and not the sufficiency of the response. Consistent with the Court's comments

24   at the hearing, Plaintiff breaks up its identical contentions by discovery request:

25
26   • **REQUEST FOR PRODUCTION TO RISC POINT NO. 1 / TO NIX NO. 1:** Any and all DOCUMENTS which RELATE TO conversations, communications with,
27

28

-24-

or statements by YOU or received by YOU, RELATING TO any and all matters encompassed by the COMPLAINT. **RESPONSE TO REQUEST NO. 1:** Responding Party objects that the request is unintelligible, vague, and overbroad. *Morgan v. Napolitano*, 2013 U.S. Dist. LEXIS 76295 at *8-9 (E.D. Cal. 2013) (sustaining overbreadth objection and denying motion to compel a request for "all documents related to the reinstatement of [a witness]"). Responding Party objects that the request is not complete in and of itself without reference to another document. Given the immense overbreadth of the request, Responding Party reserves all objections based on privacy and privilege. **SUPPLEMENTAL RESPONSE TO REQUEST NO. 1:** Subject to and incorporating all prior objections and responses, Responding Party will comply to the extent responsive records are found as a result of the ESI Agreement between counsel.

Defendants agreed to comply with this request pursuant to the ESI Agreement and, thus, must do so.

(1) A Court Order is Necessary to Compel Compliance

Defendants have had since May 2025 to comply with their discovery obligations, which is when Plaintiff first served the subject requests. If Defendants anticipated any obstacles to full, complete, and timely compliance, they should have immediately met and conferred and should not have waited until the deadline to respond, made boilerplate objections, and forced Plaintiff to engage in a protracted meet and confer.

Notably, in its own representations to the Court in the Discovery Plan submitted in June 2025, *which is after they had already been served with the discovery and after the early meeting of counsel*, Defendants represented (along with Plaintiff) that "[t]he Parties anticipate conducting discovery seeking Electronically Stored Information; *however, they do not anticipate any issues at this time.*" (Dkt. 16, p. 2 ¶ (c) (emphasis added).) Defendants repeated this

**JOINT STIPULATION RE PLAINTIFF'S MOTION TO COMPEL COMPLIANCE AND PRODUCTION OF DOCUMENTS RULE 37-2.1**

statement in July 2025 in the parties Joint Rule 26(f) Report, *which was submitted days before they served their responses*. (Dkt. 17, p. 6 ¶ (c).) This demonstrates Defendants have been trying to delay their production and avoid their discovery obligations from the very beginning. Defendants' excuses for being unable to comply (as the Court stated at the IDC) should "fall on deaf ears."

Although Defendants have since provided responses, entered into ESI Stipulations, and produced some documents, as of the date this Joint Stipulation was provided by Plaintiff to Defendants, Defendants have not completed their document production.

Plaintiff has offered to resolve this dispute by accepting the full and complete ESI-production subject to a "protective order" and "claw-back" provision. This was very similar to the idea suggested by the Court during an IDC, and reflects the Court's order when it ordered the production of Plaintiff's entire email account. Plaintiff has also suggested that Defendants produce the documents in the "hit report" that do not pose any undue burden, including for such terms as "[c-word]*," "[b-word]*", "[f-word]*," "harass*," "naked," "nude*," "onlyfans," "puss*," etc. Following the denial of previous motion to compel, Plaintiff also offered to attend an IDC. However, although Defendants expressed willingness to attend an IDC on limited items, when Plaintiff sent them the stipulation, they ultimately did not agree, subsequently represented they were changing counsel, and, ultimately, failed to complete their production.

Accordingly, Plaintiff submits a Court order is necessary to ensure Defendants comply with their discovery obligations. Also, at this point, a Court order is necessary to ensure any production is actually complete and that any such production is usable at the time of trial; this justifies the Court compelling Defendants to declare the efforts they made to comply and to authenticate their production.

(2) The Scope of the Parties' Agreement

**JOINT STIPULATION RE PLAINTIFF'S MOTION TO COMPEL COMPLIANCE AND
PRODUCTION OF DOCUMENTS RULE 37-2.1**

The Parties agreed to an ESI protocol as reflected in Plaintiff's August 6, 2025, letter, as modified by subsequent correspondence. (Dkt. No. 39, pp. 71-85.) This agreement called for the entirety of Plaintiff's email during a specified time frame; all of Plaintiff's "slack" and other electronic messages that used certain terms; all emails from specific custodians that contained Plaintiff's name and variants thereof during a specific time period; all emails from those same custodians that contained certain terms during a specified time period; and all "Slack," "Signal," and other electronic messages that used certain terms during a specified time period. (*Id.*) The intent behind this was to capture all communications that were responsive to Plaintiff's discovery requests. Defendants produced an initial "hit report" that reflected this agreement, with the exception of Plaintiff's entire email account, text messages, "Signal" messages, and any electronic messages other than "Slack."

Thereafter, Defendants tried to limit this agreement to require that any email correspondence also include explicit reference to Plaintiff. This was not the agreement, including as memorialized in the correspondence. (Escalante Decl. ¶ 4.) That is, regarding emails, Defendants are required to pull all emails that include a search term *and* all emails that include variants of Plaintiff's name; the agreement does not require Defendants to only pull emails that include *both* a search term *and* variants of Plaintiff's name. In fact, Defendants' proposed limitation will exclude matters that are plainly relevant simply because they fail to mention Plaintiff: for example, if NIX instructed John Hibbeler in an email to take an intimate photograph of Plaintiff and send it to him but the email does not contain a variant of Plaintiff's name and simply uses pronouns, then it would not be responsive, even though it is an email between NIX and Hibbeler (i.e., two identified custodians) that references the word "pic*" (i.e., one of the identified terms).

**JOINT STIPULATION RE PLAINTIFF'S MOTION TO COMPEL COMPLIANCE AND PRODUCTION OF DOCUMENTS RULE 37-2.1**

Defendants' attempt to restrict the agreement only after the initial "hit" report came out indicates they are trying to suppress relevant documents.

Notably, there is no dispute regarding the agreed upon scope of the Slack and other electronic messages. That is, the August 6 letter plainly does not include any requirement that an electronic message reference Plaintiff's name at all, it merely requires Defendants to pull messages with the subject term. Defendants also did not pull another hit report to reflect any such limitation.

(3) The Timing and Burden of the Production as Impacted by the Specific "Hit Terms"

Regarding the actual production, the parties have already agreed to terms to be searched. The only issue is, thus, the alleged burden of Defendants' desire to review every single document before they are produced. This is simply not required and Defendants cannot hold up their production by self-imposing it. The Rules contemplate situations where productions occur pursuant to "quick peek" or "claw back" provisions. *See* FRE 502(d)-(e); FRCP 26(b)(5), Adv. Comm. Notes, 2006 Amend.

As far as a justification for each term in the "hit report," Plaintiff submits the following:

o    complain* - This term is relevant to Plaintiff's claims, because the evidence in this case demonstrates that Plaintiff filed a sexual harassment complaint while she was still employed at Defendant RISC Point.  In addition, this term also is relevant to the circumstances and discovery of potential "me too" witnesses, which the Court has already ruled on in favor of certain disclosure.

o    harass* - This term is relevant to Plaintiff's claims, as she maintains a claim for sexual harassment.  Plaintiff contends the evidence in this case demonstrates that Plaintiff filed a sexual harassment complaint

-28-

while she was still employed at Defendants.  In addition, this term is relevant to the circumstances and discovery of potential "me too" witnesses, which the Court has already ruled on in favor of certain disclosure.

o  retaliat* - This term is relevant to Plaintiff's claims, as she maintains claims for retaliation.  Plaintiff contends the evidence in this case demonstrates that Plaintiff filed a sexual harassment complaint while she was still employed at Defendants and their immediate response was to terminate her employment, and made efforts to terminate her employment, constructively or directly.  In addition, this term is relevant to the circumstances and discovery of potential "me too" witnesses, which the Court has already ruled on in favor of certain disclosure.

o  terminat* - This term is relevant to Plaintiff's claims, as Plaintiff contends the evidence in this case demonstrates that Plaintiff filed a sexual harassment complaint while she was still employed at Defendants and their immediate response was to terminate her employment, and made efforts to terminate her employment, constructively or directly. In addition, this term is relevant to the circumstances and discovery of potential "me too" witnesses, which the Court has already ruled on in favor of certain disclosure.

o  fire* - Similar to the term "terminate," the term "fire" is commonly-used as a synonym for the termination of employment.  This term is relevant to Plaintiff's claims, as Plaintiff contends the evidence in this case demonstrates that Plaintiff filed a sexual harassment complaint while she was still employed at Defendants and their immediate response was to terminate her employment, and made efforts to

-29-

**JOINT STIPULATION RE PLAINTIFF'S MOTION TO COMPEL COMPLIANCE AND PRODUCTION OF DOCUMENTS RULE 37-2.1**

terminate her employment, constructively or directly In addition, this term is relevant to the circumstances and discovery of potential "me too" witnesses, which the Court has already ruled on in favor of certain disclosure.

o  kill* - This term is relevant to Plaintiff's causes of action, because witness and former-employee (and current partial owner of Defendants) Ryan McCartney testified that Defendant Jacob Nix engaged in witness tampering and death threats, i.e., Nix threatened to "kill" him and his husband, if Mr. McCartney did not lie and give favorable testimony to Defendants at his deposition in this current action.  This term is also relevant to the extent that Defendant NIX or any other employee or agent of Defendants expressed hatred, anger or frustration towards Plaintiff because Plaintiff filed her internal complaints or this lawsuit, to the extent they wanted to or could "kill" her.

o  suspend* - Similar to the terms "terminate," and "fire," the term "suspend" is a type of adverse employment action, which is an element of her retaliation causes of actions. Plaintiff also contends the evidence in this case demonstrates that Plaintiff filed a sexual harassment complaint while she was still employed at Defendants and their immediate response was to terminate her employment, and made efforts to terminate her employment, constructively or directly, which may have reasonably included suspending her.  In addition, this term is relevant to the circumstances and discovery of potential "me too" witnesses, which the Court has already ruled on in favor of certain disclosure.

**JOINT STIPULATION RE PLAINTIFF'S MOTION TO COMPEL COMPLIANCE AND PRODUCTION OF DOCUMENTS RULE 37-2.1**

o settle* - This term is relevant to Plaintiff's claims, as Plaintiff contends that as soon as she filed her internal complaints to Defendants, their immediate response was to terminate her employment, and made efforts to terminate her employment, constructively or directly. Once that did not work, Plaintiff contends that Defendant offered her a settlement/severance agreement to try and get her to waive her claims against the company. In addition, this term is relevant to the circumstances and discovery of potential "me too" witnesses, which the Court has already ruled on in favor of certain disclosure.

o sever* - Similar to the term "settle*", this term is relevant to Plaintiff's claims, as Plaintiff contends that as soon as she filed her internal complaints to Defendants, their immediate response was to terminate her employment, and made efforts to terminate her employment, constructively or directly. Once that did not work, Plaintiff contends that Defendant offered her a settlement/severance agreement to try and get her to waive her claims against the company. In addition, this term is relevant to the circumstances and discovery of potential "me too" witnesses, which the Court has already ruled on in favor of certain disclosure.

o illegal* - This term is relevant to Plaintiff's claims, as Plaintiff contends that as soon as she filed her internal complaints to Defendants about their illegal behavior, including sexual harassment and retaliation. In addition, this term is relevant to the circumstances and discovery of potential "me too" witnesses, which the Court has already ruled on in favor of certain disclosure.

**JOINT STIPULATION RE PLAINTIFF'S MOTION TO COMPEL COMPLIANCE AND PRODUCTION OF DOCUMENTS RULE 37-2.1**

○ Lawsuit – This term is relevant to discovery of whether Plaintiff's lawsuit or claims were discussed at Defendants.  In addition, this term is relevant to the circumstances and discovery of potential "me too" witnesses, which the Court has already ruled on in favor of certain disclosure.

○ Suit – similar to the term "lawsuit," the term "suit" is a short-hand or slang term for the word lawsuit.  This term is relevant to discovery of whether Plaintiff's lawsuit or claims were discussed at Defendants.  In addition, this term is relevant to the circumstances and discovery of potential "me too" witnesses, which the Court has already ruled on in favor of certain disclosure.

○ claim* - similar to "lawsuit" and "suit," the term "claim" is relevant to discovery of whether Plaintiff's lawsuit or claims were discussed at Defendants.  In addition, this term is relevant to the circumstances and discovery of potential "me too" witnesses, which the Court has already ruled on in favor of certain disclosure.

○ sex* - This term is relevant to discovery because Plaintiff filed internal complaints, and a civil complaint alleging sexual harassment. Plaintiff contends she is entitled to discovery about internal communication at Defendants regarding investigation of her claims, and commentary about them by Defendants.  This term is separately relevant because Plaintiff contends that Defendant Nix made attempts to have sex with Plaintiff, and other employees of Defendant. Specifically, witness R. McCartney testified that Nix spoke about 'sex' in work meetings, and spoke about the women he was sleeping with.  This term is also relevant to the extent Defendants use the term

-32-

**JOINT STIPULATION RE PLAINTIFF'S MOTION TO COMPEL COMPLIANCE AND
PRODUCTION OF DOCUMENTS RULE 37-2.1**

"sexy" or "sexist" other similar variations, which have no legitimate business purpose to be used in the workplace.

o  cunt* - This term is relevant to discovery of Plaintiff's claims, because evidence shows that Defendant Nix, and Defendants, used the term in Slack messages and potentially other electronic messages. Plaintiff intends to demonstrate that Defendants used misogynistic and sexist comments and behavior in the workplace, and this term is commonly used against women.

o  bitch* - similar to the term "cunt," this term is relevant to Plaintiff's claims, as Plaintiff intends to demonstrate that Defendants used misogynistic and sexist comments and behavior in the workplace, and this term is commonly used against women.

o  puss* - similar to the other profane words above (that otherwise have no legitimate business purpose), this term is relevant to Plaintiff's claims, as Plaintiff intends to demonstrate that Defendants used misogynistic and sexist comments and behavior in the workplace, and this term is commonly used against women. In particular, this term would encapsulate variations of the word "pussy," which is a derogatory word involving women.

o  fuck* - similar to the other profane words above (that otherwise have no legitimate business purpose), this term is relevant to Plaintiff's claims, as Plaintiff intends to demonstrate that Defendants used misogynistic and sexist comments and behavior in the workplace, and this term is commonly used against women. In particular, this term would encapsulate variations of the word used to describe profane and derogatory situations, or as a crude synonym for "to have sex."

**JOINT STIPULATION RE PLAINTIFF'S MOTION TO COMPEL COMPLIANCE AND PRODUCTION OF DOCUMENTS RULE 37-2.1**

- o tit* - similar to the other profane words above (that otherwise have no legitimate business purpose), this term is relevant to Plaintiff's claims, as Plaintiff intends to demonstrate that Defendants used misogynistic and sexist comments and behavior in the workplace, and this term is commonly used against women. In particular, this term would encapsulate descriptions of the female body. This term is also relevant to Plaintiff's claims, as Plaintiff alleges that she submitted a complaint that alleged Defendant Nix asked to see her breasts multiple times, in multiple circumstances..

- o boob* - similar to the other profane words above (that otherwise have no legitimate business purpose), this term is relevant to Plaintiff's claims, as Plaintiff intends to demonstrate that Defendants used misogynistic and sexist comments and behavior in the workplace, and this term is commonly used against women. In particular, this term would encapsulate descriptions of the female body. This term is also relevant to Plaintiff's claims, as Plaintiff alleges that she submitted a complaint that alleged Defendant Nix asked to see her breasts multiple times, in multiple circumstances.

- o breast* - similar to the other profane words above (that otherwise have no legitimate business purpose), this term is relevant to Plaintiff's claims, as Plaintiff intends to demonstrate that Defendants used misogynistic and sexist comments and behavior in the workplace, and this term is commonly used against women. In particular, this term would encapsulate descriptions of the female body. This term is also relevant to Plaintiff's claims, as Plaintiff alleges that she submitted a complaint that alleged Defendant Nix asked to see her breasts multiple times, in multiple circumstances.

**JOINT STIPULATION RE PLAINTIFF'S MOTION TO COMPEL COMPLIANCE AND PRODUCTION OF DOCUMENTS RULE 37-2.1**

- o  dick* - similar to the other profane words above (that otherwise have no legitimate business purpose), this term is relevant to Plaintiff's claims for sexual harassment, as similar to the other profane words above (that otherwise have no legitimate business purpose), this term is relevant to Plaintiff's claims, as Plaintiff intends to demonstrate that Defendants used misogynistic and sexist comments and behavior in the workplace, and this term is commonly used against women. In addition, Plaintiff contends that in response to Plaintiff's submission of her internal complaint, the evidence will show that Defendants' CFO called Defendant Nix a "dick."

- o  douche* - similar to the other profane words above (that otherwise have no legitimate business purpose), this term is relevant to Plaintiff's claims for sexual harassment, as similar to the other profane words above (that otherwise have no legitimate business purpose), this term is relevant to Plaintiff's claims, as Plaintiff intends to demonstrate that Defendants used misogynistic and sexist comments and behavior in the workplace, and this term is commonly used against women. In addition, Plaintiff contends that in response to Plaintiff's submission of her internal complaint, the evidence will show that Defendants' CFO called Defendant Nix a "dick."  This term would encapsulate discovery of the terms "douchebag."

- o  Drunk – this term is relevant to Plaintiff's claims for sexual harassment, as Plaintiff contends the evidence will show that she was invited to work events (e.g. in Las Vegas) where she experienced sexual harassment, where employees of Defendants may have been drinking alcohol.

**JOINT STIPULATION RE PLAINTIFF'S MOTION TO COMPEL COMPLIANCE AND PRODUCTION OF DOCUMENTS RULE 37-2.1**

o  drank – similar to the term above, this term is relevant to Plaintiff's claims for sexual harassment, as Plaintiff contends the evidence will show that she was invited to work events (e.g. in Las Vegas) where she experienced sexual harassment, where employees of Defendants may have been drinking alcohol.

o  Date – this term is relevant to Plaintiff's claims for sexual harassment, as Plaintiff contends the evidence will show that Defendant Nix spoke about his dating life, and made attempts to date female employees of Defendants.  (In particular, Plaintiff is not trying to discover all emails with the template words "To/From/Date" in every email.)

o  Dating – similar to the word above, this term is relevant to Plaintiff's claims for sexual harassment, as Plaintiff contends the evidence will show that Defendant Nix spoke about his dating life, and made attempts to date female employees of Defendants.  (In particular, Plaintiff is not trying to discover all emails with the template words "To/From/Date" in every email.)

o  love* - this term is relevant to Plaintiff's claims for sexual harassment, as Plaintiff contends the evidence will show that Defendant Nix sexually harassed her.  In particular this term is commonly used in words of flirtation.

o  roman* - similar to the term above, this term is relevant to Plaintiff's claims for sexual harassment, as Plaintiff contends the evidence will show that Defendant Nix sexually harassed her.  In particular this term would discover the  terms "romance" or "romantic" that would otherwise be discussed on Defendants' business servers.

o  Vibe – this term is relevant to Plaintiff's claims for sexual harassment. Plaintiff testified that after her Las Vegas trip, Defendant Nix

-36-

**JOINT STIPULATION RE PLAINTIFF'S MOTION TO COMPEL COMPLIANCE AND PRODUCTION OF DOCUMENTS RULE 37-2.1**

described an encounter that Plaintiff described as sexual harassment, and he used the term "…the vibe changed" after the event. This term would be used to focus discovery about similar descriptions of events.

o   Hooked - – this term is relevant to Plaintiff's claims for sexual harassment. Plaintiff testified that after her Las Vegas trip, Defendant Nix described an encounter that Plaintiff described as sexual harassment, and he used the term "…hooked up" in referenced to Defendant Nix and Plaintiff potentially having sex.

o   Showing – similar to the other terms related to the female body, this term is relevant to Plaintiff's claims for sexual harassment because Plaintiff testified that she was sexually prepositioned by Defendant Nix, and offered money for "showing" intimate body parts to Nix.

o   onlyfans – This term is relevant to Plaintiff's claims for sexual harassment, as Plaintiff intends to show that during one of her first videoconferences with Defendant Nix, using Defendants' business computers and servers, Defendant Nix spoke about the sexual website OnlyFans, and suggested that if Plaintiff joined the site, he could be her manager.

o   OF – similar to the term above, "OF" is sought as shorthand or slang for "OnlyFans". (In particular, Plaintiff made clear to opposing counsel that it was not seeking discovery of the general and commonly used preposition "of". Plaintiff is willing to accept discovery of the term "OF" in capital letters, or "O.F." using periods, to the extent it differentiates between the other preposition.

o   profile* - this term is relevant to Plaintiff's claims, as Plaintiff will testify that in while in Las Vegas for a work trip, Defendant Nix – in front of other executives – was forced to show her private dating

-37-

profile, and Nix made inappropriate sexually harassing comments
about it.

o  crazy – this term is relevant to Plaintiff's claims, as Plaintiff intends to
show a sexist and misogynistic work atmosphere at Defendants.  In
particular, this seeks discovery to the extent that Defendant and other
executive and employees referred to females as "crazy."

o  vegas – this term is relevant to Plaintiff's claims, as multiple examples
of sexual harassment by Nix and Defendants took place on a company
work trip to Las Vegas.

o  Lol – this term is relevant to Plaintiff's claims, as is slang or
shorthand for "laugh out loud."  This is relevant to demonstrate the
non-business purposes of the comments between the custodians, and
tends to demonstrate an overly familiar and potentially harassing way
the Defendants spoke to and about Plaintiff.

o  intern – this term is relevant to Plaintiff's claims because in 2025,
Defendants hired an Intern named Abby, who was only approximately
20 years old, and she thought it was unusual and inappropriate that the
intern was assigned to report directly to Defendant Nix, the CEO of
the Company.  Plaintiff seeks discovery of sexual or other
inappropriate comments by Nix or other employees at Defendants
about the Intern, including her body or appearance, or relationship
with Nix.

o  HR risk – this term is relevant to Plaintiff's claims because a co-
worker described Defendant Nix in a negative light, as an "HR risk"
in writing, on Defendants computer systems.  In particular, he was
referring to Defendant Nix's behavior, comments and conduct
towards women.

-38-

**JOINT STIPULATION RE PLAINTIFF'S MOTION TO COMPEL COMPLIANCE AND
PRODUCTION OF DOCUMENTS RULE 37-2.1**

- o unwant* - this term is relevant to Plaintiff's claims for sexual harassment, because it seeks to discover the term "unwanted", which is an element of sexual harassment, i.e. "unwanted sexual advances" or "unwanted behavior"

- o inappropriat* - this term is relevant to Plaintiff's claims as seeks to discover discussion of "inappropriate" topics including Plaintiff, including but not limited to examples of harassment or retaliation, or sexist or misogynistic treatment of women in Defendants' workplace.

- o pic* - this term is relevant to Plaintiff's claims because she has a cause of action for unauthorized disclosure of an intimate photograph. The term "pic" is shorthand or slang for "picture."

- o photo* - similar to the above, a synonym for "picture," - this term is relevant to Plaintiff's claims because she has a cause of action for unauthorized disclosure of an intimate photograph.   The term "photo" is shorthand or slang for "photograph" or "picture."

- o nude* - similar to the other terms related to the female body, this term is relevant to Plaintiff's claims for sexual harassment because Plaintiff testified that she was sexually prepositioned by Defendant Nix on multiple occasions.  In addition, witness Ryan McCartney testified that Defendant Nix showed him hundreds of pictures of naked women and other sexual pictures, including in the workplace.

- o Naked – a synonym to "nude," and similar to the other terms related to the female body, this term is relevant to Plaintiff's claims for sexual harassment because Plaintiff testified that she was sexually prepositioned by Defendant Nix on multiple occasions.  In addition, witness Ryan McCartney testified that Defendant Nix showed him

-39-

**JOINT STIPULATION RE PLAINTIFF'S MOTION TO COMPEL COMPLIANCE AND PRODUCTION OF DOCUMENTS RULE 37-2.1**

hundreds of pictures of naked women and other sexual pictures, including in the workplace.

o MPI – this term is relevant because "MPI" was the workplace investigation firm that Defendants hired to investigate Plaintiff's internal complaints

o Hawkins – this term is relevant because "John Hawkins" is the CEO of MPI, the workplace investigation firm that Defendants hired to investigate Plaintiff's internal complaints

o Aisha – this term is relevant because "Aisha Adam" is a workplace investigator that John Hawkins and Defendants hired to investigate Plaintiff's internal complaints

o Adam* - this term is relevant because "Aisha Adam" is a workplace investigator that John Hawkins and Defendants hired to investigate Plaintiff's internal complaints

o investigat* - this term is relevant because Plaintiff filed internal complaints, and Defendants hired workplace investigators to look into Plaintiff's claims.  This is also relevant to Plaintiff's claims, as investigation is a legal and lawful requirement for all California employers subject to FEHA when an employee files a complaint of sexual harassment.

o sensitiv* - similar to the term above, this term is relevant because Plaintiff filed internal complaints, and Defendants hired workplace investigators to look into Plaintiff's claims.  This is also relevant to Plaintiff's claims, as investigation is a legal and lawful requirement for all California employers subject to FEHA when an employee files a complaint of sexual harassment.  This term may discover the terms "sensitive"  - a way to mark pointed discovery about Plaintiff's

claims, or "sensitivity" or other similar sexual harassment training, which is a legal California requirement.

- o Jake – this term is relevant because Defendant Jacob Nix is the founder and CEO (and since the lawsuit has been filed, is now the "Chief Growth Officer") of Defendants. The evidence suggests "Jake" is the preferred name of Mr. Nix and that is what he was referred to by employees of Defendants.

- o Nix - this term is relevant because Defendant Jacob Nix is the founder and CEO (and since the lawsuit has been filed, is now the "Chief Growth Officer") of Defendants.[5]

Plaintiff offered reasonable compromises to alleviate any burden concerns, one of which reflected the Court's comments at the IDC (i.e., "You know, there's also nothing stopping you from producing everything under a claw-back provision"). Defendants ignored these proposals, and have failed to even produce responsive ESI that poses no undue burden (i.e., terms that appear with limited frequency in the "hit report" (e.g., "[c-word]*," "[b-word]*", "[f-word]*," "harass*," "naked," "nude*," "onlyfans," "puss*," etc.). This demonstrates Defendants are intent on withholding their ESI production without a Court order.

Accordingly, the Court should fashion a remedy here using available tools to permit the Parties to complete their discovery by the discovery cutoff; Plaintiff previously made such a proposal.

(4) Whether the "Hit Reports" Capture all Electronic Messages (e.g., Text Messages and Signal), including Potential Spoliation

There is a serious concern whether the "Hit Reports" capture all electronic messages, particularly given no Signal or text messages were captured on them.

---

[5]     For space consideration, Plaintiff does not repeat the term-by-term justification below.

**JOINT STIPULATION RE PLAINTIFF'S MOTION TO COMPEL COMPLIANCE AND PRODUCTION OF DOCUMENTS RULE 37-2.1**

Notably, Plaintiff produced significant text messages with Ryan McCartney, a former executive and current owner of RISC Point. Jake Nix also marked what appeared to be text messages as exhibits at the deposition of McCartney. However, Defendants did not produce those messages or even capture them on the "hit report." This suggests that Defendants have taken no steps to search the text messages of the identified custodians.

Moreover, the "hit reports" do not capture any Signal messages, which is an application used to communicate. During the meet and confer process, Defendants represented to Plaintiff that Defendants did not use "Signal." (Dkt. No. 33, p. 81.) However, a third-party witness confirmed they used it to discuss "sensitive" employment matters and Plaintiff, and set an auto-delete feature. No "Signal" messages have been produced. (Escalante Decl. ¶ 3, Exhs. B, C, F.) That witness also recently produced such messages between him and Drewyor that references Plaintiff, which actually shows the autodelete feature. The foregoing suggests that Defendants have taken no steps to preserve or search Signal messages of the identified custodians.

Accordingly, the only way to ensure Defendants conduct a diligent search and reasonable inquiry into all of their electronic communications, is for the Court to order Defendants to produce responsive documents.

- **REQUEST FOR PRODUCTION TO RISC POINT NO. 2 / TO NIX NO. 2:** Any and all DOCUMENTS which RELATE TO conversations, communications with, or statements by YOU or received by YOU, RELATING TO PLAINTIFF. **RESPONSE TO REQUEST NO. 2:** Responding Party objects that the request is fatally vague and overbroad. *Morgan v. Napolitano*, 2013 U.S. Dist. LEXIS 76295 at *8-9 (E.D. Cal. 2013) (sustaining overbreadth objection and denying motion to compel a request for "all documents related to the reinstatement of [a witness]"). Responding Party objects that production of

**JOINT STIPULATION RE PLAINTIFF'S MOTION TO COMPEL COMPLIANCE AND PRODUCTION OF DOCUMENTS RULE 37-2.1**

such ESI would be unduly burdensome and prohibitively costly. Subject to the foregoing General Objections and specific objections, and without waiving them, and as best Responding Party can understand this request, Responding Party states that it will produce a narrower set of e-mails following efforts to meet and confer and collaborate on specific search criteria. **SUPPLEMENTAL RESPONSE TO REQUEST NO. 2:** Subject to and incorporating all prior objections and responses, Responding Party will comply to the extent responsive records are found as a result of the ESI Agreement between counsel.

Defendants agreed to comply with this request pursuant to the ESI Agreement and, thus, must do so.

(1) A Court Order is Necessary to Compel Compliance

Defendants have had since May 2025 to comply with their discovery obligations, which is when Plaintiff first served the subject requests. If Defendants anticipated any obstacles to full, complete, and timely compliance, they should have immediately met and conferred and should not have waited until the deadline to respond, made boilerplate objections, and forced Plaintiff to engage in a protracted meet and confer.

Notably, in its own representations to the Court in the Discovery Plan submitted in June 2025, *which is after they had already been served with the discovery and after the early meeting of counsel*, Defendants represented (along with Plaintiff) that "[t]he Parties anticipate conducting discovery seeking Electronically Stored Information; *however, they do not anticipate any issues at this time.*" (Dkt. 16, p. 2 ¶ (c) (emphasis added).) Defendants repeated this statement in July 2025 in the parties Joint Rule 26(f) Report, *which was submitted days before they served their responses*. (Dkt. 17, p. 6 ¶ (c).) This demonstrates Defendants have been trying to delay their production and avoid their discovery

**JOINT STIPULATION RE PLAINTIFF'S MOTION TO COMPEL COMPLIANCE AND PRODUCTION OF DOCUMENTS RULE 37-2.1**

obligations from the very beginning. Defendants' excuses for being unable to comply (as the Court stated at the IDC) should "fall on deaf ears."

Although Defendants have since provided responses, entered into ESI Stipulations, and produced some documents, as of the date this Joint Stipulation was provided by Plaintiff to Defendants, Defendants have not completed their document production.

Plaintiff has offered to resolve this dispute by accepting the full and complete ESI-production subject to a "protective order" and "claw-back" provision. This was very similar to the idea suggested by the Court during an IDC, and reflects the Court's order when it ordered the production of Plaintiff's entire email account. Plaintiff has also suggested that Defendants produce the documents in the "hit report" that do not pose any undue burden, including for such terms as "[c-word]*," "[b-word]*", "[f-word]*," "harass*," "naked," "nude*," "onlyfans," "puss*," etc. Following the denial of previous motion to compel, Plaintiff also offered to attend an IDC. However, although Defendants expressed willingness to attend an IDC on limited items, when Plaintiff sent them the stipulation, they ultimately did not agree, subsequently represented they were changing counsel, and, ultimately, failed to complete their production.

Accordingly, Plaintiff submits a Court order is necessary to ensure Defendants comply with their discovery obligations. Also, at this point, a Court order is necessary to ensure any production is actually complete and that any such production is usable at the time of trial; this justifies the Court compelling Defendants to declare the efforts they made to comply and to authenticate their production.

(2) The Scope of the Parties' Agreement

The Parties agreed to an ESI protocol as reflected in Plaintiff's August 6, 2025, letter, as modified by subsequent correspondence. (Dkt. No. 39, pp. 71-85.) This agreement called for the entirety of Plaintiff's email during a specified time frame; all of Plaintiff's "slack" and other electronic messages that used certain

-44-

**JOINT STIPULATION RE PLAINTIFF'S MOTION TO COMPEL COMPLIANCE AND PRODUCTION OF DOCUMENTS RULE 37-2.1**

terms; all emails from specific custodians that contained Plaintiff's name and variants thereof during a specific time period; all emails from those same custodians that contained certain terms during a specified time period; and all "Slack," "Signal," and other electronic messages that used certain terms during a specified time period. (*Id.*) The intent behind this was to capture all communications that were responsive to Plaintiff's discovery requests. Defendants produced an initial "hit report" that reflected this agreement, with the exception of Plaintiff's entire email account, text messages, "Signal" messages, and any electronic messages other than "Slack."

Thereafter, Defendants tried to limit this agreement to require that any email correspondence also include explicit reference to Plaintiff. This was not the agreement, including as memorialized in the correspondence. (Escalante Decl. ¶ 4.) That is, regarding emails, Defendants are required to pull all emails that include a search term *and* all emails that include variants of Plaintiff's name; the agreement does not require Defendants to only pull emails that include *both* a search term *and* variants of Plaintiff's name. In fact, Defendants' proposed limitation will exclude matters that are plainly relevant simply because they fail to mention Plaintiff: for example, if NIX instructed John Hibbeler in an email to take an intimate photograph of Plaintiff and send it to him but the email does not contain a variant of Plaintiff's name and simply uses pronouns, then it would not be responsive, even though it is an email between NIX and Hibbeler (i.e., two identified custodians) that references the word "pic*" (i.e., one of the identified terms). Defendants' attempt to restrict the agreement only after the initial "hit" report came out indicates they are trying to suppress relevant documents.

Notably, there is no dispute regarding the agreed upon scope of the Slack and other electronic messages. That is, the August 6 letter plainly does not include any requirement that an electronic message reference Plaintiff's name at all, it

**JOINT STIPULATION RE PLAINTIFF'S MOTION TO COMPEL COMPLIANCE AND PRODUCTION OF DOCUMENTS RULE 37-2.1**

merely requires Defendants to pull messages with the subject term. Defendants also did not pull another hit report to reflect any such limitation.

(3) The Timing and Burden of the Production as Impacted by the Specific "Hit Terms"

Regarding the actual production, the parties have already agreed to terms to be searched. The only issue is, thus, the alleged burden of Defendants' desire to review every single document before they are produced. This is simply not required and Defendants cannot hold up their production by self-imposing it. The Rules contemplate situations where productions occur pursuant to "quick peek" or "claw back" provisions. *See* FRE 502(d)-(e); FRCP 26(b)(5), Adv. Comm. Notes, 2006 Amend.

Plaintiff offered reasonable compromises to alleviate any burden concerns, one of which reflected the Court's comments at the IDC (i.e., "You know, there's also nothing stopping you from producing everything under a claw-back provision"). Defendants ignored these proposals, and have failed to even produce responsive ESI that poses no undue burden (i.e., terms that appear with limited frequency in the "hit report" (e.g., "[c-word]*," "[b-word]*", "[f-word]*," "harass*," "naked," "nude*," "onlyfans," "puss*," etc.). This demonstrates Defendants are intent on withholding their ESI production without a Court order.

Accordingly, the Court should fashion a remedy here using available tools to permit the Parties to complete their discovery by the discovery cutoff; Plaintiff previously made such a proposal.

(4) Whether the "Hit Reports" Capture all Electronic Messages (e.g., Text Messages and Signal), including Potential Spoliation

There is a serious concern whether the "Hit Reports" capture all electronic messages, particularly given no Signal or text messages were captured on them. Notably, Plaintiff produced significant text messages with Ryan McCartney, a

-46-

**JOINT STIPULATION RE PLAINTIFF'S MOTION TO COMPEL COMPLIANCE AND PRODUCTION OF DOCUMENTS RULE 37-2.1**

former executive and current owner of RISC Point. Jake Nix also marked what appeared to be text messages as exhibits at the deposition of McCartney. However, Defendants did not produce those messages or even capture them on the "hit report." This suggests that Defendants have taken no steps to search the text messages of the identified custodians.

Moreover, the "hit reports" do not capture any Signal messages, which is an application used to communicate. During the meet and confer process, Defendants represented to Plaintiff that Defendants did not use "Signal." (Dkt. No. 33, p. 81.) However, a third-party witness confirmed they used it to discuss "sensitive" employment matters and Plaintiff, and set an auto-delete feature. No "Signal" messages have been produced. (Escalante Decl. ¶ 3, Exhs. B, C, F.) That witness also recently produced such messages between him and Drewyor that references Plaintiff, which actually shows the autodelete feature. The foregoing suggests that Defendants have taken no steps to preserve or search Signal messages of the identified custodians.

Accordingly, the only way to ensure Defendants conduct a diligent search and reasonable inquiry into all of their electronic communications, is for the Court to order Defendants to produce responsive documents.

- **REQUEST FOR PRODUCTION TO RISC POINT NO. 14:** Any and all DOCUMENTS that RELATE TO any COMMUNICATIONS that YOU have had with PLAINTIFF. **RESPONSE TO REQUEST NO. 14:** Responding Party objects that the request is fatally overbroad and harassing. *Morgan v. Napolitano*, 2013 U.S. Dist. LEXIS 76295 at *8-9 (E.D. Cal. 2013) (sustaining overbreadth objection and denying motion to compel a request for "all documents related to the reinstatement of [a witness]"). Given the immense overbreadth of the request, Responding Party reserves all

objections based on privacy and privilege. Subject to the foregoing General Objections and specific objections, and without waiving them, and as best Responding Party can understand this request, Responding Party states that it will produce a narrower set of e-mails following efforts to meet and confer and collaborate on specific search criteria.[6] **SUPPLEMENTAL RESPONSE TO REQUEST NO. 14:** Subject to and incorporating all prior objections and responses, Responding Party will comply to the extent responsive records are found as a result of the ESI Agreement between counsel.

Defendants agreed to comply with this request pursuant to the ESI Agreement and, thus, must do so.

(1) A Court Order is Necessary to Compel Compliance

Defendants have had since May 2025 to comply with their discovery obligations, which is when Plaintiff first served the subject requests. If Defendants anticipated any obstacles to full, complete, and timely compliance, they should have immediately met and conferred and should not have waited until the deadline to respond, made boilerplate objections, and forced Plaintiff to engage in a protracted meet and confer.

Notably, in its own representations to the Court in the Discovery Plan submitted in June 2025, *which is after they had already been served with the discovery and after the early meeting of counsel*, Defendants represented (along with Plaintiff) that "[t]he Parties anticipate conducting discovery seeking Electronically Stored Information; *however, they do not anticipate any issues at*

---

[6]    **NIX's RESPONSE TO REQUEST NO. 11:** Responding Party objects that the request is fatally vague and overbroad. Responding Party objects that production of such ESI would be unduly burdensome and prohibitively costly. Subject to the foregoing General Objections and specific objections, and without waiving them, and as best Responding Party can understand this request, Responding Party states that it will produce a narrower set of e-mails following efforts to meet and confer and collaborate on specific search criteria.

**JOINT STIPULATION RE PLAINTIFF'S MOTION TO COMPEL COMPLIANCE AND PRODUCTION OF DOCUMENTS RULE 37-2.1**

*this time.*" (Dkt. 16, p. 2 ¶ (c) (emphasis added).) Defendants repeated this statement in July 2025 in the parties Joint Rule 26(f) Report, *which was submitted days before they served their responses*. (Dkt. 17, p. 6 ¶ (c).) This demonstrates Defendants have been trying to delay their production and avoid their discovery obligations from the very beginning. Defendants' excuses for being unable to comply (as the Court stated at the IDC) should "fall on deaf ears."

Although Defendants have since provided responses, entered into ESI Stipulations, and produced some documents, as of the date this Joint Stipulation was provided by Plaintiff to Defendants, Defendants have not completed their document production.

Plaintiff has offered to resolve this dispute by accepting the full and complete ESI-production subject to a "protective order" and "claw-back" provision. This was very similar to the idea suggested by the Court during an IDC, and reflects the Court's order when it ordered the production of Plaintiff's entire email account. Plaintiff has also suggested that Defendants produce the documents in the "hit report" that do not pose any undue burden, including for such terms as "[c-word]*," "[b-word]*", "[f-word]*," "harass*," "naked," "nude*," "onlyfans," "puss*," etc. Following the denial of previous motion to compel, Plaintiff also offered to attend an IDC. However, although Defendants expressed willingness to attend an IDC on limited items, when Plaintiff sent them the stipulation, they ultimately did not agree, subsequently represented they were changing counsel, and, ultimately, failed to complete their production.

Accordingly, Plaintiff submits a Court order is necessary to ensure Defendants comply with their discovery obligations. Also, at this point, a Court order is necessary to ensure any production is actually complete and that any such production is usable at the time of trial; this justifies the Court compelling Defendants to declare the efforts they made to comply and to authenticate their production.

(2) The Scope of the Parties' Agreement

**JOINT STIPULATION RE PLAINTIFF'S MOTION TO COMPEL COMPLIANCE AND PRODUCTION OF DOCUMENTS RULE 37-2.1**

The Parties agreed to an ESI protocol as reflected in Plaintiff's August 6, 2025, letter, as modified by subsequent correspondence. (Dkt. No. 39, pp. 71-85.) This agreement called for the entirety of Plaintiff's email during a specified time frame; all of Plaintiff's "slack" and other electronic messages that used certain terms; all emails from specific custodians that contained Plaintiff's name and variants thereof during a specific time period; all emails from those same custodians that contained certain terms during a specified time period; and all "Slack," "Signal," and other electronic messages that used certain terms during a specified time period. (*Id.*) The intent behind this was to capture all communications that were responsive to Plaintiff's discovery requests. Defendants produced an initial "hit report" that reflected this agreement, with the exception of Plaintiff's entire email account, text messages, "Signal" messages, and any electronic messages other than "Slack."

Thereafter, Defendants tried to limit this agreement to require that any email correspondence also include explicit reference to Plaintiff. This was not the agreement, including as memorialized in the correspondence. (Escalante Decl. ¶ 4.) That is, regarding emails, Defendants are required to pull all emails that include a search term *and* all emails that include variants of Plaintiff's name; the agreement does not require Defendants to only pull emails that include *both* a search term *and* variants of Plaintiff's name. In fact, Defendants' proposed limitation will exclude matters that are plainly relevant simply because they fail to mention Plaintiff: for example, if NIX instructed John Hibbeler in an email to take an intimate photograph of Plaintiff and send it to him but the email does not contain a variant of Plaintiff's name and simply uses pronouns, then it would not be responsive, even though it is an email between NIX and Hibbeler (i.e., two identified custodians) that references the word "pic*" (i.e., one of the identified terms).

**JOINT STIPULATION RE PLAINTIFF'S MOTION TO COMPEL COMPLIANCE AND PRODUCTION OF DOCUMENTS RULE 37-2.1**

Defendants' attempt to restrict the agreement only after the initial "hit" report came out indicates they are trying to suppress relevant documents.

Notably, there is no dispute regarding the agreed upon scope of the Slack and other electronic messages. That is, the August 6 letter plainly does not include any requirement that an electronic message reference Plaintiff's name at all, it merely requires Defendants to pull messages with the subject term. Defendants also did not pull another hit report to reflect any such limitation.

(3) The Timing and Burden of the Production as Impacted by the Specific "Hit Terms"

Regarding the actual production, the parties have already agreed to terms to be searched. The only issue is, thus, the alleged burden of Defendants' desire to review every single document before they are produced. This is simply not required and Defendants cannot hold up their production by self-imposing it. The Rules contemplate situations where productions occur pursuant to "quick peek" or "claw back" provisions. *See* FRE 502(d)-(e); FRCP 26(b)(5), Adv. Comm. Notes, 2006 Amend.

Plaintiff offered reasonable compromises to alleviate any burden concerns, one of which reflected the Court's comments at the IDC (i.e., "You know, there's also nothing stopping you from producing everything under a claw-back provision"). Defendants ignored these proposals, and have failed to even produce responsive ESI that poses no undue burden (i.e., terms that appear with limited frequency in the "hit report" (e.g., "[c-word]*," "[b-word]*", "[f-word]*," "harass*," "naked," "nude*," "onlyfans," "puss*," etc.). This demonstrates Defendants are intent on withholding their ESI production without a Court order.

Accordingly, the Court should fashion a remedy here using available tools to permit the Parties to complete their discovery by the discovery cutoff; Plaintiff previously made such a proposal.

**JOINT STIPULATION RE PLAINTIFF'S MOTION TO COMPEL COMPLIANCE AND PRODUCTION OF DOCUMENTS RULE 37-2.1**

(4) Whether the "Hit Reports" Capture all Electronic Messages (e.g., Text Messages and Signal), including Potential Spoliation

There is a serious concern whether the "Hit Reports" capture all electronic messages, particularly given no Signal or text messages were captured on them. Notably, Plaintiff produced significant text messages with Ryan McCartney, a former executive and current owner of RISC Point. Jake Nix also marked what appeared to be text messages as exhibits at the deposition of McCartney. However, Defendants did not produce those messages or even capture them on the "hit report." This suggests that Defendants have taken no steps to search the text messages of the identified custodians.

Moreover, the "hit reports" do not capture any Signal messages, which is an application used to communicate. During the meet and confer process, Defendants represented to Plaintiff that Defendants did not use "Signal." (Dkt. No. 33, p. 81.) However, a third-party witness confirmed they used it to discuss "sensitive" employment matters and Plaintiff, and set an auto-delete feature. No "Signal" messages have been produced. (Escalante Decl. ¶ 3, Exhs. B, C, F.) That witness also recently produced such messages between him and Drewyor that references Plaintiff, which actually shows the autodelete feature. The foregoing suggests that Defendants have taken no steps to preserve or search Signal messages of the identified custodians.

Accordingly, the only way to ensure Defendants conduct a diligent search and reasonable inquiry into all of their electronic communications, is for the Court to order Defendants to produce responsive documents.

- **REQUEST FOR PRODUCTION TO RISC POINT NO. 15 / TO NIX NO. 13:** Any and all DOCUMENTS which refer, RELATE, or in any way pertain to PLAINTIFF. This request includes any DOCUMENTS created by, sent by or received by any of YOUR

employees and/or agents wherein PLAINTIFF is discussed or mentioned. **RISC POINT'S RESPONSE TO REQUEST:** Responding Party objects that the request is fatally overbroad and harassing. *Morgan v. Napolitano*, 2013 U.S. Dist. LEXIS 76295 at *8-9 (E.D. Cal. 2013) (sustaining overbreadth objection and denying motion to compel a request for "all documents related to the reinstatement of [a witness]"). Given the immense overbreadth of the request, Responding Party reserves all objections based on privacy and privilege. Subject to the foregoing General Objections and specific objections, and without waiving them, and as best Responding Party can understand this request, Responding Party states that it will produce a narrower set of e-mails following efforts to meet and confer and collaborate on specific search criteria.[7] **SUPPLEMENTAL RESPONSE TO REQUEST:** Subject to and incorporating all prior objections and responses, Responding Party will comply to the extent responsive records are found as a result of the ESI Agreement between counsel.

Defendants agreed to comply with this request pursuant to the ESI Agreement and, thus, must do so.

(1) A Court Order is Necessary to Compel Compliance

Defendants have had since May 2025 to comply with their discovery obligations, which is when Plaintiff first served the subject requests. If Defendants anticipated any obstacles to full, complete, and timely compliance, they should have immediately met and conferred and should not have waited until the deadline to respond, made boilerplate objections, and forced Plaintiff to engage in a protracted meet and confer.

---

[7]    **NIX'S RESPONSE TO REQUEST NO. 13:** Responding Party objects that the request is fatally overbroad and harassing. *Morgan v. Napolitano*, 2013 U.S. Dist. LEXIS 76295 at *8-9 (E.D. Cal. 2013) (sustaining overbreadth objection and denying motion to compel a request for "all documents related to the reinstatement of [a witness]").

**JOINT STIPULATION RE PLAINTIFF'S MOTION TO COMPEL COMPLIANCE AND PRODUCTION OF DOCUMENTS RULE 37-2.1**

1    Notably, in its own representations to the Court in the Discovery Plan
2    submitted in June 2025, *which is after they had already been served with the*
3    *discovery and after the early meeting of counsel*, Defendants represented (along
4    with Plaintiff) that "[t]he Parties anticipate conducting discovery seeking
5    Electronically Stored Information; *however, they do not anticipate any issues at*
6    *this time.*" (Dkt. 16, p. 2 ¶ (c) (emphasis added).) Defendants repeated this
7    statement in July 2025 in the parties Joint Rule 26(f) Report, *which was submitted*
8    *days before they served their responses*. (Dkt. 17, p. 6 ¶ (c).) This demonstrates
9    Defendants have been trying to delay their production and avoid their discovery
10   obligations from the very beginning. Defendants' excuses for being unable to
11   comply (as the Court stated at the IDC) should "fall on deaf ears."

12   Although Defendants have since provided responses, entered into ESI
13   Stipulations, and produced some documents, as of the date this Joint Stipulation
14   was provided by Plaintiff to Defendants, Defendants have not completed their
15   document production.

16   Plaintiff has offered to resolve this dispute by accepting the full and complete ESI-
17   production subject to a "protective order" and "claw-back" provision. This was very
18   similar to the idea suggested by the Court during an IDC, and reflects the Court's order
19   when it ordered the production of Plaintiff's entire email account. Plaintiff has also
20   suggested that Defendants produce the documents in the "hit report" that do not pose any
21   undue burden, including for such terms as "[c-word]*," "[b-word]*", "[f-word]*,"
22   "harass*," "naked," "nude*," "onlyfans," "puss*," etc. Following the denial of
23   previous motion to compel, Plaintiff also offered to attend an IDC. However, although
24   Defendants expressed willingness to attend an IDC on limited items, when Plaintiff sent
25   them the stipulation, they ultimately did not agree, subsequently represented they were
26   changing counsel, and, ultimately, failed to complete their production.

27
28

**JOINT STIPULATION RE PLAINTIFF'S MOTION TO COMPEL COMPLIANCE AND PRODUCTION OF DOCUMENTS RULE 37-2.1**

Accordingly, Plaintiff submits a Court order is necessary to ensure Defendants comply with their discovery obligations. Also, at this point, a Court order is necessary to ensure any production is actually complete and that any such production is usable at the time of trial; this justifies the Court compelling Defendants to declare the efforts they made to comply and to authenticate their production.

(2) The Scope of the Parties' Agreement

The Parties agreed to an ESI protocol as reflected in Plaintiff's August 6, 2025, letter, as modified by subsequent correspondence. (Dkt. No. 39, pp. 71-85.) This agreement called for the entirety of Plaintiff's email during a specified time frame; all of Plaintiff's "slack" and other electronic messages that used certain terms; all emails from specific custodians that contained Plaintiff's name and variants thereof during a specific time period; all emails from those same custodians that contained certain terms during a specified time period; and all "Slack," "Signal," and other electronic messages that used certain terms during a specified time period. (*Id.*) The intent behind this was to capture all communications that were responsive to Plaintiff's discovery requests. Defendants produced an initial "hit report" that reflected this agreement, with the exception of Plaintiff's entire email account, text messages, "Signal" messages, and any electronic messages other than "Slack."

Thereafter, Defendants tried to limit this agreement to require that any email correspondence also include explicit reference to Plaintiff. This was not the agreement, including as memorialized in the correspondence. (Escalante Decl. ¶ 4.) That is, regarding emails, Defendants are required to pull all emails that include a search term *and* all emails that include variants of Plaintiff's name; the agreement does not require Defendants to only pull emails that include *both* a search term *and* variants of Plaintiff's name. In fact, Defendants' proposed limitation will exclude matters that are plainly relevant simply because they fail to mention Plaintiff: for

example, if NIX instructed John Hibbeler in an email to take an intimate photograph of Plaintiff and send it to him but the email does not contain a variant of Plaintiff's name and simply uses pronouns, then it would not be responsive, even though it is an email between NIX and Hibbeler (i.e., two identified custodians) that references the word "pic*" (i.e., one of the identified terms). Defendants' attempt to restrict the agreement only after the initial "hit" report came out indicates they are trying to suppress relevant documents.

Notably, there is no dispute regarding the agreed upon scope of the Slack and other electronic messages. That is, the August 6 letter plainly does not include any requirement that an electronic message reference Plaintiff's name at all, it merely requires Defendants to pull messages with the subject term. Defendants also did not pull another hit report to reflect any such limitation.

(3) The Timing and Burden of the Production as Impacted by the Specific "Hit Terms"

Regarding the actual production, the parties have already agreed to terms to be searched. The only issue is, thus, the alleged burden of Defendants' desire to review every single document before they are produced. This is simply not required and Defendants cannot hold up their production by self-imposing it. The Rules contemplate situations where productions occur pursuant to "quick peek" or "claw back" provisions. *See* FRE 502(d)-(e); FRCP 26(b)(5), Adv. Comm. Notes, 2006 Amend.

Plaintiff offered reasonable compromises to alleviate any burden concerns, one of which reflected the Court's comments at the IDC (i.e., "You know, there's also nothing stopping you from producing everything under a claw-back provision"). Defendants ignored these proposals, and have failed to even produce responsive ESI that poses no undue burden (i.e., terms that appear with limited frequency in the "hit report" (e.g., "[c-word]*," "[b-word]*", "[f-word]*,"

**JOINT STIPULATION RE PLAINTIFF'S MOTION TO COMPEL COMPLIANCE AND PRODUCTION OF DOCUMENTS RULE 37-2.1**

"harass*," "naked," "nude*," "onlyfans," "puss*," etc.). This demonstrates Defendants are intent on withholding their ESI production without a Court order.

Accordingly, the Court should fashion a remedy here using available tools to permit the Parties to complete their discovery by the discovery cutoff; Plaintiff previously made such a proposal.

(4) Whether the "Hit Reports" Capture all Electronic Messages (e.g., Text Messages and Signal), including Potential Spoliation

There is a serious concern whether the "Hit Reports" capture all electronic messages, particularly given no Signal or text messages were captured on them. Notably, Plaintiff produced significant text messages with Ryan McCartney, a former executive and current owner of RISC Point. Jake Nix also marked what appeared to be text messages as exhibits at the deposition of McCartney. However, Defendants did not produce those messages or even capture them on the "hit report." This suggests that Defendants have taken no steps to search the text messages of the identified custodians.

Moreover, the "hit reports" do not capture any Signal messages, which is an application used to communicate. During the meet and confer process, Defendants represented to Plaintiff that Defendants did not use "Signal." (Dkt. No. 33, p. 81.) However, a third-party witness confirmed they used it to discuss "sensitive" employment matters and Plaintiff, and set an auto-delete feature. No "Signal" messages have been produced. (Escalante Decl. ¶ 3, Exhs. B, C, F.) That witness also recently produced such messages between him and Drewyor that references Plaintiff, which actually shows the autodelete feature. The foregoing suggests that Defendants have taken no steps to preserve or search Signal messages of the identified custodians.

**JOINT STIPULATION RE PLAINTIFF'S MOTION TO COMPEL COMPLIANCE AND PRODUCTION OF DOCUMENTS RULE 37-2.1**

Accordingly, the only way to ensure Defendants conduct a diligent search and reasonable inquiry into all of their electronic communications, is for the Court to order Defendants to produce responsive documents.

- **REQUEST FOR PRODUCTION TO RISC POINT NO. 17 / TO NIX NO. 14:** Any and all DOCUMENTS that RELATE TO a statement taken by any party and/or witness who would support YOUR denial of any allegation of PLAINTIFF's COMPLAINT or defense thereto. **RESPONSE TO REQUEST:** Responding Party objects that the request is unintelligible. Responding Party objects that the request is not complete in and of itself without reference to another document. Responding Party object that the request is compound. Responding Party objects that the request appears to be an improper "contention type" request for documents. FRCP 33(a)(2); *Lucero v. Valdez*, 240 F.R.D. 591, 594 (D.N.M. 2007). As such, Responding Party objects that the request is not reasonably particularized in that it describes documents in relation to allegations made in the underlying complaint in this action, which is not how Responding Party maintains documents in the usual course of business. Responding Party further objects that the request calls for speculation. Until this request can be understood, Responding Party reserves all objections on the grounds of privacy and privilege. **SUPPLEMENTAL RESPONSE TO REQUEST:** Subject to and incorporating all prior objections and responses, Responding Party states that no "witness statements" are in its possession, custody, or control but that it will comply to the extent responsive records are found as a result of the ESI Agreement between counsel.

Defendants agreed to comply with this request pursuant to the ESI Agreement and, thus, must do so.

(1) A Court Order is Necessary to Compel Compliance

-58-

Defendants have had since May 2025 to comply with their discovery obligations, which is when Plaintiff first served the subject requests. If Defendants anticipated any obstacles to full, complete, and timely compliance, they should have immediately met and conferred and should not have waited until the deadline to respond, made boilerplate objections, and forced Plaintiff to engage in a protracted meet and confer.

Notably, in its own representations to the Court in the Discovery Plan submitted in June 2025, *which is after they had already been served with the discovery and after the early meeting of counsel*, Defendants represented (along with Plaintiff) that "[t]he Parties anticipate conducting discovery seeking Electronically Stored Information; *however, they do not anticipate any issues at this time.*" (Dkt. 16, p. 2 ¶ (c) (emphasis added).) Defendants repeated this statement in July 2025 in the parties Joint Rule 26(f) Report, *which was submitted days before they served their responses*. (Dkt. 17, p. 6 ¶ (c).) This demonstrates Defendants have been trying to delay their production and avoid their discovery obligations from the very beginning. Defendants' excuses for being unable to comply (as the Court stated at the IDC) should "fall on deaf ears."

Although Defendants have since provided responses, entered into ESI Stipulations, and produced some documents, as of the date this Joint Stipulation was provided by Plaintiff to Defendants, Defendants have not completed their document production.

Plaintiff has offered to resolve this dispute by accepting the full and complete ESI-production subject to a "protective order" and "claw-back" provision. This was very similar to the idea suggested by the Court during an IDC, and reflects the Court's order when it ordered the production of Plaintiff's entire email account. Plaintiff has also suggested that Defendants produce the documents in the "hit report" that do not pose any undue burden, including for such terms as "[c-word]*," "[b-word]*", "[f-word]*,"

**JOINT STIPULATION RE PLAINTIFF'S MOTION TO COMPEL COMPLIANCE AND PRODUCTION OF DOCUMENTS RULE 37-2.1**

"harass*," "naked," "nude*," "onlyfans," "puss*," etc. Following the denial of
previous motion to compel, Plaintiff also offered to attend an IDC. However, although
Defendants expressed willingness to attend an IDC on limited items, when Plaintiff sent
them the stipulation, they ultimately did not agree, subsequently represented they were
changing counsel, and, ultimately, failed to complete their production.

Accordingly, Plaintiff submits a Court order is necessary to ensure Defendants
comply with their discovery obligations. Also, at this point, a Court order is necessary to
ensure any production is actually complete and that any such production is usable at the
time of trial; this justifies the Court compelling Defendants to declare the efforts they made
to comply and to authenticate their production.

(2) The Scope of the Parties' Agreement

The Parties agreed to an ESI protocol as reflected in Plaintiff's August 6,
2025, letter, as modified by subsequent correspondence. (Dkt. No. 39, pp. 71-85.)
This agreement called for the entirety of Plaintiff's email during a specified time
frame; all of Plaintiff's "slack" and other electronic messages that used certain
terms; all emails from specific custodians that contained Plaintiff's name and
variants thereof during a specific time period; all emails from those same
custodians that contained certain terms during a specified time period; and all
"Slack," "Signal," and other electronic messages that used certain terms during a
specified time period. (*Id.*) The intent behind this was to capture all
communications that were responsive to Plaintiff's discovery requests. Defendants
produced an initial "hit report" that reflected this agreement, with the exception of
Plaintiff's entire email account, text messages, "Signal" messages, and any
electronic messages other than "Slack."

Thereafter, Defendants tried to limit this agreement to require that any email
correspondence also include explicit reference to Plaintiff. This was not the
agreement, including as memorialized in the correspondence. (Escalante Decl. ¶ 4.)

**JOINT STIPULATION RE PLAINTIFF'S MOTION TO COMPEL COMPLIANCE AND
PRODUCTION OF DOCUMENTS RULE 37-2.1**

That is, regarding emails, Defendants are required to pull all emails that include a search term *and* all emails that include variants of Plaintiff's name; the agreement does not require Defendants to only pull emails that include *both* a search term *and* variants of Plaintiff's name. In fact, Defendants' proposed limitation will exclude matters that are plainly relevant simply because they fail to mention Plaintiff: for example, if NIX instructed John Hibbeler in an email to take an intimate photograph of Plaintiff and send it to him but the email does not contain a variant of Plaintiff's name and simply uses pronouns, then it would not be responsive, even though it is an email between NIX and Hibbeler (i.e., two identified custodians) that references the word "pic*" (i.e., one of the identified terms). Defendants' attempt to restrict the agreement only after the initial "hit" report came out indicates they are trying to suppress relevant documents.

Notably, there is no dispute regarding the agreed upon scope of the Slack and other electronic messages. That is, the August 6 letter plainly does not include any requirement that an electronic message reference Plaintiff's name at all, it merely requires Defendants to pull messages with the subject term. Defendants also did not pull another hit report to reflect any such limitation.

(3) The Timing and Burden of the Production as Impacted by the Specific "Hit Terms"

Regarding the actual production, the parties have already agreed to terms to be searched. The only issue is, thus, the alleged burden of Defendants' desire to review every single document before they are produced. This is simply not required and Defendants cannot hold up their production by self-imposing it. The Rules contemplate situations where productions occur pursuant to "quick peek" or "claw back" provisions. *See* FRE 502(d)-(e); FRCP 26(b)(5), Adv. Comm. Notes, 2006 Amend.

**JOINT STIPULATION RE PLAINTIFF'S MOTION TO COMPEL COMPLIANCE AND PRODUCTION OF DOCUMENTS RULE 37-2.1**

Plaintiff offered reasonable compromises to alleviate any burden concerns, one of which reflected the Court's comments at the IDC (i.e., "You know, there's also nothing stopping you from producing everything under a claw-back provision"). Defendants ignored these proposals, and have failed to even produce responsive ESI that poses no undue burden (i.e., terms that appear with limited frequency in the "hit report" (e.g., "[c-word]*," "[b-word]*", "[f-word]*," "harass*," "naked," "nude*," "onlyfans," "puss*," etc.). This demonstrates Defendants are intent on withholding their ESI production without a Court order.

Accordingly, the Court should fashion a remedy here using available tools to permit the Parties to complete their discovery by the discovery cutoff; Plaintiff previously made such a proposal.

(4) Whether the "Hit Reports" Capture all Electronic Messages (e.g., Text Messages and Signal), including Potential Spoliation

There is a serious concern whether the "Hit Reports" capture all electronic messages, particularly given no Signal or text messages were captured on them. Notably, Plaintiff produced significant text messages with Ryan McCartney, a former executive and current owner of RISC Point. Jake Nix also marked what appeared to be text messages as exhibits at the deposition of McCartney. However, Defendants did not produce those messages or even capture them on the "hit report." This suggests that Defendants have taken no steps to search the text messages of the identified custodians.

Moreover, the "hit reports" do not capture any Signal messages, which is an application used to communicate. During the meet and confer process, Defendants represented to Plaintiff that Defendants did not use "Signal." (Dkt. No. 33, p. 81.) However, a third-party witness confirmed they used it to discuss "sensitive" employment matters and Plaintiff, and set an auto-delete feature. No "Signal" messages have been produced. (Escalante Decl. ¶ 3, Exhs. B, C, F.) That witness

also recently produced such messages between him and Drewyor that references Plaintiff, which actually shows the autodelete feature. The foregoing suggests that Defendants have taken no steps to preserve or search Signal messages of the identified custodians.

Accordingly, the only way to ensure Defendants conduct a diligent search and reasonable inquiry into all of their electronic communications, is for the Court to order Defendants to produce responsive documents.

- **REQUEST FOR PRODUCTION TO NIX NO. 17:** Any and all DOCUMENTS reflecting COMMUNICATIONS, including but not limited to any agreement, between YOU and John Hawkins. **RESPONSE TO REQUEST:** Responding Party objects to the extent the request assumes that Jake Nix personally hired John Hawkins. Subject to the foregoing objections, Responding Party will produce all communications to and from John Hawkins. **SUPPLEMENTAL RESPONSE TO REQUEST:** Subject to and incorporating all prior objections and responses, Responding Party will comply to the extent responsive records are found as a result of the ESI Agreement between counsel.

Defendants agreed to comply with this request pursuant to the ESI Agreement and, thus, must do so.

(1) A Court Order is Necessary to Compel Compliance

Defendants have had since May 2025 to comply with their discovery obligations, which is when Plaintiff first served the subject requests. If Defendants anticipated any obstacles to full, complete, and timely compliance, they should have immediately met and conferred and should not have waited until the deadline to respond, made boilerplate objections, and forced Plaintiff to engage in a protracted meet and confer.

**JOINT STIPULATION RE PLAINTIFF'S MOTION TO COMPEL COMPLIANCE AND PRODUCTION OF DOCUMENTS RULE 37-2.1**

Notably, in its own representations to the Court in the Discovery Plan submitted in June 2025, *which is after they had already been served with the discovery and after the early meeting of counsel*, Defendants represented (along with Plaintiff) that "[t]he Parties anticipate conducting discovery seeking Electronically Stored Information; *however, they do not anticipate any issues at this time.*" (Dkt. 16, p. 2 ¶ (c) (emphasis added).) Defendants repeated this statement in July 2025 in the parties Joint Rule 26(f) Report, *which was submitted days before they served their responses*. (Dkt. 17, p. 6 ¶ (c).) This demonstrates Defendants have been trying to delay their production and avoid their discovery obligations from the very beginning. Defendants' excuses for being unable to comply (as the Court stated at the IDC) should "fall on deaf ears."

Although Defendants have since provided responses, entered into ESI Stipulations, and produced some documents, as of the date this Joint Stipulation was provided by Plaintiff to Defendants, Defendants have not completed their document production.

Plaintiff has offered to resolve this dispute by accepting the full and complete ESI-production subject to a "protective order" and "claw-back" provision. This was very similar to the idea suggested by the Court during an IDC, and reflects the Court's order when it ordered the production of Plaintiff's entire email account. Plaintiff has also suggested that Defendants produce the documents in the "hit report" that do not pose any undue burden, including for such terms as "[c-word]*," "[b-word]*", "[f-word]*," "harass*," "naked," "nude*," "onlyfans," "puss*," etc. Following the denial of previous motion to compel, Plaintiff also offered to attend an IDC. However, although Defendants expressed willingness to attend an IDC on limited items, when Plaintiff sent them the stipulation, they ultimately did not agree, subsequently represented they were changing counsel, and, ultimately, failed to complete their production.

**JOINT STIPULATION RE PLAINTIFF'S MOTION TO COMPEL COMPLIANCE AND PRODUCTION OF DOCUMENTS RULE 37-2.1**

Accordingly, Plaintiff submits a Court order is necessary to ensure Defendants comply with their discovery obligations. Also, at this point, a Court order is necessary to ensure any production is actually complete and that any such production is usable at the time of trial; this justifies the Court compelling Defendants to declare the efforts they made to comply and to authenticate their production.

(2) The Scope of the Parties' Agreement

The Parties agreed to an ESI protocol as reflected in Plaintiff's August 6, 2025, letter, as modified by subsequent correspondence. (Dkt. No. 39, pp. 71-85.) This agreement called for the entirety of Plaintiff's email during a specified time frame; all of Plaintiff's "slack" and other electronic messages that used certain terms; all emails from specific custodians that contained Plaintiff's name and variants thereof during a specific time period; all emails from those same custodians that contained certain terms during a specified time period; and all "Slack," "Signal," and other electronic messages that used certain terms during a specified time period. (*Id.*) The intent behind this was to capture all communications that were responsive to Plaintiff's discovery requests. Defendants produced an initial "hit report" that reflected this agreement, with the exception of Plaintiff's entire email account, text messages, "Signal" messages, and any electronic messages other than "Slack."

Thereafter, Defendants tried to limit this agreement to require that any email correspondence also include explicit reference to Plaintiff. This was not the agreement, including as memorialized in the correspondence. (Escalante Decl. ¶ 4.) That is, regarding emails, Defendants are required to pull all emails that include a search term *and* all emails that include variants of Plaintiff's name; the agreement does not require Defendants to only pull emails that include *both* a search term *and* variants of Plaintiff's name. In fact, Defendants' proposed limitation will exclude matters that are plainly relevant simply because they fail to mention Plaintiff: for

example, if NIX instructed John Hibbeler in an email to take an intimate photograph of Plaintiff and send it to him but the email does not contain a variant of Plaintiff's name and simply uses pronouns, then it would not be responsive, even though it is an email between NIX and Hibbeler (i.e., two identified custodians) that references the word "pic*" (i.e., one of the identified terms). Defendants' attempt to restrict the agreement only after the initial "hit" report came out indicates they are trying to suppress relevant documents.

Notably, there is no dispute regarding the agreed upon scope of the Slack and other electronic messages. That is, the August 6 letter plainly does not include any requirement that an electronic message reference Plaintiff's name at all, it merely requires Defendants to pull messages with the subject term. Defendants also did not pull another hit report to reflect any such limitation.

(3) The Timing and Burden of the Production as Impacted by the Specific "Hit Terms"

Regarding the actual production, the parties have already agreed to terms to be searched. The only issue is, thus, the alleged burden of Defendants' desire to review every single document before they are produced. This is simply not required and Defendants cannot hold up their production by self-imposing it. The Rules contemplate situations where productions occur pursuant to "quick peek" or "claw back" provisions. *See* FRE 502(d)-(e); FRCP 26(b)(5), Adv. Comm. Notes, 2006 Amend.

Plaintiff offered reasonable compromises to alleviate any burden concerns, one of which reflected the Court's comments at the IDC (i.e., "You know, there's also nothing stopping you from producing everything under a claw-back provision"). Defendants ignored these proposals, and have failed to even produce responsive ESI that poses no undue burden (i.e., terms that appear with limited frequency in the "hit report" (e.g., "[c-word]*," "[b-word]*", "[f-word]*,"

**JOINT STIPULATION RE PLAINTIFF'S MOTION TO COMPEL COMPLIANCE AND PRODUCTION OF DOCUMENTS RULE 37-2.1**

"harass*," "naked," "nude*," "onlyfans," "puss*," etc.). This demonstrates Defendants are intent on withholding their ESI production without a Court order.

Accordingly, the Court should fashion a remedy here using available tools to permit the Parties to complete their discovery by the discovery cutoff; Plaintiff previously made such a proposal.

(4) Whether the "Hit Reports" Capture all Electronic Messages (e.g., Text Messages and Signal), including Potential Spoliation

There is a serious concern whether the "Hit Reports" capture all electronic messages, particularly given no Signal or text messages were captured on them. Notably, Plaintiff produced significant text messages with Ryan McCartney, a former executive and current owner of RISC Point. Jake Nix also marked what appeared to be text messages as exhibits at the deposition of McCartney. However, Defendants did not produce those messages or even capture them on the "hit report." This suggests that Defendants have taken no steps to search the text messages of the identified custodians.

Moreover, the "hit reports" do not capture any Signal messages, which is an application used to communicate. During the meet and confer process, Defendants represented to Plaintiff that Defendants did not use "Signal." (Dkt. No. 33, p. 81.) However, a third-party witness confirmed they used it to discuss "sensitive" employment matters and Plaintiff, and set an auto-delete feature. No "Signal" messages have been produced. (Escalante Decl. ¶ 3, Exhs. B, C, F.) That witness also recently produced such messages between him and Drewyor that references Plaintiff, which actually shows the autodelete feature. The foregoing suggests that Defendants have taken no steps to preserve or search Signal messages of the identified custodians.

**JOINT STIPULATION RE PLAINTIFF'S MOTION TO COMPEL COMPLIANCE AND PRODUCTION OF DOCUMENTS RULE 37-2.1**

Accordingly, the only way to ensure Defendants conduct a diligent search and reasonable inquiry into all of their electronic communications, is for the Court to order Defendants to produce responsive documents.

- **REQUEST FOR PRODUCTION TO RISC POINT NO. 22 / TO NIX NO. 19:** Please produce any and all DOCUMENTS which refer, RELATE, or in any way pertain to PLAINTIFF's complaints to YOU. **RESPONSE TO REQUEST:** Responding Party objects that the request is vague and overbroad. Responding Party objects that the term "complaints" is ambiguous and overbroad. **SUPPLEMENTAL RESPONSE TO REQUEST:** Subject to and incorporating all prior objections and responses, Responding Party will comply to the extent responsive records are found as a result of the ESI Agreement between counsel.

Defendants agreed to comply with this request pursuant to the ESI Agreement and, thus, must do so.

(1) A Court Order is Necessary to Compel Compliance

Defendants have had since May 2025 to comply with their discovery obligations, which is when Plaintiff first served the subject requests. If Defendants anticipated any obstacles to full, complete, and timely compliance, they should have immediately met and conferred and should not have waited until the deadline to respond, made boilerplate objections, and forced Plaintiff to engage in a protracted meet and confer.

Notably, in its own representations to the Court in the Discovery Plan submitted in June 2025, *which is after they had already been served with the discovery and after the early meeting of counsel*, Defendants represented (along with Plaintiff) that "[t]he Parties anticipate conducting discovery seeking Electronically Stored Information; *however, they do not anticipate any issues at this time.*" (Dkt. 16, p. 2 ¶ (c) (emphasis added).) Defendants repeated this

**JOINT STIPULATION RE PLAINTIFF'S MOTION TO COMPEL COMPLIANCE AND PRODUCTION OF DOCUMENTS RULE 37-2.1**

statement in July 2025 in the parties Joint Rule 26(f) Report, *which was submitted days before they served their responses*. (Dkt. 17, p. 6 ¶ (c).) This demonstrates Defendants have been trying to delay their production and avoid their discovery obligations from the very beginning. Defendants' excuses for being unable to comply (as the Court stated at the IDC) should "fall on deaf ears."

Although Defendants have since provided responses, entered into ESI Stipulations, and produced some documents, as of the date this Joint Stipulation was provided by Plaintiff to Defendants, Defendants have not completed their document production.

Plaintiff has offered to resolve this dispute by accepting the full and complete ESI-production subject to a "protective order" and "claw-back" provision. This was very similar to the idea suggested by the Court during an IDC, and reflects the Court's order when it ordered the production of Plaintiff's entire email account. Plaintiff has also suggested that Defendants produce the documents in the "hit report" that do not pose any undue burden, including for such terms as "[c-word]*," "[b-word]*", "[f-word]*," "harass*," "naked," "nude*," "onlyfans," "puss*," etc. Following the denial of previous motion to compel, Plaintiff also offered to attend an IDC. However, although Defendants expressed willingness to attend an IDC on limited items, when Plaintiff sent them the stipulation, they ultimately did not agree, subsequently represented they were changing counsel, and, ultimately, failed to complete their production.

Accordingly, Plaintiff submits a Court order is necessary to ensure Defendants comply with their discovery obligations. Also, at this point, a Court order is necessary to ensure any production is actually complete and that any such production is usable at the time of trial; this justifies the Court compelling Defendants to declare the efforts they made to comply and to authenticate their production.

(2) The Scope of the Parties' Agreement

**JOINT STIPULATION RE PLAINTIFF'S MOTION TO COMPEL COMPLIANCE AND PRODUCTION OF DOCUMENTS RULE 37-2.1**

The Parties agreed to an ESI protocol as reflected in Plaintiff's August 6, 2025, letter, as modified by subsequent correspondence. (Dkt. No. 39, pp. 71-85.) This agreement called for the entirety of Plaintiff's email during a specified time frame; all of Plaintiff's "slack" and other electronic messages that used certain terms; all emails from specific custodians that contained Plaintiff's name and variants thereof during a specific time period; all emails from those same custodians that contained certain terms during a specified time period; and all "Slack," "Signal," and other electronic messages that used certain terms during a specified time period. (*Id.*) The intent behind this was to capture all communications that were responsive to Plaintiff's discovery requests. Defendants produced an initial "hit report" that reflected this agreement, with the exception of Plaintiff's entire email account, text messages, "Signal" messages, and any electronic messages other than "Slack."

Thereafter, Defendants tried to limit this agreement to require that any email correspondence also include explicit reference to Plaintiff. This was not the agreement, including as memorialized in the correspondence. (Escalante Decl. ¶ 4.) That is, regarding emails, Defendants are required to pull all emails that include a search term *and* all emails that include variants of Plaintiff's name; the agreement does not require Defendants to only pull emails that include *both* a search term *and* variants of Plaintiff's name. In fact, Defendants' proposed limitation will exclude matters that are plainly relevant simply because they fail to mention Plaintiff: for example, if NIX instructed John Hibbeler in an email to take an intimate photograph of Plaintiff and send it to him but the email does not contain a variant of Plaintiff's name and simply uses pronouns, then it would not be responsive, even though it is an email between NIX and Hibbeler (i.e., two identified custodians) that references the word "pic*" (i.e., one of the identified terms).

**JOINT STIPULATION RE PLAINTIFF'S MOTION TO COMPEL COMPLIANCE AND PRODUCTION OF DOCUMENTS RULE 37-2.1**

Defendants' attempt to restrict the agreement only after the initial "hit" report came out indicates they are trying to suppress relevant documents.

Notably, there is no dispute regarding the agreed upon scope of the Slack and other electronic messages. That is, the August 6 letter plainly does not include any requirement that an electronic message reference Plaintiff's name at all, it merely requires Defendants to pull messages with the subject term. Defendants also did not pull another hit report to reflect any such limitation.

(3) The Timing and Burden of the Production as Impacted by the Specific "Hit Terms"

Regarding the actual production, the parties have already agreed to terms to be searched. The only issue is, thus, the alleged burden of Defendants' desire to review every single document before they are produced. This is simply not required and Defendants cannot hold up their production by self-imposing it. The Rules contemplate situations where productions occur pursuant to "quick peek" or "claw back" provisions. *See* FRE 502(d)-(e); FRCP 26(b)(5), Adv. Comm. Notes, 2006 Amend.

Plaintiff offered reasonable compromises to alleviate any burden concerns, one of which reflected the Court's comments at the IDC (i.e., "You know, there's also nothing stopping you from producing everything under a claw-back provision"). Defendants ignored these proposals, and have failed to even produce responsive ESI that poses no undue burden (i.e., terms that appear with limited frequency in the "hit report" (e.g., "[c-word]*," "[b-word]*", "[f-word]*," "harass*," "naked," "nude*," "onlyfans," "puss*," etc.). This demonstrates Defendants are intent on withholding their ESI production without a Court order.

Accordingly, the Court should fashion a remedy here using available tools to permit the Parties to complete their discovery by the discovery cutoff; Plaintiff previously made such a proposal.

**JOINT STIPULATION RE PLAINTIFF'S MOTION TO COMPEL COMPLIANCE AND PRODUCTION OF DOCUMENTS RULE 37-2.1**

(4) Whether the "Hit Reports" Capture all Electronic Messages (e.g., Text Messages and Signal), including Potential Spoliation

There is a serious concern whether the "Hit Reports" capture all electronic messages, particularly given no Signal or text messages were captured on them. Notably, Plaintiff produced significant text messages with Ryan McCartney, a former executive and current owner of RISC Point. Jake Nix also marked what appeared to be text messages as exhibits at the deposition of McCartney. However, Defendants did not produce those messages or even capture them on the "hit report." This suggests that Defendants have taken no steps to search the text messages of the identified custodians.

Moreover, the "hit reports" do not capture any Signal messages, which is an application used to communicate. During the meet and confer process, Defendants represented to Plaintiff that Defendants did not use "Signal." (Dkt. No. 33, p. 81.) However, a third-party witness confirmed they used it to discuss "sensitive" employment matters and Plaintiff, and set an auto-delete feature. No "Signal" messages have been produced. (Escalante Decl. ¶ 3, Exhs. B, C, F.) That witness also recently produced such messages between him and Drewyor that references Plaintiff, which actually shows the autodelete feature. The foregoing suggests that Defendants have taken no steps to preserve or search Signal messages of the identified custodians.

Accordingly, the only way to ensure Defendants conduct a diligent search and reasonable inquiry into all of their electronic communications, is for the Court to order Defendants to produce responsive documents.

- **REQUEST FOR PRODUCTION TO RISC POINT NO. 29 / TO NIX NO. 21:** Any and all reviews, performance appraisals, memos, studies or other similar DOCUMENTS relevant to promotions, bonuses, awards,

**JOINT STIPULATION RE PLAINTIFF'S MOTION TO COMPEL COMPLIANCE AND PRODUCTION OF DOCUMENTS RULE 37-2.1**

pay rate decisions, pay increases, raises, demotions, disciplinary actions, or the rate of PLAINTIFF's compensation while PLAINTIFF was employed with YOU. **RESPONSE TO REQUEST:** Responding Party objects that the request is unintelligible. Responding Party objects that the request is overbroad and invades privacy to the extent it pertains to any employee besides Plaintiff. Subject to the foregoing objections, Responding Party will produce payroll and personnel files of Plaintiff. **RISC POINT's SUPPLEMENTAL RESPONSE TO REQUEST:** Subject to and incorporating all prior objections and responses, Responding Party will produce payroll and personnel files of Plaintiff and comply to the extent responsive records are found as a result of the ESI Agreement between counsel.

Defendants agreed to comply with this request pursuant to the ESI Agreement and, thus, must do so.

(1) A Court Order is Necessary to Compel Compliance

Defendants have had since May 2025 to comply with their discovery obligations, which is when Plaintiff first served the subject requests. If Defendants anticipated any obstacles to full, complete, and timely compliance, they should have immediately met and conferred and should not have waited until the deadline to respond, made boilerplate objections, and forced Plaintiff to engage in a protracted meet and confer.

Notably, in its own representations to the Court in the Discovery Plan submitted in June 2025, *which is after they had already been served with the discovery and after the early meeting of counsel*, Defendants represented (along with Plaintiff) that "[t]he Parties anticipate conducting discovery seeking Electronically Stored Information; *however, they do not anticipate any issues at this time.*" (Dkt. 16, p. 2 ¶ (c) (emphasis added).) Defendants repeated this statement in July 2025 in the parties Joint Rule 26(f) Report, *which was submitted days before they served their responses*. (Dkt. 17, p. 6 ¶ (c).) This demonstrates

**JOINT STIPULATION RE PLAINTIFF'S MOTION TO COMPEL COMPLIANCE AND PRODUCTION OF DOCUMENTS RULE 37-2.1**

Defendants have been trying to delay their production and avoid their discovery obligations from the very beginning. Defendants' excuses for being unable to comply (as the Court stated at the IDC) should "fall on deaf ears."

Although Defendants have since provided responses, entered into ESI Stipulations, and produced some documents, as of the date this Joint Stipulation was provided by Plaintiff to Defendants, Defendants have not completed their document production.

Plaintiff has offered to resolve this dispute by accepting the full and complete ESI-production subject to a "protective order" and "claw-back" provision. This was very similar to the idea suggested by the Court during an IDC, and reflects the Court's order when it ordered the production of Plaintiff's entire email account. Plaintiff has also suggested that Defendants produce the documents in the "hit report" that do not pose any undue burden, including for such terms as "[c-word]*," "[b-word]*", "[f-word]*," "harass*," "naked," "nude*," "onlyfans," "puss*," etc. Following the denial of previous motion to compel, Plaintiff also offered to attend an IDC. However, although Defendants expressed willingness to attend an IDC on limited items, when Plaintiff sent them the stipulation, they ultimately did not agree, subsequently represented they were changing counsel, and, ultimately, failed to complete their production.

Accordingly, Plaintiff submits a Court order is necessary to ensure Defendants comply with their discovery obligations. Also, at this point, a Court order is necessary to ensure any production is actually complete and that any such production is usable at the time of trial; this justifies the Court compelling Defendants to declare the efforts they made to comply and to authenticate their production.

(2) The Scope of the Parties' Agreement

The Parties agreed to an ESI protocol as reflected in Plaintiff's August 6, 2025, letter, as modified by subsequent correspondence. (Dkt. No. 39, pp. 71-85.) This agreement called for the entirety of Plaintiff's email during a specified time

-74-

frame; all of Plaintiff's "slack" and other electronic messages that used certain terms; all emails from specific custodians that contained Plaintiff's name and variants thereof during a specific time period; all emails from those same custodians that contained certain terms during a specified time period; and all "Slack," "Signal," and other electronic messages that used certain terms during a specified time period. (*Id.*) The intent behind this was to capture all communications that were responsive to Plaintiff's discovery requests. Defendants produced an initial "hit report" that reflected this agreement, with the exception of Plaintiff's entire email account, text messages, "Signal" messages, and any electronic messages other than "Slack."

Thereafter, Defendants tried to limit this agreement to require that any email correspondence also include explicit reference to Plaintiff. This was not the agreement, including as memorialized in the correspondence. (Escalante Decl. ¶ 4.) That is, regarding emails, Defendants are required to pull all emails that include a search term *and* all emails that include variants of Plaintiff's name; the agreement does not require Defendants to only pull emails that include *both* a search term *and* variants of Plaintiff's name. In fact, Defendants' proposed limitation will exclude matters that are plainly relevant simply because they fail to mention Plaintiff: for example, if NIX instructed John Hibbeler in an email to take an intimate photograph of Plaintiff and send it to him but the email does not contain a variant of Plaintiff's name and simply uses pronouns, then it would not be responsive, even though it is an email between NIX and Hibbeler (i.e., two identified custodians) that references the word "pic*" (i.e., one of the identified terms). Defendants' attempt to restrict the agreement only after the initial "hit" report came out indicates they are trying to suppress relevant documents.

Notably, there is no dispute regarding the agreed upon scope of the Slack and other electronic messages. That is, the August 6 letter plainly does not include

**JOINT STIPULATION RE PLAINTIFF'S MOTION TO COMPEL COMPLIANCE AND PRODUCTION OF DOCUMENTS RULE 37-2.1**

any requirement that an electronic message reference Plaintiff's name at all, it merely requires Defendants to pull messages with the subject term. Defendants also did not pull another hit report to reflect any such limitation.

(3) The Timing and Burden of the Production as Impacted by the Specific "Hit Terms"

Regarding the actual production, the parties have already agreed to terms to be searched. The only issue is, thus, the alleged burden of Defendants' desire to review every single document before they are produced. This is simply not required and Defendants cannot hold up their production by self-imposing it. The Rules contemplate situations where productions occur pursuant to "quick peek" or "claw back" provisions. *See* FRE 502(d)-(e); FRCP 26(b)(5), Adv. Comm. Notes, 2006 Amend.

Plaintiff offered reasonable compromises to alleviate any burden concerns, one of which reflected the Court's comments at the IDC (i.e., "You know, there's also nothing stopping you from producing everything under a claw-back provision"). Defendants ignored these proposals, and have failed to even produce responsive ESI that poses no undue burden (i.e., terms that appear with limited frequency in the "hit report" (e.g., "[c-word]*," "[b-word]*", "[f-word]*," "harass*," "naked," "nude*," "onlyfans," "puss*," etc.). This demonstrates Defendants are intent on withholding their ESI production without a Court order.

Accordingly, the Court should fashion a remedy here using available tools to permit the Parties to complete their discovery by the discovery cutoff; Plaintiff previously made such a proposal.

(4) Whether the "Hit Reports" Capture all Electronic Messages (e.g., Text Messages and Signal), including Potential Spoliation

There is a serious concern whether the "Hit Reports" capture all electronic messages, particularly given no Signal or text messages were captured on them.

**JOINT STIPULATION RE PLAINTIFF'S MOTION TO COMPEL COMPLIANCE AND PRODUCTION OF DOCUMENTS RULE 37-2.1**

Notably, Plaintiff produced significant text messages with Ryan McCartney, a former executive and current owner of RISC Point. Jake Nix also marked what appeared to be text messages as exhibits at the deposition of McCartney. However, Defendants did not produce those messages or even capture them on the "hit report." This suggests that Defendants have taken no steps to search the text messages of the identified custodians.

Moreover, the "hit reports" do not capture any Signal messages, which is an application used to communicate. During the meet and confer process, Defendants represented to Plaintiff that Defendants did not use "Signal." (Dkt. No. 33, p. 81.) However, a third-party witness confirmed they used it to discuss "sensitive" employment matters and Plaintiff, and set an auto-delete feature. No "Signal" messages have been produced. (Escalante Decl. ¶ 3, Exhs. B, C, F.) That witness also recently produced such messages between him and Drewyor that references Plaintiff, which actually shows the autodelete feature. The foregoing suggests that Defendants have taken no steps to preserve or search Signal messages of the identified custodians.

Accordingly, the only way to ensure Defendants conduct a diligent search and reasonable inquiry into all of their electronic communications, is for the Court to order Defendants to produce responsive documents.

- **REQUEST FOR PRODUCTION TO RISC POINT NO. 30 / TO NIX NO. 22:** Any and all DOCUMENTS, including internal memoranda, which evidence, refer to, or RELATE TO [sic] quality of PLAINTIFF s job performance. **RESPONSE TO REQUEST:** Responding Party objects that the request is unintelligible. Responding Party objects that the request is overbroad and unduly burdensome given the issues in the case. Subject to the foregoing objections, Responding Party will produce personnel files and any documents reflecting discipline,

-77-

reprimand, or warning. **SUPPLEMENTAL RESPONSE TO REQUEST:** Subject to and incorporating all prior objections and responses, Responding Party will produce personnel files and any documents reflecting discipline, reprimand, or warning and comply to the extent responsive records are found as a result of the ESI Agreement between counsel.

Defendants agreed to comply with this request pursuant to the ESI Agreement and, thus, must do so.

(1) A Court Order is Necessary to Compel Compliance

Defendants have had since May 2025 to comply with their discovery obligations, which is when Plaintiff first served the subject requests. If Defendants anticipated any obstacles to full, complete, and timely compliance, they should have immediately met and conferred and should not have waited until the deadline to respond, made boilerplate objections, and forced Plaintiff to engage in a protracted meet and confer.

Notably, in its own representations to the Court in the Discovery Plan submitted in June 2025, *which is after they had already been served with the discovery and after the early meeting of counsel*, Defendants represented (along with Plaintiff) that "[t]he Parties anticipate conducting discovery seeking Electronically Stored Information; *however, they do not anticipate any issues at this time.*" (Dkt. 16, p. 2 ¶ (c) (emphasis added).) Defendants repeated this statement in July 2025 in the parties Joint Rule 26(f) Report, *which was submitted days before they served their responses*. (Dkt. 17, p. 6 ¶ (c).) This demonstrates Defendants have been trying to delay their production and avoid their discovery obligations from the very beginning. Defendants' excuses for being unable to comply (as the Court stated at the IDC) should "fall on deaf ears."

Although Defendants have since provided responses, entered into ESI Stipulations, and produced some documents, as of the date this Joint Stipulation

-78-

**JOINT STIPULATION RE PLAINTIFF'S MOTION TO COMPEL COMPLIANCE AND PRODUCTION OF DOCUMENTS RULE 37-2.1**

was provided by Plaintiff to Defendants, Defendants have not completed their document production.

Plaintiff has offered to resolve this dispute by accepting the full and complete ESI-production subject to a "protective order" and "claw-back" provision. This was very similar to the idea suggested by the Court during an IDC, and reflects the Court's order when it ordered the production of Plaintiff's entire email account. Plaintiff has also suggested that Defendants produce the documents in the "hit report" that do not pose any undue burden, including for such terms as "[c-word]*," "[b-word]*", "[f-word]*," "harass*," "naked," "nude*," "onlyfans," "puss*," etc. Following the denial of previous motion to compel, Plaintiff also offered to attend an IDC. However, although Defendants expressed willingness to attend an IDC on limited items, when Plaintiff sent them the stipulation, they ultimately did not agree, subsequently represented they were changing counsel, and, ultimately, failed to complete their production.

Accordingly, Plaintiff submits a Court order is necessary to ensure Defendants comply with their discovery obligations. Also, at this point, a Court order is necessary to ensure any production is actually complete and that any such production is usable at the time of trial; this justifies the Court compelling Defendants to declare the efforts they made to comply and to authenticate their production.

(2) The Scope of the Parties' Agreement

The Parties agreed to an ESI protocol as reflected in Plaintiff's August 6, 2025, letter, as modified by subsequent correspondence. (Dkt. No. 39, pp. 71-85.) This agreement called for the entirety of Plaintiff's email during a specified time frame; all of Plaintiff's "slack" and other electronic messages that used certain terms; all emails from specific custodians that contained Plaintiff's name and variants thereof during a specific time period; all emails from those same custodians that contained certain terms during a specified time period; and all "Slack," "Signal," and other electronic messages that used certain terms during a

**JOINT STIPULATION RE PLAINTIFF'S MOTION TO COMPEL COMPLIANCE AND PRODUCTION OF DOCUMENTS RULE 37-2.1**

specified time period. (*Id.*) The intent behind this was to capture all communications that were responsive to Plaintiff's discovery requests. Defendants produced an initial "hit report" that reflected this agreement, with the exception of Plaintiff's entire email account, text messages, "Signal" messages, and any electronic messages other than "Slack."

Thereafter, Defendants tried to limit this agreement to require that any email correspondence also include explicit reference to Plaintiff. This was not the agreement, including as memorialized in the correspondence. (Escalante Decl. ¶ 4.) That is, regarding emails, Defendants are required to pull all emails that include a search term *and* all emails that include variants of Plaintiff's name; the agreement does not require Defendants to only pull emails that include *both* a search term *and* variants of Plaintiff's name. In fact, Defendants' proposed limitation will exclude matters that are plainly relevant simply because they fail to mention Plaintiff: for example, if NIX instructed John Hibbeler in an email to take an intimate photograph of Plaintiff and send it to him but the email does not contain a variant of Plaintiff's name and simply uses pronouns, then it would not be responsive, even though it is an email between NIX and Hibbeler (i.e., two identified custodians) that references the word "pic*" (i.e., one of the identified terms). Defendants' attempt to restrict the agreement only after the initial "hit" report came out indicates they are trying to suppress relevant documents.

Notably, there is no dispute regarding the agreed upon scope of the Slack and other electronic messages. That is, the August 6 letter plainly does not include any requirement that an electronic message reference Plaintiff's name at all, it merely requires Defendants to pull messages with the subject term. Defendants also did not pull another hit report to reflect any such limitation.

(3) The Timing and Burden of the Production as Impacted by the Specific "Hit Terms"

**JOINT STIPULATION RE PLAINTIFF'S MOTION TO COMPEL COMPLIANCE AND PRODUCTION OF DOCUMENTS RULE 37-2.1**

Regarding the actual production, the parties have already agreed to terms to be searched. The only issue is, thus, the alleged burden of Defendants' desire to review every single document before they are produced. This is simply not required and Defendants cannot hold up their production by self-imposing it. The Rules contemplate situations where productions occur pursuant to "quick peek" or "claw back" provisions. *See* FRE 502(d)-(e); FRCP 26(b)(5), Adv. Comm. Notes, 2006 Amend.

Plaintiff offered reasonable compromises to alleviate any burden concerns, one of which reflected the Court's comments at the IDC (i.e., "You know, there's also nothing stopping you from producing everything under a claw-back provision"). Defendants ignored these proposals, and have failed to even produce responsive ESI that poses no undue burden (i.e., terms that appear with limited frequency in the "hit report" (e.g., "[c-word]*," "[b-word]*", "[f-word]*," "harass*," "naked," "nude*," "onlyfans," "puss*," etc.). This demonstrates Defendants are intent on withholding their ESI production without a Court order.

Accordingly, the Court should fashion a remedy here using available tools to permit the Parties to complete their discovery by the discovery cutoff; Plaintiff previously made such a proposal.

(4) Whether the "Hit Reports" Capture all Electronic Messages (e.g., Text Messages and Signal), including Potential Spoliation

There is a serious concern whether the "Hit Reports" capture all electronic messages, particularly given no Signal or text messages were captured on them. Notably, Plaintiff produced significant text messages with Ryan McCartney, a former executive and current owner of RISC Point. Jake Nix also marked what appeared to be text messages as exhibits at the deposition of McCartney. However, Defendants did not produce those messages or even capture them on the "hit

**JOINT STIPULATION RE PLAINTIFF'S MOTION TO COMPEL COMPLIANCE AND PRODUCTION OF DOCUMENTS RULE 37-2.1**

report." This suggests that Defendants have taken no steps to search the text messages of the identified custodians.

Moreover, the "hit reports" do not capture any Signal messages, which is an application used to communicate. During the meet and confer process, Defendants represented to Plaintiff that Defendants did not use "Signal." (Dkt. No. 33, p. 81.) However, a third-party witness confirmed they used it to discuss "sensitive" employment matters and Plaintiff, and set an auto-delete feature. No "Signal" messages have been produced. (Escalante Decl. ¶ 3, Exhs. B, C, F.) That witness also recently produced such messages between him and Drewyor that references Plaintiff, which actually shows the autodelete feature. The foregoing suggests that Defendants have taken no steps to preserve or search Signal messages of the identified custodians.

Accordingly, the only way to ensure Defendants conduct a diligent search and reasonable inquiry into all of their electronic communications, is for the Court to order Defendants to produce responsive documents.

- **REQUEST FOR PRODUCTION TO RISC POINT NO. 37 / TO NIX NO. 26:** Please produce any and all DOCUMENTS that describe, refer to, or evidence any statement YOU have made about PLAINTIFF violating your policies. **RESPONSE TO REQUEST:** Responding Party objects that the term "policies" is vague. Subject to the foregoing objections, and as best Responding Party can understand the request, Responding Party will produce documents evidencing Plaintiff's poor job performance. **SUPPLEMENTAL RESPONSE TO REQUEST:** Subject to and incorporating all prior objections and responses, Responding Party will produce documents evidencing Plaintiff's poor job performance and comply to the extent responsive records are found as a result of the ESI Agreement between counsel.

**JOINT STIPULATION RE PLAINTIFF'S MOTION TO COMPEL COMPLIANCE AND PRODUCTION OF DOCUMENTS RULE 37-2.1**

Defendants agreed to comply with this request pursuant to the ESI Agreement and, thus, must do so.

(1) A Court Order is Necessary to Compel Compliance

Defendants have had since May 2025 to comply with their discovery obligations, which is when Plaintiff first served the subject requests. If Defendants anticipated any obstacles to full, complete, and timely compliance, they should have immediately met and conferred and should not have waited until the deadline to respond, made boilerplate objections, and forced Plaintiff to engage in a protracted meet and confer.

Notably, in its own representations to the Court in the Discovery Plan submitted in June 2025, *which is after they had already been served with the discovery and after the early meeting of counsel*, Defendants represented (along with Plaintiff) that "[t]he Parties anticipate conducting discovery seeking Electronically Stored Information; *however, they do not anticipate any issues at this time.*" (Dkt. 16, p. 2 ¶ (c) (emphasis added).) Defendants repeated this statement in July 2025 in the parties Joint Rule 26(f) Report, *which was submitted days before they served their responses*. (Dkt. 17, p. 6 ¶ (c).) This demonstrates Defendants have been trying to delay their production and avoid their discovery obligations from the very beginning. Defendants' excuses for being unable to comply (as the Court stated at the IDC) should "fall on deaf ears."

Although Defendants have since provided responses, entered into ESI Stipulations, and produced some documents, as of the date this Joint Stipulation was provided by Plaintiff to Defendants, Defendants have not completed their document production.

Plaintiff has offered to resolve this dispute by accepting the full and complete ESI-production subject to a "protective order" and "claw-back" provision. This was very similar to the idea suggested by the Court during an IDC, and reflects the Court's order

**JOINT STIPULATION RE PLAINTIFF'S MOTION TO COMPEL COMPLIANCE AND PRODUCTION OF DOCUMENTS RULE 37-2.1**

when it ordered the production of Plaintiff's entire email account. Plaintiff has also suggested that Defendants produce the documents in the "hit report" that do not pose any undue burden, including for such terms as "[c-word]*," "[b-word]*", "[f-word]*," "harass*," "naked," "nude*," "onlyfans," "puss*," etc. Following the denial of previous motion to compel, Plaintiff also offered to attend an IDC. However, although Defendants expressed willingness to attend an IDC on limited items, when Plaintiff sent them the stipulation, they ultimately did not agree, subsequently represented they were changing counsel, and, ultimately, failed to complete their production.

Accordingly, Plaintiff submits a Court order is necessary to ensure Defendants comply with their discovery obligations. Also, at this point, a Court order is necessary to ensure any production is actually complete and that any such production is usable at the time of trial; this justifies the Court compelling Defendants to declare the efforts they made to comply and to authenticate their production.

(2) The Scope of the Parties' Agreement

The Parties agreed to an ESI protocol as reflected in Plaintiff's August 6, 2025, letter, as modified by subsequent correspondence. (Dkt. No. 39, pp. 71-85.) This agreement called for the entirety of Plaintiff's email during a specified time frame; all of Plaintiff's "slack" and other electronic messages that used certain terms; all emails from specific custodians that contained Plaintiff's name and variants thereof during a specific time period; all emails from those same custodians that contained certain terms during a specified time period; and all "Slack," "Signal," and other electronic messages that used certain terms during a specified time period. (*Id.*) The intent behind this was to capture all communications that were responsive to Plaintiff's discovery requests. Defendants produced an initial "hit report" that reflected this agreement, with the exception of Plaintiff's entire email account, text messages, "Signal" messages, and any electronic messages other than "Slack."

-84-

**JOINT STIPULATION RE PLAINTIFF'S MOTION TO COMPEL COMPLIANCE AND PRODUCTION OF DOCUMENTS RULE 37-2.1**

Thereafter, Defendants tried to limit this agreement to require that any email correspondence also include explicit reference to Plaintiff. This was not the agreement, including as memorialized in the correspondence. (Escalante Decl. ¶ 4.) That is, regarding emails, Defendants are required to pull all emails that include a search term *and* all emails that include variants of Plaintiff's name; the agreement does not require Defendants to only pull emails that include *both* a search term *and* variants of Plaintiff's name. In fact, Defendants' proposed limitation will exclude matters that are plainly relevant simply because they fail to mention Plaintiff: for example, if NIX instructed John Hibbeler in an email to take an intimate photograph of Plaintiff and send it to him but the email does not contain a variant of Plaintiff's name and simply uses pronouns, then it would not be responsive, even though it is an email between NIX and Hibbeler (i.e., two identified custodians) that references the word "pic*" (i.e., one of the identified terms). Defendants' attempt to restrict the agreement only after the initial "hit" report came out indicates they are trying to suppress relevant documents.

Notably, there is no dispute regarding the agreed upon scope of the Slack and other electronic messages. That is, the August 6 letter plainly does not include any requirement that an electronic message reference Plaintiff's name at all, it merely requires Defendants to pull messages with the subject term. Defendants also did not pull another hit report to reflect any such limitation.

(3) The Timing and Burden of the Production as Impacted by the Specific "Hit Terms"

Regarding the actual production, the parties have already agreed to terms to be searched. The only issue is, thus, the alleged burden of Defendants' desire to review every single document before they are produced. This is simply not required and Defendants cannot hold up their production by self-imposing it. The Rules contemplate situations where productions occur pursuant to "quick peek" or

**JOINT STIPULATION RE PLAINTIFF'S MOTION TO COMPEL COMPLIANCE AND PRODUCTION OF DOCUMENTS RULE 37-2.1**

"claw back" provisions. *See* FRE 502(d)-(e); FRCP 26(b)(5), Adv. Comm. Notes, 2006 Amend.

Plaintiff offered reasonable compromises to alleviate any burden concerns, one of which reflected the Court's comments at the IDC (i.e., "You know, there's also nothing stopping you from producing everything under a claw-back provision"). Defendants ignored these proposals, and have failed to even produce responsive ESI that poses no undue burden (i.e., terms that appear with limited frequency in the "hit report" (e.g., "[c-word]*," "[b-word]*", "[f-word]*," "harass*," "naked," "nude*," "onlyfans," "puss*," etc.). This demonstrates Defendants are intent on withholding their ESI production without a Court order.

Accordingly, the Court should fashion a remedy here using available tools to permit the Parties to complete their discovery by the discovery cutoff; Plaintiff previously made such a proposal.

(4) Whether the "Hit Reports" Capture all Electronic Messages (e.g., Text Messages and Signal), including Potential Spoliation

There is a serious concern whether the "Hit Reports" ccapture all electronic messages, particularly given no Signal or text messages were captured on them. Notably, Plaintiff produced significant text messages with Ryan McCartney, a former executive and current owner of RISC Point. Jake Nix also marked what appeared to be text messages as exhibits at the deposition of McCartney. However, Defendants did not produce those messages or even capture them on the "hit report." This suggests that Defendants have taken no steps to search the text messages of the identified custodians.

Moreover, the "hit reports" do not capture any Signal messages, which is an application used to communicate. During the meet and confer process, Defendants represented to Plaintiff that Defendants did not use "Signal." (Dkt. No. 33, p. 81.) However, a third-party witness confirmed they used it to discuss "sensitive"

**JOINT STIPULATION RE PLAINTIFF'S MOTION TO COMPEL COMPLIANCE AND PRODUCTION OF DOCUMENTS RULE 37-2.1**

employment matters and Plaintiff, and set an auto-delete feature. No "Signal" messages have been produced. (Escalante Decl. ¶ 3, Exhs. B, C, F.) That witness also recently produced such messages between him and Drewyor that references Plaintiff, which actually shows the autodelete feature. The foregoing suggests that Defendants have taken no steps to preserve or search Signal messages of the identified custodians.

Accordingly, the only way to ensure Defendants conduct a diligent search and reasonable inquiry into all of their electronic communications, is for the Court to order Defendants to produce responsive documents.

### D.    Defendant Risc Point Advisory Group LLC's Contentions/Memorandum of Points and Authorities

Having only recently come onto this matter, Counsel for Risc Point Advisory Group LLC are still in the process of determining what has and has not been produced responsive to Plaintiff's requests. Defendant Risc Point Advisory Group LLC's therefore reserves its right to assert objections and supplement prior responses in accordance with relevant court orders. Defendant Risc Point Advisory Group LLC additionally incorporates the memorandum of points and authorities articulated by Defendant Jake Nix below. Defendant Risc Point Advisory Group LLC responds in the order and sequence the RFPs were presented by Plaintiff:

**Risc Point Advisory Group LLC's Response to RFP Nos. 2, 15, 17, 19, 21, 22, 23, 29, 30, 32, 37:** Plaintiff's counsel articulates no persuasive basis for this RFP and Defendant Risc Point Advisory Group LLC therefore renews its previous objections. To the extent the related discovery responses include objections and are based on the identical requests propounded on Defendant Jacob Nix, Defendant Risc Point Advisory Group LLC incorporates them here. Defendant reserves the right to supplement these responses as necessary.

**JOINT STIPULATION RE PLAINTIFF'S MOTION TO COMPEL COMPLIANCE AND PRODUCTION OF DOCUMENTS RULE 37-2.1**

**Risc Point Advisory Group LLC's Response to RFP No. 9:** Plaintiff's counsel articulates no persuasive basis for this RFP and Defendant Risc Point Advisory Group LLC therefore renews its previous objections. Defendant Risc Point Advisory Group LLC reserves the right to supplement this response as necessary.

**Risc Point Advisory Group LLC's Response to RFP No. 11:** Plaintiff's counsel articulates no persuasive basis for this RFP and Defendant Risc Point Advisory Group LLC therefore renews its previous objections. Defendant Risc Point Advisory Group LLC reserves the right to supplement this response as necessary.

**Risc Point Advisory Group LLC's Response to RFP No. 12:** Plaintiff's counsel articulates no persuasive basis for this RFP and Defendant Risc Point Advisory Group LLC therefore renews its previous objections. Defendant Risc Point Advisory Group LLC reserves the right to supplement this response as necessary.

**Risc Point Advisory Group LLC's Response to RFP No. 14:** Plaintiff's counsel articulates no persuasive basis for this RFP and Defendant Risc Point Advisory Group LLC therefore renews its previous objections. Defendant Risc Point Advisory Group LLC reserves the right to supplement this response as necessary.

**Risc Point Advisory Group LLC's Response to RFP No. 20:** Plaintiff's counsel articulates no persuasive basis for this RFP and Defendant Risc Point Advisory Group LLC therefore renews its previous objections. Defendant Risc Point Advisory Group LLC reserves the right to supplement this response as necessary.

**Risc Point Advisory Group LLC's Response to RFP No. 31:** Plaintiff's counsel articulates no persuasive basis for this RFP and Defendant Risc Point Advisory Group

**JOINT STIPULATION RE PLAINTIFF'S MOTION TO COMPEL COMPLIANCE AND PRODUCTION OF DOCUMENTS RULE 37-2.1**

LLC therefore renews its previous objections. Defendant Risc Point Advisory Group LLC reserves the right to supplement this response as necessary.

**Risc Point Advisory Group LLC's Response to RFP No. 33:** Plaintiff's counsel articulates no persuasive basis for this RFP and Defendant Risc Point Advisory Group LLC therefore renews its previous objections. Defendant Risc Point Advisory Group LLC reserves the right to supplement this response as necessary.

**Risc Point Advisory Group LLC's Response to RFP No. 36:** Plaintiff's counsel articulates no persuasive basis for this RFP and Defendant Risc Point Advisory Group LLC therefore renews its previous objections. Defendant Risc Point Advisory Group LLC reserves the right to supplement this response as necessary.

E.    **Defendant Nix's Contentions/Memorandum of Points and Authorities**

As a preliminary matter, Nix object that the discovery in dispute has not been presented in a way consistent with Local Rule 37.  At the October 22, 2025 hearing, the Magistrate Judge specifically criticized Plaintiff's counsel for not presenting the discovery in an easy-to-follow format (such as a traditional "Separate Statement" format).    Nix nevertheless respond to discovery discussed more than 60 pages earlier.  Nix responds in the order and sequence the RFPs were presented by Plaintiff:

**Nix Response to RFP No. 8:** This request was not previously at issue. Plaintiff previously buried this request in Footnote 3 of her prior motion (Doc. #33), conceding that Risc Point already agreed to produce all documents supporting affirmative defenses and that Nix implicitly and practically agreed to do the same. *Id.* fn. 4 ("During multiple meet and confer conferences, counsel for the parties agreed that all duplicative requests would be answered similarly.").  There is no affirmative defense that is unique to Nix that does not apply to Risc Point.

**JOINT STIPULATION RE PLAINTIFF'S MOTION TO COMPEL COMPLIANCE AND PRODUCTION OF DOCUMENTS RULE 37-2.1**

Documents supporting affirmative defenses were produced. *See* Declaration of Geoffrey Lee ("Lee Decl.") at ¶23. Nix has every incentive to produce responsive documents lest he not be able to satisfy his burden of proof on affirmative defenses at trial. That Nix did not supplement the response previously to match Risc Point's was merely a clerical oversight.

As to the technical objection, RFP No. 8 on its face asks for an application of law to fact for over a dozen affirmative defenses all bunched as one. Plaintiff's cited case of *Superior Communications v. Earhugger, Inc.,* 257 F.R.D. 215, 219 (C.D. Cal. 2009) is distinguishable. In that case, the propounding party issued twelve separate Requests for Documents for each twelve separate affirmative defenses. *Id.* at 219 ("(Request nos. 1–6, 11–15 and 38–39.). The court noted that these were drafted in a way to "complement" the structure of FRCP 33 contention interrogatories, which asked the responding party to identify documents that support the affirmative defense. Although the exact wording of the RFP is not noted in the opinion, it appears that the wording was to request production of those documents identified in the contention interrogatories. Finally, the *Superior Communications* court had no opportunity to rule or comment on the objection against contention-type requests for documents because the responding party did not raise that objection.

**Nix Response to RFP No. 9:** Again, Nix agreed to be bound by the same statement of compliance and same orders of compliance as Risc Point. (Doc. #33, fn. 4). That Nix did not supplement the response previously to match Risc Point's was merely a clerical oversight.

**Nix Response to RFP No. 12:** Nix expressly agreed to comply and has complied with the ESI Agreement by having KL Discovery pull all of Nix's emails with the subject search words. Plaintiff cites no authority for her argument that Nix must further "verify" an after-the-fact completed production. Besides, how would Nix even do that? Is that not

**JOINT STIPULATION RE PLAINTIFF'S MOTION TO COMPEL COMPLIANCE AND PRODUCTION OF DOCUMENTS RULE 37-2.1**

what deposition is for? To ask the deponent how he went about his document search? Plaintiff has never presented any template verification or declaration about what he is being asked to "verify" within his personal knowledge. Furthermore, Plaintiff fails to explain how many of Nix's emails using the word "cunt" or some variation have been produced compared to how many are suspected to exist. As such, Nix cannot even begin fairly to respond to any implied discrepancy.

**Nix Response to RFP No. 16/18**: Again, Nix has promised to comply and has done so. Plaintiff has already obtained all investigation records from all available sources: Defendants, Defendants' counsel, outside investigator John Hawkins, and outside investigator Aisha Adam. There is apparently nothing Plaintiff does not already have. Plaintiff apparently now accuses Risc Point's Ohio counsel (who initially communicated with Hawkins and Adam) of missing one email in its production that was later produced by Adam or Hawkins. So what? Perfection is not the standard. The standard is diligence and reasonable inquiry. *Wagstaff & Tashima, Group Prac. Guide Fed. Civ. Pro. Before Trial* § 11:1913 (The Rutter Group 2025) ("a diligent search and reasonable inquiry has been made in an effort to locate the item requested."). Nix himself had barely two communications with Hawkins to schedule an interview, and those emails have been produced. Nix did not communicate with Adam.

**Nix Response to RFP No. 20**: As best as Plaintiff's argument can be understood, Plaintiff is now inquiring about a *new* insurance policy based on a *new* cause of action in the pending Proposed First Amended Complaint. This argument is therefore premature. (Counsel continue to meet and confer on the subject). This issue is not ripe for any judicial determination.

**Nix Response to RFP No. 24:** In so far as the "hiring" of HR Manager Allison Bailey is a corporate employer function, Nix has nothing to add or do that is different than that of Risc Point. It is undisputed that Ms. Bailey was already the HR Manager in July 2022 and then went on maternity leave, only to resume work after maternity leave around

May 2025.  Documents regarding her resumption of work were manually searched for and produced as a courtesy so Plaintiff did not have to wait for the ESI production.  Lee Decl. at ¶28.  Once again, Plaintiff cites no authority for her demand that Defendants must somehow have "verified they have completed their production" after the fact.

**Nix Response to RFP No. 1/2**: Nix incorporates by reference the comments about the ESI Agreement *infra.*

**Nix Response to RFP Nos. 11, 13, 14, 19, 22 and 24:** Nix incorporates by reference the comments about the ESI Agreement *infra*. Again, Nix agreed to be bound by the same statement of compliance and same orders of compliance as Risc Point.  (Doc. #33, fn. 4).

**Nix Response to new ESI Arguments:**

Plaintiff appears to argue that defense counsel led her to believe at the outset of this case that E-discovery would be quick and simple.  Indeed, counsel for ***both sides*** assumed before discovery began in earnest that requests for e-mails would be more reasonable and manageable than it turned out to be.  Plaintiff presumably knew her own discovery plan before she propounded Requests for Documents.  Plaintiff initially assured Defendants and the Court that discovery would be manageable such that no phases would be necessary.  Doc. #16, 1:10.  Plaintiff anticipated no unusual E-discovery issues.  *Id.* at 1:18.  Yet weeks later, Plaintiff insisted on overbroad requests for all emails bearing her name.  It took Plaintiff's counsel two months to first suggest custodians and search terms. As such, Plaintiff's counsel is equally if not more to blame for creating the present overbroad ESI nightmare.  Plaintiff has refused to remove even one single custodian.  Magistrate Spaeth's Model Stipulated Order states: "the parties shall add or remove custodians as reasonably necessary." (Magistrate Spaeth Stip. Order ¶IV(B)).  To date, Risc Point has produced 35,393 pages of documents and incurred at least $62,000 in E-discovery vendor and reviewer costs.  Lee Decl. ¶41.

**JOINT STIPULATION RE PLAINTIFF'S MOTION TO COMPEL COMPLIANCE AND PRODUCTION OF DOCUMENTS RULE 37-2.1**

1   Plaintiff's over-arching theme is that an ESI production should be only take a matter

2   of days because a party can perform a document dump and then "claw back" later anything

3   the party should not have produced.  This assumption is oversimplified and dangerous for a

4   number of reasons.

5   First, claw back agreements were historically intended to address inadvertent

6   production of *privileged* matter.  Fed.R.Civ.P. 26 Advisory Comm. Note, 2006

7   Amendment, Subdivision (f). Such clawback provisions may permit parties to "forego

8   privilege review altogether in favor of an agreement to return inadvertently produced

9   privileged documents." Fed.R.Evid. 502, (Advisory Comm. Explanatory Note, Rev.

10  11/28/2007) (*citing Zubulake v. UBS Warburg LLC*, 216 F.R.D. 280, 290

11  (S.D.N.Y.2003)).  Yet Plaintiff has cited no authority – and Nix has found none –

12  suggesting that a claw back agreement is intended to address potential waivers of employee

13  privacy, customer privacy, patient privacy, HIPAA, and other forms of confidentiality.

14  The distinction makes a big difference.  A party can agree to risk disclosure of its own

15  confidences.  Yet not every party can agree to risk disclosure of *third party* confidences.

16  Because an employer owes a duty of confidentiality to its employees, it must take the time

17  and care to review records for employee privacy (including marking documents

18  "CONFIDENTIAL" selectively).  Because a business may owe a duty of confidentiality to

19  its customers or patients, it must take the time and care to review records diligently.  If a

20  claw back agreement does not apply to third-party confidentiality, then by default "efforts

21  ae necessary" to engage in time-consuming review and "the risk of waiver can impose

22  substantial costs on the party producing the material."  Fed.R.Civ.P. 26 Advisory Comm.

23  Note, 2006 Amendment, Subdivision (f).

24  Here, Risc Point noted that it owes heightened duties of care to review ESI for

25  customer data.  Risc Point is, after all, a cyber security firm.  Some of its clients are federal

26  agencies that require higher levels of security for data being held by Risc Point.  Drewyor

27  Decl. ¶5.

28

-93-

**JOINT STIPULATION RE PLAINTIFF'S MOTION TO COMPEL COMPLIANCE AND PRODUCTION OF DOCUMENTS RULE 37-2.1**

Second, whether Plaintiff's presumed-cursory review of ESI may precede a lawful claw back is also doubtful. Courts often require some attempt to review and set aside privileged records before allowing a party to claw back a privileged record. *Desouza v. Park West Apartments, Inc.*, 2018 WL 625010 (D. Conn. 2018) ("so lax, careless, inadequate, or indifferent to consequences as to constitute a waiver."). Some courts will now allow claw back if the party's review was "reckless." *irth Solutions, LLC v. Windstream Communications, LLC*, 2018 WL 575911, at *2 (S.D. Ohio 2018). As such, even if Risc Point could later claw back documents, it presumably cannot act recklessly before producing ESI. It must engage in some review.

Third, the parties do not even have a claw back agreement *per se*. The parties did not discuss a claw back agreement, and certainly did not contemplate a claw back of private third party documents. At best, the Stipulated ESI Protective Order protects against inadvertent disclosure of attorney-client privileged or attorney work product matter. Doc. #35, Section VIII(A). But again, there is no application to third party privacy. *Id.*

Finally, the Court previously expressed some approval of a claw back procedure at an Informal Discovery Conference on October 2, 2025. Yet that IDC presented a different set of circumstances. The ESI at issue in that conference was *Plaintiff's own emails* and *Plaintiff's own Slack messages*. There was far less a risk of Plaintiff having sensitive customer data, as Plaintiff did not regularly interact with customers. Indeed, because the ESI then at issue was all Plaintiff's communications, they were all communications she had seen previously in the course of her own work. (Production still took KL Discovery logistically several days). The remaining ESI at issue here, however, are hundreds of thousands of e-mails and Slack messages on which Plaintiff is neither an author nor recipient. They are far more sensitive in nature and warrant human review before being produced.

It is time for Plaintiff's ESI fishing expedition to end. Overly broad search terms can result in over four (4) months of time to review the captured ESI. *See, e.g., Shaw*

-94-

*Group Inc. v. Zurich Am. Ins. Co.*, 2014 WL 4373210, at *5 (M.D. La. 2014) (M.D. La. 2014) (rejecting plaintiff's proposed search terms that would have "generated 103,202 e-mails and an estimated 20,000 attachments, which would take 10-12 weeks to review, [and] an additional 2 weeks to perform redaction…."). In *Victor Stanley, Inc. v. Creative Pipeline, Inc.,* 250 F.R.D. 251, 256-257 (D. Ma. 2008), the production of ESI took from May to September, *i.e.* **5 months**, apparently based on the court's ordered deadline. *Victor Stanley*, *supra*, 250 F.R.D. at 254-255. Even those five months were considered by the reviewing attorney to be rushed under a "compressed schedule and time constraints" such that it led to inadvertent production of privileged documents. *Id*. at 256.

"The Court will not compel defendants to produce any document simply because it contains a search term whether or not it is responsive to the discovery request…." *Palmer v. Cognizant Tech. Sols. Corp.*, 2021 WL 3145982, at *9 (C.D. Cal. 2021). Plaintiff cannot have it both ways: demanding every single email but also demanding every single email be produced immediately. Because Plaintiff has not demonstrated what relevant ESI is missing such that the continued high cost and burdens would outweigh the probative value of searching for and producing that ESI, Plaintiff's motion should be denied.

Date: November 13, 2025           Respectfully submitted,

By: _____
     RUBEN D. ESCALANTE
     JEFF T. OLSEN
     Attorney for Plaintiff
     ASHLEY FRAGALE

**JOINT STIPULATION RE PLAINTIFF'S MOTION TO COMPEL COMPLIANCE AND PRODUCTION OF DOCUMENTS RULE 37-2.1**

Date: November 13, 2025             Respectfully submitted,

GORDON REES SCULLY
MANSUKHANI, LLP


            /s/ via email authorization
By: _____
    L. GEOFFREY LEE
    Attorney for Defendants
    RISC POINT ASSURANCE, LTD;
    RISC POINT HOLDINGS, INC.;
    JACOB NIX

Date: November 13, 2025             Respectfully submitted,

JACKSON LEWIS


            /s/ via email authorization
By: _____
    NEDA DAL CIELO
    Attorney for Defendant
    RISC POINT ADVISORY GROUP
    LLC

**JOINT STIPULATION RE PLAINTIFF'S MOTION TO COMPEL COMPLIANCE AND PRODUCTION OF DOCUMENTS RULE 37-2.1**

Exhibit A

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA
## CIVIL MINUTES—
## GENERAL

| Case No. | 8:25-cv-00994-JWH-ADSx | Date | July 14, 2025 |
|---|---|---|---|
| Title | *Ashley Fragale v. RISC Point Advisory Group LLC, et al.* | | |

| Present: The Honorable | JOHN W. HOLCOMB, UNITED STATES DISTRICT JUDGE |
|---|---|

| Priscilla Deason | Not Reported |
|---|---|
| Deputy Clerk | Court Reporter |

| Attorney(s) Present for Plaintiff(s): | Attorney(s) Present for Defendant(s): |
|---|---|
| None Present | None Present |

**Proceedings:  SCHEDULING ORDER**

This case is set for trial before the Honorable John W. Holcomb in Courtroom 9D, Ronald Reagan Federal Building and U.S. Courthouse, 411 W. 4th Street, Santa Ana, California.

## I.  PRE-TRIAL AND TRIAL DEADLINES

| EVENT | DATE/DEADLINE |
|---|---|
| **Jury Trial** (Monday at 9:00 a.m.) | Monday, April 13, 2026<br><br>5 days |
| **Final Pretrial Conference** [L.R. 16] (Friday at 1:00 p.m.) | Friday, March 27, 2026 |
| **Hearing on Motions *In Limine*** (Friday at 9:00 a.m.) | Friday, March 20, 2026 |

| EVENT | DATE/DEADLINE |
|---|---|
| **Last Date to Hear Dispositive Motions** (Friday at 9:00 a.m.) | Friday, February 13, 2026 |
| **Last Date to Conduct Settlement Conference** | Friday, January 2, 2026 |
| **All Discovery Cut-Off** (including hearing all discovery motions) | Friday, December 5, 2025 |
| **Expert Disclosure** (Rebuttal) | Friday, November 21, 2025 |
| **Expert Disclosure** (Initial) | Friday, November 7, 2025 |

## II. AMENDING PLEADINGS AND ADDING PARTIES

There is no separate deadline for the parties to amend their pleadings or to add parties. Parties who wish to amend pleadings or to add parties shall comply with Rule 15(a)(1) or (2) and, if applicable, Rule 16(b)(4) of the Federal Rules of Civil Procedure, as well as L.R. 15-1 through L.R. 15-3 and L.R. 16-14.

## III. MOTIONS

### A. Schedule and Procedures

Judge Holcomb hears motions in civil cases, through in-person appearances, on Fridays at 9:00 a.m. The cut-off date for hearing motions is the last day on which motions will be heard; *i.e.*, the motion must be filed at least 28 days before the deadline in accordance with the requirements of L.R. 6-1. *A copy of every motion-related document filed (including documents pertaining to claim construction hearings in patent cases) must be delivered to the chambers drop box outside Courtroom 9D or transmitted to chambers via FedEx, UPS, or other overnight delivery service (the "Mandatory Chambers Copy").* The cut-off date applies to all non-discovery motions except motions directly related to the conduct of trial (*e.g.*, motions *in limine* and motions to sever parties or to bifurcate issues for trial).

The parties are also reminded about their obligation to comply with L.R. 7-3, which requires a Conference of Counsel at least seven days before a party files most types of motions. The Court may deny a motion *sua sponte* if the moving party fails to comply strictly with L.R. 7-3.

## B.    Motions for Summary Judgment

The Court employs special procedures for summary judgment motions, including the parties' preparation of a mandatory ***Joint Exhibit*** and ***Joint Statement of Undisputed Facts and Genuine Disputes***. The parties and their counsel are directed to the Standing Order for a full explanation.

The Court reminds the parties that the cut-off date for hearing dispositive motions (*i.e.*, summary judgment motions) is the last day on which motions will be ***heard***, not ***filed***. The Court encourages parties to confer early and often regarding anticipated summary judgment motions and, when appropriate, to file a stipulation and proposed order to set a briefing schedule that provides the parties with more time between filing and opposition, and between opposition and reply, than the one week that is provided under L.R. 6-1, 7-9, and 7-10.

## C.    Motions *in Limine*

All motions *in limine* (including *Daubert* motions) and other trial-related motions must be filed at least 28 days before the Final Pretrial Conference and properly noticed for hearing ***one week before the date of the Final Pretrial Conference***. Oppositions to motions *in limine* are due 21 days before the Final Pretrial Conference (*i.e.*, 14 days before the hearing on motions *in limine*). Replies will not be accepted.

Counsel shall meet and confer thoroughly, in accordance with L.R. 7-3, in an effort to limit or eliminate the need for such trial-related motions. Memoranda of Points and Authorities in support of or in opposition to motions *in limine* shall not exceed 10 pages. Motions shall not be compound; *i.e.*, each motion shall address only one item of evidence or witness. If common grounds for exclusion or admission apply to multiple items of evidence or witnesses, each motion shall address only one category of evidence or witnesses. Motions *in limine* should not be disguised motions for summary judgment or summary adjudication.

**CIVIL MINUTES— GENERAL**     Initials of Deputy Clerk pd

**D.   Withdrawal and Non-Opposition of Motions**

All parties and counsel must comply with L.R. 7-16, which provides as follows:

> Any moving party who intends to withdraw the motion before the hearing date shall file and serve a withdrawal of the motion, not later than seven (7) days preceding the hearing.  Any opposing party who no longer intends to oppose the motion, shall file and serve a withdrawal of the opposition, not later than seven (7) days preceding the hearing.

Failure to comply with this notification requirement may result in the imposition of sanctions on the offending counsel or party.

If a defendant files a motion to dismiss a complaint and the plaintiff subsequently amends that complaint, then the defendant shall file a Notice of Withdrawal of its motion to dismiss in accordance with L.R. 7-16, without waiting for the plaintiff or the Court to take action on the motion.

## IV.  DISCOVERY

Counsel shall initiate all discovery other than depositions at least ***45 days*** before the cut-off date.  The Court will not approve stipulations between counsel that permit responses to be served after the cut-off date except in unusual circumstances and for good cause shown.

All depositions must be completed by the discovery cut-off deadline. Counsel shall lodge all original depositions that will be used in trial with the Courtroom Deputy Clerk on the first day of trial.

Counsel are expected to resolve discovery problems without the assistance of the Court.  Discovery disputes have been referred to the Magistrate Judge assigned to this case.  The discovery cut-off is the last date to ***complete*** discovery, including expert discovery.  It is also the last day for hearing any discovery motion.

If not separately set forth above, the required expert disclosures shall be made ***70 days*** before the discovery cut-off date.

**CIVIL MINUTES— GENERAL**                Initials of Deputy Clerk pd

## V.  SETTLEMENT PROCEDURES

Counsel must complete a settlement conference under the Court-Directed ADR Program (L.R. 16-15.4) no later than the date set by the Court above.  If the parties desire to participate in an ADR procedure other than that elected in the Rule 26(f) Scheduling Report and Order, they shall file a stipulation with the Court.  This request will not necessarily be granted.

Counsel shall include in the proposed Pretrial Conference Order a status report detailing what procedure has been followed and the status of settlement efforts.  The case may not proceed to trial unless all parties, including the principals of all corporate parties, have appeared personally at a settlement conference and have complied with L.R. 16-15.5.

If a settlement is reached, it shall be reported immediately to this Court as required by L.R. 16-15.7.  ***In all cases set for jury trial, the parties must notify the Court, no later than the Wednesday preceding the Monday trial date, of any settlement, so that the necessary arrangements can be made to bring in a different case for trial or to notify the members of the public who would otherwise be reporting for jury duty that their services are not needed that date.  Failure to comply with this notification requirement may result in the imposition of sanctions on counsel for one or more parties, or their clients, or both.***

## VI.  FINAL PRETRIAL CONFERENCE

The Court will conduct a Final Pretrial Conference pursuant to Rule 16 of the Federal Rules of Civil Procedure and L.R. 16-1 on the date and time listed above.  Each party appearing in this action shall be represented at the Final Pretrial Conference and at all pretrial meetings by its lead trial counsel.  Counsel should be prepared to discuss streamlining the trial, including the presentation of testimony by deposition excerpts, time limits, stipulations regarding undisputed facts, and the qualification of experts by admitted resumes.  In rare cases where the Pretrial Conference is waived by the Court, counsel must follow L.R. 16-11.  This Court does not exempt *pro per* parties from the requirements of L.R. 16.

# VII. MATTERS TO BE DISCUSSED AT THE FINAL PRETRIAL CONFERENCE

Counsel shall be prepared to discuss the following matters with the Court at the Pretrial Conference:

- the witnesses all parties intend to call during their respective cases, and the amount of time necessary for direct and cross examination of each witness;

- any anticipated problems in scheduling witnesses;

- any evidentiary issues, including anticipated objections under Rule 403 of the Federal Rules of Evidence, and objections to exhibits;

- jury selection procedures;

- all pretrial motions, including motions *in limine* and motions to bifurcate and to sever (which, as noted above, must be set for hearing at least one week before the Pretrial Conference);

- any disputed jury instructions, and the form of the instructions that will be given to the jury at the outset of the case, i.e., before opening statements and presentation of evidence;

- whether any counsel intends to use any evidence or demonstrative aid in opening statement; and

- motions to exclude witnesses from the courtroom during trial testimony.

If counsel for any party needs to arrange for the installation of their own equipment, such as video monitors, notebooks, or projection equipment, counsel shall notify the Courtroom Deputy Clerk no later than 4:00 p.m. on the Wednesday before trial so that the necessary arrangements can be made.

# VIII. PRETRIAL FILINGS

Counsel shall submit carefully prepared Memoranda of Contentions of Fact and Law (which may also serve as the trial briefs) and proposed Pretrial Conference Orders in accordance with the provisions of L.R. 16-4 through 16-7. The form of

the proposed Pretrial Conference Order shall be in conformity with the form set forth in Appendix A to the Local Rules.

The filing schedule for pretrial documents is as follows:

**A.    At Least 28 Days before Final Pretrial Conference**

- Motions *in limine* (which, as noted above, must be set for hearing at least one week before the Pretrial Conference)[1]

**B.    At Least 21 Days before Final Pretrial Conference**

- Memorandum of contentions of fact and law

- Witness lists

- Joint exhibit list

- Oppositions to motions *in limine* (which, as noted above, must be set for hearing at least one week before the Pretrial Conference)

**C.    At Least 14 Days before Final Pretrial Conference**

- Proposed Final Pretrial Conference Order

- Proposed jury instructions and any objections thereto

- Proposed verdict forms

- Statement of the case

- Proposed *voir dire* questions, if desired

**D.    At Least 7 Days before Trial:**

- Trial briefs, if desired.

---

[1]     In rare instances, the Court will set the deadline for hearing motions *in limine* for a date other than one week before the Final Pretrial Conference.  In those instances, motions *in limine* are due no later than 21 days before the hearing, and oppositions are due no later than 14 days before the hearing.

CIVIL MINUTES—
GENERAL

Initials of Deputy Clerk pd

In drafting the Proposed Final Pretrial Conference Order, counsel shall make a good faith effort to agree on, and to set forth, as many uncontested facts as possible. The Court may read the uncontested facts to the jury at the start of the trial.

In drafting the factual issues in dispute for the Proposed Final Pretrial Conference Order, the issues of fact should track the elements of a claim or defense upon which the jury would be required to make findings. Counsel should attempt to state issues in ultimate fact form, not in the form of evidentiary fact issues (*i.e.*, "was the defendant negligent?"; "was such negligence the proximate cause of injury to the plaintiff?"; "was the plaintiff negligent?"; ***not***, "was the plaintiff standing on the corner of 5th Street and Spring Avenue at 10:00 a.m. on May 3?"). Counsel may list sub-issues under the headings of ultimate fact issues, but shall not use this as a device to list disputes over evidentiary matters.

Issues of law should state legal issues upon which the Court will be required to rule after the Pretrial Conference, including during the trial, and should not list ultimate fact issues to be submitted to the trier of fact.

Each party shall list and identify its respective expert witnesses, if any. Failure of a party to list and identify an expert witness in the Proposed Final Pretrial Conference Order shall preclude a party from calling that expert witness at trial.

## E.   Exhibit and Witness Lists

Counsel are directed to prepare their exhibits by placing them in three-ring binders that are tabbed down the right side with exhibit numbers. The spine portion of the binder shall indicate the volume number and shall contain an index of each exhibit included in the volume. The binders are to be prepared with an original for the Courtroom Deputy Clerk, which shall be tagged with the appropriate exhibit tags in the upper right-hand corner of the first page of each exhibit, and two copies for the Court (the "Judge's binders"). Each binder shall contain an index of the included exhibits. The exhibits are to be numbered in accordance with L.R. 26-3.

The Court requires the following to be submitted to the Courtroom Deputy Clerk on the first day of trial:

**CIVIL MINUTES—
GENERAL**

- The original exhibits with the Court's exhibit tags.  The parties shall use yellow tags for Plaintiff and blue tags for Defendant, which shall be stapled to the front of the exhibit on the upper right corner with the case number, case name, and exhibit number placed on each tag.  Counsel can obtain exhibit tags at the Clerk's Office.  Exhibit Tags (Plaintiff & Defendant, form G-014) are also available on the Court's  website, under "Court Procedures," "Forms."

- Two Judge's binders with a copy of each exhibit for use by the Court, tabbed with numbers as described above.  (Court's exhibit tags not necessary.)

- Four copies of the exhibit index.

   The exhibit index shall be in the following form:

| Case No. | Case Name: | | |
|---|---|---|---|
| Exhibit No. | Description | Date Identified | Date Admitted |
| 3 | 1/30/2005 Letter from Doe to Roe | | |

- Four copies of witness lists in the order in which the witnesses may be called to testify.

   The witness lists shall be in the following form:

| Case No. | Case Name: |
|---|---|
| Witness Name | Date Called to Testify |
| 1. John Doe | |
| 2. Jane Roe | |

   All counsel shall meet no later than *10 calendar days* before trial and shall stipulate to the extent possible regarding foundation, waiver of the best evidence

**CIVIL MINUTES— GENERAL**

rule, and admission into evidence of exhibits at the start of trial. The exhibits to be received will be noted on the extra copies of the exhibit lists.

## IX. COURT REPORTER

At least seven days before the commencement of trial, counsel for the parties shall provide the court reporter with a list of unusual words, phrases, and spellings that may come up during trial. This information should be emailed to Court Reporter Services at ReportersCACD@cacd.uscourts.gov.

## X. JURY INSTRUCTIONS

*Fourteen calendar days* prior to the L.R. 16-2 Meeting of Counsel, counsel shall exchange proposed jury instructions and special verdict forms (if applicable). *Seven calendar days* prior to the L.R. 16-2 meeting, counsel shall exchange any objections to the instructions and special verdict forms. Prior to or at the time of the L.R. 16-2 meeting, counsel shall meet and confer with the goal of reaching agreement regarding one set of joint, undisputed jury instructions and one special verdict form.

The parties shall file proposed jury instructions *fourteen calendar days* before the Final Pretrial Conference. As always, the parties must submit Mandatory Chambers Copies to the Court. In addition, the parties must submit electronic versions (in Word format) to the Court at the following e-mail address: JWH_Chambers@cacd.uscourts.gov.

As noted above, the parties must act jointly to submit proposed jury instructions. The parties must submit one set of agreed upon jury instructions. At the same time, the parties must submit another set of jury instructions containing the instructions upon which the parties disagree and the objections to those instructions. Where the parties disagree on an instruction, the party opposing the instruction must attach a short (*i.e.*, one to two paragraphs) statement supporting the objection and the party submitting the instruction must attach a short statement supporting the instruction. Each statement should be on a separate page and should follow directly after the disputed instruction.

Accordingly, the parties ultimately will submit one document or, if the parties disagree over any proposed jury instructions, two documents. If the parties submit two documents, those documents should consist of: (1) a set of agreed upon jury instructions; and (2) a set of disputed jury instructions along with reasons supporting and opposing each disputed instruction.

Where the ***Manual of Model Civil Jury Instructions for the Ninth Circuit*** provides a version of a requested instruction, the parties should submit the Model instruction. Where California law applies, the Court prefers counsel to use JUDICIAL COUNCIL OF CALIFORNIA, CIVIL INSTRUCTIONS—("CACI"). If neither of the above sources has an instruction on the subject, counsel are directed to consult the current edition of O'Malley, et al., FEDERAL JURY PRACTICE AND INSTRUCTIONS. Each requested instruction (a) shall cite the authority or source of the instruction; (b) shall be set forth in full; (c) shall be on a separate page; (d) shall be numbered; (e) shall cover only one subject or principle of law; and (f) shall not repeat principles of law contained in any other requested instruction.

The Court will send a copy of the jury instructions into the jury room for use by the jury during deliberations. Accordingly, in addition to the file copies described above, the parties shall file with the Courtroom Deputy Clerk and shall email to chambers on the first day of the trial a "clean set" of joint and/or proposed jury instructions that contain only the text of each instruction set forth in full on each page, with the caption "Court's Instruction Number ___" (eliminating titles, supporting authority, indication of party proposing, etc.). This version will be referred to as the "Jury Copy" of the jury instructions.

An index page shall accompany all jury instructions submitted. The index page shall indicate the following:

- The number of the instruction;

- A brief title of the instruction;

- The source of the instruction and any relevant case citations; and

---

**CIVIL MINUTES— GENERAL**

- The page number of the instruction.

    EXAMPLE:

| Number | Title | Source | Page |
|--------|-------|--------|------|
| 1 | Burden of Proof | 9th Cir. 12.02 | 7 |

## XI.  JOINT STATEMENT OF THE CASE

Counsel shall prepare a joint statement of the case which will be read by the Court to the prospective panel of jurors prior to the commencement of *voir dire*. The statement should not be longer than three paragraphs.  The statement shall be filed with the Court fourteen calendar days before the Final Pretrial Conference.

## XII.  TRIAL

The Court sets firm trial dates.  Counsel shall arrive at the Courtroom ***not later than 8:30 a.m.*** each day of trial.  The Court reserves the time from ***8:30 to 9:00 a.m.*** to handle legal and administrative matters outside the presence of the jury.  The trial will commence promptly at 9:00 a.m.  Counsel shall anticipate matters that may need discussion or hearing outside the presence of the jury and to raise them during this period.

The Court is in session with the jury on ***Mondays through Thursdays, 9:00 a.m. to 5:00 p.m., with a morning and an afternoon break and a lunch recess from approximately 12:00 noon to 1:00 p.m.***  In most instances, jury selection is completed on the first morning of trial, and counsel should be prepared to give opening statements and to begin their presentation of evidence immediately thereafter.

All counsel shall observe the following practices during trial:

- All counsel and parties shall rise when the jury enters and leaves the courtroom.

- Counsel shall stand when addressing the Court, including when objecting to opposing counsel's questions.

**CIVIL MINUTES— GENERAL**

Initials of Deputy Clerk pd

- When objecting, counsel shall state only "objection" and the legal ground for the objection (*e.g.*, hearsay, irrelevant, etc.). Counsel shall refrain from arguing the legal basis for the objection unless and until permission is granted to do so. Counsel shall instruct their witnesses to refrain from answering a question while an objection is pending.

- Counsel must seek leave to approach the Courtroom Deputy Clerk or the witness and shall question witnesses while standing at the lectern.

- Counsel shall not address or refer to witnesses or parties by first names alone, with the exception of witnesses under 14 years old.

- Counsel shall not discuss the law or argue the case in opening statements.

- Counsel shall address all remarks to the Court and shall not directly address the Courtroom Deputy Clerk, the Court Reporter, opposing counsel, or the jury (except in opening statement and closing argument and during *voir dire*). Counsel must ask the Court for permission to talk off the record in order to speak with opposing counsel.

- Counsel shall not make an offer of stipulation unless he or she has conferred with opposing counsel and believes that the stipulation will be accepted.

- While Court is in session, counsel may not leave the counsel table to confer with witnesses, colleagues, or assistants elsewhere in the courtroom unless the Court grants permission to do so in advance.

- Where a party has more than one lawyer, only one may conduct the direct or cross-examination of a particular witness or make objections with respect to that witness.

- If a witness was on the stand before a recess or adjournment, counsel shall have the witness back on the stand and ready to proceed when Court resumes.

- If there is more than a brief delay between witnesses, the Court may deem that the party has rested.

- The Court attempts to cooperate with witnesses and will, except in extraordinary circumstances, accommodate them by permitting them to be

**CIVIL MINUTES—GENERAL**

Initials of Deputy Clerk pd

examined out of sequence.  Counsel should discuss any scheduling issues with opposing counsel.  If there is an objection, counsel shall confer with the Court in advance.

## XIII.  BENCH TRIALS

*Twenty-one calendar days* before the trial date, each party shall prepare and serve on opposing counsel copies of the proposed Findings of Fact and Conclusions of Law.  Each party shall review the other party's proposed Findings and Conclusions and make such changes in the party's own proposed Findings and Conclusions as necessary following such review.  *Fourteen calendar days* before the trial date, each party shall lodge two copies of its proposed Findings of Fact and Conclusions of Law with the Court, also serving other parties if changes have been made.  The parties shall be prepared to submit to the Court, and to exchange among themselves, supplemental Findings of Fact and Conclusions of Law during the course of the trial.

## XIV.  WEBSITE

Counsel are encouraged to review the Central District's website for additional information:  www.cacd.uscourts.gov.

The Courtroom Deputy Clerk is **DIRECTED** to serve a copy of this Order personally, electronically, or by mail on counsel for all parties to this action.

**IT IS SO ORDERED.**

CIVIL MINUTES— GENERAL

Initials of Deputy Clerk pd

Exhibit B

## DECLARATION OF RUBEN ESCALANTE

I, Ruben Escalante, do declare as follows:

1.      I am a partner in the law firm ACLIENT PC, attorneys of record for Plaintiff. I have personal knowledge of the facts herein, unless otherwise stated, and if called as a witness to testify thereto under oath, I could competently do so.

2.      I served Plaintiff's first set of discovery in May 2025. On September 11, 2025, I told Defendants' counsel that "we will need to get a date certain at some point for the production to take place in September, otherwise we will need to get the court involved to act diligently." Once it became clear through subsequent meet and confer efforts that Defendants would not complete their production in September and it was futile to wait any longer, to act diligently, Plaintiff brought the motion; the Court's availability prior to the discovery cutoff limited Plaintiff's options as well. Plaintiff only sent her portion of the Joint Stipulation after Defendants failed to produce their ESI production, failed to provide their ESI "hit report," and failed to guarantee their production would be completed by the discovery cutoff. A true and correct copy of meet and confer correspondence is attached hereto as Exhibit A.

3.      After sending her portion of the Joint Stipulation to Defendants, Defendants provided the "hit report" and produced some additional documents. A true and correct copy of these hit reports are attached hereto as Exhibits B (September 26, 2025) and Exhibit C (October 2, 2025), which appear to show the terms and custodians from Slack and email searches. Thereafter, I sent correspondence to Plaintiff that offered compromises. A true and correct copy of this correspondence without attachments is attached hereto as Exhibit D. I do not recall receiving a response to these emails. A true and correct copy of highlighted relevant portions of the IDC transcript is attached hereto as Exhibit E. A true and correct copy of the recent deposition testimony of (who I am informed and believe is) a

-1-

former executive of Defendant RISC Point is attached hereto as Exhibit F. Based on this testimony, other documents produced, and my investigation, I believe there may be at least the following unproduced documents: auto-deleted Signal messages, an intimate photograph of Plaintiff that was taken without her knowledge or consent yet obtained and showed to other employees by Defendant Jacob Nix, messages and emails pulled and reviewed by Defendants, and non-privileged email correspondence between Defendants (and counsel) and their investigators.

4.      The Parties agreed to an ESI protocol as reflected in Plaintiff's August 6, 2025, letter, as modified by subsequent correspondence. Defendants produced an initial "hit report" that appeared to reflect this agreement, with the exception of Plaintiff's entire email account and "Signal" messages. Thereafter, Defendants tried to limit this agreement to require that any correspondence also include explicit reference to Plaintiff. I am unaware of any agreed upon limitation in this regard.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Executed this 8th day of October 2025, in Fairfield, CA.

_____
Ruben Escalante

**DECLARATION OF RUBEN ESCALANTE**

Exhibit A

| **From:** | ruben@aclientpc.com |
| **To:** | "Geoff Lee"; "Jeff Olsen" |
| **Cc:** | "Anafrancesca Comunale"; ruben@aclientpc.com |
| **Subject:** | RE: Fragale v. RiscPoint; Meet and Confer Letter Regarding Discovery |
| **Date:** | Thursday, September 11, 2025 8:45:41 PM |

Mr. Lee,

I just wanted to memorialize our discussion today. You weren't able to give a date certain for the production; however, you made representations about Defendants' good faith efforts to make progress in getting this done. I explained that we will need to get a date certain at some point for the production to take place in September, otherwise we will need to get the court involved to act diligently. I invited you to provide regular update about the progress, which again will help demonstrate good faith.

V/r,

**Ruben Escalante**
Partner

ACLIENT PC
440 N Barranca Ave PMB 9496
Covina, California 91723
(310) 431-9687

**From:** ruben@aclientpc.com <ruben@aclientpc.com>
**Sent:** Wednesday, September 10, 2025 5:56 PM
**To:** 'Geoff Lee' <glee@grsm.com>; 'Jeff Olsen' <jeff@olsenws.com>
**Cc:** 'Anafrancesca Comunale' <acomunale@grsm.com>
**Subject:** RE: Fragale v. RiscPoint; Meet and Confer Letter Regarding Discovery

Mr. Lee,

Mr. Olsen is not available at that time. I am available. I'll call you then.

V/r,

**Ruben Escalante**
Partner

ACLIENT PC
440 N Barranca Ave PMB 9496
Covina, California 91723

(310) 431-9687

---

**From:** Geoff Lee <glee@grsm.com>
**Sent:** Wednesday, September 10, 2025 10:27 AM
**To:** Jeff Olsen <jeff@olsenws.com>
**Cc:** ruben@aclientpc.com; Anafrancesca Comunale <acomunale@grsm.com>
**Subject:** Re: Fragale v. RiscPoint; Meet and Confer Letter Regarding Discovery

Hi Jeff

How about 1:30 Thursday?

---

**From:** Jeff Olsen <jeff@olsenws.com>
**Sent:** Monday, September 8, 2025 6:42:37 PM
**To:** Geoff Lee <glee@grsm.com>
**Cc:** ruben@aclientpc.com <ruben@aclientpc.com>; Anafrancesca Comunale
<acomunale@grsm.com>
**Subject:** RE: Fragale v. RiscPoint; Meet and Confer Letter Regarding Discovery

Hello Geoff,

I am in receipt of your email below re your clients' ESI.  With the discovery cut-off in this case quickly
approaching on December 5, 2025, Plaintiff is concerned about Defendants' lack of timely
production (i.e. limited and piecemeal) and ESI production (i.e. none).

Please provide times this week to meet and confer on a telephone call, with the purpose to discuss
and agree to a timeline and date by which Defendants will conclude their production, including ESI.
Currently, and per your email below, Defendants have not committed to any sort of fixed date for
production, and you even admit ESI collection *had not even started*.   To the extent that Defendants'
reasonable completion date is not provided and agreed upon, Plaintiff will move to compel
production Defendants' compliance by a fixed-date-certain set by the Court.

Please provide a few dates and times for a call this week that best work for you.

Thank you for your kind attention to this matter,

**Jeff T. Olsen**
Olsen Workplace Solutions, P.C.
18012 Cowan, Ste. 200
Irvine, CA 92614
Tel: (949) 232-0455
jeff@olsenws.com | olsenws.com

CONFIDENTIAL: This e-mail message is for the sole use of the intended recipient(s). The information contained in this message
may be privileged, confidential, contain work product, and/or be protected from disclosure. If the reader of this message is not the

intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited. If you have received this communication in error, please notify us immediately by replying to the message, deleting it from your computer and destroying all copies of the original message. Thank you. Olsen Workplace Solutions, P.C.

**From:** Geoff Lee <glee@grsm.com>
**Sent:** Friday, September 5, 2025 2:21 PM
**To:** Jeff Olsen <jeff@olsenws.com>
**Cc:** ruben@aclientpc.com; Anafrancesca Comunale <acomunale@grsm.com>
**Subject:** RE: Fragale v. RiscPoint; Meet and Confer Letter Regarding Discovery

Hi Jeff,

Happy Friday.

To correct some statements made below: (a) I said that the insurance carrier approved use of an ESI vendor (not that it approved the specific vendor to be used); and (b) I therefore did not say we would be providing a "hit report soon." I would not make such assurances given that the speed by which other people move is largely beyond my control.

My client interviewed a handful of ESI vendors. It was important that the ESI vendor have certain security clearances because my client handles sensitive federal government documents. After vetting several ESI vendors, my client chose to work with KLD Discovery Services. The KLD service contract was drawn up on September 2. It was originally set for signing by RiscPoint but there was a disagreement about whether the cost falls within or outside the deductible. We finally determined that it was an insurance company expense. I am awaiting the insurance carrier representative to sign the service agreement. My hope is that the initial collection will begin next week.

Have a nice weekend.

--Geoff

> **From:** Jeff Olsen <jeff@olsenws.com>
> **Sent:** Thursday, September 4, 2025 2:48 PM
> **To:** Geoff Lee <glee@grsm.com>
> **Cc:** ruben@aclientpc.com; Sasha Sudan <asudan@grsm.com>; Anafrancesca Comunale <acomunale@grsm.com>
> **Subject:** RE: Fragale v. RiscPoint; Meet and Confer Letter Regarding Discovery
>
> Hi Geoff,
>
> We write to follow up on the status of Defendants' ESI Search and Production – which has still not been produced by Defendants. Again, these documents relate to document requests that were served on Defendants on *May 29, 2025 (*correcting date in email below: it was May 29, 2025, not June 29, 2025). Needless to say, a significant amount of

time has passed without sufficient ESI progress by Defendants.

On our meet and confer call on Tuesday August 19, 2025, you indicated that the ESI vendor was already approved by Defendants' insurance carrier and that we would get our Hit Report soon.  I expressed concern regarding the delay and insufficient production.  You represented you would provide us weekly updates to ensure we were still on track and moving forward in a diligent manner.  But, you did <u>not</u> provide an update the first week.  You did <u>not</u> provide an update in the second week.  To date, you have <u>not</u> provided any update.  We are concerned that you are not living up to the promises you made, and we will be unable to obtain the lawful discovery production to which we are entitled without help from the Court.

Please provide us with the Hit Report on the agreed upon terms and any ESI documents ready for production by close of business on Friday 9/5.  Otherwise, we will be forced to motion to compel production in a timely manner to move this case along towards trial.

Thank you,

Jeff

**Jeff T. Olsen**
Olsen Workplace Solutions, P.C.
18012 Cowan, Ste. 200
Irvine, CA 92614
Tel: (949) 232-0455
jeff@olsenws.com | olsenws.com

CONFIDENTIAL: This e-mail message is for the sole use of the intended recipient(s). The information contained in this message may be privileged, confidential, contain work product, and/or be protected from disclosure. If the reader of this message is not the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited. If you have received this communication in error, please notify us immediately by replying to the message, deleting it from your computer and destroying all copies of the original message. Thank you. Olsen Workplace Solutions, P.C.

**From:** Geoff Lee <glee@grsm.com>
**Sent:** Thursday, August 28, 2025 1:46 PM
**To:** Jeff Olsen <jeff@olsenws.com>
**Cc:** ruben@aclientpc.com; Sasha Sudan <asudan@grsm.com>; Anafrancesca Comunale <acomunale@grsm.com>
**Subject:** RE: Fragale v. RiscPoint; Meet and Confer Letter Regarding Discovery

Hi Jeff

Agree to disagree.  Thanks.

> **From:** Jeff Olsen <jeff@olsenws.com>
> **Sent:** Wednesday, August 27, 2025 5:07 PM
> **To:** Geoff Lee <glee@grsm.com>

**Cc:** ruben@aclientpc.com; Sasha Sudan <asudan@grsm.com>; Anafrancesca
Comunale <acomunale@grsm.com>
**Subject:** RE: Fragale v. RiscPoint; Meet and Confer Letter Regarding Discovery

Hello Mr. Lee,

I am in receipt of your correspondence, dated August 26, 2025.

Unfortunately, your letter appears performative and in attempt to create a record of
something that does not exist.  Lead counsel, Mr. Escalante, and I have always been
on the same page about the fact that we merely expect compliance from
Defendants under the FRCP – that's all.  The record shows our multiple, good-faith
attempts to meet and confer, including substantive correspondence which clearly
outlined our positions and law, which we believe speaks for itself.

As far as Defendants' responses and partial document production, and as you
confirmed on our last call, it appears that there are some remaining requests and
interrogatories that Defendants have actively and strategically chosen not to
supplement after our meet and confer attempts.  We also note a practice by
Defendants to piece-meal only partial document production.  This violates the FRCP.
These Request for Documents were served on June 29, 2025.  We do not believe
Defendants have produced all documents that they should have by now.

By one example (among others), even though Defendants agreed to produce them,
Defendants have not produced all correspondence between Defendants and their
agents, and investigators John Hawkins and Aisha Adams, even though we believe
they are readily and discretely identifiable, and some of those documents may be
within the custody and control of your law office itself, Gordon Rees, due to Gordon
Rees' pre-litigation involvement in this case and interaction with the investigators.
Defendants must timely comply with their respective requirements under the FRCP
to produce documents.  They are well past due and we expect them produced.  In a
separate example, we have yet to receive an update regarding your clients' ESI
efforts.  On our call, you promised weekly updates but have not done so.

With regard to the insufficient responses and failed document production, and in
accordance with your positions in the letter, we will move forward with our motions
to compel.

Thank you,

Jeff

**Jeff T. Olsen**
Olsen Workplace Solutions, P.C.

18012 Cowan, Ste. 200
Irvine, CA 92614
Tel: (949) 232-0455
jeff@olsenws.com | olsenws.com

CONFIDENTIAL: This e-mail message is for the sole use of the intended recipient(s). The information contained in this message may be privileged, confidential, contain work product, and/or be protected from disclosure. If the reader of this message is not the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited. If you have received this communication in error, please notify us immediately by replying to the message, deleting it from your computer and destroying all copies of the original message. Thank you. Olsen Workplace Solutions, P.C.

**From:** Sasha Sudan <asudan@grsm.com>
**Sent:** Tuesday, August 26, 2025 9:19 AM
**To:** Jeff Olsen <jeff@olsenws.com>
**Cc:** ruben@aclientpc.com; Geoff Lee <glee@grsm.com>; Anafrancesca Comunale <acomunale@grsm.com>
**Subject:** Fragale v. RiscPoint; Meet and Confer Letter Regarding Discovery

Good morning,

Please see the attached regarding the above referenced matter.

Best regards,

**ALEXANDRA (SASHA) SUDAN**
Legal Secretary

**GORDON REES SCULLY MANSUKHANI | GRSM50**
**YOUR 50 STATE LAW FIRM™**

101 W. Broadway, Suite 2000, San Diego, CA 92101

asudan@grsm.com
Direct: (619) 230 – 7448
Ext: 7448

This email communication may contain CONFIDENTIAL INFORMATION WHICH ALSO MAY BE LEGALLY PRIVILEGED and is intended only for the use of the intended recipients identified above. If you are not the intended recipient of this communication, you are hereby notified that any unauthorized review, use, dissemination,

distribution, downloading, or copying of this communication is strictly prohibited. If you are not the intended recipient and have received this communication in error, please immediately notify us by reply email, delete the communication and destroy all copies.

**GORDON REES SCULLY MANSUKHANI, LLP**
**YOUR 50 STATE LAW FIRM™**
[www.grsm.com](http://www.grsm.com)

---

This email communication may contain CONFIDENTIAL INFORMATION WHICH ALSO MAY BE LEGALLY PRIVILEGED and is intended only for the use of the intended recipients identified above. If you are not the intended recipient of this communication, you are hereby notified that any unauthorized review, use, dissemination, distribution, downloading, or copying of this communication is strictly prohibited. If you are not the intended recipient and have received this communication in error, please immediately notify us by reply email, delete the communication and destroy all copies.

**GORDON REES SCULLY MANSUKHANI, LLP**
**YOUR 50 STATE LAW FIRM™**
[www.grsm.com](http://www.grsm.com)

---

This email communication may contain CONFIDENTIAL INFORMATION WHICH ALSO MAY BE LEGALLY PRIVILEGED and is intended only for the use of the intended recipients identified above. If you are not the intended recipient of this communication, you are hereby notified that any unauthorized review, use, dissemination, distribution, downloading, or copying of this communication is strictly prohibited. If you are not the intended recipient and have received this communication in error, please immediately notify us by reply email, delete the communication and destroy all copies.

**GORDON REES SCULLY MANSUKHANI, LLP**
**YOUR 50 STATE LAW FIRM™**
[www.grsm.com](http://www.grsm.com)

---

This email communication may contain CONFIDENTIAL INFORMATION WHICH ALSO MAY BE LEGALLY PRIVILEGED and is intended only for the use of the intended recipients identified above. If you are not the intended recipient of this communication, you are hereby notified that any unauthorized review, use, dissemination, distribution, downloading, or copying of this communication is strictly prohibited. If you are not the intended recipient and have received this communication in error, please immediately notify us by reply email, delete the communication and destroy all copies.

**GORDON REES SCULLY MANSUKHANI, LLP**
**YOUR 50 STATE LAW FIRM™**

www.grsm.com

| From: | Jeff Olsen |
|---|---|
| To: | Geoff Lee |
| Cc: | Anafrancesca Comunale; Ruben Escalante |
| Subject: | Fragale v. RISC Point; NIX - Further Meet and Confer - Discovery and Deposition Matter |
| Date: | Monday, September 15, 2025 5:21:45 PM |

Hello Geoff,

I called your office line today, but you did not answer, so I left a voicemail.  Please let me know if you'd like to set a phone call to discuss.  Following up on that voicemail, we need Defendants' positions this week on a few matters relating to discovery and depositions:

1. Please provide at least three respective open dates of deposition availability for the last three weeks of October 2025 for the following individuals:

   a. Jacob Nix, Matt Drewyor, Tony Bai, Chad Gross, and Allison Laurence Bailey; and separately,

   b. DEFENDANT RISC POINT ADVISORY GROUP, LLC PMK – 30(b)(6) depo – we'll include specific topics on the notice, but in good faith so you can identify and determine the proper PMK(s), topics will include: corporate level policies (e.g. HR policies, document retention/destruction policies), ESI retention, collection and production in this case, Plaintiff's personnel file and investigation into Plaintiff's complaints, and relationship between the multiple RISC Point entities.

2. It is our understanding that investigator John Hawkins is not represented by counsel, and that his work for RISC Point was non-privileged.   Assuming we are correct, we plan to reach out to him to discuss his preferred availability for his subpoenaed deposition.   Please let us know immediately if you have any other information that would suggest that he is otherwise represented, and if so, who we should contact on his behalf.

3. Please let us know if Defendants will stipulate to the use of remote-video depositions in this case, at the discretion of the noticing party.  Please also let us know if Defendants will stipulate that any remote deposition will be considered within the geographical radius requirements of the FRCP (i.e., deponents in remote depositions can choose to sit for remote deposition at a confidential location of their choosing within the geographic requirements, e.g., their home or local office).  As a matter of reasonable compromise, we are okay as part of the stipulation that regardless of the location of the deposition for the deponent, counsel may appear remotely or in person if they so choose.

Last but not least, and following up on the multiple conversations you and I have had on the matter, and the most recent phone call between you and Ruben last week, please provide the Hit Report, and any other documents readily available by end of day Thursday 9/18.  By isolated example only, we still have not received all documents by Defendants outside the ESI process, including but not

limited to all documents between RISC Point, Investigator Hawkins and Gordon Rees – these documents and emails should be readily available months ago, and are separate and apart from the ESI Hit Report protocols as they are a specific request – and not to beat a dead horse, but responses and documents were due over 3 months ago.  In terms of ESI, as a matter of timing alone based on the Court's scheduling order, if Defendants do not produce at least the Hit Report this week, how would Defendants reasonably plan *complete its* ESI *document production* by the remaining days of September 2025, as Ruben noted in his last email?)

In light of the fast-approaching discovery cut off, which includes any hearing date on any motion to compel, the timetable simply does not afford us the ability to wait any longer and we must press this case forward.  If we do not hear back from you with the necessary information by end of day on Thursday 9/18, as necessary, we will need to unilaterally set the depositions, and/or file a motion to compel compliance of document production by dates certain.

Thank you for your prompt attention on the matter,

Jeff

| | |
|---|---|
| **From:** | Jeff Olsen |
| **To:** | Geoff Lee; Anafrancesca Comunale |
| **Cc:** | Sasha Sudan; ruben@aclientpc.com |
| **Subject:** | RE: Fragale v. RiscPoint; Defendant"s Document Production |
| **Date:** | Friday, September 26, 2025 4:26:11 PM |

Counsel,

We are in receipt of your Letter dated September 25, 2025, which enclosed more isolated and incomplete documents (many of which are just duplicates contained in the same production).

Please consider this email as *another* demand for Plaintiff to turn over all necessary documents immediately.  We know that your isolated document production on September 25, 2025 is insufficient and incomplete.  By one isolated example:  it does not contain all correspondence between RISC Point, NIX and John Hawkins or Aisha Adams (which Defendants are under separate obligations to produce, separate and apart from ESI).  You may call your production an "accommodation" – we call it Defendants' FRCP obligations.

By further example, bates labelled document RP000211 shows a document between RISC Point and Hawkins that attaches <u>38 attachments</u>.  Yet, Defendants did not produce any of those attachments.  Did we miss them?  If so, please point out in Defendants production via bates labels where they are located.

John Hawkins is clearly RISC Point's agent – as they hired him to "investigate" this matter.  RISC Point should have (1) requested that information from him to produce, including draft reports and the full investigation file; or even more compelling (2) since RISC Point would necessarily be on the sending or receiving end of all of the same correspondence, RISC Point should already have all those correspondence documents and attachments, and should have produced them May 29, 2025.  It has been 4 months and Plaintiff still does not have all documents.

If, instead, you believe Defendants have performed a good faith, diligent search and reasonable inquiry such that you can represent all documents in any category have been produced, then please say so.  Until then, we believe we are entitled to documents that have not been produced, both ESI and otherwise, and we expect Defendants produce them.

Thank you,

Jeff

---

**From:** Sasha Sudan <asudan@grsm.com>
**Sent:** Thursday, September 25, 2025 2:07 PM
**To:** Jeff Olsen <jeff@olsenws.com>; ruben@aclientpc.com
**Cc:** Geoff Lee <glee@grsm.com>; Anafrancesca Comunale <acomunale@grsm.com>
**Subject:** Fragale v. RiscPoint; Defendant's Document Production

Good afternoon,

Please see the attached regarding the above referenced matter.


Best regards,

**ALEXANDRA (SASHA) SUDAN**

Legal Secretary



**GORDON REES SCULLY MANSUKHANI**

**YOUR 50 STATE LAW FIRM™**

**D:** 619.230.7448

**E:** asudan@grsm.com |   grsm.com

101 W. Broadway, Suite 2000, San Diego, CA 92101

---

This email communication may contain CONFIDENTIAL INFORMATION WHICH ALSO MAY BE LEGALLY PRIVILEGED and is intended only for the use of the intended recipients identified above. If you are not the intended recipient of this communication, you are hereby notified that any unauthorized review, use, dissemination, distribution, downloading, or copying of this communication is strictly prohibited. If you are not the intended recipient and have received this communication in error, please immediately notify us by reply email, delete the communication and destroy all copies.

**GORDON REES SCULLY MANSUKHANI, LLP**
**YOUR 50 STATE LAW FIRM™**
www.grsm.com

| | |
|---|---|
| **From:** | Jeff Olsen |
| **To:** | Geoff Lee |
| **Cc:** | Anafrancesca Comunale; Adrienna van Diermen; Ruben Escalante |
| **Subject:** | RE: Fragale v. Risc Point -- ESI figures |
| **Date:** | Friday, September 26, 2025 4:44:40 PM |

Mr. Lee,

The record speaks for itself.  You could have provided the hit report with your last email requesting that we withdraw our motion to compel, but you did not.  Instead, you withheld it.  But when I had to request it, you send with a snarky email?  I think I am the one who should be spared.

The Court will sort out Defendants' conduct and discovery obligations.    I believe you are meeting and conferring with Mr. Escalante on Monday about other topics, you can discuss these new items with him then.

Have a great weekend,

Jeff

---

**From:** Geoff Lee <glee@grsm.com>
**Sent:** Friday, September 26, 2025 4:02 PM
**To:** Jeff Olsen <jeff@olsenws.com>; Ruben Escalante <ruben@aclientpc.com>
**Cc:** Anafrancesca Comunale <acomunale@grsm.com>; Adrienna van Diermen <avandiermen@grsm.com>
**Subject:** RE: Fragale v. Risc Point -- ESI figures

Mr. Olsen

Please spare me the histrionics.  I was obviously going to share the hit reports with you but I had to get clarification from KLD as to whether the numbers reflect compression, de-duplication, de-threading, attachments, and other things that may affect the size reports so that they we can interpret them accurately.  The hit reports are attached.  The numbers already reflect de-duplication and there is no compression issue.  De-threading typically removes 10% and up to 50% of duplicative chain messages, but the resulting volume would still be too much.

Please let me know when you want to discuss revising the ESI plan.  If you are unwilling to modify the terms or custodians, then perhaps we should consider a rolling production based on priority.  For example, I presume you would like emails containing "cunt*" before all others.  We can start that rolling production.  But given this volume, we cannot yet estimate a feasible completion deadline.

---

**L. GEOFFREY LEE**
Partner



**GORDON REES SCULLY MANSUKHANI**
**YOUR 50 STATE LAW FIRM™**
**D:** 213.270.7861
**E:** glee@grsm.com  |  grsm.com
101 W. Broadway, Suite 2000, San Diego, CA 92101
633 West Fifth Street, 52nd Floor, Los Angeles, CA 90071

**From:** Jeff Olsen <jeff@olsenws.com>
**Sent:** Friday, September 26, 2025 3:54 PM
**To:** Geoff Lee <glee@grsm.com>; Ruben Escalante <ruben@aclientpc.com>
**Cc:** Anafrancesca Comunale <acomunale@grsm.com>; Adrienna van Diermen <avandiermen@grsm.com>
**Subject:** RE: Fragale v. Risc Point -- ESI figures

Dear Counsel,

Our motion is still valid.  You are actively concealing the hit report, which you admit you now have – which you should have sent to us to review and analyze. You don't get to unilaterally "eliminate terms or combine them." That is improper.  Please send the hit report in the native form, ASAP, which should provide requisite information for the Parties to determine the custodians used, data sources identified, and hits on each term.

You have not provided sufficient information to engage in a good faith meet and confer. Unfortunately, this is consistent with Defendants' discovery positions thus far in the case:  stonewall Plaintiff's lawful discovery requests and withhold documents.  The record will speak for itself.  This pattern and practice is concerning, and we think it violates Defendants duties under the FRCP and Local Rules, and we will need to involve the Court.

As stated in our Motion to Compel, if you do not produce all documents by October 6, including ESI, we will be keeping our Motion on Calendar and continuing with sanctions.

Thank you,

Jeff

**From:** Geoff Lee <glee@grsm.com>
**Sent:** Friday, September 26, 2025 3:06 PM
**To:** Ruben Escalante <ruben@aclientpc.com>; Jeff Olsen <jeff@olsenws.com>
**Cc:** Anafrancesca Comunale <acomunale@grsm.com>; Adrienna van Diermen <avandiermen@grsm.com>
**Subject:** Fragale v. Risc Point -- ESI figures

Dear Counsel,

KL Discovery has provided me some preliminary figures on the volume of ESI pulled using your suggested custodians and search terms.

There are 108 Gigabytes of emails with an estimated 507,000 documents.  100 Gigabytes, by comparison, is often estimated to be approximately 5 million pages of traditional paper.

There are 27 Gigabytes of Slack messages with an estimated 246,000 documents.

Assuming it took 30 seconds to review each document, that amounts to 5,833 hours of human review time.

I will be analyzing the hit reports to see where we might be able to eliminate terms or combine them to narrow the results.

Given these numbers that are obviously unworkable, it seems we must go back to the proverbial drawing board on search terms and discuss sharing costs.

In light of these figures, I request that you withdraw your pending Motion to Compel.

---

**L. GEOFFREY LEE**
Partner



**GORDON REES SCULLY MANSUKHANI**
**YOUR 50 STATE LAW FIRM™**
**D:** 213.270.7861
**E:** glee@grsm.com  |  grsm.com
101 W. Broadway, Suite 2000, San Diego, CA 92101
633 West Fifth Street, 52nd Floor, Los Angeles, CA 90071

---

This email communication may contain CONFIDENTIAL INFORMATION WHICH ALSO MAY BE LEGALLY PRIVILEGED and is intended only for the use of the intended recipients identified above. If you are not the intended recipient of this communication, you are hereby notified that any unauthorized review, use, dissemination, distribution, downloading, or copying of this communication is strictly prohibited. If you are not the intended recipient and have received this communication in error, please immediately notify us by reply email, delete the communication and destroy all copies.

**GORDON REES SCULLY MANSUKHANI, LLP**
**YOUR 50 STATE LAW FIRM™**
www.grsm.com

---

This email communication may contain CONFIDENTIAL INFORMATION WHICH ALSO MAY BE LEGALLY PRIVILEGED and is intended only for the use of the intended recipients identified above. If you are not the intended recipient of this communication, you are hereby notified that any unauthorized review, use, dissemination, distribution, downloading, or copying of this communication is strictly prohibited. If you are not the intended recipient and have received this communication in error, please immediately notify us by reply email, delete the communication and destroy all copies.

**GORDON REES SCULLY MANSUKHANI, LLP**
**YOUR 50 STATE LAW FIRM™**
www.grsm.com

Exhibit B



**Nebula Cull Extended Search Report**
Executed at 9/26/2025 7:32:55 PM

| Term(Parameters & Results Summary tab) | Definition |
|---|---|
| Search Population (pre-dedupe) | The number of documents these Keyword terms were run against, after Search Conditions were applied, but prior to deduplication. |
| Deduplication | The setting used to prevent exact duplicate documents from being promoted to the Target Matter. |
| Target Matter | The 'Review' module project that documents will be promoted-to. |
| Promotion Queued (Totals) | The sum-total of all Document Hits (post-dedupe, usually with Family) that are ready for new promotion to the Target Matter, and their corresponding Native File Size tally |
| Custodian | This field represents the primary custodian (custodian whose copy of the document survived deduplication), but documents searched may be defined by using All Custodian. |
| Document Hits (pre-dedupe) | The number of distinct documents that hit on terms prior to deduplication being applied. Presented both without and with any additional non-hit family members included. |
| Document Hits (post-dedupe) | The number of distinct documents that hit on terms after the deduplication settings have been applied. Presented both without and with any additional non-hit family members included. |
| Non-email Hits (post-dedupe) | The number of distinct Non-email documents (eg 'loose' EDOCs) that hit on terms after the deduplication settings have been applied. Presented without and with any additional non-hit family members included. |
| Email Hits (post-dedupe) | The number of distinct Email documents (eg EML, MSG) that hit on terms after the deduplication settings have been applied. Presented both without and with any additional non-hit family members included. |
| Previously Promoted | The number of Document Hits (usually with Family) that have already been promoted to the Target Matter and will be excluded from any additional promotion. |
| Promotion Queued | The number of Document Hits (post-dedupe, usually with Family) that are ready for new promotion to the Target Matter |
| **(Hit Report Detail tab - all #'s post-dedupe)** | |
| Keyword Category | The virtual groupings that Nebula uses to keep different sets of Keywords (Terms) organized. |
| Document Hits | The number of distinct documents that hit on this term. Presented both without and with any additional non-hit family members included. |
| Hit Rate (%) | The frequency of which a term hits on distinct documents within the Search Population. |
| Unique Document Hits | The number of distinct documents that hit only on this term and did not hit on any other term included in the report. |
| Unique Family Hits (Document Count) | The number of all documents belonging to families where only this term hit on any document within the family. If this term was removed, the Total Documents count would decrease by exactly this number of documents. |
| % of all Unique Family Hits | The share of the overall Unique Family Hit population that this term contributes. If this term was removed, the Total Documents count would decrease by exactly this percentage of documents. |
| Shared Hits (2+ Terms) | The number of distinct documents that hit on this term in addition to another term included in the report. Presented both without and with any additional non-hit family members included. |
| Total Documents | The total number of distinct documents that hit when all terms are combined. Because multiple terms can hit on the same document, these totals are adjusted for overlap and are NOT SUM TOTALS of the data. |



**Nebula Cull Extended Search Report**

Executed at 9/26/2025 7:32:55 PM

| Target Matter: | None |
| Deduplication: | Global |

| Promotion Queued (Totals) | |
| Documents | Native Size (GB) |
| 507,425 | 108.8742 |

| Custodian | Search Population (pre-dedupe) | Document Hits (pre-dedupe) | Document Hits with Family (pre-dedupe) | Document Hits (post-dedupe) | Document Hits with Family (post-dedupe) | Non-email Hits (post-dedupe) | Non-email Hits with Family (post-dedupe) | Email Hits (post-dedupe) | Email Hits with Family (post-dedupe) | Previously Promoted | Promotion Queued |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Bal, Tony | 51,464 | 44,630 | 44,918 | 37,260 | 37,471 | 1,022 | 1,022 | 36,238 | 36,449 | 0 | 37,471 |
| Cowdrey, Mike | 12,675 | 11,947 | 11,970 | 10,303 | 10,311 | 0 | 0 | 10,303 | 10,311 | 0 | 10,311 |
| Drewyor, Matthew | 108,128 | 98,020 | 99,892 | 61,839 | 62,888 | 91 | 91 | 61,748 | 62,797 | 0 | 62,888 |
| Fragale, Ashley | 112,096 | 112,096 | 112,096 | 102,613 | 102,613 | 0 | 0 | 102,613 | 102,613 | 0 | 102,613 |
| Gross, Chad | 40,411 | 37,593 | 37,853 | 33,897 | 33,924 | 93 | 93 | 33,804 | 33,831 | 0 | 33,924 |
| Hibbeler, John | 8,045 | 7,338 | 7,354 | 7,287 | 7,302 | 0 | 0 | 7,287 | 7,302 | 0 | 7,302 |
| Laurence, Allison | 4,060 | 3,982 | 3,982 | 3,905 | 3,905 | 0 | 0 | 3,905 | 3,905 | 0 | 3,905 |
| McCartney, Ryan | 75,181 | 67,941 | 68,089 | 55,822 | 55,909 | 117 | 117 | 55,705 | 55,792 | 0 | 55,909 |
| Nix, Jacob | 241,323 | 241,323 | 241,323 | 189,087 | 189,087 | 976 | 976 | 188,111 | 188,111 | 0 | 189,087 |
| Shah, Disha | 3,468 | 2,896 | 2,903 | 2,889 | 2,896 | 4 | 4 | 2,885 | 2,892 | 0 | 2,896 |
| Wiese, Matt | 5,733 | 1,258 | 1,499 | 916 | 1,119 | 1 | 1 | 915 | 1,118 | 0 | 1,119 |
| **Total Documents** | **662,604** | **629,024** | **631,779** | **505,918** | **507,425** | **2,304** | **2,304** | **503,814** | **505,121** | **0** | **507,425** |



**KLDiscovery**

Nebula Cull Extended Search Report
Executed at 9/06/2025 7:32:55 PM

| Target Matter: | None |
|---|---|
| Deduplication: | Global |

| Term | Keyword/Category | Custodian | Document Hits | Hit Rate (%) | Document Hits with Family | Unique Document Hits | Unique Family Hits (Document Count) | % of all Unique Family Hits | Shared Hits (2+ Terms) | Shared Hits (2+ Terms) (Full Family) |
|---|---|---|---|---|---|---|---|---|---|---|
| "Adam" | 637412 - 001 | ALL | 9,931 | 1.50% | 13,381 | 315 | 350 | 0.20% | 9,616 | 13,041 |
| "Aisha" | 637412 - 001 | ALL | 240 | 0.04% | 493 | 0 | 0 | 0.00% | 240 | 493 |
| "ashley" OR "ashely" OR "ash" OR "fragile" OR | 637412 - 001 | ALL | 122,382 | 18.47% | 127,310 | 87,454 | 87,348 | 49.47% | 34,928 | 39,962 |
| "bitch" | 637412 - 001 | ALL | 39 | 0.01% | 44 | 0 | 0 | 0.00% | 39 | 44 |
| "boob" | 637412 - 001 | ALL | 32 | 0.00% | 50 | 0 | 0 | 0.00% | 32 | 50 |
| "breast" | 637412 - 001 | ALL | 232 | 0.04% | 413 | 0 | 0 | 0.00% | 232 | 413 |
| "claim" | 637412 - 001 | ALL | 12,211 | 1.84% | 20,071 | 12 | 11 | 0.01% | 12,199 | 20,060 |
| "complain" | 637412 - 001 | ALL | 5,188 | 0.78% | 9,969 | 9 | 7 | 0.00% | 5,179 | 9,962 |
| "crazy" | 637412 - 001 | ALL | 1,347 | 0.20% | 1,602 | 7 | 7 | 0.00% | 1,340 | 1,595 |
| "cunt" | 637412 - 001 | ALL | 9 | 0.00% | 15 | 0 | 0 | 0.00% | 9 | 15 |
| "date" | 637412 - 001 | ALL | 74,780 | 11.29% | 102,269 | 1,570 | 941 | 0.53% | 73,210 | 101,328 |
| "dating" | 637412 - 001 | ALL | 345 | 0.05% | 1,454 | 0 | 0 | 0.00% | 345 | 1,454 |
| "dick" | 637412 - 001 | ALL | 256 | 0.04% | 432 | 0 | 0 | 0.00% | 256 | 432 |
| "doucher" | 637412 - 001 | ALL | 3 | 0.00% | 6 | 0 | 0 | 0.00% | 3 | 6 |
| "drank" | 637412 - 001 | ALL | 5 | 0.00% | 9 | 0 | 0 | 0.00% | 5 | 9 |
| "drunk" | 637412 - 001 | ALL | 36 | 0.01% | 52 | 1 | 1 | 0.00% | 35 | 51 |
| "fire" | 637412 - 001 | ALL | 11,287 | 1.70% | 21,666 | 56 | 55 | 0.03% | 11,231 | 21,611 |
| "fuck" | 637412 - 001 | ALL | 212 | 0.03% | 251 | 0 | 0 | 0.00% | 212 | 251 |
| "harass" | 637412 - 001 | ALL | 1,408 | 0.21% | 2,923 | 2 | 2 | 0.00% | 1,406 | 2,921 |
| "Hawkins" | 637412 - 001 | ALL | 838 | 0.13% | 1,122 | 2 | 2 | 0.00% | 836 | 1,120 |
| "hooked" | 637412 - 001 | ALL | 175 | 0.03% | 267 | 1 | 1 | 0.00% | 174 | 266 |
| "HR risk" | 637412 - 001 | ALL | 23 | 0.00% | 140 | 0 | 0 | 0.00% | 23 | 140 |
| "illegal" | 637412 - 001 | ALL | 3,741 | 0.56% | 8,867 | 0 | 0 | 0.00% | 3,741 | 8,867 |
| "inappropriat" | 637412 - 001 | ALL | 1,702 | 0.26% | 4,657 | 1 | 0 | 0.00% | 1,701 | 4,657 |
| "intern" | 637412 - 001 | ALL | 1,366 | 0.21% | 2,300 | 9 | 7 | 0.00% | 1,357 | 2,293 |
| "investigat" | 637412 - 001 | ALL | 9,848 | 1.49% | 18,132 | 59 | 58 | 0.03% | 9,789 | 18,074 |
| "Jake" | 637412 - 001 | ALL | 225,051 | 33.96% | 247,380 | 165 | 150 | 0.08% | 224,886 | 247,230 |
| "kill" | 637412 - 001 | ALL | 1,654 | 0.25% | 2,371 | 14 | 14 | 0.01% | 1,640 | 2,357 |
| "lawsuit" | 637412 - 001 | ALL | 1,544 | 0.23% | 2,929 | 0 | 0 | 0.00% | 1,544 | 2,929 |
| "lol" | 637412 - 001 | ALL | 3,174 | 0.48% | 3,618 | 52 | 53 | 0.03% | 3,122 | 3,565 |
| "love" | 637412 - 001 | ALL | 35,550 | 5.37% | 39,633 | 207 | 205 | 0.12% | 35,343 | 39,428 |
| "NRV" | 637412 - 001 | ALL | 351 | 0.05% | 600 | 0 | 0 | 0.00% | 351 | 600 |
| "naked" | 637412 - 001 | ALL | 58 | 0.01% | 325 | 0 | 0 | 0.00% | 58 | 325 |
| "No" | 637412 - 001 | ALL | 239,672 | 36.17% | 247,811 | 1,846 | 866 | 0.49% | 237,826 | 246,945 |
| "nude" | 637412 - 001 | ALL | 93 | 0.01% | 420 | 0 | 0 | 0.00% | 93 | 420 |
| "OF" | 637412 - 001 | ALL | 400,011 | 60.45% | 403,691 | 100,045 | 85,806 | 48.60% | 300,466 | 317,885 |
| "onlyfans" | 637412 - 001 | ALL | 12 | 0.00% | 15 | 0 | 0 | 0.00% | 12 | 15 |
| "photo" | 637412 - 001 | ALL | 6,672 | 1.01% | 10,365 | 7 | 8 | 0.00% | 6,665 | 10,357 |
| "pic" | 637412 - 001 | ALL | 19,558 | 2.95% | 25,153 | 136 | 132 | 0.07% | 19,422 | 25,021 |
| "profile" | 637412 - 001 | ALL | 18,350 | 2.77% | 25,275 | 100 | 121 | 0.07% | 18,250 | 25,154 |
| "puss" | 637412 - 001 | ALL | 11 | 0.00% | 14 | 0 | 0 | 0.00% | 11 | 14 |
| "retaliat" | 637412 - 001 | ALL | 1,366 | 0.21% | 2,901 | 0 | 0 | 0.00% | 1,366 | 2,901 |
| "roman" | 637412 - 001 | ALL | 1,467 | 0.22% | 1,902 | 4 | 4 | 0.00% | 1,463 | 1,898 |
| "sensitiv" | 637412 - 001 | ALL | 12,334 | 1.86% | 21,243 | 25 | 25 | 0.01% | 12,309 | 21,218 |
| "settle" | 637412 - 001 | ALL | 5,544 | 0.84% | 9,674 | 1 | 0 | 0.00% | 5,543 | 9,674 |
| "sever" | 637412 - 001 | ALL | 15,577 | 2.35% | 27,917 | 24 | 27 | 0.02% | 15,553 | 27,890 |
| "sex" | 637412 - 001 | ALL | 1,829 | 0.28% | 4,966 | 1 | 0 | 0.00% | 1,828 | 4,966 |
| "showing" | 637412 - 001 | ALL | 6,387 | 0.96% | 10,717 | 24 | 23 | 0.01% | 6,363 | 10,694 |
| "suit" | 637412 - 001 | ALL | 3,358 | 0.51% | 5,456 | 0 | 0 | 0.00% | 3,358 | 5,456 |
| "suspend" | 637412 - 001 | ALL | 3,650 | 0.55% | 7,789 | 1 | 0 | 0.00% | 3,649 | 7,789 |
| "terminat" | 637412 - 001 | ALL | 13,169 | 1.99% | 25,825 | 17 | 15 | 0.01% | 13,152 | 25,810 |
| "tit" | 637412 - 001 | ALL | 19,275 | 2.91% | 33,418 | 286 | 294 | 0.17% | 18,989 | 33,124 |
| "unwant" | 637412 - 001 | ALL | 411 | 0.06% | 1,611 | 4 | 1 | 0.00% | 407 | 1,610 |
| "vegas" | 637412 - 001 | ALL | 4,176 | 0.63% | 5,211 | 20 | 20 | 0.01% | 4,151 | 5,191 |
| "vibe" | 637412 - 001 | ALL | 778 | 0.12% | 901 | 1 | 1 | 0.00% | 777 | 900 |
| **Total Documents (adjusted for overlap; NOT a sum of above data)** | | | **506,818** | **76.34%** | **607,425** | **192,603** | **176,555** | **100.00%** | **313,215** | **330,870** |

| Term | Keyword/Category | Custodian | Document Hits | Hit Rate (%) | Document Hits with Family | Unique Document Hits | Unique Family Hits (Document Count) | % of all Unique Family Hits | Shared Hits (2+ Terms) | Shared Hits (2+ Terms) (Full Family) |
|---|---|---|---|---|---|---|---|---|---|---|
| "Adam" | 637412 - 001 | Bai, Tony | 561 | 0.08% | 883 | 60 | 72 | 0.56% | 501 | 811 |
| "Aisha" | 637412 - 001 | Bai, Tony | 0 | 0.00% | 0 | 0 | 0 | 0.00% | 0 | 0 |
| "ashley" OR "ashely" OR "ash" OR "fragile" OR | 637412 - 001 | Bai, Tony | 2,423 | 0.37% | 3,040 | 156 | 154 | 1.19% | 2,267 | 2,886 |
| "bitch" | 637412 - 001 | Bai, Tony | 0 | 0.00% | 0 | 0 | 0 | 0.00% | 0 | 0 |
| "boob" | 637412 - 001 | Bai, Tony | 1 | 0.00% | 1 | 0 | 0 | 0.00% | 1 | 1 |
| "breast" | 637412 - 001 | Bai, Tony | 2 | 0.00% | 5 | 0 | 0 | 0.00% | 2 | 5 |
| "claim" | 637412 - 001 | Bai, Tony | 727 | 0.11% | 1,575 | 1 | 1 | 0.01% | 726 | 1,574 |
| "complain" | 637412 - 001 | Bai, Tony | 258 | 0.04% | 528 | 0 | 0 | 0.00% | 258 | 528 |
| "crazy" | 637412 - 001 | Bai, Tony | 87 | 0.01% | 96 | 0 | 0 | 0.00% | 87 | 96 |
| "cunt" | 637412 - 001 | Bai, Tony | 0 | 0.00% | 0 | 0 | 0 | 0.00% | 0 | 0 |
| "date" | 637412 - 001 | Bai, Tony | 5,916 | 0.89% | 8,627 | 137 | 89 | 0.53% | 5,779 | 8,538 |
| "dating" | 637412 - 001 | Bai, Tony | 6 | 0.00% | 11 | 0 | 0 | 0.00% | 6 | 11 |
| "dick" | 637412 - 001 | Bai, Tony | 10 | 0.00% | 14 | 0 | 0 | 0.00% | 10 | 14 |
| "doucher" | 637412 - 001 | Bai, Tony | 0 | 0.00% | 0 | 0 | 0 | 0.00% | 0 | 0 |
| "drank" | 637412 - 001 | Bai, Tony | 0 | 0.00% | 0 | 0 | 0 | 0.00% | 0 | 0 |
| "drunk" | 637412 - 001 | Bai, Tony | 2 | 0.00% | 2 | 0 | 0 | 0.00% | 2 | 2 |
| "fire" | 637412 - 001 | Bai, Tony | 1,361 | 0.21% | 2,663 | 27 | 27 | 0.21% | 1,334 | 2,636 |
| "fuck" | 637412 - 001 | Bai, Tony | 17 | 0.00% | 20 | 0 | 0 | 0.00% | 17 | 20 |
| "harass" | 637412 - 001 | Bai, Tony | 56 | 0.01% | 167 | 0 | 0 | 0.00% | 56 | 167 |
| "Hawkins" | 637412 - 001 | Bai, Tony | 66 | 0.01% | 74 | 0 | 0 | 0.00% | 66 | 74 |
| "hooked" | 637412 - 001 | Bai, Tony | 10 | 0.00% | 19 | 0 | 0 | 0.00% | 10 | 19 |
| "HR risk" | 637412 - 001 | Bai, Tony | 0 | 0.00% | 0 | 0 | 0 | 0.00% | 0 | 0 |
| "illegal" | 637412 - 001 | Bai, Tony | 346 | 0.05% | 765 | 0 | 0 | 0.00% | 346 | 765 |
| "inappropriat" | 637412 - 001 | Bai, Tony | 134 | 0.02% | 400 | 0 | 0 | 0.00% | 134 | 400 |
| "intern" | 637412 - 001 | Bai, Tony | 109 | 0.02% | 159 | 4 | 4 | 0.03% | 105 | 155 |
| "investigat" | 637412 - 001 | Bai, Tony | 930 | 0.14% | 1,993 | 6 | 6 | 0.05% | 924 | 1,987 |
| "Jake" | 637412 - 001 | Bai, Tony | 13,720 | 2.07% | 15,616 | 25 | 25 | 0.19% | 13,695 | 15,591 |
| "kill" | 637412 - 001 | Bai, Tony | 96 | 0.01% | 226 | 1 | 1 | 0.01% | 95 | 227 |
| "lawsuit" | 637412 - 001 | Bai, Tony | 46 | 0.01% | 69 | 0 | 0 | 0.00% | 46 | 69 |
| "lol" | 637412 - 001 | Bai, Tony | 815 | 0.12% | 931 | 1 | 1 | 0.01% | 814 | 930 |
| "love" | 637412 - 001 | Bai, Tony | 2,876 | 0.43% | 3,352 | 16 | 16 | 0.12% | 2,860 | 3,336 |
| "NRV" | 637412 - 001 | Bai, Tony | 6 | 0.00% | 9 | 0 | 0 | 0.00% | 6 | 9 |
| "naked" | 637412 - 001 | Bai, Tony | 0 | 0.00% | 0 | 0 | 0 | 0.00% | 0 | 0 |
| "No" | 637412 - 001 | Bai, Tony | 13,395 | 2.02% | 15,176 | 1 | 0 | 0.00% | 13,394 | 15,176 |
| "nude" | 637412 - 001 | Bai, Tony | 0 | 0.00% | 0 | 0 | 0 | 0.00% | 0 | 0 |
| "OF" | 637412 - 001 | Bai, Tony | 35,315 | 5.33% | 35,523 | 14,841 | 12,393 | 95.92% | 20,474 | 23,130 |
| "onlyfans" | 637412 - 001 | Bai, Tony | 0 | 0.00% | 0 | 0 | 0 | 0.00% | 0 | 0 |
| "photo" | 637412 - 001 | Bai, Tony | 371 | 0.06% | 669 | 1 | 1 | 0.01% | 370 | 668 |
| "pic" | 637412 - 001 | Bai, Tony | 963 | 0.15% | 1,719 | 52 | 54 | 0.42% | 911 | 1,665 |
| "profile" | 637412 - 001 | Bai, Tony | 892 | 0.13% | 1,847 | 9 | 8 | 0.07% | 883 | 1,839 |
| "puss" | 637412 - 001 | Bai, Tony | 0 | 0.00% | 0 | 0 | 0 | 0.00% | 0 | 0 |
| "retaliat" | 637412 - 001 | Bai, Tony | 21 | 0.00% | 78 | 0 | 0 | 0.00% | 21 | 78 |
| "roman" | 637412 - 001 | Bai, Tony | 81 | 0.01% | 116 | 2 | 2 | 0.02% | 79 | 114 |
| "sensitiv" | 637412 - 001 | Bai, Tony | 1,534 | 0.23% | 2,820 | 9 | 9 | 0.07% | 1,525 | 2,811 |
| "settle" | 637412 - 001 | Bai, Tony | 411 | 0.06% | 906 | 1 | 1 | 0.01% | 410 | 906 |
| "sever" | 637412 - 001 | Bai, Tony | 1,619 | 0.24% | 3,087 | 5 | 7 | 0.05% | 1,614 | 3,080 |
| "sex" | 637412 - 001 | Bai, Tony | 70 | 0.01% | 291 | 0 | 0 | 0.00% | 70 | 291 |
| "showing" | 637412 - 001 | Bai, Tony | 461 | 0.07% | 1,016 | 1 | 1 | 0.01% | 460 | 1,015 |
| "suit" | 637412 - 001 | Bai, Tony | 312 | 0.05% | 662 | 0 | 0 | 0.00% | 312 | 662 |
| "suspend" | 637412 - 001 | Bai, Tony | 328 | 0.05% | 838 | 0 | 0 | 0.00% | 328 | 838 |
| "terminat" | 637412 - 001 | Bai, Tony | 1,119 | 0.17% | 2,320 | 8 | 8 | 0.06% | 1,111 | 2,312 |
| "tit" | 637412 - 001 | Bai, Tony | 1,751 | 0.26% | 3,341 | 61 | 61 | 0.47% | 1,690 | 3,280 |
| "unwant" | 637412 - 001 | Bai, Tony | 42 | 0.01% | 222 | 1 | 1 | 0.01% | 41 | 221 |
| "vegas" | 637412 - 001 | Bai, Tony | 251 | 0.04% | 306 | 1 | 1 | 0.01% | 250 | 305 |
| "vibe" | 637412 - 001 | Bai, Tony | 17 | 0.00% | 17 | 0 | 0 | 0.00% | 17 | 17 |
| **Total Documents (adjusted for overlap; NOT a sum of above data)** | | | **37,260** | **5.62%** | **37,421** | **14,187** | **12,933** | **100.00%** | **21,833** | **24,548** |

| Term | Keyword/Category | Custodian | Document Hits | Hit Rate (%) | Document Hits with Family | Unique Document Hits | Unique Family Hits (Document Count) | % of all Unique Family Hits | Shared Hits (2+ Terms) | Shared Hits (2+ Terms) (Full Family) |
|---|---|---|---|---|---|---|---|---|---|---|
| "Adam" | 637412 - 001 | Cowdrey, Mike | 162 | 0.02% | 167 | 13 | 13 | 0.27% | 149 | 154 |
| "Aisha" | 637412 - 001 | Cowdrey, Mike | 52 | 0.01% | 52 | 0 | 0 | 0.00% | 52 | 52 |
| "ashley" OR "ashely" OR "ash" OR "fragile" OR | 637412 - 001 | Cowdrey, Mike | 1,033 | 0.16% | 1,088 | 167 | 166 | 3.40% | 866 | 920 |
| "bitch" | 637412 - 001 | Cowdrey, Mike | 0 | 0.00% | 0 | 0 | 0 | 0.00% | 0 | 0 |
| "boob" | 637412 - 001 | Cowdrey, Mike | 0 | 0.00% | 0 | 0 | 0 | 0.00% | 0 | 0 |
| "breast" | 637412 - 001 | Cowdrey, Mike | 0 | 0.00% | 0 | 0 | 0 | 0.00% | 0 | 0 |
| "claim" | 637412 - 001 | Cowdrey, Mike | 64 | 0.01% | 80 | 0 | 0 | 0.00% | 64 | 80 |
| "complain" | 637412 - 001 | Cowdrey, Mike | 13 | 0.00% | 20 | 1 | 1 | 0.02% | 12 | 19 |
| "crazy" | 637412 - 001 | Cowdrey, Mike | 2 | 0.00% | 3 | 0 | 0 | 0.00% | 2 | 3 |
| "cunt" | 637412 - 001 | Cowdrey, Mike | 0 | 0.00% | 0 | 0 | 0 | 0.00% | 0 | 0 |
| "date" | 637412 - 001 | Cowdrey, Mike | 1,990 | 0.30% | 3,381 | 2 | 2 | 0.04% | 1,988 | 3,379 |
| "dating" | 637412 - 001 | Cowdrey, Mike | 0 | 0.00% | 0 | 0 | 0 | 0.00% | 0 | 0 |
| "dick" | 637412 - 001 | Cowdrey, Mike | 4 | 0.00% | 8 | 0 | 0 | 0.00% | 4 | 8 |
| "doucher" | 637412 - 001 | Cowdrey, Mike | 0 | 0.00% | 0 | 0 | 0 | 0.00% | 0 | 0 |
| "drank" | 637412 - 001 | Cowdrey, Mike | 0 | 0.00% | 0 | 0 | 0 | 0.00% | 0 | 0 |
| "drunk" | 637412 - 001 | Cowdrey, Mike | 1 | 0.00% | 1 | 0 | 0 | 0.00% | 1 | 1 |
| "fire" | 637412 - 001 | Cowdrey, Mike | 170 | 0.03% | 213 | 0 | 0 | 0.00% | 170 | 213 |
| "fuck" | 637412 - 001 | Cowdrey, Mike | 0 | 0.00% | 0 | 0 | 0 | 0.00% | 0 | 0 |
| "harass" | 637412 - 001 | Cowdrey, Mike | 6 | 0.00% | 10 | 0 | 0 | 0.00% | 6 | 10 |
| "Hawkins" | 637412 - 001 | Cowdrey, Mike | 4 | 0.00% | 4 | 0 | 0 | 0.00% | 4 | 4 |
| "hooked" | 637412 - 001 | Cowdrey, Mike | 1 | 0.00% | 1 | 0 | 0 | 0.00% | 1 | 1 |

# KLDiscovery

**Nebula Cull Extended Search Report**

Executed at 9/26/2025 7:32:55 PM

| Term | KeywordCategory | Custodian | Document Hits | Hit Rate (%) | Document Hits with Family | Unique Document Hits | Unique Family Hits (Document Count) | % of all Unique Family Hits | Shared Hits (2+ Terms) | Shared Hits (2+ Terms) (Full Family) |
|---|---|---|---|---|---|---|---|---|---|---|
| "HR risk" | 637412 - 001 | Cowdrey, Mike | 0 | 0.00% | 0 | 0 | 0 | 0.00% | 0 | 0 |
| "illegal*" | 637412 - 001 | Cowdrey, Mike | 4 | 0.00% | 8 | 0 | 0 | 0.00% | 4 | 8 |
| "inappropriat*" | 637412 - 001 | Cowdrey, Mike | 1 | 0.00% | 2 | 0 | 0 | 0.00% | 1 | 2 |
| "intern*" | 637412 - 001 | Cowdrey, Mike | 40 | 0.01% | 40 | 0 | 0 | 0.00% | 40 | 40 |
| "investigat*" | 637412 - 001 | Cowdrey, Mike | 90 | 0.01% | 105 | 0 | 0 | 0.00% | 90 | 105 |
| "Jake" | 637412 - 001 | Cowdrey, Mike | 1,024 | 0.15% | 1,113 | 3 | 3 | 0.06% | 1,021 | 1,110 |
| "kill*" | 637412 - 001 | Cowdrey, Mike | 15 | 0.00% | 16 | 0 | 0 | 0.00% | 15 | 16 |
| "lawsuit" | 637412 - 001 | Cowdrey, Mike | 6 | 0.00% | 7 | 0 | 0 | 0.00% | 6 | 7 |
| "lol" | 637412 - 001 | Cowdrey, Mike | 52 | 0.01% | 54 | 6 | 6 | 0.12% | 46 | 48 |
| "love*" | 637412 - 001 | Cowdrey, Mike | 307 | 0.05% | 340 | 0 | 0 | 0.00% | 307 | 340 |
| "MPP" | 637412 - 001 | Cowdrey, Mike | 0 | 0.00% | 0 | 0 | 0 | 0.00% | 0 | 0 |
| "naked" | 637412 - 001 | Cowdrey, Mike | 0 | 0.00% | 0 | 0 | 0 | 0.00% | 0 | 0 |
| "No" | 637412 - 001 | Cowdrey, Mike | 1,024 | 0.15% | 1,114 | 0 | 0 | 0.00% | 1,024 | 1,114 |
| "nude*" | 637412 - 001 | Cowdrey, Mike | 0 | 0.00% | 0 | 0 | 0 | 0.00% | 0 | 0 |
| "Off" | 637412 - 001 | Cowdrey, Mike | 9,926 | 1.50% | 9,935 | 5,997 | 4,622 | 65.93% | 3,929 | 5,313 |
| "onlyfans" | 637412 - 001 | Cowdrey, Mike | 0 | 0.00% | 0 | 0 | 0 | 0.00% | 0 | 0 |
| "photo*" | 637412 - 001 | Cowdrey, Mike | 43 | 0.01% | 60 | 0 | 0 | 0.00% | 43 | 60 |
| "pic*" | 637412 - 001 | Cowdrey, Mike | 118 | 0.02% | 147 | 0 | 0 | 0.00% | 118 | 147 |
| "profile*" | 637412 - 001 | Cowdrey, Mike | 270 | 0.04% | 365 | 0 | 0 | 0.00% | 270 | 365 |
| "puss*" | 637412 - 001 | Cowdrey, Mike | 0 | 0.00% | 0 | 0 | 0 | 0.00% | 0 | 0 |
| "retaliat*" | 637412 - 001 | Cowdrey, Mike | 1 | 0.00% | 1 | 0 | 0 | 0.00% | 1 | 1 |
| "roman*" | 637412 - 001 | Cowdrey, Mike | 15 | 0.00% | 16 | 0 | 0 | 0.00% | 15 | 16 |
| "sensitiv*" | 637412 - 001 | Cowdrey, Mike | 70 | 0.01% | 84 | 0 | 0 | 0.00% | 70 | 84 |
| "settle*" | 637412 - 001 | Cowdrey, Mike | 8 | 0.00% | 17 | 0 | 0 | 0.00% | 8 | 17 |
| "sever*" | 637412 - 001 | Cowdrey, Mike | 311 | 0.05% | 333 | 0 | 0 | 0.00% | 311 | 333 |
| "sex*" | 637412 - 001 | Cowdrey, Mike | 14 | 0.00% | 20 | 0 | 0 | 0.00% | 14 | 20 |
| "showing" | 637412 - 001 | Cowdrey, Mike | 56 | 0.01% | 60 | 1 | 1 | 0.02% | 55 | 59 |
| "suit" | 637412 - 001 | Cowdrey, Mike | 3 | 0.00% | 6 | 0 | 0 | 0.00% | 3 | 6 |
| "suspend*" | 637412 - 001 | Cowdrey, Mike | 8 | 0.00% | 14 | 0 | 0 | 0.00% | 8 | 14 |
| "terminat*" | 637412 - 001 | Cowdrey, Mike | 37 | 0.01% | 104 | 0 | 0 | 0.00% | 37 | 104 |
| "tit*" | 637412 - 001 | Cowdrey, Mike | 226 | 0.03% | 253 | 1 | 1 | 0.02% | 225 | 252 |
| "unwant*" | 637412 - 001 | Cowdrey, Mike | 4 | 0.00% | 4 | 0 | 0 | 0.00% | 4 | 4 |
| "vegas*" | 637412 - 001 | Cowdrey, Mike | 20 | 0.00% | 20 | 0 | 0 | 0.00% | 20 | 22 |
| "vibe" | 637412 - 001 | Cowdrey, Mike | 5 | 0.00% | 6 | 0 | 0 | 0.00% | 5 | 6 |
| **Total Documents (adjusted for overlap; NOT a sum of above data)** | | | **10,383** | **1.56%** | **10,311** | **6,192** | **4,819** | **100.00%** | **4,111** | **5,483** |

| Term | KeywordCategory | Custodian | Document Hits | Hit Rate (%) | Document Hits with Family | Unique Document Hits | Unique Family Hits (Document Count) | % of all Unique Family Hits | Shared Hits (2+ Terms) | Shared Hits (2+ Terms) (Full Family) |
|---|---|---|---|---|---|---|---|---|---|---|
| "Adam" | 637412 - 001 | Dreyoyr, Matthew | 1,706 | 0.29% | 2,660 | 45 | 50 | 0.26% | 1,683 | 2,640 |
| "Aisha" | 637412 - 001 | Dreyoyr, Matthew | 199 | 0.03% | 432 | 0 | 0 | 0.00% | 199 | 432 |
| "ashey" OR "asherly" OR "ash" OR "fragale" OR | 637412 - 001 | Dreyoyr, Matthew | 4,119 | 0.62% | 5,153 | 163 | 110 | 0.58% | 3,956 | 5,043 |
| "bitch*" | 637412 - 001 | Dreyoyr, Matthew | 10 | 0.00% | 13 | 0 | 0 | 0.00% | 10 | 13 |
| "boob*" | 637412 - 001 | Dreyoyr, Matthew | 10 | 0.00% | 15 | 0 | 0 | 0.00% | 10 | 15 |
| "breast*" | 637412 - 001 | Dreyoyr, Matthew | 19 | 0.00% | 36 | 0 | 0 | 0.00% | 19 | 36 |
| "claim*" | 637412 - 001 | Dreyoyr, Matthew | 3,732 | 0.56% | 5,950 | 7 | 6 | 0.03% | 3,725 | 5,944 |
| "complain*" | 637412 - 001 | Dreyoyr, Matthew | 1,606 | 0.24% | 2,947 | 6 | 6 | 0.03% | 1,600 | 2,941 |
| "crazy" | 637412 - 001 | Dreyoyr, Matthew | 316 | 0.05% | 416 | 0 | 0 | 0.00% | 316 | 416 |
| "cunt*" | 637412 - 001 | Dreyoyr, Matthew | 7 | 0.00% | 12 | 0 | 0 | 0.00% | 7 | 12 |
| "date" | 637412 - 001 | Dreyoyr, Matthew | 14,177 | 2.14% | 19,204 | 953 | 394 | 2.07% | 13,224 | 18,810 |
| "dating" | 637412 - 001 | Dreyoyr, Matthew | 127 | 0.02% | 439 | 0 | 0 | 0.00% | 127 | 439 |
| "dick*" | 637412 - 001 | Dreyoyr, Matthew | 30 | 0.00% | 49 | 0 | 0 | 0.00% | 30 | 49 |
| "douche*" | 637412 - 001 | Dreyoyr, Matthew | 3 | 0.00% | 6 | 0 | 0 | 0.00% | 3 | 6 |
| "drank" | 637412 - 001 | Dreyoyr, Matthew | 4 | 0.00% | 7 | 0 | 0 | 0.00% | 4 | 7 |
| "drunk" | 637412 - 001 | Dreyoyr, Matthew | 5 | 0.00% | 8 | 0 | 0 | 0.00% | 5 | 8 |
| "fire*" | 637412 - 001 | Dreyoyr, Matthew | 1,970 | 0.30% | 3,515 | 13 | 12 | 0.06% | 1,957 | 3,503 |
| "fuck*" | 637412 - 001 | Dreyoyr, Matthew | 57 | 0.01% | 65 | 0 | 0 | 0.00% | 57 | 65 |
| "harass*" | 637412 - 001 | Dreyoyr, Matthew | 618 | 0.09% | 1,186 | 2 | 2 | 0.01% | 616 | 1,184 |
| "Hawkins" | 637412 - 001 | Dreyoyr, Matthew | 409 | 0.06% | 591 | 2 | 2 | 0.01% | 407 | 589 |
| "hooked" | 637412 - 001 | Dreyoyr, Matthew | 43 | 0.01% | 83 | 1 | 1 | 0.01% | 42 | 82 |
| "HR risk" | 637412 - 001 | Dreyoyr, Matthew | 9 | 0.00% | 21 | 0 | 0 | 0.00% | 9 | 21 |
| "illegal*" | 637412 - 001 | Dreyoyr, Matthew | 1,487 | 0.22% | 2,799 | 0 | 0 | 0.00% | 1,487 | 2,799 |
| "inappropriat*" | 637412 - 001 | Dreyoyr, Matthew | 493 | 0.07% | 1,047 | 1 | 1 | 0.01% | 492 | 1,047 |
| "intern*" | 637412 - 001 | Dreyoyr, Matthew | 335 | 0.05% | 685 | 3 | 1 | 0.01% | 332 | 684 |
| "investigat*" | 637412 - 001 | Dreyoyr, Matthew | 3,084 | 0.47% | 5,050 | 51 | 10 | 0.05% | 3,033 | 5,000 |
| "Jake" | 637412 - 001 | Dreyoyr, Matthew | 39,447 | 2.93% | 23,044 | 59 | 44 | 0.23% | 19,388 | 23,000 |
| "kill*" | 637412 - 001 | Dreyoyr, Matthew | 344 | 0.05% | 411 | 7 | 7 | 0.04% | 337 | 404 |
| "lawsuit" | 637412 - 001 | Dreyoyr, Matthew | 675 | 0.10% | 1,381 | 0 | 0 | 0.00% | 675 | 1,381 |
| "lol" | 637412 - 001 | Dreyoyr, Matthew | 702 | 0.11% | 762 | 24 | 25 | 0.13% | 678 | 737 |
| "love*" | 637412 - 001 | Dreyoyr, Matthew | 6,441 | 0.97% | 7,376 | 169 | 167 | 0.88% | 6,272 | 7,209 |
| "MPP" | 637412 - 001 | Dreyoyr, Matthew | 249 | 0.04% | 385 | 0 | 0 | 0.00% | 249 | 385 |
| "naked" | 637412 - 001 | Dreyoyr, Matthew | 23 | 0.00% | 267 | 0 | 0 | 0.00% | 23 | 267 |
| "No" | 637412 - 001 | Dreyoyr, Matthew | 19,234 | 2.90% | 22,879 | 20 | 11 | 0.06% | 19,214 | 22,868 |
| "nude*" | 637412 - 001 | Dreyoyr, Matthew | 37 | 0.01% | 268 | 0 | 0 | 0.00% | 37 | 268 |
| "Off" | 637412 - 001 | Dreyoyr, Matthew | 56,618 | 8.53% | 58,390 | 20,907 | 17,741 | 92.99% | 35,611 | 40,649 |
| "onlyfans" | 637412 - 001 | Dreyoyr, Matthew | 8 | 0.00% | 11 | 0 | 0 | 0.00% | 8 | 11 |
| "photo*" | 637412 - 001 | Dreyoyr, Matthew | 997 | 0.15% | 1,923 | 4 | 4 | 0.02% | 993 | 1,919 |
| "pic*" | 637412 - 001 | Dreyoyr, Matthew | 3,300 | 0.50% | 4,733 | 75 | 69 | 0.36% | 3,225 | 4,664 |
| "profile*" | 637412 - 001 | Dreyoyr, Matthew | 2,978 | 0.45% | 4,209 | 110 | 111 | 0.58% | 2,868 | 4,148 |
| "puss*" | 637412 - 001 | Dreyoyr, Matthew | 3 | 0.00% | 4 | 0 | 0 | 0.00% | 3 | 4 |
| "retaliat*" | 637412 - 001 | Dreyoyr, Matthew | 665 | 0.10% | 1,464 | 0 | 0 | 0.00% | 665 | 1,464 |
| "roman*" | 637412 - 001 | Dreyoyr, Matthew | 160 | 0.02% | 318 | 0 | 0 | 0.00% | 160 | 318 |
| "sensitiv*" | 637412 - 001 | Dreyoyr, Matthew | 2,723 | 0.41% | 4,474 | 13 | 13 | 0.07% | 2,710 | 4,461 |
| "settle*" | 637412 - 001 | Dreyoyr, Matthew | 1,942 | 0.29% | 3,498 | 0 | 0 | 0.00% | 1,942 | 3,498 |
| "sever*" | 637412 - 001 | Dreyoyr, Matthew | 3,690 | 0.56% | 6,013 | 13 | 13 | 0.07% | 3,677 | 6,000 |
| "showing" | 637412 - 001 | Dreyoyr, Matthew | 575 | 0.09% | 1,394 | 1 | 0 | 0.00% | 574 | 1,394 |
| "suit" | 637412 - 001 | Dreyoyr, Matthew | 1,221 | 0.18% | 2,371 | 17 | 16 | 0.08% | 1,204 | 2,355 |
| "suspend*" | 637412 - 001 | Dreyoyr, Matthew | 1,096 | 0.17% | 2,036 | 0 | 0 | 0.00% | 1,096 | 2,036 |
| "terminat*" | 637412 - 001 | Dreyoyr, Matthew | 1,098 | 0.17% | 2,142 | 1 | 1 | 0.01% | 1,097 | 2,142 |
| "tit*" | 637412 - 001 | Dreyoyr, Matthew | 3,601 | 0.54% | 6,400 | 1 | 1 | 0.01% | 3,600 | 6,399 |
| "unwant*" | 637412 - 001 | Dreyoyr, Matthew | 4,288 | 0.65% | 7,425 | 204 | 203 | 1.06% | 4,084 | 7,222 |
| "vegas*" | 637412 - 001 | Dreyoyr, Matthew | 73 | 0.01% | 343 | 3 | 3 | 0.02% | 70 | 343 |
| "vibe" | 637412 - 001 | Dreyoyr, Matthew | 785 | 0.12% | 1,381 | 24 | 19 | 0.10% | 761 | 1,362 |
| "vibe" | 637412 - 001 | Dreyoyr, Matthew | 166 | 0.03% | 212 | 0 | 0 | 0.00% | 166 | 212 |
| **Total Documents (adjusted for overlap; NOT a sum of above data)** | | | **61,639** | **9.30%** | **62,888** | **22,951** | **19,078** | **100.00%** | **38,938** | **43,810** |

| Term | KeywordCategory | Custodian | Document Hits | Hit Rate (%) | Document Hits with Family | Unique Document Hits | Unique Family Hits (Document Count) | % of all Unique Family Hits | Shared Hits (2+ Terms) | Shared Hits (2+ Terms) (Full Family) |
|---|---|---|---|---|---|---|---|---|---|---|
| "Adam" | 637412 - 001 | Fragale, Ashley | 264 | 0.04% | 332 | 0 | 0 | 0.00% | 264 | 332 |
| "Aisha" | 637412 - 001 | Fragale, Ashley | 1 | 0.00% | 4 | 0 | 0 | 0.00% | 1 | 4 |
| "ashey" OR "asherly" OR "ash" OR "fragale" OR | 637412 - 001 | Fragale, Ashley | 102,613 | 15.49% | 102,613 | 86,646 | 86,594 | 100.00% | 15,967 | 16,019 |
| "bitch*" | 637412 - 001 | Fragale, Ashley | 0 | 0.00% | 0 | 0 | 0 | 0.00% | 0 | 0 |
| "boob*" | 637412 - 001 | Fragale, Ashley | 0 | 0.00% | 0 | 0 | 0 | 0.00% | 0 | 0 |
| "breast*" | 637412 - 001 | Fragale, Ashley | 12 | 0.00% | 30 | 0 | 0 | 0.00% | 12 | 30 |
| "claim*" | 637412 - 001 | Fragale, Ashley | 544 | 0.08% | 931 | 0 | 0 | 0.00% | 544 | 931 |
| "complain*" | 637412 - 001 | Fragale, Ashley | 351 | 0.05% | 679 | 0 | 0 | 0.00% | 351 | 679 |
| "crazy" | 637412 - 001 | Fragale, Ashley | 25 | 0.00% | 28 | 0 | 0 | 0.00% | 25 | 28 |
| "cunt*" | 637412 - 001 | Fragale, Ashley | 0 | 0.00% | 0 | 0 | 0 | 0.00% | 0 | 0 |
| "date" | 637412 - 001 | Fragale, Ashley | 2,906 | 0.44% | 4,013 | 0 | 0 | 0.00% | 2,906 | 4,013 |
| "dating" | 637412 - 001 | Fragale, Ashley | 4 | 0.00% | 7 | 0 | 0 | 0.00% | 4 | 7 |
| "dick*" | 637412 - 001 | Fragale, Ashley | 13 | 0.00% | 38 | 0 | 0 | 0.00% | 13 | 38 |
| "douche*" | 637412 - 001 | Fragale, Ashley | 0 | 0.00% | 0 | 0 | 0 | 0.00% | 0 | 0 |
| "drank" | 637412 - 001 | Fragale, Ashley | 0 | 0.00% | 0 | 0 | 0 | 0.00% | 0 | 0 |
| "drunk" | 637412 - 001 | Fragale, Ashley | 1 | 0.00% | 1 | 0 | 0 | 0.00% | 1 | 1 |
| "fire*" | 637412 - 001 | Fragale, Ashley | 240 | 0.04% | 301 | 0 | 0 | 0.00% | 240 | 301 |
| "fuck*" | 637412 - 001 | Fragale, Ashley | 2 | 0.00% | 2 | 0 | 0 | 0.00% | 2 | 2 |
| "harass*" | 637412 - 001 | Fragale, Ashley | 118 | 0.02% | 209 | 0 | 0 | 0.00% | 118 | 209 |
| "Hawkins" | 637412 - 001 | Fragale, Ashley | 17 | 0.00% | 20 | 0 | 0 | 0.00% | 17 | 20 |
| "hooked" | 637412 - 001 | Fragale, Ashley | 1 | 0.00% | 2 | 0 | 0 | 0.00% | 1 | 2 |
| "HR risk" | 637412 - 001 | Fragale, Ashley | 0 | 0.00% | 0 | 0 | 0 | 0.00% | 0 | 0 |
| "illegal*" | 637412 - 001 | Fragale, Ashley | 194 | 0.03% | 396 | 0 | 0 | 0.00% | 194 | 396 |
| "inappropriat*" | 637412 - 001 | Fragale, Ashley | 15 | 0.00% | 28 | 0 | 0 | 0.00% | 15 | 28 |
| "intern*" | 637412 - 001 | Fragale, Ashley | 251 | 0.03% | 263 | 0 | 0 | 0.00% | 201 | 263 |
| "investigat*" | 637412 - 001 | Fragale, Ashley | 344 | 0.05% | 622 | 0 | 0 | 0.00% | 344 | 622 |
| "Jake" | 637412 - 001 | Fragale, Ashley | 3,177 | 0.48% | 3,600 | 0 | 0 | 0.00% | 3,177 | 3,600 |
| "kill*" | 637412 - 001 | Fragale, Ashley | 44 | 0.01% | 67 | 0 | 0 | 0.00% | 44 | 67 |
| "lawsuit" | 637412 - 001 | Fragale, Ashley | 155 | 0.02% | 299 | 0 | 0 | 0.00% | 155 | 299 |
| "lol" | 637412 - 001 | Fragale, Ashley | 319 | 0.05% | 356 | 0 | 0 | 0.00% | 319 | 356 |
| "love*" | 637412 - 001 | Fragale, Ashley | 934 | 0.14% | 1,113 | 0 | 0 | 0.00% | 934 | 1,113 |
| "MPP" | 637412 - 001 | Fragale, Ashley | 4 | 0.00% | 6 | 0 | 0 | 0.00% | 4 | 6 |
| "naked" | 637412 - 001 | Fragale, Ashley | 0 | 0.00% | 0 | 0 | 0 | 0.00% | 0 | 0 |
| "No" | 637412 - 001 | Fragale, Ashley | 2,271 | 0.34% | 2,615 | 0 | 0 | 0.00% | 2,271 | 2,615 |
| "nude*" | 637412 - 001 | Fragale, Ashley | 1 | 0.00% | 2 | 0 | 0 | 0.00% | 1 | 2 |
| "Off" | 637412 - 001 | Fragale, Ashley | 15,234 | 2.30% | 15,322 | 0 | 0 | 0.00% | 15,234 | 15,322 |
| "onlyfans" | 637412 - 001 | Fragale, Ashley | 0 | 0.00% | 0 | 0 | 0 | 0.00% | 0 | 0 |
| "photo*" | 637412 - 001 | Fragale, Ashley | 95 | 0.01% | 189 | 0 | 0 | 0.00% | 95 | 189 |
| "pic*" | 637412 - 001 | Fragale, Ashley | 730 | 0.11% | 1,047 | 0 | 0 | 0.00% | 730 | 1,047 |
| "profile*" | 637412 - 001 | Fragale, Ashley | 896 | 0.14% | 1,181 | 0 | 0 | 0.00% | 896 | 1,181 |
| "puss*" | 637412 - 001 | Fragale, Ashley | 0 | 0.00% | 0 | 0 | 0 | 0.00% | 0 | 0 |
| "retaliat*" | 637412 - 001 | Fragale, Ashley | 215 | 0.03% | 414 | 0 | 0 | 0.00% | 215 | 414 |
| "roman*" | 637412 - 001 | Fragale, Ashley | 11 | 0.00% | 22 | 0 | 0 | 0.00% | 11 | 22 |
| "sensitiv*" | 637412 - 001 | Fragale, Ashley | 167 | 0.03% | 274 | 0 | 0 | 0.00% | 167 | 274 |
| "settle*" | 637412 - 001 | Fragale, Ashley | 141 | 0.02% | 245 | 0 | 0 | 0.00% | 141 | 245 |
| "sever*" | 637412 - 001 | Fragale, Ashley | 447 | 0.07% | 910 | 0 | 0 | 0.00% | 447 | 910 |
| "sex*" | 637412 - 001 | Fragale, Ashley | 139 | 0.02% | 301 | 0 | 0 | 0.00% | 139 | 301 |

**KLDiscovery**

Nebula Cull Extended Search Report

Executed at 9/26/2025 7:32:55 PM

| | | | Document Hits | Hit Rate (%) | Document Hits with Family | Unique Document Hits | Unique Family Hits (Document Count) | % of all Unique Family Hits | Shared Hits (2+ Terms) | Shared Hits (2+ Terms) (Full Family) |
|---|---|---|---|---|---|---|---|---|---|---|
| "showing" | 637412 - 001 | Fragale, Ashley | 412 | 0.00% | 651 | 0 | 0 | 0.00% | 412 | 651 |
| "suit" | 637412 - 001 | Fragale, Ashley | 46 | 0.01% | 110 | 0 | 0 | 0.00% | 46 | 110 |
| "suspend*" | 637412 - 001 | Fragale, Ashley | 49 | 0.01% | 71 | 0 | 0 | 0.00% | 49 | 71 |
| "terminat*" | 637412 - 001 | Fragale, Ashley | 698 | 0.11% | 1,062 | 0 | 0 | 0.00% | 698 | 1,062 |
| "tit*" | 637412 - 001 | Fragale, Ashley | 923 | 0.14% | 1,416 | 0 | 0 | 0.00% | 923 | 1,416 |
| "unwant*" | 637412 - 001 | Fragale, Ashley | 7 | 0.00% | 12 | 0 | 0 | 0.00% | 7 | 12 |
| "vegas" | 637412 - 001 | Fragale, Ashley | 28 | 0.00% | 36 | 0 | 0 | 0.00% | 28 | 36 |
| "vibe" | 637412 - 001 | Fragale, Ashley | 23 | 0.00% | 36 | 0 | 0 | 0.00% | 23 | 36 |
| **Total Documents (adjusted for overlap; NOT a sum of above data)** | | | **102,613** | **15.49%** | **102,613** | **86,646** | **86,394** | **100.00%** | **15,907** | **16,019** |

| Term | Keyword/Category | Custodian | Document Hits | Hit Rate (%) | Document Hits with Family | Unique Document Hits | Unique Family Hits (Document Count) | % of all Unique Family Hits | Shared Hits (2+ Terms) | Shared Hits (2+ Terms) (Full Family) |
|---|---|---|---|---|---|---|---|---|---|---|
| "Adam" | 637412 - 001 | Gross, Chad | 2,213 | 0.33% | 2,683 | 179 | 193 | 1.37% | 2,034 | 2,490 |
| "Aisha" | 637412 - 001 | Gross, Chad | 0 | 0.00% | 0 | 0 | 0 | 0.00% | 0 | 0 |
| "ashley" OR "ashely" OR "ash" OR "fragale" OR | 637412 - 001 | Gross, Chad | 1,035 | 0.16% | 1,523 | 23 | 23 | 0.16% | 1,012 | 1,500 |
| "bitch*" | 637412 - 001 | Gross, Chad | 0 | 0.00% | 0 | 0 | 0 | 0.00% | 0 | 0 |
| "boob*" | 637412 - 001 | Gross, Chad | 1 | 0.00% | 1 | 0 | 0 | 0.00% | 1 | 1 |
| "breast*" | 637412 - 001 | Gross, Chad | 2 | 0.00% | 20 | 0 | 0 | 0.00% | 2 | 20 |
| "claim*" | 637412 - 001 | Gross, Chad | 745 | 0.11% | 1,871 | 1 | 1 | 0.01% | 744 | 1,870 |
| "complain*" | 637412 - 001 | Gross, Chad | 611 | 0.09% | 1,864 | 0 | 0 | 0.00% | 611 | 1,864 |
| "crazy" | 637412 - 001 | Gross, Chad | 55 | 0.01% | 90 | 0 | 0 | 0.00% | 55 | 90 |
| "cunt*" | 637412 - 001 | Gross, Chad | 0 | 0.00% | 0 | 0 | 0 | 0.00% | 0 | 0 |
| "date" | 637412 - 001 | Gross, Chad | 8,253 | 1.25% | 11,585 | 6 | 6 | 0.04% | 8,247 | 11,589 |
| "dating" | 637412 - 001 | Gross, Chad | 38 | 0.01% | 59 | 0 | 0 | 0.00% | 38 | 59 |
| "dick*" | 637412 - 001 | Gross, Chad | 14 | 0.00% | 16 | 0 | 0 | 0.00% | 14 | 16 |
| "doucher*" | 637412 - 001 | Gross, Chad | 0 | 0.00% | 0 | 0 | 0 | 0.00% | 0 | 0 |
| "drank" | 637412 - 001 | Gross, Chad | 0 | 0.00% | 0 | 0 | 0 | 0.00% | 0 | 0 |
| "drunk" | 637412 - 001 | Gross, Chad | 2 | 0.00% | 2 | 0 | 0 | 0.00% | 2 | 2 |
| "fire*" | 637412 - 001 | Gross, Chad | 1,165 | 0.18% | 2,530 | 9 | 9 | 0.06% | 1,156 | 2,526 |
| "fuck*" | 637412 - 001 | Gross, Chad | 2 | 0.00% | 2 | 0 | 0 | 0.00% | 2 | 2 |
| "harass*" | 637412 - 001 | Gross, Chad | 63 | 0.01% | 231 | 0 | 0 | 0.00% | 63 | 231 |
| "Hawkins" | 637412 - 001 | Gross, Chad | 8 | 0.00% | 9 | 0 | 0 | 0.00% | 8 | 9 |
| "hooked" | 637412 - 001 | Gross, Chad | 11 | 0.00% | 12 | 0 | 0 | 0.00% | 11 | 12 |
| "HR risk" | 637412 - 001 | Gross, Chad | 2 | 0.00% | 104 | 0 | 0 | 0.00% | 2 | 104 |
| "illegal*" | 637412 - 001 | Gross, Chad | 472 | 0.07% | 1,606 | 0 | 0 | 0.00% | 472 | 1,606 |
| "inappropriat*" | 637412 - 001 | Gross, Chad | 215 | 0.03% | 751 | 0 | 0 | 0.00% | 215 | 751 |
| "intern" | 637412 - 001 | Gross, Chad | 37 | 0.01% | 138 | 0 | 0 | 0.00% | 37 | 138 |
| "investigat*" | 637412 - 001 | Gross, Chad | 993 | 0.15% | 2,328 | 0 | 0 | 0.00% | 993 | 2,328 |
| "Jake" | 637412 - 001 | Gross, Chad | 3,418 | 0.52% | 4,252 | 4 | 4 | 0.03% | 3,414 | 4,248 |
| "lawsuit" | 637412 - 001 | Gross, Chad | 76 | 0.01% | 122 | 0 | 0 | 0.00% | 76 | 122 |
| "lawsuit" | 637412 - 001 | Gross, Chad | 40 | 0.01% | 97 | 0 | 0 | 0.00% | 40 | 97 |
| "lol" | 637412 - 001 | Gross, Chad | 124 | 0.02% | 147 | 1 | 1 | 0.01% | 123 | 146 |
| "love*" | 637412 - 001 | Gross, Chad | 2,067 | 0.31% | 2,335 | 1 | 1 | 0.01% | 2,066 | 2,334 |
| "MPF" | 637412 - 001 | Gross, Chad | 6 | 0.00% | 6 | 0 | 0 | 0.00% | 6 | 6 |
| "naked" | 637412 - 001 | Gross, Chad | 1 | 0.00% | 1 | 0 | 0 | 0.00% | 1 | 1 |
| "No" | 637412 - 001 | Gross, Chad | 3,286 | 0.50% | 4,016 | 0 | 0 | 0.00% | 3,286 | 4,016 |
| "nude*" | 637412 - 001 | Gross, Chad | 0 | 0.00% | 0 | 0 | 0 | 0.00% | 0 | 0 |
| "OR" | 637412 - 001 | Gross, Chad | 33,427 | 5.04% | 33,430 | 16,816 | 13,872 | 98.26% | 16,611 | 19,558 |
| "onlyfans" | 637412 - 001 | Gross, Chad | 0 | 0.00% | 0 | 0 | 0 | 0.00% | 0 | 0 |
| "photo*" | 637412 - 001 | Gross, Chad | 603 | 0.09% | 1,038 | 0 | 0 | 0.00% | 603 | 1,038 |
| "pic*" | 637412 - 001 | Gross, Chad | 910 | 0.14% | 1,585 | 1 | 1 | 0.01% | 909 | 1,584 |
| "profile*" | 637412 - 001 | Gross, Chad | 1,142 | 0.17% | 2,187 | 0 | 0 | 0.00% | 1,142 | 2,187 |
| "pure*" | 637412 - 001 | Gross, Chad | 0 | 0.00% | 0 | 0 | 0 | 0.00% | 0 | 0 |
| "retaliat*" | 637412 - 001 | Gross, Chad | 45 | 0.01% | 172 | 0 | 0 | 0.00% | 45 | 172 |
| "roman*" | 637412 - 001 | Gross, Chad | 47 | 0.01% | 62 | 2 | 2 | 0.01% | 45 | 60 |
| "sensitiv*" | 637412 - 001 | Gross, Chad | 1,530 | 0.23% | 3,308 | 1 | 1 | 0.01% | 1,529 | 3,307 |
| "settle*" | 637412 - 001 | Gross, Chad | 306 | 0.05% | 551 | 0 | 0 | 0.00% | 306 | 551 |
| "sex*" | 637412 - 001 | Gross, Chad | 1,320 | 0.20% | 3,626 | 1 | 1 | 0.01% | 1,319 | 3,025 |
| "sex*" | 637412 - 001 | Gross, Chad | 84 | 0.01% | 556 | 0 | 0 | 0.00% | 84 | 556 |
| "showing" | 637412 - 001 | Gross, Chad | 679 | 0.10% | 1,228 | 0 | 0 | 0.00% | 679 | 1,228 |
| "suit" | 637412 - 001 | Gross, Chad | 421 | 0.06% | 925 | 0 | 0 | 0.00% | 421 | 925 |
| "suspend*" | 637412 - 001 | Gross, Chad | 304 | 0.05% | 885 | 0 | 0 | 0.00% | 304 | 885 |
| "terminat*" | 637412 - 001 | Gross, Chad | 1,576 | 0.24% | 3,253 | 2 | 2 | 0.01% | 1,576 | 3,253 |
| "tit*" | 637412 - 001 | Gross, Chad | 2,029 | 0.31% | 3,781 | 0 | 0 | 0.00% | 2,027 | 3,778 |
| "unwant*" | 637412 - 001 | Gross, Chad | 35 | 0.01% | 124 | 0 | 0 | 0.00% | 35 | 124 |
| "vegas" | 637412 - 001 | Gross, Chad | 117 | 0.02% | 124 | 0 | 0 | 0.00% | 117 | 124 |
| "vibe" | 637412 - 001 | Gross, Chad | 14 | 0.00% | 14 | 0 | 0 | 0.00% | 14 | 14 |
| **Total Documents (adjusted for overlap; NOT a sum of above data)** | | | **33,897** | **5.12%** | **33,924** | **17,049** | **14,118** | **100.00%** | **16,840** | **19,806** |

| Term | Keyword/Category | Custodian | Document Hits | Hit Rate (%) | Document Hits with Family | Unique Document Hits | Unique Family Hits (Document Count) | % of all Unique Family Hits | Shared Hits (2+ Terms) | Shared Hits (2+ Terms) (Full Family) |
|---|---|---|---|---|---|---|---|---|---|---|
| "Adam" | 637412 - 001 | Hibbeler, John | 247 | 0.04% | 270 | 2 | 2 | 0.08% | 245 | 268 |
| "Aisha" | 637412 - 001 | Hibbeler, John | 0 | 0.00% | 0 | 0 | 0 | 0.00% | 0 | 0 |
| "ashley" OR "ashely" OR "ash" OR "fragale" OR | 637412 - 001 | Hibbeler, John | 813 | 0.12% | 880 | 14 | 14 | 0.57% | 799 | 876 |
| "bitch*" | 637412 - 001 | Hibbeler, John | 1 | 0.00% | 1 | 0 | 0 | 0.00% | 1 | 1 |
| "boob*" | 637412 - 001 | Hibbeler, John | 0 | 0.00% | 0 | 0 | 0 | 0.00% | 0 | 0 |
| "breast*" | 637412 - 001 | Hibbeler, John | 0 | 0.00% | 0 | 0 | 0 | 0.00% | 0 | 0 |
| "claim*" | 637412 - 001 | Hibbeler, John | 136 | 0.02% | 197 | 0 | 0 | 0.00% | 136 | 197 |
| "complain*" | 637412 - 001 | Hibbeler, John | 12 | 0.00% | 21 | 0 | 0 | 0.00% | 12 | 21 |
| "crazy" | 637412 - 001 | Hibbeler, John | 25 | 0.00% | 28 | 0 | 0 | 0.00% | 25 | 28 |
| "cunt*" | 637412 - 001 | Hibbeler, John | 0 | 0.00% | 0 | 0 | 0 | 0.00% | 0 | 0 |
| "date" | 637412 - 001 | Hibbeler, John | 1,268 | 0.19% | 1,724 | 0 | 0 | 0.00% | 1,268 | 1,724 |
| "dating" | 637412 - 001 | Hibbeler, John | 3 | 0.00% | 7 | 0 | 0 | 0.00% | 3 | 7 |
| "dick*" | 637412 - 001 | Hibbeler, John | 1 | 0.00% | 1 | 0 | 0 | 0.00% | 1 | 1 |
| "doucher*" | 637412 - 001 | Hibbeler, John | 0 | 0.00% | 0 | 0 | 0 | 0.00% | 0 | 0 |
| "drank" | 637412 - 001 | Hibbeler, John | 0 | 0.00% | 0 | 0 | 0 | 0.00% | 0 | 0 |
| "drunk" | 637412 - 001 | Hibbeler, John | 1 | 0.00% | 1 | 0 | 0 | 0.00% | 1 | 1 |
| "fire*" | 637412 - 001 | Hibbeler, John | 89 | 0.01% | 137 | 0 | 0 | 0.00% | 89 | 137 |
| "fuck*" | 637412 - 001 | Hibbeler, John | 1 | 0.00% | 1 | 0 | 0 | 0.00% | 1 | 1 |
| "harass*" | 637412 - 001 | Hibbeler, John | 1 | 0.00% | 2 | 0 | 0 | 0.00% | 1 | 2 |
| "Hawkins" | 637412 - 001 | Hibbeler, John | 1 | 0.00% | 1 | 0 | 0 | 0.00% | 1 | 1 |
| "hooked" | 637412 - 001 | Hibbeler, John | 0 | 0.00% | 0 | 0 | 0 | 0.00% | 0 | 0 |
| "HR risk" | 637412 - 001 | Hibbeler, John | 0 | 0.00% | 0 | 0 | 0 | 0.00% | 0 | 0 |
| "illegal*" | 637412 - 001 | Hibbeler, John | 26 | 0.00% | 52 | 0 | 0 | 0.00% | 26 | 52 |
| "inappropriat*" | 637412 - 001 | Hibbeler, John | 0 | 0.00% | 0 | 0 | 0 | 0.00% | 0 | 0 |
| "intern" | 637412 - 001 | Hibbeler, John | 0 | 0.00% | 0 | 0 | 0 | 0.00% | 0 | 0 |
| "investigat*" | 637412 - 001 | Hibbeler, John | 48 | 0.01% | 90 | 0 | 0 | 0.00% | 48 | 90 |
| "Jake" | 637412 - 001 | Hibbeler, John | 2,616 | 0.39% | 2,798 | 0 | 0 | 0.00% | 2,616 | 2,798 |
| "kill" | 637412 - 001 | Hibbeler, John | 31 | 0.00% | 36 | 0 | 0 | 0.00% | 31 | 36 |
| "lawsuit" | 637412 - 001 | Hibbeler, John | 0 | 0.00% | 0 | 0 | 0 | 0.00% | 0 | 0 |
| "lol" | 637412 - 001 | Hibbeler, John | 56 | 0.01% | 62 | 0 | 0 | 0.00% | 56 | 62 |
| "MPF" | 637412 - 001 | Hibbeler, John | 1,260 | 0.19% | 1,414 | 0 | 0 | 0.00% | 1,260 | 1,414 |
| "naked" | 637412 - 001 | Hibbeler, John | 0 | 0.00% | 0 | 0 | 0 | 0.00% | 0 | 0 |
| "No" | 637412 - 001 | Hibbeler, John | 2,575 | 0.39% | 2,757 | 0 | 0 | 0.00% | 2,575 | 2,757 |
| "nude*" | 637412 - 001 | Hibbeler, John | 0 | 0.00% | 0 | 0 | 0 | 0.00% | 0 | 0 |
| "OR" | 637412 - 001 | Hibbeler, John | 6,966 | 1.05% | 6,970 | 2,846 | 2,439 | 99.31% | 4,120 | 4,531 |
| "onlyfans" | 637412 - 001 | Hibbeler, John | 0 | 0.00% | 0 | 0 | 0 | 0.00% | 0 | 0 |
| "photo*" | 637412 - 001 | Hibbeler, John | 47 | 0.01% | 64 | 0 | 0 | 0.00% | 47 | 64 |
| "pic*" | 637412 - 001 | Hibbeler, John | 173 | 0.03% | 197 | 0 | 0 | 0.00% | 173 | 197 |
| "profile*" | 637412 - 001 | Hibbeler, John | 79 | 0.01% | 131 | 0 | 0 | 0.00% | 79 | 131 |
| "pure*" | 637412 - 001 | Hibbeler, John | 0 | 0.00% | 0 | 0 | 0 | 0.00% | 0 | 0 |
| "retaliat*" | 637412 - 001 | Hibbeler, John | 0 | 0.00% | 0 | 0 | 0 | 0.00% | 0 | 0 |
| "roman*" | 637412 - 001 | Hibbeler, John | 66 | 0.01% | 70 | 0 | 0 | 0.00% | 66 | 70 |
| "sensitiv*" | 637412 - 001 | Hibbeler, John | 137 | 0.02% | 203 | 0 | 0 | 0.00% | 137 | 203 |
| "settle*" | 637412 - 001 | Hibbeler, John | 80 | 0.01% | 88 | 0 | 0 | 0.00% | 80 | 88 |
| "sex*" | 637412 - 001 | Hibbeler, John | 92 | 0.01% | 158 | 0 | 0 | 0.00% | 92 | 158 |
| "sex*" | 637412 - 001 | Hibbeler, John | 18 | 0.00% | 22 | 0 | 0 | 0.00% | 18 | 22 |
| "showing" | 637412 - 001 | Hibbeler, John | 69 | 0.01% | 79 | 0 | 0 | 0.00% | 69 | 79 |
| "suit" | 637412 - 001 | Hibbeler, John | 41 | 0.01% | 79 | 0 | 0 | 0.00% | 41 | 79 |
| "suspend*" | 637412 - 001 | Hibbeler, John | 35 | 0.01% | 71 | 0 | 0 | 0.00% | 35 | 71 |
| "terminat*" | 637412 - 001 | Hibbeler, John | 76 | 0.01% | 156 | 0 | 0 | 0.00% | 76 | 156 |
| "tit*" | 637412 - 001 | Hibbeler, John | 366 | 0.06% | 514 | 1 | 1 | 0.04% | 365 | 513 |
| "unwant*" | 637412 - 001 | Hibbeler, John | 1 | 0.00% | 1 | 0 | 0 | 0.00% | 1 | 1 |
| "vegas" | 637412 - 001 | Hibbeler, John | 98 | 0.01% | 104 | 0 | 0 | 0.00% | 98 | 104 |
| "vibe" | 637412 - 001 | Hibbeler, John | 0 | 0.00% | 0 | 0 | 0 | 0.00% | 0 | 0 |
| **Total Documents (adjusted for overlap; NOT a sum of above data)** | | | **7,287** | **1.10%** | **7,302** | **2,863** | **2,456** | **100.00%** | **4,424** | **4,846** |

| Term | Keyword/Category | Custodian | Document Hits | Hit Rate (%) | Document Hits with Family | Unique Document Hits | Unique Family Hits (Document Count) | % of all Unique Family Hits | Shared Hits (2+ Terms) | Shared Hits (2+ Terms) (Full Family) |
|---|---|---|---|---|---|---|---|---|---|---|
| "Adam" | 637412 - 001 | Lawrence, Allison | 50 | 0.01% | 60 | 0 | 0 | 0.00% | 50 | 60 |
| "Aisha" | 637412 - 001 | Lawrence, Allison | 10 | 0.00% | 11 | 0 | 0 | 0.00% | 10 | 11 |
| "ashley" OR "ashely" OR "ash" OR "fragale" OR | 637412 - 001 | Lawrence, Allison | 668 | 0.10% | 702 | 18 | 18 | 1.20% | 650 | 684 |
| "bitch*" | 637412 - 001 | Lawrence, Allison | 0 | 0.00% | 0 | 0 | 0 | 0.00% | 0 | 0 |
| "boob*" | 637412 - 001 | Lawrence, Allison | 12 | 0.00% | 24 | 0 | 0 | 0.00% | 12 | 24 |
| "breast*" | 637412 - 001 | Lawrence, Allison | 1 | 0.00% | 1 | 0 | 0 | 0.00% | 1 | 1 |
| "claim*" | 637412 - 001 | Lawrence, Allison | 153 | 0.02% | 239 | 0 | 0 | 0.00% | 153 | 239 |
| "complain*" | 637412 - 001 | Lawrence, Allison | 62 | 0.01% | 129 | 0 | 0 | 0.00% | 62 | 129 |
| "crazy" | 637412 - 001 | Lawrence, Allison | 18 | 0.00% | 19 | 0 | 0 | 0.00% | 18 | 19 |
| "cunt*" | 637412 - 001 | Lawrence, Allison | 0 | 0.00% | 0 | 0 | 0 | 0.00% | 0 | 0 |
| "date" | 637412 - 001 | Lawrence, Allison | 699 | 0.11% | 894 | 0 | 0 | 0.00% | 699 | 894 |
| "dating" | 637412 - 001 | Lawrence, Allison | 0 | 0.00% | 0 | 0 | 0 | 0.00% | 0 | 0 |
| "dick*" | 637412 - 001 | Lawrence, Allison | 0 | 0.00% | 0 | 0 | 0 | 0.00% | 0 | 0 |
| "douche*" | 637412 - 001 | Lawrence, Allison | 0 | 0.00% | 0 | 0 | 0 | 0.00% | 0 | 0 |



**KLDiscovery**

Nebula Cull Extended Search Report
Executed at 9/26/2025 7:32:55 PM

| Term | KeywordCategory | Custodian | Document Hits | Hit Rate (%) | Document Hits with Family | Unique Document Hits | Unique Family Hits (Document Count) | %of all Unique Family Hits | Shared Hits (2+ Terms) | Shared Hits (2+ Terms) (Full Family) |
|---|---|---|---|---|---|---|---|---|---|---|
| "puss*" | 637412 - 001 | Nix, Jacob | 8 | 0.00% | 8 | 0 | 0 | 0.00% | 8 | 8 |
| "retaliat*" | 637412 - 001 | Nix, Jacob | 359 | 0.05% | 665 | 0 | 0 | 0.00% | 359 | 665 |
| "roman*" | 637412 - 001 | Nix, Jacob | 1,050 | 0.16% | 1,142 | 0 | 0 | 0.00% | 1,050 | 1,142 |
| "sensitiv*" | 637412 - 001 | Nix, Jacob | 4,566 | 0.69% | 6,907 | 0 | 0 | 0.00% | 4,566 | 6,907 |
| "settle*" | 637412 - 001 | Nix, Jacob | 2,517 | 0.38% | 4,016 | 0 | 0 | 0.00% | 2,517 | 4,016 |
| "sever*" | 637412 - 001 | Nix, Jacob | 6,202 | 0.94% | 10,944 | 0 | 0 | 0.00% | 6,202 | 10,944 |
| "sex*" | 637412 - 001 | Nix, Jacob | 740 | 0.11% | 1,393 | 0 | 0 | 0.00% | 740 | 1,393 |
| "showing" | 637412 - 001 | Nix, Jacob | 2,692 | 0.41% | 3,675 | 0 | 0 | 0.00% | 2,692 | 3,675 |
| "suit" | 637412 - 001 | Nix, Jacob | 1,283 | 0.19% | 2,451 | 0 | 0 | 0.00% | 1,283 | 2,451 |
| "suspend*" | 637412 - 001 | Nix, Jacob | 1,624 | 0.25% | 2,854 | 0 | 0 | 0.00% | 1,624 | 2,854 |
| "terminat*" | 637412 - 001 | Nix, Jacob | 4,739 | 0.72% | 9,469 | 0 | 0 | 0.00% | 4,739 | 9,469 |
| "tit*" | 637412 - 001 | Nix, Jacob | 7,528 | 1.14% | 12,862 | 0 | 0 | 0.00% | 7,528 | 12,862 |
| "unwant*" | 637412 - 001 | Nix, Jacob | 191 | 0.03% | 367 | 0 | 0 | 0.00% | 191 | 367 |
| "vegas" | 637412 - 001 | Nix, Jacob | 2,767 | 0.42% | 2,988 | 0 | 0 | 0.00% | 2,767 | 2,988 |
| "xite" | 637412 - 001 | Nix, Jacob | 542 | 0.08% | 804 | 0 | 0 | 0.00% | 542 | 804 |
| **Total Documents (adjusted for overlap; NOT a sum of above data)** | | | **189,087** | **28.54%** | **189,087** | **1,835** | **855** | **100.00%** | **187,282** | **188,232** |

| Term | KeywordCategory | Custodian | Document Hits | Hit Rate (%) | Document Hits with Family | Unique Document Hits | Unique Family Hits (Document Count) | %of all Unique Family Hits | Shared Hits (2+ Terms) | Shared Hits (2+ Terms) (Full Family) |
|---|---|---|---|---|---|---|---|---|---|---|
| "Adam" | 637412 - 001 | Shah, Disha | 15 | 0.00% | 16 | 0 | 0 | 0.00% | 15 | 16 |
| "Aisha" | 637412 - 001 | Shah, Disha | 0 | 0.00% | 0 | 0 | 0 | 0.00% | 0 | 0 |
| "ashley" OR "ashely" OR "ash" OR "fragale" OR | 637412 - 001 | Shah, Disha | 10 | 0.00% | 10 | 0 | 0 | 0.00% | 10 | 10 |
| "bitch*" | 637412 - 001 | Shah, Disha | 0 | 0.00% | 0 | 0 | 0 | 0.00% | 0 | 0 |
| "boob*" | 637412 - 001 | Shah, Disha | 0 | 0.00% | 0 | 0 | 0 | 0.00% | 0 | 0 |
| "breast*" | 637412 - 001 | Shah, Disha | 1 | 0.00% | 1 | 0 | 0 | 0.00% | 1 | 1 |
| "claim*" | 637412 - 001 | Shah, Disha | 9 | 0.00% | 9 | 0 | 0 | 0.00% | 9 | 9 |
| "complain*" | 637412 - 001 | Shah, Disha | 9 | 0.00% | 9 | 0 | 0 | 0.00% | 9 | 9 |
| "crazy" | 637412 - 001 | Shah, Disha | 0 | 0.00% | 0 | 0 | 0 | 0.00% | 0 | 0 |
| "cunt*" | 637412 - 001 | Shah, Disha | 0 | 0.00% | 0 | 0 | 0 | 0.00% | 0 | 0 |
| "date" | 637412 - 001 | Shah, Disha | 62 | 0.01% | 65 | 0 | 0 | 0.00% | 62 | 65 |
| "dating" | 637412 - 001 | Shah, Disha | 0 | 0.00% | 0 | 0 | 0 | 0.00% | 0 | 0 |
| "dick*" | 637412 - 001 | Shah, Disha | 6 | 0.00% | 6 | 0 | 0 | 0.00% | 6 | 6 |
| "doucher*" | 637412 - 001 | Shah, Disha | 0 | 0.00% | 0 | 0 | 0 | 0.00% | 0 | 0 |
| "drank" | 637412 - 001 | Shah, Disha | 0 | 0.00% | 0 | 0 | 0 | 0.00% | 0 | 0 |
| "drunk" | 637412 - 001 | Shah, Disha | 0 | 0.00% | 0 | 0 | 0 | 0.00% | 0 | 0 |
| "fire*" | 637412 - 001 | Shah, Disha | 8 | 0.00% | 9 | 1 | 1 | 0.04% | 7 | 8 |
| "fuck*" | 637412 - 001 | Shah, Disha | 0 | 0.00% | 0 | 0 | 0 | 0.00% | 0 | 0 |
| "harass*" | 637412 - 001 | Shah, Disha | 4 | 0.00% | 4 | 0 | 0 | 0.00% | 4 | 4 |
| "Hawkins" | 637412 - 001 | Shah, Disha | 0 | 0.00% | 0 | 0 | 0 | 0.00% | 0 | 0 |
| "hooked" | 637412 - 001 | Shah, Disha | 0 | 0.00% | 0 | 0 | 0 | 0.00% | 0 | 0 |
| "HR risk" | 637412 - 001 | Shah, Disha | 0 | 0.00% | 0 | 0 | 0 | 0.00% | 0 | 0 |
| "illegal*" | 637412 - 001 | Shah, Disha | 0 | 0.00% | 0 | 0 | 0 | 0.00% | 0 | 0 |
| "inappropriat*" | 637412 - 001 | Shah, Disha | 0 | 0.00% | 0 | 0 | 0 | 0.00% | 0 | 0 |
| "intent" | 637412 - 001 | Shah, Disha | 0 | 0.00% | 0 | 0 | 0 | 0.00% | 0 | 0 |
| "investigat*" | 637412 - 001 | Shah, Disha | 7 | 0.00% | 7 | 0 | 0 | 0.00% | 7 | 7 |
| "Jake" | 637412 - 001 | Shah, Disha | 81 | 0.01% | 81 | 0 | 0 | 0.00% | 81 | 81 |
| "kill*" | 637412 - 001 | Shah, Disha | 3 | 0.00% | 3 | 0 | 0 | 0.00% | 3 | 3 |
| "lawsuit" | 637412 - 001 | Shah, Disha | 0 | 0.00% | 0 | 0 | 0 | 0.00% | 0 | 0 |
| "lol" | 637412 - 001 | Shah, Disha | 0 | 0.00% | 0 | 0 | 0 | 0.00% | 0 | 0 |
| "love*" | 637412 - 001 | Shah, Disha | 31 | 0.00% | 31 | 1 | 1 | 0.04% | 30 | 30 |
| "MPP" | 637412 - 001 | Shah, Disha | 0 | 0.00% | 0 | 0 | 0 | 0.00% | 0 | 0 |
| "naked" | 637412 - 001 | Shah, Disha | 0 | 0.00% | 0 | 0 | 0 | 0.00% | 0 | 0 |
| "Nix" | 637412 - 001 | Shah, Disha | 64 | 0.01% | 64 | 0 | 0 | 0.00% | 64 | 64 |
| "nude*" | 637412 - 001 | Shah, Disha | 0 | 0.00% | 0 | 0 | 0 | 0.00% | 0 | 0 |
| "OF" | 637412 - 001 | Shah, Disha | 2,865 | 0.43% | 2,871 | 2,489 | 2,491 | 99.76% | 376 | 380 |
| "onlyfans" | 637412 - 001 | Shah, Disha | 0 | 0.00% | 0 | 0 | 0 | 0.00% | 0 | 0 |
| "photo*" | 637412 - 001 | Shah, Disha | 4 | 0.00% | 4 | 0 | 0 | 0.00% | 4 | 4 |
| "pic*" | 637412 - 001 | Shah, Disha | 79 | 0.01% | 80 | 0 | 0 | 0.00% | 79 | 80 |
| "profile*" | 637412 - 001 | Shah, Disha | 78 | 0.01% | 78 | 0 | 0 | 0.00% | 78 | 78 |
| "puss*" | 637412 - 001 | Shah, Disha | 0 | 0.00% | 0 | 0 | 0 | 0.00% | 0 | 0 |
| "retaliat*" | 637412 - 001 | Shah, Disha | 2 | 0.00% | 2 | 0 | 0 | 0.00% | 2 | 2 |
| "roman*" | 637412 - 001 | Shah, Disha | 24 | 0.00% | 24 | 0 | 0 | 0.00% | 24 | 24 |
| "settle*" | 637412 - 001 | Shah, Disha | 2 | 0.00% | 2 | 0 | 0 | 0.00% | 2 | 2 |
| "sever*" | 637412 - 001 | Shah, Disha | 10 | 0.00% | 10 | 0 | 0 | 0.00% | 10 | 10 |
| "sex*" | 637412 - 001 | Shah, Disha | 9 | 0.00% | 9 | 0 | 0 | 0.00% | 9 | 9 |
| "showing" | 637412 - 001 | Shah, Disha | 9 | 0.00% | 11 | 0 | 0 | 0.00% | 9 | 11 |
| "suit" | 637412 - 001 | Shah, Disha | 0 | 0.00% | 0 | 0 | 0 | 0.00% | 0 | 0 |
| "suspend*" | 637412 - 001 | Shah, Disha | 0 | 0.00% | 0 | 0 | 0 | 0.00% | 0 | 0 |
| "terminat*" | 637412 - 001 | Shah, Disha | 6 | 0.00% | 8 | 0 | 0 | 0.00% | 6 | 8 |
| "tit*" | 637412 - 001 | Shah, Disha | 50 | 0.01% | 56 | 3 | 4 | 0.16% | 52 | 53 |
| "unwant*" | 637412 - 001 | Shah, Disha | 1 | 0.00% | 1 | 0 | 0 | 0.00% | 1 | 1 |
| "vegas" | 637412 - 001 | Shah, Disha | 3 | 0.00% | 3 | 0 | 0 | 0.00% | 3 | 3 |
| "xite" | 637412 - 001 | Shah, Disha | 0 | 0.00% | 0 | 0 | 0 | 0.00% | 0 | 0 |
| **Total Documents (adjusted for overlap; NOT a sum of above data)** | | | **2,869** | **0.44%** | **2,896** | **2,494** | **2,497** | **100.00%** | **399** | **399** |

| Term | KeywordCategory | Custodian | Document Hits | Hit Rate (%) | Document Hits with Family | Unique Document Hits | Unique Family Hits (Document Count) | %of all Unique Family Hits | Shared Hits (2+ Terms) | Shared Hits (2+ Terms) (Full Family) |
|---|---|---|---|---|---|---|---|---|---|---|
| "Adam" | 637412 - 001 | Wiese, Matt | 14 | 0.00% | 20 | 7 | 7 | 2.34% | 7 | 13 |
| "Aisha" | 637412 - 001 | Wiese, Matt | 0 | 0.00% | 0 | 0 | 0 | 0.00% | 0 | 0 |
| "ashley" OR "ashely" OR "ash" OR "fragale" OR | 637412 - 001 | Wiese, Matt | 35 | 0.01% | 41 | 30 | 30 | 10.03% | 5 | 11 |
| "bitch*" | 637412 - 001 | Wiese, Matt | 1 | 0.00% | 1 | 0 | 0 | 0.00% | 1 | 1 |
| "boob*" | 637412 - 001 | Wiese, Matt | 0 | 0.00% | 0 | 0 | 0 | 0.00% | 0 | 0 |
| "breast*" | 637412 - 001 | Wiese, Matt | 2 | 0.00% | 2 | 0 | 0 | 0.00% | 2 | 2 |
| "claim*" | 637412 - 001 | Wiese, Matt | 0 | 0.00% | 0 | 0 | 0 | 0.00% | 0 | 0 |
| "complain*" | 637412 - 001 | Wiese, Matt | 0 | 0.00% | 0 | 0 | 0 | 0.00% | 0 | 0 |
| "crazy" | 637412 - 001 | Wiese, Matt | 0 | 0.00% | 0 | 0 | 0 | 0.00% | 0 | 0 |
| "cunt*" | 637412 - 001 | Wiese, Matt | 21 | 0.00% | 41 | 3 | 3 | 1.00% | 18 | 38 |
| "date" | 637412 - 001 | Wiese, Matt | 0 | 0.00% | 0 | 0 | 0 | 0.00% | 0 | 0 |
| "dating" | 637412 - 001 | Wiese, Matt | 0 | 0.00% | 0 | 0 | 0 | 0.00% | 0 | 0 |
| "dick*" | 637412 - 001 | Wiese, Matt | 0 | 0.00% | 0 | 0 | 0 | 0.00% | 0 | 0 |
| "doucher*" | 637412 - 001 | Wiese, Matt | 0 | 0.00% | 0 | 0 | 0 | 0.00% | 0 | 0 |
| "drank" | 637412 - 001 | Wiese, Matt | 0 | 0.00% | 0 | 0 | 0 | 0.00% | 0 | 0 |
| "drunk" | 637412 - 001 | Wiese, Matt | 1 | 0.00% | 1 | 0 | 0 | 0.00% | 1 | 1 |
| "fire*" | 637412 - 001 | Wiese, Matt | 9 | 0.00% | 12 | 1 | 1 | 0.33% | 8 | 11 |
| "fuck*" | 637412 - 001 | Wiese, Matt | 0 | 0.00% | 0 | 0 | 0 | 0.00% | 0 | 0 |
| "harass*" | 637412 - 001 | Wiese, Matt | 0 | 0.00% | 0 | 0 | 0 | 0.00% | 0 | 0 |
| "Hawkins" | 637412 - 001 | Wiese, Matt | 0 | 0.00% | 0 | 0 | 0 | 0.00% | 0 | 0 |
| "hooked" | 637412 - 001 | Wiese, Matt | 0 | 0.00% | 0 | 0 | 0 | 0.00% | 0 | 0 |
| "HR risk" | 637412 - 001 | Wiese, Matt | 0 | 0.00% | 0 | 0 | 0 | 0.00% | 0 | 0 |
| "illegal*" | 637412 - 001 | Wiese, Matt | 1 | 0.00% | 1 | 0 | 0 | 0.00% | 1 | 1 |
| "inappropriat*" | 637412 - 001 | Wiese, Matt | 0 | 0.00% | 0 | 0 | 0 | 0.00% | 0 | 0 |
| "intent" | 637412 - 001 | Wiese, Matt | 3 | 0.00% | 9 | 2 | 2 | 0.67% | 1 | 7 |
| "investigat*" | 637412 - 001 | Wiese, Matt | 3 | 0.00% | 4 | 1 | 1 | 0.33% | 2 | 3 |
| "Jake" | 637412 - 001 | Wiese, Matt | 630 | 0.10% | 692 | 4 | 4 | 1.34% | 626 | 688 |
| "kill*" | 637412 - 001 | Wiese, Matt | 0 | 0.00% | 0 | 0 | 0 | 0.00% | 0 | 0 |
| "lawsuit" | 637412 - 001 | Wiese, Matt | 1 | 0.00% | 1 | 0 | 0 | 0.00% | 1 | 1 |
| "lol" | 637412 - 001 | Wiese, Matt | 6 | 0.00% | 7 | 3 | 3 | 1.00% | 3 | 4 |
| "love*" | 637412 - 001 | Wiese, Matt | 0 | 0.00% | 0 | 0 | 0 | 0.00% | 0 | 0 |
| "MPP" | 637412 - 001 | Wiese, Matt | 0 | 0.00% | 0 | 0 | 0 | 0.00% | 0 | 0 |
| "naked" | 637412 - 001 | Wiese, Matt | 0 | 0.00% | 0 | 0 | 0 | 0.00% | 0 | 0 |
| "Nix" | 637412 - 001 | Wiese, Matt | 624 | 0.09% | 696 | 0 | 0 | 0.00% | 624 | 696 |
| "nude*" | 637412 - 001 | Wiese, Matt | 1 | 0.00% | 1 | 0 | 0 | 0.00% | 1 | 1 |
| "OF" | 637412 - 001 | Wiese, Matt | 238 | 0.04% | 361 | 157 | 226 | 75.59% | 81 | 155 |
| "onlyfans" | 637412 - 001 | Wiese, Matt | 0 | 0.00% | 0 | 0 | 0 | 0.00% | 0 | 0 |
| "photo*" | 637412 - 001 | Wiese, Matt | 2 | 0.00% | 2 | 0 | 0 | 0.00% | 2 | 2 |
| "pic*" | 637412 - 001 | Wiese, Matt | 10 | 0.00% | 13 | 3 | 3 | 1.00% | 7 | 10 |
| "profile*" | 637412 - 001 | Wiese, Matt | 5 | 0.00% | 8 | 1 | 1 | 0.33% | 4 | 7 |
| "puss*" | 637412 - 001 | Wiese, Matt | 0 | 0.00% | 0 | 0 | 0 | 0.00% | 0 | 0 |
| "retaliat*" | 637412 - 001 | Wiese, Matt | 0 | 0.00% | 0 | 0 | 0 | 0.00% | 0 | 0 |
| "roman*" | 637412 - 001 | Wiese, Matt | 10 | 0.00% | 20 | 0 | 0 | 0.00% | 10 | 20 |
| "settle*" | 637412 - 001 | Wiese, Matt | 1 | 0.00% | 1 | 0 | 0 | 0.00% | 1 | 1 |
| "sever*" | 637412 - 001 | Wiese, Matt | 41 | 0.01% | 92 | 1 | 2 | 0.67% | 40 | 90 |
| "sex*" | 637412 - 001 | Wiese, Matt | 0 | 0.00% | 0 | 0 | 0 | 0.00% | 0 | 0 |
| "showing" | 637412 - 001 | Wiese, Matt | 4 | 0.00% | 5 | 2 | 2 | 0.67% | 2 | 3 |
| "suit" | 637412 - 001 | Wiese, Matt | 0 | 0.00% | 0 | 0 | 0 | 0.00% | 0 | 0 |
| "suspend*" | 637412 - 001 | Wiese, Matt | 4 | 0.00% | 8 | 0 | 0 | 0.00% | 4 | 8 |
| "terminat*" | 637412 - 001 | Wiese, Matt | 4 | 0.00% | 18 | 9 | 13 | 4.35% | 3 | 5 |
| "tit*" | 637412 - 001 | Wiese, Matt | 12 | 0.00% | 16 | 0 | 0 | 0.00% | 12 | 16 |
| "unwant*" | 637412 - 001 | Wiese, Matt | 0 | 0.00% | 0 | 0 | 0 | 0.00% | 0 | 0 |
| "vegas" | 637412 - 001 | Wiese, Matt | 2 | 0.00% | 2 | 0 | 0 | 0.00% | 2 | 2 |
| "xite" | 637412 - 001 | Wiese, Matt | 0 | 0.00% | 0 | 0 | 0 | 0.00% | 0 | 0 |
| **Total Documents (adjusted for overlap; NOT a sum of above data)** | | | **916** | **0.14%** | **1,119** | **225** | **299** | **100.00%** | **691** | **820** |



**Nebula Cull Extended Search Report**

Executed at:9/26/2025 7:32:55 PM

| Keyword Name | Keyword Color | Scope | Attribute |
|---|---|---|---|
| 637412 - 001 | | 637412 - Search Set 001 | "COLLECTIONS","Custodians" |



**Nebula Cull Extended Search Report**

Executed at 9/26/2025 6:32:25 PM

| Term(Parameters & Results Summary tab) | Definition |
|---|---|
| Search Population (pre-dedupe) | The number of documents these Keyword terms were run against, after Search Conditions were applied, but prior to deduplication. |
| Deduplication | The setting used to prevent exact duplicate documents from being promoted to the Target Matter. |
| Target Matter | The 'Review' module project that documents will be promoted-to. |
| Promotion Queued (Totals) | The sum-total of all Document Hits (post-dedupe, usually with Family) that are ready for new promotion to the Target Matter, and their corresponding Native File Size tally |
| Custodian | This field represents the primary custodian (custodian whose copy of the document survived deduplication), but documents searched may be defined by using All Custodian. |
| Document Hits (pre-dedupe) | The number of distinct documents that hit on terms prior to deduplication being applied. Presented both without and with any additional non-hit family members included. |
| Document Hits (post-dedupe) | The number of distinct documents that hit on terms after the deduplication settings have been applied. Presented both without and with any additional non-hit family members included. |
| Non-email Hits (post-dedupe) | The number of distinct Non-email documents (eg 'loose' EDOCs) that hit on terms after the deduplication settings have been applied. Presented both without and with any additional non-hit family members included. |
| Email Hits (post-dedupe) | The number of distinct Email documents (eg EML, MSG) that hit on terms after the deduplication settings have been applied. Presented both without and with any additional non-hit family members included. |
| Previously Promoted | The number of Document Hits (usually with Family) that have already been promoted to the Target Matter and will be excluded from any additional promotion. |
| Promotion Queued | The number of Document Hits (post-dedupe, usually with Family) that are ready for new promotion to the Target Matter |
| **(Hit Report Detail tab - all #'s post-dedupe)** | |
| Keyword Category | The virtual groupings that Nebula uses to keep different sets of Keywords (Terms) organized. |
| Document Hits | The number of distinct documents that hit on this term. Presented both without and with any additional non-hit family members included. |
| Hit Rate (%) | The frequency of which a term hits on distinct documents within the Search Population. |
| Unique Document Hits | The number of distinct documents that hit only on this term and did not hit on any other term included in the report. |
| Unique Family Hits (Document Count) | The number of all documents belonging to families where only this term hit on any document within the family. If this term was removed, the Total Documents count would decrease by exactly this number of documents. |
| % of all Unique Family Hits | The share of the overall Unique Family Hit population that this term contributes. If this term was removed, the Total Documents count would decrease by exactly this percentage of documents. |
| Shared Hits (2+ Terms) | The number of distinct documents that hit on this term in addition to another term included in the report. Presented both without and with any additional non-hit family members included. |
| Total Documents | The total number of distinct documents that hit when all terms are combined. Because multiple terms can hit on the same document, these totals are adjusted for overlap and are NOT SUM TOTALS of the data. |



**Nebula Cull Extended Search Report**

Executed at 9/26/2025 6:32:25 PM

| Target Matter: | None |
| Deduplication: | Global |

| Promotion Queued (Totals) | |
| --- | --- |
| Documents | Native Size (GB) |
| 246,961 | 27.2889 |

| Custodian | Search Population (pre-dedupe) | Document Hits (pre-dedupe) | Document Hits with Family (pre-dedupe) | Document Hits (post-dedupe) | Document Hits with Family (post-dedupe) | Non-email Hits (post-dedupe) | Non-email Hits with Family (post-dedupe) | Email Hits (post-dedupe) | Email Hits with Family (post-dedupe) | Previously Promoted | Promotion Queued |
| --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- |
| Bal, Tony | 78,216 | 16,857 | 18,563 | 13,670 | 14,996 | 0 | 0 | 13,670 | 14,996 | 0 | 14,996 |
| Cowdrey, Mike | 11,706 | 1,678 | 1,765 | 1,668 | 1,751 | 0 | 0 | 1,668 | 1,751 | 0 | 1,751 |
| Drewyor, Matthew | 224,037 | 188,559 | 172,370 | 21,474 | 21,971 | 0 | 0 | 21,474 | 21,971 | 0 | 21,971 |
| Fragale, Ashley | 15,409 | 2,735 | 3,031 | 2,083 | 2,317 | 0 | 0 | 2,083 | 2,317 | 0 | 2,317 |
| Gross, Chad | 252,704 | 173,389 | 186,436 | 157,048 | 163,167 | 0 | 0 | 157,048 | 163,167 | 0 | 163,167 |
| Hibbeler, John | 9,930 | 1,112 | 1,708 | 1,112 | 1,708 | 0 | 0 | 1,112 | 1,708 | 0 | 1,708 |
| Laurence, Allison | 10,449 | 2,219 | 3,854 | 2,148 | 3,713 | 0 | 0 | 2,148 | 3,713 | 0 | 3,713 |
| McCartney, Ryan | 147,529 | 17,243 | 25,172 | 11,581 | 17,262 | 0 | 0 | 11,581 | 17,262 | 0 | 17,262 |
| Nix, Jacob | 98,606 | 29,904 | 31,148 | 5,113 | 5,373 | 0 | 0 | 5,113 | 5,373 | 0 | 5,373 |
| Private | 25,814 | 5,311 | 8,041 | 5,310 | 8,040 | 0 | 0 | 5,310 | 8,040 | 0 | 8,040 |
| Public | 7,846 | 3,033 | 3,454 | 3,033 | 3,454 | 0 | 0 | 3,033 | 3,454 | 0 | 3,454 |
| Shah, Disha | 1,424 | 208 | 225 | 208 | 225 | 0 | 0 | 208 | 225 | 0 | 225 |
| Wiese, Matt | 30,641 | 5,345 | 6,091 | 4,435 | 4,994 | 0 | 0 | 4,435 | 4,994 | 0 | 4,994 |
| **Total Documents** | **915,051** | **427,393** | **453,908** | **228,863** | **246,961** | **0** | **0** | **228,863** | **246,961** | **0** | **246,961** |



**Nebula Cull Extended Search Report**
Executed at 9/06/2025 6:32:25 PM

| Target Matter: | None |
|---|---|
| Deduplication: | Global |

| Term | Keyword/Category | Custodian | Document Hits | Hit Rate (%) | Document Hits with Family | Unique Document Hits | Unique Family Hits (Document Count) | % of all Unique Family Hits | Shared Hits (2+ Terms) | Shared Hits (2+ Terms) (Full Family) |
|---|---|---|---|---|---|---|---|---|---|---|
| "Adam" | 637163 - 001 | ALL | 14,173 | 1.55% | 158,310 | 222 | 227 | 0.31% | 13,951 | 158,083 |
| "Aisha" | 637163 - 001 | ALL | 0 | 0.00% | 89,748 | 0 | 0 | 0.00% | 0 | 89,748 |
| "ashley" OR "asherly" OR "ash" OR "fragale" OR | 637163 - 001 | ALL | 18,851 | 2.06% | 159,367 | 628 | 682 | 0.94% | 18,223 | 158,715 |
| "bitch*" | 637163 - 001 | ALL | 659 | 0.07% | 156,340 | 84 | 86 | 0.12% | 575 | 156,254 |
| "boob*" | 637163 - 001 | ALL | 29 | 0.00% | 155,384 | 2 | 2 | 0.00% | 27 | 155,382 |
| "breast*" | 637163 - 001 | ALL | 23 | 0.00% | 149,305 | 1 | 1 | 0.00% | 22 | 149,304 |
| "claim*" | 637163 - 001 | ALL | 2,182 | 0.24% | 163,341 | 129 | 139 | 0.19% | 2,053 | 163,202 |
| "complaint*" | 637163 - 001 | ALL | 1,904 | 0.21% | 163,433 | 185 | 203 | 0.28% | 1,719 | 163,230 |
| "crazy" | 637163 - 001 | ALL | 3,448 | 0.38% | 157,868 | 401 | 472 | 0.65% | 3,047 | 157,196 |
| "cunt*" | 637163 - 001 | ALL | 64 | 0.01% | 155,403 | 11 | 11 | 0.02% | 53 | 155,392 |
| "date" | 637163 - 001 | ALL | 42,062 | 4.60% | 170,813 | 2,783 | 4,575 | 6.33% | 39,279 | 166,238 |
| "dating" | 637163 - 001 | ALL | 71 | 0.01% | 155,412 | 5 | 5 | 0.01% | 66 | 155,407 |
| "dick*" | 637163 - 001 | ALL | 395 | 0.04% | 156,290 | 43 | 43 | 0.06% | 352 | 156,243 |
| "douche*" | 637163 - 001 | ALL | 184 | 0.02% | 155,437 | 28 | 28 | 0.04% | 156 | 155,409 |
| "drank" | 637163 - 001 | ALL | 21 | 0.00% | 149,297 | 2 | 2 | 0.00% | 19 | 149,295 |
| "drunk" | 637163 - 001 | ALL | 66 | 0.01% | 135,683 | 11 | 13 | 0.02% | 57 | 135,670 |
| "fire*" | 637163 - 001 | ALL | 7,362 | 0.81% | 165,101 | 888 | 976 | 1.21% | 6,494 | 164,225 |
| "fuck*" | 637163 - 001 | ALL | 4,525 | 0.49% | 158,698 | 952 | 964 | 1.33% | 3,573 | 157,734 |
| "harass*" | 637163 - 001 | ALL | 324 | 0.04% | 160,535 | 20 | 21 | 0.03% | 304 | 160,514 |
| "Hawkins" | 637163 - 001 | ALL | 36 | 0.00% | 149,338 | 0 | 0 | 0.00% | 36 | 149,338 |
| "hooked" | 637163 - 001 | ALL | 192 | 0.02% | 153,918 | 6 | 6 | 0.01% | 186 | 153,912 |
| "HR risk" | 637163 - 001 | ALL | 40 | 0.00% | 149,310 | 2 | 2 | 0.00% | 38 | 149,308 |
| "illegal*" | 637163 - 001 | ALL | 312 | 0.03% | 154,514 | 8 | 8 | 0.01% | 304 | 154,506 |
| "inappropriat*" | 637163 - 001 | ALL | 429 | 0.05% | 154,711 | 15 | 16 | 0.02% | 414 | 154,695 |
| "intern" | 637163 - 001 | ALL | 957 | 0.10% | 157,077 | 118 | 139 | 0.19% | 839 | 156,938 |
| "investigat*" | 637163 - 001 | ALL | 1,803 | 0.20% | 163,289 | 96 | 115 | 0.16% | 1,707 | 163,174 |
| "Jake" | 637163 - 001 | ALL | 43,751 | 4.78% | 164,588 | 3,644 | 4,419 | 6.11% | 40,107 | 160,169 |
| "kill*" | 637163 - 001 | ALL | 2,422 | 0.26% | 158,272 | 340 | 373 | 0.52% | 2,082 | 157,899 |
| "lawsuit*" | 637163 - 001 | ALL | 114 | 0.01% | 154,463 | 9 | 11 | 0.02% | 105 | 154,452 |
| "lol" | 637163 - 001 | ALL | 46,927 | 5.13% | 176,408 | 15,549 | 16,167 | 22.36% | 31,378 | 160,241 |
| "love*" | 637163 - 001 | ALL | 10,331 | 1.13% | 160,250 | 1,487 | 1,726 | 2.39% | 8,844 | 158,324 |
| "NRP" | 637163 - 001 | ALL | 34 | 0.00% | 144,034 | 1 | 1 | 0.00% | 33 | 144,033 |
| "naked" | 637163 - 001 | ALL | 34 | 0.00% | 135,687 | 4 | 4 | 0.01% | 30 | 135,683 |
| "No!" | 637163 - 001 | ALL | 27,432 | 3.00% | 158,636 | 19 | 22 | 0.03% | 27,413 | 158,614 |
| "nude*" | 637163 - 001 | ALL | 20 | 0.00% | 150,754 | 2 | 2 | 0.00% | 18 | 150,752 |
| "OF" | 637163 - 001 | ALL | 119,729 | 13.08% | 208,321 | 32,347 | 35,491 | 49.08% | 87,382 | 172,830 |
| "onlyfans" | 637163 - 001 | ALL | 5 | 0.00% | 76,115 | 1 | 1 | 0.00% | 4 | 76,114 |
| "photo*" | 637163 - 001 | ALL | 889 | 0.10% | 160,035 | 52 | 69 | 0.10% | 837 | 159,966 |
| "pic*" | 637163 - 001 | ALL | 10,217 | 1.12% | 163,780 | 2,973 | 3,675 | 5.08% | 7,244 | 160,105 |
| "profile*" | 637163 - 001 | ALL | 139,939 | 15.29% | 163,181 | 32,317 | 107,622 | 163.17% | 107,622 | 163,213 |
| "puss*" | 637163 - 001 | ALL | 2 | 0.00% | 2 | 0 | 0 | 0.00% | 2 | 2 |
| "retaliat*" | 637163 - 001 | ALL | 105 | 0.01% | 153,728 | 1 | 1 | 0.00% | 104 | 153,727 |
| "roman*" | 637163 - 001 | ALL | 232 | 0.03% | 155,079 | 3 | 4 | 0.01% | 229 | 155,075 |
| "sensitiv*" | 637163 - 001 | ALL | 3,692 | 0.40% | 164,428 | 173 | 189 | 0.26% | 3,519 | 164,239 |
| "settle*" | 637163 - 001 | ALL | 822 | 0.09% | 157,357 | 62 | 65 | 0.09% | 760 | 157,292 |
| "sever*" | 637163 - 001 | ALL | 4,186 | 0.46% | 163,711 | 212 | 204 | 0.28% | 3,974 | 163,507 |
| "sext*" | 637163 - 001 | ALL | 368 | 0.04% | 159,230 | 14 | 16 | 0.02% | 354 | 159,214 |
| "showing" | 637163 - 001 | ALL | 4,067 | 0.44% | 158,381 | 326 | 409 | 0.57% | 3,741 | 158,972 |
| "suit" | 637163 - 001 | ALL | 444 | 0.05% | 158,918 | 36 | 41 | 0.06% | 408 | 158,877 |
| "suspend*" | 637163 - 001 | ALL | 288 | 0.03% | 159,243 | 26 | 26 | 0.04% | 259 | 159,217 |
| "terminat*" | 637163 - 001 | ALL | 2,949 | 0.32% | 163,464 | 711 | 941 | 1.30% | 2,238 | 163,390 |
| "tit*" | 637163 - 001 | ALL | 48,312 | 5.28% | 164,400 | 1,696 | 320 | 0.44% | 46,616 | 164,080 |
| "unwant*" | 637163 - 001 | ALL | 118 | 0.01% | 160,306 | 16 | 3 | 0.00% | 102 | 160,303 |
| "vegas" | 637163 - 001 | ALL | 695 | 0.08% | 155,643 | 98 | 105 | 0.15% | 597 | 155,538 |
| "vibe*" | 637163 - 001 | ALL | 448 | 0.05% | 156,281 | 47 | 58 | 0.08% | 401 | 156,225 |
| **Total Documents (adjusted for overlap; NOT a sum of above data)** | | | **228,863** | **25.01%** | **246,961** | **99,889** | **72,313** | **100.00%** | **130,054** | **174,648** |

| Term | Keyword/Category | Custodian | Document Hits | Hit Rate (%) | Document Hits with Family | Unique Document Hits | Unique Family Hits (Document Count) | % of all Unique Family Hits | Shared Hits (2+ Terms) | Shared Hits (2+ Terms) (Full Family) |
|---|---|---|---|---|---|---|---|---|---|---|
| "Adam" | 637163 - 001 | Bal, Tony | 25 | 0.00% | 44 | 10 | 13 | 0.10% | 15 | 31 |
| "Aisha" | 637163 - 001 | Bal, Tony | 0 | 0.00% | 0 | 0 | 0 | 0.00% | 0 | 0 |
| "ashley" OR "asherly" OR "ash" OR "fragale" OR | 637163 - 001 | Bal, Tony | 106 | 0.01% | 127 | 71 | 84 | 0.65% | 35 | 43 |
| "bitch*" | 637163 - 001 | Bal, Tony | 24 | 0.00% | 24 | 11 | 11 | 0.08% | 13 | 13 |
| "boob*" | 637163 - 001 | Bal, Tony | 1 | 0.00% | 1 | 0 | 0 | 0.00% | 1 | 1 |
| "breast*" | 637163 - 001 | Bal, Tony | 0 | 0.00% | 0 | 0 | 0 | 0.00% | 0 | 0 |
| "claim*" | 637163 - 001 | Bal, Tony | 58 | 0.01% | 138 | 16 | 22 | 0.17% | 42 | 116 |
| "complaint*" | 637163 - 001 | Bal, Tony | 55 | 0.01% | 131 | 18 | 23 | 0.18% | 37 | 108 |
| "crazy" | 637163 - 001 | Bal, Tony | 54 | 0.01% | 63 | 33 | 41 | 0.32% | 21 | 22 |
| "cunt*" | 637163 - 001 | Bal, Tony | 5 | 0.00% | 5 | 4 | 4 | 0.03% | 1 | 1 |
| "date" | 637163 - 001 | Bal, Tony | 463 | 0.05% | 860 | 207 | 239 | 1.84% | 256 | 421 |
| "dating" | 637163 - 001 | Bal, Tony | 2 | 0.00% | 2 | 1 | 1 | 0.01% | 1 | 1 |
| "dick*" | 637163 - 001 | Bal, Tony | 12 | 0.00% | 12 | 8 | 8 | 0.06% | 4 | 4 |
| "douche*" | 637163 - 001 | Bal, Tony | 11 | 0.00% | 11 | 7 | 7 | 0.05% | 4 | 4 |
| "drank" | 637163 - 001 | Bal, Tony | 0 | 0.00% | 0 | 0 | 0 | 0.00% | 0 | 0 |
| "drunk" | 637163 - 001 | Bal, Tony | 5 | 0.00% | 5 | 2 | 2 | 0.02% | 3 | 3 |
| "fire*" | 637163 - 001 | Bal, Tony | 174 | 0.02% | 278 | 68 | 78 | 0.60% | 106 | 200 |
| "fuck*" | 637163 - 001 | Bal, Tony | 226 | 0.02% | 228 | 173 | 175 | 1.35% | 53 | 53 |
| "harass*" | 637163 - 001 | Bal, Tony | 9 | 0.00% | 33 | 1 | 1 | 0.01% | 8 | 32 |
| "Hawkins" | 637163 - 001 | Bal, Tony | 0 | 0.00% | 0 | 0 | 0 | 0.00% | 0 | 0 |
| "hooked" | 637163 - 001 | Bal, Tony | 1 | 0.00% | 1 | 1 | 1 | 0.01% | 0 | 0 |
| "HR risk" | 637163 - 001 | Bal, Tony | 0 | 0.00% | 0 | 0 | 0 | 0.00% | 0 | 0 |
| "illegal*" | 637163 - 001 | Bal, Tony | 10 | 0.00% | 35 | 1 | 1 | 0.01% | 9 | 34 |
| "inappropriat*" | 637163 - 001 | Bal, Tony | 22 | 0.00% | 72 | 1 | 1 | 0.01% | 21 | 71 |
| "intern" | 637163 - 001 | Bal, Tony | 47 | 0.01% | 59 | 25 | 30 | 0.23% | 22 | 29 |
| "investigat*" | 637163 - 001 | Bal, Tony | 99 | 0.01% | 191 | 17 | 18 | 0.14% | 82 | 173 |
| "Jake" | 637163 - 001 | Bal, Tony | 1,337 | 0.15% | 1,537 | 891 | 1,006 | 7.75% | 446 | 531 |
| "kill*" | 637163 - 001 | Bal, Tony | 51 | 0.01% | 59 | 35 | 36 | 0.28% | 16 | 23 |
| "lawsuit*" | 637163 - 001 | Bal, Tony | 5 | 0.00% | 7 | 1 | 1 | 0.01% | 4 | 6 |
| "lol" | 637163 - 001 | Bal, Tony | 5,760 | 0.63% | 5,869 | 4,849 | 4,941 | 38.04% | 911 | 928 |
| "love*" | 637163 - 001 | Bal, Tony | 223 | 0.02% | 256 | 130 | 153 | 1.18% | 87 | 99 |
| "NRP" | 637163 - 001 | Bal, Tony | 0 | 0.00% | 0 | 0 | 0 | 0.00% | 0 | 0 |
| "naked" | 637163 - 001 | Bal, Tony | 0 | 0.00% | 0 | 0 | 0 | 0.00% | 0 | 0 |
| "No!" | 637163 - 001 | Bal, Tony | 27 | 0.00% | 48 | 1 | 1 | 0.01% | 26 | 47 |
| "nude*" | 637163 - 001 | Bal, Tony | 0 | 0.00% | 0 | 0 | 0 | 0.00% | 0 | 0 |
| "OF" | 637163 - 001 | Bal, Tony | 6,420 | 0.70% | 7,377 | 5,103 | 5,768 | 44.41% | 1,317 | 1,609 |
| "onlyfans" | 637163 - 001 | Bal, Tony | 0 | 0.00% | 0 | 0 | 0 | 0.00% | 0 | 0 |
| "photo*" | 637163 - 001 | Bal, Tony | 22 | 0.00% | 49 | 6 | 7 | 0.05% | 16 | 42 |
| "pic*" | 637163 - 001 | Bal, Tony | 141 | 0.02% | 205 | 69 | 79 | 0.61% | 72 | 126 |
| "profile*" | 637163 - 001 | Bal, Tony | 96 | 0.01% | 185 | 27 | 27 | 0.21% | 69 | 158 |
| "puss*" | 637163 - 001 | Bal, Tony | 2 | 0.00% | 2 | 0 | 0 | 0.00% | 2 | 2 |
| "retaliat*" | 637163 - 001 | Bal, Tony | 1 | 0.00% | 1 | 1 | 1 | 0.01% | 0 | 0 |
| "roman*" | 637163 - 001 | Bal, Tony | 0 | 0.00% | 0 | 0 | 0 | 0.00% | 0 | 0 |
| "sensitiv*" | 637163 - 001 | Bal, Tony | 131 | 0.01% | 228 | 20 | 21 | 0.16% | 111 | 207 |
| "settle*" | 637163 - 001 | Bal, Tony | 50 | 0.01% | 80 | 27 | 29 | 0.22% | 23 | 51 |
| "sever*" | 637163 - 001 | Bal, Tony | 128 | 0.01% | 230 | 30 | 32 | 0.25% | 98 | 198 |
| "sext*" | 637163 - 001 | Bal, Tony | 12 | 0.00% | 53 | 1 | 1 | 0.01% | 11 | 52 |
| "showing" | 637163 - 001 | Bal, Tony | 62 | 0.01% | 111 | 36 | 48 | 0.37% | 26 | 63 |
| "suit" | 637163 - 001 | Bal, Tony | 19 | 0.00% | 31 | 3 | 3 | 0.02% | 16 | 28 |
| "suspend*" | 637163 - 001 | Bal, Tony | 29 | 0.00% | 88 | 0 | 0 | 0.00% | 29 | 88 |
| "terminat*" | 637163 - 001 | Bal, Tony | 75 | 0.01% | 175 | 6 | 8 | 0.06% | 69 | 167 |
| "unwant*" | 637163 - 001 | Bal, Tony | 155 | 0.02% | 267 | 41 | 42 | 0.32% | 114 | 215 |
| "vegas" | 637163 - 001 | Bal, Tony | 6 | 0.00% | 32 | 0 | 0 | 0.00% | 6 | 32 |
| "vibe*" | 637163 - 001 | Bal, Tony | 21 | 0.00% | 25 | 16 | 18 | 0.13% | 5 | 3 |
| "vibe*" | 637163 - 001 | Bal, Tony | 7 | 0.00% | 9 | 4 | 6 | 0.05% | 3 | 3 |
| **Total Documents (adjusted for overlap; NOT a sum of above data)** | | | **13,670** | **1.49%** | **14,569** | **11,317** | **12,998** | **100.00%** | **1,693** | **1,399** |

| Term | Keyword/Category | Custodian | Document Hits | Hit Rate (%) | Document Hits with Family | Unique Document Hits | Unique Family Hits (Document Count) | % of all Unique Family Hits | Shared Hits (2+ Terms) | Shared Hits (2+ Terms) (Full Family) |
|---|---|---|---|---|---|---|---|---|---|---|
| "Adam" | 637163 - 001 | Cowdrey, Mike | 17 | 0.00% | 23 | 10 | 10 | 0.65% | 7 | 13 |
| "Aisha" | 637163 - 001 | Cowdrey, Mike | 0 | 0.00% | 0 | 0 | 0 | 0.00% | 0 | 0 |
| "ashley" OR "asherly" OR "ash" OR "fragale" OR | 637163 - 001 | Cowdrey, Mike | 63 | 0.01% | 73 | 44 | 45 | 2.93% | 19 | 28 |
| "bitch*" | 637163 - 001 | Cowdrey, Mike | 0 | 0.00% | 0 | 0 | 0 | 0.00% | 0 | 0 |
| "boob*" | 637163 - 001 | Cowdrey, Mike | 0 | 0.00% | 0 | 0 | 0 | 0.00% | 0 | 0 |
| "breast*" | 637163 - 001 | Cowdrey, Mike | 0 | 0.00% | 0 | 0 | 0 | 0.00% | 0 | 0 |
| "claim*" | 637163 - 001 | Cowdrey, Mike | 8 | 0.00% | 12 | 5 | 5 | 0.33% | 3 | 5 |
| "complaint*" | 637163 - 001 | Cowdrey, Mike | 12 | 0.00% | 15 | 6 | 7 | 0.46% | 6 | 8 |
| "crazy" | 637163 - 001 | Cowdrey, Mike | 18 | 0.00% | 19 | 11 | 12 | 0.78% | 7 | 7 |
| "cunt*" | 637163 - 001 | Cowdrey, Mike | 0 | 0.00% | 0 | 0 | 0 | 0.00% | 0 | 0 |
| "date" | 637163 - 001 | Cowdrey, Mike | 54 | 0.01% | 81 | 25 | 32 | 2.08% | 29 | 49 |
| "dating" | 637163 - 001 | Cowdrey, Mike | 0 | 0.00% | 0 | 0 | 0 | 0.00% | 0 | 0 |
| "dick*" | 637163 - 001 | Cowdrey, Mike | 0 | 0.00% | 0 | 0 | 0 | 0.00% | 0 | 0 |
| "douche*" | 637163 - 001 | Cowdrey, Mike | 0 | 0.00% | 0 | 0 | 0 | 0.00% | 0 | 0 |
| "drank" | 637163 - 001 | Cowdrey, Mike | 0 | 0.00% | 0 | 0 | 0 | 0.00% | 0 | 0 |
| "drunk" | 637163 - 001 | Cowdrey, Mike | 0 | 0.00% | 0 | 0 | 0 | 0.00% | 0 | 0 |
| "fire*" | 637163 - 001 | Cowdrey, Mike | 47 | 0.01% | 60 | 26 | 27 | 1.76% | 21 | 33 |
| "fuck*" | 637163 - 001 | Cowdrey, Mike | 4 | 0.00% | 4 | 2 | 2 | 0.13% | 2 | 2 |
| "harass*" | 637163 - 001 | Cowdrey, Mike | 2 | 0.00% | 2 | 2 | 2 | 0.13% | 0 | 0 |
| "Hawkins" | 637163 - 001 | Cowdrey, Mike | 0 | 0.00% | 0 | 0 | 0 | 0.00% | 0 | 0 |
| "hooked" | 637163 - 001 | Cowdrey, Mike | 0 | 0.00% | 0 | 0 | 0 | 0.00% | 0 | 0 |

**KLDiscovery**

Nebula Cull Extended Search Report

Executed at 9/26/2025 8:32:25 PM

| Term | Keyword/Category | Custodian | Document Hits | Hit Rate (%) | Document Hits with Family | Unique Document Hits | Unique Family Hits (Document Count) | % of all Unique Family Hits | Shared Hits (2+ Terms) | Shared Hits (2+ Terms) (Full Family) |
|---|---|---|---|---|---|---|---|---|---|---|
| "HR risk" | 637163 - 001 | Cowdrey, Mike | 1 | 0.00% | 1 | 1 | 1 | 0.07% | 0 | 0 |
| "illegal*" | 637163 - 001 | Cowdrey, Mike | 3 | 0.00% | 5 | 1 | 1 | 0.07% | 2 | 2 |
| "inappropriat*" | 637163 - 001 | Cowdrey, Mike | 2 | 0.00% | 3 | 0 | 0 | 0.00% | 2 | 3 |
| "intent" | 637163 - 001 | Cowdrey, Mike | 13 | 0.00% | 14 | 7 | 6 | 0.39% | 6 | 8 |
| "investigat*" | 637163 - 001 | Cowdrey, Mike | 9 | 0.00% | 16 | 1 | 1 | 0.07% | 8 | 15 |
| "Jake" | 637163 - 001 | Cowdrey, Mike | 244 | 0.03% | 264 | 177 | 183 | 11.91% | 67 | 81 |
| "kill*" | 637163 - 001 | Cowdrey, Mike | 14 | 0.00% | 14 | 11 | 11 | 0.72% | 3 | 3 |
| "lawsuit" | 637163 - 001 | Cowdrey, Mike | 1 | 0.00% | 2 | 0 | 0 | 0.00% | 1 | 2 |
| "lol" | 637163 - 001 | Cowdrey, Mike | 353 | 0.04% | 360 | 306 | 309 | 20.12% | 47 | 51 |
| "love" | 637163 - 001 | Cowdrey, Mike | 40 | 0.00% | 41 | 28 | 28 | 1.82% | 12 | 13 |
| "MPP" | 637163 - 001 | Cowdrey, Mike | 1 | 0.00% | 2 | 0 | 0 | 0.00% | 1 | 2 |
| "naked" | 637163 - 001 | Cowdrey, Mike | 0 | 0.00% | 0 | 0 | 0 | 0.00% | 0 | 0 |
| "No" | 637163 - 001 | Cowdrey, Mike | 17 | 0.00% | 30 | 0 | 0 | 0.00% | 17 | 30 |
| "nude*" | 637163 - 001 | Cowdrey, Mike | 1 | 0.00% | 2 | 0 | 0 | 0.00% | 1 | 2 |
| "Off" | 637163 - 001 | Cowdrey, Mike | 877 | 0.10% | 930 | 744 | 767 | 49.93% | 133 | 163 |
| "onlyfans" | 637163 - 001 | Cowdrey, Mike | 0 | 0.00% | 0 | 0 | 0 | 0.00% | 0 | 0 |
| "photo*" | 637163 - 001 | Cowdrey, Mike | 5 | 0.00% | 12 | 0 | 0 | 0.00% | 5 | 12 |
| "pic*" | 637163 - 001 | Cowdrey, Mike | 35 | 0.00% | 41 | 24 | 24 | 1.56% | 11 | 17 |
| "profile*" | 637163 - 001 | Cowdrey, Mike | 11 | 0.00% | 14 | 5 | 5 | 0.33% | 6 | 9 |
| "puss*" | 637163 - 001 | Cowdrey, Mike | 0 | 0.00% | 0 | 0 | 0 | 0.00% | 0 | 0 |
| "retaliat*" | 637163 - 001 | Cowdrey, Mike | 1 | 0.00% | 2 | 0 | 0 | 0.00% | 1 | 2 |
| "roman*" | 637163 - 001 | Cowdrey, Mike | 0 | 0.00% | 0 | 0 | 0 | 0.00% | 0 | 0 |
| "settle*" | 637163 - 001 | Cowdrey, Mike | 15 | 0.00% | 26 | 5 | 5 | 0.33% | 10 | 21 |
| "sex*" | 637163 - 001 | Cowdrey, Mike | 2 | 0.00% | 2 | 1 | 1 | 0.07% | 1 | 1 |
| "seven*" | 637163 - 001 | Cowdrey, Mike | 18 | 0.00% | 31 | 3 | 3 | 0.20% | 15 | 28 |
| "sext*" | 637163 - 001 | Cowdrey, Mike | 1 | 0.00% | 2 | 0 | 0 | 0.00% | 1 | 2 |
| "showing" | 637163 - 001 | Cowdrey, Mike | 16 | 0.00% | 23 | 11 | 16 | 1.04% | 5 | 7 |
| "suit" | 637163 - 001 | Cowdrey, Mike | 1 | 0.00% | 1 | 1 | 1 | 0.07% | 0 | 0 |
| "suspend*" | 637163 - 001 | Cowdrey, Mike | 2 | 0.00% | 3 | 1 | 1 | 0.07% | 1 | 2 |
| "terminat*" | 637163 - 001 | Cowdrey, Mike | 19 | 0.00% | 31 | 5 | 5 | 0.33% | 14 | 26 |
| "tit*" | 637163 - 001 | Cowdrey, Mike | 29 | 0.00% | 43 | 12 | 14 | 0.91% | 17 | 29 |
| "unwant*" | 637163 - 001 | Cowdrey, Mike | 0 | 0.00% | 0 | 0 | 0 | 0.00% | 0 | 0 |
| "vegas" | 637163 - 001 | Cowdrey, Mike | 15 | 0.00% | 15 | 13 | 13 | 0.85% | 2 | 2 |
| "vibe" | 637163 - 001 | Cowdrey, Mike | 7 | 0.00% | 7 | 2 | 2 | 0.13% | 5 | 5 |
| **Total Documents (adjusted for overlap; NOT a sum of above data)** | | | **1,682** | **0.18%** | **1,751** | **1,488** | **1,536** | **100.00%** | **189** | **218** |

| Term | Keyword/Category | Custodian | Document Hits | Hit Rate (%) | Document Hits with Family | Unique Document Hits | Unique Family Hits (Document Count) | % of all Unique Family Hits | Shared Hits (2+ Terms) | Shared Hits (2+ Terms) (Full Family) |
|---|---|---|---|---|---|---|---|---|---|---|
| "Adam" | 637163 - 001 | Drewyor, Matthew | 1,673 | 0.18% | 13,667 | 40 | 40 | 0.55% | 1,633 | 13,647 |
| "Aisha" | 637163 - 001 | Drewyor, Matthew | 2 | 0.00% | 13,634 | 0 | 0 | 0.00% | 2 | 13,634 |
| "ashley" OR "ashely" OR "ash" OR "fragale" OR | 637163 - 001 | Drewyor, Matthew | 2,006 | 0.22% | 13,785 | 106 | 107 | 1.47% | 1,900 | 13,678 |
| "bitch*" | 637163 - 001 | Drewyor, Matthew | 61 | 0.01% | 13,658 | 16 | 16 | 0.22% | 45 | 13,642 |
| "boob*" | 637163 - 001 | Drewyor, Matthew | 4 | 0.00% | 13,634 | 0 | 0 | 0.00% | 4 | 13,634 |
| "breast*" | 637163 - 001 | Drewyor, Matthew | 2 | 0.00% | 13,634 | 0 | 0 | 0.00% | 2 | 13,634 |
| "claim*" | 637163 - 001 | Drewyor, Matthew | 213 | 0.02% | 13,692 | 15 | 15 | 0.21% | 198 | 13,677 |
| "complain*" | 637163 - 001 | Drewyor, Matthew | 165 | 0.02% | 13,751 | 27 | 27 | 0.37% | 138 | 13,674 |
| "crazy" | 637163 - 001 | Drewyor, Matthew | 352 | 0.04% | 13,693 | 42 | 43 | 0.59% | 310 | 13,650 |
| "cunt*" | 637163 - 001 | Drewyor, Matthew | 6 | 0.00% | 13,636 | 2 | 2 | 0.03% | 4 | 13,634 |
| "date" | 637163 - 001 | Drewyor, Matthew | 3,261 | 0.36% | 13,930 | 85 | 85 | 1.17% | 3,176 | 13,845 |
| "dating" | 637163 - 001 | Drewyor, Matthew | 10 | 0.00% | 13,634 | 0 | 0 | 0.00% | 10 | 13,634 |
| "dick*" | 637163 - 001 | Drewyor, Matthew | 61 | 0.01% | 13,657 | 11 | 11 | 0.15% | 50 | 13,646 |
| "douche*" | 637163 - 001 | Drewyor, Matthew | 34 | 0.00% | 13,648 | 8 | 8 | 0.11% | 26 | 13,640 |
| "drank" | 637163 - 001 | Drewyor, Matthew | 2 | 0.00% | 13,634 | 0 | 0 | 0.00% | 2 | 13,634 |
| "drunk" | 637163 - 001 | Drewyor, Matthew | 3 | 0.00% | 3 | 2 | 2 | 0.03% | 1 | 1 |
| "fire*" | 637163 - 001 | Drewyor, Matthew | 657 | 0.07% | 13,816 | 92 | 92 | 1.26% | 565 | 13,724 |
| "fuck*" | 637163 - 001 | Drewyor, Matthew | 725 | 0.08% | 14,049 | 316 | 316 | 4.34% | 409 | 13,733 |
| "harass*" | 637163 - 001 | Drewyor, Matthew | 25 | 0.00% | 13,639 | 1 | 1 | 0.01% | 24 | 13,638 |
| "Hawkins" | 637163 - 001 | Drewyor, Matthew | 5 | 0.00% | 13,634 | 0 | 0 | 0.00% | 5 | 13,634 |
| "hooked" | 637163 - 001 | Drewyor, Matthew | 18 | 0.00% | 13,634 | 0 | 0 | 0.00% | 18 | 13,634 |
| "HR risk" | 637163 - 001 | Drewyor, Matthew | 6 | 0.00% | 13,634 | 0 | 0 | 0.00% | 6 | 13,634 |
| "illegal*" | 637163 - 001 | Drewyor, Matthew | 7 | 0.00% | 13,639 | 1 | 1 | 0.01% | 6 | 13,638 |
| "inappropriat*" | 637163 - 001 | Drewyor, Matthew | 13 | 0.00% | 13,634 | 0 | 0 | 0.00% | 13 | 13,634 |
| "intent" | 637163 - 001 | Drewyor, Matthew | 112 | 0.01% | 13,662 | 16 | 17 | 0.23% | 96 | 13,645 |
| "investigat*" | 637163 - 001 | Drewyor, Matthew | 111 | 0.01% | 13,744 | 7 | 7 | 0.10% | 104 | 13,686 |
| "Jake" | 637163 - 001 | Drewyor, Matthew | 3,914 | 0.43% | 14,138 | 301 | 312 | 4.29% | 3,613 | 13,826 |
| "kill*" | 637163 - 001 | Drewyor, Matthew | 273 | 0.03% | 13,704 | 47 | 47 | 0.65% | 226 | 13,657 |
| "lawsuit" | 637163 - 001 | Drewyor, Matthew | 11 | 0.00% | 13,638 | 2 | 2 | 0.03% | 9 | 13,634 |
| "lol" | 637163 - 001 | Drewyor, Matthew | 6,241 | 0.69% | 17,316 | 3,195 | 3,216 | 44.21% | 3,046 | 14,100 |
| "love" | 637163 - 001 | Drewyor, Matthew | 961 | 0.11% | 13,844 | 161 | 163 | 2.24% | 800 | 13,681 |
| "MPP" | 637163 - 001 | Drewyor, Matthew | 7 | 0.00% | 13,635 | 1 | 1 | 0.01% | 6 | 13,634 |
| "naked" | 637163 - 001 | Drewyor, Matthew | 2 | 0.00% | 2 | 1 | 1 | 0.01% | 1 | 1 |
| "No" | 637163 - 001 | Drewyor, Matthew | 2,613 | 0.29% | 13,698 | 0 | 0 | 0.00% | 2,613 | 13,698 |
| "nude*" | 637163 - 001 | Drewyor, Matthew | 3 | 0.00% | 13,634 | 0 | 0 | 0.00% | 3 | 13,634 |
| "Off" | 637163 - 001 | Drewyor, Matthew | 10,084 | 1.10% | 16,981 | 2,552 | 2,536 | 34.86% | 7,532 | 14,445 |
| "onlyfans" | 637163 - 001 | Drewyor, Matthew | 0 | 0.00% | 0 | 0 | 0 | 0.00% | 0 | 0 |
| "photo*" | 637163 - 001 | Drewyor, Matthew | 55 | 0.01% | 13,644 | 5 | 5 | 0.07% | 50 | 13,639 |
| "pic*" | 637163 - 001 | Drewyor, Matthew | 715 | 0.08% | 13,752 | 63 | 63 | 0.87% | 652 | 13,689 |
| "profile*" | 637163 - 001 | Drewyor, Matthew | 11,698 | 1.28% | 13,697 | 2,662 | 11 | 0.15% | 9,036 | 13,686 |
| "puss*" | 637163 - 001 | Drewyor, Matthew | 0 | 0.00% | 0 | 0 | 0 | 0.00% | 0 | 0 |
| "retaliat*" | 637163 - 001 | Drewyor, Matthew | 3 | 0.00% | 13,635 | 0 | 0 | 0.00% | 3 | 13,635 |
| "roman*" | 637163 - 001 | Drewyor, Matthew | 33 | 0.00% | 13,634 | 0 | 0 | 0.00% | 33 | 13,634 |
| "sensitiv*" | 637163 - 001 | Drewyor, Matthew | 278 | 0.03% | 13,716 | 18 | 18 | 0.25% | 260 | 13,700 |
| "settle*" | 637163 - 001 | Drewyor, Matthew | 80 | 0.01% | 13,656 | 6 | 6 | 0.08% | 74 | 13,650 |
| "seven*" | 637163 - 001 | Drewyor, Matthew | 337 | 0.04% | 13,706 | 7 | 7 | 0.10% | 330 | 13,699 |
| "sext*" | 637163 - 001 | Drewyor, Matthew | 22 | 0.00% | 13,638 | 3 | 3 | 0.04% | 19 | 13,636 |
| "showing" | 637163 - 001 | Drewyor, Matthew | 397 | 0.04% | 13,729 | 24 | 25 | 0.34% | 373 | 13,704 |
| "suit" | 637163 - 001 | Drewyor, Matthew | 38 | 0.00% | 13,656 | 6 | 6 | 0.08% | 32 | 13,650 |
| "suspend*" | 637163 - 001 | Drewyor, Matthew | 24 | 0.00% | 13,646 | 2 | 2 | 0.03% | 22 | 13,644 |
| "terminat*" | 637163 - 001 | Drewyor, Matthew | 147 | 0.02% | 13,709 | 5 | 5 | 0.07% | 142 | 13,704 |
| "tit*" | 637163 - 001 | Drewyor, Matthew | 4,154 | 0.45% | 13,752 | 195 | 29 | 0.40% | 3,959 | 13,723 |
| "unwant*" | 637163 - 001 | Drewyor, Matthew | 5 | 0.00% | 13,636 | 0 | 0 | 0.00% | 5 | 13,636 |
| "vegas" | 637163 - 001 | Drewyor, Matthew | 38 | 0.00% | 13,662 | 20 | 20 | 0.27% | 18 | 13,642 |
| "vibe" | 637163 - 001 | Drewyor, Matthew | 52 | 0.01% | 13,645 | 7 | 7 | 0.10% | 45 | 13,638 |
| **Total Documents (adjusted for overlap; NOT a sum of above data)** | | | **21,474** | **2.35%** | **21,971** | **10,070** | **7,275** | **100.00%** | **11,404** | **14,896** |

| Term | Keyword/Category | Custodian | Document Hits | Hit Rate (%) | Document Hits with Family | Unique Document Hits | Unique Family Hits (Document Count) | % of all Unique Family Hits | Shared Hits (2+ Terms) | Shared Hits (2+ Terms) (Full Family) |
|---|---|---|---|---|---|---|---|---|---|---|
| "Adam" | 637163 - 001 | Fragale, Ashley | 2 | 0.00% | 2 | 1 | 1 | 0.18% | 1 | 1 |
| "Aisha" | 637163 - 001 | Fragale, Ashley | 0 | 0.00% | 0 | 0 | 0 | 0.00% | 0 | 0 |
| "ashley" OR "ashely" OR "ash" OR "fragale" OR | 637163 - 001 | Fragale, Ashley | 221 | 0.02% | 260 | 145 | 157 | 8.13% | 76 | 103 |
| "bitch*" | 637163 - 001 | Fragale, Ashley | 0 | 0.00% | 0 | 0 | 0 | 0.00% | 0 | 0 |
| "boob*" | 637163 - 001 | Fragale, Ashley | 0 | 0.00% | 0 | 0 | 0 | 0.00% | 0 | 0 |
| "breast*" | 637163 - 001 | Fragale, Ashley | 1 | 0.00% | 1 | 1 | 1 | 0.05% | 0 | 0 |
| "claim*" | 637163 - 001 | Fragale, Ashley | 11 | 0.00% | 19 | 2 | 2 | 0.10% | 9 | 17 |
| "complain*" | 637163 - 001 | Fragale, Ashley | 12 | 0.00% | 18 | 3 | 4 | 0.21% | 9 | 14 |
| "crazy" | 637163 - 001 | Fragale, Ashley | 18 | 0.00% | 19 | 10 | 11 | 0.57% | 8 | 8 |
| "cunt*" | 637163 - 001 | Fragale, Ashley | 3 | 0.00% | 3 | 3 | 3 | 0.16% | 0 | 0 |
| "date" | 637163 - 001 | Fragale, Ashley | 79 | 0.01% | 122 | 34 | 42 | 2.18% | 45 | 80 |
| "dating" | 637163 - 001 | Fragale, Ashley | 6 | 0.00% | 8 | 4 | 4 | 0.21% | 2 | 2 |
| "dick*" | 637163 - 001 | Fragale, Ashley | 0 | 0.00% | 0 | 0 | 0 | 0.00% | 0 | 0 |
| "douche*" | 637163 - 001 | Fragale, Ashley | 0 | 0.00% | 0 | 0 | 0 | 0.00% | 0 | 0 |
| "drank" | 637163 - 001 | Fragale, Ashley | 0 | 0.00% | 0 | 0 | 0 | 0.00% | 0 | 0 |
| "drunk" | 637163 - 001 | Fragale, Ashley | 3 | 0.00% | 4 | 2 | 2 | 0.10% | 1 | 1 |
| "fire*" | 637163 - 001 | Fragale, Ashley | 43 | 0.00% | 53 | 27 | 33 | 1.71% | 16 | 18 |
| "fuck*" | 637163 - 001 | Fragale, Ashley | 3 | 0.00% | 3 | 1 | 1 | 0.05% | 2 | 2 |
| "harass*" | 637163 - 001 | Fragale, Ashley | 11 | 0.00% | 14 | 3 | 4 | 0.21% | 8 | 10 |
| "Hawkins" | 637163 - 001 | Fragale, Ashley | 0 | 0.00% | 0 | 0 | 0 | 0.00% | 0 | 0 |
| "hooked" | 637163 - 001 | Fragale, Ashley | 0 | 0.00% | 0 | 0 | 0 | 0.00% | 0 | 0 |
| "HR risk" | 637163 - 001 | Fragale, Ashley | 0 | 0.00% | 0 | 0 | 0 | 0.00% | 0 | 0 |
| "illegal*" | 637163 - 001 | Fragale, Ashley | 3 | 0.00% | 5 | 1 | 1 | 0.05% | 2 | 4 |
| "inappropriat*" | 637163 - 001 | Fragale, Ashley | 6 | 0.00% | 9 | 1 | 1 | 0.05% | 5 | 8 |
| "intent" | 637163 - 001 | Fragale, Ashley | 25 | 0.00% | 34 | 15 | 20 | 1.04% | 10 | 14 |
| "investigat*" | 637163 - 001 | Fragale, Ashley | 5 | 0.00% | 8 | 2 | 2 | 0.10% | 3 | 6 |
| "Jake" | 637163 - 001 | Fragale, Ashley | 179 | 0.02% | 196 | 131 | 140 | 7.25% | 48 | 56 |
| "kill*" | 637163 - 001 | Fragale, Ashley | 9 | 0.00% | 11 | 5 | 6 | 0.31% | 4 | 5 |
| "lawsuit" | 637163 - 001 | Fragale, Ashley | 2 | 0.00% | 4 | 0 | 0 | 0.00% | 2 | 4 |
| "lol" | 637163 - 001 | Fragale, Ashley | 679 | 0.07% | 715 | 573 | 590 | 31.04% | 106 | 116 |
| "love" | 637163 - 001 | Fragale, Ashley | 78 | 0.01% | 102 | 62 | 83 | 4.36% | 16 | 19 |
| "MPP" | 637163 - 001 | Fragale, Ashley | 2 | 0.00% | 2 | 1 | 1 | 0.05% | 1 | 1 |
| "naked" | 637163 - 001 | Fragale, Ashley | 2 | 0.00% | 2 | 1 | 1 | 0.05% | 1 | 1 |
| "No" | 637163 - 001 | Fragale, Ashley | 12 | 0.00% | 21 | 3 | 3 | 0.16% | 9 | 18 |
| "nude*" | 637163 - 001 | Fragale, Ashley | 0 | 0.00% | 0 | 0 | 0 | 0.00% | 0 | 0 |
| "Off" | 637163 - 001 | Fragale, Ashley | 889 | 0.09% | 991 | 632 | 706 | 36.58% | 227 | 285 |
| "onlyfans" | 637163 - 001 | Fragale, Ashley | 0 | 0.00% | 0 | 0 | 0 | 0.00% | 0 | 0 |
| "photo*" | 637163 - 001 | Fragale, Ashley | 3 | 0.00% | 3 | 2 | 3 | 0.16% | 1 | 0 |
| "pic*" | 637163 - 001 | Fragale, Ashley | 46 | 0.01% | 66 | 20 | 27 | 1.40% | 26 | 39 |
| "profile*" | 637163 - 001 | Fragale, Ashley | 12 | 0.00% | 16 | 6 | 6 | 0.31% | 6 | 10 |
| "puss*" | 637163 - 001 | Fragale, Ashley | 0 | 0.00% | 0 | 0 | 0 | 0.00% | 0 | 0 |
| "retaliat*" | 637163 - 001 | Fragale, Ashley | 2 | 0.00% | 4 | 0 | 0 | 0.00% | 2 | 4 |
| "roman*" | 637163 - 001 | Fragale, Ashley | 0 | 0.00% | 0 | 0 | 0 | 0.00% | 0 | 0 |
| "sensitiv*" | 637163 - 001 | Fragale, Ashley | 4 | 0.00% | 4 | 0 | 0 | 0.00% | 4 | 4 |
| "settle*" | 637163 - 001 | Fragale, Ashley | 24 | 0.00% | 31 | 11 | 12 | 0.62% | 13 | 19 |
| "seven*" | 637163 - 001 | Fragale, Ashley | 10 | 0.00% | 12 | 1 | 1 | 0.05% | 9 | 11 |

**KLDiscovery**

Nebula Cull Extended Search Report

Executed at 9/26/2025 8:32:25 PM

| Term | KeywordCategory | Custodian | Document Hits | Hit Rate (%) | Document Hits with Family | Unique Document Hits | Unique Family Hits (Document Count) | %of all Unique Family Hits | Shared Hits (2+ Terms) | Shared Hits (2+ Terms) (Full Family) |
|---|---|---|---|---|---|---|---|---|---|---|
| "showing" | 637163 - 001 | Fragale, Ashley | 19 | 0.00% | 26 | 11 | 11 | 0.57% | 8 | 15 |
| "suit" | 637163 - 001 | Fragale, Ashley | 0 | 0.00% | 0 | 0 | 0 | 0.00% | 0 | 0 |
| "suspend*" | 637163 - 001 | Fragale, Ashley | 2 | 0.00% | 3 | 1 | 1 | 0.05% | 1 | 2 |
| "terminat*" | 637163 - 001 | Fragale, Ashley | 19 | 0.00% | 32 | 7 | 9 | 0.47% | 12 | 23 |
| "tit*" | 637163 - 001 | Fragale, Ashley | 29 | 0.00% | 52 | 11 | 11 | 0.57% | 18 | 41 |
| "unwant*" | 637163 - 001 | Fragale, Ashley | 0 | 0.00% | 0 | 0 | 0 | 0.00% | 0 | 0 |
| "vegas" | 637163 - 001 | Fragale, Ashley | 9 | 0.00% | 10 | 8 | 8 | 0.41% | 1 | 2 |
| "vibe" | 637163 - 001 | Fragale, Ashley | 7 | 0.00% | 10 | 4 | 6 | 0.31% | 3 | 4 |
| **Total Documents (adjusted for overlap; NOT a sum of above data)** | | | **2,063** | **0.23%** | **2,317** | **1,752** | **1,930** | **100.00%** | **311** | **387** |

| Term | KeywordCategory | Custodian | Document Hits | Hit Rate (%) | Document Hits with Family | Unique Document Hits | Unique Family Hits (Document Count) | %of all Unique Family Hits | Shared Hits (2+ Terms) | Shared Hits (2+ Terms) (Full Family) |
|---|---|---|---|---|---|---|---|---|---|---|
| "Adam" | 637163 - 001 | Gross, Chad | 12,290 | 1.34% | 143,983 | 102 | 100 | 0.77% | 12,188 | 143,883 |
| "Aisha" | 637163 - 001 | Gross, Chad | 4 | 0.00% | 76,114 | 0 | 0 | 0.00% | 4 | 76,114 |
| "ashley" OR "ashely" OR "ash" OR "fragale" OR | 637163 - 001 | Gross, Chad | 16,099 | 1.76% | 143,864 | 80 | 59 | 0.45% | 16,019 | 143,825 |
| "bitch**" | 637163 - 001 | Gross, Chad | 539 | 0.06% | 142,621 | 32 | 32 | 0.25% | 507 | 142,589 |
| "boob**" | 637163 - 001 | Gross, Chad | 23 | 0.00% | 141,736 | 1 | 1 | 0.01% | 22 | 141,737 |
| "breast*" | 637163 - 001 | Gross, Chad | 18 | 0.00% | 135,665 | 1 | 1 | 0.01% | 17 | 135,664 |
| "claim**" | 637163 - 001 | Gross, Chad | 1,490 | 0.16% | 148,158 | 28 | 29 | 0.22% | 1,462 | 148,129 |
| "complain**" | 637163 - 001 | Gross, Chad | 1,308 | 0.14% | 148,270 | 65 | 65 | 0.50% | 1,243 | 148,205 |
| "crazy" | 637163 - 001 | Gross, Chad | 2,761 | 0.30% | 143,318 | 131 | 134 | 1.03% | 2,630 | 143,184 |
| "cunt**" | 637163 - 001 | Gross, Chad | 45 | 0.00% | 141,756 | 0 | 0 | 0.00% | 45 | 141,756 |
| "date" | 637163 - 001 | Gross, Chad | 34,384 | 3.76% | 148,930 | 220 | 214 | 1.64% | 34,164 | 148,716 |
| "dating" | 637163 - 001 | Gross, Chad | 48 | 0.01% | 141,761 | 0 | 0 | 0.00% | 48 | 141,761 |
| "dick**" | 637163 - 001 | Gross, Chad | 294 | 0.03% | 142,583 | 11 | 12 | 0.09% | 283 | 142,571 |
| "doucher*" | 637163 - 001 | Gross, Chad | 128 | 0.01% | 141,763 | 7 | 7 | 0.05% | 121 | 141,756 |
| "drank" | 637163 - 001 | Gross, Chad | 17 | 0.00% | 135,661 | 0 | 0 | 0.00% | 17 | 135,661 |
| "drunk" | 637163 - 001 | Gross, Chad | 50 | 0.01% | 135,662 | 0 | 0 | 0.00% | 50 | 135,662 |
| "fire**" | 637163 - 001 | Gross, Chad | 5,409 | 0.60% | 148,446 | 265 | 167 | 1.28% | 5,194 | 148,270 |
| "fuck**" | 637163 - 001 | Gross, Chad | 3,228 | 0.35% | 144,057 | 192 | 195 | 1.49% | 3,036 | 143,862 |
| "harass**" | 637163 - 001 | Gross, Chad | 177 | 0.02% | 146,515 | 1 | 1 | 0.01% | 176 | 146,514 |
| "Hawkins" | 637163 - 001 | Gross, Chad | 25 | 0.00% | 135,661 | 0 | 0 | 0.00% | 25 | 135,661 |
| "hooked" | 637163 - 001 | Gross, Chad | 164 | 0.02% | 140,272 | 2 | 2 | 0.02% | 162 | 140,270 |
| "HR risk" | 637163 - 001 | Gross, Chad | 30 | 0.00% | 135,666 | 0 | 0 | 0.00% | 30 | 135,666 |
| "illegal**" | 637163 - 001 | Gross, Chad | 142 | 0.02% | 139,916 | 1 | 1 | 0.01% | 142 | 139,916 |
| "inappropriat**" | 637163 - 001 | Gross, Chad | 183 | 0.02% | 139,911 | 1 | 1 | 0.01% | 182 | 139,910 |
| "intern" | 637163 - 001 | Gross, Chad | 685 | 0.07% | 142,945 | 10 | 11 | 0.08% | 675 | 142,934 |
| "investigat**" | 637163 - 001 | Gross, Chad | 1,074 | 0.12% | 147,726 | 16 | 16 | 0.12% | 1,058 | 147,710 |
| "Jake" | 637163 - 001 | Gross, Chad | 35,482 | 3.88% | 144,440 | 409 | 419 | 3.21% | 35,073 | 144,021 |
| "kill**" | 637163 - 001 | Gross, Chad | 1,869 | 0.20% | 143,821 | 90 | 82 | 0.70% | 1,779 | 143,529 |
| "lawsuit" | 637163 - 001 | Gross, Chad | 74 | 0.01% | 140,284 | 3 | 3 | 0.02% | 74 | 140,281 |
| "lewd**" | 637163 - 001 | Gross, Chad | 30,296 | 3.31% | 148,048 | 3,561 | 3,605 | 27.62% | 26,735 | 144,443 |
| "love**" | 637163 - 001 | Gross, Chad | 8,054 | 0.88% | 144,354 | 421 | 427 | 3.27% | 7,633 | 143,927 |
| "NPI" | 637163 - 001 | Gross, Chad | 25 | 0.00% | 130,395 | 0 | 0 | 0.00% | 25 | 130,395 |
| "naked" | 637163 - 001 | Gross, Chad | 28 | 0.00% | 135,661 | 0 | 0 | 0.00% | 28 | 135,661 |
| "No" | 637163 - 001 | Gross, Chad | 24,357 | 2.66% | 143,510 | 1 | 2 | 0.02% | 24,356 | 143,508 |
| "nude**" | 637163 - 001 | Gross, Chad | 14 | 0.00% | 137,116 | 0 | 0 | 0.00% | 14 | 137,116 |
| "OP" | 637163 - 001 | Gross, Chad | 91,880 | 8.95% | 156,808 | 6,012 | 6,987 | 53.53% | 73,868 | 149,821 |
| "onlyfans" | 637163 - 001 | Gross, Chad | 5 | 0.00% | 76,115 | 1 | 1 | 0.01% | 4 | 76,114 |
| "photo**" | 637163 - 001 | Gross, Chad | 654 | 0.07% | 145,523 | 5 | 16 | 0.12% | 649 | 145,507 |
| "pic**" | 637163 - 001 | Gross, Chad | 5,894 | 0.62% | 144,130 | 149 | 149 | 1.14% | 5,545 | 143,981 |
| "profile**" | 637163 - 001 | Gross, Chad | 127,727 | 13.98% | 147,855 | 29,530 | 12 | 0.09% | 98,207 | 147,843 |
| "puss**" | 637163 - 001 | Gross, Chad | 0 | 0.00% | 0 | 0 | 0 | 0.00% | 0 | 0 |
| "retaliat**" | 637163 - 001 | Gross, Chad | 31 | 0.00% | 139,783 | 0 | 0 | 0.00% | 31 | 139,783 |
| "roman**" | 637163 - 001 | Gross, Chad | 181 | 0.02% | 141,319 | 0 | 0 | 0.00% | 181 | 141,319 |
| "sensitiv*" | 637163 - 001 | Gross, Chad | 2,505 | 0.27% | 146,406 | 34 | 31 | 0.24% | 2,471 | 146,375 |
| "settle**" | 637163 - 001 | Gross, Chad | 611 | 0.07% | 143,228 | 11 | 11 | 0.08% | 600 | 143,217 |
| "sever**" | 637163 - 001 | Gross, Chad | 3,018 | 0.33% | 147,773 | 59 | 37 | 0.28% | 2,959 | 147,736 |
| "sex**" | 637163 - 001 | Gross, Chad | 232 | 0.03% | 145,065 | 1 | 1 | 0.01% | 231 | 145,064 |
| "showing" | 637163 - 001 | Gross, Chad | 3,169 | 0.35% | 144,007 | 72 | 76 | 0.58% | 3,097 | 143,931 |
| "suit" | 637163 - 001 | Gross, Chad | 312 | 0.03% | 144,459 | 8 | 8 | 0.06% | 304 | 144,451 |
| "suspend**" | 637163 - 001 | Gross, Chad | 130 | 0.01% | 144,501 | 6 | 3 | 0.02% | 124 | 144,498 |
| "terminat**" | 637163 - 001 | Gross, Chad | 2,127 | 0.23% | 147,882 | 636 | 23 | 0.18% | 1,491 | 147,669 |
| "tit**" | 637163 - 001 | Gross, Chad | 43,017 | 4.71% | 148,405 | 82 | 1,305 | 9.99% | 42,009 | 148,323 |
| "unwant*" | 637163 - 001 | Gross, Chad | 73 | 0.01% | 145,895 | 15 | 1 | 0.01% | 58 | 145,894 |
| "vegas" | 637163 - 001 | Gross, Chad | 558 | 0.06% | 142,307 | 6 | 6 | 0.05% | 552 | 141,766 |
| "vibe" | 637163 - 001 | Gross, Chad | 350 | 0.04% | 142,580 | 13 | 14 | 0.11% | 337 | 142,580 |
| **Total Documents (adjusted for overlap; NOT a sum of above data)** | | | **157,048** | **17.16%** | **163,167** | **46,806** | **13,053** | **100.00%** | **111,542** | **158,114** |

| Term | KeywordCategory | Custodian | Document Hits | Hit Rate (%) | Document Hits with Family | Unique Document Hits | Unique Family Hits (Document Count) | %of all Unique Family Hits | Shared Hits (2+ Terms) | Shared Hits (2+ Terms) (Full Family) |
|---|---|---|---|---|---|---|---|---|---|---|
| "Adam" | 637163 - 001 | Hibelein, John | 0 | 0.00% | 0 | 0 | 0 | 0.00% | 0 | 0 |
| "Aisha" | 637163 - 001 | Hibelein, John | 0 | 0.00% | 0 | 0 | 0 | 0.00% | 0 | 0 |
| "ashley" OR "ashely" OR "ash" OR "fragale" OR | 637163 - 001 | Hibelein, John | 6 | 0.00% | 11 | 3 | 6 | 0.41% | 3 | 5 |
| "bitch**" | 637163 - 001 | Hibelein, John | 0 | 0.00% | 0 | 0 | 0 | 0.00% | 0 | 0 |
| "boob**" | 637163 - 001 | Hibelein, John | 0 | 0.00% | 0 | 0 | 0 | 0.00% | 0 | 0 |
| "breast*" | 637163 - 001 | Hibelein, John | 0 | 0.00% | 0 | 0 | 0 | 0.00% | 0 | 0 |
| "claim**" | 637163 - 001 | Hibelein, John | 6 | 0.00% | 12 | 0 | 0 | 0.00% | 6 | 12 |
| "complain**" | 637163 - 001 | Hibelein, John | 2 | 0.00% | 3 | 1 | 1 | 0.07% | 1 | 2 |
| "crazy" | 637163 - 001 | Hibelein, John | 3 | 0.00% | 4 | 2 | 2 | 0.14% | 1 | 2 |
| "cunt**" | 637163 - 001 | Hibelein, John | 0 | 0.00% | 0 | 0 | 0 | 0.00% | 0 | 0 |
| "date" | 637163 - 001 | Hibelein, John | 75 | 0.01% | 87 | 12 | 16 | 1.09% | 63 | 71 |
| "dating" | 637163 - 001 | Hibelein, John | 0 | 0.00% | 0 | 0 | 0 | 0.00% | 0 | 0 |
| "dick**" | 637163 - 001 | Hibelein, John | 2 | 0.00% | 3 | 0 | 0 | 0.00% | 2 | 3 |
| "doucher*" | 637163 - 001 | Hibelein, John | 3 | 0.00% | 5 | 1 | 1 | 0.07% | 2 | 4 |
| "drank" | 637163 - 001 | Hibelein, John | 0 | 0.00% | 0 | 0 | 0 | 0.00% | 0 | 0 |
| "drunk" | 637163 - 001 | Hibelein, John | 0 | 0.00% | 0 | 0 | 0 | 0.00% | 0 | 0 |
| "fire**" | 637163 - 001 | Hibelein, John | 13 | 0.00% | 21 | 9 | 13 | 0.89% | 4 | 8 |
| "fuck**" | 637163 - 001 | Hibelein, John | 11 | 0.00% | 11 | 9 | 9 | 0.61% | 2 | 2 |
| "harass**" | 637163 - 001 | Hibelein, John | 2 | 0.00% | 4 | 0 | 0 | 0.00% | 2 | 4 |
| "Hawkins" | 637163 - 001 | Hibelein, John | 0 | 0.00% | 0 | 0 | 0 | 0.00% | 0 | 0 |
| "hooked" | 637163 - 001 | Hibelein, John | 0 | 0.00% | 0 | 0 | 0 | 0.00% | 0 | 0 |
| "HR risk" | 637163 - 001 | Hibelein, John | 0 | 0.00% | 0 | 0 | 0 | 0.00% | 0 | 0 |
| "illegal**" | 637163 - 001 | Hibelein, John | 3 | 0.00% | 6 | 0 | 0 | 0.00% | 3 | 6 |
| "inappropriat**" | 637163 - 001 | Hibelein, John | 0 | 0.00% | 0 | 0 | 0 | 0.00% | 0 | 0 |
| "intern" | 637163 - 001 | Hibelein, John | 1 | 0.00% | 2 | 0 | 0 | 0.00% | 1 | 2 |
| "investigat**" | 637163 - 001 | Hibelein, John | 171 | 0.02% | 263 | 130 | 202 | 13.76% | 41 | 61 |
| "kill**" | 637163 - 001 | Hibelein, John | 8 | 0.00% | 8 | 6 | 6 | 0.41% | 1 | 2 |
| "lawsuit" | 637163 - 001 | Hibelein, John | 276 | 0.03% | 454 | 235 | 392 | 26.70% | 41 | 62 |
| "love**" | 637163 - 001 | Hibelein, John | 95 | 0.01% | 169 | 66 | 115 | 7.83% | 29 | 54 |
| "NPI" | 637163 - 001 | Hibelein, John | 0 | 0.00% | 0 | 0 | 0 | 0.00% | 0 | 0 |
| "naked" | 637163 - 001 | Hibelein, John | 5 | 0.00% | 11 | 0 | 0 | 0.00% | 5 | 11 |
| "nude**" | 637163 - 001 | Hibelein, John | 0 | 0.00% | 0 | 0 | 0 | 0.00% | 0 | 0 |
| "OP" | 637163 - 001 | Hibelein, John | 581 | 0.06% | 827 | 422 | 634 | 43.19% | 139 | 193 |
| "onlyfans" | 637163 - 001 | Hibelein, John | 0 | 0.00% | 0 | 0 | 0 | 0.00% | 0 | 0 |
| "photo**" | 637163 - 001 | Hibelein, John | 6 | 0.00% | 9 | 1 | 1 | 0.07% | 5 | 8 |
| "pic**" | 637163 - 001 | Hibelein, John | 25 | 0.00% | 39 | 15 | 27 | 1.84% | 7 | 12 |
| "profile**" | 637163 - 001 | Hibelein, John | 9 | 0.00% | 13 | 6 | 10 | 0.68% | 3 | 3 |
| "puss**" | 637163 - 001 | Hibelein, John | 0 | 0.00% | 0 | 0 | 0 | 0.00% | 0 | 0 |
| "retaliat**" | 637163 - 001 | Hibelein, John | 0 | 0.00% | 0 | 0 | 0 | 0.00% | 0 | 0 |
| "roman**" | 637163 - 001 | Hibelein, John | 1 | 0.00% | 2 | 1 | 1 | 0.07% | 0 | 0 |
| "sensitiv*" | 637163 - 001 | Hibelein, John | 6 | 0.00% | 7 | 4 | 4 | 0.27% | 2 | 3 |
| "settle**" | 637163 - 001 | Hibelein, John | 4 | 0.00% | 7 | 3 | 4 | 0.27% | 1 | 3 |
| "sever**" | 637163 - 001 | Hibelein, John | 16 | 0.00% | 28 | 6 | 6 | 0.41% | 10 | 18 |
| "sex**" | 637163 - 001 | Hibelein, John | 1 | 0.00% | 1 | 1 | 1 | 0.07% | 0 | 0 |
| "showing" | 637163 - 001 | Hibelein, John | 9 | 0.00% | 17 | 5 | 12 | 0.82% | 3 | 5 |
| "suit" | 637163 - 001 | Hibelein, John | 3 | 0.00% | 4 | 3 | 4 | 0.27% | 0 | 0 |
| "suspend**" | 637163 - 001 | Hibelein, John | 5 | 0.00% | 4 | 0 | 0 | 0.00% | 5 | 10 |
| "terminat**" | 637163 - 001 | Hibelein, John | 9 | 0.00% | 16 | 4 | 4 | 0.41% | 5 | 10 |
| "unwant*" | 637163 - 001 | Hibelein, John | 0 | 0.00% | 0 | 0 | 0 | 0.00% | 0 | 0 |
| "vegas" | 637163 - 001 | Hibelein, John | 2 | 0.00% | 4 | 0 | 0 | 0.00% | 2 | 4 |
| "vibe" | 637163 - 001 | Hibelein, John | 0 | 0.00% | 0 | 0 | 0 | 0.00% | 0 | 0 |
| **Total Documents (adjusted for overlap; NOT a sum of above data)** | | | **1,112** | **0.12%** | **1,709** | **942** | **1,468** | **100.00%** | **170** | **240** |

| Term | KeywordCategory | Custodian | Document Hits | Hit Rate (%) | Document Hits with Family | Unique Document Hits | Unique Family Hits (Document Count) | %of all Unique Family Hits | Shared Hits (2+ Terms) | Shared Hits (2+ Terms) (Full Family) |
|---|---|---|---|---|---|---|---|---|---|---|
| "Adam" | 637163 - 001 | Laurence, Allison | 4 | 0.00% | 4 | 3 | 3 | 0.08% | 1 | 1 |
| "Aisha" | 637163 - 001 | Laurence, Allison | 0 | 0.00% | 0 | 0 | 0 | 0.00% | 0 | 0 |
| "ashley" OR "ashely" OR "ash" OR "fragale" OR | 637163 - 001 | Laurence, Allison | 3 | 0.00% | 3 | 1 | 1 | 1.28% | 2 | 2 |
| "bitch**" | 637163 - 001 | Laurence, Allison | 0 | 0.00% | 0 | 0 | 0 | 0.00% | 0 | 0 |
| "boob**" | 637163 - 001 | Laurence, Allison | 0 | 0.00% | 0 | 0 | 0 | 0.00% | 0 | 0 |
| "breast*" | 637163 - 001 | Laurence, Allison | 0 | 0.00% | 0 | 0 | 0 | 0.00% | 0 | 0 |
| "claim**" | 637163 - 001 | Laurence, Allison | 6 | 0.00% | 7 | 4 | 4 | 0.11% | 2 | 3 |
| "complain**" | 637163 - 001 | Laurence, Allison | 4 | 0.00% | 5 | 2 | 2 | 0.05% | 2 | 3 |
| "crazy" | 637163 - 001 | Laurence, Allison | 3 | 0.00% | 4 | 2 | 2 | 0.00% | 1 | 2 |
| "cunt**" | 637163 - 001 | Laurence, Allison | 0 | 0.00% | 0 | 0 | 0 | 0.00% | 0 | 0 |
| "date" | 637163 - 001 | Laurence, Allison | 1,505 | 0.17% | 3,051 | 1,522 | 3,034 | 83.33% | 15 | 17 |
| "dating" | 637163 - 001 | Laurence, Allison | 1 | 0.00% | 2 | 1 | 2 | 0.00% | 0 | 0 |
| "dick**" | 637163 - 001 | Laurence, Allison | 0 | 0.00% | 0 | 0 | 0 | 0.00% | 0 | 0 |
| "douche*" | 637163 - 001 | Laurence, Allison | 0 | 0.00% | 0 | 0 | 0 | 0.00% | 0 | 0 |

**KLDiscovery**

Nebula Cull Extended Search Report

Executed at 9/26/2025 8:32:25 PM

| Term | Keyword/Category | Custodian | Document Hits | Hit Rate (%) | Document Hits with Family | Unique Document Hits | Unique Family Hits (Document Count) | % of all Unique Family Hits | Shared Hits (2+ Terms) | Shared Hits (2+ Terms) (Full Family) |
|---|---|---|---|---|---|---|---|---|---|---|
| "drank" | 637163 - 001 | Laurence, Allison | 0 | 0.00% | 0 | 0 | 0 | 0.00% | 0 | 0 |
| "drunk" | 637163 - 001 | Laurence, Allison | 1 | 0.00% | 2 | 0 | 0 | 0.00% | 1 | 2 |
| "fire*" | 637163 - 001 | Laurence, Allison | 9 | 0.00% | 12 | 7 | 9 | 0.25% | 2 | 3 |
| "fuck*" | 637163 - 001 | Laurence, Allison | 7 | 0.00% | 7 | 4 | 4 | 0.11% | 3 | 3 |
| "harass*" | 637163 - 001 | Laurence, Allison | 0 | 0.00% | 0 | 0 | 0 | 0.00% | 0 | 0 |
| "Hawkins" | 637163 - 001 | Laurence, Allison | 1 | 0.00% | 2 | 0 | 0 | 0.00% | 1 | 2 |
| "hooked" | 637163 - 001 | Laurence, Allison | 0 | 0.00% | 0 | 0 | 0 | 0.00% | 0 | 0 |
| "HR risk" | 637163 - 001 | Laurence, Allison | 0 | 0.00% | 0 | 0 | 0 | 0.00% | 0 | 0 |
| "illegal*" | 637163 - 001 | Laurence, Allison | 2 | 0.00% | 2 | 2 | 2 | 0.05% | 0 | 0 |
| "inappropriat*" | 637163 - 001 | Laurence, Allison | 4 | 0.00% | 4 | 1 | 1 | 0.03% | 3 | 3 |
| "intern" | 637163 - 001 | Laurence, Allison | 16 | 0.00% | 19 | 14 | 17 | 0.47% | 2 | 2 |
| "investigat*" | 637163 - 001 | Laurence, Allison | 5 | 0.00% | 5 | 4 | 4 | 0.11% | 1 | 1 |
| "Jake" | 637163 - 001 | Laurence, Allison | 76 | 0.01% | 92 | 56 | 70 | 1.92% | 20 | 22 |
| "kill*" | 637163 - 001 | Laurence, Allison | 2 | 0.00% | 5 | 0 | 0 | 0.00% | 1 | 4 |
| "lawsuit" | 637163 - 001 | Laurence, Allison | 1 | 0.00% | 1 | 0 | 0 | 0.00% | 1 | 1 |
| "lol" | 637163 - 001 | Laurence, Allison | 210 | 0.02% | 211 | 184 | 184 | 5.05% | 26 | 27 |
| "love*" | 637163 - 001 | Laurence, Allison | 18 | 0.00% | 19 | 11 | 11 | 0.30% | 7 | 8 |
| "MPT" | 637163 - 001 | Laurence, Allison | 1 | 0.00% | 2 | 0 | 0 | 0.00% | 1 | 2 |
| "naked" | 637163 - 001 | Laurence, Allison | 0 | 0.00% | 0 | 0 | 0 | 0.00% | 0 | 0 |
| "NU" | 637163 - 001 | Laurence, Allison | 2 | 0.00% | 4 | 1 | 2 | 0.05% | 1 | 2 |
| "nude*" | 637163 - 001 | Laurence, Allison | 0 | 0.00% | 0 | 0 | 0 | 0.00% | 0 | 0 |
| "OF" | 637163 - 001 | Laurence, Allison | 293 | 0.03% | 318 | 242 | 264 | 7.25% | 51 | 54 |
| "onlyfans" | 637163 - 001 | Laurence, Allison | 0 | 0.00% | 0 | 0 | 0 | 0.00% | 0 | 0 |
| "photo*" | 637163 - 001 | Laurence, Allison | 1 | 0.00% | 2 | 0 | 0 | 0.00% | 1 | 2 |
| "pic*" | 637163 - 001 | Laurence, Allison | 8 | 0.00% | 9 | 2 | 2 | 0.05% | 6 | 7 |
| "profiler" | 637163 - 001 | Laurence, Allison | 7 | 0.00% | 8 | 4 | 4 | 0.11% | 3 | 4 |
| "puss*" | 637163 - 001 | Laurence, Allison | 0 | 0.00% | 0 | 0 | 0 | 0.00% | 0 | 0 |
| "retaliat*" | 637163 - 001 | Laurence, Allison | 0 | 0.00% | 0 | 0 | 0 | 0.00% | 0 | 0 |
| "roman*" | 637163 - 001 | Laurence, Allison | 0 | 0.00% | 0 | 0 | 0 | 0.00% | 0 | 0 |
| "sensitiv*" | 637163 - 001 | Laurence, Allison | 7 | 0.00% | 13 | 6 | 11 | 0.30% | 1 | 2 |
| "settle*" | 637163 - 001 | Laurence, Allison | 1 | 0.00% | 2 | 0 | 0 | 0.00% | 1 | 2 |
| "sever*" | 637163 - 001 | Laurence, Allison | 3 | 0.00% | 4 | 0 | 0 | 0.00% | 3 | 4 |
| "sext" | 637163 - 001 | Laurence, Allison | 0 | 0.00% | 0 | 0 | 0 | 0.00% | 0 | 0 |
| "showing" | 637163 - 001 | Laurence, Allison | 4 | 0.00% | 6 | 3 | 4 | 0.11% | 1 | 2 |
| "suit" | 637163 - 001 | Laurence, Allison | 1 | 0.00% | 1 | 0 | 0 | 0.00% | 1 | 1 |
| "suspend*" | 637163 - 001 | Laurence, Allison | 0 | 0.00% | 0 | 0 | 0 | 0.00% | 0 | 0 |
| "terminat*" | 637163 - 001 | Laurence, Allison | 5 | 0.00% | 6 | 4 | 5 | 0.14% | 1 | 1 |
| "tit*" | 637163 - 001 | Laurence, Allison | 2 | 0.00% | 3 | 1 | 1 | 0.03% | 1 | 2 |
| "unwant*" | 637163 - 001 | Laurence, Allison | 0 | 0.00% | 0 | 0 | 0 | 0.00% | 0 | 0 |
| "vegas" | 637163 - 001 | Laurence, Allison | 0 | 0.00% | 0 | 0 | 0 | 0.00% | 0 | 0 |
| "vibe" | 637163 - 001 | Laurence, Allison | 0 | 0.14% | 0 | 0 | 0 | 0.00% | 0 | 0 |
| **Total Documents (adjusted for overlap; NOT a sum of above data)** | | | **2,148** | **0.23%** | **3,713** | **2,081** | **3,641** | **100.00%** | **67** | **72** |

| Term | Keyword/Category | Custodian | Document Hits | Hit Rate (%) | Document Hits with Family | Unique Document Hits | Unique Family Hits (Document Count) | % of all Unique Family Hits | Shared Hits (2+ Terms) | Shared Hits (2+ Terms) (Full Family) |
|---|---|---|---|---|---|---|---|---|---|---|
| "Adam" | 637163 - 001 | McCartney, Ryan | 53 | 0.01% | 361 | 12 | 17 | 0.12% | 41 | 364 |
| "Aisha" | 637163 - 001 | McCartney, Ryan | 0 | 0.00% | 0 | 0 | 0 | 0.00% | 0 | 0 |
| "ashley" OR "ashely" OR "ash" OR "fragale" OR | 637163 - 001 | McCartney, Ryan | 126 | 0.01% | 655 | 67 | 106 | 0.73% | 59 | 549 |
| "bitch" | 637163 - 001 | McCartney, Ryan | 14 | 0.00% | 15 | 9 | 10 | 0.07% | 5 | 5 |
| "boob*" | 637163 - 001 | McCartney, Ryan | 1 | 0.00% | 1 | 1 | 1 | 0.01% | 0 | 0 |
| "breast*" | 637163 - 001 | McCartney, Ryan | 1 | 0.00% | 3 | 0 | 0 | 0.00% | 1 | 3 |
| "claim*" | 637163 - 001 | McCartney, Ryan | 162 | 0.02% | 625 | 10 | 13 | 0.09% | 152 | 612 |
| "complain*" | 637163 - 001 | McCartney, Ryan | 169 | 0.02% | 569 | 32 | 42 | 0.29% | 137 | 527 |
| "crazy" | 637163 - 001 | McCartney, Ryan | 98 | 0.01% | 157 | 82 | 135 | 0.93% | 16 | 22 |
| "cunt*" | 637163 - 001 | McCartney, Ryan | 2 | 0.00% | 2 | 1 | 1 | 0.01% | 1 | 1 |
| "date" | 637163 - 001 | McCartney, Ryan | 977 | 0.11% | 1,865 | 296 | 461 | 3.18% | 681 | 1,404 |
| "dating" | 637163 - 001 | McCartney, Ryan | 1 | 0.00% | 1 | 0 | 0 | 0.00% | 1 | 1 |
| "dick*" | 637163 - 001 | McCartney, Ryan | 15 | 0.00% | 23 | 7 | 10 | 0.07% | 8 | 13 |
| "douche*" | 637163 - 001 | McCartney, Ryan | 4 | 0.00% | 6 | 2 | 2 | 0.01% | 2 | 4 |
| "drank" | 637163 - 001 | McCartney, Ryan | 1 | 0.00% | 1 | 1 | 1 | 0.01% | 0 | 0 |
| "drunk" | 637163 - 001 | McCartney, Ryan | 2 | 0.00% | 3 | 2 | 3 | 0.02% | 0 | 0 |
| "fire*" | 637163 - 001 | McCartney, Ryan | 346 | 0.04% | 1,134 | 101 | 156 | 1.08% | 245 | 978 |
| "fuck*" | 637163 - 001 | McCartney, Ryan | 136 | 0.01% | 152 | 112 | 117 | 0.81% | 24 | 35 |
| "harass*" | 637163 - 001 | McCartney, Ryan | 73 | 0.01% | 382 | 1 | 1 | 0.01% | 72 | 381 |
| "Hawkins" | 637163 - 001 | McCartney, Ryan | 1 | 0.00% | 23 | 0 | 0 | 0.00% | 1 | 23 |
| "hooked" | 637163 - 001 | McCartney, Ryan | 0 | 0.00% | 0 | 0 | 0 | 0.00% | 0 | 0 |
| "HR risk" | 637163 - 001 | McCartney, Ryan | 3 | 0.00% | 9 | 1 | 1 | 0.01% | 2 | 8 |
| "illegal*" | 637163 - 001 | McCartney, Ryan | 84 | 0.01% | 438 | 1 | 1 | 0.01% | 83 | 437 |
| "inappropriat*" | 637163 - 001 | McCartney, Ryan | 126 | 0.01% | 573 | 2 | 3 | 0.02% | 124 | 570 |
| "intern" | 637163 - 001 | McCartney, Ryan | 25 | 0.00% | 303 | 16 | 23 | 0.16% | 9 | 280 |
| "investigat*" | 637163 - 001 | McCartney, Ryan | 261 | 0.03% | 863 | 18 | 30 | 0.21% | 243 | 850 |
| "Jake" | 637163 - 001 | McCartney, Ryan | 1,205 | 0.13% | 2,224 | 859 | 1,348 | 9.30% | 346 | 876 |
| "kill*" | 637163 - 001 | McCartney, Ryan | 70 | 0.01% | 470 | 49 | 73 | 0.50% | 21 | 397 |
| "lawsuit" | 637163 - 001 | McCartney, Ryan | 4 | 0.00% | 253 | 1 | 2 | 0.01% | 3 | 251 |
| "lol" | 637163 - 001 | McCartney, Ryan | 1,379 | 0.15% | 1,658 | 1,199 | 1,444 | 9.97% | 179 | 214 |
| "love*" | 637163 - 001 | McCartney, Ryan | 280 | 0.03% | 925 | 211 | 341 | 2.35% | 69 | 484 |
| "MPT" | 637163 - 001 | McCartney, Ryan | 0 | 0.00% | 0 | 0 | 0 | 0.00% | 0 | 0 |
| "naked" | 637163 - 001 | McCartney, Ryan | 0 | 0.00% | 0 | 0 | 0 | 0.00% | 0 | 0 |
| "NU" | 637163 - 001 | McCartney, Ryan | 264 | 0.03% | 601 | 5 | 4 | 0.03% | 259 | 597 |
| "nude*" | 637163 - 001 | McCartney, Ryan | 2 | 0.00% | 2 | 2 | 2 | 0.01% | 0 | 0 |
| "OF" | 637163 - 001 | McCartney, Ryan | 7,206 | 0.79% | 10,997 | 5,695 | 8,457 | 58.37% | 1,511 | 2,540 |
| "onlyfans" | 637163 - 001 | McCartney, Ryan | 0 | 0.00% | 0 | 0 | 0 | 0.00% | 0 | 0 |
| "photo*" | 637163 - 001 | McCartney, Ryan | 55 | 0.01% | 567 | 5 | 6 | 0.04% | 50 | 551 |
| "pic*" | 637163 - 001 | McCartney, Ryan | 1,165 | 0.13% | 2,324 | 865 | 1,341 | 9.26% | 300 | 983 |
| "profiler" | 637163 - 001 | McCartney, Ryan | 123 | 0.01% | 672 | 9 | 11 | 0.08% | 114 | 661 |
| "puss*" | 637163 - 001 | McCartney, Ryan | 0 | 0.00% | 0 | 0 | 0 | 0.00% | 0 | 0 |
| "retaliat*" | 637163 - 001 | McCartney, Ryan | 61 | 0.01% | 290 | 25 | 35 | 0.24% | 61 | 288 |
| "roman*" | 637163 - 001 | McCartney, Ryan | 9 | 0.00% | 23 | 9 | 0 | 0.00% | 9 | 23 |
| "sensitiv*" | 637163 - 001 | McCartney, Ryan | 279 | 0.03% | 880 | 25 | 35 | 0.24% | 254 | 845 |
| "settle*" | 637163 - 001 | McCartney, Ryan | 25 | 0.00% | 291 | 4 | 4 | 0.03% | 21 | 287 |
| "sever*" | 637163 - 001 | McCartney, Ryan | 278 | 0.03% | 936 | 43 | 52 | 0.36% | 235 | 884 |
| "sext" | 637163 - 001 | McCartney, Ryan | 76 | 0.01% | 427 | 3 | 2 | 0.01% | 73 | 425 |
| "showing" | 637163 - 001 | McCartney, Ryan | 154 | 0.02% | 713 | 76 | 120 | 0.83% | 78 | 593 |
| "suit" | 637163 - 001 | McCartney, Ryan | 23 | 0.00% | 317 | 6 | 9 | 0.06% | 17 | 308 |
| "suspend*" | 637163 - 001 | McCartney, Ryan | 44 | 0.00% | 544 | 2 | 2 | 0.01% | 42 | 542 |
| "terminat*" | 637163 - 001 | McCartney, Ryan | 249 | 0.03% | 895 | 12 | 18 | 0.12% | 237 | 877 |
| "tit*" | 637163 - 001 | McCartney, Ryan | 279 | 0.03% | 979 | 47 | 64 | 0.44% | 232 | 915 |
| "unwant*" | 637163 - 001 | McCartney, Ryan | 15 | 0.00% | 412 | 1 | 2 | 0.01% | 14 | 410 |
| "vegas" | 637163 - 001 | McCartney, Ryan | 10 | 0.00% | 18 | 6 | 9 | 0.06% | 4 | 9 |
| "vibe" | 637163 - 001 | McCartney, Ryan | 6 | 0.00% | 8 | 5 | 6 | 0.04% | 2 | 2 |
| **Total Documents (adjusted for overlap; NOT a sum of above data)** | | | **11,581** | **1.27%** | **17,262** | **9,902** | **14,488** | **100.00%** | **2,779** | **2,773** |

| Term | Keyword/Category | Custodian | Document Hits | Hit Rate (%) | Document Hits with Family | Unique Document Hits | Unique Family Hits (Document Count) | % of all Unique Family Hits | Shared Hits (2+ Terms) | Shared Hits (2+ Terms) (Full Family) |
|---|---|---|---|---|---|---|---|---|---|---|
| "Adam" | 637163 - 001 | Nix, Jacob | 11 | 0.00% | 14 | 5 | 5 | 0.16% | 6 | 9 |
| "Aisha" | 637163 - 001 | Nix, Jacob | 0 | 0.00% | 0 | 0 | 0 | 0.00% | 0 | 0 |
| "ashley" OR "ashely" OR "ash" OR "fragale" OR | 637163 - 001 | Nix, Jacob | 38 | 0.00% | 45 | 25 | 25 | 0.55% | 13 | 20 |
| "bitch" | 637163 - 001 | Nix, Jacob | 16 | 0.00% | 16 | 11 | 11 | 0.24% | 5 | 5 |
| "boob*" | 637163 - 001 | Nix, Jacob | 0 | 0.00% | 0 | 0 | 0 | 0.00% | 0 | 0 |
| "breast*" | 637163 - 001 | Nix, Jacob | 0 | 0.00% | 0 | 0 | 0 | 0.00% | 0 | 0 |
| "claim*" | 637163 - 001 | Nix, Jacob | 40 | 0.00% | 72 | 10 | 10 | 0.22% | 30 | 62 |
| "complain*" | 637163 - 001 | Nix, Jacob | 39 | 0.00% | 55 | 15 | 15 | 0.33% | 24 | 40 |
| "crazy" | 637163 - 001 | Nix, Jacob | 47 | 0.01% | 50 | 32 | 35 | 0.77% | 15 | 15 |
| "cunt*" | 637163 - 001 | Nix, Jacob | 0 | 0.00% | 0 | 0 | 0 | 0.00% | 0 | 0 |
| "date" | 637163 - 001 | Nix, Jacob | 267 | 0.03% | 338 | 70 | 71 | 1.57% | 197 | 267 |
| "dating" | 637163 - 001 | Nix, Jacob | 2 | 0.00% | 2 | 0 | 0 | 0.00% | 2 | 2 |
| "dick*" | 637163 - 001 | Nix, Jacob | 4 | 0.00% | 4 | 3 | 3 | 0.07% | 1 | 1 |
| "douche*" | 637163 - 001 | Nix, Jacob | 4 | 0.00% | 4 | 3 | 3 | 0.07% | 1 | 1 |
| "drank" | 637163 - 001 | Nix, Jacob | 3 | 0.00% | 3 | 2 | 2 | 0.04% | 1 | 1 |
| "drunk" | 637163 - 001 | Nix, Jacob | 120 | 0.01% | 161 | 66 | 70 | 1.55% | 54 | 91 |
| "fire*" | 637163 - 001 | Nix, Jacob | 93 | 0.01% | 93 | 65 | 65 | 1.44% | 28 | 28 |
| "fuck*" | 637163 - 001 | Nix, Jacob | 11 | 0.00% | 21 | 5 | 5 | 0.11% | 6 | 16 |
| "harass*" | 637163 - 001 | Nix, Jacob | 1 | 0.00% | 2 | 0 | 0 | 0.00% | 1 | 2 |
| "Hawkins" | 637163 - 001 | Nix, Jacob | 4 | 0.00% | 5 | 1 | 1 | 0.02% | 3 | 4 |
| "hooked" | 637163 - 001 | Nix, Jacob | 0 | 0.00% | 0 | 0 | 0 | 0.00% | 0 | 0 |
| "HR risk" | 637163 - 001 | Nix, Jacob | 2 | 0.00% | 7 | 1 | 1 | 0.02% | 1 | 6 |
| "illegal*" | 637163 - 001 | Nix, Jacob | 16 | 0.00% | 31 | 3 | 3 | 0.07% | 13 | 28 |
| "intern" | 637163 - 001 | Nix, Jacob | 7 | 0.00% | 9 | 6 | 6 | 0.13% | 1 | 3 |
| "investigat*" | 637163 - 001 | Nix, Jacob | 34 | 0.00% | 52 | 6 | 6 | 0.13% | 28 | 46 |
| "Jake" | 637163 - 001 | Nix, Jacob | 525 | 0.06% | 665 | 334 | 356 | 7.88% | 191 | 249 |
| "kill*" | 637163 - 001 | Nix, Jacob | 44 | 0.00% | 46 | 34 | 34 | 0.75% | 10 | 12 |
| "lawsuit" | 637163 - 001 | Nix, Jacob | 3 | 0.00% | 3 | 1 | 1 | 0.02% | 2 | 2 |
| "lol" | 637163 - 001 | Nix, Jacob | 711 | 0.08% | 718 | 621 | 627 | 13.87% | 90 | 92 |
| "love*" | 637163 - 001 | Nix, Jacob | 288 | 0.03% | 293 | 218 | 222 | 4.91% | 69 | 71 |
| "MPT" | 637163 - 001 | Nix, Jacob | 0 | 0.00% | 0 | 0 | 0 | 0.00% | 0 | 0 |
| "NU" | 637163 - 001 | Nix, Jacob | 58 | 0.01% | 102 | 7 | 9 | 0.20% | 51 | 93 |
| "nude*" | 637163 - 001 | Nix, Jacob | 0 | 0.00% | 0 | 0 | 0 | 0.00% | 0 | 0 |
| "OF" | 637163 - 001 | Nix, Jacob | 3,317 | 0.36% | 3,525 | 2,677 | 2,760 | 61.06% | 640 | 765 |
| "onlyfans" | 637163 - 001 | Nix, Jacob | 16 | 0.00% | 31 | 3 | 3 | 0.07% | 13 | 28 |
| "photo*" | 637163 - 001 | Nix, Jacob | 101 | 0.01% | 122 | 53 | 55 | 1.22% | 48 | 67 |
| "profiler" | 637163 - 001 | Nix, Jacob | 40 | 0.00% | 60 | 12 | 13 | 0.29% | 28 | 47 |

**KLDiscovery**

Nebula Cull Extended Search Report

Executed at 9/26/2025 6:32:25 PM

| Term | KeywordCategory | Custodian | Document Hits | Hit Rate (%) | Document Hits with Family | Unique Document Hits | Unique Family Hits (Document Count) | %of all Unique Family Hits | Shared Hits (2+ Terms) | Shared Hits (2+ Terms) (Full Family) |
|---|---|---|---|---|---|---|---|---|---|---|
| "puse*" | 637163 - 001 | Nix, Jacob | 0 | 0.00% | 0 | 0 | 0 | 0.00% | 0 | 0 |
| "retaliat*" | 637163 - 001 | Nix, Jacob | 1 | 0.00% | 2 | 0 | 0 | 0.00% | 1 | 2 |
| "roman?*" | 637163 - 001 | Nix, Jacob | 3 | 0.00% | 5 | 1 | 1 | 0.02% | 2 | 4 |
| "sensitiv*" | 637163 - 001 | Nix, Jacob | 72 | 0.01% | 120 | 19 | 20 | 0.44% | 53 | 100 |
| "settle*" | 637163 - 001 | Nix, Jacob | 10 | 0.00% | 18 | 4 | 4 | 0.09% | 6 | 14 |
| "sever*" | 637163 - 001 | Nix, Jacob | 60 | 0.01% | 106 | 14 | 14 | 0.31% | 46 | 92 |
| "sex*" | 637163 - 001 | Nix, Jacob | 3 | 0.00% | 6 | 1 | 1 | 0.02% | 2 | 5 |
| "showing" | 637163 - 001 | Nix, Jacob | 37 | 0.00% | 48 | 20 | 20 | 0.44% | 17 | 28 |
| "suit" | 637163 - 001 | Nix, Jacob | 2 | 0.00% | 3 | 2 | 2 | 0.07% | 0 | 0 |
| "suspend?*" | 637163 - 001 | Nix, Jacob | 5 | 0.00% | 13 | 2 | 2 | 0.04% | 3 | 11 |
| "terminat*" | 637163 - 001 | Nix, Jacob | 44 | 0.00% | 82 | 8 | 8 | 0.18% | 36 | 74 |
| "tit*" | 637163 - 001 | Nix, Jacob | 71 | 0.01% | 112 | 16 | 16 | 0.35% | 52 | 94 |
| "unwant*" | 637163 - 001 | Nix, Jacob | 1 | 0.00% | 8 | 0 | 0 | 0.00% | 1 | 6 |
| "vegas" | 637163 - 001 | Nix, Jacob | 1 | 0.27% | 4 | 12 | 0 | 0.00% | 1 | 4 |
| "vibe*" | 637163 - 001 | Nix, Jacob | 4 | 0.00% | 4 | 4 | 4 | 0.09% | 0 | 0 |
| **Total Documents (adjusted for overlap; NOT a sum of above data)** | | | **5,113** | **0.98%** | **5,373** | **4,391** | **4,519** | **100.00%** | **722** | **864** |

| Term | KeywordCategory | Custodian | Document Hits | Hit Rate (%) | Document Hits with Family | Unique Document Hits | Unique Family Hits (Document Count) | %of all Unique Family Hits | Shared Hits (2+ Terms) | Shared Hits (2+ Terms) (Full Family) |
|---|---|---|---|---|---|---|---|---|---|---|
| "Adam" | 637163 - 001 | Private | 61 | 0.01% | 118 | 17 | 17 | 0.39% | 44 | 101 |
| "Aisha" | 637163 - 001 | Private | 0 | 0.00% | 0 | 0 | 0 | 0.00% | 0 | 0 |
| "ashley" OR "ashely" OR "ash" OR "fragale" OR | 637163 - 001 | Private | 135 | 0.01% | 502 | 52 | 58 | 1.33% | 83 | 444 |
| "bitch*" | 637163 - 001 | Private | 0 | 0.00% | 0 | 0 | 0 | 0.00% | 0 | 0 |
| "boob*" | 637163 - 001 | Private | 0 | 0.00% | 0 | 0 | 0 | 0.00% | 0 | 0 |
| "breast*" | 637163 - 001 | Private | 1 | 0.00% | 2 | 0 | 0 | 0.00% | 1 | 2 |
| "claim*" | 637163 - 001 | Private | 101 | 0.01% | 474 | 16 | 16 | 0.41% | 83 | 459 |
| "complain*" | 637163 - 001 | Private | 100 | 0.01% | 578 | 8 | 8 | 0.18% | 82 | 571 |
| "crazy" | 637163 - 001 | Private | 18 | 0.00% | 264 | 4 | 4 | 0.09% | 14 | 260 |
| "cunt" | 637163 - 001 | Private | 0 | 0.00% | 0 | 0 | 0 | 0.00% | 0 | 0 |
| "date" | 637163 - 001 | Private | 598 | 0.07% | 1,130 | 163 | 162 | 3.71% | 435 | 968 |
| "dating" | 637163 - 001 | Private | 1 | 0.00% | 2 | 1 | 1 | 0.02% | 1 | 2 |
| "dick*" | 637163 - 001 | Private | 2 | 0.00% | 3 | 1 | 1 | 0.02% | 1 | 2 |
| "douche*" | 637163 - 001 | Private | 0 | 0.00% | 0 | 0 | 0 | 0.00% | 0 | 0 |
| "drank" | 637163 - 001 | Private | 0 | 0.00% | 0 | 0 | 0 | 0.00% | 0 | 0 |
| "drunk" | 637163 - 001 | Private | 0 | 0.00% | 0 | 0 | 0 | 0.00% | 0 | 0 |
| "fire*" | 637163 - 001 | Private | 232 | 0.03% | 712 | 75 | 73 | 1.67% | 157 | 639 |
| "fuck*" | 637163 - 001 | Private | 16 | 0.00% | 17 | 13 | 14 | 0.32% | 3 | 3 |
| "harass*" | 637163 - 001 | Private | 9 | 0.00% | 14 | 3 | 3 | 0.07% | 6 | 11 |
| "Hawkins" | 637163 - 001 | Private | 3 | 0.00% | 9 | 0 | 0 | 0.00% | 3 | 9 |
| "hooked" | 637163 - 001 | Private | 1 | 0.00% | 1 | 0 | 0 | 0.00% | 1 | 1 |
| "HR risk" | 637163 - 001 | Private | 0 | 0.00% | 0 | 0 | 0 | 0.00% | 0 | 0 |
| "illegal*" | 637163 - 001 | Private | 42 | 0.00% | 420 | 0 | 0 | 0.00% | 42 | 420 |
| "inappropriat*" | 637163 - 001 | Private | 35 | 0.00% | 413 | 0 | 0 | 0.00% | 35 | 413 |
| "intern" | 637163 - 001 | Private | 12 | 0.00% | 17 | 4 | 4 | 0.09% | 8 | 13 |
| "investigat*" | 637163 - 001 | Private | 128 | 0.01% | 554 | 19 | 21 | 0.48% | 109 | 533 |
| "Jake" | 637163 - 001 | Private | 173 | 0.02% | 301 | 76 | 80 | 1.83% | 97 | 221 |
| "kill*" | 637163 - 001 | Private | 26 | 0.00% | 274 | 14 | 14 | 0.32% | 12 | 260 |
| "lawsuit" | 637163 - 001 | Private | 8 | 0.00% | 268 | 0 | 0 | 0.00% | 8 | 268 |
| "lol" | 637163 - 001 | Private | 168 | 0.02% | 173 | 150 | 155 | 3.55% | 18 | 18 |
| "love*" | 637163 - 001 | Private | 96 | 0.01% | 109 | 46 | 48 | 1.10% | 50 | 61 |
| "MPF" | 637163 - 001 | Private | 0 | 0.00% | 0 | 0 | 0 | 0.00% | 0 | 0 |
| "naked" | 637163 - 001 | Private | 1 | 0.00% | 1 | 1 | 1 | 0.02% | 0 | 0 |
| "Nix" | 637163 - 001 | Private | 49 | 0.01% | 154 | 0 | 0 | 0.00% | 49 | 154 |
| "nude*" | 637163 - 001 | Private | 0 | 0.00% | 0 | 0 | 0 | 0.00% | 0 | 0 |
| "OF" | 637163 - 001 | Private | 4,141 | 0.45% | 4,881 | 3,215 | 3,300 | 75.53% | 926 | 1,581 |
| "onlyfans" | 637163 - 001 | Private | 0 | 0.00% | 0 | 0 | 0 | 0.00% | 0 | 0 |
| "photo*" | 637163 - 001 | Private | 29 | 0.00% | 144 | 4 | 4 | 0.09% | 25 | 140 |
| "pic*" | 637163 - 001 | Private | 308 | 0.03% | 704 | 226 | 199 | 4.55% | 82 | 505 |
| "profile*" | 637163 - 001 | Private | 95 | 0.01% | 485 | 14 | 16 | 0.34% | 81 | 470 |
| "puse*" | 637163 - 001 | Private | 0 | 0.00% | 0 | 0 | 0 | 0.00% | 0 | 0 |
| "retaliat*" | 637163 - 001 | Private | 4 | 0.00% | 11 | 0 | 0 | 0.00% | 4 | 11 |
| "roman?*" | 637163 - 001 | Private | 5 | 0.00% | 96 | 1 | 1 | 0.02% | 4 | 95 |
| "sensitiv*" | 637163 - 001 | Private | 237 | 0.03% | 733 | 14 | 14 | 0.32% | 223 | 719 |
| "settle*" | 637163 - 001 | Private | 8 | 0.00% | 26 | 3 | 3 | 0.07% | 5 | 23 |
| "sever*" | 637163 - 001 | Private | 200 | 0.02% | 835 | 33 | 34 | 0.78% | 167 | 801 |
| "sex*" | 637163 - 001 | Private | 8 | 0.00% | 18 | 2 | 5 | 0.11% | 6 | 13 |
| "showing" | 637163 - 001 | Private | 136 | 0.01% | 905 | 46 | 52 | 1.19% | 90 | 553 |
| "suit" | 637163 - 001 | Private | 26 | 0.00% | 402 | 4 | 4 | 0.09% | 22 | 398 |
| "suspend?*" | 637163 - 001 | Private | 33 | 0.00% | 408 | 8 | 8 | 0.18% | 25 | 400 |
| "terminat*" | 637163 - 001 | Private | 192 | 0.02% | 697 | 25 | 21 | 0.48% | 167 | 676 |
| "tit*" | 637163 - 001 | Private | 157 | 0.02% | 554 | 27 | 26 | 0.60% | 130 | 528 |
| "unwant*" | 637163 - 001 | Private | 12 | 0.00% | 360 | 0 | 0 | 0.00% | 12 | 360 |
| "vegas" | 637163 - 001 | Private | 5 | 0.00% | 97 | 0 | 0 | 0.00% | 5 | 97 |
| "vibe" | 637163 - 001 | Private | 3 | 0.00% | 3 | 2 | 2 | 0.05% | 1 | 1 |
| **Total Documents (adjusted for overlap; NOT a sum of above data)** | | | **8,310** | **0.98%** | **9,040** | **4,258** | **4,369** | **100.00%** | **1,632** | **1,671** |

| Term | KeywordCategory | Custodian | Document Hits | Hit Rate (%) | Document Hits with Family | Unique Document Hits | Unique Family Hits (Document Count) | %of all Unique Family Hits | Shared Hits (2+ Terms) | Shared Hits (2+ Terms) (Full Family) |
|---|---|---|---|---|---|---|---|---|---|---|
| "Adam" | 637163 - 001 | Public | 0 | 0.00% | 0 | 0 | 0 | 0.00% | 0 | 0 |
| "Aisha" | 637163 - 001 | Public | 0 | 0.00% | 0 | 0 | 0 | 0.00% | 0 | 0 |
| "ashley" OR "ashely" OR "ash" OR "fragale" OR | 637163 - 001 | Public | 3 | 0.00% | 5 | 2 | 2 | 0.04% | 1 | 1 |
| "bitch*" | 637163 - 001 | Public | 0 | 0.00% | 0 | 0 | 0 | 0.00% | 0 | 0 |
| "boob*" | 637163 - 001 | Public | 0 | 0.00% | 0 | 0 | 0 | 0.00% | 0 | 0 |
| "breast*" | 637163 - 001 | Public | 0 | 0.00% | 0 | 0 | 0 | 0.00% | 0 | 0 |
| "claim*" | 637163 - 001 | Public | 55 | 0.01% | 69 | 17 | 17 | 0.64% | 36 | 52 |
| "complain*" | 637163 - 001 | Public | 12 | 0.00% | 22 | 3 | 3 | 0.15% | 9 | 18 |
| "crazy" | 637163 - 001 | Public | 9 | 0.00% | 9 | 3 | 3 | 0.11% | 6 | 6 |
| "cunt" | 637163 - 001 | Public | 0 | 0.00% | 0 | 0 | 0 | 0.00% | 0 | 0 |
| "date" | 637163 - 001 | Public | 112 | 0.01% | 170 | 19 | 19 | 0.71% | 93 | 151 |
| "dating" | 637163 - 001 | Public | 0 | 0.00% | 0 | 0 | 0 | 0.00% | 0 | 0 |
| "dick*" | 637163 - 001 | Public | 0 | 0.00% | 0 | 0 | 0 | 0.00% | 0 | 0 |
| "douche*" | 637163 - 001 | Public | 0 | 0.00% | 0 | 0 | 0 | 0.00% | 0 | 0 |
| "drank" | 637163 - 001 | Public | 0 | 0.00% | 0 | 0 | 0 | 0.00% | 0 | 0 |
| "drunk" | 637163 - 001 | Public | 0 | 0.00% | 0 | 0 | 0 | 0.00% | 0 | 0 |
| "fire*" | 637163 - 001 | Public | 62 | 0.01% | 97 | 23 | 23 | 0.86% | 39 | 74 |
| "fuck*" | 637163 - 001 | Public | 0 | 0.00% | 0 | 0 | 0 | 0.00% | 0 | 0 |
| "harass*" | 637163 - 001 | Public | 0 | 0.00% | 0 | 0 | 0 | 0.00% | 0 | 0 |
| "Hawkins" | 637163 - 001 | Public | 0 | 0.00% | 0 | 0 | 0 | 0.00% | 0 | 0 |
| "hooked" | 637163 - 001 | Public | 2 | 0.00% | 3 | 1 | 1 | 0.04% | 1 | 2 |
| "HR risk" | 637163 - 001 | Public | 0 | 0.00% | 0 | 0 | 0 | 0.00% | 0 | 0 |
| "illegal*" | 637163 - 001 | Public | 6 | 0.00% | 15 | 0 | 0 | 0.00% | 6 | 15 |
| "inappropriat*" | 637163 - 001 | Public | 8 | 0.00% | 23 | 0 | 0 | 0.00% | 8 | 23 |
| "intern" | 637163 - 001 | Public | 2 | 0.00% | 2 | 0 | 0 | 0.00% | 2 | 2 |
| "investigat*" | 637163 - 001 | Public | 38 | 0.00% | 66 | 3 | 3 | 0.11% | 35 | 63 |
| "Jake" | 637163 - 001 | Public | 42 | 0.00% | 48 | 11 | 11 | 0.41% | 31 | 37 |
| "kill*" | 637163 - 001 | Public | 8 | 0.00% | 10 | 6 | 7 | 0.26% | 2 | 3 |
| "lawsuit" | 637163 - 001 | Public | 2 | 0.00% | 3 | 0 | 0 | 0.00% | 2 | 3 |
| "lol" | 637163 - 001 | Public | 92 | 0.01% | 97 | 32 | 32 | 1.20% | 60 | 65 |
| "love*" | 637163 - 001 | Public | 48 | 0.01% | 58 | 16 | 18 | 0.67% | 32 | 40 |
| "MPF" | 637163 - 001 | Public | 0 | 0.00% | 0 | 0 | 0 | 0.00% | 0 | 0 |
| "naked" | 637163 - 001 | Public | 0 | 0.00% | 0 | 0 | 0 | 0.00% | 0 | 0 |
| "Nix" | 637163 - 001 | Public | 9 | 0.00% | 9 | 0 | 0 | 0.00% | 9 | 9 |
| "nude*" | 637163 - 001 | Public | 0 | 0.00% | 0 | 0 | 0 | 0.00% | 0 | 0 |
| "OF" | 637163 - 001 | Public | 1,304 | 0.14% | 1,484 | 791 | 850 | 31.78% | 513 | 634 |
| "onlyfans" | 637163 - 001 | Public | 0 | 0.00% | 0 | 0 | 0 | 0.00% | 0 | 0 |
| "photo*" | 637163 - 001 | Public | 0 | 0.00% | 0 | 0 | 0 | 0.00% | 0 | 0 |
| "pic*" | 637163 - 001 | Public | 1,824 | 0.20% | 2,198 | 1,389 | 1,602 | 59.89% | 435 | 596 |
| "profile*" | 637163 - 001 | Public | 64 | 0.01% | 89 | 33 | 33 | 1.23% | 31 | 56 |
| "puse*" | 637163 - 001 | Public | 0 | 0.00% | 0 | 0 | 0 | 0.00% | 0 | 0 |
| "retaliat*" | 637163 - 001 | Public | 1 | 0.00% | 2 | 0 | 0 | 0.00% | 1 | 2 |
| "roman?*" | 637163 - 001 | Public | 0 | 0.00% | 0 | 0 | 0 | 0.00% | 0 | 0 |
| "sensitiv*" | 637163 - 001 | Public | 71 | 0.01% | 112 | 21 | 23 | 0.86% | 50 | 89 |
| "settle*" | 637163 - 001 | Public | 8 | 0.00% | 9 | 0 | 0 | 0.00% | 8 | 9 |
| "sever*" | 637163 - 001 | Public | 49 | 0.01% | 90 | 2 | 2 | 0.07% | 47 | 88 |
| "sex*" | 637163 - 001 | Public | 0 | 0.00% | 0 | 0 | 0 | 0.00% | 0 | 0 |
| "showing" | 637163 - 001 | Public | 23 | 0.00% | 37 | 3 | 3 | 0.11% | 20 | 20 |
| "suit" | 637163 - 001 | Public | 8 | 0.00% | 20 | 0 | 0 | 0.00% | 8 | 20 |
| "suspend?*" | 637163 - 001 | Public | 8 | 0.00% | 8 | 7 | 7 | 0.26% | 1 | 2 |
| "terminat*" | 637163 - 001 | Public | 31 | 0.00% | 67 | 4 | 4 | 0.15% | 27 | 63 |
| "tit*" | 637163 - 001 | Public | 34 | 0.00% | 66 | 2 | 2 | 0.07% | 32 | 62 |
| "unwant*" | 637163 - 001 | Public | 3 | 0.00% | 5 | 0 | 0 | 0.00% | 3 | 5 |
| "vegas" | 637163 - 001 | Public | 0 | 0.00% | 0 | 0 | 0 | 0.00% | 0 | 0 |
| "vibe" | 637163 - 001 | Public | 0 | 0.00% | 0 | 0 | 0 | 0.00% | 0 | 0 |
| **Total Documents (adjusted for overlap; NOT a sum of above data)** | | | **3,033** | **0.33%** | **3,484** | **2,393** | **2,675** | **100.00%** | **640** | **779** |

| Term | KeywordCategory | Custodian | Document Hits | Hit Rate (%) | Document Hits with Family | Unique Document Hits | Unique Family Hits (Document Count) | %of all Unique Family Hits | Shared Hits (2+ Terms) | Shared Hits (2+ Terms) (Full Family) |
|---|---|---|---|---|---|---|---|---|---|---|
| "Adam" | 637163 - 001 | Shah, Disha | 0 | 0.00% | 0 | 0 | 0 | 0.00% | 0 | 0 |
| "Aisha" | 637163 - 001 | Shah, Disha | 0 | 0.00% | 0 | 0 | 0 | 0.00% | 0 | 0 |
| "ashley" OR "ashely" OR "ash" OR "fragale" OR | 637163 - 001 | Shah, Disha | 0 | 0.00% | 0 | 0 | 0 | 0.00% | 0 | 0 |
| "bitch*" | 637163 - 001 | Shah, Disha | 0 | 0.00% | 0 | 0 | 0 | 0.00% | 0 | 0 |
| "boob*" | 637163 - 001 | Shah, Disha | 0 | 0.00% | 0 | 0 | 0 | 0.00% | 0 | 0 |
| "breast*" | 637163 - 001 | Shah, Disha | 0 | 0.00% | 0 | 0 | 0 | 0.00% | 0 | 0 |
| "claim*" | 637163 - 001 | Shah, Disha | 3 | 0.00% | 6 | 0 | 0 | 0.00% | 3 | 6 |

**KLDiscovery**

Nebula Cull Extended Search Report

Executed at 9/26/2025 8:32:25 PM

| Term | Keyword/Category | Custodian | Document Hits | Hit Rate (%) | Document Hits with Family | Unique Document Hits | Unique Family Hits (Document Count) | % of all Unique Family Hits | Shared Hits (2+ Terms) | Shared Hits (2+ Terms) (Full Family) |
|---|---|---|---|---|---|---|---|---|---|---|
| "complain*" | 637163 - 001 | Shah, Disha | 4 | 0.00% | 8 | 0 | 0 | 0.00% | 4 | 8 |
| "crazy" | 637163 - 001 | Shah, Disha | 0 | 0.00% | 0 | 0 | 0 | 0.00% | 0 | 0 |
| "cunt*" | 637163 - 001 | Shah, Disha | 0 | 0.00% | 0 | 0 | 0 | 0.00% | 0 | 0 |
| "date" | 637163 - 001 | Shah, Disha | 13 | 0.00% | 17 | 6 | 5 | 2.73% | 7 | 12 |
| "dating" | 637163 - 001 | Shah, Disha | 2 | 0.00% | 4 | 0 | 0 | 0.00% | 2 | 4 |
| "dick*" | 637163 - 001 | Shah, Disha | 0 | 0.00% | 0 | 0 | 0 | 0.00% | 0 | 0 |
| "douche*" | 637163 - 001 | Shah, Disha | 0 | 0.00% | 0 | 0 | 0 | 0.00% | 0 | 0 |
| "drank" | 637163 - 001 | Shah, Disha | 0 | 0.00% | 0 | 0 | 0 | 0.00% | 0 | 0 |
| "drunk" | 637163 - 001 | Shah, Disha | 0 | 0.00% | 0 | 0 | 0 | 0.00% | 0 | 0 |
| "f'er" | 637163 - 001 | Shah, Disha | 9 | 0.00% | 15 | 2 | 2 | 1.09% | 7 | 13 |
| "fuck*" | 637163 - 001 | Shah, Disha | 0 | 0.00% | 0 | 0 | 0 | 0.00% | 0 | 0 |
| "harass*" | 637163 - 001 | Shah, Disha | 1 | 0.00% | 0 | 0 | 0 | 0.00% | 0 | 0 |
| "Hawkins" | 637163 - 001 | Shah, Disha | 0 | 0.00% | 0 | 0 | 0 | 0.00% | 0 | 0 |
| "hooked" | 637163 - 001 | Shah, Disha | 0 | 0.00% | 0 | 0 | 0 | 0.00% | 0 | 0 |
| "HR risk" | 637163 - 001 | Shah, Disha | 0 | 0.00% | 0 | 0 | 0 | 0.00% | 0 | 0 |
| "illegal*" | 637163 - 001 | Shah, Disha | 1 | 0.00% | 2 | 0 | 0 | 0.00% | 1 | 2 |
| "inappropriat*" | 637163 - 001 | Shah, Disha | 3 | 0.00% | 6 | 0 | 0 | 0.00% | 3 | 6 |
| "intern" | 637163 - 001 | Shah, Disha | 0 | 0.00% | 0 | 0 | 0 | 0.00% | 0 | 0 |
| "investigat*" | 637163 - 001 | Shah, Disha | 6 | 0.00% | 12 | 0 | 0 | 0.00% | 6 | 12 |
| "Jake" | 637163 - 001 | Shah, Disha | 4 | 0.00% | 4 | 3 | 3 | 1.64% | 1 | 1 |
| "kill*" | 637163 - 001 | Shah, Disha | 1 | 0.00% | 1 | 1 | 1 | 0.55% | 0 | 0 |
| "lawsuit" | 637163 - 001 | Shah, Disha | 0 | 0.00% | 0 | 0 | 0 | 0.00% | 0 | 0 |
| "lol" | 637163 - 001 | Shah, Disha | 29 | 0.00% | 29 | 21 | 21 | 11.48% | 8 | 8 |
| "love*" | 637163 - 001 | Shah, Disha | 2 | 0.00% | 2 | 2 | 2 | 1.09% | 0 | 0 |
| "MPV" | 637163 - 001 | Shah, Disha | 0 | 0.00% | 0 | 0 | 0 | 0.00% | 0 | 0 |
| "naked" | 637163 - 001 | Shah, Disha | 0 | 0.00% | 0 | 0 | 0 | 0.00% | 0 | 0 |
| "No" | 637163 - 001 | Shah, Disha | 0 | 0.00% | 0 | 0 | 0 | 0.00% | 0 | 0 |
| "nude*" | 637163 - 001 | Shah, Disha | 0 | 0.00% | 0 | 0 | 0 | 0.00% | 0 | 0 |
| "Off" | 637163 - 001 | Shah, Disha | 152 | 0.02% | 175 | 127 | 134 | 73.22% | 25 | 41 |
| "onlyfans" | 637163 - 001 | Shah, Disha | 0 | 0.00% | 0 | 0 | 0 | 0.00% | 0 | 0 |
| "photo*" | 637163 - 001 | Shah, Disha | 0 | 0.00% | 0 | 0 | 0 | 0.00% | 0 | 0 |
| "pic*" | 637163 - 001 | Shah, Disha | 3 | 0.00% | 3 | 1 | 1 | 0.55% | 2 | 2 |
| "profile*" | 637163 - 001 | Shah, Disha | 4 | 0.00% | 5 | 3 | 4 | 2.19% | 1 | 1 |
| "puss*" | 637163 - 001 | Shah, Disha | 0 | 0.00% | 0 | 0 | 0 | 0.00% | 0 | 0 |
| "retaliat*" | 637163 - 001 | Shah, Disha | 0 | 0.00% | 0 | 0 | 0 | 0.00% | 0 | 0 |
| "roman*" | 637163 - 001 | Shah, Disha | 0 | 0.00% | 0 | 0 | 0 | 0.00% | 0 | 0 |
| "sensitiv*" | 637163 - 001 | Shah, Disha | 6 | 0.00% | 12 | 0 | 0 | 0.00% | 6 | 12 |
| "settle*" | 637163 - 001 | Shah, Disha | 0 | 0.00% | 0 | 0 | 0 | 0.00% | 0 | 0 |
| "sever*" | 637163 - 001 | Shah, Disha | 0 | 0.00% | 8 | 0 | 0 | 0.00% | 0 | 0 |
| "sex*" | 637163 - 001 | Shah, Disha | 1 | 0.00% | 2 | 0 | 0 | 0.00% | 1 | 2 |
| "showing" | 637163 - 001 | Shah, Disha | 8 | 0.00% | 11 | 6 | 7 | 3.83% | 2 | 4 |
| "suit" | 637163 - 001 | Shah, Disha | 0 | 0.00% | 0 | 0 | 0 | 0.00% | 0 | 0 |
| "suspend*" | 637163 - 001 | Shah, Disha | 0 | 0.00% | 0 | 0 | 0 | 0.00% | 0 | 0 |
| "terminat*" | 637163 - 001 | Shah, Disha | 4 | 0.00% | 7 | 1 | 1 | 0.55% | 3 | 6 |
| "tit*" | 637163 - 001 | Shah, Disha | 15 | 0.00% | 20 | 9 | 2 | 1.09% | 6 | 18 |
| "unwant*" | 637163 - 001 | Shah, Disha | 0 | 0.00% | 0 | 0 | 0 | 0.00% | 0 | 0 |
| "vegas" | 637163 - 001 | Shah, Disha | 0 | 0.00% | 0 | 0 | 0 | 0.00% | 0 | 0 |
| "vibe" | 637163 - 001 | Shah, Disha | 0 | 0.00% | 0 | 0 | 0 | 0.00% | 0 | 0 |
| **Total Documents (adjusted for overlap; NOT a sum of above data)** | | | **208** | **0.02%** | **225** | **182** | **183** | **100.00%** | **26** | **42** |

| Term | Keyword/Category | Custodian | Document Hits | Hit Rate (%) | Document Hits with Family | Unique Document Hits | Unique Family Hits (Document Count) | % of all Unique Family Hits | Shared Hits (2+ Terms) | Shared Hits (2+ Terms) (Full Family) |
|---|---|---|---|---|---|---|---|---|---|---|
| "Adam" | 637163 - 001 | Wiese, Matt | 37 | 0.00% | 53 | 22 | 21 | 0.50% | 15 | 32 |
| "Aisha" | 637163 - 001 | Wiese, Matt | 0 | 0.00% | 0 | 0 | 0 | 0.00% | 0 | 0 |
| "ashley" OR "ashely" OR "ash" OR "fragale" OR | 637163 - 001 | Wiese, Matt | 45 | 0.00% | 47 | 32 | 33 | 0.79% | 13 | 14 |
| "bitch*" | 637163 - 001 | Wiese, Matt | 6 | 0.00% | 6 | 5 | 6 | 0.14% | 0 | 0 |
| "boob*" | 637163 - 001 | Wiese, Matt | 0 | 0.00% | 0 | 0 | 0 | 0.00% | 0 | 0 |
| "breast*" | 637163 - 001 | Wiese, Matt | 0 | 0.00% | 0 | 0 | 0 | 0.00% | 0 | 0 |
| "claim*" | 637163 - 001 | Wiese, Matt | 29 | 0.00% | 57 | 6 | 7 | 0.17% | 23 | 50 |
| "complain*" | 637163 - 001 | Wiese, Matt | 22 | 0.00% | 57 | 5 | 5 | 0.12% | 17 | 52 |
| "crazy" | 637163 - 001 | Wiese, Matt | 67 | 0.01% | 68 | 49 | 50 | 1.19% | 18 | 19 |
| "cunt*" | 637163 - 001 | Wiese, Matt | 1 | 0.00% | 1 | 1 | 1 | 0.02% | 0 | 0 |
| "date" | 637163 - 001 | Wiese, Matt | 244 | 0.03% | 432 | 124 | 195 | 4.66% | 120 | 237 |
| "dating" | 637163 - 001 | Wiese, Matt | 7 | 0.00% | 7 | 5 | 5 | 0.12% | 2 | 2 |
| "dick*" | 637163 - 001 | Wiese, Matt | 7 | 0.00% | 7 | 5 | 5 | 0.12% | 2 | 2 |
| "douche*" | 637163 - 001 | Wiese, Matt | 0 | 0.00% | 0 | 0 | 0 | 0.00% | 0 | 0 |
| "drank" | 637163 - 001 | Wiese, Matt | 1 | 0.00% | 1 | 1 | 1 | 0.02% | 0 | 0 |
| "drunk" | 637163 - 001 | Wiese, Matt | 1 | 0.00% | 1 | 1 | 1 | 0.02% | 0 | 0 |
| "f'er" | 637163 - 001 | Wiese, Matt | 211 | 0.02% | 298 | 127 | 133 | 3.18% | 84 | 165 |
| "fuck*" | 637163 - 001 | Wiese, Matt | 76 | 0.01% | 77 | 65 | 66 | 1.58% | 11 | 11 |
| "harass*" | 637163 - 001 | Wiese, Matt | 4 | 0.00% | 12 | 1 | 2 | 0.05% | 3 | 10 |
| "Hawkins" | 637163 - 001 | Wiese, Matt | 0 | 0.00% | 0 | 0 | 0 | 0.00% | 0 | 0 |
| "hooked" | 637163 - 001 | Wiese, Matt | 2 | 0.00% | 2 | 1 | 1 | 0.02% | 1 | 1 |
| "HR risk" | 637163 - 001 | Wiese, Matt | 0 | 0.00% | 0 | 0 | 0 | 0.00% | 0 | 0 |
| "illegal*" | 637163 - 001 | Wiese, Matt | 7 | 0.00% | 33 | 2 | 2 | 0.05% | 9 | 31 |
| "inappropriat*" | 637163 - 001 | Wiese, Matt | 11 | 0.00% | 33 | 2 | 2 | 0.05% | 9 | 31 |
| "intern" | 637163 - 001 | Wiese, Matt | 13 | 0.00% | 13 | 8 | 8 | 0.19% | 5 | 5 |
| "investigat*" | 637163 - 001 | Wiese, Matt | 32 | 0.00% | 82 | 3 | 4 | 0.10% | 29 | 78 |
| "Jake" | 637163 - 001 | Wiese, Matt | 399 | 0.04% | 476 | 266 | 288 | 6.90% | 133 | 167 |
| "kill*" | 637163 - 001 | Wiese, Matt | 49 | 0.01% | 51 | 39 | 41 | 0.98% | 10 | 10 |
| "lawsuit" | 637163 - 001 | Wiese, Matt | 0 | 0.00% | 0 | 0 | 0 | 0.00% | 0 | 0 |
| "lol" | 637163 - 001 | Wiese, Matt | 734 | 0.08% | 759 | 623 | 642 | 15.33% | 111 | 117 |
| "love*" | 637163 - 001 | Wiese, Matt | 148 | 0.02% | 162 | 108 | 115 | 2.75% | 40 | 67 |
| "MPV" | 637163 - 001 | Wiese, Matt | 0 | 0.00% | 0 | 0 | 0 | 0.00% | 0 | 0 |
| "naked" | 637163 - 001 | Wiese, Matt | 1 | 0.00% | 1 | 1 | 1 | 0.02% | 0 | 0 |
| "No" | 637163 - 001 | Wiese, Matt | 19 | 0.00% | 48 | 1 | 1 | 0.02% | 18 | 47 |
| "nude*" | 637163 - 001 | Wiese, Matt | 0 | 0.00% | 0 | 0 | 0 | 0.00% | 0 | 0 |
| "Off" | 637163 - 001 | Wiese, Matt | 2,635 | 0.29% | 3,027 | 2,130 | 2,328 | 55.60% | 500 | 699 |
| "onlyfans" | 637163 - 001 | Wiese, Matt | 0 | 0.00% | 0 | 0 | 0 | 0.00% | 0 | 0 |
| "photo*" | 637163 - 001 | Wiese, Matt | 34 | 0.00% | 44 | 19 | 20 | 0.48% | 15 | 24 |
| "pic*" | 637163 - 001 | Wiese, Matt | 152 | 0.02% | 187 | 94 | 106 | 2.53% | 56 | 81 |
| "profile*" | 637163 - 001 | Wiese, Matt | 53 | 0.01% | 82 | 16 | 18 | 0.43% | 37 | 64 |
| "puss*" | 637163 - 001 | Wiese, Matt | 0 | 0.00% | 0 | 0 | 0 | 0.00% | 0 | 0 |
| "retaliat*" | 637163 - 001 | Wiese, Matt | 0 | 0.00% | 0 | 0 | 0 | 0.00% | 0 | 0 |
| "roman*" | 637163 - 001 | Wiese, Matt | 0 | 0.00% | 0 | 0 | 0 | 0.00% | 0 | 0 |
| "sensitiv*" | 637163 - 001 | Wiese, Matt | 82 | 0.01% | 169 | 7 | 7 | 0.17% | 75 | 162 |
| "settle*" | 637163 - 001 | Wiese, Matt | 15 | 0.00% | 31 | 3 | 3 | 0.07% | 12 | 28 |
| "sever*" | 637163 - 001 | Wiese, Matt | 58 | 0.01% | 145 | 10 | 11 | 0.26% | 48 | 134 |
| "sex*" | 637163 - 001 | Wiese, Matt | 2 | 0.00% | 3 | 1 | 1 | 0.02% | 1 | 2 |
| "showing" | 637163 - 001 | Wiese, Matt | 33 | 0.00% | 48 | 12 | 15 | 0.36% | 21 | 33 |
| "suit" | 637163 - 001 | Wiese, Matt | 11 | 0.00% | 24 | 3 | 3 | 0.07% | 8 | 21 |
| "suspend*" | 637163 - 001 | Wiese, Matt | 9 | 0.00% | 24 | 0 | 0 | 0.00% | 9 | 24 |
| "terminat*" | 637163 - 001 | Wiese, Matt | 32 | 0.00% | 91 | 2 | 2 | 0.05% | 30 | 89 |
| "tit*" | 637163 - 001 | Wiese, Matt | 61 | 0.01% | 141 | 20 | 21 | 0.45% | 41 | 120 |
| "unwant*" | 637163 - 001 | Wiese, Matt | 3 | 0.00% | 10 | 0 | 0 | 0.00% | 3 | 10 |
| "vegas" | 637163 - 001 | Wiese, Matt | 21 | 0.00% | 23 | 17 | 19 | 0.45% | 4 | 4 |
| "vibe" | 637163 - 001 | Wiese, Matt | 6 | 0.00% | 7 | 2 | 3 | 0.07% | 4 | 4 |
| **Total Documents (adjusted for overlap; NOT a sum of above data)** | | | **4,435** | **0.48%** | **4,994** | **3,837** | **4,157** | **100.00%** | **696** | **907** |



**Nebula Cull Extended Search Report**

Executed at:9/26/2025 6:32:25 PM

| Keyword Name | Keyword Color | Scope | Attribute |
|---|---|---|---|
| 637163 - 001 | | 637163 - Search Set 001 | "COLLECTIONS","Custodians" |

Exhibit C



**Nebula Cull Extended Search Report**
Executed at:10/1/2025 9:07:12 PM

| Term(Parameters & Results Summary tab) | Definition |
|---|---|
| Search Population (pre-dedupe) | The number of documents these Keyword terms were run against, after Search Conditions were applied, but prior to deduplication. |
| Deduplication | The setting used to prevent exact duplicate documents from being promoted to the Target Matter. |
| Target Matter | The 'Review' module project that documents will be promoted-to. |
| Promotion Queued (Totals) | The sum-total of all Document Hits (post-dedupe, usually with Family) that are ready for new promotion to the Target Matter, and their corresponding Native File Size tally |
| Custodian | This field represents the primary custodian (custodian whose copy of the document survived deduplication), but documents searched may be defined by using All Custodian. |
| Document Hits (pre-dedupe) | The number of distinct documents that hit on terms prior to deduplication being applied. Presented both without and with any additional non-hit family members included. |
| Document Hits (post-dedupe) | The number of distinct documents that hit on terms after the deduplication settings have been applied. Presented both without and with any additional non-hit family members included. |
| Non-email Hits (post-dedupe) | The number of distinct Non-email documents (eg 'loose' EDOCs) that hit on terms after the deduplication settings have been applied. Presented both without and with any additional non-hit family members included. |
| Email Hits (post-dedupe) | The number of distinct Email documents (eg EML, MSG) that hit on terms after the deduplication settings have been applied. Presented both without and with any additional non-hit family members included. |
| Previously Promoted | The number of Document Hits (usually with Family) that have already been promoted to the Target Matter and will be excluded from any additional promotion. |
| Promotion Queued | The number of Document Hits (post-dedupe, usually with Family) that are ready for new promotion to the Target Matter |
| **(Hit Report Detail tab - all #'s post-dedupe)** | |
| Keyword Category | The virtual groupings that Nebula uses to keep different sets of Keywords (Terms) organized. |
| Document Hits | The number of distinct documents that hit on this term. Presented both without and with any additional non-hit family members included. |
| Hit Rate (%) | The frequency of which a term hits on distinct documents within the Search Population. |
| Unique Document Hits | The number of distinct documents that hit only on this term and did not hit on any other term included in the report. |
| Unique Family Hits (Document Count) | The number of all documents belonging to families where only this term hit on any document within the family. If this term was removed, the Total Documents count would decrease by exactly this number of documents. |
| % of all Unique Family Hits | The share of the overall Unique Family Hit population that this term contributes. If this term was removed, the Total Documents count would decrease by exactly this percentage of documents. |
| Shared Hits (2+ Terms) | The number of distinct documents that hit on this term in addition to another term included in the report. Presented both without and with any additional non-hit family members included. |
| Total Documents | The total number of distinct documents that hit when all terms are combined. Because multiple terms can hit on the same document, these totals are adjusted for overlap and are NOT SUM TOTALS of the data. |



**Nebula Cull Extended Search Report**

Executed at 10/1/2025 9:07:12 PM

| Target Matter: | None |
| Deduplication: | Global |

| Promotion Queued (Totals) | |
| Documents | Native Size (GB) |
| 41,882 | 13.6094 |

| Custodian | Search Population (pre-dedupe) | Document Hits (pre-dedupe) | Document Hits with Family (pre-dedupe) | Document Hits (post-dedupe) | Document Hits with Family (post-dedupe) | Non-email Hits (post-dedupe) | Non-email Hits with Family (post-dedupe) | Email Hits (post-dedupe) | Email Hits with Family (post-dedupe) | Previously Promoted | Promotion Queued |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Bal, Tony | 3,412 | 3,378 | 3,412 | 2,591 | 2,616 | 0 | 0 | 2,591 | 2,616 | 0 | 2,616 |
| Cowdrey, Mike | 983 | 976 | 983 | 640 | 640 | 0 | 0 | 640 | 640 | 0 | 640 |
| Dewyer, Matthew | 9,017 | 8,711 | 9,017 | 4,711 | 4,870 | 0 | 0 | 4,711 | 4,870 | 0 | 4,870 |
| Fregale, Ashley | 22,620 | 22,580 | 22,620 | 20,113 | 20,136 | 0 | 0 | 20,113 | 20,136 | 0 | 20,136 |
| Gross, Chad | 1,669 | 1,662 | 1,669 | 1,395 | 1,395 | 0 | 0 | 1,395 | 1,395 | 0 | 1,395 |
| Hibbeler, John | 858 | 851 | 858 | 846 | 853 | 0 | 0 | 846 | 853 | 0 | 853 |
| Laurence, Allison | 602 | 602 | 602 | 599 | 599 | 0 | 0 | 599 | 599 | 0 | 599 |
| McCartney, Ryan | 5,678 | 5,671 | 5,678 | 4,375 | 4,375 | 0 | 0 | 4,375 | 4,375 | 0 | 4,375 |
| Nix, Jacob | 13,501 | 13,501 | 13,501 | 6,375 | 6,375 | 0 | 0 | 6,375 | 6,375 | 0 | 6,375 |
| Shah, Disha | 10 | 10 | 10 | 10 | 10 | 0 | 0 | 10 | 10 | 0 | 10 |
| Wiese, Matt | 195 | 182 | 195 | 5 | 11 | 0 | 0 | 5 | 11 | 0 | 11 |
| **Total Documents** | **58,545** | **58,124** | **58,545** | **41,669** | **41,882** | **0** | **0** | **41,669** | **41,882** | **0** | **41,882** |



**KLDiscovery**

Nebula Cull Extended Search Report

Executed at 10/1/2025 9:07:12 PM

| Target Matter: | None |
|---|---|
| Deduplication: | Global |

| Term | Keyword/Category | Custodian | Document Hits | Hit Rate (%) | Document Hits with Family | Unique Document Hits | Unique Family Hits (Document Count) | % of all Unique Family Hits | Shared Hits (2+ Terms) | Shared Hits (2+ Terms) (Full Family) |
|---|---|---|---|---|---|---|---|---|---|---|
| "Adam" | 639028 - 001 | ALL | 1,840 | 3.14% | 3,291 | 3 | 5 | 0.04% | 1,837 | 3,286 |
| "Aloha" | 639028 - 001 | ALL | 222 | 0.38% | 475 | 0 | 0 | 0.00% | 222 | 475 |
| "bitch" | 639028 - 001 | ALL | 8 | 0.01% | 11 | 0 | 0 | 0.00% | 8 | 11 |
| "boob" | 639028 - 001 | ALL | 4 | 0.01% | 8 | 0 | 0 | 0.00% | 4 | 8 |
| "breast" | 639028 - 001 | ALL | 44 | 0.08% | 198 | 0 | 0 | 0.00% | 44 | 198 |
| "claim" | 639028 - 001 | ALL | 2,400 | 4.10% | 5,043 | 1 | 1 | 0.01% | 2,399 | 5,042 |
| "complain" | 639028 - 001 | ALL | 1,658 | 2.83% | 3,709 | 2 | 0 | 0.00% | 1,656 | 3,709 |
| "crazy" | 639028 - 001 | ALL | 107 | 0.18% | 221 | 0 | 0 | 0.00% | 107 | 221 |
| "cunt" | 639028 - 001 | ALL | 8 | 0.01% | 14 | 0 | 0 | 0.00% | 8 | 14 |
| "date" | 639028 - 001 | ALL | 10,309 | 17.61% | 14,448 | 34 | 13 | 0.10% | 10,275 | 14,435 |
| "dating" | 639028 - 001 | ALL | 145 | 0.25% | 528 | 8 | 0 | 0.00% | 137 | 528 |
| "dick" | 639028 - 001 | ALL | 40 | 0.07% | 171 | 0 | 0 | 0.00% | 40 | 171 |
| "douche" | 639028 - 001 | ALL | 3 | 0.01% | 6 | 0 | 0 | 0.00% | 3 | 6 |
| "drank" | 639028 - 001 | ALL | 3 | 0.01% | 6 | 0 | 0 | 0.00% | 3 | 6 |
| "drunk" | 639028 - 001 | ALL | 9 | 0.02% | 17 | 0 | 0 | 0.00% | 9 | 17 |
| "fire" | 639028 - 001 | ALL | 1,556 | 2.66% | 3,573 | 3 | 3 | 0.02% | 1,553 | 3,570 |
| "fuck" | 639028 - 001 | ALL | 47 | 0.08% | 73 | 0 | 0 | 0.00% | 47 | 73 |
| "harass" | 639028 - 001 | ALL | 705 | 1.20% | 1,485 | 0 | 0 | 0.00% | 705 | 1,485 |
| "Hawkins" | 639028 - 001 | ALL | 396 | 0.68% | 609 | 2 | 1 | 0.01% | 394 | 608 |
| "hooked" | 639028 - 001 | ALL | 74 | 0.13% | 144 | 0 | 0 | 0.00% | 74 | 144 |
| "HR risk" | 639028 - 001 | ALL | 9 | 0.02% | 18 | 0 | 0 | 0.00% | 9 | 18 |
| "illegal" | 639028 - 001 | ALL | 654 | 1.12% | 2,329 | 0 | 0 | 0.00% | 654 | 2,329 |
| "inappropriat" | 639028 - 001 | ALL | 760 | 1.30% | 2,058 | 4 | 1 | 0.01% | 756 | 2,057 |
| "intern" | 639028 - 001 | ALL | 505 | 0.86% | 1,017 | 1 | 1 | 0.01% | 504 | 1,016 |
| "investigat" | 639028 - 001 | ALL | 2,207 | 3.77% | 4,842 | 0 | 0 | 0.00% | 2,207 | 4,842 |
| "Jake" | 639028 - 001 | ALL | 14,838 | 25.34% | 18,526 | 520 | 514 | 3.90% | 14,318 | 18,014 |
| "kill" | 639028 - 001 | ALL | 320 | 0.55% | 741 | 0 | 0 | 0.00% | 320 | 741 |
| "lawsuit" | 639028 - 001 | ALL | 650 | 1.11% | 1,384 | 0 | 0 | 0.00% | 650 | 1,384 |
| "liz" | 639028 - 001 | ALL | 667 | 1.14% | 800 | 2 | 1 | 0.01% | 665 | 799 |
| "love" | 639028 - 001 | ALL | 3,443 | 5.88% | 4,514 | 7 | 7 | 0.05% | 3,436 | 4,507 |
| "MRF" | 639028 - 001 | ALL | 263 | 0.45% | 497 | 0 | 0 | 0.00% | 263 | 497 |
| "naked" | 639028 - 001 | ALL | 26 | 0.04% | 262 | 0 | 0 | 0.00% | 26 | 262 |
| "No!" | 639028 - 001 | ALL | 15,069 | 25.74% | 17,391 | 233 | 4 | 0.03% | 14,836 | 17,387 |
| "nude" | 639028 - 001 | ALL | 56 | 0.10% | 346 | 0 | 0 | 0.00% | 56 | 346 |
| "OF" | 639028 - 001 | ALL | 40,167 | 68.61% | 40,693 | 15,323 | 12,594 | 95.86% | 24,844 | 28,099 |
| "onlyfans" | 639028 - 001 | ALL | 3 | 0.01% | 8 | 0 | 0 | 0.00% | 3 | 8 |
| "photo" | 639028 - 001 | ALL | 599 | 1.02% | 2,083 | 1 | 1 | 0.01% | 598 | 2,082 |
| "pic" | 639028 - 001 | ALL | 2,179 | 3.72% | 4,331 | 4 | 6 | 0.05% | 2,175 | 4,331 |
| "profile" | 639028 - 001 | ALL | 1,838 | 3.14% | 4,207 | 16 | 16 | 0.12% | 1,822 | 4,191 |
| "puss" | 639028 - 001 | ALL | 18 | 0.03% | 82 | 0 | 0 | 0.00% | 18 | 82 |
| "retaliat" | 639028 - 001 | ALL | 804 | 1.37% | 1,855 | 1 | 0 | 0.00% | 803 | 1,855 |
| "roman" | 639028 - 001 | ALL | 181 | 0.31% | 468 | 0 | 0 | 0.00% | 181 | 468 |
| "sensitiv" | 639028 - 001 | ALL | 1,992 | 3.40% | 4,085 | 2 | 2 | 0.02% | 1,990 | 4,083 |
| "settle" | 639028 - 001 | ALL | 1,167 | 1.99% | 2,211 | 0 | 0 | 0.00% | 1,167 | 2,211 |
| "sever" | 639028 - 001 | ALL | 2,635 | 4.50% | 5,312 | 0 | 0 | 0.00% | 2,635 | 5,312 |
| "sex" | 639028 - 001 | ALL | 732 | 1.25% | 2,302 | 2 | 0 | 0.00% | 730 | 2,302 |
| "showing" | 639028 - 001 | ALL | 1,091 | 1.86% | 2,981 | 0 | 0 | 0.00% | 1,091 | 2,981 |
| "suit" | 639028 - 001 | ALL | 572 | 0.98% | 1,241 | 0 | 0 | 0.00% | 572 | 1,241 |
| "suspend" | 639028 - 001 | ALL | 410 | 0.70% | 1,461 | 0 | 0 | 0.00% | 410 | 1,461 |
| "terminat" | 639028 - 001 | ALL | 2,570 | 4.39% | 5,262 | 4 | 2 | 0.02% | 2,566 | 5,260 |
| "Ti" | 639028 - 001 | ALL | 3,010 | 5.14% | 6,202 | 0 | 0 | 0.00% | 3,010 | 6,202 |
| "unwant" | 639028 - 001 | ALL | 125 | 0.21% | 715 | 0 | 0 | 0.00% | 125 | 715 |
| "vegas" | 639028 - 001 | ALL | 301 | 0.51% | 1,019 | 0 | 0 | 0.00% | 301 | 1,019 |
| "vibe" | 639028 - 001 | ALL | 72 | 0.12% | 158 | 0 | 0 | 0.00% | 72 | 158 |
| **Total Documents (adjusted for overlap; NOT a sum of above data)** | | | **41,860** | **71.16%** | **41,862** | **16,173** | **13,166** | **100.00%** | **25,457** | **28,716** |

| Term | Keyword/Category | Custodian | Document Hits | Hit Rate (%) | Document Hits with Family | Unique Document Hits | Unique Family Hits (Document Count) | % of all Unique Family Hits | Shared Hits (2+ Terms) | Shared Hits (2+ Terms) (Full Family) |
|---|---|---|---|---|---|---|---|---|---|---|
| "Adam" | 639028 - 001 | Bai, Tony | 45 | 0.08% | 129 | 0 | 0 | 0.00% | 45 | 129 |
| "Aloha" | 639028 - 001 | Bai, Tony | 0 | 0.00% | 0 | 0 | 0 | 0.00% | 0 | 0 |
| "bitch" | 639028 - 001 | Bai, Tony | 0 | 0.00% | 0 | 0 | 0 | 0.00% | 0 | 0 |
| "boob" | 639028 - 001 | Bai, Tony | 0 | 0.00% | 0 | 0 | 0 | 0.00% | 0 | 0 |
| "breast" | 639028 - 001 | Bai, Tony | 0 | 0.00% | 0 | 0 | 0 | 0.00% | 0 | 0 |
| "claim" | 639028 - 001 | Bai, Tony | 73 | 0.12% | 275 | 0 | 0 | 0.00% | 73 | 275 |
| "complain" | 639028 - 001 | Bai, Tony | 46 | 0.08% | 141 | 0 | 0 | 0.00% | 46 | 141 |
| "crazy" | 639028 - 001 | Bai, Tony | 1 | 0.00% | 1 | 0 | 0 | 0.00% | 1 | 1 |
| "cunt" | 639028 - 001 | Bai, Tony | 0 | 0.00% | 0 | 0 | 0 | 0.00% | 0 | 0 |
| "date" | 639028 - 001 | Bai, Tony | 655 | 1.12% | 1,011 | 10 | 5 | 1.04% | 645 | 1,006 |
| "dating" | 639028 - 001 | Bai, Tony | 1 | 0.00% | 2 | 0 | 0 | 0.00% | 1 | 2 |
| "dick" | 639028 - 001 | Bai, Tony | 0 | 0.00% | 0 | 0 | 0 | 0.00% | 0 | 0 |
| "douche" | 639028 - 001 | Bai, Tony | 0 | 0.00% | 0 | 0 | 0 | 0.00% | 0 | 0 |
| "drank" | 639028 - 001 | Bai, Tony | 0 | 0.00% | 0 | 0 | 0 | 0.00% | 0 | 0 |
| "drunk" | 639028 - 001 | Bai, Tony | 0 | 0.00% | 0 | 0 | 0 | 0.00% | 0 | 0 |
| "fire" | 639028 - 001 | Bai, Tony | 151 | 0.26% | 367 | 2 | 2 | 0.42% | 149 | 365 |
| "fuck" | 639028 - 001 | Bai, Tony | 2 | 0.00% | 5 | 0 | 0 | 0.00% | 2 | 5 |
| "harass" | 639028 - 001 | Bai, Tony | 9 | 0.02% | 44 | 0 | 0 | 0.00% | 9 | 44 |
| "Hawkins" | 639028 - 001 | Bai, Tony | 1 | 0.00% | 3 | 0 | 0 | 0.00% | 1 | 3 |
| "hooked" | 639028 - 001 | Bai, Tony | 9 | 0.02% | 11 | 0 | 0 | 0.00% | 9 | 11 |
| "HR risk" | 639028 - 001 | Bai, Tony | 0 | 0.00% | 0 | 0 | 0 | 0.00% | 0 | 0 |
| "illegal" | 639028 - 001 | Bai, Tony | 24 | 0.04% | 87 | 0 | 0 | 0.00% | 24 | 87 |
| "inappropriat" | 639028 - 001 | Bai, Tony | 27 | 0.05% | 82 | 0 | 0 | 0.00% | 27 | 82 |
| "intern" | 639028 - 001 | Bai, Tony | 21 | 0.04% | 35 | 0 | 0 | 0.00% | 21 | 35 |
| "investigat" | 639028 - 001 | Bai, Tony | 95 | 0.16% | 266 | 0 | 0 | 0.00% | 95 | 266 |
| "Jake" | 639028 - 001 | Bai, Tony | 1,134 | 1.94% | 1,382 | 0 | 0 | 0.00% | 1,134 | 1,382 |
| "kill" | 639028 - 001 | Bai, Tony | 8 | 0.01% | 23 | 0 | 0 | 0.00% | 8 | 23 |
| "lawsuit" | 639028 - 001 | Bai, Tony | 1 | 0.00% | 1 | 0 | 0 | 0.00% | 1 | 1 |
| "liz" | 639028 - 001 | Bai, Tony | 108 | 0.18% | 144 | 0 | 0 | 0.00% | 108 | 144 |
| "love" | 639028 - 001 | Bai, Tony | 320 | 0.55% | 392 | 0 | 0 | 0.00% | 320 | 392 |
| "MRF" | 639028 - 001 | Bai, Tony | 0 | 0.00% | 0 | 0 | 0 | 0.00% | 0 | 0 |
| "naked" | 639028 - 001 | Bai, Tony | 0 | 0.00% | 0 | 0 | 0 | 0.00% | 0 | 0 |
| "No!" | 639028 - 001 | Bai, Tony | 1,091 | 1.86% | 1,346 | 0 | 0 | 0.00% | 1,091 | 1,346 |
| "nude" | 639028 - 001 | Bai, Tony | 0 | 0.00% | 0 | 0 | 0 | 0.00% | 0 | 0 |
| "OF" | 639028 - 001 | Bai, Tony | 2,549 | 4.35% | 2,579 | 760 | 473 | 98.54% | 1,789 | 2,106 |
| "onlyfans" | 639028 - 001 | Bai, Tony | 0 | 0.00% | 0 | 0 | 0 | 0.00% | 0 | 0 |
| "photo" | 639028 - 001 | Bai, Tony | 23 | 0.04% | 78 | 0 | 0 | 0.00% | 23 | 78 |
| "pic" | 639028 - 001 | Bai, Tony | 82 | 0.14% | 283 | 0 | 0 | 0.00% | 82 | 283 |
| "profile" | 639028 - 001 | Bai, Tony | 82 | 0.14% | 281 | 0 | 0 | 0.00% | 82 | 281 |
| "puss" | 639028 - 001 | Bai, Tony | 0 | 0.00% | 0 | 0 | 0 | 0.00% | 0 | 0 |
| "retaliat" | 639028 - 001 | Bai, Tony | 6 | 0.01% | 49 | 0 | 0 | 0.00% | 6 | 49 |
| "roman" | 639028 - 001 | Bai, Tony | 16 | 0.03% | 32 | 0 | 0 | 0.00% | 16 | 32 |
| "sensitiv" | 639028 - 001 | Bai, Tony | 175 | 0.30% | 352 | 0 | 0 | 0.00% | 175 | 352 |
| "settle" | 639028 - 001 | Bai, Tony | 38 | 0.06% | 170 | 0 | 0 | 0.00% | 38 | 170 |
| "sever" | 639028 - 001 | Bai, Tony | 163 | 0.28% | 376 | 0 | 0 | 0.00% | 163 | 376 |
| "sex" | 639028 - 001 | Bai, Tony | 11 | 0.02% | 93 | 0 | 0 | 0.00% | 11 | 93 |
| "showing" | 639028 - 001 | Bai, Tony | 36 | 0.06% | 145 | 0 | 0 | 0.00% | 36 | 145 |
| "suit" | 639028 - 001 | Bai, Tony | 24 | 0.04% | 48 | 0 | 0 | 0.00% | 24 | 48 |
| "suspend" | 639028 - 001 | Bai, Tony | 36 | 0.06% | 74 | 0 | 0 | 0.00% | 36 | 74 |
| "terminat" | 639028 - 001 | Bai, Tony | 118 | 0.20% | 240 | 0 | 0 | 0.00% | 118 | 240 |
| "Ti" | 639028 - 001 | Bai, Tony | 193 | 0.33% | 485 | 0 | 0 | 0.00% | 193 | 485 |
| "unwant" | 639028 - 001 | Bai, Tony | 5 | 0.01% | 63 | 0 | 0 | 0.00% | 5 | 63 |
| "vegas" | 639028 - 001 | Bai, Tony | 28 | 0.05% | 46 | 0 | 0 | 0.00% | 28 | 46 |
| "vibe" | 639028 - 001 | Bai, Tony | 2 | 0.00% | 3 | 0 | 0 | 0.00% | 2 | 3 |
| **Total Documents (adjusted for overlap; NOT a sum of above data)** | | | **2,601** | **4.42%** | **2,618** | **772** | **480** | **100.00%** | **1,819** | **2,138** |

| Term | Keyword/Category | Custodian | Document Hits | Hit Rate (%) | Document Hits with Family | Unique Document Hits | Unique Family Hits (Document Count) | % of all Unique Family Hits | Shared Hits (2+ Terms) | Shared Hits (2+ Terms) (Full Family) |
|---|---|---|---|---|---|---|---|---|---|---|
| "Adam" | 639028 - 001 | Cowdrey, Mike | 84 | 0.14% | 84 | 0 | 0 | 0.00% | 84 | 84 |
| "Aloha" | 639028 - 001 | Cowdrey, Mike | 0 | 0.00% | 0 | 0 | 0 | 0.00% | 0 | 0 |
| "bitch" | 639028 - 001 | Cowdrey, Mike | 0 | 0.00% | 0 | 0 | 0 | 0.00% | 0 | 0 |
| "boob" | 639028 - 001 | Cowdrey, Mike | 0 | 0.00% | 0 | 0 | 0 | 0.00% | 0 | 0 |
| "breast" | 639028 - 001 | Cowdrey, Mike | 0 | 0.00% | 0 | 0 | 0 | 0.00% | 0 | 0 |
| "claim" | 639028 - 001 | Cowdrey, Mike | 3 | 0.01% | 7 | 0 | 0 | 0.00% | 3 | 7 |
| "complain" | 639028 - 001 | Cowdrey, Mike | 3 | 0.01% | 7 | 0 | 0 | 0.00% | 3 | 7 |
| "crazy" | 639028 - 001 | Cowdrey, Mike | 0 | 0.00% | 0 | 0 | 0 | 0.00% | 0 | 0 |
| "cunt" | 639028 - 001 | Cowdrey, Mike | 0 | 0.00% | 0 | 0 | 0 | 0.00% | 0 | 0 |
| "date" | 639028 - 001 | Cowdrey, Mike | 233 | 0.40% | 267 | 0 | 0 | 0.00% | 233 | 267 |
| "dating" | 639028 - 001 | Cowdrey, Mike | 0 | 0.00% | 0 | 0 | 0 | 0.00% | 0 | 0 |
| "dick" | 639028 - 001 | Cowdrey, Mike | 3 | 0.01% | 7 | 0 | 0 | 0.00% | 3 | 7 |
| "douche" | 639028 - 001 | Cowdrey, Mike | 0 | 0.00% | 0 | 0 | 0 | 0.00% | 0 | 0 |
| "drank" | 639028 - 001 | Cowdrey, Mike | 0 | 0.00% | 0 | 0 | 0 | 0.00% | 0 | 0 |
| "drunk" | 639028 - 001 | Cowdrey, Mike | 3 | 0.01% | 6 | 0 | 0 | 0.00% | 3 | 6 |
| "fire" | 639028 - 001 | Cowdrey, Mike | 3 | 0.01% | 6 | 0 | 0 | 0.00% | 3 | 6 |
| "fuck" | 639028 - 001 | Cowdrey, Mike | 0 | 0.00% | 0 | 0 | 0 | 0.00% | 0 | 0 |
| "harass" | 639028 - 001 | Cowdrey, Mike | 4 | 0.01% | 4 | 1 | 1 | 0.56% | 3 | 3 |
| "Hawkins" | 639028 - 001 | Cowdrey, Mike | 0 | 0.00% | 0 | 0 | 0 | 0.00% | 0 | 0 |
| "hooked" | 639028 - 001 | Cowdrey, Mike | 0 | 0.00% | 0 | 0 | 0 | 0.00% | 0 | 0 |
| "HR risk" | 639028 - 001 | Cowdrey, Mike | 0 | 0.00% | 0 | 0 | 0 | 0.00% | 0 | 0 |
| "illegal" | 639028 - 001 | Cowdrey, Mike | 0 | 0.00% | 0 | 0 | 0 | 0.00% | 0 | 0 |
| "inappropriat" | 639028 - 001 | Cowdrey, Mike | 0 | 0.00% | 0 | 0 | 0 | 0.00% | 0 | 0 |

**KLDiscovery**

Nebula Cull Extended Search Report

Executed at 10/1/2025 9:07:12 PM

| Term | Keyword/Category | Custodian | Document Hits | Hit Rate (%) | Document Hits with Family | Unique Document Hits | Unique Family Hits (Document Count) | %of all Unique Family Hits | Shared Hits (2+ Terms) | Shared Hits (2+ Terms) (Full Family) |
|---|---|---|---|---|---|---|---|---|---|---|
| "islam" | 639028 - 001 | Cowdrey, Mike | 18 | 0.03% | 18 | 0 | 0 | 0.00% | 18 | 18 |
| "investigat" | 639028 - 001 | Cowdrey, Mike | 3 | 0.01% | 3 | 0 | 0 | 0.00% | 3 | 3 |
| "Jake" | 639028 - 001 | Cowdrey, Mike | 132 | 0.23% | 138 | 0 | 0 | 0.00% | 132 | 138 |
| "kill" | 639028 - 001 | Cowdrey, Mike | 6 | 0.01% | 6 | 0 | 0 | 0.00% | 6 | 6 |
| "lawsuit" | 639028 - 001 | Cowdrey, Mike | 0 | 0.01% | 0 | 0 | 0 | 0.00% | 0 | 0 |
| "lol" | 639028 - 001 | Cowdrey, Mike | 19 | 0.03% | 19 | 0 | 0 | 0.00% | 19 | 19 |
| "love" | 639028 - 001 | Cowdrey, Mike | 29 | 0.05% | 37 | 0 | 0 | 0.00% | 29 | 37 |
| "NPP" | 639028 - 001 | Cowdrey, Mike | 0 | 0.00% | 0 | 0 | 0 | 0.00% | 0 | 0 |
| "naked" | 639028 - 001 | Cowdrey, Mike | 0 | 0.00% | 0 | 0 | 0 | 0.00% | 0 | 0 |
| "Nui" | 639028 - 001 | Cowdrey, Mike | 122 | 0.21% | 127 | 0 | 0 | 0.00% | 122 | 127 |
| "nude" | 639028 - 001 | Cowdrey, Mike | 0 | 0.00% | 0 | 0 | 0 | 0.00% | 0 | 0 |
| "OP" | 639028 - 001 | Cowdrey, Mike | 590 | 1.01% | 590 | 212 | 179 | 99.44% | 378 | 410 |
| "onlyfans" | 639028 - 001 | Cowdrey, Mike | 0 | 0.00% | 0 | 0 | 0 | 0.00% | 0 | 0 |
| "photo" | 639028 - 001 | Cowdrey, Mike | 0 | 0.00% | 0 | 0 | 0 | 0.00% | 0 | 0 |
| "pic" | 639028 - 001 | Cowdrey, Mike | 25 | 0.04% | 30 | 0 | 0 | 0.00% | 25 | 30 |
| "profile" | 639028 - 001 | Cowdrey, Mike | 7 | 0.01% | 13 | 0 | 0 | 0.00% | 7 | 13 |
| "pues" | 639028 - 001 | Cowdrey, Mike | 0 | 0.00% | 0 | 0 | 0 | 0.00% | 0 | 0 |
| "retaliat" | 639028 - 001 | Cowdrey, Mike | 0 | 0.00% | 0 | 0 | 0 | 0.00% | 0 | 0 |
| "roman" | 639028 - 001 | Cowdrey, Mike | 3 | 0.01% | 5 | 0 | 0 | 0.00% | 3 | 5 |
| "sensitiv" | 639028 - 001 | Cowdrey, Mike | 0 | 0.00% | 0 | 0 | 0 | 0.00% | 0 | 0 |
| "settle" | 639028 - 001 | Cowdrey, Mike | 9 | 0.02% | 12 | 0 | 0 | 0.00% | 9 | 12 |
| "sever" | 639028 - 001 | Cowdrey, Mike | 0 | 0.00% | 0 | 0 | 0 | 0.00% | 0 | 0 |
| "sex" | 639028 - 001 | Cowdrey, Mike | 3 | 0.01% | 7 | 0 | 0 | 0.00% | 3 | 7 |
| "showing" | 639028 - 001 | Cowdrey, Mike | 11 | 0.02% | 11 | 0 | 0 | 0.00% | 11 | 11 |
| "suit" | 639028 - 001 | Cowdrey, Mike | 0 | 0.00% | 0 | 0 | 0 | 0.00% | 0 | 0 |
| "suspend" | 639028 - 001 | Cowdrey, Mike | 0 | 0.00% | 0 | 0 | 0 | 0.00% | 0 | 0 |
| "terminat" | 639028 - 001 | Cowdrey, Mike | 5 | 0.01% | 6 | 0 | 0 | 0.00% | 5 | 6 |
| "tit" | 639028 - 001 | Cowdrey, Mike | 115 | 0.20% | 123 | 0 | 0 | 0.00% | 115 | 123 |
| "unwant" | 639028 - 001 | Cowdrey, Mike | 0 | 0.00% | 0 | 0 | 0 | 0.00% | 0 | 0 |
| "vegas" | 639028 - 001 | Cowdrey, Mike | 0 | 0.00% | 0 | 0 | 0 | 0.00% | 0 | 0 |
| "vibe" | 639028 - 001 | Cowdrey, Mike | 0 | 0.00% | 0 | 0 | 0 | 0.00% | 0 | 0 |
| **Total Documents (adjusted for overlap; NOT a sum of above data)** | | **Custodian** | **648** | **1.09%** | **648** | **213** | **180** | **100.00%** | **427** | **460** |

| Term | Keyword/Category | Custodian | Document Hits | Hit Rate (%) | Document Hits with Family | Unique Document Hits | Unique Family Hits (Document Count) | %of all Unique Family Hits | Shared Hits (2+ Terms) | Shared Hits (2+ Terms) (Full Family) |
|---|---|---|---|---|---|---|---|---|---|---|
| "Adam" | 639028 - 001 | Dewayr, Matthew | 434 | 0.74% | 1,082 | 2 | 4 | 1.59% | 432 | 1,078 |
| "Aisha" | 639028 - 001 | Dewayr, Matthew | 191 | 0.33% | 424 | 0 | 0 | 0.00% | 191 | 424 |
| "bitch" | 639028 - 001 | Dewayr, Matthew | 3 | 0.01% | 6 | 0 | 0 | 0.00% | 3 | 6 |
| "boob" | 639028 - 001 | Dewayr, Matthew | 8 | 0.01% | 25 | 0 | 0 | 0.00% | 8 | 25 |
| "breast" | 639028 - 001 | Dewayr, Matthew | 978 | 0.01% | 1,784 | 0 | 0 | 0.00% | 978 | 1,784 |
| "claim" | 639028 - 001 | Dewayr, Matthew | 763 | 1.30% | 1,596 | 2 | 0 | 0.00% | 761 | 1,596 |
| "complain" | 639028 - 001 | Dewayr, Matthew | 21 | 0.04% | 94 | 0 | 0 | 0.00% | 21 | 94 |
| "crazy" | 639028 - 001 | Dewayr, Matthew | 6 | 0.01% | 11 | 0 | 0 | 0.00% | 6 | 11 |
| "cunt" | 639028 - 001 | Dewayr, Matthew | 1,829 | 3.12% | 2,556 | 15 | 4 | 1.59% | 1,814 | 2,552 |
| "date" | 639028 - 001 | Dewayr, Matthew | 92 | 0.16% | 396 | 8 | 0 | 0.00% | 84 | 396 |
| "dating" | 639028 - 001 | Dewayr, Matthew | 5 | 0.01% | 10 | 0 | 0 | 0.00% | 5 | 10 |
| "dick" | 639028 - 001 | Dewayr, Matthew | 3 | 0.01% | 6 | 0 | 0 | 0.00% | 3 | 6 |
| "doucher" | 639028 - 001 | Dewayr, Matthew | 3 | 0.01% | 6 | 0 | 0 | 0.00% | 3 | 6 |
| "drank" | 639028 - 001 | Dewayr, Matthew | 3 | 0.01% | 6 | 0 | 0 | 0.00% | 3 | 6 |
| "drunk" | 639028 - 001 | Dewayr, Matthew | 226 | 0.39% | 741 | 0 | 0 | 0.00% | 226 | 741 |
| "fire" | 639028 - 001 | Dewayr, Matthew | 8 | 0.02% | 17 | 0 | 0 | 0.00% | 8 | 17 |
| "fuck" | 639028 - 001 | Dewayr, Matthew | 364 | 0.62% | 783 | 0 | 0 | 0.00% | 364 | 783 |
| "harass" | 639028 - 001 | Dewayr, Matthew | 323 | 0.55% | 491 | 1 | 0 | 0.00% | 322 | 491 |
| "Hawkins" | 639028 - 001 | Dewayr, Matthew | 23 | 0.04% | 63 | 0 | 0 | 0.00% | 23 | 63 |
| "hooked" | 639028 - 001 | Dewayr, Matthew | 8 | 0.01% | 16 | 0 | 0 | 0.00% | 8 | 16 |
| "HR risk" | 639028 - 001 | Dewayr, Matthew | 212 | 0.36% | 528 | 0 | 0 | 0.00% | 212 | 528 |
| "illegal" | 639028 - 001 | Dewayr, Matthew | 337 | 0.58% | 735 | 3 | 0 | 0.00% | 334 | 735 |
| "inappropriat" | 639028 - 001 | Dewayr, Matthew | 154 | 0.26% | 398 | 1 | 1 | 0.40% | 153 | 397 |
| "investigat" | 639028 - 001 | Dewayr, Matthew | 904 | 1.54% | 1,721 | 0 | 0 | 0.00% | 904 | 1,721 |
| "Jake" | 639028 - 001 | Dewayr, Matthew | 2,630 | 4.49% | 3,727 | 9 | 3 | 1.19% | 2,621 | 3,724 |
| "kill" | 639028 - 001 | Dewayr, Matthew | 44 | 0.08% | 61 | 0 | 0 | 0.00% | 44 | 61 |
| "lawsuit" | 639028 - 001 | Dewayr, Matthew | 385 | 0.66% | 856 | 0 | 0 | 0.00% | 385 | 856 |
| "lol" | 639028 - 001 | Dewayr, Matthew | 59 | 0.10% | 70 | 2 | 0 | 0.00% | 57 | 70 |
| "love" | 639028 - 001 | Dewayr, Matthew | 399 | 0.68% | 721 | 4 | 4 | 1.59% | 395 | 717 |
| "NPP" | 639028 - 001 | Dewayr, Matthew | 198 | 0.34% | 327 | 0 | 0 | 0.00% | 198 | 327 |
| "naked" | 639028 - 001 | Dewayr, Matthew | 19 | 0.03% | 263 | 0 | 0 | 0.00% | 19 | 263 |
| "Nui" | 639028 - 001 | Dewayr, Matthew | 2,598 | 4.44% | 3,604 | 0 | 0 | 0.00% | 2,598 | 3,604 |
| "nude" | 639028 - 001 | Dewayr, Matthew | 32 | 0.05% | 263 | 0 | 0 | 0.00% | 32 | 263 |
| "OP" | 639028 - 001 | Dewayr, Matthew | 4,505 | 7.69% | 4,998 | 632 | 233 | 92.46% | 3,873 | 4,465 |
| "onlyfans" | 639028 - 001 | Dewayr, Matthew | 3 | 0.01% | 6 | 0 | 0 | 0.00% | 3 | 6 |
| "photo" | 639028 - 001 | Dewayr, Matthew | 176 | 0.30% | 743 | 0 | 0 | 0.00% | 176 | 743 |
| "pic" | 639028 - 001 | Dewayr, Matthew | 519 | 0.89% | 1,321 | 2 | 0 | 0.00% | 517 | 1,321 |
| "profile" | 639028 - 001 | Dewayr, Matthew | 217 | 0.37% | 855 | 0 | 0 | 0.00% | 217 | 855 |
| "pues" | 639028 - 001 | Dewayr, Matthew | 3 | 0.01% | 6 | 0 | 0 | 0.00% | 3 | 6 |
| "retaliat" | 639028 - 001 | Dewayr, Matthew | 407 | 0.70% | 990 | 1 | 0 | 0.00% | 406 | 990 |
| "roman" | 639028 - 001 | Dewayr, Matthew | 53 | 0.09% | 119 | 0 | 0 | 0.00% | 53 | 119 |
| "sensitiv" | 639028 - 001 | Dewayr, Matthew | 424 | 0.72% | 879 | 2 | 2 | 0.79% | 422 | 877 |
| "settle" | 639028 - 001 | Dewayr, Matthew | 589 | 1.01% | 1,070 | 0 | 0 | 0.00% | 589 | 1,070 |
| "sever" | 639028 - 001 | Dewayr, Matthew | 706 | 1.21% | 1,506 | 0 | 0 | 0.00% | 706 | 1,506 |
| "sex" | 639028 - 001 | Dewayr, Matthew | 314 | 0.54% | 894 | 2 | 0 | 0.00% | 312 | 894 |
| "showing" | 639028 - 001 | Dewayr, Matthew | 281 | 0.48% | 1,039 | 0 | 0 | 0.00% | 281 | 1,039 |
| "suit" | 639028 - 001 | Dewayr, Matthew | 226 | 0.39% | 417 | 0 | 0 | 0.00% | 226 | 417 |
| "suspend" | 639028 - 001 | Dewayr, Matthew | 58 | 0.10% | 334 | 0 | 0 | 0.00% | 58 | 334 |
| "terminat" | 639028 - 001 | Dewayr, Matthew | 718 | 1.23% | 1,629 | 0 | 0 | 0.00% | 718 | 1,629 |
| "tit" | 639028 - 001 | Dewayr, Matthew | 619 | 1.06% | 1,503 | 0 | 0 | 0.00% | 619 | 1,503 |
| "unwant" | 639028 - 001 | Dewayr, Matthew | 30 | 0.05% | 269 | 0 | 0 | 0.00% | 30 | 269 |
| "vegas" | 639028 - 001 | Dewayr, Matthew | 148 | 0.25% | 676 | 0 | 0 | 0.00% | 148 | 676 |
| "vibe" | 639028 - 001 | Dewayr, Matthew | 32 | 0.05% | 77 | 0 | 0 | 0.00% | 32 | 77 |
| **Total Documents (adjusted for overlap; NOT a sum of above data)** | | | **4,711** | **8.05%** | **4,970** | **686** | **252** | **100.00%** | **4,025** | **4,618** |

| Term | Keyword/Category | Custodian | Document Hits | Hit Rate (%) | Document Hits with Family | Unique Document Hits | Unique Family Hits (Document Count) | %of all Unique Family Hits | Shared Hits (2+ Terms) | Shared Hits (2+ Terms) (Full Family) |
|---|---|---|---|---|---|---|---|---|---|---|
| "Adam" | 639028 - 001 | Fragale, Ashley | 350 | 0.60% | 422 | 0 | 0 | 0.00% | 350 | 422 |
| "Aisha" | 639028 - 001 | Fragale, Ashley | 1 | 0.00% | 4 | 0 | 0 | 0.00% | 1 | 4 |
| "bitch" | 639028 - 001 | Fragale, Ashley | 0 | 0.00% | 0 | 0 | 0 | 0.00% | 0 | 0 |
| "boob" | 639028 - 001 | Fragale, Ashley | 0 | 0.00% | 0 | 0 | 0 | 0.00% | 0 | 0 |
| "breast" | 639028 - 001 | Fragale, Ashley | 12 | 0.02% | 30 | 0 | 0 | 0.00% | 12 | 30 |
| "claim" | 639028 - 001 | Fragale, Ashley | 551 | 0.94% | 947 | 1 | 1 | 0.01% | 550 | 946 |
| "complain" | 639028 - 001 | Fragale, Ashley | 355 | 0.61% | 687 | 0 | 0 | 0.00% | 355 | 687 |
| "crazy" | 639028 - 001 | Fragale, Ashley | 27 | 0.05% | 30 | 0 | 0 | 0.00% | 27 | 30 |
| "cunt" | 639028 - 001 | Fragale, Ashley | 0 | 0.00% | 0 | 0 | 0 | 0.00% | 0 | 0 |
| "date" | 639028 - 001 | Fragale, Ashley | 3,337 | 5.70% | 4,771 | 8 | 3 | 0.03% | 3,329 | 4,768 |
| "dating" | 639028 - 001 | Fragale, Ashley | 4 | 0.01% | 7 | 0 | 0 | 0.00% | 4 | 7 |
| "dick" | 639028 - 001 | Fragale, Ashley | 13 | 0.02% | 38 | 0 | 0 | 0.00% | 13 | 38 |
| "doucher" | 639028 - 001 | Fragale, Ashley | 0 | 0.00% | 0 | 0 | 0 | 0.00% | 0 | 0 |
| "drank" | 639028 - 001 | Fragale, Ashley | 0 | 0.00% | 0 | 0 | 0 | 0.00% | 0 | 0 |
| "drunk" | 639028 - 001 | Fragale, Ashley | 1 | 0.00% | 1 | 0 | 0 | 0.00% | 1 | 1 |
| "fire" | 639028 - 001 | Fragale, Ashley | 263 | 0.45% | 430 | 1 | 1 | 0.01% | 262 | 429 |
| "fuck" | 639028 - 001 | Fragale, Ashley | 2 | 0.00% | 2 | 0 | 0 | 0.00% | 2 | 2 |
| "harass" | 639028 - 001 | Fragale, Ashley | 119 | 0.20% | 212 | 0 | 0 | 0.00% | 119 | 212 |
| "Hawkins" | 639028 - 001 | Fragale, Ashley | 18 | 0.03% | 21 | 0 | 0 | 0.00% | 18 | 21 |
| "hooked" | 639028 - 001 | Fragale, Ashley | 1 | 0.00% | 2 | 0 | 0 | 0.00% | 1 | 2 |
| "HR risk" | 639028 - 001 | Fragale, Ashley | 0 | 0.00% | 0 | 0 | 0 | 0.00% | 0 | 0 |
| "illegal" | 639028 - 001 | Fragale, Ashley | 197 | 0.34% | 366 | 0 | 0 | 0.00% | 197 | 366 |
| "inappropriat" | 639028 - 001 | Fragale, Ashley | 19 | 0.03% | 41 | 0 | 0 | 0.00% | 19 | 41 |
| "islam" | 639028 - 001 | Fragale, Ashley | 206 | 0.35% | 273 | 0 | 0 | 0.00% | 206 | 273 |
| "investigat" | 639028 - 001 | Fragale, Ashley | 367 | 0.63% | 677 | 0 | 0 | 0.00% | 367 | 677 |
| "Jake" | 639028 - 001 | Fragale, Ashley | 3,817 | 6.52% | 4,296 | 510 | 510 | 4.83% | 3,307 | 3,786 |
| "kill" | 639028 - 001 | Fragale, Ashley | 46 | 0.08% | 70 | 0 | 0 | 0.00% | 46 | 70 |
| "lawsuit" | 639028 - 001 | Fragale, Ashley | 155 | 0.26% | 299 | 0 | 0 | 0.00% | 155 | 299 |
| "lol" | 639028 - 001 | Fragale, Ashley | 321 | 0.55% | 358 | 0 | 0 | 0.00% | 321 | 358 |
| "love" | 639028 - 001 | Fragale, Ashley | 1,006 | 1.72% | 1,199 | 3 | 3 | 0.03% | 1,005 | 1,196 |
| "NPP" | 639028 - 001 | Fragale, Ashley | 5 | 0.01% | 5 | 0 | 0 | 0.00% | 5 | 5 |
| "naked" | 639028 - 001 | Fragale, Ashley | 4 | 0.01% | 5 | 0 | 0 | 0.00% | 4 | 5 |
| "Nui" | 639028 - 001 | Fragale, Ashley | 2,888 | 4.93% | 3,293 | 3 | 4 | 0.04% | 2,885 | 3,289 |
| "nude" | 639028 - 001 | Fragale, Ashley | 1 | 0.00% | 2 | 0 | 0 | 0.00% | 1 | 2 |
| "OP" | 639028 - 001 | Fragale, Ashley | 19,455 | 33.23% | 19,500 | 11,284 | 10,021 | 94.87% | 8,171 | 9,479 |
| "onlyfans" | 639028 - 001 | Fragale, Ashley | 0 | 0.00% | 0 | 0 | 0 | 0.00% | 0 | 0 |
| "photo" | 639028 - 001 | Fragale, Ashley | 96 | 0.17% | 181 | 1 | 1 | 0.01% | 97 | 180 |
| "pic" | 639028 - 001 | Fragale, Ashley | 746 | 1.27% | 1,075 | 2 | 0 | 0.15% | 744 | 1,075 |
| "profile" | 639028 - 001 | Fragale, Ashley | 911 | 1.56% | 1,201 | 16 | 16 | 0.15% | 895 | 1,185 |
| "pues" | 639028 - 001 | Fragale, Ashley | 0 | 0.00% | 0 | 0 | 0 | 0.00% | 0 | 0 |
| "retaliat" | 639028 - 001 | Fragale, Ashley | 215 | 0.37% | 414 | 0 | 0 | 0.00% | 215 | 414 |
| "roman" | 639028 - 001 | Fragale, Ashley | 16 | 0.03% | 27 | 0 | 0 | 0.00% | 16 | 27 |
| "sensitiv" | 639028 - 001 | Fragale, Ashley | 188 | 0.32% | 317 | 0 | 0 | 0.00% | 188 | 317 |
| "settle" | 639028 - 001 | Fragale, Ashley | 145 | 0.25% | 292 | 0 | 0 | 0.00% | 145 | 292 |
| "sever" | 639028 - 001 | Fragale, Ashley | 477 | 0.81% | 856 | 0 | 0 | 0.00% | 477 | 856 |
| "sex" | 639028 - 001 | Fragale, Ashley | 140 | 0.24% | 303 | 0 | 0 | 0.00% | 140 | 303 |
| "showing" | 639028 - 001 | Fragale, Ashley | 417 | 0.71% | 657 | 0 | 0 | 0.00% | 417 | 657 |
| "suit" | 639028 - 001 | Fragale, Ashley | 46 | 0.08% | 110 | 0 | 0 | 0.00% | 46 | 110 |
| "suspend" | 639028 - 001 | Fragale, Ashley | 49 | 0.08% | 72 | 0 | 0 | 0.00% | 49 | 72 |
| "terminat" | 639028 - 001 | Fragale, Ashley | 714 | 1.22% | 1,114 | 4 | 2 | 0.02% | 710 | 1,112 |
| "tit" | 639028 - 001 | Fragale, Ashley | 955 | 1.63% | 1,471 | 0 | 0 | 0.00% | 955 | 1,471 |



**Nebula Cull Extended Search Report**
Executed at 10/1/2025 9:07:12 PM

| Term | KeywordCategory | Custodian | Document Hits | Hit Rate (%) | Document Hits with Family | Unique Document Hits | Unique Family Hits (Document Count) | % of all Unique Family Hits | Shared Hits (2+ Terms) | Shared Hits (2+ Terms) (Full Family) |
|---|---|---|---|---|---|---|---|---|---|---|
| "unwant"* | 639028 - 001 | Fragale, Ashley | 9 | 0.02% | 19 | 0 | 0 | 0.00% | 9 | 19 |
| "segual" | 639028 - 001 | Fragale, Ashley | 36 | 0.06% | 47 | 0 | 0 | 0.00% | 36 | 47 |
| "vibe" | 639028 - 001 | Fragale, Ashley | 23 | 0.04% | 36 | 0 | 0 | 0.00% | 23 | 36 |
| **Total Documents (adjusted for overlap; NOT a sum of above data)** | | | **20,113** | **34.35%** | **20,136** | **11,834** | **18,863** | **100.00%** | **6,279** | **9,573** |

| Term | KeywordCategory | Custodian | Document Hits | Hit Rate (%) | Document Hits with Family | Unique Document Hits | Unique Family Hits (Document Count) | % of all Unique Family Hits | Shared Hits (2+ Terms) | Shared Hits (2+ Terms) (Full Family) |
|---|---|---|---|---|---|---|---|---|---|---|
| "Adam"* | 639028 - 001 | Gross, Chad | 45 | 0.08% | 56 | 0 | 0 | 0.00% | 45 | 56 |
| "Aloha" | 639028 - 001 | Gross, Chad | 0 | 0.00% | 0 | 0 | 0 | 0.00% | 0 | 0 |
| "bitch"* | 639028 - 001 | Gross, Chad | 0 | 0.00% | 0 | 0 | 0 | 0.00% | 0 | 0 |
| "boob"* | 639028 - 001 | Gross, Chad | 0 | 0.00% | 0 | 0 | 0 | 0.00% | 0 | 0 |
| "breast"* | 639028 - 001 | Gross, Chad | 0 | 0.00% | 0 | 0 | 0 | 0.00% | 0 | 0 |
| "claim"* | 639028 - 001 | Gross, Chad | 36 | 0.06% | 235 | 0 | 0 | 0.00% | 36 | 235 |
| "complain"* | 639028 - 001 | Gross, Chad | 66 | 0.11% | 324 | 0 | 0 | 0.00% | 66 | 324 |
| "crazy" | 639028 - 001 | Gross, Chad | 10 | 0.02% | 10 | 0 | 0 | 0.00% | 10 | 10 |
| "cunt"* | 639028 - 001 | Gross, Chad | 0 | 0.00% | 0 | 0 | 0 | 0.00% | 0 | 0 |
| "date" | 639028 - 001 | Gross, Chad | 609 | 1.04% | 900 | 0 | 0 | 0.00% | 609 | 900 |
| "dating" | 639028 - 001 | Gross, Chad | 12 | 0.02% | 18 | 0 | 0 | 0.00% | 12 | 18 |
| "dick"* | 639028 - 001 | Gross, Chad | 0 | 0.00% | 0 | 0 | 0 | 0.00% | 0 | 0 |
| "douche"* | 639028 - 001 | Gross, Chad | 0 | 0.00% | 0 | 0 | 0 | 0.00% | 0 | 0 |
| "drank" | 639028 - 001 | Gross, Chad | 0 | 0.00% | 0 | 0 | 0 | 0.00% | 0 | 0 |
| "drunk" | 639028 - 001 | Gross, Chad | 0 | 0.00% | 0 | 0 | 0 | 0.00% | 0 | 0 |
| "fire" | 639028 - 001 | Gross, Chad | 95 | 0.16% | 316 | 0 | 0 | 0.00% | 95 | 316 |
| "fuck"* | 639028 - 001 | Gross, Chad | 0 | 0.00% | 0 | 0 | 0 | 0.00% | 0 | 0 |
| "harass"* | 639028 - 001 | Gross, Chad | 2 | 0.00% | 12 | 0 | 0 | 0.00% | 2 | 12 |
| "Hawkins" | 639028 - 001 | Gross, Chad | 0 | 0.00% | 0 | 0 | 0 | 0.00% | 0 | 0 |
| "hooked" | 639028 - 001 | Gross, Chad | 0 | 0.00% | 0 | 0 | 0 | 0.00% | 0 | 0 |
| "HR risk" | 639028 - 001 | Gross, Chad | 0 | 0.00% | 0 | 0 | 0 | 0.00% | 0 | 0 |
| "illegal"* | 639028 - 001 | Gross, Chad | 54 | 0.09% | 296 | 0 | 0 | 0.00% | 54 | 296 |
| "inappropriat"* | 639028 - 001 | Gross, Chad | 10 | 0.02% | 47 | 0 | 0 | 0.00% | 10 | 47 |
| "intern" | 639028 - 001 | Gross, Chad | 12 | 0.02% | 31 | 0 | 0 | 0.00% | 12 | 31 |
| "investigat"* | 639028 - 001 | Gross, Chad | 71 | 0.12% | 347 | 0 | 0 | 0.00% | 71 | 347 |
| "Jake" | 639028 - 001 | Gross, Chad | 231 | 0.39% | 425 | 0 | 0 | 0.00% | 231 | 425 |
| "kill"* | 639028 - 001 | Gross, Chad | 6 | 0.01% | 10 | 0 | 0 | 0.00% | 6 | 10 |
| "lawsuit" | 639028 - 001 | Gross, Chad | 1 | 0.00% | 1 | 0 | 0 | 0.00% | 1 | 1 |
| "lol" | 639028 - 001 | Gross, Chad | 3 | 0.01% | 7 | 0 | 0 | 0.00% | 3 | 7 |
| "love" | 639028 - 001 | Gross, Chad | 126 | 0.22% | 157 | 0 | 0 | 0.00% | 126 | 157 |
| "MPH" | 639028 - 001 | Gross, Chad | 0 | 0.00% | 0 | 0 | 0 | 0.00% | 0 | 0 |
| "naked"* | 639028 - 001 | Gross, Chad | 0 | 0.00% | 0 | 0 | 0 | 0.00% | 0 | 0 |
| "Nix" | 639028 - 001 | Gross, Chad | 229 | 0.39% | 411 | 0 | 0 | 0.00% | 229 | 411 |
| "nude"* | 639028 - 001 | Gross, Chad | 0 | 0.00% | 0 | 0 | 0 | 0.00% | 0 | 0 |
| "Off" | 639028 - 001 | Gross, Chad | 1,360 | 2.37% | 1,360 | 468 | 218 | 100.00% | 922 | 1,172 |
| "onlyfans" | 639028 - 001 | Gross, Chad | 0 | 0.00% | 0 | 0 | 0 | 0.00% | 0 | 0 |
| "photo"* | 639028 - 001 | Gross, Chad | 21 | 0.04% | 65 | 0 | 0 | 0.00% | 21 | 65 |
| "pic"* | 639028 - 001 | Gross, Chad | 69 | 0.12% | 96 | 0 | 0 | 0.00% | 69 | 96 |
| "profan"* | 639028 - 001 | Gross, Chad | 37 | 0.06% | 293 | 0 | 0 | 0.00% | 37 | 293 |
| "puss"* | 639028 - 001 | Gross, Chad | 0 | 0.00% | 0 | 0 | 0 | 0.00% | 0 | 0 |
| "retaliat"* | 639028 - 001 | Gross, Chad | 5 | 0.01% | 20 | 0 | 0 | 0.00% | 5 | 20 |
| "roman"* | 639028 - 001 | Gross, Chad | 3 | 0.01% | 4 | 0 | 0 | 0.00% | 3 | 4 |
| "sensitiv"* | 639028 - 001 | Gross, Chad | 87 | 0.15% | 451 | 0 | 0 | 0.00% | 87 | 451 |
| "settle"* | 639028 - 001 | Gross, Chad | 23 | 0.04% | 56 | 0 | 0 | 0.00% | 23 | 56 |
| "sever"* | 639028 - 001 | Gross, Chad | 78 | 0.13% | 408 | 0 | 0 | 0.00% | 78 | 408 |
| "sex"* | 639028 - 001 | Gross, Chad | 8 | 0.01% | 161 | 0 | 0 | 0.00% | 8 | 161 |
| "showing" | 639028 - 001 | Gross, Chad | 31 | 0.05% | 89 | 0 | 0 | 0.00% | 31 | 89 |
| "suit" | 639028 - 001 | Gross, Chad | 45 | 0.09% | 120 | 0 | 0 | 0.00% | 45 | 120 |
| "suspend"* | 639028 - 001 | Gross, Chad | 19 | 0.03% | 44 | 0 | 0 | 0.00% | 19 | 44 |
| "terminat"* | 639028 - 001 | Gross, Chad | 107 | 0.18% | 331 | 0 | 0 | 0.00% | 107 | 331 |
| "tit"* | 639028 - 001 | Gross, Chad | 195 | 0.33% | 482 | 0 | 0 | 0.00% | 195 | 482 |
| "unwant"* | 639028 - 001 | Gross, Chad | 7 | 0.01% | 18 | 0 | 0 | 0.00% | 7 | 18 |
| "segual" | 639028 - 001 | Gross, Chad | 2 | 0.00% | 3 | 0 | 0 | 0.00% | 2 | 3 |
| "vibe" | 639028 - 001 | Gross, Chad | 0 | 0.00% | 0 | 0 | 0 | 0.00% | 0 | 0 |
| **Total Documents (adjusted for overlap; NOT a sum of above data)** | | | **1,395** | **2.38%** | | **460** | **218** | **100.00%** | **927** | **1,177** |

| Term | KeywordCategory | Custodian | Document Hits | Hit Rate (%) | Document Hits with Family | Unique Document Hits | Unique Family Hits (Document Count) | % of all Unique Family Hits | Shared Hits (2+ Terms) | Shared Hits (2+ Terms) (Full Family) |
|---|---|---|---|---|---|---|---|---|---|---|
| "Adam"* | 639028 - 001 | Hibbeler, John | 212 | 0.36% | 230 | 0 | 0 | 0.00% | 212 | 230 |
| "Aloha" | 639028 - 001 | Hibbeler, John | 0 | 0.00% | 0 | 0 | 0 | 0.00% | 0 | 0 |
| "bitch"* | 639028 - 001 | Hibbeler, John | 0 | 0.00% | 0 | 0 | 0 | 0.00% | 0 | 0 |
| "boob"* | 639028 - 001 | Hibbeler, John | 0 | 0.00% | 0 | 0 | 0 | 0.00% | 0 | 0 |
| "breast"* | 639028 - 001 | Hibbeler, John | 0 | 0.00% | 0 | 0 | 0 | 0.00% | 0 | 0 |
| "claim"* | 639028 - 001 | Hibbeler, John | 43 | 0.07% | 56 | 0 | 0 | 0.00% | 43 | 56 |
| "complain"* | 639028 - 001 | Hibbeler, John | 5 | 0.01% | 8 | 0 | 0 | 0.00% | 5 | 8 |
| "crazy" | 639028 - 001 | Hibbeler, John | 0 | 0.00% | 0 | 0 | 0 | 0.00% | 0 | 0 |
| "cunt"* | 639028 - 001 | Hibbeler, John | 0 | 0.00% | 0 | 0 | 0 | 0.00% | 0 | 0 |
| "date" | 639028 - 001 | Hibbeler, John | 133 | 0.23% | 182 | 0 | 0 | 0.00% | 133 | 182 |
| "dating" | 639028 - 001 | Hibbeler, John | 1 | 0.00% | 1 | 0 | 0 | 0.00% | 1 | 1 |
| "dick"* | 639028 - 001 | Hibbeler, John | 0 | 0.00% | 0 | 0 | 0 | 0.00% | 0 | 0 |
| "douche"* | 639028 - 001 | Hibbeler, John | 0 | 0.00% | 0 | 0 | 0 | 0.00% | 0 | 0 |
| "drank" | 639028 - 001 | Hibbeler, John | 0 | 0.00% | 0 | 0 | 0 | 0.00% | 0 | 0 |
| "drunk" | 639028 - 001 | Hibbeler, John | 0 | 0.00% | 0 | 0 | 0 | 0.00% | 0 | 0 |
| "fire" | 639028 - 001 | Hibbeler, John | 8 | 0.01% | 21 | 0 | 0 | 0.00% | 8 | 21 |
| "fuck"* | 639028 - 001 | Hibbeler, John | 0 | 0.00% | 0 | 0 | 0 | 0.00% | 0 | 0 |
| "harass"* | 639028 - 001 | Hibbeler, John | 0 | 0.00% | 0 | 0 | 0 | 0.00% | 0 | 0 |
| "Hawkins" | 639028 - 001 | Hibbeler, John | 0 | 0.00% | 0 | 0 | 0 | 0.00% | 0 | 0 |
| "hooked" | 639028 - 001 | Hibbeler, John | 0 | 0.00% | 0 | 0 | 0 | 0.00% | 0 | 0 |
| "HR risk" | 639028 - 001 | Hibbeler, John | 0 | 0.00% | 0 | 0 | 0 | 0.00% | 0 | 0 |
| "illegal"* | 639028 - 001 | Hibbeler, John | 4 | 0.01% | 9 | 0 | 0 | 0.00% | 4 | 9 |
| "inappropriat"* | 639028 - 001 | Hibbeler, John | 0 | 0.00% | 0 | 0 | 0 | 0.00% | 0 | 0 |
| "intern" | 639028 - 001 | Hibbeler, John | 6 | 0.01% | 14 | 0 | 0 | 0.00% | 6 | 14 |
| "investigat"* | 639028 - 001 | Hibbeler, John | 9 | 0.02% | 10 | 0 | 0 | 0.00% | 9 | 10 |
| "Jake" | 639028 - 001 | Hibbeler, John | 0 | 0.00% | 0 | 0 | 0 | 0.00% | 0 | 0 |
| "kill"* | 639028 - 001 | Hibbeler, John | 0 | 0.00% | 0 | 0 | 0 | 0.00% | 0 | 0 |
| "lawsuit" | 639028 - 001 | Hibbeler, John | 4 | 0.01% | 4 | 0 | 0 | 0.00% | 4 | 4 |
| "lol" | 639028 - 001 | Hibbeler, John | 124 | 0.21% | 143 | 0 | 0 | 0.00% | 124 | 143 |
| "love" | 639028 - 001 | Hibbeler, John | 0 | 0.00% | 0 | 0 | 0 | 0.00% | 0 | 0 |
| "MPH" | 639028 - 001 | Hibbeler, John | 590 | 1.01% | 641 | 0 | 0 | 0.00% | 590 | 641 |
| "naked"* | 639028 - 001 | Hibbeler, John | 0 | 0.00% | 0 | 0 | 0 | 0.00% | 0 | 0 |
| "Nix" | 639028 - 001 | Hibbeler, John | 680 | 1.16% | 882 | 149 | 104 | 100.00% | 531 | 578 |
| "nude"* | 639028 - 001 | Hibbeler, John | 0 | 0.00% | 0 | 0 | 0 | 0.00% | 0 | 0 |
| "Off" | 639028 - 001 | Hibbeler, John | 1 | 0.00% | 1 | 0 | 0 | 0.00% | 1 | 1 |
| "onlyfans" | 639028 - 001 | Hibbeler, John | 12 | 0.02% | 15 | 0 | 0 | 0.00% | 12 | 15 |
| "photo"* | 639028 - 001 | Hibbeler, John | 9 | 0.02% | 15 | 0 | 0 | 0.00% | 9 | 15 |
| "pic"* | 639028 - 001 | Hibbeler, John | 0 | 0.00% | 0 | 0 | 0 | 0.00% | 0 | 0 |
| "profan"* | 639028 - 001 | Hibbeler, John | 13 | 0.02% | 14 | 0 | 0 | 0.00% | 13 | 14 |
| "puss"* | 639028 - 001 | Hibbeler, John | 27 | 0.05% | 31 | 0 | 0 | 0.00% | 27 | 31 |
| "retaliat"* | 639028 - 001 | Hibbeler, John | 9 | 0.02% | 16 | 0 | 0 | 0.00% | 9 | 16 |
| "roman"* | 639028 - 001 | Hibbeler, John | 11 | 0.02% | 21 | 0 | 0 | 0.00% | 11 | 21 |
| "sensitiv"* | 639028 - 001 | Hibbeler, John | 3 | 0.01% | 5 | 0 | 0 | 0.00% | 3 | 5 |
| "settle"* | 639028 - 001 | Hibbeler, John | 1 | 0.00% | 4 | 0 | 0 | 0.00% | 1 | 4 |
| "sever"* | 639028 - 001 | Hibbeler, John | 8 | 0.01% | 17 | 0 | 0 | 0.00% | 8 | 17 |
| "sex"* | 639028 - 001 | Hibbeler, John | 5 | 0.01% | 9 | 0 | 0 | 0.00% | 5 | 9 |
| "showing" | 639028 - 001 | Hibbeler, John | 7 | 0.01% | 17 | 0 | 0 | 0.00% | 7 | 17 |
| "suit" | 639028 - 001 | Hibbeler, John | 37 | 0.06% | 94 | 0 | 0 | 0.00% | 37 | 94 |
| "suspend"* | 639028 - 001 | Hibbeler, John | 0 | 0.00% | 0 | 0 | 0 | 0.00% | 0 | 0 |
| "terminat"* | 639028 - 001 | Hibbeler, John | 1 | 0.00% | 2 | 0 | 0 | 0.00% | 1 | 2 |
| "segual" | 639028 - 001 | Hibbeler, John | 0 | 0.00% | 0 | 0 | 0 | 0.00% | 0 | 0 |
| **Total Documents (adjusted for overlap; NOT a sum of above data)** | | | **948** | **1.45%** | | **853** | **149** | **104** | **100.00%** | **697** | **749** |

| Term | KeywordCategory | Custodian | Document Hits | Hit Rate (%) | Document Hits with Family | Unique Document Hits | Unique Family Hits (Document Count) | % of all Unique Family Hits | Shared Hits (2+ Terms) | Shared Hits (2+ Terms) (Full Family) |
|---|---|---|---|---|---|---|---|---|---|---|
| "Adam"* | 639028 - 001 | Laurence, Allison | 41 | 0.07% | 50 | 0 | 0 | 0.00% | 41 | 50 |
| "Aloha" | 639028 - 001 | Laurence, Allison | 7 | 0.01% | 7 | 0 | 0 | 0.00% | 7 | 7 |
| "bitch"* | 639028 - 001 | Laurence, Allison | 0 | 0.00% | 0 | 0 | 0 | 0.00% | 0 | 0 |
| "boob"* | 639028 - 001 | Laurence, Allison | 0 | 0.00% | 0 | 0 | 0 | 0.00% | 0 | 0 |
| "breast"* | 639028 - 001 | Laurence, Allison | 0 | 0.00% | 0 | 0 | 0 | 0.00% | 0 | 0 |
| "claim"* | 639028 - 001 | Laurence, Allison | 16 | 0.03% | 24 | 0 | 0 | 0.00% | 16 | 24 |
| "complain"* | 639028 - 001 | Laurence, Allison | 12 | 0.02% | 19 | 0 | 0 | 0.00% | 12 | 19 |
| "crazy" | 639028 - 001 | Laurence, Allison | 13 | 0.02% | 14 | 0 | 0 | 0.00% | 13 | 14 |
| "cunt"* | 639028 - 001 | Laurence, Allison | 0 | 0.00% | 0 | 0 | 0 | 0.00% | 0 | 0 |
| "date" | 639028 - 001 | Laurence, Allison | 125 | 0.21% | 149 | 0 | 0 | 0.00% | 125 | 149 |
| "dating" | 639028 - 001 | Laurence, Allison | 0 | 0.00% | 0 | 0 | 0 | 0.00% | 0 | 0 |
| "dick"* | 639028 - 001 | Laurence, Allison | 0 | 0.00% | 0 | 0 | 0 | 0.00% | 0 | 0 |
| "douche"* | 639028 - 001 | Laurence, Allison | 0 | 0.00% | 0 | 0 | 0 | 0.00% | 0 | 0 |
| "drank" | 639028 - 001 | Laurence, Allison | 0 | 0.00% | 0 | 0 | 0 | 0.00% | 0 | 0 |
| "drunk" | 639028 - 001 | Laurence, Allison | 0 | 0.00% | 0 | 0 | 0 | 0.00% | 0 | 0 |
| "fire" | 639028 - 001 | Laurence, Allison | 28 | 0.05% | 34 | 0 | 0 | 0.00% | 28 | 34 |
| "fuck"* | 639028 - 001 | Laurence, Allison | 0 | 0.00% | 0 | 0 | 0 | 0.00% | 0 | 0 |
| "harass"* | 639028 - 001 | Laurence, Allison | 9 | 0.02% | 7 | 0 | 0 | 0.00% | 9 | 7 |
| "Hawkins" | 639028 - 001 | Laurence, Allison | 7 | 0.01% | 7 | 0 | 0 | 0.00% | 7 | 7 |
| "hooked" | 639028 - 001 | Laurence, Allison | 0 | 0.00% | 0 | 0 | 0 | 0.00% | 0 | 0 |
| "HR risk" | 639028 - 001 | Laurence, Allison | 0 | 0.00% | 0 | 0 | 0 | 0.00% | 0 | 0 |

**KLDiscovery**

Nebula Cull Extended Search Report
Executed at 10/1/2025 9:07:12 PM

| Term | KeywordCategory | Custodian | Document Hits | Hit Rate (%) | Document Hits with Family | Unique Document Hits | Unique Family Hits (Document Count) | % of all Unique Family Hits | Shared Hits (2+ Terms) | Shared Hits (2+ Terms) (Full Family) |
|---|---|---|---|---|---|---|---|---|---|---|
| "illegal*" | 639028 - 001 | Laurence, Allison | 4 | 0.01% | 8 | 0 | 0 | 0.00% | 4 | 8 |
| "inappropriat*" | 639028 - 001 | Laurence, Allison | 8 | 0.01% | 8 | 0 | 0 | 0.00% | 8 | 8 |
| "intern*" | 639028 - 001 | Laurence, Allison | 12 | 0.02% | 12 | 0 | 0 | 0.00% | 12 | 12 |
| "investigat*" | 639028 - 001 | Laurence, Allison | 28 | 0.05% | 36 | 0 | 0 | 0.00% | 28 | 36 |
| "Jake" | 639028 - 001 | Laurence, Allison | 236 | 0.40% | 264 | 0 | 0 | 0.00% | 236 | 264 |
| "kill*" | 639028 - 001 | Laurence, Allison | 12 | 0.02% | 12 | 0 | 0 | 0.00% | 12 | 12 |
| "lawsuit" | 639028 - 001 | Laurence, Allison | 7 | 0.01% | 9 | 0 | 0 | 0.00% | 7 | 9 |
| "lol" | 639028 - 001 | Laurence, Allison | 32 | 0.05% | 33 | 0 | 0 | 0.00% | 32 | 33 |
| "love*" | 639028 - 001 | Laurence, Allison | 39 | 0.07% | 39 | 0 | 0 | 0.00% | 39 | 39 |
| "NPY*" | 639028 - 001 | Laurence, Allison | 0 | 0.00% | 0 | 0 | 0 | 0.00% | 0 | 0 |
| "naked*" | 639028 - 001 | Laurence, Allison | 0 | 0.00% | 0 | 0 | 0 | 0.00% | 0 | 0 |
| "Nix*" | 639028 - 001 | Laurence, Allison | 182 | 0.31% | 204 | 0 | 0 | 0.00% | 182 | 204 |
| "nude*" | 639028 - 001 | Laurence, Allison | 0 | 0.00% | 0 | 0 | 0 | 0.00% | 0 | 0 |
| "Off*" | 639028 - 001 | Laurence, Allison | 399 | 0.68% | 428 | 192 | 171 | 100.00% | 407 | 428 |
| "onlyfans" | 639028 - 001 | Laurence, Allison | 0 | 0.00% | 0 | 0 | 0 | 0.00% | 0 | 0 |
| "photo*" | 639028 - 001 | Laurence, Allison | 0 | 0.00% | 0 | 0 | 0 | 0.00% | 0 | 0 |
| "pic*" | 639028 - 001 | Laurence, Allison | 26 | 0.04% | 35 | 0 | 0 | 0.00% | 26 | 35 |
| "profile*" | 639028 - 001 | Laurence, Allison | 16 | 0.03% | 27 | 0 | 0 | 0.00% | 16 | 27 |
| "puss*" | 639028 - 001 | Laurence, Allison | 0 | 0.00% | 0 | 0 | 0 | 0.00% | 0 | 0 |
| "retaliat*" | 639028 - 001 | Laurence, Allison | 13 | 0.02% | 16 | 0 | 0 | 0.00% | 13 | 16 |
| "roman*" | 639028 - 001 | Laurence, Allison | 0 | 0.00% | 0 | 0 | 0 | 0.00% | 0 | 0 |
| "sensitiv*" | 639028 - 001 | Laurence, Allison | 6 | 0.01% | 8 | 0 | 0 | 0.00% | 6 | 8 |
| "settle*" | 639028 - 001 | Laurence, Allison | 3 | 0.01% | 8 | 0 | 0 | 0.00% | 3 | 8 |
| "sever*" | 639028 - 001 | Laurence, Allison | 22 | 0.04% | 27 | 0 | 0 | 0.00% | 22 | 27 |
| "sex*" | 639028 - 001 | Laurence, Allison | 8 | 0.01% | 9 | 0 | 0 | 0.00% | 8 | 9 |
| "showing" | 639028 - 001 | Laurence, Allison | 7 | 0.01% | 15 | 0 | 0 | 0.00% | 7 | 15 |
| "suit" | 639028 - 001 | Laurence, Allison | 8 | 0.01% | 14 | 0 | 0 | 0.00% | 8 | 14 |
| "suspend*" | 639028 - 001 | Laurence, Allison | 0 | 0.00% | 0 | 0 | 0 | 0.00% | 0 | 0 |
| "terminat*" | 639028 - 001 | Laurence, Allison | 46 | 0.08% | 63 | 0 | 0 | 0.00% | 46 | 63 |
| "tit*" | 639028 - 001 | Laurence, Allison | 11 | 0.02% | 18 | 0 | 0 | 0.00% | 11 | 18 |
| "unwant*" | 639028 - 001 | Laurence, Allison | 0 | 0.00% | 0 | 0 | 0 | 0.00% | 0 | 0 |
| "vegas" | 639028 - 001 | Laurence, Allison | 0 | 0.00% | 0 | 0 | 0 | 0.00% | 0 | 0 |
| "vibe" | 639028 - 001 | Laurence, Allison | 0 | 0.00% | 0 | 0 | 0 | 0.00% | 0 | 0 |
| **Total Documents (adjusted for overlap; NOT a sum of above data)** | | | **599** | **1.02%** | **599** | **192** | **171** | **100.00%** | **407** | **428** |

| Term | KeywordCategory | Custodian | Document Hits | Hit Rate (%) | Document Hits with Family | Unique Document Hits | Unique Family Hits (Document Count) | % of all Unique Family Hits | Shared Hits (2+ Terms) | Shared Hits (2+ Terms) (Full Family) |
|---|---|---|---|---|---|---|---|---|---|---|
| "Adam" | 639028 - 001 | McCartney, Ryan | 162 | 0.28% | 345 | 1 | 1 | 0.08% | 162 | 345 |
| "Aisha" | 639028 - 001 | McCartney, Ryan | 0 | 0.00% | 0 | 0 | 0 | 0.00% | 0 | 0 |
| "bitch*" | 639028 - 001 | McCartney, Ryan | 5 | 0.01% | 5 | 0 | 0 | 0.00% | 5 | 5 |
| "boob*" | 639028 - 001 | McCartney, Ryan | 1 | 0.00% | 2 | 0 | 0 | 0.00% | 1 | 2 |
| "breast*" | 639028 - 001 | McCartney, Ryan | 12 | 0.02% | 85 | 0 | 0 | 0.00% | 12 | 85 |
| "claim*" | 639028 - 001 | McCartney, Ryan | 112 | 0.19% | 541 | 0 | 0 | 0.00% | 112 | 541 |
| "complain*" | 639028 - 001 | McCartney, Ryan | 51 | 0.09% | 179 | 0 | 0 | 0.00% | 51 | 179 |
| "crazy" | 639028 - 001 | McCartney, Ryan | 2 | 0.00% | 3 | 0 | 0 | 0.00% | 2 | 3 |
| "cunt*" | 639028 - 001 | McCartney, Ryan | 0 | 0.00% | 0 | 0 | 0 | 0.00% | 0 | 0 |
| "date" | 639028 - 001 | McCartney, Ryan | 1,547 | 2.64% | 2,083 | 1 | 1 | 0.08% | 1,546 | 2,082 |
| "dating" | 639028 - 001 | McCartney, Ryan | 4 | 0.01% | 36 | 0 | 0 | 0.00% | 4 | 36 |
| "dick*" | 639028 - 001 | McCartney, Ryan | 5 | 0.01% | 83 | 0 | 0 | 0.00% | 5 | 83 |
| "douche*" | 639028 - 001 | McCartney, Ryan | 0 | 0.00% | 0 | 0 | 0 | 0.00% | 0 | 0 |
| "drank" | 639028 - 001 | McCartney, Ryan | 0 | 0.00% | 0 | 0 | 0 | 0.00% | 0 | 0 |
| "drunk" | 639028 - 001 | McCartney, Ryan | 0 | 0.00% | 0 | 0 | 0 | 0.00% | 0 | 0 |
| "fire*" | 639028 - 001 | McCartney, Ryan | 338 | 0.58% | 897 | 0 | 0 | 0.00% | 338 | 897 |
| "fuck*" | 639028 - 001 | McCartney, Ryan | 0 | 0.00% | 0 | 0 | 0 | 0.00% | 0 | 0 |
| "harass*" | 639028 - 001 | McCartney, Ryan | 6 | 0.01% | 39 | 0 | 0 | 0.00% | 6 | 39 |
| "Hawkins" | 639028 - 001 | McCartney, Ryan | 0 | 0.00% | 0 | 0 | 0 | 0.00% | 0 | 0 |
| "hooked" | 639028 - 001 | McCartney, Ryan | 0 | 0.00% | 0 | 0 | 0 | 0.00% | 0 | 0 |
| "HR nix*" | 639028 - 001 | McCartney, Ryan | 1 | 0.00% | 4 | 0 | 0 | 0.00% | 1 | 4 |
| "illegal*" | 639028 - 001 | McCartney, Ryan | 37 | 0.06% | 494 | 0 | 0 | 0.00% | 37 | 494 |
| "inappropriat*" | 639028 - 001 | McCartney, Ryan | 107 | 0.18% | 571 | 0 | 0 | 0.00% | 107 | 571 |
| "intern*" | 639028 - 001 | McCartney, Ryan | 18 | 0.03% | 96 | 0 | 0 | 0.00% | 18 | 96 |
| "investigat*" | 639028 - 001 | McCartney, Ryan | 314 | 0.54% | 859 | 0 | 0 | 0.00% | 314 | 859 |
| "Jake" | 639028 - 001 | McCartney, Ryan | 1,016 | 1.74% | 1,309 | 1 | 1 | 0.08% | 1,017 | 1,308 |
| "kill*" | 639028 - 001 | McCartney, Ryan | 51 | 0.09% | 384 | 0 | 0 | 0.00% | 51 | 384 |
| "lawsuit" | 639028 - 001 | McCartney, Ryan | 3 | 0.01% | 7 | 0 | 0 | 0.00% | 3 | 7 |
| "lol" | 639028 - 001 | McCartney, Ryan | 99 | 0.17% | 99 | 0 | 0 | 0.00% | 99 | 99 |
| "love*" | 639028 - 001 | McCartney, Ryan | 226 | 0.39% | 341 | 0 | 0 | 0.00% | 226 | 341 |
| "NPY*" | 639028 - 001 | McCartney, Ryan | 21 | 0.04% | 113 | 0 | 0 | 0.00% | 21 | 113 |
| "naked*" | 639028 - 001 | McCartney, Ryan | 0 | 0.00% | 0 | 0 | 0 | 0.00% | 0 | 0 |
| "Nix*" | 639028 - 001 | McCartney, Ryan | 988 | 1.69% | 1,378 | 0 | 0 | 0.00% | 988 | 1,378 |
| "nude*" | 639028 - 001 | McCartney, Ryan | 0 | 0.00% | 0 | 0 | 0 | 0.00% | 0 | 0 |
| "Off*" | 639028 - 001 | McCartney, Ryan | 4,336 | 7.41% | 4,336 | 1,626 | 1,195 | 99.75% | 2,710 | 3,141 |
| "onlyfans" | 639028 - 001 | McCartney, Ryan | 0 | 0.00% | 0 | 0 | 0 | 0.00% | 0 | 0 |
| "photo*" | 639028 - 001 | McCartney, Ryan | 68 | 0.12% | 510 | 0 | 0 | 0.00% | 68 | 510 |
| "pic*" | 639028 - 001 | McCartney, Ryan | 192 | 0.33% | 594 | 0 | 0 | 0.00% | 192 | 594 |
| "profile*" | 639028 - 001 | McCartney, Ryan | 241 | 0.41% | 777 | 0 | 0 | 0.00% | 241 | 777 |
| "puss*" | 639028 - 001 | McCartney, Ryan | 0 | 0.00% | 0 | 0 | 0 | 0.00% | 0 | 0 |
| "retaliat*" | 639028 - 001 | McCartney, Ryan | 2 | 0.00% | 7 | 0 | 0 | 0.00% | 2 | 7 |
| "roman*" | 639028 - 001 | McCartney, Ryan | 29 | 0.05% | 147 | 0 | 0 | 0.00% | 29 | 147 |
| "sensitiv*" | 639028 - 001 | McCartney, Ryan | 476 | 0.81% | 929 | 0 | 0 | 0.00% | 476 | 929 |
| "settle*" | 639028 - 001 | McCartney, Ryan | 5 | 0.01% | 14 | 0 | 0 | 0.00% | 5 | 14 |
| "sever*" | 639028 - 001 | McCartney, Ryan | 562 | 0.96% | 959 | 0 | 0 | 0.00% | 562 | 959 |
| "sex*" | 639028 - 001 | McCartney, Ryan | 43 | 0.07% | 264 | 0 | 0 | 0.00% | 43 | 264 |
| "showing" | 639028 - 001 | McCartney, Ryan | 146 | 0.25% | 399 | 0 | 0 | 0.00% | 146 | 399 |
| "suit" | 639028 - 001 | McCartney, Ryan | 24 | 0.04% | 170 | 0 | 0 | 0.00% | 24 | 170 |
| "suspend*" | 639028 - 001 | McCartney, Ryan | 78 | 0.13% | 528 | 0 | 0 | 0.00% | 78 | 528 |
| "terminat*" | 639028 - 001 | McCartney, Ryan | 276 | 0.47% | 853 | 0 | 0 | 0.00% | 276 | 853 |
| "tit*" | 639028 - 001 | McCartney, Ryan | 384 | 0.62% | 869 | 0 | 0 | 0.00% | 384 | 869 |
| "unwant*" | 639028 - 001 | McCartney, Ryan | 11 | 0.02% | 125 | 0 | 0 | 0.00% | 11 | 125 |
| "vegas" | 639028 - 001 | McCartney, Ryan | 8 | 0.01% | 86 | 0 | 0 | 0.00% | 8 | 86 |
| "vibe" | 639028 - 001 | McCartney, Ryan | 0 | 0.00% | 0 | 0 | 0 | 0.00% | 0 | 0 |
| **Total Documents (adjusted for overlap; NOT a sum of above data)** | | | **4,373** | **7.47%** | **4,373** | **1,628** | **1,198** | **100.00%** | **2,746** | **3,177** |

| Term | KeywordCategory | Custodian | Document Hits | Hit Rate (%) | Document Hits with Family | Unique Document Hits | Unique Family Hits (Document Count) | % of all Unique Family Hits | Shared Hits (2+ Terms) | Shared Hits (2+ Terms) (Full Family) |
|---|---|---|---|---|---|---|---|---|---|---|
| "Adam" | 639028 - 001 | Nix, Jacob | 458 | 0.78% | 882 | 0 | 0 | 0.00% | 458 | 882 |
| "Aisha" | 639028 - 001 | Nix, Jacob | 23 | 0.04% | 40 | 0 | 0 | 0.00% | 23 | 40 |
| "bitch*" | 639028 - 001 | Nix, Jacob | 0 | 0.00% | 0 | 0 | 0 | 0.00% | 0 | 0 |
| "boob*" | 639028 - 001 | Nix, Jacob | 0 | 0.00% | 0 | 0 | 0 | 0.00% | 0 | 0 |
| "breast*" | 639028 - 001 | Nix, Jacob | 12 | 0.02% | 58 | 0 | 0 | 0.00% | 12 | 58 |
| "claim*" | 639028 - 001 | Nix, Jacob | 586 | 1.00% | 1,172 | 0 | 0 | 0.00% | 586 | 1,172 |
| "complain*" | 639028 - 001 | Nix, Jacob | 357 | 0.61% | 748 | 0 | 0 | 0.00% | 357 | 748 |
| "crazy" | 639028 - 001 | Nix, Jacob | 33 | 0.06% | 69 | 0 | 0 | 0.00% | 33 | 69 |
| "cunt*" | 639028 - 001 | Nix, Jacob | 2 | 0.00% | 3 | 0 | 0 | 0.00% | 2 | 3 |
| "date" | 639028 - 001 | Nix, Jacob | 1,836 | 3.14% | 2,524 | 0 | 0 | 0.00% | 1,836 | 2,524 |
| "dating" | 639028 - 001 | Nix, Jacob | 31 | 0.05% | 68 | 0 | 0 | 0.00% | 31 | 68 |
| "dick*" | 639028 - 001 | Nix, Jacob | 14 | 0.02% | 33 | 0 | 0 | 0.00% | 14 | 33 |
| "douche*" | 639028 - 001 | Nix, Jacob | 0 | 0.00% | 0 | 0 | 0 | 0.00% | 0 | 0 |
| "drank" | 639028 - 001 | Nix, Jacob | 0 | 0.00% | 0 | 0 | 0 | 0.00% | 0 | 0 |
| "drunk" | 639028 - 001 | Nix, Jacob | 2 | 0.00% | 10 | 0 | 0 | 0.00% | 2 | 10 |
| "fire*" | 639028 - 001 | Nix, Jacob | 446 | 0.76% | 761 | 0 | 0 | 0.00% | 446 | 761 |
| "fuck*" | 639028 - 001 | Nix, Jacob | 34 | 0.06% | 49 | 0 | 0 | 0.00% | 34 | 49 |
| "harass*" | 639028 - 001 | Nix, Jacob | 196 | 0.33% | 384 | 0 | 0 | 0.00% | 196 | 384 |
| "Hawkins" | 639028 - 001 | Nix, Jacob | 43 | 0.07% | 83 | 0 | 0 | 0.00% | 43 | 83 |
| "hooked" | 639028 - 001 | Nix, Jacob | 40 | 0.07% | 67 | 0 | 0 | 0.00% | 40 | 67 |
| "HR nix*" | 639028 - 001 | Nix, Jacob | 3 | 0.01% | 9 | 0 | 0 | 0.00% | 3 | 9 |
| "illegal*" | 639028 - 001 | Nix, Jacob | 122 | 0.21% | 508 | 0 | 0 | 0.00% | 122 | 508 |
| "inappropriat*" | 639028 - 001 | Nix, Jacob | 251 | 0.43% | 573 | 0 | 0 | 0.00% | 251 | 573 |
| "intern*" | 639028 - 001 | Nix, Jacob | 63 | 0.11% | 147 | 0 | 0 | 0.00% | 63 | 147 |
| "investigat*" | 639028 - 001 | Nix, Jacob | 419 | 0.72% | 919 | 0 | 0 | 0.00% | 419 | 919 |
| "Jake" | 639028 - 001 | Nix, Jacob | 5,050 | 8.63% | 6,345 | 0 | 0 | 0.00% | 5,050 | 6,345 |
| "kill*" | 639028 - 001 | Nix, Jacob | 137 | 0.23% | 264 | 0 | 0 | 0.00% | 137 | 264 |
| "lawsuit" | 639028 - 001 | Nix, Jacob | 98 | 0.17% | 211 | 0 | 0 | 0.00% | 98 | 211 |
| "lol" | 639028 - 001 | Nix, Jacob | 84 | 0.14% | 106 | 0 | 0 | 0.00% | 84 | 106 |
| "love*" | 639028 - 001 | Nix, Jacob | 1,171 | 2.00% | 1,484 | 0 | 0 | 0.00% | 1,171 | 1,484 |
| "NPY*" | 639028 - 001 | Nix, Jacob | 39 | 0.07% | 52 | 0 | 0 | 0.00% | 39 | 52 |
| "naked*" | 639028 - 001 | Nix, Jacob | 7 | 0.01% | 19 | 0 | 0 | 0.00% | 7 | 19 |
| "Nix*" | 639028 - 001 | Nix, Jacob | 6,375 | 10.89% | 6,375 | 230 | 0 | 0.00% | 6,145 | 6,375 |
| "nude*" | 639028 - 001 | Nix, Jacob | 23 | 0.04% | 81 | 0 | 0 | 0.00% | 23 | 81 |
| "Off*" | 639028 - 001 | Nix, Jacob | 6,052 | 10.34% | 6,297 | 0 | 0 | 0.00% | 6,052 | 6,297 |
| "onlyfans" | 639028 - 001 | Nix, Jacob | 0 | 0.00% | 0 | 0 | 0 | 0.00% | 0 | 0 |
| "photo*" | 639028 - 001 | Nix, Jacob | 211 | 0.36% | 498 | 0 | 0 | 0.00% | 211 | 498 |
| "pic*" | 639028 - 001 | Nix, Jacob | 507 | 0.87% | 881 | 0 | 0 | 0.00% | 507 | 881 |
| "profile*" | 639028 - 001 | Nix, Jacob | 316 | 0.54% | 743 | 0 | 0 | 0.00% | 316 | 743 |
| "puss*" | 639028 - 001 | Nix, Jacob | 0 | 0.00% | 0 | 0 | 0 | 0.00% | 0 | 0 |
| "retaliat*" | 639028 - 001 | Nix, Jacob | 156 | 0.27% | 359 | 0 | 0 | 0.00% | 156 | 359 |
| "roman*" | 639028 - 001 | Nix, Jacob | 51 | 0.09% | 125 | 0 | 0 | 0.00% | 51 | 125 |
| "sensitiv*" | 639028 - 001 | Nix, Jacob | 606 | 1.04% | 1,113 | 0 | 0 | 0.00% | 606 | 1,113 |
| "settle*" | 639028 - 001 | Nix, Jacob | 355 | 0.61% | 627 | 0 | 0 | 0.00% | 355 | 627 |
| "sever*" | 639028 - 001 | Nix, Jacob | 607 | 1.04% | 1,147 | 0 | 0 | 0.00% | 607 | 1,147 |
| "sex*" | 639028 - 001 | Nix, Jacob | 202 | 0.35% | 546 | 0 | 0 | 0.00% | 202 | 546 |
| "showing" | 639028 - 001 | Nix, Jacob | 161 | 0.28% | 422 | 0 | 0 | 0.00% | 161 | 422 |
| "suit" | 639028 - 001 | Nix, Jacob | 191 | 0.33% | 345 | 0 | 0 | 0.00% | 191 | 345 |
| "suspend*" | 639028 - 001 | Nix, Jacob | 165 | 0.28% | 396 | 0 | 0 | 0.00% | 165 | 396 |

# KLDiscovery

**Nebula Cull Extended Search Report**
Executed at 10/1/2025 9:07:12 PM

| | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| "terminat*" | 639028 - 001 | Nix, Jacob | 579 | 0.99% | 1,009 | 0 | 0 | 0.00% | 579 | 1,009 |
| "tit*" | 639028 - 001 | Nix, Jacob | 521 | 0.89% | 1,167 | 0 | 0 | 0.00% | 521 | 1,167 |
| "unwant*" | 639028 - 001 | Nix, Jacob | 63 | 0.11% | 221 | 0 | 0 | 0.00% | 63 | 221 |
| "vegas" | 639028 - 001 | Nix, Jacob | 76 | 0.13% | 155 | 0 | 0 | 0.00% | 76 | 155 |
| "vibe" | 639028 - 001 | Nix, Jacob | 14 | 0.02% | 41 | 0 | 0 | 0.00% | 14 | 41 |
| **Total Documents (adjusted for overlap; NOT a sum of above data)** | | | **6,375** | **10.89%** | **6,375** | **230** | **0** | **0.00%** | **6,145** | **6,375** |

| Term | Keyword/Category | Custodian | Document Hits | Hit Rate (%) | Document Hits with Family | Unique Document Hits | Unique Family Hits (Document Hits) | % of all Unique Family Hits | Shared Hits (2+ Terms) | Shared Hits (2+ Terms) (Full Family) |
|---|---|---|---|---|---|---|---|---|---|---|
| "Adam" | 639028 - 001 | Shah, Disha | 4 | 0.01% | 4 | 0 | 0 | 0.00% | 4 | 4 |
| "Aisha" | 639028 - 001 | Shah, Disha | 0 | 0.00% | 0 | 0 | 0 | 0.00% | 0 | 0 |
| "bitch*" | 639028 - 001 | Shah, Disha | 0 | 0.00% | 0 | 0 | 0 | 0.00% | 0 | 0 |
| "boob*" | 639028 - 001 | Shah, Disha | 0 | 0.00% | 0 | 0 | 0 | 0.00% | 0 | 0 |
| "breast*" | 639028 - 001 | Shah, Disha | 0 | 0.00% | 0 | 0 | 0 | 0.00% | 0 | 0 |
| "claim*" | 639028 - 001 | Shah, Disha | 2 | 0.00% | 2 | 0 | 0 | 0.00% | 2 | 2 |
| "complain*" | 639028 - 001 | Shah, Disha | 0 | 0.00% | 0 | 0 | 0 | 0.00% | 0 | 0 |
| "crazy" | 639028 - 001 | Shah, Disha | 0 | 0.00% | 0 | 0 | 0 | 0.00% | 0 | 0 |
| "cunt*" | 639028 - 001 | Shah, Disha | 0 | 0.00% | 0 | 0 | 0 | 0.00% | 0 | 0 |
| "date" | 639028 - 001 | Shah, Disha | 5 | 0.01% | 5 | 0 | 0 | 0.00% | 5 | 5 |
| "dating" | 639028 - 001 | Shah, Disha | 0 | 0.00% | 0 | 0 | 0 | 0.00% | 0 | 0 |
| "dick*" | 639028 - 001 | Shah, Disha | 0 | 0.00% | 0 | 0 | 0 | 0.00% | 0 | 0 |
| "douche*" | 639028 - 001 | Shah, Disha | 0 | 0.00% | 0 | 0 | 0 | 0.00% | 0 | 0 |
| "drank" | 639028 - 001 | Shah, Disha | 0 | 0.00% | 0 | 0 | 0 | 0.00% | 0 | 0 |
| "drunk" | 639028 - 001 | Shah, Disha | 0 | 0.00% | 0 | 0 | 0 | 0.00% | 0 | 0 |
| "fire*" | 639028 - 001 | Shah, Disha | 0 | 0.00% | 0 | 0 | 0 | 0.00% | 0 | 0 |
| "fuck*" | 639028 - 001 | Shah, Disha | 0 | 0.00% | 0 | 0 | 0 | 0.00% | 0 | 0 |
| "harass*" | 639028 - 001 | Shah, Disha | 0 | 0.00% | 0 | 0 | 0 | 0.00% | 0 | 0 |
| "Hawkins" | 639028 - 001 | Shah, Disha | 0 | 0.00% | 0 | 0 | 0 | 0.00% | 0 | 0 |
| "hooked" | 639028 - 001 | Shah, Disha | 0 | 0.00% | 0 | 0 | 0 | 0.00% | 0 | 0 |
| "HR risk" | 639028 - 001 | Shah, Disha | 0 | 0.00% | 0 | 0 | 0 | 0.00% | 0 | 0 |
| "illegal*" | 639028 - 001 | Shah, Disha | 0 | 0.00% | 0 | 0 | 0 | 0.00% | 0 | 0 |
| "inappropriat*" | 639028 - 001 | Shah, Disha | 0 | 0.00% | 0 | 0 | 0 | 0.00% | 0 | 0 |
| "intern" | 639028 - 001 | Shah, Disha | 0 | 0.00% | 0 | 0 | 0 | 0.00% | 0 | 0 |
| "investigat*" | 639028 - 001 | Shah, Disha | 0 | 0.00% | 0 | 0 | 0 | 0.00% | 0 | 0 |
| "Jake" | 639028 - 001 | Shah, Disha | 1 | 0.00% | 1 | 0 | 0 | 0.00% | 1 | 1 |
| "kill*" | 639028 - 001 | Shah, Disha | 1 | 0.00% | 1 | 0 | 0 | 0.00% | 1 | 1 |
| "lawsuit" | 639028 - 001 | Shah, Disha | 0 | 0.00% | 0 | 0 | 0 | 0.00% | 0 | 0 |
| "lol" | 639028 - 001 | Shah, Disha | 0 | 0.00% | 0 | 0 | 0 | 0.00% | 0 | 0 |
| "love*" | 639028 - 001 | Shah, Disha | 1 | 0.00% | 1 | 0 | 0 | 0.00% | 1 | 1 |
| "MR*" | 639028 - 001 | Shah, Disha | 0 | 0.00% | 0 | 0 | 0 | 0.00% | 0 | 0 |
| "naked" | 639028 - 001 | Shah, Disha | 0 | 0.00% | 0 | 0 | 0 | 0.00% | 0 | 0 |
| "Nix" | 639028 - 001 | Shah, Disha | 1 | 0.00% | 1 | 0 | 0 | 0.00% | 1 | 1 |
| "nude*" | 639028 - 001 | Shah, Disha | 0 | 0.00% | 0 | 0 | 0 | 0.00% | 0 | 0 |
| "OF" | 639028 - 001 | Shah, Disha | 10 | 0.02% | 10 | 0 | 0 | 0.00% | 10 | 10 |
| "onlyfans" | 639028 - 001 | Shah, Disha | 0 | 0.00% | 0 | 0 | 0 | 0.00% | 0 | 0 |
| "photo*" | 639028 - 001 | Shah, Disha | 0 | 0.00% | 0 | 0 | 0 | 0.00% | 0 | 0 |
| "pic*" | 639028 - 001 | Shah, Disha | 1 | 0.00% | 1 | 0 | 0 | 0.00% | 1 | 1 |
| "profile*" | 639028 - 001 | Shah, Disha | 2 | 0.00% | 2 | 0 | 0 | 0.00% | 2 | 2 |
| "puss*" | 639028 - 001 | Shah, Disha | 0 | 0.00% | 0 | 0 | 0 | 0.00% | 0 | 0 |
| "retaliat*" | 639028 - 001 | Shah, Disha | 0 | 0.00% | 0 | 0 | 0 | 0.00% | 0 | 0 |
| "roman*" | 639028 - 001 | Shah, Disha | 0 | 0.00% | 0 | 0 | 0 | 0.00% | 0 | 0 |
| "sensitiv*" | 639028 - 001 | Shah, Disha | 0 | 0.00% | 0 | 0 | 0 | 0.00% | 0 | 0 |
| "settle*" | 639028 - 001 | Shah, Disha | 0 | 0.00% | 0 | 0 | 0 | 0.00% | 0 | 0 |
| "sever*" | 639028 - 001 | Shah, Disha | 0 | 0.00% | 0 | 0 | 0 | 0.00% | 0 | 0 |
| "sex*" | 639028 - 001 | Shah, Disha | 0 | 0.00% | 0 | 0 | 0 | 0.00% | 0 | 0 |
| "showing" | 639028 - 001 | Shah, Disha | 0 | 0.00% | 0 | 0 | 0 | 0.00% | 0 | 0 |
| "suit" | 639028 - 001 | Shah, Disha | 0 | 0.00% | 0 | 0 | 0 | 0.00% | 0 | 0 |
| "suspend*" | 639028 - 001 | Shah, Disha | 0 | 0.00% | 0 | 0 | 0 | 0.00% | 0 | 0 |
| "terminat*" | 639028 - 001 | Shah, Disha | 0 | 0.00% | 0 | 0 | 0 | 0.00% | 0 | 0 |
| "tit*" | 639028 - 001 | Shah, Disha | 0 | 0.00% | 0 | 0 | 0 | 0.00% | 0 | 0 |
| "unwant*" | 639028 - 001 | Shah, Disha | 0 | 0.00% | 0 | 0 | 0 | 0.00% | 0 | 0 |
| "vegas" | 639028 - 001 | Shah, Disha | 2 | 0.00% | 2 | 0 | 0 | 0.00% | 2 | 2 |
| "vibe" | 639028 - 001 | Shah, Disha | 0 | 0.00% | 0 | 0 | 0 | 0.00% | 0 | 0 |
| **Total Documents (adjusted for overlap; NOT a sum of above data)** | | | **10** | **0.02%** | **10** | **0** | **0** | **0.00%** | **10** | **10** |

| Term | Keyword/Category | Custodian | Document Hits | Hit Rate (%) | Document Hits with Family | Unique Document Hits | Unique Family Hits (Document Count) | % of all Unique Family Hits | Shared Hits (2+ Terms) | Shared Hits (2+ Terms) (Full Family) |
|---|---|---|---|---|---|---|---|---|---|---|
| "Adam" | 639028 - 001 | Wiese, Matt | 1 | 0.00% | 7 | 0 | 0 | 0.00% | 1 | 7 |
| "Aisha" | 639028 - 001 | Wiese, Matt | 0 | 0.00% | 0 | 0 | 0 | 0.00% | 0 | 0 |
| "bitch*" | 639028 - 001 | Wiese, Matt | 0 | 0.00% | 0 | 0 | 0 | 0.00% | 0 | 0 |
| "boob*" | 639028 - 001 | Wiese, Matt | 0 | 0.00% | 0 | 0 | 0 | 0.00% | 0 | 0 |
| "breast*" | 639028 - 001 | Wiese, Matt | 0 | 0.00% | 0 | 0 | 0 | 0.00% | 0 | 0 |
| "claim*" | 639028 - 001 | Wiese, Matt | 0 | 0.00% | 0 | 0 | 0 | 0.00% | 0 | 0 |
| "complain*" | 639028 - 001 | Wiese, Matt | 0 | 0.00% | 0 | 0 | 0 | 0.00% | 0 | 0 |
| "crazy" | 639028 - 001 | Wiese, Matt | 0 | 0.00% | 0 | 0 | 0 | 0.00% | 0 | 0 |
| "cunt*" | 639028 - 001 | Wiese, Matt | 0 | 0.00% | 0 | 0 | 0 | 0.00% | 0 | 0 |
| "date" | 639028 - 001 | Wiese, Matt | 0 | 0.00% | 0 | 0 | 0 | 0.00% | 0 | 0 |
| "dating" | 639028 - 001 | Wiese, Matt | 0 | 0.00% | 0 | 0 | 0 | 0.00% | 0 | 0 |
| "dick*" | 639028 - 001 | Wiese, Matt | 0 | 0.00% | 0 | 0 | 0 | 0.00% | 0 | 0 |
| "douche*" | 639028 - 001 | Wiese, Matt | 0 | 0.00% | 0 | 0 | 0 | 0.00% | 0 | 0 |
| "drank" | 639028 - 001 | Wiese, Matt | 0 | 0.00% | 0 | 0 | 0 | 0.00% | 0 | 0 |
| "drunk" | 639028 - 001 | Wiese, Matt | 0 | 0.00% | 0 | 0 | 0 | 0.00% | 0 | 0 |
| "fire*" | 639028 - 001 | Wiese, Matt | 0 | 0.00% | 0 | 0 | 0 | 0.00% | 0 | 0 |
| "fuck*" | 639028 - 001 | Wiese, Matt | 0 | 0.00% | 0 | 0 | 0 | 0.00% | 0 | 0 |
| "harass*" | 639028 - 001 | Wiese, Matt | 0 | 0.00% | 0 | 0 | 0 | 0.00% | 0 | 0 |
| "Hawkins" | 639028 - 001 | Wiese, Matt | 0 | 0.00% | 0 | 0 | 0 | 0.00% | 0 | 0 |
| "hooked" | 639028 - 001 | Wiese, Matt | 0 | 0.00% | 0 | 0 | 0 | 0.00% | 0 | 0 |
| "HR risk" | 639028 - 001 | Wiese, Matt | 0 | 0.00% | 0 | 0 | 0 | 0.00% | 0 | 0 |
| "illegal*" | 639028 - 001 | Wiese, Matt | 0 | 0.00% | 0 | 0 | 0 | 0.00% | 0 | 0 |
| "inapropriat*" | 639028 - 001 | Wiese, Matt | 0 | 0.00% | 0 | 0 | 0 | 0.00% | 0 | 0 |
| "intern" | 639028 - 001 | Wiese, Matt | 0 | 0.00% | 7 | 0 | 0 | 0.00% | 0 | 7 |
| "investigat*" | 639028 - 001 | Wiese, Matt | 1 | 0.00% | 0 | 0 | 0 | 0.00% | 1 | 0 |
| "Jake" | 639028 - 001 | Wiese, Matt | 5 | 0.01% | 11 | 0 | 0 | 0.00% | 5 | 11 |
| "kill*" | 639028 - 001 | Wiese, Matt | 0 | 0.00% | 0 | 0 | 0 | 0.00% | 0 | 0 |
| "lawsuit" | 639028 - 001 | Wiese, Matt | 0 | 0.00% | 0 | 0 | 0 | 0.00% | 0 | 0 |
| "lol" | 639028 - 001 | Wiese, Matt | 0 | 0.00% | 0 | 0 | 0 | 0.00% | 0 | 0 |
| "love*" | 639028 - 001 | Wiese, Matt | 0 | 0.00% | 0 | 0 | 0 | 0.00% | 0 | 0 |
| "MR*" | 639028 - 001 | Wiese, Matt | 0 | 0.00% | 0 | 0 | 0 | 0.00% | 0 | 0 |
| "naked" | 639028 - 001 | Wiese, Matt | 0 | 0.00% | 0 | 0 | 0 | 0.00% | 0 | 0 |
| "Nix" | 639028 - 001 | Wiese, Matt | 5 | 0.01% | 11 | 0 | 0 | 0.00% | 5 | 11 |
| "nude*" | 639028 - 001 | Wiese, Matt | 0 | 0.00% | 0 | 0 | 0 | 0.00% | 0 | 0 |
| "OF" | 639028 - 001 | Wiese, Matt | 1 | 0.00% | 7 | 0 | 0 | 0.00% | 1 | 7 |
| "onlyfans" | 639028 - 001 | Wiese, Matt | 0 | 0.00% | 0 | 0 | 0 | 0.00% | 0 | 0 |
| "photo*" | 639028 - 001 | Wiese, Matt | 0 | 0.00% | 0 | 0 | 0 | 0.00% | 0 | 0 |
| "pic*" | 639028 - 001 | Wiese, Matt | 0 | 0.00% | 0 | 0 | 0 | 0.00% | 0 | 0 |
| "profile*" | 639028 - 001 | Wiese, Matt | 0 | 0.00% | 0 | 0 | 0 | 0.00% | 0 | 0 |
| "puss*" | 639028 - 001 | Wiese, Matt | 0 | 0.00% | 0 | 0 | 0 | 0.00% | 0 | 0 |
| "retaliat*" | 639028 - 001 | Wiese, Matt | 0 | 0.00% | 0 | 0 | 0 | 0.00% | 0 | 0 |
| "roman*" | 639028 - 001 | Wiese, Matt | 0 | 0.00% | 0 | 0 | 0 | 0.00% | 0 | 0 |
| "sensitiv*" | 639028 - 001 | Wiese, Matt | 0 | 0.00% | 0 | 0 | 0 | 0.00% | 0 | 0 |
| "settle*" | 639028 - 001 | Wiese, Matt | 0 | 0.00% | 0 | 0 | 0 | 0.00% | 0 | 0 |
| "sever*" | 639028 - 001 | Wiese, Matt | 0 | 0.00% | 0 | 0 | 0 | 0.00% | 0 | 0 |
| "sex*" | 639028 - 001 | Wiese, Matt | 0 | 0.00% | 0 | 0 | 0 | 0.00% | 0 | 0 |
| "showing" | 639028 - 001 | Wiese, Matt | 0 | 0.00% | 0 | 0 | 0 | 0.00% | 0 | 0 |
| "suit" | 639028 - 001 | Wiese, Matt | 0 | 0.00% | 0 | 0 | 0 | 0.00% | 0 | 0 |
| "suspend*" | 639028 - 001 | Wiese, Matt | 0 | 0.00% | 0 | 0 | 0 | 0.00% | 0 | 0 |
| "terminat*" | 639028 - 001 | Wiese, Matt | 0 | 0.00% | 0 | 0 | 0 | 0.00% | 0 | 0 |
| "tit*" | 639028 - 001 | Wiese, Matt | 0 | 0.00% | 0 | 0 | 0 | 0.00% | 0 | 0 |
| "unwant*" | 639028 - 001 | Wiese, Matt | 0 | 0.00% | 0 | 0 | 0 | 0.00% | 0 | 0 |
| "vegas" | 639028 - 001 | Wiese, Matt | 0 | 0.00% | 0 | 0 | 0 | 0.00% | 0 | 0 |
| "vibe" | 639028 - 001 | Wiese, Matt | 0 | 0.00% | 0 | 0 | 0 | 0.00% | 0 | 0 |
| **Total Documents (adjusted for overlap; NOT a sum of above data)** | | | **8** | **0.01%** | **11** | **0** | **0** | **0.00%** | **8** | **11** |



**Nebula Cull Extended Search Report**

Executed at:10/1/2025 9:07:12 PM

| Keyword Name | Keyword Color | Scope | Attribute | SAVED_SEARCHES |
|---|---|---|---|---|
| 639028 - 001 | | 639028 - Search Set 001 | "Custodians" | 638481 - Responsive Set 001 |

Exhibit D

**ruben@aclientpc.com**

| | |
|---|---|
| **From:** | ruben@aclientpc.com |
| **Sent:** | Wednesday, October 1, 2025 3:32 PM |
| **To:** | 'Geoff Lee' |
| **Cc:** | 'Jeff Olsen'; 'Anafrancesca Comunale'; ruben@aclientpc.com |
| **Subject:** | RE: Fragale. Stip and Proposed Amended Complaint |
| **Attachments:** | 2025.9.26.Fragale _ RISC Point Advisory Group LLC et al..CMT-00157 Right.to.Sue.Package.pdf; 2025.4.13.Fragale _ RISC Point Advisory Group LLC et al..CMT-00157 Right.to.Sue.Package.pdf |

Mr. Lee,

This will confirm that we met and conferred regarding three issues today. This email will attempt to summarize key points of our discussion and asks for Defendants to follow up with me on certain issues; if you need to clarify anything, please feel free to do so. I

First, we discussed the proposed amendment to the complaint and our contemplated motion to amend. At this time, Defendants will oppose those efforts on grounds of timeliness, prejudice, and futility. Although we disagree with Defendants' bases to oppose, I offered that if Defendants agree to amend the complaint, then Plaintiff would waive her right to seek lost wages. You suggested that Defendants would consider this offer, but indicated that even if Defendants agreed, then they would want to reserve their right to challenge the sufficiency of the new allegations. I explained I would consider such reservation; having considered it, given the major concession of lost wages, we would require Defendants to waive such a challenge. You also suggested that Defendants might need additional time on discovery and expert disclosures; I would be fine with agreeing to extend those deadlines by 30 days with court approval (and without moving the trial date), but would require the agreement to amend to not be conditional on the court granting those extensions. Can you please let me know if Defendants will change their position and accept the offer by COB Friday?

Second, we met and conferred re the "hit report." Initially, I explained my concerns regarding certain words being miscoded (e.g. the abbreviation and capitalized "OF" being coded as the preposition "of"; NIX being coded as appearing in a to/from line, instead of in the body or subject of an email, etc.). I also indicated that your idea of producing certain categories now was acceptable. You indicated that upon further investigation the "hit" reports do not appear to reflect the parties' agreement and you were obtaining new reports. This prompted a disagreement between us regarding the parties' ESI protocol agreement. I told you I would confer with Mr. Olsen to make sure he was on the same page as me; we are on the same page. To confirm: it appears that the vendor ran a search of the custodians for emails that reflected (1) the variations of "Ashley" and (2) the key terms in column "B"; this is Mr. Olsen's and my understanding of the appropriate search. For example, if Mr. Nix used the "c-word" in an email that does not include any variation of "Ashley," then it would be responsive and included in our agreement, even if the "c-word" was used in reference to a third party. You indicated that you believe the proper search is for emails that reflect in the same email both (1) the variations of "Ashley" and (2) the key terms in column "B."  Our position is that the language of the letter is clear, and the context of the requests this protocol was meant to address supports Plaintiff's position. I don't expect you to change your position, but do invite you to provide reference to any other correspondence between us or argument that supports your position.

Leaving that issue aside, I proposed a protocol that address what appeared to be the primary concern: pre-production review time and third-party privacy (e.g., former employees and clients). You indicated that production of privileged communications was not an issue. I proposed that given the nature of the search terms and litigation, the parties could in good faith identify the production as confidential, that Defendants could reserve their right to "claw back" certain documents and the parties could confer on those documents, and that the parties could secure a court order that spells out and orders production pursuant to this protocol and resolves the pending motion to compel; I suggested such court order would alleviate any concern that Defendants were producing private information without pre-review and would get the documents produced now. This would be similar to a "quick peek" or "claw back" protocol used by federal courts. *See* FRE 502(e); See [FRCP 26(b)(5)](#), Adv. Comm. Notes, 2006 Amend; B. Scope of Discovery, Rutter Group Prac. Guide Fed. Civ. Pro. Before Trial Ch. 11(III)-B. Can you please let me know your final position on this protocol as to either the first "hit" report or the anticipated second "hit" report? I would also be wiling to discuss a mutual withdrawal of sanctions/expenses requests if we can come to terms on some of this stuff (e.g., produce the documents in the second "hit" report pursuant to this protocol, but leave it to the Court to determine whether our ESI agreement is reflected in the first or second "hit" report).

Finally, we discussed how to deal with correspondence that is in the possession of Plaintiff that may reflect communications of RISC Point counsel. I proposed that Plaintiff or "conflict counsel" will produce copies of these communications to you, without redaction; we will not review the redacted content at this time. Plaintiff's counsel will obtain copies of the documents produced to you but with the specific communications redacted and produce those to you as part of Plaintiff's production. Thereafter, we can confer regarding whether the circumstances warrant un-redacting the documents, while RISC Point maintains its privilege as to third parties. You indicated this was acceptable. If you are willing to skip the redaction step, but without prejudice to your asserting the privilege and demanding redactions once the documents are produced, please let me know.

V/r,


**Ruben Escalante**
Partner

**ACLIENT PC**
440 N Barranca Ave PMB 9496
Covina, California 91723
(310) 431-9687

---

**From:** Geoff Lee <glee@grsm.com>
**Sent:** Tuesday, September 30, 2025 1:25 PM
**To:** ruben@aclientpc.com
**Cc:** 'Jeff Olsen' <jeff@olsenws.com>; Anafrancesca Comunale <acomunale@grsm.com>
**Subject:** RE: Fragale. Stip and Proposed Amended Complaint

Both tomorrow. Thanks.

---

> **From:** [ruben@aclientpc.com](mailto:ruben@aclientpc.com) <[ruben@aclientpc.com](mailto:ruben@aclientpc.com)>
> **Sent:** Tuesday, September 30, 2025 1:12 PM
> **To:** Geoff Lee <[glee@grsm.com](mailto:glee@grsm.com)>

**Cc:** 'Jeff Olsen' <jeff@olsenws.com>; Anafrancesca Comunale <acomunale@grsm.com>; ruben@aclientpc.com
**Subject:** RE: Fragale. Stip and Proposed Amended Complaint

Mr. Lee,

I'm free this afternoon. 10 a.m. works tomorrow. I'll call you then if I don't hear from you today.

Again, I would like to talk about the contemplated motion to amend per Local Rule 7-3, and the "hit report" that was sent over last week. Mr. Olsen's 9/26 email suggested you and I could discuss it on Monday; I raised it yesterday, but you declined to discuss it at that time.

Are you up for discussing both issues tomorrow or just the complaint?

V/r,

**Ruben Escalante**
Partner

**ACLIENT PC**
440 N Barranca Ave PMB 9496
Covina, California 91723
(310) 431-9687

---

**From:** Geoff Lee <glee@grsm.com>
**Sent:** Tuesday, September 30, 2025 11:57 AM
**To:** ruben@aclientpc.com
**Cc:** 'Jeff Olsen' <jeff@olsenws.com>; Anafrancesca Comunale <acomunale@grsm.com>
**Subject:** RE: Fragale. Stip and Proposed Amended Complaint

Hi Ruben

Swamped today. If I finish other work sooner, I will call you this afternoon. Otherwise how about 10 am or 1 pm Wednesday?

---

**From:** ruben@aclientpc.com <ruben@aclientpc.com>
**Sent:** Tuesday, September 30, 2025 10:13 AM
**To:** Geoff Lee <glee@grsm.com>
**Cc:** 'Jeff Olsen' <jeff@olsenws.com>; Anafrancesca Comunale <acomunale@grsm.com>
**Subject:** RE: Fragale. Stip and Proposed Amended Complaint

Mr. Lee,

Just following up: can you confer today about the amended complaint and "hit report" issues?

V/r,

**Ruben Escalante**
Partner

**ACLIENT PC**
440 N Barranca Ave PMB 9496
Covina, California 91723
(310) 431-9687

---

**From:** Ruben Escalante <ruben@aclientpc.com>
**Sent:** Monday, September 29, 2025 8:52 PM
**To:** Geoff Lee <glee@grsm.com>
**Cc:** Jeff Olsen <jeff@olsenws.com>; Anafrancesca Comunale <acomunale@grsm.com>
**Subject:** Re: Fragale. Stip and Proposed Amended Complaint

Ok. Can you meet and confer tomorrow?  We can also go over the spreadsheet.

> On Sep 29, 2025, at 8:26 PM, Geoff Lee <glee@grsm.com> wrote:

> Dear Ruben:

> While I typically do stipulate to motions for leave to amend the complaint, especially early in the case, under these circumstances and given the nature of the proposed amendments, I'm sorry I cannot do so.  I'll explain my reasons why when we meet and confer.

> --Geoff

---

> **From:** ruben@aclientpc.com <ruben@aclientpc.com>
> **Sent:** Friday, September 26, 2025 9:38 PM
> **To:** Geoff Lee <glee@grsm.com>
> **Cc:** 'Jeff Olsen' <jeff@olsenws.com>; ruben@aclientpc.com
> **Subject:** Fragale. Stip and Proposed Amended Complaint

> Mr. Lee,

> Good evening.

> Although we don't believe an amendment is necessarily needed given the allegations in the operative complaint, in an abundance of caution and to avoid future motion practice, are you willing to stipulate to the amendment of the complaint?

> This redline should capture the changes from the original complaint.

> We can discuss Monday if you have any concerns.

> Respectfully,

> **Ruben Escalante**

Partner

**ACLIENT PC**

440 N Barranca Ave PMB 9496

Covina, California 91723

(310) 431-9687

---

This email communication may contain CONFIDENTIAL INFORMATION WHICH ALSO MAY BE LEGALLY
PRIVILEGED and is intended only for the use of the intended recipients identified above. If you are not the intended
recipient of this communication, you are hereby notified that any unauthorized review, use, dissemination, distribution,
downloading, or copying of this communication is strictly prohibited. If you are not the intended recipient and have
received this communication in error, please immediately notify us by reply email, delete the communication and
destroy all copies.

**GORDON REES SCULLY MANSUKHANI, LLP**
**YOUR 50 STATE LAW FIRM™**
www.grsm.com

---

This email communication may contain CONFIDENTIAL INFORMATION WHICH ALSO MAY BE LEGALLY PRIVILEGED and is intended only for the
use of the intended recipients identified above. If you are not the intended recipient of this communication, you are hereby notified that any unauthorized
review, use, dissemination, distribution, downloading, or copying of this communication is strictly prohibited. If you are not the intended recipient and
have received this communication in error, please immediately notify us by reply email, delete the communication and destroy all copies.

**GORDON REES SCULLY MANSUKHANI, LLP**
**YOUR 50 STATE LAW FIRM™**
www.grsm.com

---

This email communication may contain CONFIDENTIAL INFORMATION WHICH ALSO MAY BE LEGALLY PRIVILEGED and is intended only for the use of the
intended recipients identified above. If you are not the intended recipient of this communication, you are hereby notified that any unauthorized review, use,
dissemination, distribution, downloading, or copying of this communication is strictly prohibited. If you are not the intended recipient and have received this
communication in error, please immediately notify us by reply email, delete the communication and destroy all copies.

**GORDON REES SCULLY MANSUKHANI, LLP**
**YOUR 50 STATE LAW FIRM™**
www.grsm.com

**ruben@aclientpc.com**

| | |
|---|---|
| **From:** | ruben@aclientpc.com |
| **Sent:** | Monday, October 6, 2025 11:11 PM |
| **To:** | 'Geoff Lee' |
| **Cc:** | 'Jeff Olsen'; 'Anafrancesca Comunale'; 'Adrienna van Diermen'; ruben@aclientpc.com |
| **Subject:** | RE: Fragale v. Risc Point -- hit report |
| **Attachments:** | RE: Fragale. Stip and Proposed Amended Complaint (163 KB) |

Mr. Lee,

Thank you for sending this over. I know we have had a flurry of activity on this matter, including the IDC from last week, the deposition on Friday, and then today's deposition; thus, I'm following up on my meet and confer (attached) on this same issue. I recognize there are other issues in the attached that go beyond the scope of the ESI review and hit terms, and do not expect another response regarding those issues.

Given the Court's comments at the IDC, have Defendants reconsidered my proposals regarding producing either the larger scope (i.e., Plaintiff's position) or the smaller scope (i.e., Defendants' position), subject to a "quick peek" or "claw back" review and otherwise resolving the motion to compel? To the extent not, Plaintiff's position is that the documents in the hit report (the larger one) are discoverable and should be produced forthwith. If Defendants take the position the smaller hit report is the operative one and that certain terms are simply too burdensome to produce or more investigation is needed as to such terms before production (e.g., 10,000 hits for "date"; 14,000 for "Jake"; 15,000 for "Nix"; and 40,000 for "OF"), then Defendants should produce those documents that are not in dispute and leave the remaining issues for the Court to decide.

Can you please confirm your final position on these matters?

Respectfully,

**Ruben Escalante**
Partner

ACLIENT PC

440 N Barranca Ave PMB 9496
Covina, California 91723
(310) 431-9687

---

**From:** Geoff Lee <glee@grsm.com>
**Sent:** Thursday, October 2, 2025 4:28 PM
**To:** Ruben Escalante <ruben@aclientpc.com>
**Cc:** 'Jeff Olsen' <jeff@olsenws.com>; Anafrancesca Comunale <acomunale@grsm.com>; Adrienna van Diermen <avandiermen@grsm.com>
**Subject:** Fragale v. Risc Point -- hit report

Counsel

Attached please find the latest hit report, which I believe was run yesterday afternoon.

I am still waiting on an explanation from KLD about "OF" syntax issues.

---

**L. GEOFFREY LEE**
Partner



**GORDON REES SCULLY MANSUKHANI**
**YOUR 50 STATE LAW FIRM™**
**D:** 213.270.7861
**E:** glee@grsm.com  |  grsm.com
101 W. Broadway, Suite 2000, San Diego, CA 92101
633 West Fifth Street, 52nd Floor, Los Angeles, CA 90071

---

This email communication may contain CONFIDENTIAL INFORMATION WHICH ALSO MAY BE LEGALLY PRIVILEGED and is intended only for the use of the intended recipients identified above. If you are not the intended recipient of this communication, you are hereby notified that any unauthorized review, use, dissemination, distribution, downloading, or copying of this communication is strictly prohibited. If you are not the intended recipient and have received this communication in error, please immediately notify us by reply email, delete the communication and destroy all copies.

**GORDON REES SCULLY MANSUKHANI, LLP**
**YOUR 50 STATE LAW FIRM™**
www.grsm.com

Exhibit E

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
(SOUTHERN DIVISION - SANTA ANA)

ASHLEY FRAGALE,                )  CASE NO: 8:25-cv-00994-JWH-ADSx
                              )
              Plaintiff,       )            CIVIL
                              )
      vs.                      )      Santa Ana, California
                              )
RISC POINT ADVISORY GROUP,     )      Thursday, October 2, 2025
LLC, ET AL,                    )
                              )      (10:01 a.m. to 10:34 a.m.)
              Defendants.      )      (10:42 a.m. to 10:54 a.m.)


INFORMAL DISCOVERY CONFERENCE
MOTION RE: INFORMAL DISCOVERY DISPUTE [DKT.NO.31]

BEFORE THE HONORABLE AUTUMN D. SPAETH,
UNITED STATES MAGISTRATE JUDGE


APPEARANCES:              SEE PAGE 2


Court Reporter:           Recorded; CourtSmart


Courtroom Deputy:         Kristee Hopkins


Transcribed by:           Exceptional Reporting Services, Inc.
                          P.O. Box 8365
                          Corpus Christi, TX 78468
                          361 949-2988


Proceedings recorded by electronic sound recording;
transcript produced by transcription service.

2

**<u>APPEARANCES</u>:**


For Plaintiff:              RUBEN ESCALANTE, ESQ.
                            Aclient PC
                            440 N. Barranca Ave.
                            PMB 9496
                            Covina, CA 91723


                            JEFF T. OLSEN, ESQ.
                            18012 Cowan, Suite 200
                            Irvine, CA 92614

For Defendants:             LOREN G. LEE, ESQ.
                            Gordon Rees Scully Mansukhani
                            633 West Fifth St., 52nd Floor
                            Los Angeles, CA 90071

3

1      **Santa Ana, California; Thursday, October 2, 2025; 10:01 a.m.**

2                          **(Call to Order)**

3              **THE CLERK:**  Calling Case 8:25-cv-994-JWH-ADSX, *Ashley*

4      *Fragale versus RISC Point Advisory Group, LLC, et al.*

5              And, counsel, please state your appearances for the

6      record.  Thank you.

7              **MR. RUBEN:**  Good morning, Your Honor.  Ruben

8      Escalante and Jeffrey Olsen on behalf of the Plaintiff.

9              **MR. LEE:**  Good morning, Your Honor.  Geoffrey Lee on

10     behalf of Defendants.

11             **THE COURT:**  All right.  Good morning.

12             And is there anyone else on the line?

13             **MR. OLSEN:**  Good morning, Your Honor.  Jeff Olsen on

14     behalf of Plaintiff.

15             **THE COURT:**  All right.  Good morning, Mr. Olsen.

16             All right.  Anyone else?

17          (No audible response.)

18             All right.  So we are here for an informal discovery

19     conference in this matter.  I believe Plaintiff filed the

20     request, so let me hear about where we are and what you are

21     asking me to do, Mr. Escalante.

22             **MR. ESCALANTE:**  Yes, Your Honor.

23             **MR. LEE:**  Well, actually, Your Honor, it was the

24     defense who filed it.

25             **THE COURT:**  Oh, okay.  Well, then for the defense,

11

1   messages that she sent to employees of the company, to

2   executives of the company.

3            It appears, based on what's been produced, that the

4   company has reviewed those and sent it to her attorney, at

5   least the problematic ones.  So we believe our client should be

6   able to look at that, too.

7            So those would be the primary big ones, Your Honor.

8            The ESI is hard to say without actually having seen

9   it.  I can just tell you what's on the hit report.  It would be

10  nice to see it.  But I think in my initial email my reference

11  was primarily to the investigative documents.

12           **THE COURT:**  All right.  Thank you.

13           Mr. Lee.

14           **MR. LEE:**  Yes, thank you, Your Honor.  This is

15  Geoffrey Lee.

16           To answer the Court's earlier question, the discovery

17  cutoff is December 5.

18           And my response to Mr. Escalante is nothing's being

19  withheld.

20           In the meet-and-confer process Mr. Escalante asked if

21  we would please pull hard documents to expedite certain things,

22  like the investigation file.  I said sure and I produced them.

23           Everything he's asked me to produce as a hard copy,

24  even though it would be captured in the ESI protocol, I've

25  given to him.

12

1          I've given him everything I have, even though the ESI

2    protocol specifically has the investigator's name as search

3    terms so they would be captured anyway.

4          So I've done the best I can --

5          THE COURT:  Mr. Lee, he just identified two

6    categories:  the investigation file and his client's emails.

7    Have you produced those to him?

8          MR. LEE:  The investigation file, yes, to the extent

9    we have it.  We don't have everything the investigator has

10   because he's a third party, he's an outside party.

11         And her emails, that's what we're looking at now in

12   terms of figuring out what is the volume and how soon can we

13   get it.  That's still ongoing.

14      **(Pause)**

15         THE COURT:  Okay.  Do you have anything further?

16         MR. LEE:  No, other than it just seems incredibly

17   wasteful to have to postpone or interfere with a deposition

18   because of the fear that there might be something out there

19   that might cause the Plaintiff to contradict herself.

20         I mean, she can't possibly memorize a million

21   documents and then be totally ready for deposition.

22         I think the deposition is best had when a party just

23   comes in and tells what they remember to the best of their

24   ability.  And inevitably someone's going to say something that

25   contradicts a document.  That's just the way things are.

13

1          But we're certainly not intentionally withholding

2    anything.  We're trying to move this production along.  But at

3    the same time, we shouldn't be prejudiced for taking our

4    discovery, especially with a mediation just three weeks away.

5          THE COURT:  Why is it taking so long to get the ESI

6    produced if this stuff was requested back in May?  What's the

7    burden, what's going on?

8          MR. LEE:  We have nine custodians and about 60 search

9    terms, and the first hit report showed over 130 gigabytes of

10   software, which calculates roughly to somewhere between a half

11   a million and five million pages of documents.

12          We then had them rerun it to make sure there were no

13   errors, and we're still coming up with at least 50 gigabytes

14   worth of documents.  And so we're still in the two million page

15   range.  So we're still trying to figure out ways to pare this

16   down.

17          But at this rate, it's just humanly impossible to

18   produce all this to review it, especially when my client has

19   documents on behalf of customers who are federal agencies, and

20   they have to be very careful about having a human review this

21   for confidentiality before it's turned over.

22          THE COURT:  Have you provided that hit report and met

23   and conferred to perhaps reduce the number of terms that are

24   being searched with Plaintiff?

25          MR. LEE:  The first hit report, yes.  And we did meet

14

1   and confer yesterday.  The second report I just got last night

2   and I plan to meet and confer on it again.

3           THE COURT:  How long would it take you to get the

4   Plaintiff's emails and produce them?

5           MR. LEE:  As I said before, I don't know, Your Honor,

6   if they don't know the volume.

7           This -- the Plaintiff was a human resources

8   representative, so it could be that she has one of the larger

9   volume of email accounts.

10          Plus, most everything in it is probably somewhat

11  confidential given that she's talking about hiring and firing

12  of employees, she had privileged conversations with company

13  counsel.  So I just -- I wish I could give a prediction but I

14  just don't know.

15          THE COURT:  It's falling a bit on deaf ears given

16  that it's October 2nd and discovery was served in May and

17  (inaudible) --

18          MR. LEE:  Well, Your Honor, --

19          THE COURT:  -- your discovery cutoff is in two

20  months.

21          MR. LEE:  Your Honor, the agreement on ESI terms was

22  not even formulated until about August 19.  That was the first

23  time we ever had a plan to search for what we were going to

24  search because the original request was simply, give us

25  everything with Plaintiff's name on it.

1          Thank you, Your Honor.

2               THE COURT:  Mr. Lee, have you asked the investigator

3    for the file?

4               MR. LEE:  I have not, Your Honor.

5               THE COURT:  Okay.  Why not?

6               MR. LEE:  (No audible response.)

7               THE COURT:  I'm thinking possession, custody, and

8    control.  I would imagine your client has control over the

9    file.

10              MR. LEE:  We looked at that.  And there is no

11   contract with this gentleman and so there's no rights.  But I

12   will ask him for it to speed things along.

13              THE COURT:  What would he have that he doesn't have

14   an obligation to turn over to your client?

15              MR. LEE:  I don't think he has any obligation at all.

16              But I think what the Plaintiff is looking for is

17   probably interview notes when he interviewed the witnesses.

18   That's the one thing I don't have.

19              THE COURT:  So when your client hires third party

20   investigators, they don't have an obligation to turn anything

21   over to your client?

22              MR. LEE:  Not in this case.  This is a smaller

23   company.  I don't think they've ever hired an investigator

24   before.  This is their first run at it so it was done very

25   informally.

18

1          **MR. ESCALANTE:**  Your Honor, --

2          **THE COURT:**  Who is that?

3          **MR. ESCALANTE:**  Your Honor, this is Ruben Escalante.

4          **THE COURT:**  Okay.  Yes.

5          **MR. ESCALANTE:**  Your Honor, I am sympathetic to the

6  fact that there may not be a -- we'll call it a legal

7  contractual right that I haven't seen any retention agreement,

8  so I can't speak to that.

9          If Mr. Lee is making representations to this Court

10  that the company, that this investigator was at no time an

11  agent of it, of counsel or of the company, and that it has no

12  ability or rights to just ask for it, then I would ask for a

13  clear representation on that because I do believe I've seen

14  some correspondence that suggests that at least at one point

15  Gordon Reese, the attorneys of record, had communicated that

16  there was some type of agency relationship.

17          So I'd -- again, I could have misinformation.  I

18  could be reading the correspondence incorrectly.  But I think

19  at the very least they should have the ability and right to ask

20  -- just ask for it.

21          If they say, no, then they say no.  It's no different

22  than my client having to ask her doctors, can you give me the

23  medical records.  They say, no, you have to subpoena us.  Then

24  at least we know.

25          Thank you, Your Honor.  I just wanted to add that if

19

1    we could get clear representations regarding agency and asking

2    and rights.

3            **MR. LEE:**  Your Honor, this is Geoffrey Lee.

4            I said just a minute ago I will ask -- the

5    investigator's name is John Hawkins.  But I'm not in a position

6    to make any representation on the record.  This isn't my

7    deposition.  But I will ask him, and I will turn over anything

8    that he sends to me.

9            As far as the other items on Plaintiff's wish list, I

10   feel like we're kind of litigating the motion to compel

11   documents now.

12           But since it was brought up, the Slack messages are

13   not as easy to produce as Plaintiff assumes.  Slack messages

14   are not subject to any kind of word searching by my client.

15           The best I can do is try to work with this third

16   party vendor to see if we can expedite certain documents based

17   on certain criteria.

18           Again, this is -- we're still trying to figure out

19   the viability of this technology to do that.  And that's one of

20   the things I've been asking Plaintiff for is to prioritize what

21   they want in what order.  And this is the first time I'm

22   hearing that they want Plaintiff's emails.

23           And so, again, I'm willing to work with counsel to

24   try to expedite this.  But I just don't think that her

25   deposition should be held hostage to it.

26

 1    through an actual protocol of the search terms.  But in terms

 2    of producing the entire email, that process should have started

 3    back in May.  And, you know, now we're in October.

 4              **THE COURT:**  Mr. Lee, would you like to be heard any

 5    further?

 6              **MR. LEE:**  No, other than just to remind the Court we

 7    got the searched emails six days ago, just six days ago.  And

 8    we're just moving along at -- you know, as reasonably as we

 9    can.

10              And so as I said, I would -- I'm continuing to try to

11    prioritize and get these emails produced.  In fact, one of the

12    key issues in this case is whether parties were using certain

13    profane words.

14              And I even offered.  I said, you want to have those

15    profane word emails first?  So, you know, and I don't think I

16    got a response.

17              But my point is I am trying to get these emails out.

18    I'm in no way trying to slow this process down.  But we just

19    got the plan three days ago.

20              We got the documents six days ago.  And it's going to

21    take time.  And I just don't see how it's fair to hold the

22    Plaintiff's deposition hostage.

23              Trying to reschedule it is challenging when I've got

24    so many different parties who want to attend, and they're in

25    Ohio.

37

1    it'll make the rest of it go quicker.

2              You know, there's also nothing stopping you from

3    producing everything under a claw-back provision.  Anyway,

4    we'll leave that for another day.

5              Is there anything further, gentlemen?

6              **MR. ESCALANTE:**  No, Your Honor, thank you.

7              **MR. LEE:**  I hope not.  Thank you, Your Honor.

8    Appreciate your time.

9              **MR. OLSEN:**  Thank you, Your Honor.

10             **THE COURT:**  Have a good (inaudible).

11             **THE CLERK:**  Court is now in recess.

12         **(This proceeding was adjourned at 10:54 a.m.)**

13

14

15

16

17

18

19

20

21

22

23

24

25

**CERTIFICATION**

I certify that the foregoing is a correct transcript from the electronic sound recording of the proceedings in the above-entitled matter.

_____                    <u>October 7, 2025</u>

                Signed                                          Dated


                        *TONI HUDSON, TRANSCRIBER*

Exhibit F

CERTIFIED COPY



VIDEOTAPED DEPOSITION OF
**RYAN MCCARTNEY**

Taken on October 3, 2025

ASHLEY FRAGALE vs. RISC POINT ADVISORY GROUP,
LLC

**Global Access Litigation Services**
**(949) 220-0449**
production@galscr.com
www.galscr.com

RYAN MCCARTNEY                                    10/3/2025

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

---oOo---


ASHLEY FRAGALE,                 ) CIVIL ACTION
                                )NO.:8:25-cv-00994 JWH (ADSx)
            Plaintiff,          )
                                )
vs.                             )
                                )
RISC POINT ADVISORY GROUP, LLC;)
RISC POINT ASSURANCE, LTD;,     )
RISC POINT HOLDINGS, INC.;      )
JACOB NIX; and DOES 1 through   )
10, inclusive,                  )
            Defendants.         )
_____)



        THE VIDEOTAPED DEPOSITION OF RYAN MCCARTNEY,

located in Thousand Oaks, California, commencing at 10:02

a.m. PST on Friday, October 3, 2025, before VIRGINIA PEREZ,

Certified Shorthand Reporter 11433, in and for the State of

California.




GLOBAL ACCESS LITIGATION SERVICES
(949) 220-0449

```
 1    REMOTE APPEARANCES:
 2    FOR THE PLAINTIFF:
 3    OLSEN WORKPLACE SOLUTIONS, PC
      BY:  JEFF OLSEN, ESQ., AWI-CH
 4    18012 Cowan Avenue, Suite 200
      Irvine, California 92614
 5    Telephone:  (949) 232-0455
      Email: jeff@olsenws.com
 6
      ACLIENT, PC
 7    BY:  RUBEN D. ESCALANTE, ESQ.
      440 North Barranca Avenue
 8    PMB 9496
      Covina, California 91723
 9    Telephone: (310) 431-9687
      Email: ruben@aclientpc.com
10
      FOR THE DEFENDANTS:
11
      MCDONALD HOPKINS
12    BY:  KARINA R. CONLEY, ESQ.
           JULIE TOTH, ESQ.
13    600 Superior Avenue, Suite 2100
      Cleveland, Ohio 44114
14    Telephone: (216) 348-5408
      Email: mcdonaldhopkins.com
15
      GORDON REES SCULLY MANSUKHANI
16    BY:  GEOFFREY LEE, ESQ.
           MADISON PANGBURN, ESQ.
17    633 West Fifth Street, 52nd Floor
      Los Angeles, California 90071
18    Telephone: (213) 270-7861
      Email: glee@grsm.com
19           mpangburn@grsm.com
20    Also present:
      Deborah Alvino, Certified Legal Video Specialist
21    Sweeta Dadras, Judge
      Matt Drewyor, CEO of RISC Point
22    Jacob Nix, Chief Growth Officer
      Gabriella Datchler, legal clerk
23
24
25
```

Global Access Litigation Services
(949) 220-0449

RYAN MCCARTNEY                        10/3/2025

```
 1                    I N D E X

 2   EXAMINATION                                  PAGE

 3

 4      BY MR. OLSEN                                 6

 5

 6

 7                   ---oOo---

 8                 E X H I B I T S

                                                  PAGE
 9   Exhibit 1  Subpoena to Testify at a Deposition
                in a Civil Action                    6
10   Exhibit 2  RISC Point Org Chart-Detailed       19
     Exhibit 3  MPI Consulting Confidential
11              Investigation Report               114

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

RYAN MCCARTNEY                          10/3/2025

```
 1        REMOTELY REPORTED FROM VENTURA COUNTY, CALIFORNIA

 2                      OCTOBER 3, 2025

 3                      10:07 A.M.

 4

 5        THE VIDEOGRAPHER:  Good morning.  We are going on

 6   the record at 10:07 a.m.  My name is Deborah Alvino

 7   Certified Legal Video Specialist and Notary.  And our court

 8   reporter today is Virginia Perez.  We both represent Global

 9   Access Litigation Services of San Clemente, California.

10   This marks the beginning of Media Number 1 in the Remote

11   video deposition of Ryan McCartney taken October 3rd, 2025

12   in the matter of Ashley Fragale, plaintiff versus RISC Point

13   Advisory Group, LLC, et al. Defendants filed in the United

14   States District Court for the Central District of California

15   Civil Action Number 8:25-cv-00994 JWH (ADSx).  This

16   deposition is being taken on behalf of plaintiff and it is

17   being held video Zoom conference.

18        Would counsel and all present please introduce

19   yourselves for the record beginning on the witness.

20        THE WITNESS:  That's me.  I'm Ryan McCartney.

21        MS. COMLEY:  Hi, I'm an attorney for Ryan

22   McCartney, Karina Conley.  And I have a law clerk with me,

23   Gabriella Datchler.

24        MS. PANGBURN:  Hi.  I am attorney Madison Pangburn

25   for RISC Point Assurance Limited.
```

Page 4

RYAN MCCARTNEY                          10/3/2025

```
 1            MR. OLSEN:  Anyone else in the room?

 2            MR. DREWYOR:  My name is Matt Drewyor.  I'm the CEO

 3   of RISC Point Advisory Group, LLC.

 4            MR. NIX:  I'm Jacob Nix.  I'm the Chief Growth

 5   Officer of RISC Point.

 6            MR. OLSEN:  Mr. Lee?

 7            MS. TOTH: I'm Julie Toth attorney for Ryan

 8   McCartney.

 9            MR. LEE:  This is Geoffrey Lee appearing remotely

10   on behalf of Defendants, RISC Point Advisory Group, RISC

11   Point Holdings and Jake Nix.

12            MR. OLSEN:  And I am Jeff Olsen on behalf of

13   Plaintiff, Ashley Fragale.  Here with me telephonically is

14   co-counsel Ruben Escalante and Ashley Fragale.

15            THE VIDEOGRAPHER:  Would the court reporter please

16   introduce herself and then administer the oath.

17            THE REPORTER:  My name is Virginia Perez.  My

18   Certification Number is 11433.  I'm here on behalf of Global

19   McCartney.

20                      RYAN MCCARTNEY,
                 a witness called on behalf of the Plaintiff herein,
21               after having been first duly and regularly sworn,
                 testifies as hereinafter follows:
22

23            THE REPORTER:  You're muted.

24            THE WITNESS:  I do.

25            THE REPORTER:  Thank you.
```

RYAN MCCARTNEY                          10/3/2025

```
 1                    EXAMINATION

 2   BY MR. OLSEN:

 3       Q.   Good morning, Mr. McCartney can you hear me okay?

 4       A.   Yes, sir.

 5       Q.   First things first is that very first question the

 6   court reporter asked you.  There maybe technical

 7   difficulties in the moment.  For whatever reason you cannot

 8   hear me, please ask me to rephrase my question.  And I will

 9   do the same, if I can't hear you, okay?

10       A.   Okay.

11       Q.   As an administrative initial matters, you heard me

12   introduce myself.  My name is Jeff Olsen.  I'm an attorney

13   for Ashley Fragale.  And I have subpoenaed you here today.

14            (Plaintiff's Exhibit 1 was marked for

15            identification.)

16   BY MR. OLSEN:

17       Q.   And if you look in the Chat, I will have marked as

18   Exhibit 1 and I'm using it as an initial test case to make

19   sure everyone can see it and download it.  And, especially,

20   you,      Mr. McCartney.  Do you mind seeing if you can go

21   into the Chat and opening the attachment that's marked as

22   Exhibit 1?

23       A.   Yes.  All right.  It is open.

24       Q.   Do you mind spelling your full name for the record?

25       A.   Sure.  My legal name is -- it was recently changed.
```

Page 6

RYAN MCCARTNEY                              10/3/2025

```
 1      A.   Correct.

 2      Q.   And what is his title?

 3      A.   I don't recall.

 4      Q.   Is he an executive of the company?

 5      A.   He is not.

 6      Q.   Before -- when did you start working there?

 7      A.   I started in early September.  I don't recall the

 8 specific date.

 9      Q.   Before your current job at you Phoenix Team, where

10 did you work?

11      A.   RISC Point.

12      Q.   Okay.  So as you heard me say earlier, currently

13 there are multiple RISC Point or entities that are named as

14 defendants.  Currently RISC Point Advisory Group, LLC, RISC

15 Point Assurance, Ltd. and RISC Point Holdings, Inc.  Are you

16 aware of each of those entities?

17      A.   I'm aware of them.  I'm not sure the specifics of

18 each one.  Yeah.

19      Q.   Could you tell me which one of those entities you

20 believe that you were an employee of?

21      A.   Can you read them back again?

22      Q.   RISC Point Advisory Group, LLC, RISC Point

23 Assurance, Ltd., RISC Point Holdings, Inc.

24      A.   It would be the first one.

25      Q.   RISC Point Advisory Group, LLC?
```

RYAN MCCARTNEY                          10/3/2025

1       A.    Yes.

2       Q.    And you're saying that you were an employee there?

3       A.    I was.   And I also currently hold equity there as

4    well.   But in a private holding company.

5              (Plaintiff's Exhibit 2 was marked for

6              identification.)

7    BY MR. OLSEN:

8       Q.    Let me upload Exhibit 2.  Apologies for the slight

9    delay.  Let me do that.  Do you see Exhibit 2 in the Chat,

10   Mr. McCartney?

11      A.    Yes.  I got 2.

12      Q.    Okay.  Would you just take a minute to look at that

13   the pages attached.

14      A.    Yes.

15      Q.    Let me know when it's done.

16      A.    Done.

17      Q.    Okay.  On the first page is an org chart; do you

18   see that?

19      A.    Yes.

20      Q.    Does this org chart accurately represent your

21   understanding of your ownership interests in one of the RISC

22   Point entities?

23      A.    Yes?

24      Q.    Does this org chart represent your understanding of

25   I believe all these entities interplay with each other?

RYAN MCCARTNEY                                    10/3/2025

1       A.   I do not.

2       Q.   Do you have any understanding about company emails

3   at RISC Point, how they are stored?

4       A.   I believe they would be stored in Microsoft online.

5       Q.   In terms of Slack messages, you had a Slack

6   account; is that right?

7       A.   Correct.

8       Q.   Do you have the ability to delete or modify

9   messages in Slack?

10           MR. LEE:  Objection.  Vague.  Ambiguous.

11           THE WITNESS:  Yes.

12  BY MR. OLSEN:

13      Q.   Did you ever have the -- or have you ever in the

14  past edited, modified or deleted any messages on Slack?

15           MR. LEE:  Objection.  Ambiguous.  Vague.  Compound.

16           THE WITNESS:  Yes.

17  BY MR. OLSEN:

18      Q.   Mr. McCartney, do you have any misunderstanding

19  about my question, at all?

20      A.   No.

21      Q.   Thank you.  So at RISC Point what was your job

22  title?

23      A.   I was the Executive Vice President of Public Sector

24  Operations.

25      Q.   Could you say that one more time for me.

RYAN MCCARTNEY                          10/3/2025

```
 1        A.    Sure.   The Executive Vice President of Public
 2   Sector Operations.
 3        Q.    Quickly going back to Slack.   If I was to ask you
 4   to find all messages and emails in your emails in Slack that
 5   were related to Ashley, how long do you think that would
 6   take you?
 7              MR. LEE:  Objection.  Vague as to time.  Incomplete
 8   hypothetical.
 9              THE WITNESS:  Just run a query and see how many
10   messages there are?
11   BY MR. OLSEN:
12        Q.    Yeah.
13        A.    A minute maybe.
14        Q.    And that would, you would be able to determine how
15   many messages that were between you and Ashley on your
16   emails?
17        A.    Correct.
18        Q.    And in that minute you would be able to determine
19   the number of messages between you and Ashley on Slack?
20              MR. LEE:  Objection.  It's leading and misstates
21   prior testimony.
22              THE WITNESS:  I think, yeah.  I don't know.
23   What -- I don't think I understand the question.
24   BY MR. OLSEN:
25        Q.    Sure.  I had asked you -- let's just focus on
```

Page 27

RYAN MCCARTNEY                          10/3/2025

```
 1   Slack.  You had a Slack account, yeah?
 2        A.   Yes.
 3        Q.   At RISC Point?
 4        A.   Yes.
 5        Q.   Did Ashley have a Slack account at RISC Point?
 6        A.   Yes.
 7        Q.   So if I was to ask you to find all the messages
 8   between you and Ashley on Slack, how long do you think that
 9   would take?
10             MR. LEE:  Objection.  Vague as to time.  Incomplete
11   hypothetical.
12             THE WITNESS:  About a minute to pull up the
13   conversation history with her.
14   BY MR. OLSEN:
15        Q.   And if you pulled up the conversation history with
16   her, would you be able to download all Slack messages?
17        A.   I did not have permission to download all messages.
18        Q.   Is it your understanding that this is possible to
19   download messages on slack?
20        A.   Yes.
21        Q.   What makes you say that?
22        A.   Previously the company had downloaded all Slack
23   messages from all employees to support an investigation.
24        Q.   To support an investigation?
25        A.   Correct.
```

Page 28

RYAN MCCARTNEY                          10/3/2025

```
 1      Q.   What kind of investigation?
 2      A.   Whether folks had filed lawsuits or threatened
 3   legal action, they would pull the Slack logs to review
 4   conversations and things that had happened.
 5      Q.   When did you start working at RISC Point?
 6      A.   I started working in July I believe of 2021.
 7      Q.   In July.  And you stopped working at RISC Point
 8   when?
 9      A.   In August of 2025.
10      Q.   So, from July 2021 when you started working at RISC
11   Point until all of 2025 when you stopped working RISC Point,
12   how many times do you believe that your slack messages were
13   pulled related to investigations into lawsuits?
14           MR. LEE:  Objection.  Vague.
15           THE WITNESS:  I do not know the number of times
16   those were pulled.
17   BY MR. OLSEN:
18      Q.   Do you think you could give me your best estimate?
19   For example, more less than five times.
20      A.   Like more than five times less than 15.
21      Q.   Slightly belated question.  Do you believe there
22   has been five to 15 different lawsuits against RISC Point or
23   were these -- let you answer that question.
24      A.   No.
25      Q.   Are you aware that any other employee has ever sued
```

Global Access Litigation Services
(949) 220-0449

RYAN MCCARTNEY                          10/3/2025

1    generally?

2        A.    Yeah.   Mr. Nix, Mr. Drewyor and Mr. Bai and Bennett

3    Warner.

4        Q.    Anybody else?

5        A.    No.

6        Q.    Ms. Fragale?

7        A.    No.

8        Q.    Not invited?

9        A.    Not invited.

10       Q.    And just to be clear other than Bennett, the names

11   of the individuals you just listed were invited but all

12   uninvited (sic)?

13       A.    Correct.

14       Q.    And how did you know these people that were

15   uninvited (sic)?

16       A.    Sent a message, text message as to Mr. Nix.

17       Q.    You said he stopped working at this point in August

18   as well?

19       A.    That's correct.

20       Q.    And what was the reason you stopped working there?

21       A.    I had some ethical concerns.

22       Q.    Would you mind describing those ethical concerns

23   for me?

24       A.    I found out that I was going to be deposed.   And I

25   was pressured to not be honest with my deposition.

Global Access Litigation Services
(949) 220-0449

RYAN MCCARTNEY                          10/3/2025

1      Q.   Who pressured you not to be honest with my

2   deposition?

3      A.   Mr. Nix.

4      Q.   And just to be clear we're talking about this

5   deposition that we're today?

6      A.   Correct.

7      Q.   Mr. Nix is in the same room with you right now,

8   right?

9      A.   Correct.

10      Q.   Do you feel pressured in any way by Mr. Nix's

11   presence in the room?

12      A.   It's not the most comfortable.  But I believe I can

13   still share honest testimony.

14      Q.   Would you prefer to take the deposition in another

15   room?  That is the glory of remote depositions.  And I

16   imagine the office that you're in has multiple offices.

17   Would it make you more comfortable?

18      A.   I'm okay with proceeding.

19      Q.   So going back you had a conversation with Mr. Nix

20   about today's deposition?

21      A.   Yes.

22      Q.   And you had concerns that he was pressuring you not

23   to be honest?

24      A.   Yes.

25      Q.   What did he tell you?

Global Access Litigation Services
(949) 220-0449

RYAN MCCARTNEY                          10/3/2025

1    A.    He told me not to fuck this up like I did the

2    internal investigation or he would kill Will and then kill

3    me.

4        Q.    Okay.   Who's Will?

5        A.    Will is my husband.

6        Q.    Was it your understanding that if you "fuck" this

7    deposition up, he was threatening your life and the life of

8    your husband?

9        A.    I didn't know exactly what was being threatened.   I

10   didn't know -- I didn't believe there was an attempt to

11   follow through with that.   But there was an uneasy feeling

12   about me remaining employed.

13       Q.    Okay.   Well, he used the words "I will kill you and

14   your husband," he said that?

15       A.    Yes.

16       Q.    And what did you interpret that to mean?

17       A.    I interpreted that to mean I better, you know, say

18   the right things, not say anything negative during the

19   deposition.

20       Q.    Or what would happen?

21       A.    Or there would be some significant negative

22   consequences.

23       Q.    Has Mr. Nix ever threatened you before?

24       A.    Yes.

25       Q.    How many times has Mr. Nix threatened you?

RYAN MCCARTNEY                          10/3/2025

1       A.   I would say a handful of times.

2       Q.   Just to define a handful more or less than 10?

3       A.   Less than, I would say, like seven to ten.

4       Q.   And this being one of the ten?

5       A.   Yeah.

6       Q.   Let me ask my question different way.  The

7   conversation that you had with Mr. Nix where he pressured

8   you and told you, "you better not fuck this up or I'm going

9   to kill you and Will," did you consider that to be a threat?

10      A.   Yes.

11      Q.   Why?

12      A.   I -- my understanding is that there could be a lot

13  riding on my deposition and that a negative outcome of the

14  deposition could be hurtful.

15      Q.   And why would he have -- given what your

16  explanation was, why it would it be important for him to

17  speak about today's deposition?

18           MR. LEE:   Objection.   Calls for speculation.

19  BY MR. OLSEN:

20      Q.   What was -- let me see if I can rephrase that

21  question -- what was your understanding as to why Mr. Nix

22  was talking to you and threatening you?

23      A.   Mr. Nix was not happy with the way I answered

24  questions in an internal investigation that was conducted.

25      Q.   We will get to that.  Is that investigation with

RYAN MCCARTNEY                        10/3/2025

```
 1   somebody called John Hawkins?

 2       A.   Yes.

 3            MR. OLSEN:  I'm looking down at the time I made a

 4   promise to you earlier that we were going to stop.  Let's

 5   take a quick break get a glass of water, stretch your legs.

 6   Five minutes or so, come back; is that okay with everybody?

 7            MS. CONLEY:  Works for me.

 8            THE WITNESS:  Yeah.

 9            MR. LEE:  That's fine.

10            MR. OLSEN:  Okay.  Let's go off the record.

11            THE VIDEOGRAPHER:  We are going off the record at

12   11:20 a.m.

13            (Recess taken.)

14            (Back on the record.)

15            THE VIDEOGRAPHER:  We are going back on the record

16   at 11:31 a.m.

17   BY MR. OLSEN:

18       Q.   Mr. McCartney, we are back on the record.  Is there

19   any reason you can't continue to give me truthful testimony

20   today?

21       A.   No.

22       Q.   Before we went on our break, we were speaking about

23   a conversation between you and Mr. Nix in which Mr. Nix

24   threatened to kill you and your husband if you "effed up

25   this deposition;" do you remember that?
```

Page 57

RYAN MCCARTNEY                          10/3/2025

```
 1        A.    Yes.
 2        Q.    Is that an accurate description of what you
 3   testified to?
 4        A.    Yes.
 5        Q.    When did this conversation occur?
 6        A.    It happened earlier this summer around when I found
 7   out that I was being deposed.
 8        Q.    Did this happen in person or over the phone?
 9        A.    In person.
10        Q.    Where did this the conversation occur?
11        A.    Mitchell's Ice Cream in downtown Cleveland.
12        Q.    And what was the reason you were at Mitchell's Ice
13   Cream in downtown Cleveland with Mr. Nix?
14        A.    I don't recall the specific reason for the
15   gathering but Mr. Drewyor was also in town and was there as
16   well.
17        Q.    Who was at the ice cream shop from RISC Point?
18        A.    Mr. Nix and Mr. Drewyor.
19        Q.    So the conversation that you were describing --
20   well, conversation -- what Mr. Nix said to you, are you
21   saying that Mr. Drewyor was there as well?
22        A.    Yes.
23        Q.    What time of day was it?
24        A.    It was evening.  After dinner.
25        Q.    It was dark out?
```

Global Access Litigation Services
(949) 220-0449

RYAN MCCARTNEY                                        10/3/2025

```
 1      A.   No.

 2      Q.   What was he wearing, Mr. Nix?

 3      A.   I don't recall.

 4      Q.   Do you remember what you were wearing?

 5      A.   I don't recall, no.

 6      Q.   Do you remember what you ordered?

 7      A.   Yes.

 8      Q.   What did you order?

 9      A.   Peanut butter fudge sundae.

10      Q.   Do you remember what any of the other orders were?

11      A.   I believe Mr. Nix got a peanut butter fudge sundae

12  as well.  I don't recall what Mr. Drewyor's ordered.

13      Q.   At the time that Mr. Nix made the comments to you,

14  were you eating ice cream by then?

15      A.   Yes.

16      Q.   Can you tell me everything that you can remember

17  about the conversation leading up to the comment that you

18  described?

19      A.   We were sitting outside on a like a picnic table.

20  We had recently walked out with the ice cream.  There was

21  discussion about how, you know, the Ashley situation was

22  progressing.  And there was discussion about how I was going

23  to be one of the folks that was going to be deposed.  And

24  that's when the comment was made.

25      Q.   Did you, did you say anything during this
```

RYAN MCCARTNEY                         10/3/2025

```
 1       A.   Yes.

 2       Q.   Did he move to a related RISC Point entity?

 3       A.   Not to my knowledge.

 4       Q.   Did he move -- did he work for RISC Point in a

 5  contractor role?

 6       A.   Not to my knowledge.

 7       Q.   What was the hesitation in referring to John

 8  Fiedler as a RISC Point employee?

 9       A.   I think -- he is an employee or was an employee.

10       Q.   So it is accurate to say that Jake Nix showed you

11  naked pictures of Michelle Bazzy and John Fiedler?

12       A.   No.  I misspoke.

13       Q.   Okay.

14       A.   To answer your previous question that prompted

15  that.

16       Q.   Yeah, please.  Please give me your explanation.

17       A.   Mr. Fiedler was in a photo that was shown where

18  there was also a naked photo of Ashley.

19       Q.   Let me make sure I understand what you just said.

20  Mr. Fiedler was in a photo and contained in that photo was a

21  naked picture of Ashley?

22       A.   What I observed was what appeared to be a

23  screenshot of a Facetime call between Mr. Fiedler and

24  Ms. Fragale where she was undressed.

25       Q.   I see.  Are you saying that John Fiedler shared
```

Page 85

RYAN MCCARTNEY                                    10/3/2025

```
 1    that picture with the executive team?

 2         A.    I don't know how it was shared.

 3         Q.    I understand now.  You're saying Jake Nix showed

 4    you this picture that is your understanding that he obtained

 5    from John Fiedler?

 6         A.    That's correct.

 7         Q.    And when was this?

 8         A.    This was earlier this year I would say March, April

 9    time frame.

10         Q.    Twenty twenty-five?

11         A.    Twenty twenty-five.

12         Q.    At this point you had met Ashley Fragale, right?

13         A.    Correct.

14         Q.    And would you consider her friends with you?

15         A.    Yeah.  Friendly.

16         Q.    Was it your understanding that Ms. Fragale gave

17    permission to share that picture with anybody else?

18              MR. LEE:  Objection.  Calls for speculation.

19              THE WITNESS:  I don't know.

20    BY MR. OLSEN:

21         Q.    Based on what you know about Ashley and what you

22    discussed with Ashley, does that refresh your recollection

23    about anything?

24              MR. LEE:  Objection.  Vague.

25              THE WITNESS:  Can you ask that a different way?
```

Page 86

RYAN MCCARTNEY                                    10/3/2025

```
 1   pictures?

 2            MR. LEE:  Objection.  Vague.  Overbroad.

 3   BY MR. OLSEN:

 4       Q.   Pictures of naked women?

 5       A.   I don't believe so.

 6       Q.   So the times that we were discussing he was

 7   discussing that he was showing you on his own devices or

 8   printed out pages, right?

 9       A.   Correct.

10       Q.   So what you're saying he never sent you the naked

11   pictures on via text message; is that right?

12       A.   I don't believe so.

13       Q.   Or via social media?

14       A.   I don't believe so.

15       Q.   Slack?

16       A.   Nope.

17       Q.   Have you ever had to delete any messages between

18   you and Mr. Nix?

19       A.   Yes.

20       Q.   And did you do so -- why did you delete messages

21   between you and Mr. Nix?

22       A.   We use Signal as a communications platform for

23   sensitive employee matters.  And the messages had to be auto

24   deleted basically.

25       Q.   So the messages were auto deleted but you didn't
```

Global Access Litigation Services
(949) 220-0449

RYAN MCCARTNEY                              10/3/2025

```
 1    personally delete them, is that what you're saying?

 2        A.    Correct.

 3        Q.    And was Ashley discussed on these Signal messages?

 4        A.    I believe so.

 5        Q.    Was Ashley's complaint discussed on those Signal

 6    messages?

 7        A.    I don't know.

 8        Q.    But it's your understanding that Signal -- well,

 9    let me take a step back -- is it your understanding being

10    you know in the tech base is that so you can set the

11    settings so that it auto deletes or is that something that

12    you required by use of the Signal app?

13        A.    The default does not auto delete.  The requirement

14    at RISC Point was that it did delete.

15        Q.    Somebody at RISC Point changed the setting from not

16    auto delete to auto delete, is that what you're saying?

17            MR. LEE:  Objection.  Vague as to time.

18            THE WITNESS:  In conversations whoever initiated

19    the conversation, can set it to auto delete or not auto

20    delete.  And so when we were having conversations on the

21    Signal platform the expectation was that they would be auto

22    deleting messages.

23    BY MR. OLSEN:

24        Q.    So do you have personal knowledge that Mr. Nix

25    changed the setting on Signal so that messages would be
```

Page 111

RYAN MCCARTNEY                              10/3/2025

```
 1   deleted?

 2        A.   I don't know who changed the setting or who set up

 3   the chat.   But the conversations sensitive conversations

 4   were set to auto delete.

 5        Q.   Let's quickly go back to the investigator.   At some

 6   point you testified that you were told that you would need

 7   to speak with an investigator, right?

 8        A.   Correct.

 9        Q.   And I believe you said during that same

10   conversation you were essentially told what to say, even

11   though, it was not true by Mr. Nix and Mr. Drewyor; is that

12   correct?

13             MR. LEE:   Objection.   Misstates testimony.

14   Leading.

15   BY MR. OLSEN:

16        Q.   Is that correct?

17        A.   Correct.

18        Q.   And you said, "Okay," right?

19        A.   Yep.

20        Q.   And then ultimately did you speak to an

21   investigator?

22        A.   Yes.

23        Q.   When did you speak to the investigator?

24        A.   I don't recall the specific date.

25        Q.   Okay.   Did you speak to him in person?
```

RYAN MCCARTNEY                              10/3/2025

1   holds the final say of hiring or firing.  There isn't room

2   to deviate from that.

3       Q.   Did you get the sense that Mr. Nix did not want you

4   to support Ashley's complaints?

5       A.   Yes.

6       Q.   Did you get the sense that Mr. Drewyor did not want

7   you to support Ashley's complaints?

8       A.   Yes.

9       Q.   Slightly changing topics.  Earlier you mentioned

10  that there was somebody employed at the company whose job it

11  was to ethically hack systems essentially; is that right?

12      A.   Correct.

13      Q.   Do you believe that anybody at RISC Point has

14  hacked into Ashley's personal emails?

15      A.   I don't believe so.  I don't know.

16      Q.   Do you have any knowledge about whether or not

17  anybody at RISC Point has hacked into Ashley's personal

18  accounts?

19      A.   I have no knowledge of that.

20      Q.   Is there any other comments or discussions had

21  about looking into Ashley's email accounts?

22      A.   Which email accounts?

23      Q.   Her work email accounts?

24      A.   Her work email accounts, yes.

25      Q.   What about her Slack messages?

RYAN MCCARTNEY                        10/3/2025

```
 1       A.   Yes.

 2       Q.   And when did these conversations occur?

 3       A.   After she filed the letter or the lawsuit.  I can't

 4   remember which.  It would have been that time frame.

 5       Q.   Before or after you spoke with Mr. Hawkins?

 6       A.   After.

 7       Q.   After?

 8       A.   I believe after.

 9       Q.   And what was -- what do you remember talking about

10   looking into Ashley's emails and Slack messages?

11       A.   They -- I believe there is an export done of all

12   Slack messages at the firm in an attempt to dig up dirt or

13   come up with, you know, her responses to or defenses for

14   what Ashley was bringing.

15       Q.   And if I ask you to estimate for me, best estimate

16   as to which month of the year do you think that occurred?

17       A.   I don't recall.

18       Q.   Do you think that you stopped working there in

19   August, right?

20       A.   It was months before August.  I would say maybe

21   April, May time frame, perhaps.  I truly can't recall.

22       Q.   Is what you're saying you believe that RISC Point

23   saved all the Slack messages of Ashley months before August?

24       A.   Yes.

25       Q.   And you believe that RISC Point saved Ashley's
```

RYAN MCCARTNEY                         10/3/2025

1   emails months before August?

2       A.   Yes.

3       Q.   Was there any discussion about saving Mr. Nix's

4   emails accounts or Slack messages?

5       A.   I wasn't a part of those discussions, if there were

6   discussions there.

7       Q.   Has Mr. Nix ever told you to delete messages on

8   your Slack or email?

9       A.   I don't believe so.

10      Q.   Has anybody at the company ever told you to delete

11  messages?

12      A.   Not to my knowledge, no.

13      Q.   Have you ever suspected something had been deleted

14  off your Slack messages?

15      A.   I don't believe so.

16      Q.   What about emails?

17      A.   I don't believe so.

18      Q.   What is your general understanding about how the

19  company keeps email accounts?  Where do they store them?

20      A.   I believe they're kept in the Cloud.  Don't really

21  know much more than that.

22      Q.   And you mentioned earlier you felt if you had your

23  email account pulled up, you'd be able to search very

24  quickly to determine whether or not any messages were about

25  Ashley, right?

RYAN MCCARTNEY                          10/3/2025

```
 1      A.   Correct.
 2      Q.   Slightly different question related to it.  How
 3  much time do you think it would take you to find messages
 4  your email account or Ashley's email account on the Cloud?
 5           MR. LEE:  Objection.  Vague.  Calls for
 6  speculation.
 7           THE WITNESS:  If I was logged into my RISC Point
 8  email which I assume has since been deactivated, it would
 9  take less than a minute to put Ashley's name in the search
10  bar and pull up the emails.
11           MR. OLSEN:  Okay.  Let me go off the record real
12  quick.  Look at my notes and then we'll come on back to the
13  record to determine how we're going to move forward.
14           THE VIDEOGRAPHER:  We are going off the record at
15  1:55 p.m.
16           (Recess taken.)
17           THE VIDEOGRAPHER:  We are going back on the record.
18  at 1:59 p.m.
19           MR. OLSEN:  We're back on the record.  It is 1:59
20  p.m. on the West Coast.  The deponent and multiple people,
21  representatives, in the room with the deponent are in
22  Cleveland on the Eastern time zone, if I'm correct.  And we
23  made an agreement to stop at 5 o'clock Easter time.  And so,
24  for that reason, we're going to adjourn this deposition and
25  we reschedule with the remaining time that we have left for
```

RYAN MCCARTNEY                        10/3/2025

 1   another day.  And we'll work with the witness's counsel to

 2   find that date.

 3            Anything else, Mr. Lee?

 4            MR. LEE:  Not to split hairs.  But I think the word

 5   is "suspend" not adjourn.  This will be continued.

 6   Obviously, I've got my questions.  We will ask to continue

 7   the deposition another day after all counsel confer on the

 8   on a date.

 9            MR. OLSEN:  Wonderful.  It is so suspended.

10            We can go off the record.

11            THE VIDEOGRAPHER:  Okay.  And, Mr. Olsen, do you

12   want the video synchronized with the reporter's transcript

13   or do you want to wait until the second volume?

14            MR. OLSEN:  Yeah.  If I can reserve my right to

15   wait, it might be easier to do it all at once.  If you have

16   to make a decision right now.

17            THE VIDEOGRAPHER:  You can reserve that right after

18   the second.  We'll follow-up after the second volume.

19            MR. OLSEN:  Okay.

20            THE VIDEOGRAPHER:  All right.  And any counsel

21   would like to order video or wait until after the second

22   volume?

23            MR. LEE:  Not at this time.  Thank you.

24            THE VIDEOGRAPHER:  Okay.  Virginia, do you want

25   transcript orders on the record?

Global Access Litigation Services
(949) 220-0449

RYAN MCCARTNEY                          10/3/2025

1              THE REPORTER:  Yes, please.  Anybody want a

2    transcript?

3              MR. OLSEN:  Other than me, I presume?

4              THE REPORTER:  Correct.

5              MR. LEE:  Okay.  Yeah, if Mr. Olsen is, then I

6    guess I will, too.  This is Jeff Lee at Gordon Rees.

7              THE VIDEOGRAPHER:  This suspends the remote video

8    deposition of Ryan McCartney.  The time is 2:02 p.m.  We are

9    now off the record.

10

11       (The proceedings were concluded at 2:02 p.m. Pacific.)

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Global Access Litigation Services
(949) 220-0449

RYAN MCCARTNEY                              10/3/2025

```
 1

 2

 3

 4

 5          I have read the foregoing deposition transcript and

 6    by signing hereafter, subject to any changes I have made,

 7    approve same.

 8

 9    Dated_____.

10

11

12                         _____

13                              RYAN MCCARTNEY

14

15

16

17

18

19

20

21

22

23

24

25
```

Global Access Litigation Services
(949) 220-0449

RYAN MCCARTNEY                    10/3/2025

```
 1                  CERTIFICATE OF REPORTER

 2              I, the undersigned, a Certified Shorthand Reporter,

 3      licensed by the State of California, being empowered to

 4      administer oaths and affirmations remotely pursuant to

 5      Section 2093(b) of the Code of Civil Procedure, do hereby

 6      certify:

 7              That the foregoing proceedings were taken remotely

 8      before me at the time and place herein set forth; that any

 9      witness in the foregoing proceedings, prior to testifying,

10      were placed under oath; that a verbatim record of the

11      proceedings was made by me using machine shorthand which was

12      thereafter transcribed under my direction; further, that the

13      foregoing is an accurate transcription thereof.

14              I further certify that I am neither financially

15      interested in the action nor a relative or employee of any

16      attorney or any of the parties.

17              Further, that if the foregoing pertains to the

18      original transcript of the deposition in the case, before

19      completion of the proceedings, review of the transcript [ X]

20      was [  ] was not requested.

21              IN WITNESS WHEREOF, I have this date subscribed my

22      name.

23      Dated: October 8th, 2025

24              _____
                         Virginia Perez

25              VIRGINIA PEREZ, CSR 11433
```

Global Access Litigation Services
(949) 220-0449

Exhibit C

L. GEOFFREY LEE (SBN: 234024)
glee@grsm.com
ANAFRANCESCA Y. COMUNALE (SBN: 323257)
acomunale@grsm.com
GORDON REES SCULLY MANSUKHANI, LLP
101 West Broadway, Suite 2000
San Diego, CA  92101
Telephone: (619) 230-7418
Facsimile: (619) 696-7124

Attorney for Defendant Jacob Nix

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

# SOUTHERN DIVISION

| | |
|---|---|
| ASHLEY FRAGALE, an individual,<br><br>                    Plaintiff,<br><br>        vs.<br><br>RISC POINT ADVISORY GROUP LLC; RISC POINT ASSURANCE, LTD; RISC POINT HOLDINGS, INC.; JACOB NIX, and DOES 1 through 10, inclusive,<br><br>                    Defendants. | CASE NO. 8:25-cv-00994 JWH (ADSx)<br><br>**DECLARATION OF GEOFFREY LEE IN OPPOSITION TO MOTION TO COMPEL PRODUCTION OF DOCUMENTS**<br><br>**[DISCOVERY DOCUMENT: REFERRED TO MAGISTRATE JUDGE AUTUMN D. SPAETH]**<br><br>Date:        December 3, 2025<br>Time:        10:00 a.m.<br>Location:    Courtroom 6B |

Gordon Rees Scully Mansukhani, LLP
633 West Fifth Street, 52nd Floor
Los Angeles, CA 90071

-1-
DECLARATION OF GEOFFREY LEE
Case No. 8:25-cv-00994 JWH (ADSx)

1    **DECLARATION OF GEOFFREY LEE**

2    I, Geoffrey Lee, do declare as follows:

3        1.      I am an attorney licensed to practice in all the courts of California.  I

4    am a partner in the law firm Gordon Rees Scully Mansukhani LLP, which is

5    counsel of record for Defendant Jacob Nix.  I have personal knowledge of the facts

6    below.  I do not intend to waive the attorney-client privilege by any statement

7    made herein.

8        2.      Plaintiff served the subject Requests for Documents on May 29, 2025.

9    Defendants served their responses on July 9, 2025.  On July 15, 2025, my office

10   produced our second batch of responsive documents.

11   **History of the ESI Plan**

12       3.      On July 17, 2025, Plaintiff's counsel wrote a meet-and-confer letter

13   acknowledging the production of documents but accusing my side of having

14   "cherry-picked" documents helpful to its defense.  The letter further contemplated

15   that my clients would personally search for all responsive documents in saying:

16   "Defendants are fully capable of searching the universe of documents in their

17   possession, custody, and control, including any ESI."  Plaintiff's counsel did not,

18   however, at this time suggest any parameters of an ESI search plan.

19       4.      I was out on vacation the last two weeks of July 2025.

20       5.      On July 29, 2025, my office sent a response letter requesting a

21   teleconference and noting, among other things, that with respect to Requests for

22   Documents, Plaintiff had "not offered any narrowing compromise" concerning

23   overbroad requests for documents.

24       6.      On August 6, 2025, I had a teleconference with Plaintiff's counsel

25   Ruben Escalante.  For the first time, we began to discuss the beginnings of an ESI

26   plan.  Mr. Escalante then sent me a letter outlining the proposed custodians and

27   search terms.  A true and correct copy of that letter is attached hereto as **Exhibit 2**.

28

*Gordon Rees Scully Mansukhani, LLP*
*633 West Fifth Street, 52nd Floor*
*Los Angeles, CA 90071*

-2-
DECLARATION OF GEOFFREY LEE
Case No. 8:25-cv-00994 JWH (ADSx)

7.     I then reviewed Plaintiff's proposed ESI plan with my clients, who are located in Ohio.  Given that there were sixty (60) search terms and eleven (11) custodians, my clients advised that conducting the searches "in house" would be too disruptive to their business.  Because Plaintiff's counsel had also accused our side of having "cherry-picked" emails, it seemed prudent to hire a neutral E-discovery vendor to conduct the harvesting and searching of ESI.

8.     In the next few days, Plaintiff's counsel and I co-drafted the E-Discovery Protective Order for submission to the Court.  I also had a brief phone call with Plaintiff's counsel Jeff Olsen, who requested a formal letter on the status of discovery.

9.     On August 12, 2025, I sent the requested letter confirming that we had agreed on about 90% of Plaintiff's proposed ESI search plan.  A true and correct copy of my letter is attached hereto as **Exhibit 3**.  I also noted in closing that I had recently received permission by my client's insurance carrier to hire an E-discovery vendor.

10.     Meanwhile, I proposed three E-discovery vendors to my clients.  I was informed that they were interviewing these vendors over the next week.

11.     On August 19, 2025, I had a teleconference with Plaintiff's counsel Jeff Olsen.  I asked Mr. Olsen if he would reconsider the search terms to which I objected such as pay* (with the asterisk indicating a wildcard connector), paid, high, drug, and pic*.  We could not agree on most of these search terms, but I did concede as to the term pic*.  I then sent an email confirming our verbal agreement between counsel.  A true and correct copy of that email is attached hereto as **Exhibit 4**.

12.     I made my clients aware of the ESI plan.  Reference to the ESI plan was expressly made in my client's Supplemental Responses to Requests for

Gordon Rees Scully Mansukhani, LLP
633 West Fifth Street, 52nd Floor
Los Angeles, CA 90071

-3-
DECLARATION OF GEOFFREY LEE
Case No. 8:25-cv-00994 JWH (ADSx)

Documents dated August 25, 2025.  This was the first time that my clients acknowledged the ESI plan under oath.

13.    By August 26, 2025, my clients had decided to hire E-discovery vendor KL Discovery.  After Labor Day, on September 2, 2025, I received the first iteration of the KL Discovery service agreement.  My office asked Risc Point to sign the agreement, but they declined as they had already met their insurance deductible.  *See* Declaration of Matt Drewyor at ¶¶5-7.

14.    The very next day, on September 3, 2025, I requested that Philadelphia Insurance sign the contract.  I received no response on September 4.  I then followed up again on September 5.  The insurance adjuster, who is located in New York, declined to sign the contract and requested a teleconference to discuss it.  This was a significant pause in our progress because the Philadelphia Insurance published billing guidelines expressly state: "Prior written approval must be obtained from Philadelphia for any expense over $750.  This includes approval for jury consultants, courtroom technology, surveillance, etc."  I was aware that, in past situations, where an attorney failed to obtain insurance carrier approval of a vendor expense, my law firm ended up having to absorb the cost without reimbursement from the carrier or the insured client.  (This led to my firm developing its own policy against incurring such third-party costs, described below).  The next available time for me to discuss the matter with the insurance adjuster was on September 10, which we did. My office provided feedback and further instructions to KL Discovery on how to revise the service agreement.

15.    On September 4, 2025, Plaintiff's counsel Jeff Olsen emailed me accusing me of "not living up to promises."  He claimed among other things that I promised to provide an ESI search term "hit report soon."  I had done no such thing.  KL Discovery had not even begun work yet.

-4-

DECLARATION OF GEOFFREY LEE

Case No. 8:25-cv-00994 JWH (ADSx)

16.    On the morning of September 11, 2025, I had a brief telephone conversation with Plaintiff's counsel Ruben Escalante. I explained to him the troubles I was having with getting the KL Discovery agreement signed. I made passing mention that if the carrier and client continued to disagree, I might just sign the service agreement on behalf of my law firm and then have KL Discovery agree to be paid when my law firm was paid for each KL Discovery invoice passed through. Notably, this idea ran against my own firm's expense policy, however. My firm has a "Client Cost Advancing" policy that it publishes to all employees almost monthly. The written policy expressly mandates that any third-party cost over $500 must be contracted with and billed directly to the client so that the firm does not incur the cost.). Mr. Escalante said he was sympathetic to my quandary but that he would plan to file a Motion to Compel if all the ESI was not produced by the end of September.

17.    On September 15, 2025, Plaintiff's counsel Jeff Olsen emailed me about numerous discovery disputes and noted in closing that he expected search term reports in just three (3) days: to wit, September 18. I was out of town that day and had to catch up with missed work the next few days. On September 18, 2025, I emailed Mr. Olsen apologizing for my delayed response but requested a teleconference.

18.    On Monday, September 18, 2025, KL Discovery provided a second draft service agreement. I immediately forwarded it the insurance carrier for approval. The insurance adjuster approved it on Friday, September 19.

19.    On September 22, 2025, Plaintiff's counsel Jeff Olsen called me and demanded to know when the ESI production would be complete. I told him that I did not yet know the volume of the data so I could not estimate how long it would take. (I did not "refuse" to provide a deadline). I explained that if the volume of data was massive, we would either need to revise the ESI plan to lessen the number

Gordon Rees Scully Mansukhani, LLP
633 West Fifth Street, 52nd Floor
Los Angeles, CA 90071

1  of emails, or, if Plaintiff insisted on all the emails that we should consider

2  extending the discovery cut off date.  I also advised counsel that KL Discovery

3  would begin the harvesting process soon and that I would let him know the

4  completion deadline estimate as soon as I was able.  Mr. Olsen told me he was

5  going to file the Motion to Compel forthwith.  I told him that such a motion was

6  premature.

7       20.    My clients then signed the KL Discovery agreement on September 22,

8  2025.

9       21.    On September 23, 2025, my paralegal assisting with the KL

10  Discovery project advised that KL Discovery projected completing the harvest of

11  emails by September 26, 2025.  That collected data would then be used to estimate

12  a completion date and be hosted in Relativity for my staff to review manually for

13  relevance and confidentiality.

14  **Moot Requests for Documents**

15       22.    Plaintiff's counsel at no time discussed filing a Motion to Compel the

16  production of documents other than those Defendants agreed to produce by stating

17  they will "comply to the extent responsive records are found ***as a result of the ESI***

18  ***Agreement between counsel***."  Yet Plaintiff now for the first time argues about ten

19  (10) Requests for Documents ("RPD") that are not in dispute.

20       23.    RPD No. 11 to Risc Point seeks all documents supporting its

21  affirmative defenses.  Plaintiff's counsel did not meet and confer over documents

22  produced in response to this RPD.  My office produced substantial documents in

23  response to this request.  For example, Defendants' Fourth Affirmative Defense is

24  the *Faragher/Ellerth* defense of promptly reporting sexual harassment, which

25  Plaintiff did not.  My office produced a copy of the Employee Handbook outlining

26  the reporting process as well as the belated complaint that Plaintiff made three

27  months after the alleged harassment that purportedly took place in Las Vegas.

28

Gordon Rees Scully Mansukhani, LLP
633 West Fifth Street, 52nd Floor
Los Angeles, CA 90071

-6-

DECLARATION OF GEOFFREY LEE

Case No. 8:25-cv-00994 JWH (ADSx)

Gordon Rees Scully Mansukhani, LLP
633 West Fifth Street, 52nd Floor
Los Angeles, CA 90071

24.     RPD No. 12 to Risc Point seeks the production of every "file" holding documents relating to Plaintiff.  Plaintiff's counsel did not meet and confer over documents produced in response to this RPD.  My office produced substantial documents in response to this request.  For example, my office produced her personnel file and the file on the harassment complaint and investigation into her complaint.

25.     RPD Nos. 18, 19 and 20 to Risc Point seek communications with investigators John Hawkins and Aisha Adam.  These emails were to be captured by the ESI harvest as their very names were search terms.  (*See* Exhibit 2).  In any event, on September 22, 2025, I offered Plaintiff's counsel to have Defendants personally conduct a manual search for these emails and print them promptly as an accommodation to Plaintiff's counsel even though they would be part of the ESI production eventually.  These "hard copy" emails were produced on September 25. (Furthermore, there is no agreement between Defendants and Aisha Adam as her contract was with John Hawkins).

26.     RPD No. 23 seeks documents referenced in Defendants' Rule 26 Initial Disclosures.  Plaintiff's counsel did not meet and confer over documents produced in response to this RPD.  Nevertheless, my office had already produced them.  My office produced the exact 75 pages referenced in the Initial Disclosures on June 2, 2025.  The only outstanding document was the Philadelphia Insurance policy, which was produced on August 26, 2025.

27.     RPD Nos. 31 and 36 seek documents reflecting any discussion about terminating or offering severance to Plaintiff. Plaintiff's counsel did not meet and confer over documents produced in response to this RPD.  Responsive documents would presumably be captured in the ESI plan because of the search terms terminat*, fire*, and sever*.  (*See* Exhibit 2).  In any event, I am informed that no e-mails concerning resignation (other than Plaintiff's own June 2025 resignation

-7-

DECLARATION OF GEOFFREY LEE
Case No. 8:25-cv-00994 JWH (ADSx)

Gordon Rees Scully Mansukhani, LLP
633 West Fifth Street, 52nd Floor
Los Angeles, CA 90071

email) or termination exist.  *See* Declaration of Matthew Drewyor at ¶9.  Slack messages concerning those topics cannot be word searched by Risc Point but are being searched by KLD.  *Id.*

28.    RPD No. 32 seeks documents reflecting the hiring of Allison Bailey (in 2025). Plaintiff's counsel did not meet and confer over documents produced early as an accommodation in response to this RPD.  These documents presumably would have been captured in the ESI Plan.  Moreover, the only known documents were produced on September 25, 2025.  *See also* Declaration of Matthew Drewyor at ¶¶3-4.

29.    RPD No. 33 seeks documents reflecting anti-sexual harassment training employees received. Plaintiff's counsel did not meet-and-confer over documents produced in response to this RPD.   Certificates of completing such training were already produced on August 26, 2025.

**First ESI Production**

30.    On September 26, 2026, KL Discovery reported completing the ingestion of emails and Slack instant messaging from Risc Point.  After filtering using the agreed-upon search words, there were 108 Gigabytes of emails with an estimated 507,000 documents.  There were 27 Gigabytes of Slack messages with an estimated 246,000 documents.

31.    I shared this information with Plaintiff's counsel.  I am familiar with approximate conversion rates based on the core estimation that 50 Megabytes of e-mails typically results in about 2,500 pages.  This estimate is primarily based on a 2013 study published by the University of California.  I calculated and provided an estimate to Plaintiff's counsel that it would take approximately 5,000 hours for a human review of the records.  I specifically suggested that we consider combining search words, eliminating less material search words, or eliminating less important custodians.  I also suggested a rolling production and prioritizing production of

DECLARATION OF GEOFFREY LEE
Case No. 8:25-cv-00994 JWH (ADSx)

those emails with certain key words sounding in sexual banter (as this is an alleged sexual harassment case). I asked that this motion be withdrawn so that we could meet and confer. Attorney Jeff Olsen rejected my suggestions and stated that "[t]he Court will sort out" what to do.

32. E-discovery vendor KL Discovery originally reported that the volume of ESI resulting after Plaintiff's search criteria was 135 GB. Since then, KL Discovery admitted its mistake in not filtering the results for search terms in "Column A" using variations of Plaintiff's name. The corrected estimate is 13.6 GB of emails representing approximately 41,882 documents. The reported volume of Slack messages remains unchanged at 27 Gigabytes of Slack instant messages constituting approximately 246,961 documents.

33. Following an Informal Discovery Conference on October 3, 2025, my office began to prioritize and expedite production of Plaintiff's own emails and Plaintiff's own Slack messages. Three paralegals and two attorneys worked at break neck speed to review the emails and remove attorney-client privileged communications. Over 32,000 pages of ESI was produced on October 9, which was the Court's condition to taking Plaintiff's deposition on October 15. (The Court also ordered Plaintiff's deposition to be taken no later than one week before the October 22 mediation).

**Second ESI Production**

34. I continued to try to resolve the disputes over search terms creating too many documents. I suggested to Plaintiff's counsel prioritizing production on a rolling basis starting with the profane search terms like "boob" and "d*ck," et cetera, but there was no response. I suggested eliminating some of the 60 search terms, but Plaintiff rejected that proposal too. I suggested combining search terms, but that proposal was also rejected.

Gordon Rees Scully Mansukhani, LLP
633 West Fifth Street, 52nd Floor
Los Angeles, CA 90071

DECLARATION OF GEOFFREY LEE
Case No. 8:25-cv-00994 JWH (ADSx)

35.     Plaintiff inquired whether the search term "OF" (a possible acronym for Only Fans) might be generating too many hits based on syntax.  I relayed this technical question to KL Discovery, who in turn reported that it could neither confirm nor deny whether the search term "OF" is accidentally picking up wildcard words like the preposition "of" or words like "off" or "soft."  KL Discovery's lead project manager reports that its software is not capable of distinguishing partial words or capitalization: "Nebula does not have noise words and case sensitive searching is not an option, so we cannot search the term as is." (For these reasons, I believe searching the term "af" as an abbreviation for Ashley Fragale will also result in too many false hits).

36.     On October 22, 2025, I attended the hearing on Plaintiff's original motion to compel documents.  The motion was denied for failure to comply with Local Rule 37.  Magistrate Judge Spaeth remarked that the discovery responses and arguments were presented in a disorganized way that made it too difficult to issue orderly and organized rulings.  Plaintiff's counsel Ruben Escalante stated that he would re-file the same motion with better "formatting."

37.     Immediately after the October 22, 2025, I spoke to Mr. Escalante in the hallway.  I reminded him of the need to reduce, change, or combine more search terms because there were still over 103,000 documents in the ESI review set.  Because I had received no agreement on modified search terms, I had instructed KL Discovery to promote for review ESI that had the term "Ashley" (rather than variations of it) combined with the terms: complain* or harass* or retaliat* or terminat* or fire* or sever* or sex* or bitch* or cunt* or puss* or fuck* or tit* or boob* or dick*.  This search resulted in 2,386 hits for review.

38.     A five-person team in my office including myself reviewed this next batch of ESI.  We found during the review process substantial false hits.  For example, the name "Ashley" alone produced hundreds of false hits because Ashley

-10-
DECLARATION OF GEOFFREY LEE
Case No. 8:25-cv-00994 JWH (ADSx)

Gordon Rees Scully Mansukhani, LLP
633 West Fifth Street, 52nd Floor
Los Angeles, CA 90071

1  Misinec is Risc Point's accountant.  There are also two outside colleagues named

2  Ashley Finley and Ashley Thorton.  A vendor named Align also has a street

3  address located on Ashley Drive.  Many of the wildcard search terms are also

4  producing false hits.  For example, the search term tit* captured thousands of

5  documents with the term "title."  The search term sever* captured hundreds of

6  documents with the term "several."  I continued to look for ways to expedite the

7  production of relevant records.  In the process I learned that the Nebula review

8  system does not allow for individual reviewer word searches across the entire

9  platform.  For example, it is impossible for me to simply type in the word "cunt"

10 into a search box and have it populate every message with that word.  Rather, the

11 search term only works at the ingestion level and within each constituent search

12 batch set up by KL Discovery.  This limited capability differs from other review

13 platforms such as Relativity.  Relativity was not recommended by KL Discovery

14 because it is incompatible with Slack messages.

15     39.    On November 4, 2025, my office produced a second batch of ESI as

16 RP032920 through RP035305.

17 **Present Status of ESI**

18     40.    My firm was replaced as Risc Point's counsel of record by Jackson Lewis

19 P.C. effective October 29, 2025.  [Doc. #50].  Prior to that date, I did not receive any

20 suggested ways to narrow the ESI search between then and October 22, 2025 from

21 Plaintiff's counsel.  Putting aside Plaintiff's emails and requested Slack messages, I

22 am informed that there remains approximately 27 Gigabytes of ESI to be reviewed

23 and processed.  I am informed there is about 10 Gigabytes of emails comprising

24 about 20,000 documents.  I am informed there is about 17 Gigabytes of Slack

25 comprising about 87,000 documents.  My belief, however, is that these records are

26 almost all irrelevant, especially since Plaintiff did not receive these messages, nor

27 are most of the messages likely to be about Plaintiff.

28

-11-
DECLARATION OF GEOFFREY LEE
Case No. 8:25-cv-00994 JWH (ADSx)

41.    On or about November 3, 2025, I reviewed the prebill for the month of October 2025.  Three different paralegals combined to spend an estimated 50 hours reviewing the ESI in October alone.  I estimate the five-person review team incurred approximately $30,000 in fees for October alone.   Fees charged by KL Discovery are over $32,000.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Executed this 11th day of November 2025, in San Diego, California.

L. Geoffrey Lee

DECLARATION OF GEOFFREY LEE
Case No. 8:25-cv-00994 JWH (ADSx)

Gordon Rees Scully Mansukhani, LLP
633 West Fifth Street, 52nd Floor
Los Angeles, CA 90071

Exhibit 1

L. GEOFFREY LEE (SBN: 234024)
glee@grsm.com
ANAFRANCESCA COMUNALE (SBN: 323257)
acomunale@grsm.com
GORDON REES SCULLY MANSUKHANI, LLP
101 West Broadway, Suite 2000
San Diego, CA  92101
Telephone: (619) 230-7418
Facsimile: (619) 696-7124

Attorneys for Defendants

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

## SOUTHERN DIVISION

ASHLEY FRAGALE, an individual,

                    Plaintiff,

        vs.

RISC POINT ADVISORY GROUP
LLC; RISC POINT ASSURANCE,
LTD; RISC POINT HOLDINGS,
INC.; JACOB NIX, and DOES 1
through 10, inclusive,

                    Defendants.

CASE NO. 8:25-cv-00994 JWH
(ADSx)

**DECLARATION OF MATT
DREWYOR IN OPPOSITION TO
MOTION TO COMPEL
PRODUCTION OF DOCUMENTS**

**[DISCOVERY DOCUMENT: REFERRED
TO MAGISTRATE JUDGE AUTUMN D.
SPAETH]**

Date:  Wednesday, October __, 2025
Time:          10:00am
Location:     Courtroom 9D

Gordon Rees Scully Mansukhani, LLP
633 West Fifth Street, 52nd Floor
Los Angeles, CA 90071

## DECLARATION OF MATT DREWYOR

I, Matt Drewyor, do declare as follows:

1.      I am over 18 years of age.  I have personal knowledge of the facts below.  I do not intend to waive the attorney-client privilege by any statement made herein.

2.      I am the Chief Executive Officer of Defendant RISC Point Advisory Group, LLC. I was previously the Chief Operating Officer since July 2022 and was a Vice President since October 2021.

3.      In connection with my regular duties as Chief Operating Officer of RISC Point Advisory Group, LLC, I was involved in major Human Resources tasks such as hiring, firing, and employee investigations.  Between 2022 and 2024, our Human Resources Manager function was fulfilled by Ms. Allison Bailey.  In 2024, Ms. Bailey went out on maternity leave but was expected to return.

4.      Plaintiff Ashley Fragale was hired as a Human Resources Generalist around July 2024.  Because of Plaintiff's poor performance, we requested that Ms. Bailey return to RISCPoint as the Human Resources Manager earlier than originally anticipated.  Ms. Bailey returned to work on May 7, 2025.  Our communications with Ms. Bailey about her return occurred via phone calls.  I have searched emails and have found no emails concerning her pregnancy leave or her return.  There are only a few emails showing her first day back at work, which have been produced in discovery.

5.      Our company provides cybersecurity and privacy compliance services.  Some of our clients store, process, or transmit data this is considered federal data, controlled unclassified information, security data, or metadata.  As such, we are required to meet rigorous security and privacy standards such as ISO 17020, status as an A2LA Accredited FedRAMP Third Party Assessment Organization, and specific contractual requirements around protecting the

Gordon Rees Scully Mansukhani, LLP
633 West Fifth Street, 52nd Floor
Los Angeles, CA 90071

-2-
DECLARATION OF MATT DREWYOR
Case No. 8:25-cv-00994 JWH (ADSx)

Gordon Rees Scully Mansukhani, LLP
633 West Fifth Street, 52nd Floor
Los Angeles, CA 90071

confidentiality of work product and communications with clients, including the due diligence process where data hosting and access are incorporated into the services.

6.    On August 14, 2025, I was presented with a recommendation to hire one of three e-discovery vendors: Consilio, Lighthouse, or KL Discovery.  Over the next few days, it was requested that each of the three vendors provide artifacts associated with our standard vendor due diligence process, especially their cybersecurity and compliance assessment results and terms of service to meet requirements of our status as an A2LA FedRAMP Third Party Assessment Organization, and contractual commitments with our customers.  After reviewing extensive papers from KL Discovery on its cybersecurity and compliance, we decided to hire KL Discovery on or about August 26, 2025.

7.    On September 2, 2025, we were asked to sign KL Discovery's service agreement.  We were reluctant to do so because RISCPoint had satisfied its insurance deductible and therefore believed the payment liability should be borne by our insurance company.  I understand that the insurance adjuster had some objections and concerns with signing the KL Discovery contract as well.  This led to a new KL Discovery contract being prepared with more specific cost estimates.

8.    On September 22, 2025, I reluctantly signed the revised KL Discovery agreement.  On September 24, 2025, we held a meeting with KL Discovery to plan their download of data.  I understand that KL Discovery plans to complete its download on or about September 26, 2025.

9.    Plaintiff resigned her employment effective June 28, 2025.  Prior to that, in March 2025, she indicated to me an interest in resigning and said words to the effect of "this is not the right fit." I have searched emails and have found no emails concerning her suggested resignation or our offer of resignation with severance that followed her suggestion.  I have searched emails and have found no emails concerning her termination.  I am unable to conduct a word search of Slack

DECLARATION OF MATT DREWYOR

Case No. 8:25-cv-00994 JWH (ADSx)

instant messages as the Slack instant messages are archived and our office does not have the software to conduct word searches.  I understand that KL Discovery, however, does have the capability of running word searches of Slack and is presently doing so.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Executed this 26th day of September 2025, in Dundee, Michigan.

*Matthew A. Drewyor*

_____
Matt Drewyor

Gordon Rees Scully Mansukhani, LLP
633 West Fifth Street, 52nd Floor
Los Angeles, CA 90071

-4-
DECLARATION OF MATT DREWYOR
Case No. 8:25-cv-00994 JWH (ADSx)

Exhibit 2

# ACLIENT PC

440 N Barranca Ave PMB 9496
Covina, California 91723

**Ruben Escalante**
Partner
(310) 431-9687

<u>**VIA ELECTRONIC MAIL**</u>

August 6, 2025

L. Geoffrey Lee, Esq.
Anafrancesa Comunale, Esq.
GORDON REES SCULLY MANSUKHANI, LLP
101 West Broadway, Suite 2000
San Diego, CA 92101

Re:     Meet and Confer re Defendants' Deficient Discovery
        Fragale v. RISC Point, et al

Counsel,

The purpose of this letter is to meet and confer regarding Defendant Jacob Nix's ("Mr. Nix") and
Defendant Risc Point Advisory Group LLC's ("Defendant") (collectively, "Defendants")
deficient responses to Plaintiff's first set of written discovery.

<u>Privilege/Objection Log</u>
In our previous correspondence we requested a privilege/objection log. Defendants have not
committed to producing one. If Defendants do not provide the privilege/objection log, Plaintiff
will have no choice but to bring a motion to compel.

<u>Document Requests</u>

- This will confirm that we went through Judge Spaeth's Chambers ESI Conference
  Checklist, and were in general agreement about most items. The primary area of
  contention will be potential custodians and search terms; the duty of Defendants and their
  agents to preserve all potentially relevant communications, including those that are sent
  via a messaging service that can set to erase the message automatically after being sent
  (e.g., Snapchat, Slack, Signal, etc.); and potential burden of an ESI search.

- Consistent with our discussion, I sent over a draft stipulated e-discovery order.

- Consistent with our discussion, I sent over a draft stipulated protective order.

- **To NIX/RISC POINT Request No. 1**; **NIX/RISC POINT Request No. 2; NIX/RISC POINT Request No. 5; NIX/RISC POINT Request No. 6**; **NIX Request No. 7  and 8; RISC POINT Request Nos. 7, 8, 9, 10 11; NIX Request No. 13 / RISC POINT No. 15; NIX Request No. 14 / RISC POINT No. 17; NIX Request No. 19 / RISC POINT No. 22; NIX Request No. 21 / RISC POINT No. 29; NIX Request No. 22 / RISC POINT No. 30; NIX Request No. 26 / RISC POINT No. 37** – These requests seek various documents on various topics. Based on our meet and confer, my understanding is we agreed that such requests could be addressed by an agreed upon ESI protocol. Accordingly, we propose the following:

  - <u>Plaintiff Ashley Fragale</u>:
  - Ashley Fragale
    - Entire work email mailbox to/from/cc/bcc of Plaintiff's work email from 1/1/2024 to 6/30/2025)
    - Any and all "Slack" or other electronic work messaging application with any terms from Column B

  - <u>Other Custodians</u>:
  - Jacob Nix
  - Matthew Drewyor
  - Ryan McCartney
  - Chad Gross
  - John Hibbeler
  - Mike Cowdrey
  - Matt Wiese
  - Tony Bai
  - Allison Laurence Bailey
  - Disha Shah

  - <u>Initial Search Terms For Those on 'Other Custodians' List</u>:
- (a) Any email from anyone on the 'Other Custodian' list, either to/from/cc, that contains any of the following term(s) in Column A and any term(s) in Column B from 1/1/2024 - to date
- (b) Any "Slack" or "Signal" other electronic message from anyone on the "Other Custodian" list, whether to or from, that contains any of the following term(s) in Column B 1/1/2024 - to date

<u>Column A</u>
  - ashley OR ashely OR ash OR fragale OR frag OR fragle OR af

<u>Column B</u> (– * = designates all variations of said term with that foundation)
  - complain*
  - harass*
  - retaliat*

2

- terminat*
- fire*
- kill*
- suspend*
- settle*
- sever*
- pay*
- paid
- illegal*
- lawsuit
- suit
- claim*
- sex*
- bitch*
- cunt*
- puss*
- fuck*
- tit*
- boob*
- breast*
- dating
- date
- dick*
- douche*
- drunk
- drank
- high*
- drug*
- date
- dating
- love*
- roman*
- vibe
- hooked
- showing
- onlyfans
- OF
- profile*
- crazy
- vegas
- lol
- intern
- HR risk
- unwant*
- inappropriat*
- pic*

- o   photo*
- o   nude*
- o   naked
- o   MPI
- o   Hawkins
- o   Aisha
- o   Adam*
- o   investigat*
- o   sensitiv*
- o   Jake
- o   Nix

- **To NIX/RISC POINT Request No. 3 and 4** – These Requests asked for all documents from Defendants that contain the voice, image, or likeness of Plaintiff. Based on our meet and confer, Defendants contend these too are broad and impose an undue burden, citing they would capture voicemails our client left. Although we believe we are entitled to even voicemail messages our client left, as a compromise we will exclude voicemails our client left from this request. Accordingly, Defendants must supplement this now.

- **To NIX Request No. 9 / RISC POINT No. 12** – These Requests asked that Defendants produce any files that Defendants have about Plaintiff. During our meet and confer you took the position that this was vague, overbroad, and burdensome because the word "file" could mean every individual email, which would constitute a separate "file." To be clear, these requests see "files" as that term is normally used—that is, "a collection of papers or publications usually arranged or classified" and "a collection of related data records (as for a computer)" in either physical or paper format. This would include such things as a personnel file, investigative file, manager file, or simply a physical or electronic file maintained by Mr. Nix regarding Plaintiff.

- **To NIX Request No. 10 / RISC POINT No. 13** – These Requests asked that Defendants produce any documents of any harassment, discrimination or retaliation complaints against Defendants, including by other employees. Based on our meet and confer, Defendants contend such requests fall outside the scope of discovery, including for purposes of seeking "me too" evidence. During our meet and confer you expressed doubt that the Central District permitted "me too" evidence; I told you I would find you a Central District case that addressed this issue. *Zucchella v. Olympusat, Inc.*, 2023 WL 2633947 (C.D. Cal. January 10, 2023), *15-17, reflects that "me too" evidence is admitted in appropriate circumstances, just like in state court. I also mentioned that "me too" evidence would be relevant to punitive damages, including in federal court. *Tijerina v. Alaska Airlines, Inc.,* No. 22-CV-00203-JLS-BGS, 2022 WL 16824509, at *4 (S.D. Cal. Nov. 7, 2022) (stating, "[w]hile punitive damages cannot be used to punish a defendant for harming parties not before the court, evidence of a defendant's harm to others can be offered to show reprehensibility, which is a relevant factor in the punitive

damages equation."). Based on our meet and confer, Defendants are standing firm on their objections here. However, if they are willing to provide any responsive information, please let me know now.

- **To NIX Request No. 11 / RISC POINT No. 14**– These Requests asked that Defendants produce any documents they have regarding communications with Plaintiff. This would include all emails and messages via any platform (e.g., Messenger, text message, Instagram, Slack, Signal, etc.), which all should have been preserved. Presumably Defendants have already done a thorough search of the same; Plaintiff is entitled to that same search. We do not need to accept Defendants' cherry picked documents in this regard. If Defendants have specific information justifying why this should not be produced, including actual details regarding the burden, please provide them now.

- **To NIX Request No. 12** – This Request asked that Mr. Nix produce any documents he had regarding his use of the word "cunt" or "cunty" with any employee, owner, director, officer, agents, or management agent of Defendant. Mr. Nix's response that he "will produce a narrower set of e-mails" is not appropriate at this stage. We do not need to accept his cherry picked documents in this regard. If he has specific information justifying why this should not be produced, including actual details regarding the burden, please provide them now.

- **To NIX Request No. 15 / RISC POINT No. 18** – These Requests asked to include all insurance policies, including all pages, including declarations pages that may be applicable in this matter. Defendants identify one policy. Defendants must confirm this is the only responsive policy.

- **To NIX Request No. 16 / RISC POINT No. 19** – These Requests asked for all documents *related to* any investigation in response to Plaintiff's complaint of sexual harassment, including but not limited to documents related to John Hawkins or Aisha Adams. I explained during our meet and confer that Defendants must produce documents related to any investigation or contemplated investigation related to Plaintiff; at a minimum this would include the attempted Ms. Adams investigation. However, this could also include any investigation conducted by Mr. Nix. Accordingly, Defendants must supplement their responses to indicate they will produce all responsive records.

- **To NIX Request No. 20 / RISC POINT No. 23** – These Requests asked for all documents that were used to support or prepare Defendants' initial disclosures. Based on our meet and confer, I explained we are simply seeking non-privileged documents referred to in the initial disclosures or used to prepare the initial disclosures. We are not

5

seeking privileged documents Defendants may have used to prepare them. Accordingly, Defendants must supplement their responses.

- **To NIX Request No. 24 / RISC POINT No. 32** – These Requests asked for all documents relating to engaging or hiring Allison Laurence Bailey. Based on our meet and confer, the protective order should address any concern here and Defendants will supplement their responses to produce any responsive documents.

- **To RISC POINT No. 26** – This Request asked for the job description of Plaintiff during her employment at Defendant. Based on our meet and confer, my understanding is Defendant will supplement this response to produce any responsive documents.

- **To RISC POINT No. 27** – This Request asked for job descriptions of relevant witnesses at Defendant. Based on our meet and confer, my understanding is that Defendant will supplement this response to produce any responsive documents.

- **To RISC POINT No. 33** – This Request asked for documents relating to training and other related polices for officers and employees regarding reporting occurrences of discrimination. Based on our meet and confer, my understanding is that Defendant will supplement this response to produce responsive documents.

<u>Special Interrogatories</u>

- **To NIX Interrogatory 5 / RISC POINT No. 12 –** This interrogatory asked for the identity of all individuals that Defendants (and their agents and attorneys) interviewed concerning Plaintiff's claims against Defendants. Based on your meet and confer letter, you claim Interrogatory No. 5 asked about witnesses supporting a denial of liability: it does not; it specifically asks for individuals Nix interviewed. If the only people Nix interviewed were those interviewed by Mr. Hawkins on his behalf, then he can easily supplement this response to indicate that no additional witnesses were interviewed by him or anyone else on his behalf. Similarly, regarding Interrogatory No. 12, Defendant can easily supplement this response to clarify that no other individual other than Mr. Hawkins conducted any interviews. In the absence of such clarification, the responses are evasive.

- **To RISC POINT Interrogatory 1 –** This interrogatory asked for the identity of all individuals that have complained about harassment, retaliation or discrimination while employed at Defendant. During our meet and confer you expressed doubt that the Central District permitted "me too" evidence; I told you I would find you a Central District case that addressed this issue. *Zucchella v. Olympusat, Inc.*, 2023 WL 2633947 (C.D. Cal.

6

January 10, 2023), *15-17, reflects that "me too" evidence is admitted in appropriate circumstances, just like in state court. I also mentioned that "me too" evidence would be relevant to punitive damages, including in federal court. *Tijerina v. Alaska Airlines, Inc.*, No. 22-CV-00203-JLS-BGS, 2022 WL 16824509, at *4 (S.D. Cal. Nov. 7, 2022) (stating, "[w]hile punitive damages cannot be used to punish a defendant for harming parties not before the court, evidence of a defendant's harm to others can be offered to show reprehensibility, which is a relevant factor in the punitive damages equation."). Based on our meet and confer, Defendant is standing firm on its objections here. However, if it is willing to provide any responsive information, please let me know now.

Conclusion

We are scheduled for our second meet and confer today. Unfortunately, I got called into a hearing that will conflict with our 11 a.m. call. I will email you to confer on a time for later in the afternoon.

Sincerely,

Ruben Escalante

7

Exhibit 3



**GEOFFREY LEE**
glee@grsm.com
Direct (619) 230-7418

101 W. Broadway, Suite 2000
San Diego, CA 92101
www.grsm.com

August 12, 2025

<span style="text-decoration: underline">Via Email</span>

Ruben Escalante, Esq.
ACLIENT PC
440 N Barranca Ave PMB 9496
Covina, California 91723
ruben@aclientpc.com

      Re:   <u>Ashley Fragale v. RiscPoint Advisory Group LLC, *et al.*</u>

Dear Ruben:

At the request of your co-counsel Jeff Olsen, we are providing you a letter setting forth our major positions on the pending discovery.

<u>Protective Order</u>

The draft general Stipulated Protective Orders looks fine. The draft E-Discovery Protective Order also looks fine except for two items. First, we need an end date instead of a search period that is "on-going." Second, we need the Exhibit A attachment for experts or other authorized third parties who will be bound by the protective order.

<u>Privilege Log</u>

I appreciate your email clarifying the matter of using privilege logs. I agree that Plaintiff should not need to create a privilege log for discussions she had with her counsel. In my mind, such communications are per se not relevant discovery by definition.

<u>ESI Plan</u>

Your August 6 letter asserts some "area of contention" as to custodians and search terms. I do not believe that any dispute has yet arisen in this regard. Your proposed custodian and search terms appear generally acceptable. I just have the following comments and questions:

- Plaintiff began working at RiscPoint in July 2024. As such, it would appear that your referenced beginning date of 1/1/2024 was apparently mistaken. We suggest using 7/1/24.

Ruben Escalante
August 12, 2025
Page 2

- The proposed end date is "to date." We obviously need some actual date rather than a moving target. I propose June 30, 2025, as the end date.
- The search terms pay* and paid* seems too generic and likely to result in too many hits. ""Without an appropriately developed search protocol, far too little or far too much information will be gleaned from the vast ocean of data involved in a given case." Battaglia, J., *Discovery & Disclosures Under the Federal Rules of Civil Procedure*, p.32 (2010); *United States v. University of Nebraska at Kearney*, 2014 U.S. Dist. LEXIS 118073 (D. Neb. 2014) (denying motion to compel due to search terms being too generic); *Shaw Group Inc. v. Zurich Am. Ins. Co.*, 2014 U.S. Dist. LEXIS 122516 at *16 (M.D. La. 2014) (rejecting plaintiff's proposed search terms that would have "generated 103,202 e-mails and an estimated 20,000 attachments, which would take 10-12 weeks to review, [and] an additional 2 weeks to perform redaction…."); *Terracon Consultants, Inc. v. Drash*, 2013 U.S. Dist. LEXIS 53800 at *12 (D. Kan. 2013) (denying plaintiff's requested search terms because those terms would "cause an overly broad identification of documents."); *Connecticut General Life Insurance Company v. Earl Scheib, Inc.*, 2013 U.S. Dist. LEXIS 16234 at *8-10. (S.D. Cal. 2013) (sustaining the defendant's objections to multiple requests for production of ESI as being overly broad for the amount in controversy). Vendors get "paid." Employees "get paid." Expenses are the subject of prompt "pay." Why is this term even relevant? Can we narrow it somehow?
- The search terms high* and drug* seem out of place and invading privacy. Why are these relevant?
- The search term pic* also seems to generic and likely to result in many irrelevant hits. To avoid capturing works like "pick," can we agree to picture* instead?

<u>ESI Sources</u>

Your letter also mentioned something about a program called "Signal." My understanding is that "Signal" is a software used to delete ESI. RiscPoint does not use it. RiscPoint and Jake Nix do not use SnapChat either.

We previously discussed "Slack" messages. My client confirms that there is an "XML" archive of Slack messages. However, my client does not have the ability to conduct automated word searches. The only automated search that can be done is by date. Any other searches would have to be done by the human eye. While the company that sells Slack does offer an upgraded license to search messages automatically, I am informed that the cost of the upgraded license is approximately $200,000 and will only search terms from the date of the upgrade but not retroactively. Depending on what parameters your office suggests for a manual search, if any, we reserve the right to object that the XML archive is not reasonably accessible.

My client confirms that there are no known voicemails, videos, or other "likeness" of Plaintiff's voice or face.

Ruben Escalante
August 12, 2025
Page 3


Because my client is a small company, it will be requesting that the insurance carrier approve the hiring of an outside ESI vendor such as Consilio.

<u>"Me Too" Evidence</u>

I appreciate your analysis of the "me too" doctrine as it applies in federal courts.  I agree that such a doctrine is recognized in our court, but, as I surmised, the doctrine is applied very narrowly and ultimately should not apply here.

Discovery, including discovery of me-too complaints, cannot go beyond the bounds of relevancy and must be proportionate to the needs of the case. *Sanchez v. Master Prot., LP*, No. CV 20-08472-VAP-RAO, 2021 WL 4125856, at *3 (C.D. Cal. Aug. 2021); *Constance Hanson-Poulson v. Dep't of Def.*, 2020 WL 2043999, at *3 (C.D. Cal. Mar. 2020) (holding a request for production of Me Too complaints without limit to particular complainants, decision makers or geographic location was outside of the scope of relevancy).  Plaintiffs requesting me-too evidence would need to show that the other individuals also claiming discrimination were similarly situated to Plaintiff.  *Howard v. Raytheon Co.*, No. CV 09-5742 ABC (EX), 2011 WL 13177257, at *3 (C.D. Cal. Mar. 2011). "Employees are similarly situated if they are similar '**in all material respects**,' that is, 'when they have **similar jobs** and **display similar conduct**.' " *Id.* (bold added).

Here, there was no other employee besides Plaintiff who personally made an internal complaint about harassment, discrimination, or retaliation.  So the answers to SROG No. 1 are RFP No. 13 as we read them are: there are none.  To be candid, there were two employees who through legal counsel or through the legal system later made "claims" about their past employment that were investigated by outside counsel.  But we do not interpret your discovery requests as written to include such legal claims.  Those two cases also involved facts and circumstances that were completely different from Plaintiff's circumstances. In our meet-and-confer discussions you indicated interest in seeing management's or Human Resource's protocol response to employee complaints and protocol investigations.  Again, that only happened with respect to Plaintiff Ashley Fragale.

Because the so-called me too evidence must be so similar to the plaintiff's theory, jumping across to other protected classes is not permissible.  Courts appear to be unanimous in sex discrimination cases in not permitting discovery of other complaints such as for race discrimination.  In one California case, the judgment was actually reversed on this very point.  In *Pinter-Brown v. Regents of Univ. of California,* 48 Cal. App. 5th 55 (2020), the plaintiff sued for sex discrimination against her employer UCLA.  Throughout trial, the court allowed the plaintiff to present the jury unrelated claims of discrimination at UCLA. The court even admitted into evidence a list of all employment complaints against the entire University of California system for five years.  The Court of Appeal found that this overbroad evidence

Ruben Escalante
August 12, 2025
Page 4

was not admissible as "me too" evidence because it was not about plaintiff's "own protected class" and was different from plaintiff's own theory. *Id*. at 96.

Finally, I respectfully disagree with your position as to relevancy to punitive damages.  First, the *Tijerina* case you cited speaks to evidence of actual "harm" to other employees.  Proof of "harm" is not established by a mere complaint or even a claim, especially if it was not similar to the Plaintiff's.  Second, again, the *Tijerina* case speaks to proof of circumstances "similar to" the plaintiff.  Third, and finally, evidence going to punitive damages (such as net worth of the defendant) is typically withheld until the second phase of trial if there is one.

<u>Miscellaneous</u>

During my call with Mr. Olsen, he asked if there were any other insurance policies other than the Philadelphia policy we disclosed.  (RFP No. 18).  My clients confirm there is not.

Technically, we did not yet discuss the Requests for Documents issued to Jake Nix.  But I will compare your list more closely and let you know if there is any material discrepancy between the requests to RiscPoint and Nix.

My office is in the process of finalizing Supplemental Responses to certain Requests for Documents as we discussed.

<u>Conclusion</u>

Please let me know if you would like to discuss these matters further.  We will keep you apprised of the progress with the ESI vendor.

Best regards,

GORDON REES SCULLY MANSUKHANI, LLP

L. Geoffrey Lee

LGL:ss

cc:    Jeff Olsen, Esq. (jeff@olsenws.com)

Exhibit 4

**Geoff Lee**

---

| | |
|---|---|
| **From:** | Geoff Lee |
| **Sent:** | Tuesday, August 19, 2025 4:34 PM |
| **To:** | 'Jeff Olsen'; 'ruben@aclientpc.com' |
| **Cc:** | Anafrancesca Comunale |
| **Subject:** | Fragale v. RiscPoint -- ESI |

Dear Counsel

This confirms that the Protective Orders should be finalized and submitted to the judge soon.  We agreed to input the discovery cut off date as the end date called for in the Protective Order preservation section.

We have agreed on the search terms and custodians except as to: (a) pay* and paid; and (b) high* and drug*, which dispute will have to be resolved by the court.  As we agree to more than 90% of the other parameters, I will refer to that majority portion as the "ESI Agreement" in the supplemental discovery responses.

I still have an outstanding question on the start date as January 1 or July 1 (when plaintiff began working).  We also acknowledged that the end date "to date" would be the date that the search term is run to the extent that is possible.

If I have inadvertently misstated where things stand, please promptly advise me.

**PROOF OF SERVICE**

I am an active member of the State Bar of California.  I am not a party to the within action.  My business address is 440 N. Barranca Ave. PMB 9496, Covina, CA 91723.  On November 13, 2025, I served copies of the within documents described as:

**[DISCOVERY DOCUMENT: REFERRED TO MAGISTRATE JUDGE AUTUMN D. SPAETH]**

**JOINT STIPULATION REGARDING PLAINTIFF'S MOTION TO COMPEL COMPLIANCE AND PRODUCTION OF DOCUMENTS**

on the interested parties in this action as follows:

**See attached Service List**

[x]    BY ELECTRONIC/EMAIL - I caused the above document to be delivered to the office of the addressee via electronic e-mail. Said document was transmitted to the email address of that office which is listed on the Service List. I did not receive, within a reasonable after the transmission, any indication that the transmission was not successful.

    I certify the foregoing is true and correct.  Executed on November 13, 2025.


_____

Ruben Escalante

**JOINT STIPULATION RE PLAINTIFF'S MOTION TO COMPEL COMPLIANCE AND PRODUCTION OF DOCUMENTS RULE 37-2.1**

1

**SERVICE LIST**

2

3    GEOFFREY LEE (SBN:234024)
glee@grsm.com
4    ANAFRANCESCA COMUNALE (SBN: 323257)
acomunale@grsm.com
5    GORDON REES SCULLY MANSUKHANI, LLP
6    101 West Broadway, Suite 2000
San Diego, CA 92101
7    Telephone: (619) 230-7418
8    Facsimile: (619) 696-7124

9

Attorneys for Defendants
10    RISC POINT ASSURANCE, LTD; RISC POINT HOLDINGS, INC.; JACOB
NIX
11

12

Neda N Dal Cielo
13    Jackson Lewis P.C.
14    160 West Santa Clara Street Suite 400
San Jose, CA 95113
15    408-579-0404
Fax: 408-454-0290
16    Email: neda.dalcielo@jacksonlewis.com
17

18    Attorneys for Defendant
RISC POINT ADVISORY GROUP LLC
19

20

21

22

23

24

25

26

27

28

-98-

**JOINT STIPULATION RE PLAINTIFF'S MOTION TO COMPEL COMPLIANCE AND
PRODUCTION OF DOCUMENTS RULE 37-2.1**